ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Michael Lacey, et al.,<br><br>　　　　　Defendants. | CR-18-422-PHX-SPL (BSB)<br><br>**UNITED STATES' REPLY IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL (DWT FIRM)**<br><br>**[Reply to CR 177]** |

### INTRODUCTION

The law firm of Davis Wright Tremaine ("DWT") has filed a notice of appearance in this case on behalf of two defendants: Michael Lacey and James Larkin. The United States has, in turn, moved to disqualify the DWT firm based on conflicts of interests arising from its previous representation of Carl Ferrer (*see* CR 118), Lacey and Larkin have filed a response (*see* CR 180), and the United States has now filed a reply (*see* CR 193).

Another party to this lawsuit, defendant Andrew Padilla, also has filed an opposition to the DWT-related disqualification motion (*see* CR 177). In general, the arguments contained in Padilla's pleading mirror the arguments contained in the Lacey/Larkin pleading. Specifically, Padilla argues that disqualification isn't required because Ferrer purportedly waived his personal attorney-client privilege with the DWT firm, because Ferrer signed several joint representation agreements that purportedly contained conflict-waiver provisions permitting the DWT firm to represent Lacey and Larkin in the event of a future conflict, because Ferrer has chosen to cooperate, and because Ferrer didn't formally join in the disqualification motion. All of these claims are addressed in detail in the United States' reply concerning the Lacey/Larkin opposition, and the United States incorporates its arguments here.

Padilla's pleading also contains a few additional arguments that do not appear in the Lacey/Larkin brief. Those arguments are addressed below.

**ARGUMENT**

A.   <u>It Is Unclear Whether Padilla Has Standing To Contest DWT's Disqualification</u>

Padilla asserts that he has standing to be heard on the disqualification issue because he and his retained attorney (Mr. Piccarreta) signed a joint defense agreement ("JDA") in 2017 "and it was the intent of the agreement that Mr. Padilla, and other signatories to the agreement, would continue to receive the benefit of the excellent representation DWT's lawyers had been providing . . . ." *See* CR 177 at 2. Citing *United States v. Jones*, 44 F.3d 860 (10th Cir. 1995), and a bar journal article, he contends he therefore has a "personal Sixth Amendment right[]" to the DWT firm's continued assistance. *See* CR 177 at 9-10.

As a threshold matter, it is not clear whether the Court needs to resolve the standing issue. Padilla's merits arguments concerning whether the DWT firm should be disqualified are essentially the same as the arguments contained in the Lacey/Larkin pleading. If the Court determines the DWT firm should be disqualified, then the issue of Padilla's standing will matter only for appellate/preservation purposes. And if the Court determines the DWT firm shouldn't be disqualified, then the issue of Padilla's standing will be moot.

Nevertheless, to the extent the Court wishes to resolve the standing issue, Padilla's brief omits an important, and perhaps dispositive, factual point. As discussed in the reply to the Lacey/Larkin pleading, it is the United States' understanding that *the DWT firm never signed the JDA*. It is therefore unclear how Padilla can point to the document as the source of a constitutional right to the DWT firm's assistance.

Finally, even if the DWT firm had signed the JDA, this would still not resolve the issue in Padilla's favor. In *Jones*, the district court granted the government's motion in a multi-defendant case to temporarily disqualify two defendants' attorneys. 44 F.3d at 872-73. On appeal, neither of those defendants disputed the disqualification ruling, but a third defendant (Scott) sought to do so. *Id.* The Tenth Circuit affirmed in relevant part, holding that "[a] defendant . . . does not have standing to raise the Sixth Amendment claims of a co-defendant. Neither Ms. Jones nor Ms. Johnson challenges the disqualifications on appeal. Their co-defendant, Mr. Scott, may not vicariously assert their rights. We therefore hold that Mr. Scott does not have standing to challenge the disqualification of the attorneys on grounds that the disqualification deprived his co-defendants of their right to counsel of choice." *Id.* at 873. Admittedly, in the next paragraph of the opinion, the court suggested that Scott did have standing to assert a claim that he had a personal Sixth Amendment right to pursue a joint defense, but the court didn't provide any analysis in support of this statement and went on to reject Scott's claim on the merits. *Id.*

Because *Jones* is an out-of-Circuit decision whose statement about "joint defense" standing is not particularly thorough or reasoned, the Court need not follow it here. Moreover, decisions from within the Ninth Circuit suggest *Jones* may be incorrect on this issue. In *United States v. Stepney*, 246 F. Supp. 2d 1069 (N.D. Cal. 2003), the court provided an extensive discussion of the difference between the joint-defense privilege and the attorney-client privilege. *Id.* at 1073-84. The upshot of that analysis is that "[j]oint defense agreements are not contracts which create whatever rights the signatories choose" and that "[c]ourts have consistently viewed the obligations created by joint defense agreements as distinct from those created by actual attorney-client relationships." *Id.* at

1080. Similarly, in *Roosevelt Irrigation District v. Salt River Project Agricultural Improvement & Power Distict*, 810 F. Supp. 2d 929 (D. Ariz. 2011), the court recognized that "a traditional attorney-client relationship is not established between an attorney and his client's former co-defendant via a joint defense agreement." *Id.* at 962.

These authorities make clear that Padilla did not form an attorney-client relationship with the DWT firm simply by signing the JDA. And because he did not have an attorney-client relationship with the firm, it is unclear why he should be able to assert any personal Sixth Amendment-based rights and claims based on the firm's participation or non-participation in this case.

B.   <u>Padilla's Balancing-Of-Interests Arguments Are Unavailing</u>

Padilla contends the government must have been acting with a nefarious purpose when it filed the disqualification motion because there will be "no damage to Mr. Ferrer or the government if the government's motion is not granted" and because the motion was accompanied by "simultaneous efforts in this matter to seize legitimate assets necessary to retain counsel of choice." *See* CR 177 at 12-15. He further contends the DWT firm will be crucial to his defense in light of the firm's "very successful" track record of litigating First Amendment issues on Backpage's behalf. *Id.* at 1-4 & n.4, 12-13. He continues: "[C]ourts have consistently found, in cases litigated by DWT . . . [that] Mr. Padilla's acts, and those of others at Backpage, are prototypical editorial functions that are clearly protected by the First Amendment." *Id.* at 13.

These claims are misplaced. First, the Court should reject Padilla's efforts to belittle the strength and sincerity of the government's and Ferrer's interests in the disqualification issue. The ethical conflicts presented by the DWT firm's conduct are palpable, have already led one court to order the firm's disqualification, and could wreak havoc at trial or on appeal should the firm be permitted to remain on the case. The government has a legitimate interest in avoiding such issues. *United States v. Culp*, 934 F. Supp. 394, 399 (M.D. Fla. 1996) ("[The] argument that the Government lacks standing to raise the issue of a potential conflict gives short shrift to the respective interests of the Government and

the Court in ensuring that judgments remain intact on appeal . . . [and] betray[s] a conception of the interests at stake in this motion which is both unduly narrow and overly simplistic.").

Second, Padilla's effort to draw some sort of parallel between the disqualification motion and the asset-seizure efforts in this case is a distraction. The government filed the disqualification motion as soon as it became aware of the ramifications of the DWT firm's participation (and after attempting to meet and confer with Mr. Padilla's counsel and others). This is what prosecutors are *supposed* to do—indeed, courts have faulted prosecutors for failing to raise similar issues until the eve of trial. *United States v. Iorizzo*, 786 F.2d 52, 59 (2d Cir. 1986). Meanwhile, the government's asset-seizure efforts in this case occurred simultaneously with the unsealing of the indictment and arrest of the defendants. This is standard practice. That the two occurred in roughly the same timeframe is logical and unremarkable.

There is also no merit to Padilla's claim that the asset-seizure efforts in this case resulted in the seizure of "legitimate" assets and improperly interfered with the defendants' access to counsel. As Padilla presumably knows (from the discovery materials that were provided to the defense last month), the seizure efforts in this case were made pursuant to warrants signed by federal judges. Those warrants were supported by affidavits (which have been provided to the defense) demonstrating, to the issuing judges' satisfaction, that the seized funds were tainted. It has been established for decades that a criminal defendant has no right to use tainted funds to pay for counsel. *See, e.g., Caplin & Drysdale v. United States*, 491 U.S. 617, 631 (1989).

Third, although Padilla's brief seeks (as part of its balancing-of-interests argument) to create the impression that the DWT firm has secured an unbroken line of victories on First Amendment issues in Backpage-related cases, the brief omits any discussion of the multiple recent proceedings in which those claims have been rejected. For example:

- PSI Litigation: In October 2015, the Senate Permanent Subcommittee on Investigations ("PSI") issued a subpoena to Carl Ferrer for certain Backpage-related

records. After Ferrer (represented by the DWT firm) declined to comply, the Senate held him in contempt and initiated a lawsuit against him in federal court. During this litigation, the DWT firm advanced an array of First Amendment-based challenges to the subpoena. In a published decision issued in August 2016, the district court rejected those arguments, holding that "there is simply no legal or factual support for the proposition that being required to search for responsive documents would abridge Mr. Ferrer's protected freedoms of speech or press" and that the "First Amendment does not protect speech that is itself criminal because it is too intertwined with illegal activity.'" *Senate Permanent Subcommittee on Investigations v. Ferrer*, 199 F. Supp. 3d 125, 138, 140 (D.D.C. 2016). The following year, the D.C. Circuit unanimously rejected (on mootness grounds) the DWT firm's appeal. *Senate Permanent Subcommittee on Investigations v. Ferrer*, 856 F.3d 1080 (D.C. Cir. 2017).

- *J.S.*: In 2015, the Washington Supreme Court rejected an effort by the DWT firm to dismiss, on First Amendment grounds and under the Communications Decency Act ("CDA"), a civil lawsuit brought against Backpage by three minor girls who had been "bought and sold for sexual services online on Backpage.com." *See J.S. v. Village Voice Media Holdings*, Inc., 359 P.3d 714, 715-16 (Wash. 2015). The Court held that, because the plaintiffs had plausibly alleged that Backpage does "more than just provide a forum for illegal content" and affirmatively shapes the content of users' ads through "posting rules [that are] 'designed to help pimps develop advertisements that can evade the unwanted attention of law enforcement, while still conveying the illegal message,'" the plaintiffs should be permitted to conduct discovery "to ascertain whether in fact Backpage designed its posting rules to induce sex trafficking." *Id.* at 718. In 2017, following extensive discovery, the trial judge in the *J.S.* case denied Backpage's motion for summary judgment. Afterward, Backpage agreed to enter into a confidential settlement with the plaintiffs.

- *Doe No. 1*: In 2018, a federal judge in Massachusetts rejected an effort by the DWT firm to dismiss, on First Amendment and CDA grounds, a civil lawsuit brought by a different minor girl who had been trafficked via Backpage. *See Doe No. 1 v.*

*Backpage.com, LLC*, 2018 WL 1542056 (D. Mass. 2018). The court explained that, because the plaintiff had made a plausible allegation that Backpage had "redrafted [her] advertisement . . . to suggest she was an adult," the alleged conduct was not covered by the CDA's grant of immunity. *Id.* at *1.

Finally, and perhaps most important, Padilla's brief fails to disclose that the DWT firm has already engaged in extensive First Amendment-related litigation *in this case*. Specifically, during the grand jury litigation that preceded the indictment, Judge Campbell and a unanimous three-judge panel of the Ninth Circuit rejected the DWT firm's First Amendment-based challenges to the government's investigation and theory of the case.[1]

As background, in October 2016, the grand jury issued a subpoena ("the 108 subpoena") to Ferrer and Backpage for an array of internal company documents. In response, the DWT firm (as well as the law firm of Henze Cook Murphy) mounted a First Amendment-based challenge to the subpoena on behalf of Ferrer and Backpage.

In February 2017, following extensive briefing and a lengthy oral argument, Judge Campbell rejected these objections and ordered Ferrer to comply. *See* Exhibit A (transcript of February 22, 2017 hearing). In support of this ruling, Judge Campbell made factual findings that "this grand jury investigation . . . is a good faith investigation and not being undertaken for bad faith purposes" (*id.* at 65), that there was a reasonable basis to suspect "that Backpage has knowingly been involved with the posting of illegal advertisements" (*id.* at 63), and that the subpoena was properly tailored "to determine whether or not Backpage and its personnel knew that advertisements posted on its website were for illegal activity . . . which is a key question in whether or not crimes have been committed" (*id.* at 66). Notably, Judge Campbell also confirmed that 18 U.S.C. § 1952—which is the statute underlying many of the charges in the indictment—"criminalize[s] the knowing

---

[1] On May 17, 2018, Judge Campbell issued an order authorizing the United States to disclose, during the proceedings in this case, the previously-sealed materials enclosed as Exhibits A-D to this pleading.

publication of an advertisement for illegal prostitution or other illegal activity" and noted that Ferrer's and Backpage's counsel (from the DWT firm) had conceded this point during oral argument. *Id.* at 65. *See also id.* at 37 (DWT concession); Exhibit B (minute entry).

In April 2017—presumably upon the advice of the DWT firm—Ferrer was held in contempt of court for declining to comply with Judge Campbell's order. *See* Exhibit C. (This contempt ruling was a prerequisite for creating jurisdiction for any attempt to appeal.)

In June 2017, following expedited briefing, the Ninth Circuit issued a unanimous unpublished decision affirming Judge Campbell's decision. *See* Exhibit D.

C. <u>Padilla's Arguments Regarding The Merits Of The Criminal Charges Are Both Irrelevant And Erroneous</u>

Although most of Padilla's brief focuses on disqualification-related issues, he includes two arguments that touch upon the merits of the underlying criminal charges. Specifically, he argues (1) the charges in the indictment are barred by the CDA and (2) he lacked the "specific intent" required to convict him of a crime. *See* CR 177 at 13-14.

 In the United States' view, the Court need not resolve these arguments because they have no bearing on the disqualification issue. Additionally or alternatively, the arguments fail on the merits.

First, Padilla's invocation of the CDA does not survive even casual scrutiny. Although the CDA precludes certain criminal prosecutions brought under state law as well as civil-damages lawsuits, it makes clear that criminal prosecutions brought under federal law are not subject to the same limits and should not be impaired. 47 U.S.C. § 230(e)(1) ("Nothing in this section shall be construed to impair the enforcement of . . . [any] Federal criminal statute."). It would turn the rules of statutory construction on their head to conclude that, notwithstanding what it expressly said in the text of the CDA, Congress secretly harbored an unexpressed desire to prevent federal criminal enforcement activities.

Indeed, even the DWT firm has conceded the CDA wouldn't provide a defense to the current charges. In 2014, one of the DWT attorneys who seeks to represent Lacey and Larkin in this case wrote an article (which is available on the DWT website)

acknowledging the CDA doesn't preempt federal criminal prosecutions: "Section 230 has been widely recognized as a boon to the growth of the Internet in the U.S., but it preempts only state law and does not override federal criminal law . . . ."   In November 2016, the DWT firm made a similar concession in a pleading filed with the U.S. Supreme Court, recognizing "the exception in Section 230(e)(1) for criminal enforcement [that] applies only to federal criminal prosecutions."  And again, during the California prosecution of Ferrer, Lacey, and Larkin, the DWT firm acknowledged in a pleading that "immunity [under the CDA] does not extend to prosecutions under a 'Federal criminal statute.'"

Second, the question whether Padilla possessed the "specific intent" to commit a crime is a quintessential issue that must be resolved at trial by a jury. *See, e.g., United States v. Ravoy*, 994 F.2d 1332, 1338 (8th Cir. 1993) ("The question of intent is a quintessential jury issue."). The United States would further note that the indictment summarizes several pieces of damning evidence concerning Padilla's intent, including emails where he threatened subordinates with termination for having the temerity to acknowledge, in writing, that Backpage's "escort" ads were actually solicitations for prostitution.

Respectfully submitted this 13th day of June, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Kevin Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

JOHN P. CRONAN
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division

Child Exploitation and Obscenity Section

**Certificate of Service**

I hereby certify that on this date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell, James Grant, Lee Stein, Paul Cambria, Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller, Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David Wakukawa, Michael Piccarreta, Stephen Weiss.

*s/ Sally Hawley*
U.S. Attorney's Office