1   ELIZABETH A. STRANGE
    First Assistant United States Attorney
2   District of Arizona

3   KEVIN M. RAPP (Ariz. Bar No. 14249, kevin.rapp@usdoj.gov)
    MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
4   PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
    ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
5   JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
    Assistant U.S. Attorneys
6   40 N. Central Avenue, Suite 1800
    Phoenix, Arizona 85004-4408
7   Telephone (602) 514-7500

8   BRIAN BENCZKOWSKI
    Assistant Attorney General
9   Criminal Division, U.S. Department of Justice

10  REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
    Senior Trial Attorney, U.S. Department of Justice
11  Child Exploitation and Obscenity Section
    950 Pennsylvania Ave N.W., Room 2116
12  Washington, D.C. 20530
    Telephone (202) 616-2807
13  Attorneys for Plaintiff

14              IN THE UNITED STATES DISTRICT COURT

15                  FOR THE DISTRICT OF ARIZONA

16

17   United States of America,              CR-18-422-PHX-SPL (BSB)

18                     Plaintiff,     **UNITED STATES' RESPONSE TO**
                                      **MOTION FOR ITEMIZATION OF**
19              v.                    **BRADY/GIGLIO MATERIAL**

20                                              **[CR 273]**
     Michael Lacey, et al.,
21
                      Defendants.
22                                      **INTRODUCTION**

23          More than 1½ years before trial and six months before its Rule 16 discovery

24   deadline, the government delivered to defense counsel two hard drives of discovery in

25   searchable electronic format.  CR 131; CR 273-01.  The government took several additional

26   steps to facilitate Defendants' review of this evidence.   Among other things, the

27   government: (1) provided indices with descriptions and bates number references to allow

28   the defense to focus their review; (2) disclosed a subset of "hot" documents that support

the allegations in the indictment; (3) undertook to produce the Backpage.com ads concerning the victims identified in the indictment; and (4) made available a Department of Justice (DOJ) discovery specialist to assist with technical questions.  *See* CR 273 at 4; CR 273-2 at 6-7.

Defendants assert this is not enough.  They demand the government "itemize" all "*Brady* materials" within the discovery now in their possession.  CR 273 at 4.  Defendants essentially ask this Court to adopt a rule that when the amount of discovery reaches some unspecified threshold, the government must search for and segregate all materials that might support the defense.  **Yet every Circuit Court of Appeals and the vast majority of district courts to consider this issue have rejected the very argument Defendants assert here.**  These courts have repeatedly held that the government has no obligation to cull from discovery in the defendants' possession any materials arguably favorable to the defense.  Defendants seek to impose obligations on the government that are far outside the normal practice in this District, inconsistent with national e-discovery protocols (co-authored by the defense bar), and well beyond what the law requires.  Defendants' motion should be denied.[1]

## ARGUMENT

### I.   THE GOVERNMENT PROVIDED EXTENSIVE EARLY DISCOVERY.

#### A.   The Government Supplied Detailed Pre-Indictment Disclosures.

On December 21, 2017, months before the grand jury indicted Defendants, prosecutors personally met with Mr. Padilla's counsel for several hours to discuss the government's theory of the case and preview some of the government's key documents. (*See* Exhibit A hereto (emails between Mr. Piccarreta (counsel for Mr. Padilla) and prosecutors from December 2017); CR 273-2 at 6.)[2]  The government then emailed to Mr.

---

[1] Defendant Andrew Padilla filed the instant motion, and all co-defendants (except Dan Hyer) have joined.  *See* CRs 275 (Vaught), 276 (Spear), 277 (Larkin), 278 (Lacey), 279 (Brunst).  Padilla and the joining parties are collectively referred to as "Defendants" herein.

[2] In addition, the U.S. Senate Permanent Subcommittee on Investigations' January 2017

Padilla's counsel more than 100 pages of documents, spreadsheets and presentations that were discussed at the meeting.  (*See id.*)[3]

**B.    Post-Indictment, the Government Followed the ESI Protocol and Produced Approximately 10 Million Pages of Documents in Searchable Electronic Format.**

In February 2012, the Administrative Office of the U.S. Courts published "Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases" (commonly referred to as the "ESI Protocol"), available at http://www.uscourts.gov/sites/default/files/finalesiprotocolbookmarked.pdf.         The introduction to the ESI Protocol explains that it was created in 2012 by a joint working group composed of "representatives of the Administrative Office of U.S. Courts' (AOUSC) Office of Defender Services (ODS), the Department of Justice (DOJ), Federal Defender Organizations (FDO), private attorneys who accept Criminal Justice Act (CJA) appointments, and liaisons from the United States Judiciary and other AOUSC offices."  ESI Protocol, Introduction at 1.   The introduction further states that the ESI Protocol reflects the collective views of the defense bar, the DOJ, and the federal judiciary as to "best practices for the efficient and cost-effective management of post-indictment ESI discovery between the Government and defendants charged in federal criminal cases."  *Id*.

The ESI Protocol states that (1) the parties should meet at the outset of the case to "discuss what formats of production are possible and appropriate . . . .  Any format selected for producing discovery should maintain the ESI's integrity, allow for reasonable usability, reasonably limit costs, and, if possible, conform to industry standards for the format"; and (2) that "[w]hen producing ESI discovery, a party should not be required to take on

---

report, "Backpage.com's Knowing Facilitation of Online Sex Trafficking" and the accompanying 843-page Appendix, provide a comprehensive explanation of Mr. Padilla's role   within   Backpage.com.   *See*   CR   273-2   at   6; https://www.hsgac.senate.gov/imo/media/doc/Backpage%20Report%202017.01.10%20FINAL.pdf               (Senate               Report); https://www.hsgac.senate.gov/imo/media/doc/Final%20Appendix%202017.01.09.pdf (Appendix).

[3] When other defense counsel have requested specific documents relevant to their clients, the government has complied and has met with counsel to review the documents and answer any questions they might have.

1    substantial additional processing or format conversion costs and burdens beyond what the
2    party has already done or would do for its own case preparation or discovery
3    production." ESI Protocol, Introduction at 1-2 (summarizing Principles 4 and 5). The ESI
4    Protocol also suggests that, even if a case involves millions of pages of discovery, the
5    government does not have any special obligations in *Brady* so long as it produces the ESI
6    in a searchable format, provides a table of contents, and produces a subset of "hot
7    documents." ESI Protocol, Strategies at 2 & n.1 (citing *United States v. Skilling*, 554 F.3d
8    529 (5th Cir. 2009)).

9        The government satisfied all of these requirements here. Almost immediately after
10   indictment, the prosecution met and conferred with the defense to discuss how the ESI in
11   this high-volume case would be produced. CR 273-2 at 5. During this process, everybody
12   agreed that it would be acceptable for the government to produce the ESI in an industry-
13   standard format – word-searchable load files that could be reviewed using Relativity, a
14   commonly-used discovery platform. CR 273-2 at 5-6. *See Massuda v. Panda Express,*
15   *Inc.,* 2014 WL 148723, *4 (N.D. Ill. 2014) ("Relativity is 'a standard document
16   management service that allows attorneys to organize, manage and review documents
17   electronically in connection with litigation.'"). Once loaded, searches – including for key
18   words, phrases and file types – can be run across the entire database. The documents can
19   also be searched and retrieved by bates numbers. The government has provided the
20   documents to Defendants in the same format in which the government has them.[4]

21       During the status conference before Judge Logan on April 30, 2018, the government
22   specifically discussed the plan to disclose the ESI in a Relativity-accessible format. *See*
23   CR 137, Tr. 4/30/18 at 5-6 (AUSA Rapp: "[W]e are in the process of assimilating the
24   discovery. We're using a database by the name of Relativity. The discovery is being

---

[4] The government cannot provide the defense with Relativity itself, because Relativity is a
commercially-available, propriety program that cannot be transferred from a licensed user
to a non-licensed user. In addition, security concerns prohibit the government from
allowing defense counsel direct access to the Relativity platform used by the DOJ. *See* CR
273-2 at 6.

- 4 -

1    imported into that platform.  We are going to provide the defense a hard drive that will
2    have all of the discovery…. [W]ithin 60 days we will provide them bulk of the discovery
3    that is contained – that we have in our possession."); *id.* at 7 (in response to Judge Logan's
4    question "What's the fastest you can get this discovery together on this new platform that
5    you have?", the government responded "Well, we think that within 60-days we could
6    provide them anywhere from 7 million to 9 million [pages], and those fall into various
7    categories.").  All of the defense attorneys, including Mr. Padilla's counsel, were present
8    during this hearing and agreed to this approach.  *See* CR 137, Tr. 4/30/18 at 1-14.

9          After the hearing, the Court issued a Scheduling Order setting the government's
10   deadline for initial compliance with Rule 16 discovery for December 3, 2018.  CR 131 at
11   1.  The Order noted "[t]he United States represents that it intends to provide the majority
12   of the discovery within 60 days" of the Court's issuance of the Order.  CR 131 at 1 n.2.
13   The Order set trial for January 15, 2020.  *See* CR 131 at 1-3.

14         Since the Order issued, the government has done exactly what it committed to do
15   (and what the defense agreed would be acceptable) during the meet-and-confer process –
16   produce ESI in a Relativity-friendly format.  On May 24, 2018, the government produced
17   two hard drives to Defendants containing approximately 10.4 million pages of documents.
18   CR 273-1.  Many of the produced documents consist of emails and/or other documents that
19   Defendants authored, received or reviewed during the events at issue.  Although Fed. R.
20   Crim. P. 16 only requires that the government permit the defendant to inspect and copy
21   discovery, the government has spent a significant amount of time and money to produce
22   the discovery to Defendants in an agreed-upon, electronic, searchable, industry-standard
23   format.  *See* CR 273-1 at 1-2; CR 273-2 at 5-6.  Furthermore, the government created
24   indices to assist the defense in navigating the discovery; produced a subset of "hot"
25   documents that support the allegations in the indictment; undertook to produce
26   Backpage.com ads relating to specific victims and other documents supporting the
27   superseding indictment; and made arrangements for a DOJ discovery specialist in
28   Washington, D.C., to assist defense counsel with certain technical questions.  *See* CR 273-

1 at 1-2; CR 273-2 at 5-6.[5]  The ESI Protocol (which reflects the views of the defense bar) makes clear that such conduct satisfies the government's discovery obligations and that the government "should not," as Defendants request here, "be required to take on substantial additional…burdens beyond what the party has already done or would do for its own case preparation or discovery production." ESI Protocol, Introduction at 1-2.  Notably, Defendants' motion does not even specify an alternative production format (*i.e.,* other than Relativity) that would be acceptable them – Defendants simply complain about the government's decision to produce the discovery in an industry-standard format Defendants previously acknowledged would be acceptable. *See* CR 273-2 at 6.

The bottom line is that the government has produced discovery in searchable electronic format – and taken several additional steps to facilitate Defendants' review.

## II.   *BRADY* DOES NOT REQUIRE THE GOVERNMENT TO IDENTIFY EVIDENCE FAVORABLE TO DEFENDANTS IN DISCOVERY THAT DEFENDANTS POSSESS.

*Brady v. Maryland*, 373 U.S. 83 (1963), requires the prosecution to disclose evidence favorable to the accused when such evidence is material to guilt or punishment. Such material must be disclosed in time for its effective use at trial. *Id.*  At the same time, "[w]hile the Supreme Court in *Brady* held that the Government may not properly conceal exculpatory evidence from a defendant, it does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990); *see also United States v. Shoher*, 555 F. Supp. 346, 352 (S.D.N.Y. 1983) ("The Government is not required . . . to facilitate the compilation of exculpatory material that, with some industry, defense counsel could marshal on their own.").

As summarized above, the government produced – some twenty months before trial

---

[5] The government is preparing to produce victim-related materials and additional documents supporting the superseding indictment.  It anticipates completing privacy redactions and finalizing the production within the next two to four weeks.  In addition, on August 14, 2018, the government identified and produced specific documents from the "Co-Star" hard drive the government believes are relevant and might be utilized at trial. The government will continue to produce, in the coming months, any additional, relevant Co-Star materials.

1   – the discovery materials that are the subject of this motion.  At its own expense, the
2   government produced the documents electronically, in industry-standard searchable
3   format, accompanied by detailed indices.  The government has also produced a subset of
4   "hot" documents; undertaken to produce advertisements relating to specific victims; and
5   offered the technical assistance of a DOJ discovery specialist.  By taking all of these steps,
6   the government has gone beyond its discovery obligations under Rule 16 and *Brady*.

7         Defendants assert that this is not enough – they claim that the law requires the
8   government to search these materials and pull out anything favorable to the defense.
9   Contrary to Defendants' assertions, the Ninth Circuit has recognized the government
10  generally has no obligation to "single out" particular pieces of exculpatory evidence.
11  *Rhoades v. Henry,* 638 F.3d 1027, 1039 and n.12 (9th Cir. 2011); *see also United States v.*
12  *Toomer*, 2018 WL 3745815, at *8 (D. Nev. Aug. 6, 2018) (rejecting defendant's assertion
13  "that because the amount of discovery is massive, the government must identify *Brady* and
14  *Giglio* material"; agreeing that the government has "no additional duty to identify
15  potentially defense-favorable information from the disclosed materials because [the
16  defendant's] lawyers are best suited to determine the usefulness of the information") (citing
17  *Rhoades*, 638 F.3d at 1039 n.12); *United States v. AU Optronics Corp.,* 2011 WL 6778520,
18  at *1 (N.D. Cal. Dec. 23, 2011) (denying defense motion to compel government to identify
19  *Brady* materials in 37 million pages of discovery; holding that the government typically
20  has no obligation to single out particular pieces of exculpatory evidence); *United States v.*
21  *Dunning*, 2009 WL 3815739, at *1 (D. Ariz. Nov. 12, 2009) ("Here, the Government is
22  not suppressing any information because Dunning has the same access to the [hard drives]
23  that the Government does.  *Brady* does not mean that the Government must take the
24  evidence that it has already disclosed to Defendant, sift through this evidence, and organize
25  it for Defendant's convenience."); *United States v. W.R. Grace,* 401 F. Supp. 2d 1069,
26  1080-81 (D. Mont. 2005) (government complied with discovery obligations by producing
27  3,389,109 pages in electronically searchable format; "[a]s it relates to the manner of
28  production, *Brady* simply requires that information be produced in such a way that it will

be of value to the accused"). *Cf. United States v. Slade*, 2011 WL 5291757, at *4 (D. Ariz. Sept. 30, 2011) (denying Rule 48(b) dismissal where "the discovery has been provided to Defendants in a timely fashion, much of the discovery is comprised of [defendants'] documents, and the Government has gone to great lengths to ensure that the discovery provided is organized and reasonably searchable").

Every Circuit Court and the vast majority of district courts that have considered similar requests have held that the government has no obligation to cull through discovery it has produced to find material potentially helpful to the defense. *See, e.g., United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) ("[D]efendants contend that the government was obliged to sift fastidiously through the evidence – the vast majority of which came from Berkeley itself – in an attempt to locate anything favorable to the defense. This argument comes up empty."); *United States v. Skilling*, 554 F.3d 529, 576-77 (5th Cir. 2009) (no *Brady* violation where government produced several hundred million pages of documents in searchable electronic form), *reversed in part on other grounds*, 561 U.S. 358 (2010); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) (*Brady* "permit[s] the government to make information within its control available for inspection by the defense, and impose[s] no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed"); *United States v. Mmahat*, 106 F.3d 89, 94 (5th Cir. 1997) (where government gave defense access to 500,000 pages of documents, no obligation arose under *Brady* to "point the defense to specific documents within a larger mass of material that it has already turned over"), *abrogated on other grounds*, *United States v. Estate of Parsons*, 367 F.3d 409 (5th Cir. 2004); *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996) (no *Brady* violation where defendants had same opportunity as government to discover the identified documents "through the exercise of reasonable diligence"); *United States v. McGill*, 2016 WL 48214, at *10 (E.D. Penn. Jan. 5, 2016) (rejecting defense assertion that government had duty to specifically identify *Brady* and *Giglio* material within voluminous discovery materials, where government provided the discovery "in a form that could easily be loaded

into and searched through an electronic database," provided discovery logs, and made personnel available to assist during the defense's review, and where defendant was not detained and was available to assist defense counsel in reviewing the documents); *United States v. Weaver*, 992 F. Supp. 2d 152, 156 (E.D.N.Y. 2014) (denying motion for itemization of *Brady* material where the government "provided detailed indices for all the materials it produced, the majority of which were provided in both PDF and 'load-ready' file format that could be easily searched"); *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 457 (S.D.N.Y. 2011) ("the Government has provided Defendants with access to all potential *Brady* material and has taken additional steps to facilitate Defendants' review of that material" by providing "searchable electronic productions," "indices describing documents related to the Featured Transactions" and "indices of audio recordings").[6]

These cases all hold that the government is neither responsible for preparing the defense nor in a better position to identify exculpatory material than the defense.  For example, a defendant in the Enron case who stood trial less than two years after indictment, argued – like Defendants here – that the volume of discovery prevented the effective review of the government's disclosure.  *Skilling*, 554 F.3d at 576.  The Fifth Circuit refused to order the government to cull favorable material from several hundred millions of pages of documents (a far greater amount than here), holding "the government was in no better position to locate any potentially exculpatory evidence."  *Id.* at 577.  The Southern District of New York has similarly held:

> Placing a higher burden on the Government to uncover such evidence would place prosecutors in the untenable position of having to prepare both sides of the case at once.  Indeed, the adversarial system presumes that the defense will be more highly motivated to uncover exculpatory evidence, so if anything the onus is on defense counsel to conduct a more diligent search for material potentially favorable to his client.   This is especially true

---

[6] *Accord United States v. Mohammad*, 2012 WL 1605472, at *2 n.3 (N.D. Ohio May 8, 2012); *United States v. Ohle*, 2011 WL 651849, at *4 (S.D.N.Y. Feb. 7, 2011); *United States v. Ferguson*, 478 F. Supp. 2d 220, 242 (D. Conn. 2007); *United States v. Eisenberg*, 773 F. Supp. 662, 687-88 (D.N.J. 1991).

1    considering that, if exculpatory evidence exists, the defense is in the best
     position to know what such evidence might be and where it might be located.

2    *Ohle*, 2011 WL 651849 at \*4.

3        In addition to *Skilling*, several cases with similar holdings have involved discovery

4    dwarfing the amount involved here. *See, e.g., AU Optronics Corp.*, 2011 WL 6778520 at

5    \*1 (37 million pages); *Simpson*, 2011 WL 978235 at \*8-\*9 (200 terabytes); *Dunning*, 2009

6    WL 3815739 at \*1 (holding, in a case involving 22 hard drives of discovery, that "*Brady*

7    does not mean that the Government must take the evidence that it has already disclosed to

8    Defendant, sift through this evidence, and organize it for Defendant's convenience").

9        The contrary district court cases Defendants cite are easily distinguishable. *Cf.* CR

10   273 at 5-9.   In *United States v. Hsia*, 24 F. Supp. 2d 14, 28-30 (D.D.C. 1998), the

11   government produced 600,000 hardcopy documents to a sole defendant.   The court

12   indicated that the government had not even provided the defendant with an index that

13   would allow her to find her own statements without going through the 600,000 documents.

14   *Id*. at 28.   Here, in contrast, the government has produced discovery in an electronic,

15   searchable format, accompanied by detailed indices, to seven defendants.  CR 273-1 at 1.

16       In *United States v. Salyer,* 2010 WL 3036444, at \*3, \*6, (E.D. Cal. Aug. 2, 2010),

17   while much of the government's discovery was produced in searchable electronic format,

18   the government also produced "hard paper information [that] fills more than two 'pods'

19   (storage containers)," and there was "further documentation stored in F.B.I. offices." *Id.*

20   at \*3.   Moreover, the case involved "a singular, individual defendant, who is detained in

21   jail pending trial, and who is represented by a relatively small defense team." *Id.* at \*7.

22   The defendant had "little practical ability in the jail setting to be of much assistance in the

23   search as he can do no document review, either hard copy or electronically, absent the

24   physical presence of counsel in jail." *Id.* at \*7.   The court contrasted the defendant's

25   situation with *W.R. Grace*, 401 F. Supp. 2d at 1080, where the district court refused to

26   order the government to itemize *Brady* materials in part because "there were multiple

27   defendants in that criminal case with some overlapping discovery needs, and [ ] the

28   defendants were apparently not detained pending trial making their search for *Brady*

materials much easier."  2010 WL 3036444, at *6.

Like *W.R. Grace* and unlike *Salyer*, there are multiple defendants in this case, none of whom are in detention.  Moreover, in contrast to Salyer's "small defense team," the six Defendants who filed or joined the instant motion are represented by at least six different law firms.  *See* CR 273-1 at 2.  Courts have cited multiple defendants with mutually aligned interests as a factor in refusing to order the government to identify material favorable to the defense in produced discovery.  *See AU Optronics*, 2011 WL 6778520 at *2; *Rubin/Chambers*, 825 F. Supp. 2d at 456; *W.R. Grace*, 401 F. Supp. 2d at 1081.  Perhaps most importantly, *Salyer* predates the nationwide ESI Protocols – and, as discussed above, the government has complied with the ESI Protocols here.

*United States v. Cutting*, 2017 WL 132403 (N.D. Cal. Jan. 12, 2017), likewise could not be more different.  Unlike here, the defendant in *Cutting* filed a declaration from an e-discovery vendor averring that the government's ESI production "suffer[ed] from a number of technical issues which materially degrade [defense counsel's] ability to search and review that discovery."  *Id*. at *5.  The declaration itemized numerous categories of problems with the production, and the government provided no rebuttal.  *Id.* at *6.  Moreover, the government's representations regarding the completeness of its earlier productions were incorrect, and the government later produced an additional 23 boxes of materials, including the defendant's own emails.  *Id*. at *10.  "Under all of these circumstances," the court ordered the government to identify the *Brady*/*Giglio* material in the produced discovery.  *Id*.  The record here is devoid of any of these factors.

In *United States v. Blankenship*, 2015 WL 3687864 (S.D.W.Va. June 12, 2015), the sole defendant alleged the government provided a "massive," "unorganized" and "jumbled" production of four million pages of documents five months before trial.  *Id*. at *3, *5.  There was no indication the government had taken any steps to facilitate the defendant's review by, for example, producing "hot documents" or indices.  *Id*. at *6.  Although the court continued the trial date, it found that the nature of the production justified an order requiring the government to designate *Brady* material in the produced

documents.  *Id*. at \*7.  Unlike in *Blankenship*, the government here provided precisely the kind of assistance that Blankenship lacked, including organized e-discovery productions, "hot document" disclosures and detailed indices.  Where – as here – the government has provided electronically-searchable discovery and taken additional steps to facilitate the defendants' review, *Brady* itemization is *not* required.

## III.   DEFENDANTS' REMAINING ASSERTIONS LACK MERIT.

Defendants assert that, among their numerous law firms, only Davis Wright Tremaine, LLP (DWT) has Relativity – and even that firm lacks "sufficient infrastructure" to handle "the Backpage-related materials."  CR 273 at 3 and n.1.  Defendants then assert that the government's motion to disqualify DWT could "eliminate what access and hosting capabilities [Defendants] currently have for use of Relativity."  CR 273 at 3.  Defendants' suggestion that they wish to involve DWT in fact discovery appears at odds with their representations, in response to the disqualification motion, about the scope of DWT's involvement in this case.  *Cf.* CR 180 at 9 ("DWT's role will be (as it has been) to address issues concerning the First Amendment, free speech and protections for Internet providers and users, and *not* as trial counsel.").

Defendants assert the cost of setting up and using Relativity would approach $800,000 from now until the trial date.  CR 273 at 3 and n.1.  However, Defendants' motion is devoid of any cost estimates from any identified e-discovery vendor, and the motion does not discuss if Defendants obtained multiple estimates.  Moreover, Defendants do not suggest any alternatives to the industry-standard Relativity format used by the government – the format *Defendants* initially accepted.  *See* ESI Protocol, Recommendations at 1 ("the producing party should produce its ESI discovery materials in industry standard formats" and "is not obligated to undertake additional processing desired by the receiving party that is not part of the producing party's own case preparation or discovery production").  Defendants must either incur necessary e-discovery expenses on their own, or apply for assistance through the Criminal Justice Act. 18 U.S.C. § 3006A(e)(1).  *See, e.g.*, *Criminal E-Discovery: A Pocket Guide for Judges* at 6 n.15 (Federal Judicial Center 2015), available

- 12 -

at https://www.fjc.gov/sites/default/files/2016/Criminal%20e-Discovery.pdf ("The [CJA] can authorize payment of e-discovery review costs…regardless of whether a defendant can otherwise afford retained counsel. 18 U.S.C. § 3006A(e)(1) allows retained counsel to apply for services to be paid through the CJA system."). Given the pervasiveness of e-discovery in modern litigation, and particularly in a case involving possibly the largest prostitution-related website ever known to the Internet, Defendants cannot shirk their obligation to participate in e-discovery based on unsupported assertions about the cost of review.

<div align="center"><b>CONCLUSION</b></div>

For the foregoing reasons, the Motion for Itemization of *Brady*/*Giglio* Material (CR 273) should be denied.


Respectfully submitted this 4th day of September, 2018.

<div style="margin-left:40%">

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

*/s Peter S. Kozinets*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA

Assistant U.S. Attorneys

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

</div>

1

## **Certificate of Service**

2

3        I hereby certify that on this date, I electronically transmitted the attached document
to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of
4   Electronic Filing to the following CM/ECF registrants: Anne Chapman, Erin McCampbell,
Gregory Zamora, James Grant, Larry Debus, Lawrence Kazan, Lee Stein, Paul Cambria,
5   Robert Corn-Revere, Ronald London, Janey Henze Cook, John Littrell, Kenneth Miller,
Thomas Bienart, Jr., Bruce Feder, Michael Kimerer, Rhonda Neff, KC Maxwell, David
6   Wakukawa, Michael Piccarreta, Stephen Weiss.

7

8   *s/ Melody A. Karmgard*

9   U.S. Attorney's Office

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28