# EXHIBIT 4A



February 26, 2019

**<u>Via E-Mail</u>**
Reggie Jones
Assistant U.S. Attorney
E-Mail: reginald.jones4@usdoj.gov

> Re:  *United States v. Lacey, et al.,* **18-CR-0422-PHX-SPL**
>       **Backpage.com Server Discovery**

Mr. Jones:

Thank you, Matt Frost, SA Amy Fryberger, and SA Desirae Tolhurst again for speaking with us about the Backpage.com server discovery on February 20, 2019. This letter is a follow-up from that phone call. The following is a summary of the issues that we discussed and is our understanding of the server discovery.

    1.  Approximately 500 terabytes ("TB") of data of Backpage.com servers exist, consisting of approximately 80 servers from Tucson, Amsterdam, and Dallas.

    2.  The government currently has twelve servers in its possession – nine from Amsterdam and three from Dallas.

        a.  Of the nine servers from Amsterdam, two are "masters," three are "slaves," three are "images," and the ninth is a backup server with 120 TB of data that has not been imaged. The government initiated the process of seizing these nine servers from Amsterdam in June 2018.

        b.  The three Dallas servers include antivirus servers and front-end servers used to render what appeared on the website. The government had been told the Backpage.com payment processing servers were in Dallas, but upon reviewing the Dallas servers, no payment processing databases are in any of the three Dallas servers in the government's possession. The government has not yet located the payment processing databases or servers.

        c.  The government has imaged five of the twelve servers in its possession and will soon produce the raw data from these five servers in discovery. These five servers consist of over 50 hard drives and approximately 60 TB of data. This forthcoming production will include a marketplace database. This marketplace database does not contain images or payment information associated with an ad. The administrative data associated with an individual ad is scattered across various databases but can be pieced together by going through each database. However, the images are uploaded to a separate location. The data is in file formats that cannot be read by the standard PC. Discovery from these five servers will be shipped to the FBI Phoenix office and available for pick-up or delivery shortly. Mr. Jones will provide some possible dates for pick-up.

    3.  There are approximately 31 servers that remain in Amsterdam and are hung up in the MLAT process. The government does not know what is contained in these servers. The government seized these servers in October 2018. The government has been told that it takes about 3-6 months to get before a Dutch judge as part of the MLAT process. After the evidence is released by a Dutch judge,

903 Calle Amanecer, Suite 350 • San Clemente, CA 92673<br>Tel. (949) 369-3700 • Fax (949) 369-3701



it can be shipped through diplomatic servers back to the United States.  Once the servers are received, they can begin to be forensically imaged.

   a.   Imaging of data is itself a laborious process.  For example, one Backpage.com image server that was approximately 8 TB in size contained hundreds of millions of pictures, and it took five weeks for the government to review and copy this data.  The length of time it takes to image a server owes, in part, to the complicated and layered structure of the servers and hard drives.  Additionally, the government's ability to copy the data is limited by time and resources.

   4.   The government believes that the approximately 40 servers from Tucson contain the same data as the 40 servers from Amsterdam.  The government intends to only image and produce discovery from one set of servers.

   5.   The government offered to prioritize server discovery production as requested by defense counsel.  To provide the government with prioritization requests, defense counsel asked for a list of all servers with information about where they are from and what they are expected to contain.  The government cannot provide such a list because the government does not have this information.

   a.   Defense counsel then asked for samples of 50-100 advertisements as such advertisement now appear in the data the government has imaged.  Defense counsel also asked if the government would provide the discrete parts of all advertisements that are the subject of counts in the Superseding Indictment.  You indicated that you would work with Mr. Frost to provide some samples of advertisements as they now appear in the data the government will produce; however, today, you advised that Mr. Frost has been out of the office so you will provide these samples by the end of this week or by early next week.

   6.   Some additional questions remain:
   a.   Does the government have an estimate for the date by which it expects to produce all of the outstanding ~500 TB of server discovery?
   b.   Why did the government take the relational Backpage.com servers down?

   Thank you in advance for your timely attention to this matter.  We look forward to the samples, picking up the first server discovery production (which you informed us is ready for pick-up as of today), and hearing back from you with answers to the questions in subpoint 6.  Please also feel free to reach me at (949) 369-3700.

Very truly yours,

Whitney Z. Bernstein
Bienert | Katzman PLC

cc:   Paul Cambria, Jr.
   Thomas H. Bienert, Jr.
   Bruce Feder
   Gary Lincenberg
   Michael Piccarreta
   Stephen M. Weiss