ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-18-422-PHX-SMB |
| Plaintiff, | **UNITED STATES' STATUS MEMORANDUM** |
| v. | |
| Michael Lacey, et al., | **[Status Conference set for April 23, 2019, 2:30 p.m.]** |
| Defendants. | |

## I.      Government's Second Status Memorandum

On January 18, 2019, the government filed its first status memorandum detailing its compliance with the Court-issued Scheduling Order deadlines.  (CR 444; *see* CR 131 (Scheduling Order)).  Also, on January 18, 2019, Defendants' filed a mislabeled "Joint Status Report" that in actuality was a motion seeking a four-month delay of their

Scheduling Order deadlines.  In their motion, Defendants contended they needed a continuance because all of their "assets have been seized, virtually, all of the money in their attorneys' trust accounts designated to fund the defense has been seized or is effectively frozen, and the defendants are currently litigating those issues in the Central District of California and Ninth Circuit Court so they can continue to fund their defense." Defendants also asserted that a four-month continuance would allow the Central District of California (CDCA) and/or Ninth Circuit time to address these challenges.  (CR 443 at 3).

On January 23, 2019, the government filed a response to Defendants' motion and opposed the requested continuance because: (1) Defendants had not made a showing that they lacked sufficient untainted funds to continue with their current counsel; (2) the timeline for resolving their litigation in the CDCA and the Ninth Circuit regarding the government's pre-trial seizure of assets linked to Backpage.com, LLC (Backpage) was unknowable; and (3) the government vigorously disagreed with Defendants' belief that they would be successful in the CDCA and/or Ninth Circuit.  (*See* CR 446 at 1-3).

On January 25, 2019, Judge Logan conducted a status conference, heard argument from the government and Defendants, and denied Defendants' motion for a four-month continuance.  (*See* CR 448; *see also* CR 459 Tr. 1/25/19 at 66-67 (Judge Logan: "This Court is in receipt of Document Number 443, which is the defendants' joint status report. This court, after reading the 15-page document several times, I will consider it as a motion requesting a continuance or as was described earlier by Mr. Piccarreta, a request to stay the defendants' obligations. . . . After carefully considering all of the issues, the motion . . . will be denied.  The current deadlines in the scheduling order that are spelled out in Document Number 131, the government and defense, I am ordering you both to continue to meet those deadlines.  In the event that the Ninth Circuit Court of Appeals comes out with a decision, and that decision is one in which this District Court needs to act on it based on if funds are freed or whatever way that they decide the case and send it back to the District Court, I look forward to weighing in on those issues.")).

Since the January 25, 2019, status conference, the government has continued to comply with Court-ordered scheduling deadlines as set forth below.

**II.     Discovery**

On February 22, 2019, the government provided Defendants with, among other documents, approximately 75 reports of witness interviews and Jencks statements.  (*See* Exhibit A). The government provided Defendants with additional documents, including approximately 10 additional reports of witness interviews, on March 14, 2019.  (*See* Exhibit B).

Moreover, on March 18, 2019, the government informed Defendants Michael Lacey and James Larkin that their personal device data seized pursuant to a court-authorized search warrant was available for pick-up at an FBI facility in Phoenix.  (*See* Exhibit C). The government also informed all Defendants that additional Backpage cloud service data was available for pick-up at an FBI facility in Phoenix. (*See* Exhibit D).[1]  The government had indicated to Defendants and the Court at the status conference that this data would be forthcoming.  (*See* CR 459 Tr. 1/25/19 at 14 (Mr. Jones: "Now that our filter protocol has been reviewed, we have a few categories, documents, i.e., the defendants tax records, [documents from a] third-party IT firm, Your Honor, and also some of the personal devices that need to go through that attorney filter review.  But those documents should be disseminated to them as well within the next couple of months or so since the filter protocol is in place.")).  However, on February 11, 2018, Defendants requested the government provide them "a listing of all attorneys, firm names, etc. that the taint team is using in its search to remove privileged matters." Defendants further requested to "review this list in case some names had been inadvertently omitted and thus potentially exposing members of the prosecution team to privileged materials." (*See* Exhibit E).   The government subsequently provided Defendants a list of more than 265 terms (*See* CR 269-8, Exhibit

---

[1] In a meet and confer session with counsel for Defendant Larkin on April 9, 2019, counsel indicated that she would pick-up the aforementioned data the week of April 22, 2019.

H) related to attorney representation that it had segregated through its filter review, that the Court had previously found sufficient to reasonably identify any privileged documents present in its discovery materials. (*See* Court's order approving government's filter review; CR 445). In order to prevent delay of any review Defendants might want to make of the materials, the government made these materials available to Defendants on March 18, 2019. On March 25, 2019, Defendants provided the government with a list of additional counsel "that should be screened as privileged and thus segregated from review by the government." (*See* Exhibit F). The government will conduct any review of the aforementioned materials after potentially privileged material has been segregated through the Court-approved filter protocol.[2]

On April 11, 2019, the government produced to Defendants the remaining BDO-Consulting as well as Epiq data. (*See* Exhibit G). The government will provide Defendants with exhibits of any of the above-mentioned data that it might utilize at trial.

To date, the government has provided Defendants with nearly all discovery nine months before trial.[3] In fact, approximately 90 percent of discovery in this case was provided to Defendants on May 24, 2018 – nearly 20 months prior to trial. (*See* CR 444; Exhibit A). Moreover, this discovery has been produced to Defendants in an electronic, load-ready, industry-standard format[4] – a format agreed to by all parties at the outset of the case. (*See* CR 137, Tr. 4/30/18).

Approximately 20 percent of discovery produced to Defendants are documents

---

[2] The government has added the additional names provided by Defendants on March 25, 2019, to its list of terms to be segregated through its filter review.

[3] Any remaining records produced by the government in this case will be nominal. However, as per the Court-issued Scheduling Order, any additional records obtained during pre-trial preparation shall be disclosed to Defendants as soon as possible. (*See* CR 121, p.1 at 27-28 ("If additional records are discovered by, or disclosed to, the government during pretrial preparation or otherwise, pursuant to Rule 16(c), Fed. R. Crim. P., the government shall promptly disclose any additional documentary evidence or materials to the defense as soon as practicable after such disclosure or discovery occurs.")).

[4] This format allows documents to be easily searched by text or metadata fields (e.g., email date, sender, etc.).

Defendants previously provided the U.S. Senate Permanent Subcommittee on Investigations (PSI) in 2016 as part of its investigation into Backpage,[5] and were subsequently compelled by the Arizona District Court to be produced to the government in September 2017 as part of the USAO 108 subpoena litigation. (*See* CR 444, Exhibit B). Consequently, Defendants have been in possession of these records for at least two and a half years.

Another nearly 60 percent of discovery provided to Defendants originated from a source from which the government agreed to disclose to Defendants materials that it might utilize from that source at trial; the government disclosed the more than 100 pages of such materials from that source to Defendants more than eight months ago. (*See* CR 444, Exhibit C). In sum, nearly 80 percent of discovery provided to Defendants in this case are either documents Defendants previously produced to the government, or a category of materials whereby the government has provided Defendants with any documents the government might utilize at trial.

The government has also taken several additional steps to facilitate Defendants' review of discovery in this case. Among other things, the government:

(1) Made available a Department of Justice (DOJ) discovery specialist to assist Defendants with technical questions;[6]

(2) Provided detailed indexes to the discovery consisting of nearly 40 categories denoting the source from which the materials were obtained;

---

[5] Declaration of Breena Ross, *Senate Permanent Subcommittee on Investigations v. Carl Ferrer*, Misc. No. 1:16-mc-00625-RMC (D.D.C. Nov. 30, 2016).

[6] To date, the only technical issue involving accessing discovery in the agreed industry-standard platform Defendants have asserted is a February 28, 2019, letter wherein they contended that 2,744 documents that had been provided to them more than nine months prior could not be loaded into their discovery database. (*See* Exhibit I). The government promptly looked into the matter and on March 6, 2019, notified Defendants that the 2,744 documents at issue had been provided to them in the same manner they were produced to the government, and that the 2,744 files could be loaded into and viewed in a discovery database such as the platform both parties agreed at the outset of the case would be used to produce discovery. The government also located and viewed a sampling of the 2,744 documents in its discovery database without issue. (*See* Exhibit J).

(3) Produced subsets of approximately 1,500 "hot documents" – documents specifically related to the allegations in the Superseding Indictment to all Defendants approximately 18 months prior to trial;  (*See* CR 444, Exhibits D and E); and

(4) Provided counsel for a number of Defendants (upon request) with subsets of "hot documents" specifically related to the allegations in the Superseding Indictment against their respective clients; the government has also offered to meet (and have met with several Defendants) with Defendants to discuss its theory of the case and the allegations against the Defendants in detail.  (*See* CR 444, Exhibits F, G, H, and I).

## III.   Backpage Server Data

 On March 7, 2019, the government sent Defendants a letter summarizing its handling of the Backpage server data to date.  (*See* Exhibit H).  As detailed in this letter, the government has 46 Backpage servers in its possession.  Backpage operated as a classified advertising website for a decade and a half so the government is certain Defendants are familiar with the data (including ads and images) hosted on its servers.  The Court also shared this view and expressed such at the 1/25/19 status hearing.  (CR 459, Tr. 1/25/19, p.22 (Judge Logan: "Who is familiar with those documents that Mr. Jones and Mr. Rapp just proffered on the record?  Is anybody?  Has anybody heard of a Backpage ad?  Is anybody familiar with Backpage, with what they do as it relates to ads?  Would anyone argue that if Backpage is responsible for receiving compensation to post an ad, Backpage should know about the ad?  Would everyone agree with that?")).  However, (as it has done throughout this case) the government went above and beyond its discovery obligations under Federal Rule Criminal Procedure Rule 16, and extracted all of the marketplace database files (i.e., all of the ads that were on Backpage.com) from the servers and imaged the server containing all of the Backpage images in order to assist Defendants in any review they would like to conduct of server data.  The extracted ad and image data were made available to Defendants on March 7, 2019.

Additionally – although the government had previously provided Defendants with Backpage ads that are referenced in the Superseding Indictment – on March 14, 2019 (as

per Defendants request), the government provided Defendants a sampling of approximately 70 Backpage ads referenced in counts in the Superseding Indictment as the ads appear in the server data the government imaged.  (*See* Exhibit K).  Moreover, the government has made all Backpage servers in its possession available for defense inspection, in accordance with Federal Rule of Criminal Procedure 16(a)(1)(E).[7]

The government is awaiting receipt of approximately 60 additional servers from Amsterdam through the Mutual Legal Assistance Treaty ("MLAT") process.  The government has been informed by the former Chief Technology Officer for Backpage that the 60 additional servers contain largely duplicate data from the servers currently in the government's possession (and has been made available to defense), as well as Backpage payment processing data. (*See* Exhibit H at 2).  These servers are expected to arrive within the next month or so and will be available for Defendants' inspection at an FBI facility. Also, given the voluminous amount of Backpage server data, the government has agreed to provide Defendants with exhibits of any server data it might utilize at trial to assist Defendants in focusing their efforts and attention on server data relevant to the case.  (*See* Exhibit H at 3).  This is in addition to the entire marketplace of Backpage ads, images, and email data that the government has already extracted and provided Defendants. Based on the foregoing, it is indisputable that the government has exceeded its discovery obligations in facilitating Defendants' review of materials in this case.

**IV.    Initial Expert Disclosures**

On March 14, 2019, Defendants filed their notice of expert witnesses.  (*See* CR 500).[8]

---

[7] Defendants are scheduled to inspect the Backpage servers located in Pocatello on April 18, 2019.  Additionally, Defendants are scheduled to inspect the Backpage servers located at FBI Phoenix the week of April 22, 2019.

[8] As indicated in its January 18, 2019 status memorandum, the government filed its notice of expert witnesses on December 14, 2018 – providing Defendants with an overview of the individuals and subjects that it may seek to present evidence of by way of expert testimony.  (*See* CR 422).

## V.     Reciprocal Rule 16 Discovery

On March 4, 2019, Defendants provided the government with more than 4,400 pages of reciprocal discovery.   (*See* Exhibit L).   Defendants' transmittal letter accompanying the reciprocal discovery contained a number of inaccuracies regarding Backpage server data which the government addressed in its March 7, 2019 letter to Defendants. (*See* Exhibit H).   Additionally, Defendants' assertions in its transmittal letter that the government has not complied with the deadlines set forth in the Scheduling Order are also misplaced.   Discovery provided to Defendants since the government's initial discovery deadline of December 3, 2018 (i.e., the government's productions on February 22, 2019, March 14th, 2019, and April 11th, 2019) represent less than zero and thirteen thousandths of one percent (0.013) of discovery produced in this case and is certainly in line with the government's representation to the Court at the January 25, 2019 status conference that it had already produced over 90 percent of discovery to Defendants in the case.  (*See* CR 459 Tr. 1/25/19 at 13 (Judge Logan: "Percentage-wise, how much discovery has been given to the defense?  How much was given by the 3rd of December of 2018?")). In response, the government indicated that other than documents subject to the government's filter protocol and the server data (which have now been made available to Defendants), more than 90 percent of discovery had been provided to Defendants by December 3, 2018 (more than 13 months before trial).  (*See* CR 459 Tr. 1/25/19 at 14. (Mr. Jones: "To answer your question [your Honor], first, other than these two outstanding areas that I'm about to address, [documents subject to filter protocol and server data], more than 90 percent of the discovery has been given to defendants to date.")).

Moreover, as previously indicated, the government has agreed to provide Defendants with exhibits of any of these materials it might utilize at trial months prior to the commencement of trial.   Thus, any contention that the government has somehow shirked or failed to comply with its discovery obligations is simply inaccurate.

## VI.     Preliminary Exhibit and Witness List

On April 1, 2019, more than nine months prior to trial, the government disclosed its

preliminary witness and exhibit list to Defendants and agreed to periodically provide updated and revised preliminary exhibit and witness list to Defendants in the coming months.   (CR 511). The vast majority of the government's exhibits are documents Defendants disclosed to the Senate Permanent Subcommittee in the fall of 2016, and were compelled to re-disclose to the government in September 2017.  As a result, Defendants have been in possession of most of the government's trial exhibits for at least the past two and a half years.

## VII.   Pending Motions

The parties await the Court's ruling on the following motions: (1) Defendants' Motion for Further Clarification Regarding CR 445 Order Allowing the Government to Continue Review of Privileged Communications **(CR 452)**; (2) Defendants' Motion for Designation of 39 Documents Subject to this Court's Destruction Order to be Preserved as Part of the *In Camera* Record in the Prosecution **(CR 453)**[9]; (3) Defendants' Motion to Dismiss Due to Government Interference with Right to Counsel and Request for Disclosure or, in the Alternative Motion to Withdraw **(CR 456)**; Defendants' Motion for Hearing Regarding CR 456 **(CR 501)**; and Defendant Michael Lacey's Motion to Modify Conditions of Release **(CR 503)**.

## VIII.   Upcoming Deadlines:

A. May 27, 2019 – Defendants' production of Rule 26.2 material as to intended witnesses, if any, is due;

B. June 17, 2019 – Government's rebuttal expert disclosures, if any, are due;

C. July 1, 2019 – Defendants' disclosure of preliminary exhibit and witness list is

---

[9] The government previously responded to this motion requesting the Court Order Defendants Michael Lacey, James Larkin, Scott Spear, and Andrew Padilla to destroy the 39 inadvertently-disclosed documents ordered destroyed within 24 hours or be ordered to show cause why they are not in contempt of the Court's January (CR 449) Order. (CR 466). Defendants Lacey, Larkin, Spear, and Padilla have since filed replies to CR 466 indicating that they have destroyed the 39 inadvertently-disclosed documents at issue. (CR 468, 469, 474, and 475). Therefore, the only outstanding issue pertaining to this motion is whether the Court requests the government to file all of the inadvertently-disclosed documents *ex parte under seal* for the *in camera* record in the case.

1      due;

2      D. July 15, 2019 – Substantive motions filing deadline; Government's rebuttal

3      exhibit and witness list due.

4  **IX.   Conclusion**

5      As articulated above, the government has promptly fulfilled its obligations under

6  the Scheduling Order.  By the January 15, 2020 trial, Defendants will have had access to

7  the vast majority of discovery in this case for nearly 20 months, and most of the

8  government's trial exhibits for more than two and a half years.  The government's

9  discovery production has been accompanied by detailed indexes denoting the source from

10 which the materials were obtained.  The government has also assisted Defendants in

11 understanding its key evidence by providing subsets of "hot documents" to all Defendants

12 more than 18 months before trial, and even went a step further by providing counsel for a

13 number of Defendants with subsets of "hot documents" specifically related to the

14 allegations in the Superseding Indictment against their respective clients.  The government

15 has also offered to meet and have met with Defendants to discuss its theory of the case,

16 key evidence, and the allegations against the Defendants in great detail. The 90-page

17 Superseding Indictment (CR 230) also clearly identified the government's theory in this

18 case and discussed some of the most important pieces of the government's evidence.

19     Additionally, the government has extracted all of the Backpage ads contained on

20 servers for Defendants and even provided Defendants samples of ads as they appear in the

21 server data that are referenced in counts in the Superseding Indictment.  The government

22 has also agreed to provide Defendants with exhibits of any server data it might utilize at

23 trial months prior to the commencement of trial.  Further, the government provided

24 Defendants with a preliminary witness and exhibit list more than nine months before trial

25 that it will continue to update and provide to Defendants periodically within the coming

26 months.  It has also promptly responded to Defendants' request for assistance and made

27 available a DOJ discovery specialist to assist Defendants with any technical issues.

28     In sum, the government has expended significant resources with the expectation that

trial will begin January 15, 2020.  The Court set this firm trial date nearly two years post-indictment in this case because of the time Defendants asserted they needed to prepare for trial. The government's witnesses (including numerous sex trafficking victims) have cleared their schedules to be available for trial to begin on this date.  To this end, the government will continue to work diligently to comply with the Scheduling Order, and will also continue to work with Defendants over the course of the next months leading up to trial to facilitate Defendants' review of materials in this case.

Respectfully submitted this 16th day of April, 2019.

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

*s/Reginald E. Jones*
REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
JOHN J. KUCERA
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, April 16, 2019, I transmitted the foregoing under-seal document for filing to the Clerk of the United States District Court and sent a copy via electronic mail to: Paul J. Cambria Jr. Esq. and Erin e. McCambpell, Esq., Lipsitz Green Scime Cambria, LLC, 42 Deleware Ave, Suite 120, Buffalo, NY 14202, **pcambria@lglaw.com** and **emccampbell@lglaw.com**, Thomas H. Bienert, Jr., Esq., Anthony R. Bisconti, Esq., Kenneth M. Miller, Esq., and Whitney Bernstein, Esq., Bienart, Miller & Katzman, PLC, 903 Calle Amanecer, Suite 350, San Clemente, CA 92673, **tbienert@bmkattorneys.com,                    tbisconti@bmkattorneys.com, kmiller@bmkattorneys.com, wbernstein@bmkattorneys.com**; Mike Piccarreta, Esq., Piccarreta Davis Keenan Fidel, PC, 2 East Congress Street, Suite 1000, Tucson, AZ 85701, **mlp@pd-law.com**; Jim Grant Esq., Davis Wright Termaine, LLP, 1201 Third Avenue, Suite 2200, Seattle, WA 98101, **jimgrant@dwt.com**; Michael D. Kimerer, Esq. and Rhonda Elaine Neff, Esq., 1313 E. Osborn Road, Suite 100, Phoenix, AZ 85014, **MDK@kimerer.com** and **rneff@kimerer.com**; Steve Weiss Esq., Karp & Weiss, PC, 3060 North Swan Rd., Tucson, AZ 85712, **sweiss@karpweiss.com;** Robert Corn-Revere Esq., Davis Wright Termaine, LLP, 1919 Pennsylvania Avenue N.W., Suite 800, Washington, D.C., 20006, **bobcornrevere@dwt.com**; Bruce Feder, Esq., 2930 East Camelback Road, Suite 160, Phoenix, AZ 85016, **bf@federlawpa.com**; Gary Linenberg, Esq., Ariel Neuman, Esq., Gopi K. Panchapakesan, Esq., Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C., 1875 Century Park East, 23rd Floor, Los Angeles, CA 90067, **glincenberg@birdmarella.com, aan@birdmarella.com, gkp@birdmarella.com.**

_s/ Angela Schuetta_
Angela Schuetta
U.S. Attorney's Office