EXHIBIT 3B

# AMERICAN BAR ASSOCIATION

STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY

**Formal Opinion 480**                                                                 **March 6, 2018**

### Confidentiality Obligations for Lawyer Blogging and Other Public Commentary

*Lawyers who blog or engage in other public commentary may not reveal information relating to a representation, including information contained in a public record, unless authorized by a provision of the Model Rules.[1]*

## Introduction

Lawyers comment on legal topics in various formats.  The newest format is online publications such as blogs,[2] listserves, online articles, website postings, and brief online statements or microblogs (such as Twitter®) that "followers" (people who subscribe to a writer's online musings) read.  Lawyers continue to present education programs and discuss legal topics in articles and chapters in traditional print media such as magazines, treatises, law firm white papers, and law reviews.  They also make public remarks in online informational videos such as webinars and podcasts (collectively "public commentary").[3]

Lawyers who communicate about legal topics in public commentary must comply with the Model Rules of Professional Conduct, including the Rules regarding confidentiality of information relating to the representation of a client.  A lawyer must maintain the confidentiality of information relating to the representation of a client, unless that client has given informed consent to the disclosure, the disclosure is impliedly authorized to carry out the representation, or the disclosure is permitted by Rule 1.6(b).  A lawyer's public commentary may also implicate the lawyer's duties under other Rules, including Model Rules 3.5 (Impartiality and Decorum of the Tribunal) and 3.6 (Trial Publicity).

Online public commentary provides a way to share knowledge, opinions, experiences, and news. Many online forms of public commentary offer an interactive comment section, and, as such, are also a form of social media.[4]  While technological advances have altered how lawyers

---

[1] This opinion is based on the ABA Model Rules of Professional Conduct as amended by the ABA House of Delegates through August 2016 [hereinafter the "Model Rules"].  The laws, court rules, regulations, rules of professional conduct and opinions promulgated in individual jurisdictions are controlling.

[2] A "blog" is commonly understood to be a website consisting of written entries (posts) regularly updated and typically written in an informal or conversational style by an individual or small group.  As recently described in a California State Bar advisory opinion, "[b]logs written by lawyers run the gamut from those having nothing to do with the legal profession, to informational articles, to commentary on legal issues and the state of our system of justice, to self-promotional descriptions of the attorney's legal practice and courtroom successes to overt advertisements for the attorney or her law firm."  State Bar of Cal. Comm'n on Prof'l Responsibility & Conduct Op. 2016-196 (2016).

[3] These are just examples of public written communications but this opinion is not limited to these formats. This opinion does not address the various obligations that may arise under Model Rules 7.1-7.5 governing advertising and solicitation, but lawyers may wish to consider their potential application to specific communications.

[4] Lawyers should take care to avoid inadvertently forming attorney-client relationships with readers of their public commentary.  Although traditional print format commentary would not give rise to such concerns, lawyers interacting with readers through social media should be aware at least of its possibility.  A lawyer commenting publicly about a legal matter standing alone would not create a client-lawyer relationship with readers of the commentary.  *See* Model Rule 1.18 for duties to prospective clients.  However, the ability of readers/viewers to make comments or to

communicate, and therefore may raise unexpected practical questions, they do not alter lawyers' fundamental ethical obligations when engaging in public commentary.[5]

**Duty of Confidentiality Under Rule 1.6**

Model Rule 1.6(a) provides:

> A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

As Comment [2] emphasizes, "[a] fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, the lawyer must not reveal information relating to the representation."

This confidentiality rule "applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."[6] In other words, the scope of protection afforded by Rule 1.6 is far broader than attorney-client privileged information.

Unless one of the exceptions to Rule 1.6(a) is applicable, a lawyer is prohibited from commenting publicly about any information related to a representation. Even client identity is protected under Model Rule 1.6.[7] Rule 1.6(b) provides other exceptions to Rule 1.6(a).[8] However, because it is highly unlikely that a disclosure exception under Rule 1.6(b) would apply to a

---

ask questions suggests that, where practicable, a lawyer include appropriate disclaimers on websites, blogs and the like, such as "reading/viewing this information does not create an attorney-client relationship."

Lawyer blogging may also create a positional conflict. *See* D.C. Bar Op. 370 (2016) (discussing lawyers' use of social media advising that "[c]aution should be exercised when stating positions on issues, as those stated positions could be adverse to an interest of a client, thus inadvertently creating a conflict.") *See also* ELLEN J. BENNETT, ELIZABETH J. COHEN & HELEN W. GUNNARSSON, ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 148 (8th ed. 2015) (addressing positional conflicts). *See also* STEPHEN GILLERS, REGULATION OF LAWYERS: PROBLEMS OF LAW AND ETHICS 50-51 (11th ed. 2018) ("[S]ocial media presence can pose a risk for attorneys, who must be careful not to contradict their firm's official position on an issue in a pending case"). This opinion does not address positional conflicts.

[5] *Accord* D.C. Bar Op. 370 (2016) (stating that a lawyer who chooses to use social media must comply with ethics rules to the same extent as one communicating through more traditional forms of communication).

[6] MODEL RULES OF PROF'L CONDUCT R. 1.6 cmt. [3] (2017). There is also a general principle noted in the Restatement (Third) of the Law Governing Lawyers that "[c]onfidential client information does not include what a lawyer learns about the law, legal institutions such as courts and administrative agencies, and similar public matters in the course of representing clients." AMERICAN LAW INSTITUTE, RESTATEMENT OF THE LAW (THIRD) THE LAW GOVERNING LAWYERS §59, cmt. e (1998). It is beyond the scope of this opinion to define what specific elements will be considered to distinguish between protected client information and information about the law when they entwine.

[7] *See* Wis. Op. EF-17-02 (2017) ("a client's identity, as well as a former client's identity, is information protected by [Rule 1.6]"); State Bar of Nev. Comm'n on Ethics and Prof'l Responsibility Formal Op. 41, at 2 (2009) ("Even the mere identity of a client is protected by Rule 1.6."); State Bar of Ariz. Comm. on the Rules of Prof'l Conduct Op. 92-04 (1992) (explaining that a firm may not disclose list of client names with receivable amounts to a bank to obtain financing without client consent). *See also* MODEL RULES OF PROF'L CONDUCT R. 7.2 cmt. [2] (2017) & N.Y. Rules of Prof'l Conduct R. 7.1(b)(2) (requiring prior written consent to use a client name in advertising). *But see* Cal. Formal Op. 2011-182 (2011) ("…[I]n most situations, the identity of a client is not considered confidential and in such circumstances Attorney may disclose the fact of the representation to Prospective Client without Witness Client's consent.") (*citing to* LA County Bar Ass'n Prof'l Responsibility & Ethics Comm'n Op. 456 (1989)).

[8] *See* MODEL RULES OF PROF'L CONDUCT R. 1.6(b)(1)-(7) (2017).

lawyer's public commentary, we assume for this opinion that exceptions arising under Rule 1.6(b) are not applicable.[9]

Significantly, information about a client's representation contained in a court's order, for example, although contained in a public document or record, is *not* exempt from the lawyer's duty of confidentiality under Model Rule 1.6.[10]   The duty of confidentiality extends generally to information related to a representation whatever its source and without regard to the fact that others may be aware of or have access to such knowledge.[11]

A violation of Rule 1.6(a) is not avoided by describing public commentary as a "hypothetical" if there is a reasonable likelihood that a third party may ascertain the identity or situation of the client from the facts set forth in the hypothetical.[12]   Hence, if a lawyer uses a hypothetical when offering public commentary, the hypothetical should be constructed so that there is no such likelihood.

The salient point is that when a lawyer participates in public commentary that includes client information, if the lawyer has not secured the client's informed consent or the disclosure is

---

[9] For ethical issues raised when a lawyer is participating in an investigation or litigation and the lawyer makes extrajudicial statements, see *infra* at page 6.

[10] *See* ABA Formal Op. 479 (2017).  *See also In re* Anonymous, 932 N.E.2d 671 (Ind. 2010) (neither client's prior disclosure of information relating to her divorce representation to friends nor availability of information in police reports and other public records absolved lawyer of violation of Rule 1.6); Iowa S. Ct. Attorney Disciplinary Bd. v. Marzen, 779 N.W.2d 757 (Iowa 2010) (all lawyer-client communications, even those including publicly available information, are confidential); Lawyer Disciplinary Bd. v. McGraw, 461 S.E.2d 850 (W. Va. 1995) ("[t]he ethical duty of confidentiality is not nullified by the fact that the information is part of a public record or by the fact that someone else is privy to it"); State Bar of Ariz. Op. 2000-11 (2000) (lawyer must "maintain the confidentiality of information relating to representation even if the information is a matter of public record"); State Bar of Nev. Op. 41 (2009) (contrasting broad language of Rule 1.6 with narrower language of Restatement (Third) of the Law Governing Lawyers); Pa. Bar Ass'n Informal Op. 2009-10 (2009) (absent client consent, lawyer may not report opponent's misconduct to disciplinary board even though it is recited in court's opinion); Colo. Formal Op. 130 (2017) ("Nor is there an exception for information otherwise publicly available. For example, without informed consent, a lawyer may not disclose information relating to the representation of a client even if the information has been in the news."); *But see In re* Sellers, 669 So. 2d 1204 (La. 1996) (lawyer violated Rule 4.1 by failing to disclose existence of collateral mortgage to third party; because "mortgage was filed in the public record, disclosure of its existence could not be a confidential communication, and was not prohibited by Rule 1.6"); Hunter v. Va. State Bar, 744 S.E.2d 611 (Va. 2013) (rejecting state bar's interpretation of Rule 1.6 as prohibiting lawyer from posting on his blog information previously revealed in completed public criminal trials of former clients).  See discussion of *Hunter, infra*, at note 20.

[11] ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 04-433 (2004) ("Indeed, the protection afforded by Rule 1.6 is not forfeited even when the information is available from other sources or publicly filed, such as in a malpractice action against the offending lawyer.")

[12] MODEL RULES OF PROF'L RESPONSIBILITY R. 1.6 cmt. [4] (2017).  The possibility of violating Rule 1.6 using hypothetical facts was discussed in ABA Formal Opinion 98-411, which addressed a lawyer's ability to consult with another lawyer about a client's matter.  That opinion was issued prior to the adoption of what is now Rule 1.6(b)(4) which permits lawyers to reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to secure legal advice about the lawyer's compliance with these Rules.  However, the directive provided in Formal Opinion 98-411 remains sound, namely, that a lawyer use caution when constructing a hypothetical.  For an illustrative case, see *In re* Peshek, M.R. 23794, 2009 PR 00089 (Ill. 2010).  Peshek was suspended for sixty days for violating Rule 1.6.  Peshek served as a Winnebago County Public defender for about 19 years.  After being assaulted by a client, Peshek began publishing an Internet blog, about a third of which was devoted to discussing her work at the public defender's office and her clients.  Peshek's blog contained numerous entries about conversations with clients and various details of their cases, and Peshek referred to her clients by either first name, a derivative of their first name, or their jail ID number, which were held to be disclosures of confidential information in violation of Rule 1.6.  She was suspended from practice for 60 days.

not otherwise impliedly authorized to carry out the representation, then the lawyer violates Rule 1.6(a).[13]  Rule 1.6 does not provide an exception for information that is "generally known" or contained in a "public record."[14]  Accordingly, if a lawyer wants to publicly reveal client information, the lawyer[15] must comply with Rule 1.6(a).[16]

**First Amendment Considerations**

While it is beyond the scope of the Committee's jurisdiction to opine on legal issues in formal opinions, often the application of the ethics rules interacts with a legal issue.  Here lawyer speech relates to First Amendment speech.  Although the First Amendment to the United States Constitution guarantees individuals' right to free speech, this right is not without bounds.[17]  Lawyers' professional conduct may be constitutionally constrained by various professional regulatory standards as embodied in the Model Rules, or similar state analogs.  For example, when a lawyer acts in a representative capacity, courts often conclude that the lawyer's free speech rights are limited.[18]

---

[13] We again note that Rule 1.6(b) provides other exceptions to Rule 1.6(a).

[14] Model Rule 1.9 addresses the duties lawyers owe to former clients.  Rule 1.9(c)(1) permits a lawyer, who has formerly represented a client, to use information related to the representation that has become generally known to the disadvantage of a former client, and Rule 1.9(c)(2) prohibits a lawyer from revealing information relating to the representation except as the Rules permit or require with respect to a current client.  This opinion does not address these issues under Model Rule 1.9.  The generally known exception in Rule 1.9(c)(1) is addressed in ABA Formal Opinion 479.

[15] Lawyers also have ethical obligations pursuant to Rules 5.1 and 5.3 to assure that lawyers and staff they supervise comply with these confidentiality obligations.

[16] In addition to the requirements of Rules 1.6(a), a lawyer may consider other practical client relations and ethics issues before discussing client information in public commentary to avoid disseminating information that the client may not want disseminated. For instance, Model Rule 1.8(b) reads: "A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules." Rule 1.8(b) could be read to suggest that a lawyer may use client information if it *does not* disadvantage a client. The lawyer, nevertheless, has a common-law fiduciary duty not to profit from using client information even if the use complies with the lawyer's ethical obligations. *See* RESTATEMENT OF THE LAW (THIRD) THE LAW GOVERNING LAWYERS § 60(2) (1998) ("a lawyer who uses confidential information of a client for the lawyer's pecuniary gain other than in the practice of law must account to the client for any profits made"). *Accord* D.C. Bar Op. 370 (2016) ("It is advisable that the attorney share a draft of the proposed post or blog entry with the client, so there can be no miscommunication regarding the nature of the content that the attorney wishes to make public. It is also advisable, should the client agree that the content may be made public, that the attorney obtain that client's consent in a written form.")

[17] *See* Gregory A. Garbacz, *Gentile v. State Bar of Nevada: Implications for the Media*, 49 WASH. & LEE L. REV. 671 (1992); D. Christopher Albright, *Gentile v. State Bar: Core Speech and a Lawyer's Pretrial Statements to the Press*, 1992 BYU L. REV. 809 (1992); Kathleen M. Sullivan, *The Intersection of Free Speech and the Legal Profession: Constraints on Lawyers' First Amendment Rights*, 67 FORDHAM L. REV. 569 (1998).  *See also* Brandon v. Maricopa City, 849 F.3d 837 (9th Cir. 2017) (when a lawyer speaks to the media in her official capacity as an attorney for county officials, such speech involves her conduct as a lawyer and therefore is not "constitutionally protected citizen speech").

[18] *See In re* Snyder, 472 U.S. 634 (1985) (a law license requires conduct "compatible with the role of courts in the administration of justice"); U.S. Dist. Ct. E. Dist. of Wash. v. Sandlin, 12 F.3d 861 (9th Cir. 1993) ("once a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct"); *In re* Shearin, 765 A.2d 930 (Del. 2000) (lawyers' constitutional free speech rights are qualified by their ethical duties); Ky. Bar Ass'n v. Blum, 404 S.W.3d 841 (Ky. 2013) ("It has routinely been upheld that regulating the speech of attorneys is appropriate in order to maintain the public confidence and credibility of the judiciary and as a condition of '[t]he license granted by the court.'" [citing *Snyder*]); State ex rel. Neb. State Bar Ass'n v. Michaelis, 316 N.W.2d 46 (Neb. 1982) ("A layman may, perhaps, pursue his theories of free speech or political activities until he runs afoul of the penalties of libel or slander, or into

The plain language of Model Rule 1.6 dictates that information relating to the representation, even information that is provided in a public judicial proceeding, remains protected by Model Rule 1.6(a).[19] A lawyer may not voluntarily disclose such information, unless the lawyer obtains the client's informed consent, the disclosure is impliedly authorized to carry out the representation, or another exception to the Model Rule applies.[20]

At least since the adoption of the ABA Canons of Ethics, the privilege of practicing law has required lawyers to hold inviolate information about a client or a client's representation beyond that which is protected by the attorney-client privilege. Indeed, lawyer ethics rules in many jurisdictions recognize that the duty of confidentiality is so fundamental that it arises before a lawyer–client relationship forms, even if it never forms,[21] and lasts well beyond the end of the professional relationship.[22] It is principally, if not singularly, the duty of confidentiality that enables and encourages a client to communicate fully and frankly with his or her lawyer.[23]

## Ethical Constraints on Trial Publicity and Other Statements

Model Rule 3.5 prohibits a lawyer from seeking to influence a judge, juror, prospective juror, or other official by means prohibited by law. Although using public commentary with the client's informed consent may be appropriate in certain circumstances, lawyers should take care not to run afoul of other limitations imposed by the Model Rules.[24]

---

some infraction of our statutory law. A member of the bar can, and will, be stopped at the point where he infringes our Canons of Ethics.").

[19] *See* ABA Formal Op. 479 (2017). See also cases and authorities cited *supra* at note 10.

[20] One jurisdiction has held that a lawyer is not prohibited from writing a blog that includes information relating to a representation that was disclosed in an open public judicial proceeding after the proceeding had concluded. In Hunter v. Virginia State Bar, 744 S.E.2d 611 (Va. 2013) the Supreme Court of Virginia held that the application of Virginia Rule of Professional Conduct 1.6(a) to Hunter's blog posts was an unconstitutional infringement of Hunter's free speech rights. The Committee regards *Hunter* as limited to its facts. Virginia's Rule 1.6 is different than the ABA Model Rule. The Virginia Supreme Court rejected the Virginia State Bar's position on the interpretation and importance of Rule 1.6 because there was "no evidence advanced to support it." But see *People vs. Isaac* which acknowledges *Hunter* but finds a violation of Colorado Rule 1.6. We note, further, that the holding in *Hunter* has been criticized. *See* Jan L. Jacobowitz & Kelly Rains Jesson, *Fidelity Diluted: Client Confidentiality Give Way to the First Amendment & Social Media in Virginia State Bar ex rel. Third District Committee v. Horace Frazier Hunter*, 36 CAMPBELL L. REV. 75, 98-106 (2013).

[21] *See* MODEL RULES OF PROF'L CONDUCT R. 1.18(b) (2017) (Even when no client–lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation except as permitted by the Rules). *Implementation Chart on Model Rule 1.18*, American Bar Ass'n (Sept. 29, 2017), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/mrpc_1_18.authcheckdam .pdf.

[22] *See* MODEL RULES OF PROF'L CONDUCT R. 1.9 (2017); *see also* D.C. Bar Op. 324 (Disclosure of Deceased Client's Files) (2004); Swidler & Berlin v. United States, 524 U.S. 399 (1998). *See also* GILLERS, *supra* note 4, at 34 ("[w]hether the [attorney-client] privilege survives death depends on the jurisdiction but in most places it does").

[23] See generally Preamble to ABA Model Rules for a general discussion of the purposes underlying the duty of confidentiality. *See also* GEOFFREY C. HAZARD JR. & W. WILLIAM HODES, THE LAW OF LAWYERING, §§ 9.2 & 9.3 at 9-6, 9-14 (3d ed. Supp. 2012).

[24] *See, e.g.*, *In re* Joyce Nanine McCool 2015-B-0284 (Sup. Ct. La. 2015) (lawyer disciplined for violation of Rule 3.5 by attempting to communicate with potential jurors through public commentary); *see also* The Florida Bar v. Sean William Conway, No. SC08-326 (2008) (Sup. Ct. Fla.) (lawyer found to have violated Rules 8.4(a) and (d) for posting on the internet statements about a judge's qualifications that lawyer knew were false or with reckless disregard as to their truth or falsity).

Lawyers engaged in an investigation or litigation of a matter are subject to Model Rule 3.6, Trial Publicity. Paragraph (a) of Rule 3.6 (subject to the exceptions provided in paragraphs (b) or (c)) provides that:

> A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

Thus any public commentary about an investigation or ongoing litigation of a matter made by a lawyer would also violate Rule 3.6(a) if it has a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter, and does not otherwise fall within the exceptions in paragraphs (b) or (c) of Model Rule 3.6.[25]

## Conclusion

Lawyers who blog or engage in other public commentary may not reveal information relating to a representation that is protected by Rule 1.6(a), including information contained in a public record, unless disclosure is authorized under the Model Rules.

---

[25] Pa. Bar Ass'n Formal Op. 2014-300 (2014) (lawyer involved in pending matter may not post about matter on social media). This opinion does not address whether a particular statement "will have a substantial likelihood of materially prejudicing an adjudicative proceeding" within the meaning of Model Rule 3.6.

**AMERICAN BAR ASSOCIATION STANDING COMMITTEE ON ETHICS AND PROFESSIONAL RESPONSIBILITY**

321 N. Clark Street, Chicago, Illinois 60654-4714 Telephone (312) 988-5328
CHAIR: Barbara S. Gillers, New York, NY ■ John M. Barkett, Miami, FL ■ Wendy Wen Yun Chang, Los Angeles, CA ■ Hon. Daniel J. Crothers, Bismarck, ND ■ Keith R. Fisher, Arlington, VA ■ Douglas R. Richmond, Chicago, IL ■ Michael H. Rubin, Baton Rouge, LA ■ Lynda Shely, Scottsdale, AZ, ■ Elizabeth C. Tarbert, Tallahassee, FL. ■ Allison Wood, Chicago, IL

**CENTER FOR PROFESSIONAL RESPONSIBILITY:** Dennis A. Rendleman, Ethics Counsel; Mary McDermott, Associate Ethics Counsel

©2018 by the American Bar Association. All rights reserved.