Bruce Feder (AZ Bar No. 004832)
**FEDER LAW OFFICE, P.A.**
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
Email: bf@federlawpa.com
*Counsel for Defendant Scott Spear*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff.<br><br>v.<br><br>Michael Lacey, *et al.*,<br><br>Defendants. | No. CR-18-00422-PHX-SMB-003<br><br>**DEFENDANT SCOTT SPEAR'S SUPPLEMENTAL EXPERT WITNESS DISCLOSURE** |

This supplemental expert disclosure and its contents is preliminary in light of the facts that: a) the government's expert disclosure does not comply with Rule 16, F.R.Crim.P.; b) the government has not disclosed the Rule 16 material it is required to disclose and c) the Defendants' ability to retain potential experts for the scheduled January 2020 trial date has been severely impaired by the government's improper and massive pre-trial seizures of the Defendants' assets and attorneys' retainers.

Accordingly, this supplemental disclosure does not represent the final names and opinions of the defense experts, but is a good-faith preliminary disclosure statement subject to further supplementation once the government's disclosures and discovery

1

productions are complete, and as the Defendants are able to finance the review of the disclosure, their investigation, and the engagement of experts.

The supplemental area of expert testimony and name of the potential expert and his preliminary opinion are as follows:

1. **Eric Goldman, Professor of Internet Law; Co-Director of High Tech Law Institute, Santa Clara University.**

Defendant Spear anticipates Mr. Goldman will testify as follows:

1. He is a law professor at Santa Clara University School of Law and has been the director or co-director of the law school's High Tech Law Institute since 2006. In 2019, US News ranked the High Tech Law Institute #4 on its list of top intellectual property programs in the country.

2. He first started practicing Internet law in 1994. From 1994-2000, he worked as an Internet lawyer at a major technology law firm in the Silicon Valley. From 2000-2002, he was general counsel at an Internet user-generated content company (a consumer review website called Epinions.com). As general counsel, his responsibilities included setting the policies for the user-generated content this site published, as well as reviewing content moderation decisions made by their content reviewers.

3. His research and teaching emphasize Internet law. He has taught an Internet law course since 1996 and has been an active Internet law scholar for over a quarter-century. He pays especially close attention to cases analyzing 47 U.S.C. § 230 ("Section 230"). Since 2005, he has blogged about most Section 230 decisions he has seen.

4. In February 2018, he organized a groundbreaking conference called "Content Moderation and Removal at Scale," held at Santa Clara University. Eleven Internet companies publicly presented statistics and details about their content

moderation operations—including information that had previously been confidential. Over 200 people attended the conference in person and many hundreds more watched the event online.

5. Following the Santa Clara conference, similar conferences took place in Washington DC, New York City, and Brussels, Belgium. He helped organize, and spoke at, all of these events. He is now working to form an association for content moderation professionals.

6. He is providing his services in this matter *pro bono*.

**Opinions**

He intends to offer the following six opinions:

    a. Virtually Every Internet Company Engages in Content Moderation
    b. Content Moderation Practices Are Diverse
    c. Internet Services Rarely Disclose Details About Their Content Moderation Operations
    d. Content Moderation is Socially Beneficial
    e. Congress Wants Internet Services to Moderate Content
    f. Content Moderation Cannot Be Done Perfectly

**Some details about each of these opinions:**

1. <u>Virtually Every Internet Company Engages in Content Moderation</u>. Content moderation is the process of deciding which user-submitted content to publish or remove. Virtually every Internet service moderates content to some degree. It is virtually impossible to sustain an Internet service for very long without moderating content.

1  2.  <u>Content Moderation Practices Are Diverse</u>. Content moderation practices vary widely among Internet services. Most Internet services adopt "house rules," i.e., content standards that are not dictated by law but instead reflect the service's idiosyncratic priorities. House rules vary widely among Internet services.

Internet services also have heterogeneous content moderation operations because Internet services occupy different business niches and cater to different audiences. Companies optimize their content moderation operation for their niche. Thus, there are few industry-standard operational practices for moderating content.

3.  <u>Internet Services Rarely Disclose Details About Their Content Moderation Operations</u>. Most Internet services publish terms of service (TOS) that enumerate their house rules. However, Internet services often have undisclosed content moderation rules or interpretations. Furthermore, most Internet services do not publicly reveal many who/what/where/when/how details about their content moderation operations. The 2018 Santa Clara conference was an important step in generating more public disclosures of content moderation operations.

4.  <u>Content Moderation is Socially Beneficial</u>. Content moderation is essential to a healthy and vibrant Internet ecosystem. If an Internet service didn't moderate content, it would be quickly overrun by bad actors publishing anti-social content and engaging in anti-social activities. These malefactors could cause extraordinary harm to others. Content moderation curbs malefactors and their bad content and actions. Society benefits from those efforts.

5.  <u>Congress Wants Internet Services to Moderate Content</u>. Because of these social benefits, Congress enacted Section 230 to encourage Internet companies to voluntarily moderate user-submitted content. Without immunity for third party content, Congress recognized that Internet services face a "Moderator's Dilemma": they will (1) need to perfectly moderate all unlawful content, an impossible standard

(as discussed below), (2) do the bare minimum amount of content moderation and hope that their passivity negates liability, in which case everyone in society loses, or (3) exit the industry. By categorically eliminating liability for most content moderation decisions, Section 230 empowers Internet services to structure their content moderation processes however they want, without being second-guessed about what they could or should have done.

Section 230's immunity does not apply to federal criminal prosecutions. However, the mere fact that an Internet service moderates content cannot support federal criminal liability. A contrary result completely undercuts Section 230. If a service increases its federal criminal exposure by moderating unlawful content, Section 230's civil liability protections would not be enough to encourage Internet services to undertake socially valuable content moderation efforts. Congress did not eliminate the Moderator's Dilemma for civil liability purposes, yet simultaneously recreate it for federal criminal liability.

6.  <u>Content Moderation Cannot Be Done Perfectly</u>. Internet services cannot perfectly distinguish lawful from unlawful user-submitted content. First, due to the volume of user submissions, comprehensive content moderation efforts is usually expensive and slow. Second, there are so many civil and criminal laws on the books that it's impossible for any service to "know" and apply all of the laws. Third, legal analysis routinely requires sophisticated professional expertise, and no one—not even lawyers—can make all judgment calls perfectly. Fourth, and perhaps most importantly, Internet services often lack sufficient context about the user-submitted content to evaluate its legality. User-submitted illegal content rarely comes with a flashing neon sign warning "THIS IS ILLEGAL CONTENT." Instead, such determinations often require facts that are unavailable to the Internet service. Internet

services sometimes overcompensate for their lack of contextual information by blocking or removing content that is 100% legal.

RESPECTFULLY SUBMITTED this 22nd day of April, 2019.

                                             **FEDER LAW OFFICE, PA**
                                             */s/ Bruce Feder*
                                             Bruce Feder
                                             *Attorney for Scott Spear*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of April, 2019, I electronically transmitted the foregoing to the Clerk of the Court via the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Kevin Rapp:** Kevin.Rapp@usdoj.gov
**Andrew Stone:** Andrew.Stone@usdoj.gov
**Margaret Perlmeter:** Margaret.Perlmeter@usdoj.gov
**John Kucera:** John.Kucera@usdoj.gov
**Reginald Jones:** Reginald.Jones@usdoj.gov
**Peter S. Kozinets:** Peter.Kozinets@usdoj.gov
*Attorneys for the United States*

**Anne Chapman:** anne@mscclaw.com
**Lee Stein:** lee@mscclaw.com
**Paul Cambria:** pcambira@lglaw.com
**James Grant:** jimgrant@dwt.com
**Erin McCampbell:** emccampbell@lglaw.com
**Robert Corn-Revere:** bobcornrevere@dwt.com
**Ronald London:** ronnielondon@dwt.com
**Janey Henze Cook:** janey@henzecookemurphy.com
**John Littrell:** jlittrell@bmkattorneys.com
**Kenneth Miller:** kmiller@bmkattorneys.com
**Whitney Bernstein:** wbernstein@bmkattorneys.com
**Michael Piccarreta:** mlp@pd-law.com
**Stephen M. Weiss:** sweiss@karpweiss.com
**Michael Kimerer:** mdk@kimerer.com

services sometimes overcompensate for their lack of contextual information by blocking or removing content that is 100% legal.

RESPECTFULLY SUBMITTED this 22nd day of April, 2019.

                    **FEDER LAW OFFICE, PA**
                    */s/ Bruce Feder*
                    Bruce Feder
                    *Attorney for Scott Spear*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of April, 2019, I electronically transmitted the foregoing to the Clerk of the Court via the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

**Kevin Rapp:** Kevin.Rapp@usdoj.gov
**Andrew Stone:** Andrew.Stone@usdoj.gov
**Margaret Perlmeter:** Margaret.Perlmeter@usdoj.gov
**John Kucera:** John.Kucera@usdoj.gov
**Reginald Jones:** Reginald.Jones@usdoj.gov
**Peter S. Kozinets:** Peter.Kozinets@usdoj.gov
*Attorneys for the United States*

**Anne Chapman:** anne@mscclaw.com
**Lee Stein:** lee@mscclaw.com
**Paul Cambria:** pcambira@lglaw.com
**James Grant:** jimgrant@dwt.com
**Erin McCampbell:** emccampbell@lglaw.com
**Robert Corn-Revere:** bobcornrevere@dwt.com
**Ronald London:** ronnielondon@dwt.com
**Janey Henze Cook:** janey@henzecookemurphy.com
**John Littrell:** jlittrell@bmkattorneys.com
**Kenneth Miller:** kmiller@bmkattorneys.com
**Whitney Bernstein:** wbernstein@bmkattorneys.com
**Michael Piccarreta:** mlp@pd-law.com
**Stephen M. Weiss:** sweiss@karpweiss.com
**Michael Kimerer:** mdk@kimerer.com

| | |
|---|---|
| 1 | **Rhonda Neff:**  rneff@kimerer.com |
| | **Tom Bienert:**  tbienert@bmkattorneys.com |
| 2 | **Gary Lincenberg:**  gsl@birdmarella.com |
| | **Ariel Neuman:**  aneuman@birdmarella.com |
| 3 | **KC Maxwell:**  kcm@kcmaxlaw.com |
| 4 | **David Wakukawa:** dsw@kcmaxlaw.com |
| | **Seetha Ramachandran:** Seetha.Ramachandran@srz.com |
| 5 | *Attorneys for the Defense* |

By: /s/ A. Jones