**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

There are seven defendants in this matter. Of which, six have joined the motion before the Court. Defendants Joye Vaught and Andrew Padilla filed a motion to dismiss the indictment against them or, in the alternative, a motion to allow their counsel to withdraw. (Doc. 456). Defendants James Larkin (Doc. 463), Scott Spear (Doc. 464), Michael Lacey (Doc. 465), and John Brunst (Doc. 467) join the motion to dismiss, but not the alternative motion to withdraw counsel. The seventh defendant, Dan Hyer, has entered a plea of guilty as to Count 1 of the Superseding Indictment and is awaiting sentencing. (Docs. 270, 284, 520). The Government filed a response to the motion to dismiss (Doc. 476), to which Defendants replied. (Doc. 507). Defendants Vaught and Padilla filed Ex Parte Applications and Consents for Withdrawal of Counsel (Docs. 556, 558) Defendants argue the case should be dismissed because the Government has violated their Fifth and Sixth Amendment rights.

**I.    BACKGROUND**

On July 25, 2018, a federal grand jury returned a 100-count superseding

indictment against Defendants alleging they engaged in criminal acts while operating of the website Backpage.com ("Backpage"), including conspiracy, facilitating prostitution, and money laundering. (Doc. 230). It included forfeiture allegations. (*Id.*). This is one of multiple cases involving Backpage. In another case before this Court, Backpage itself and related entities have pleaded guilty to Money Laundering Conspiracy, 18 U.S.C. § 1956(h). (CR-18-465-PHX-SMB, the "Backpage Proceedings," Docs. 8, 10, 20). In still another, the CEO of Backpage, Carl Ferrer has pleaded guilty to Conspiracy, 18 U.S.C. § 371. (CR-18-464-PHX-SMB, the "Ferrer Proceedings," Docs. 7, 12, 20). Both of those cases are awaiting sentencing and forfeiture proceedings. Additional forfeiture proceedings are underway in the Central District of California and on appeal in the Ninth Circuit. (Docs. 360, 456, 476, 507).

In the Backpage and Ferrer Proceedings, Backpage and its related entities and Ferrer stipulated to seizures. (Ferrer Proceedings, Docs. 22–23; Backpage Proceedings, Docs. 21–22, 44). Defendants in this case have filed petitions to determine their interest in the property subject to forfeiture in those two cases. (Ferrer Proceedings, Docs. 29–35; Backpage Proceedings, Docs. 28–34). They have also motioned to stay the hearings to determine their interest in the property subject to forfeiture. As of this date, those hearings have not taken place, and the Defendants have not asked this Court to conduct them. Rather, they have agreed to or requested stays.

In the Ferrer Proceedings, the initial hearing to determine the third-party interests in property subject to forfeiture was scheduled for November 16, 2018. (Ferrer Proceedings, Doc. 43). Defendant Larkin filed a motion to stay that hearing pending the outcome of an appeal to the Ninth Circuit of some of the Central District of California seizure cases and a case in Delaware Court of Chancery.[1] (*Id.*, Doc. 44). All Defendants in this cased joined that motion. (*Id.*, Docs. 45–50). The Government did not object to the

---

[1] Defendants contend that the Delaware case, *Camarillo Holdings, LLC, et al. v. Amstel River Holdings, LLC, et al.*, C.A. No. 2018-0606SG, will resolve the "core issues relating of the property rights" of some of the properties at issue in the forfeiture proceedings. (Ferrer Proceedings, Doc. 62)

stay. (*Id.*, Doc. 52). The Court reset the hearing for December 7, 2018. (*Id.*, Doc. 53). The Defendants and Government then submitted a joint motion to continue the hearing. (*Id.*, Doc. 54). The Court granted the motion and reset the hearing for January 25, 2019. (*Id.*, Doc. 56). The parties again requested a stay, which was denied. (*Id.*, Docs. 59–60). The parties filed another motion on January 23, 2019, to stay the hearing for at least four months, though they presented different rationales for doing so. (*Id.*, Doc. 62). The Court reset the hearing for June 21, 2019. (*Id.*, Doc. 64). A similar process played out in the Backpage Proceedings. (Backpage Proceedings, Docs. 28–41, 51–57, 59–62, 64–75, 82–83, 85–87).

Among the assets Ferrer and Backpage stipulated to forfeit are attorney trust accounts, commonly called IOLTA accounts. The Government moved to seize these accounts in the Central District of California ("CDCA"). It obtained *ex parte* seizure warrants for Defendants Vaught and Padilla's IOLTA accounts on October 31, 2018. The Government informed counsel they can keep earned fees through November 30, 2018. The Government also seized the trust account of one of Defendant Lacey's attorney's in August 2018. Defendants argue that these seizures, along with other actions by the Government, infringe on their Fifth and Sixth Amendment rights to due process and counsel of choice and warrant dismissal of this case. In this proceeding, Defendants previously asked the Court to stop the seizures. (Docs. 360, 401). The Court ruled that the Defendants must seek relief from the seizure warrants in the courts that issued them. (Doc. 447). The seizure warrants have since expired, but the Government has said they may renew them and Defendants say they have not withdrawn from the accounts out of fear of prosecution.

Defendants argue their constitutional rights were violated because the seizures were executed in a manner to avoid judicial review after the Government led them to believe it would not be seizing IOLTA accounts, and after Defendants had agreed to the proposed case management schedule without knowledge that the Government would seek pre-trial forfeitures. Defendants also take umbrage with the Government's motion to

disqualify certain counsel from representing Defendant Lacey and Defendant Larkin, which the Court denied. (Doc. 338). They believe they have been retaliated against for their "vigorous" assertion of their rights, while the cooperating defendants are still able to use tainted funds for their counsel. Defendants further argue that the cooperating defendants are especially unreliable, making the seizures especially suspect. Defendants Padilla and Vaught additionally argue that as employees of Backpage, they reasonably expected to receive attorneys' fees as a benefit. They contend the appropriate remedy for the Government's actions is to dismiss the indictment against them.

The Government responds by arguing that Defendants have no right to use tainted funds for attorneys' fees. They also argue that there is a remedy available for defendants to prevent the seizures and future seizures of these funds through a *Monsanto* hearing, where they would be able to prove they could not fund their defense but for the seized assets and that probable cause does not exist to seize the property. *See United States v. Monsanto*, 491 U.S. 600 (1989). Additionally, the funds were only seized after the CEO of Backpage, along with Backpage and its related entities, pleaded guilty to criminal conduct, and shut down the website.

## II.   Discussion

The Fifth and Sixth Amendments protect criminal defendants' rights to due process and assistance of counsel. U.S. Const. amends. V, VI. The rights are overlapping. "The Constitutional guarantees a fair trial through the Due Process Clauses, but it defines the elements of a fair trial largely through the several provisions of the Sixth Amendment[.]" *Strickland v. Washington*, 466 U.S. 668, 684–85 (1984); *see Caplin & Drysdale v. United States*, 491 U.S. 617, 633 (1989) (stating the court is "not sure that" the Fifth Amendment argument "adds anything to petitioner's Sixth Amendment Argument"). The Sixth Amendment right to assistance of counsel includes the right "to select and be represented by one's preferred attorney." *Wheat v. United States*, 486 U.S. 153, 159 (1988). This right is not unlimited, as a "defendant may not insist on representation by an attorney he cannot afford," *id.*, and he has "no Sixth Amendment

right to spend another person's money for services rendered by an attorney, even if those funds are the only way that defendant will be able to retain the attorney of his choice," *Caplin*, 491 U.S. at 626.

Forfeiture presents a unique problem for Fifth and Sixth Amendment issues. Freezing defendants' assets prior to trial is permissible if the assets would be subject to forfeiture upon conviction. *Kaley v United States*, 571 U.S. 320, 340 (2014). To do so, the Government must show that there is "probable cause to believe that the property will ultimately be proved forfeitable." *Id.* (quoting *United States v. Monsanto*, 491 U.S. 600, 615 (1989)). *Kaley* also explains the Government's interest in forfeitures. They "help to ensure that crime does not pay," punish wrongdoing, deter future illegality, and "lessen the economic power of criminal enterprises." *Id.* (citing *Caplin*, 491 U.S. at 630). Forfeitures are also used to "recompense victims of crime, improve conditions in crime-damaged communities, and support law enforcement activities like police training." *Id.* (citing *Caplin*, 491 U.S. at 629–30). The Government may not, however, restrain criminal defendants' "legitimate, untainted assets (those not traceable to a criminal offense) needed to retain counsel of choice," even if the Government was only doing so to preserve the assets for payment of restitution and other criminal forfeitures. *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016).

1. <u>The Seizures and Defendants' Fifth and Sixth Amendment Rights</u>

Defendants contend that the seizures are "unlawful." (Doc. 476 at 2). They compare this case to *U.S. v. Stein* (*Stein I*), 435 F. Supp. 2d 330 (S.D.N.Y. 2006), and the case affirming it, *U.S. v. Stein* (*Stein II*), 541 F.3d 130 (2d. Cir. 2008). In *Stein I* and *II*, the courts dismissed the indictment against former employees and partners of an accounting firm because the government pressured the firm to limit and condition the payment of the defendants' attorneys' fees in order to prevent the Government from indicting the firm. Prior to that case, the firm's practice was to pay for its partners and employees' legal fees for legal matters that arose within the scope of their duties and responsibilities to the firm. *Stein I*, 435 F. Supp. 2d. at 340. The firm changed this policy

in response to pressure from the Government. *Id.* at 336. The result was that the defendants were deprived of their reasonable expectation of attorneys' fees. *Stein II*, 541 F.3d at 155–56. "In a nutshell, the Sixth Amendment protects against unjustified governmental interference with the right to defend oneself using whatever assets one has or might reasonably and lawfully obtain." *Id.* at 156.

Defendants miss an important distinction with the *Stein* cases and their case, however, as the *Stein* cases concerned untainted funds from the accounting firm's general business. "Although 'there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds, [a defendant] still possesses a qualified Sixth Amendment right to use *wholly legitimate funds* to hire the attorney of his choice.'" *Id.* at 155 (quoting *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001) (alteration and emphasis in original)). The Government in the *Stein* cases never alleged the funds were tainted. In this way, the case is also different than *Luis*, where the Government acknowledged that it was trying to stop Luis from using her own untainted funds. 136 S. Ct. at 1088. Here, the Government is asserting that the assets they are trying to seize are tainted, and, as demonstrated by the CDCA rulings, courts have found probable cause that the assets will ultimately be proved forfeitable. As this Court previously ruled, any disagreement with the CDCA's rulings should be taken up in that court.

In addition to the probable cause findings, Backpage and its related entities, Ferrer, and Hyer have all pleaded guilty, and Backpage and Ferrer have stipulated to forfeitures. The Defendants filed petitions to determine their interests in those stipulated forfeitures in the Backpage and Ferrer Proceedings, but have consented to or requested stays to prevent their interests from being adjudicated. Instead, they have been pursing litigation in the Delaware Court of Chancery to determine their "interests in certain assets the Government seeks to forfeit from Backpage.com, LLC and its affiliates. (Ferrer Proceedings, Doc. 62 at 10–11). Furthermore, the contention that the seizures are escaping judicial review is belied by the Defendants' own contention that some of the seizures have been set for expedited briefing and argument in the Ninth Circuit (Doc. 507

at 9), others are pending at the CDCA (Doc. 527 at 17), and they have not tried to adjudicate their interests in the Backpage and Ferrer Proceedings.

Given the probable cause findings, this case, at least at this point, is much more like *Monsanto* and *Caplin*. Assets may be restrained "based on a finding of probable cause to believe that the assets are forfeitable." *Monsanto*, 491 U.S. at 615. "[T]he Government may—without offending the Fifth or Sixth Amendment—obtain forfeiture of property that a defendant might have wished to use to pay his attorney." *Id.* at 616 (citing *Caplin*, 491 U.S. 617). Allowing pretrial restraint of assets is consistent with "the long-recognized and lawful practice of vesting title to any forfeitable assets, in the United States, at the time of the criminal act giving rise to forfeiture." *Caplin*, 491 U.S. at 627. This ensures any "ill-gotten gains" will not dissipate before conviction and protects the community's interest in recovery. *Monsanto*, 491 U.S. at 616. The Supreme Court affirmed these rulings as recently as 2014 when it decided *Kaley*. 571 U.S. at 371 ("So again: With probable cause, a freeze is valid.").

Here, the seizures were based on the CDCA's finding of probable cause. Pretrial restraints based on probable cause to believe that the assets will be ultimately forfeited does not offend the Fifth or Sixth Amendment. Unlike in the *Stein* cases or in *Luis*, the Government is not attempting to prevent Defendants from using assets it believes are untainted. Accordingly, the seizures do not violate the Fifth and Sixth Amendments.[2]

2. Padilla and Vaught's Reasonable Expectation of Indemnification

Relying on the *Stein* cases, Padilla and Vaught argue that the Government's seizures interfered with funds earmarked to pay their legal fees. As previously discussed, *Stein* is distinguishable because there was no allegation that the accounting firm's funds were tainted. Criminal proceeds are forfeitable to the United States "at the time of the

---

[2] The parties also present First Amendment arguments, with Defendants arguing their activities fall within First Amendment protected activity and the Government arguing there is no First Amendment right to commit or facilitate criminal activity. Both arguments appear to be made in good faith. On April 22, 2019, Defendants lodged a proposed motion to dismiss based on their First Amendment rights. The Court will reserve judgment on the First Amendment issues until that motion is before it.

criminal act giving rise to forfeitures." *Caplin*, 491 U.S. at 627. As *Stein II* recognized, "there is no Sixth Amendment right for a defendant to obtain counsel using tainted funds." 541 F.3d at 155 (quoting *Farmer*, 274 F.3d at 804)). While they may have a reasonable expectation that Backpage would fund their defense, that expectation does not extend to lawfully seized funds. Accordingly, Padilla and Vaught's right to the seized funds are no different than the other defendants.

3. The Cooperating Witnesses

Defendants contend the Government treating them differently from the cooperating defendants Ferrer and Hyer—by allegedly not seeking seizure of their counsels' IOLTA accounts—also violates their Fifth Amendment and Sixth Amendment rights. (Doc. 476 at 6–7, 12–13). They argue this undermines the workings of our adversarial system of criminal justice. (*Id.* at 12). Despite the common occurrence of cooperating defendants, however, Defendants do not provide case law to support that precise argument, and the Court is unable to find any.

Preferential terms for defendants that plead guilty is not new to our adversarial system. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyer v. Boles*, 368 U.S. 448, 456 (1968). Selectivity in enforcement is permissible, unless the selection was "based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*; *see Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) ("To hold that the prosecutor's desire to induce a guilty plea is an unjustifiable standard, which, like race or religion, may play no part in his charging decision would contradict the very premises that underlie the concept of plea bargaining itself.") (internal quotations omitted); *see also United States v. Rodriguez*, 162 F.3d 135, 151–53 (1st Cir. 1998) (holding that the Government's alleged policy of more lenient treatment for co-conspirators that pleaded guilty than those that go to trial was not unconstitutional).

As the Government points out, its primary duty with regard to leniency to cooperating defendants is to disclose that benefits have been provided. *Giglio v. United*

*States*, 405 U.S. 150, 154–55 (1972) (holding that the Government must produce evidence to the defense that affects a witness's credibility). By disclosing that the Government has provided the witness with benefits for cooperating, the defense is able to attack the witness's credibility. *Id.* The Government has complied with this obligation. Thus, Defendants' Fifth and Sixth Amendment rights are not violated by the Government's preferential treatment of cooperating witnesses.

4. Vindictive Prosecution

The Court is also not convinced that the timing of the seizures, nor any other Government actions, indicate that this case is akin to a vindictive prosecution. Vindictive prosecution is when "prosecutorial actions stem from an animus toward the exercise of a defendant's rights." *United States v. Gallegos-Curiel*, 681 F.2d 1164, 1169 (9th Cir. 1982). Defendants must show either direct evidence of a vindictive motive or establish a presumption of vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 380–81 (1982). Defendants have not presented actual evidence. "The presumption [of vindictiveness] applies only to the extent it reflects the very real likelihood of actual vindictiveness." *Gallegos-Curiel*, 681 F.2d at 1167. "A sequence of events is not enough; the likelihood of retaliation is crucial." *Id.* at 1171. A prosecutor is especially free prior to trial to exercise discretion in how he or she goes about prosecuting cases. *See Goodwin*, 457 U.S. at 382 ("A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.").

The Government moved to seize assets after Backpage and its related entities and Ferrer pleaded guilty and stipulated to forfeitures. The CDCA found probable cause for them. These seizures, as discussed above, comply with the Fifth and Sixth Amendments. This Court will not find a presumption of vindictive prosecution where the Government's seizures have passed constitutional muster.

5. Disclosure of Communications

Defendants contend they are entitled to discovery of information relating to the government's purposes in seizing IOLTA accounts. They also request disclosure of all

cases where the Government has seized post-indictment, but prior to trial, attorneys' fees from defendants' counsel of choice. The only support they provide for these requests is "Rule 16 of the Federal Rules of Criminal Procedure." (Doc. 456 at 17). They do not provide which subsection of the rule purportedly commands it nor do they provide any statutes or case law. Rule 16(a)(2) excepts "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" from disclosure. Defendants do not attempt to explain why this exception would not apply. Therefore, the Court will not grant Defendants' requests.

### 6. Vaught and Padilla's Motion to Withdraw Counsel

Vaught and Padilla presented an alternative motion, if the motion to dismiss was denied, to withdraw their counsel pursuant to LRCrim 57.14 and LRCiv 83.3, as Vaught and Padilla no longer have funds to pay them. The Court is satisfied that this constitutes good cause for withdrawal. *See Addis v. McKinley Medical, LLC*, Civ. No. 07-1318-AA, 2011 WL 846688, at *1 (D. Or. March 8, 2011). The Court will direct the appointment of either the Federal Public Defender or counsel from the Criminal Justice Act Panel.

### III. Conclusion

THERFORE, Defendants' Motion to Dismiss due to Government Interference (Doc. 476) is **DENIED**. IT IS FURTHER ORDERED:

1. Defendants' request for disclosure of communications relating to the Government's decision to seize attorney trust accounts is **DENIED**.

2. Defendants Padilla and Vaught's motion to withdraw counsel and applications and consent for withdrawal of counsel (Docs. 556, 558) are **GRANTED**. The Clerk of Court shall appoint the Federal Public Defender or counsel from the Criminal Justice Act panel for the District Court to represent Defendants Padilla and Vaught;

3. Defendants Motion for Hearing on Motion to Dismiss due to Government Interference (Doc. 501) is **DENIED**.

Dated this 1st day of May, 2019.

Honorable Susan M. Brnovich
United States District Judge