# **Exhibit B**





March 4, 2019

**Via Overnight Mail and Electronic Link**

Kevin M. Rapp
Assistant United States Attorney
United States Attorney's Office
District of Arizona
2 Renaissance Square
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
E-Mail: kevin.rapp@usdoj.gov

      Re:   *United States v. Lacey, et al.*, 18-CR-0422-PHX-DLR
            Defendants' Joint Reciprocal Rule 16 Production

Dear Mr. Rapp:

     Defendants' Rule 16 obligations are reciprocal in nature and are therefore limited by the government's failure to comply with its own Rule 16 obligations in a timely fashion. Because the government has not completed its Rule 16 disclosures in this case, Defendants are not obligated to make reciprocal disclosures at this time. *See* Fed. R. Crim. Proc. 16(b)(1)(A) (a defendant's Rule 16 obligations are triggered only if "the government complies" with its own Rule 16 obligations).

     Substantial discovery—tens of billions of pages—are still outstanding. On December 10, 2018, you wrote that the government "seized 32 servers and three hard drives located in Tucson at an Internet service provider known as Desert Net. . . In the last subpoena we wrote, we estimated the capacity at approximately 500 [terabytes] or ½ petabyte (PB)" of data from the Backpage.com servers. *See* Rapp Dec. 10, 2018 Letter at page 1. You then listed that, in addition to the Desert Net servers of approximately 500 terabytes of data, the government also seized "[f]ive additional servers from Dallas, TX" and "[i]nvestigating agents also located 40 servers at a datacenter in Amsterdam, the Netherlands." *Id.* at page 2. Defendants have not received *any of this* discovery to date. This will be the subject of a forthcoming motion, but it also limits Defendants' ability to meaningfully analyze the case and make Rule 16 disclosures.

     There are numerous additional examples of the government's failures, not all of which are identified here.



First, the government has not complied with the Court's Scheduling Order, which required the government's initial compliance with Rule 16 discovery by December 3, 2018. *See* 18-CR-0422-PHX-SPL at Doc. 131. On February 22, 2019, the government produced voluminous Rule 16 discovery. Defendants received this discovery production on February 25, 2019 and have not yet had an opportunity to review it. However, the government's cover letter makes clear that this production includes 11,346 pages of BDO Consulting Documents, Reports of Interviews, and other FBI Case Documents. In addition to these 11,346 pages of Rule 16 discovery, the government also produced, for the very first time, six DVDs containing reports of interviews of cooperating Defendant Daniel Hyer, jail calls from April 2018 for Defendants Michael Lacey and James Larkin, and documents pertaining to Victim 15. No explanation was provided for the production of this Rule 16 discovery nearly three months after the deadline provide for in the Court's Scheduling Order. Further, additional Rule 16 discovery (such as items taken from Defendants at the time of their arrest nearly one year ago, including their cell phones, computers, and other documents and items taken from Backpage.com in addition to the servers such as personal computers and other documents) have yet to be produced.

Second, the government has apparently moved *in camera* to defer the disclosure of Carl Ferrer's Jencks Act statements. Mr. Ferrer is the government's key cooperator whose testimony will be central to the government's case at trial. Given that it is public knowledge that Mr. Ferrer has entered into a "cooperation" deal with the government, it is unclear what justification the government could possibly have for seeking to defer disclosure of Ferrer's statements. Without such statements, Defendants cannot meaningfully analyze the government's case, and certainly cannot analyze what evidence the defense may present to rebut his anticipated testimony. Given that the government did not disclose the existence of the motion to defer disclosure of the Ferrer statements to the defense, Defendants do not know what other evidence the government is withholding at this time. Further, the government seized Ferrer's emails and has yet to produce these as well.

Third, Reggie Jones explained during a telephone call on February 20, 2019, that the government has retrieved **only nine** of the 40 Backpage.com servers it seized in Amsterdam through the MLAT process. Of those nine servers, it has imaged only five. Mr. Jones represented that the servers which have yet to be produced to the defense contain at least 500 terabytes of data, the equivalent of ~37.5 billion pages. When that material is finally produced, it will substantially dwarf the government's document productions in this matter to date.

Nor has the government identified a timeline for when it anticipates retrieving the remaining 31 servers located in Amsterdam. Defendants do not have access to this data given that the government has seized the servers through the MLAT process but has not produced it to the defense. The size of those remaining servers is believed to be enormous, and they are believed to contain important evidence relevant to the defense of this matter.



Fourth, as to the five servers that the government imaged, Mr. Jones told us they consist of the marketplace of advertisements posted on Backpage.com, the very backbone of the government's allegations in the indictment. Your December 10, 2018 letter represented that "[t]hese raw database files cannot be simply reviewed or loaded into a viewer to reconstruct the data. We are currently working on a solution to review these database files and correlate the images posed to the image server to the posts from the database files." However, Mr. Jones and others working for the government recently told us that the government does not have the resources to recreate the relational database and that the forthcoming discovery will be in disparate, uncorrelated files of hundreds of millions of individual advertisements *disconnected from the data underlying those advertisements*. Thus, due to the government's actions, we cannot yet tell, from the information the government has provided, whether it will be possible to determine when a given advertisement was posted, who posted it, how it was paid for, whether any information was added to or deleted from it, whether it was reported to authorities or NCMEC, etc. and, as a result, the information contained on these servers may now be functionally useless

In a case where the government alleges that Defendants intended to facilitate prostitution through the publishing of specific advertisements, it is unfathomable that the government would deconstruct the servers containing these very advertisements in such a way that effectively transformed the underlying data into hundreds of millions of puzzle pieces that no party – not even the government – is capable of putting back together.

Fifth, the government has not provided discovery related to money laundering charges, including a failure to produce the servers that contain payment processing data for Backpage.com. This material is critical to Defendants' assessment of the government's money laundering allegations. To make matters worse, Mr. Jones explained that *the government does not know where the servers that contain this material are located* and thus has no idea when or if it will ever be produced to the defense.

Given that the government is nowhere close to producing all of the material that it represented to the Court and Defendants it would produce, and only recently began producing Jencks Act material, Defendants are hobbled in their ability to make meaningful Rule 16 disclosures at this time.

Despite the fact that disclosure by the defense is not required given the government's failure to complete its own disclosures, and despite the government's egregious failure to produce the most basic evidence in this case, Defendants hereby advise you that they potentially might use the following material at trial:

- Material produced by the government in discovery

- Defense Bates pages DEFENSE000001 through DEFENSE004461



Defendants reserve the right to supplement these disclosures in response to the government's continuing disclosures and obligations and as additional materials become available to defendants.

Very truly yours,

BIENERT | KATZMAN PLC
*s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Thomas H. Bienert, Jr.
Attorneys for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin E. McCampbell
Attorneys for Michael Lacey

FEDER LAW OFFICE PA
*s/ Bruce S. Feder*
Bruce S. Feder
Attorneys for Scott Spear

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW PC
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

PICCARRETA DAVIS KEENAN FIDEL PC
*s/ Michael L. Piccarreta*
Michael L. Piccarreta
Attorneys for Andrew Padilla

KARP & WEISS PC
*s/ Stephen M. Weiss*
Stephen M. Weiss
Attorneys for Joye Vaught



cc:   AUSA Reginald E. Jones (Reginald.Jones4@usdoj.gov)
      AUSA Andrew Stone (Andrew.Stone@usdoj.gov)
      AUSA Peter Kozinets (Peter.Kozinets@usdoj.gov)
      AUSA Margaret Perlmeter (Margaret.Perlmeter@usdoj.gov)
      AUSA John Kucera (John.Kucera@usdoj.gov)
      Thomas H. Bienert, Jr.
      Paul Cambria, Jr.
      Gary Lincenberg
      Bruce Feder
      Michael Piccarreta
      Stephen Weiss