Thomas H. Bienert, Jr. (CA 135311, admitted *pro hac vice*)
Whitney Z. Bernstein (CA 304917, admitted *pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Counsel for James Larkin*

Paul J. Cambria, Jr. (NY 1430909, admitted *pro hac vice*)
Erin E. McCampbell (NY 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Counsel for Michael Lacey*

Additional attorneys listed on next page

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Michael Lacey, *et al.*,<br><br>　　　　　　Defendants. | NO. CR-18-00422-PHX-SMB<br><br>**DEFENDANTS' PUBLICLY FILED OPPOSITION TO CARL FERRER'S MOTION TO QUASH SUBPOENA (DOC. 739)**<br><br>(Oral argument requested) |

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE, P.A.
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Counsel for Scott Spear*

Gary S. Lincenberg (CA State Bar No. 123058, admitted *pro hac vice*)
Ariel A. Neuman (CA State Bar No. 241594, admitted *pro hac vice*)
Gopi K. Panchapakesan (CA State Bar No. 279586, admitted *pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Counsel for John Brunst*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Ste. 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Counsel for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Counsel for Joye Vaught*

# TABLE OF CONTENTS

Background..................................................................................................................................1

    I.    Procedural History..................................................................................................1

    II.    Ferrer has provided information to the government
          about many of the issues raised in Defendants' Motion to Compel...............................3

    III.    Ferrer has expressly waived his Fifth Amendment rights.....................................6

Argument .....................................................................................................................................7

    I.    Compliance with the Subpoena is neither unreasonable nor oppressive................8

    II.    Ferrer's selective invocation of the Fifth Amendment should
          not preclude his material and relevant testimony at the hearing..............................9

    III.    Service of a new subpoena in compliance with Rule 17(d)
          supports denial of the Motion.......................................................................11

Conclusion.................................................................................................................................12

Defendants James Larkin, Michael Lacey, John Brunst, Scott Spear, Andrew Padilla, and Joye Vaught, by and through their undersigned attorneys, hereby publicly file the instant opposition to Carl Ferrer's Motion to Quash Subpoena Served by Defendant James Larkin ("Motion") (Doc. 739). This motion refers to Ferrer's under seal plea agreements in California, Texas, and Arizona, and various memorandums of interviews that are protected by Docs. 730 and 731. Accordingly, this publicly filed version is redacted; the unredacted motion was filed under seal at Docs. 748 and 749.

Ferrer's testimony at October 3, 2019's evidentiary hearing will address issues central to this Court's resolution of Defendants' First Motion to Compel Discovery on Behalf of All Defendants ("Motion to Compel") (Doc. 643), and he has failed to provide any legitimate grounds for the Court to grant his Motion. Consequently, this Court should deny the Motion.

## BACKGROUND

### I. Procedural History

On June 19, 2019, Defendants filed their Motion to Compel, asserting that as a matter of due process, Defendants must have access to the data in the I.T. systems that operated the website www.backpage.com with the same functionality and in the same condition and configuration as existed at the time the government seized those systems. Before the government seized the Backpage I.T. systems, the systems could, for example, readily produce copies of particular ads and all other ads posted by the same user (with pertinent background and administrative information, including information on Backpage's actual practices in screening, blocking, removing, and reporting ads), as well as a wealth of statistical data regarding the number of ads posted to the website, blocked from the website, and the like. Defendants explained that, in past civil litigation, they were able to disprove allegations concerning particular ads by using the functionality in the I.T. systems to search for and produce accurate records related to those.

Now, when the stakes are much higher, the government has seized the I.T. systems and left Defendants without the ability to use the functionality of the systems to locate information to defend the instant charges. Instead, the government has disclosed just some of the data from the I.T. systems, but in a static, imaged manner that has none of the functionality of the systems before seizure and in a format that is not readily usable. Indeed, the data was disclosed in a manner that was akin to the

government shredding a document, providing a defendant with the shreddings, and claiming that it had fulfilled its discovery obligations with respect to that document because some of the data in the original document was contained in the shreddings. The data that has been produced to date is useless. *See* Declaration of Tami Loehrs, Exhibit A of Defendants' Reply In Support of Motion to Compel (Doc. 717-1). However, the data from the I.T. systems existed in its original relational and functional capacity prior to the government's seizure, the government could have undertaken measures to preserve the data in that capacity, it appears that the government failed to undertake even the most rudimentary preservation measures, the data is not currently available to Defendants in a reasonably usable form, and Defendants' ability to access any data from those systems has been massively degraded—if not eliminated.

The government opposed Defendants' Motion to Compel, claiming that the government had disclosed the data from the I.T. systems to Defendants in the manner in which the government received it, that the data is "usable" in the format produced, and that the government is required to do no more. (*See* Doc. 696.)

On September 13, 2019, the parties appeared for argument on the Motion to Compel. In light of the parties' disagreement concerning whether the government had produced the data in the same form in which it first obtained it and whether the data produced was in a reasonably usable form, this Court ordered the parties to appear for an evidentiary hearing on October 3, 2019 to present witness testimony. Among other issues, Defendants intend to question witnesses on the state of the Backpage I.T. systems before the government's seizures, the information that was available from those systems before and after the government's seizures, and the nature of the data disclosed by the government to the Defendants.

On September 17, 2019, Defendant James Larkin served a subpoena on Carl Ferrer, the government's lead witness in this case, who was the former Chief Executive Officer of Backpage, seeking his appearance and testimony at the hearing ("Subpoena"). On September 18, 2019, counsel for Ferrer indicated that, if compelled to attend, Ferrer would invoke his Fifth Amendment rights to every question concerning his involvement with Backpage. On September 23, 2019, Ferrer filed the instant Motion, seeking an order from this Court quashing the Subpoena. (*See* Doc. 739.)

2

In an effort to resolve the issue of Ferrer's appearance without motion practice, counsel for Mr. Larkin contacted the government, reminded the government that Ferrer's plea agreements require him to attend all necessary hearings, and requested that the government make him available at the hearing. (*See* Exhibit A, Sept. 24, 2019 email from W. Bernstein to K. Rapp.) The government refused without explanation.

**II.   Ferrer has provided information to the government about many of the issues raised in Defendants' Motion to Compel.**

Ferrer is in a unique position to provide testimony about the Backpage I.T. systems that is relevant and material to this Court's resolution of the Defendants' Motion to Compel. Ferrer is very knowledgeable about the data maintained by those systems and the capabilities of the systems to search for and aggregate data. Notably, Ferrer repeatedly provided information relevant and material to this hearing to the government during his proffer sessions. His repeated admissions undermine any claim that Defendants are on a "fishing expedition." Instead, they seek limited testimony about the functionality of the systems that Ferrer has already discussed with the government. For example, in a summary of his ▬▬▬ proffer session, under the subsection ▬▬▬ ▬▬▬ Ferrer knew and told the government:

- ▬▬▬ ▬▬▬ (*See* Exhibit B ▬▬▬
- ▬▬▬

Subsequently, during ▬▬▬ proffer session with the government, Ferrer knew and told the government:

- ▬▬▬ (*See* Exhibit C,
- ▬▬▬

3

- ███████████████████████████████████████████

During ███████ proffer session with the government, Ferrer knew and told the government:

- ███████████████████████████████ (*See* Exhibit D████████████████)███
- ███████████████████████████████████
- ███████████████████████████████████████████████████████

At another proffer session with the government ████████, Ferrer knew and told the government:

- ███████████████████████████████ (*See* Exhibit E)███████████
- ███████████████████████████████

Subsequently, during ████████ proffer session with the government, Ferrer knew and told the government:

- ███████████████████████████████ (*See* Exhibit F)███████
- ███████████████████████████████████████████
- ███████████████████████████████████

4

1  • ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
2
3  • ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
4
5  • ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
6

Then, at ▓▓▓▓▓▓▓▓▓▓▓ proffer session with the government, Ferrer knew and told the government that

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (See Exhibit G, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Critically, running searches for "records related to ads" is one of the things Defendants need to be able to do—but cannot given the current state of the data. On that same date, Ferrer also knew and told the government:

• ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

• ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

• ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

• ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

• ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

In addition to those statements, as a condition of his plea in the related case ▓▓▓▓ ▓▓▓▓▓▓▓▓ Ferrer agreed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓ (See Exhibit H, ▓▓▓▓▓▓▓▓▓▓▓▓ ▓ Based on this admission, there can be no one in a better position than Ferrer to tell this Court about the state of the servers at the time the government seized them.

5

1   Similarly, in the plea agreement he reached with ▬▬▬▬▬▬▬▬
2   ▬▬▬▬ in the case captioned ▬▬▬▬▬▬▬▬, Ferrer agreed to ▬▬▬▬▬▬▬
3   ▬▬▬▬▬▬▬▬▬▬▬▬ (*See* Exhibit I, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
4   ▬▬ Defendants believe that this transactional data includes the type of data that would result from
5   searches conducted by Ferrer (or other individuals at his direction) in response to subpoena requests
6   from law enforcement, ads reported to NCMEC, and responses directed by Ferrer in the course of
7   prior civil litigation, such as the attached declarations. (*See* Exhibit J, ▬▬▬▬▬▬▬▬▬
8   ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
9   Exhibit K, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
10  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬; Exhibit L, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
11  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬) As those declarations demonstrate, Ferrer
12  regularly provided sworn statements about the servers and the data that he was (or others at his
13  direction were) able to produce based on conducting searches of the I.T. systems, when they were
14  functional. (*See id.*)
15  By virtue of his statements made during proffer sessions, pleas, and declarations, Ferrer has
16  indicated that he has knowledge that is relevant and material to the issues before this Court at the
17  October 3, 2019 evidentiary hearing concerning the functionality of the servers prior to the
18  government's seizures and the process by which the government "shut down" Backpage.

**III.    Ferrer has expressly waived his Fifth Amendment rights.**

20  In addition to providing the government with inculpatory information during his numerous
21  proffer sessions and thereby waiving his Fifth Amendment rights, Ferrer has expressly agreed to waive
22  his Fifth Amendment rights and to testify at any proceedings prior to his sentencing before this Court
23  as part of his three guilty pleas. For example, in the plea agreement he reached with ▬▬▬▬▬
24  in the case captioned ▬▬▬▬▬▬▬▬▬, Ferrer agreed to ▬▬▬▬▬▬▬▬▬
25  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
26  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
27  ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ (*See* Exhibit
28  M, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

6

1  Further, in his written plea agreement with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮ in the case captioned ▮▮▮▮▮▮▮▮▮▮▮▮▮ Ferrer agreed
3  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
4  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exh. I ▮▮▮
7  Finally, in the plea agreement in the related case ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, Ferrer
8  expressly agreed to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Exh. H ▮▮▮▮▮▮ Additionally, that agreement
10 contemplates that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the
11 government has included him on their witness list for the trial in this case.

12 Having agreed to waive his Fifth Amendment rights in three separate plea agreements,
13 agreeing to testify at any proceedings in his state cases or any proceedings in any federal court prior to
14 his sentencing in this matter, and having actually waived his rights by meeting with the government
15 for numerous proffer sessions, he now seeks to selectively invoke the privilege to Defendants'
16 detriment. This selective waiver is even more troubling because the government has identified Ferrer
17 as one of its trial witnesses (and Ferrer's counsel identifies him in the motion to quash as "the
18 government's key witness against" Defendants) (Doc. 739 at 3), meaning that he will provide
19 testimony in this case even though he previously claimed that he could not do so, and even though he
20 has agreed to provide testimony in any pretrial proceedings in this case, any other federal case, and the
21 Texas and California cases, all before *sentencing*, the very basis which he now claims legitimizes his Fifth
22 Amendment challenge to compliance with the Subpoena.

## ARGUMENT

This Court should deny the Motion. Ferrer has failed to provide any valid justification for quashing the Subpoena. Compliance with the Subpoena is neither unreasonable nor oppressive because Ferrer has knowledge that is relevant and material to the issues before this Court at this hearing. Moreover, his selective invocation of his Fifth Amendment rights should not be condoned,

7

particularly when his invocation deprives Defendants of the ability to present information about a matter tangential to the crimes charged. Ferrer has been identified as a witness who will testify for the government at trial, by the government and by his counsel in the Motion, all before sentencing, which entirely undermine the basis he claims supports his invocation of the Fifth Amendment now.

**I.      Compliance with the Subpoena is neither unreasonable nor oppressive.**

This Court should deny the Motion. Under Rule 17 of the Federal Rules of Criminal Procedure ("Rule 17"), this Court should only grant a motion to quash a subpoena when compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Courts must conduct a "case-by-case-inquiry" as to whether a subpoena seeking testimony from a witness is unreasonable or oppressive, and, as such, "there can be no absolute rule" which "enable[s] an escape from case-by-case judgment." *See United States v. Bergeson*, 425 F.3d 1221, 1226 (9th Cir. 2005) (recognizing that the standard for reviewing motions to quash subpoenas seeking documents—whether compliance is "unreasonable or oppressive"—is the same as that for subpoenas seeking documents).

Courts have routinely denied motions to quash where the movant fails to meet its burden of showing that a subpoena is unreasonable and oppressive. *See In Re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1121 (N.D. Cal. 2006) (denying motion to quash subpoena notwithstanding movant's assertion of the First Amendment and concerns about maintaining relationships with confidential news sources); *United States v. Camez*, 2013 WL 6158402, at *2-3 (D. Nev. 2013) (denying motion to quash government subpoena to non-party custodian of records even though custodian provided a certificate of authentication for the records at issue).

This Court should reject Ferrer's claim that compliance with the subpoena would be unreasonable and oppressive. (*See* Mot. at 6-8.) The sole basis for this claim is "Ferrer's lack of knowledge about the subject of the hearing." (*Id.* at 6.) Ferrer narrowly defines the issue to be resolved at the hearing as a "highly technical" issue pertaining to a discovery dispute between the government and the Defendants concerning the government's production of "imaged" data. (*Id.* at 7.) Ferrer is wrong on both his characterization of the issue before this Court and his claimed lack of knowledge.

8

First, Defendants seek Ferrer's testimony about the data maintained in, and the reporting capabilities of, Backpage's I.T. systems before they were seized by the government. Defendants do not intend to ask Ferrer about the government's subsequent method of disclosure of data from the servers to Defendants or the technical intricacies of how the systems worked. Nor do Defendants intend to ask Ferrer about his communications with his attorneys. Under these circumstances, this Court should disregard Ferrer's attempt to claim lack of knowledge by mischaracterizing the issue before this Court. *See Camez*, 2013 WL 6158402, at *2-3 (denying motion to quash and ignoring movant's mischaracterization of the issue before the court).

Second, when the issue of Ferrer's testimony is properly defined, it is clear that Ferrer has knowledge that is both relevant and material to resolution of the Defendants' Motion to Compel. Ferrer also repeatedly provided the government with information about the I.T. systems, including their operation, capabilities, and data stored in them. (*See above* Background Point II (discussing Ferrer's proffer memos).) Indeed, there is **no one** in a better position to tell this Court about the state of the servers at the time of the government's seizure than the person who pledged to assist the government to "immediately shut down" the Backpage website.

### II. Ferrer's selective invocation of the Fifth Amendment should not preclude his material and relevant testimony at the hearing.

This Court should disregard Ferrer's selective invocation of the Fifth Amendment. By virtue of his three plea agreements, which satisfied all charges, he expressly agreed to waive his right to invoke the Fifth Amendment and agreed to appear and provide testimony at *any proceeding* in *any federal case* regardless of whether he had been sentenced in his cases, the very basis that he now claims legitimizes his Fifth Amendment claim. (*See above*, Background III.) He then met with the government on numerous occasions, providing the government with inculpatory information. Moreover, the government has identified him as one of their trial witnesses (and his counsel has confirmed that he expects to testify at trial), meaning that he will testify at trial against the Defendants before he is sentenced, the very basis for his invocation.

Critically, it should be no surprise to Ferrer that his testimony is needed at a proceeding prior to his sentencing, because he specifically agreed to provide such testimony as a condition of his plea agreements. It would be fundamentally unfair to allow Ferrer to testify at the trial, but not at this pre-trial proceeding on an issue for which he has material and relevant information, particularly because the issue is tangential to the crimes charged and is unlikely to result in questioning of any kind that could implicate Ferrer in further wrongdoing beyond that to which he has already pleaded guilty three times. The government has the ability to order him to appear at any proceeding at any time, but the government has refused to do so for this hearing (*see* Exh. A), likely because he has stated on numerous times that he has information that is patently detrimental to the government's claim that they did not mishandle the electronically stored information in the Backpage I.T. systems. The government's blatant gamesmanship—the hiding of their key witness when it suits their purposes—should not be condoned.

The cases upon which Ferrer relies are readily distinguishable. For example, in *United States v. Berberian*, 767 F.2d 1324 (9th Cir. 1985), the government served a subpoena on a co-defendant, commanding him to appear at the severed trial of his co-defendant, to repeat testimony that he had given during a suppression hearing, which implicated both co-defendants in the crime charged. *See id.* at 1325. The recipient of the subpoena was being asked to testify about the crimes charged, and had not waived his Fifth Amendment privilege on *any* occasion (let alone three times), nor had he agreed to provide testimony prior to sentencing. The Court's determination that his Fifth Amendment rights remained intact despite his testimony at a suppression hearing has no implication here for Ferrer's attempts to resurrect his long-ago waived Fifth Amendment privilege. Indeed, the Court was concerned with the possibility of state liability arising from the subpoena recipient's compelled testimony at the co-defendant's trial. *See id.* at 1326. There is no such concern here. Defendants seek testimony on an issue that is tangential to the crimes charged—the state of the Backpage I.T. systems at the time the government seized them, the data contained in those systems, and the ability of the systems to search for and report on that data when the systems were functional (to allow comparison to the data the government has produced to Defendants), none of which touches upon the crimes

1  charged.  Indeed, as Ferrer describes his anticipated testimony, he would be providing nothing
2  more than information related to a "discovery dispute between the government and
3  Defendants" (Mot. at 7), which is a far cry from the admission of guilt sought by the prosecutors
4  in the *Berberian* case, and in sharp contrast to Ferrer who has already pleaded guilty three times.

5  Similarly, in *United States v. Trejo-Zambrano*, 582 F.2d 460 (9th Cir. 1978), the subpoena
6  recipient had not signed a written plea agreement waiving his Fifth Amendment rights nor
7  agreed to testify at any proceeding in any federal court prior to his sentencing (let alone three
8  such agreements as we have here).

9  Finally, the blanket refusal to answer questions that Ferrer seeks improperly broadens
10 the scope of the Fifth Amendment privilege, where, in this context, the anticipated testimony is
11 limited to the state of the equipment Ferrer used (and directed others to use) in the course of
12 his business.  As the Ninth Circuit has explained, it is error for a court to allow a blanket refusal
13 to provide testimony.  Instead, proper invocation "requires that the Fifth Amendment claim be
14 raised in response to specific questions propounded . . . . This permits the reviewing court to
15 determine whether a responsive answer *might lead* to injurious disclosures.  Thus a blanket refusal
16 to answer any question is unacceptable." *United States v. Moore*, 682 F.2d 853, 856 (9th Cir. 1982)
17 (concluding that the district court erred when it accepted the witness's blanket refusal to testify).
18 Indeed, this approach is appropriate because "a reviewing court cannot possibly anticipate every
19 question that might be asked and conclude that each would present a distinct possibility of self-
20 incrimination if answered." *Id.* at 856 n.1 (quotations omitted).  Here, because Defendants seek
21 limited testimony from Ferrer about an issue tangential to the crimes charged which will not
22 lead to "injurious disclosures," this Court should order Ferrer to appear and to testify.

**III.    Service of a new subpoena in compliance with Rule 17(d) supports denial of the Motion.**

Mr. Larkin's counsel wrote to Ferrer's counsel to establish that she would accept service of the Subpoena on Ferrer's behalf.  Arrangement of witness and travel fees was to follow. Regardless, Defendants have since sought a subpoena for Ferrer that includes the required witness-attendance fees and legal mileage allowances and anticipate service of all on Monday,

September 30, 2019.  Consequently, this Court should deny the Motion because this technical challenge to the original Subpoena will be moot.

## CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Court deny the Motion in its entirety.

RESPECTFULLY SUBMITTED this 30th day of September, 2019,

BIENERT | KATZMAN PC
*s/ Whitney Z. Bernstein*
Whitney Z. Bernstein
Thomas H. Bienert, Jr.
Attorneys for James Larkin

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW
*s/ Ariel A. Neuman*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

FEDER LAW OFFICE, P.A.
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

| | |
|---|---|
| 1 | On September 30, 2019, a PDF |
| 2 | version of this document was filed with |
| 3 | Clerk of the Court using the CM/ECF |
| | System for filing and for Transmittal |
| 4 | Of a Notice of Electronic Filing to the |
| 5 | Following CM/ECF registrants: |
| 6 | |
| | Kevin Rapp, kevin.rapp@usdoj.gov |
| 7 | Reginald Jones, reginald.jones4@usdoj.gov |
| 8 | Peter Kozinets, peter.kozinets@usdoj.gov |
| | John Kucera, john.kucera@usdoj.gov |
| 9 | Margaret Perlmeter, margaret.perlmeter@usdoj.gov |
| 10 | Andrew Stone, andrew.stone@usdoj.gov |
| | Nanci Clarence, nclarence@clarencedyer.com |
| 11 | Jonathan Baum, jbaum@clarencedyer.com |

13

DEFENDANTS' PUBLICLY FILED OPPOSITION TO CARL FERRER'S MOTION QUASH SUBPOENA