MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

JOHN J. KUCERA (Cal. Bar No. 274184, john.kucera@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1200
Los Angeles, CA 90012
Telephone (213) 894-3391

BRIAN BENCZKOWSKI
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-422-PHX-SMB |
| Plaintiff, | |
| v. | **UNITED STATES' COMBINED RESPONSE TO DEFENDANT LACEY'S MOTIONS TO SUPPRESS (Doc. 775 & 778) AND DEFENDANT LARKIN'S MOTION TO SUPPRESS (Doc. 786)** |
| Michael Lacey, et al., | |
| Defendants. | |

The United States respectfully submits this combined response to Defendant Lacey's Motions to Suppress (Doc. 775 & 778) and Defendant Larkin's Motion to Suppress.  (Doc. 786.)  Defendant Lacey filed Doc. 778 on behalf of all defendants. Because Defendants' motions are similar, the government has combined its responses into

one consolidated response for judicial economy and efficiency.    The government respectfully requests the Court deny all three Motions to Suppress (Doc. 775, 778, & 786), deny Defendants' request for a *Franks* hearing, and deny Defendant's request to reserve the ability to file substantive motions regarding the "Arizona Email Warrant."  (Doc. 778.)

## MEMORANDOM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In 2016, a federal grand jury in Arizona began investigating the website www.backpage.com along with its owners, principals, and employees for violations of federal criminal statutes.   In April 2018, a federal grand jury in Arizona returned an indictment against Defendants in the instant case.  During the course of the investigation, the government applied for, and obtained evidence through several search and seizure warrants.  The warrants at issue for this consolidated response and relevant case activities are as follows:

**a.  16-305 MB – Google/Ferrer Warrant.**

This warrant authorized the government to obtain from Google, Inc. all information associated with the email address carl.ferrer@backpage.com.   FBI Special Agent (SA) Amy Fryberger was the affiant and the warrant was authorized by United States Magistrate Judge Michelle H. Burns on July 15, 2016.

**b.  17-275 AC – CAL DOJ Warrant.**

This was an overlay warrant to the California Attorney General's Office (CAL DOJ) seeking information CAL DOJ obtained through its own investigation of backpage.com and its owners, principals, and employees.  The warrant sought information and records related to nine email addresses in the possession of CAL DOJ,  for Backpage employees and  Village  Voice  Media  owners:  carl.ferrer@backpage.com;  carl@backpage.com; ferrer.carl@gmail.com;            andrew@backpage.com;            joye@backpage.com; adam@backpage.com;  abuse@backpage.com;  jim.larkin@villagevoicemedia.com;  and michael.lacey@villagevoicemedia.com.  FBI SA Amy Fryberger was the affiant and the

warrant was authorized by United States Magistrate Judge Allison Claire in the Eastern District of California on April 18, 2017.

### c.  Indictment.

On March 28, 2018, an Arizona federal grand jury charged Backpage's owners, principals, and employees with conspiracy, violations of the Travel Act, and money laundering, and included criminal forfeiture allegations.  (Doc. 3.)

### d.  Carl Ferrer and Backpage Plead Guilty to Conspiracy.

On April 5, 2018, Backpage and its CEO and 100% owner, Carl Ferrer, pleaded guilty to conspiracy, admitted the great majority of Backpage's paid ads were for prostitution, and consented to shut down the Backpage website and forfeited all assets traceable to or involved in the crimes.  (CR18-464-PHX-SMB, Doc. 7.)  Also on April 5, 2018, Mr. Ferrer, as the 100% owner and CEO of Backpage, pleaded guilty to a money laundering conspiracy on behalf of Backpage and its corporate entities: Backpage.com LLC; Website Technologies LLC; Posting Solutions LLC; Amstel River Holdings, LLC; Ad Tech BV PA; and UGC Tech Group BV.  (CR18-465-PHX-SMB, Doc. 8-1 through 8-6.)

### e.  18-9126 MB – Residential Property Search Warrant.

This warrant relates to the search and seizure of three pieces of real property (A1: Lacey's Paradise Valley home, A2: A Sedona home associated with Lacey; A3: Larkin's Paradise Valley home) and A4: one safe deposit box belonging to Defendant Spear.[1]  This warrant sought documents and records related to Lacey and Larkin's finances, assets, and expenditures.   It also sought evidence of wealth, which included:  property, currency, artwork, jewelry, and vehicles, among others, purchased with proceeds of criminal activity. FBI SA Amy Fryberger was the affiant and the warrant was authorized by United States Magistrate Judge Eileen S. Willett on April 5, 2018.

---

[1] The search of Spear's safe deposit box is not at issue; Lacey and Larkin do not have standing to challenge that portion of the warrant and Spear has not filed any motions regarding this search.

**f.  Daniel Hyer Pleads Guilty to Conspiracy.**

On August 17, 2018, Daniel Hyer, Backpage's Sales and Marketing Director, pleaded guilty to conspiracy and admitted that one of his primary responsibility was to increase the number of ads posted in Backpage, a process referred to by Backpage as "preboarding" or "aggregation," where they would identify "escort" and "adult" ads on other websites and invite them to post ads on Backpage's website in hopes of securing their future business.  (Doc. 271.)  Mr. Hyer admitted knowing that the majority of ads that he and others at Backpage were creating through aggregation were actually offering illegal prostitution services and that his efforts, along with others at Backpage, resulted in large revenue and website traffic growth for Backpage.  *Id.*

**g.  18-8365 MB – Digital Devices Warrant.**

This warrant authorized the searches of the electronic and digital devices seized from the searches of Lacey's and Larkin's homes in SW 18-9126 MB.  This warrant sought correspondence involving Defendants that related to backpage.com, the sale of backpage.com, client payment information, aggregation (the Dallas Plan), moderation, The Erotic Review, and bank statements and financial records for Defendants Lacey and Larkin.  IRS-CI SA Richard Robinson was the affiant and the warrant was authorized by United States Magistrate Judge John Z. Boyle on August 31, 2018.

**h.  18-8364 MB – Datto Warrant.**

This warrant authorized the search of Datto, Inc, (Datto) for the contents of 26 email accounts related to Backpage and Backpage related entities.   Datto was a cloud service that provided companies with a way to backup and recover cloud service data.  This warrant sought correspondence involving Defendants related to backpage.com, the sale of backpage.com, client payment information, aggregation (the Dallas Plan), moderation, The Erotic Review, and bank statements and financial records for Lacey and Larkin. IRS-CI SA Richard Robinson was the affiant and the warrant was authorized by United States Magistrate Judge John Z. Boyle on August 31, 2018.

Defendants refer to this warrant as the "Arizona Email Warrant." (Doc. 778 at 8.) In his motion, Lacey stated neither he nor his co-defendants have been able to locate the warrant discussed in an FBI-302 (Doc. 801-1) and that the government had not yet responded to his October 11, 2019 email request for a copy or its Bates number. (Doc. 801-2.) Lacey is wrong. The government responded within minutes to Lacey's October 11 request and provided defense counsel with a Bates numbered copy (DOJ-BP-0004895859) of the Datto warrant. (Oct. 11, 2019 email from R. Jones, attached as Exhibit A.) In fact, all defense counsel received a copy of the Datto warrant several weeks earlier when it was produced in Discovery Production #11. (Sept. 23, 2019 letter from R. Jones, attached as Exhibit B.) Because all Defendants were in possession of the Datto warrant prior to the October 18, 2019 substantive motions deadline and failed to make any challenges to it, they have now waived their right to do so. (Doc. 664.)

## II.  ARGUMENT

### a.  The Meaning of Probable Cause.

A successful application and affidavit to search a person or property requires probable cause. Probable cause requires only a reasonable belief that a subject has committed a crime, which reflects a balance between the privacy interests of individuals and the community's need for protection from criminal activity. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Defendants significantly overstate the level of proof required for a successful application. Finely-tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, have no place in a judge's decision on whether there is a probability of criminal activity. *Illinois v. Gates*, 462 U.S. 213, 235 (1983); *see also United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (finding "*Gates* itself marked a return to the 'totality of the circumstances' test and emphasized that probable cause means 'fair probability,' not certainty or even a preponderance of the evidence"). Once a search warrant is approved, a judge's determination of probable cause is entitled to great deference. *Id.* at 236; *United States v. Reeves*, 210 F.3d 1041, 1046 (9th Cir. 2000). In

fact, even in cases where probable cause is doubtful or marginal, preference is to be accorded to warrants.  *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

The Fourth Amendment requires that no warrants shall issue, but upon probable cause, support by oath or affirmation, and particularly describing the place to be searched and the person or things to be seized.  U.S. Const. amend. IV.  Governing case law describes this requirement as one of "specificity" and cases have distinguished its "two aspects":  particularity and breadth.  *United States v. SDI Future Health Inc.*, 568 F.3d 684, 702 (9th Cir. 2009).  Particularity is the requirement that the warrant must clearly state what is sought; breadth deals with the requirement that limits the scope of the warrant to the probable cause that served as the basis for the warrant.  *Id.*  Here, Defendants' three motions to suppress challenge the probable cause findings made in four separate warrant applications authorized by four different federal magistrate judges.  While Defendants challenge the contents of the affidavits, as well as the particularity and breadth related to the items seized inside of Lacey's and Larkin's homes, they do not challenge the fact that each warrant application was properly sworn, nor do they contest that each warrant described with particularity, the specific location of each place to be searched.

**b.  Four Federal Magistrate Judges Correctly Found Probable Cause in Four Separate Warrant Applications.**

Defendants present four arguments as to how all four magistrate judges erred when they found probable cause for the four separate warrants at issue.  First, Lacey and Larkin argue the judges lacked a substantial basis to find probable cause because the affidavits for 18-9126 MB and 18-8365 MB merely summarized and incorporated the indictment and contain no facts to support the crimes committed by them.  (Doc. 775 at 7; Doc. 786 at 5-6.)  Second, the warrants for 16-305 MB and 17-275 AC were issued before the grand jury returned an indictment against Backpage and Defendants argue the warrant applications lacked probable cause because the affiant summarized findings from "largely publicized" prosecutions, the PSI, CAL DOJ's undercover investigation of Backpage, and the pre-trial allegations of civil litigants in cases involving Backpage.  Third, Defendants argue the

warrants are without probable cause because the affidavits do not contain facts showing a heightened scienter or that Defendants knowingly or intentionally facilitated or promoted a business enterprise for prostitution.  Finally, Defendants argue the warrants lack particularity and are overbroad.  Many of these claims are foreclosed by this Court's October 24, 2019 Order denying Defendants' Motion to Dismiss Indictment and should be similarly denied.  (Doc. 793.)  But should the Court revisit the issues again, each of the claims are without merit.

### i. Reviewing the Indictment alongside an Affidavit in an Application for a Search Warrant is Not Improper.

Defendants' arguments that 18-9126 MB and 18-8365 MB are deficient because the warrant affidavit does not, independent of the attached indictment, establish probable cause is foreclosed by *United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984).  The Ninth Circuit held that a judge may consider the information contained in an indictment in making a probable cause determination.  *Id.* at 504 (citing *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981)).  In *Seybold*, a special agent of the Drug Enforcement Administration (DEA) applied to a federal magistrate judge for a warrant authorizing the search of Seybold's residence two days after a grand jury indicted Seybold for drug trafficking offenses.  *Id.* at 502.  The judge authorized the application, which included a seven-page affidavit and incorporated a copy of the indictment, and issued the search warrant.  *Id.* at 503.  The Ninth Circuit found that a judge would understand that a grand jury's determination—the fact that there was sufficient evidence to indict an individual may not necessarily mean that evidence of that person's guilt would likely be found in his residence—and determined that the  judge could apply his independent judgment to determine whether probable cause exists.  *Id.* at 505.

The government proceeded similarly in this case.  In addition to sworn affidavits, in 18-9126 MB and 18-8365 MB, the agent presented a copy of the indictment and the superseding indictment in the application to the magistrate judge.  In addition, the affidavits presented several facts that would allow the judge to determine that there was a

fair probability of finding evidence of conspiracy, money laundering, and Travel Act violations in Lacey's and Larkin's residences and digital devices.

Specifically, in her eleven-page affidavit for 18-9126 MB, SA Fryberger describes how Lacey and Larkin committed money laundering offenses, Travel Act violations, and conspired to commit those crimes.  SA Fryberger stated Lacey shocked employees at Arizona Bank & Trust when he visited their bank on November 7, 2016, informed bank employees that he had just been released from jail and sought information from the bank employees on how he could move a percentage of his assets offshore to protect them from government seizure.   (Doc. 786-2 at ¶¶ IV(1)(a)(i-iii).)   Additionally, SA Fryberger included in the affidavit, information favorable to Lacey for the judge's consideration, *e.g.*, that Lacey told the bank employee that his desire to move money offshore was not to avoid tax liability, that the money in his account was from a legitimate cash flow and that he was living off the proceeds of the sale of Village Voice Media and Backpage.  Lacey argues that because the affidavit did not set forth facts demonstrating bad intent, *i.e.*, that Lacey transferred money overseas to further unlawful activity, the judge erred in finding probable cause. (Doc. 775 at 9.)  Lacey's argument is without merit.  Context matters.  While it may be perfectly legal to have international bank accounts or to possess a scale and notebooks in your home, the items becomes evidence of crimes if the money, scale, or notebooks are tied to or used to further drug trafficking, money laundering, or other criminal activity.

SA Fryberger stated that on December 29, 2016, $16.5 million was sent in five separate wire transfers of $3.3 million from Lacey's account at Arizona Bank & Trust to the account of a lawyer with the law firm Becker & House, PLLC.  (Doc. 786-2 at ¶ IV(1)(a)(iv).)  The next day, the attorney submitted a request to transfer the entire $16.5 million to Budapest, Hungary to be held by an entity called Primus Trust Co.

The affidavit also discusses how Larkin and other Backpage principals utilized cryptocurrencies, such as bitcoin, to future their money laundering efforts.  (Doc. 786-2 at ¶ IV(1)(a)(vii)(1-12).)  SA Fryberger states that certain victim ads were purchased with bitcoin accounts and have been traced through foreign and domestic bank accounts before

ultimately reaching the accounts of Larkin and other Backpage principals.  In January 2016, Larkin received a wire transfer of approximately $1.3 million.  Between March 2016 and January 2017, Larkin spent almost $1,100,000 to maintain a property he owns in France.  In sum, the affidavit contains ample facts from which the magistrate judge could conclude that under the totality of the circumstances there was a fair probability that evidence of money laundering, money laundering conspiracy, and Travel Act violations would be present in Lacey's and Larkin's homes.

In April 2018, Magistrate Judge Eileen S. Willett authorized 18-9126 MB.  Six months later, in August 2018, Magistrate Judge John Z. Boyle authorized 18-8365 MB.  By then, a federal grand jury had returned the superseding indictment, and two Backpage principals, Carl Ferrer, Backpage's CEO and 100% owner, and Daniel Hyer, Backpage's Sales and Marketing Director, had pleaded guilty to conspiracy.  In addition to the superseding indictment, SA Robinson's application contained a 12-page affidavit in support of 18-8365 MB.  The affidavit included the factual basis from Ferrer's and Hyer's guilty pleas (¶¶ (2) & (3)) where Ferrer admitted to conspiring to knowingly facilitating the state-law prostitution offenses being committed by Backpage's customers along with conspiring with Lacey, Larkin, Spears, Brunst, and Hyer to engage in various money laundering offenses and where Hyer admitted to growing backpage.com by developing a process called "preboarding" or "aggregation" to increase the number of escort (prostitution) ads being placed on the website.  SA Robinson also reviewed Lacey's and Larkin's tax returns from 2012-2016, which determined that Backpage profits distributed to them, along with their salary that was funded by Backpage proceeds, made up the vast majority of their incomes, and that their incomes between 2013-2015 were about six times their 2012 incomes.  (Doc. 786-5 at ¶¶V(1), VI(1).)  Additionally, the application also includes the fact that there is a deed of trust in the amount of $247,734.30 recorded in Maricopa County in January 2018 where Lacey is the lender and that Larkin established several trusts which received intermittent wires consisting of Backpage funds throughout 2016.  (Doc. 786-5 at ¶¶V(6), VI(5).)  Thus, the affidavit contains sufficient facts from

which the magistrate judge could conclude that under the totality of the circumstances there was a fair probability that evidence of money laundering, conspiracy, and Travel Act would be present in Lacey and Larkin's digital devices.

### ii. The Warrant Application Does Not Need to Establish a Heightened Scienter or the Facilitation and Promotion of a Business Enterprise Before a Finding of Probable Cause Can be Found.

Defendants argue the warrant applications lack probable cause because the affidavit failed to include a heightened scienter or facts showing how defendants knowingly facilitated or participated in a business enterprise involving prostitution. (Doc. 775 at 7, 9; 786 at 7.) Defendants have raised these arguments in other pleadings and the Court has denied their motions. Specifically, this Court has found "Defendants' arguments that the First Amendment demands a scienter requirement beyond specific intent to promote prostitution are unavailing." (Doc. 793 at 23.) The law of the case doctrine generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same case. *Musacchio v. United States*, 136 S.Ct. 709, 716 (2016). The doctrine "expresses the practice of courts generally to refuse to reopen what has been decided," but it does not "limit [courts'] power." *Id.* Moreover, the heightened standard and additional facts the defendants argue are required before a probable cause can be found run contrary to *Gates* where probable cause was emphasized as meaning "fair probability," without any consideration of any standard of proof. *Gates*, 462 U.S. at 235.

### iii. The Warrants Detailed the Items to be Seized and the Items Seized Are Evidence of the Crimes.

Defendants argue the warrants do not clearly state what is to be searched and seized and that the items seized exceeded the scope of the probable cause. (Doc. 775 at 9-11, Doc. 786 at 8-9.) While a warrant must make clear to the executing officer exactly what is authorized to search for and seize, the level of detail necessary in a warrant is related to the particular circumstances and the nature of the evidence sought. *SDI Future Health Inc.*,

568 F.3d at 702; *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006).  The search and seizure of large quantities of material is justified if the material is within the scope of the probable cause underlying the warrant.  *Id.* at 684, *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986).

Here, Defendants argue the following three categories are unclear in 18-9126 MB: (1) *evidence of wealth*, assets, and real estate obtained from the illicit activity to include; notes, correspondence, and news articles related to prostitution, sex trafficking and/or Backpage and related entities; (2) documentation of any funds received from Backpage or *other related companies* and disposition of those funds; and (3) *any property or proceed resulting from money laundering or international money laundering scheme* to include computers, currencies, coins, precious metals, artwork, jewelry, home furnishings and vehicles from the year of 2010 to present.

"Evidence of wealth, assets, and real estate" relates to property acquired or purchased with the proceeds of criminal activity, namely, Backpage proceeds.  The documentation of any funds received from Backpage or *other related companies* and disposition of those funds relates to laundered money passing between Backpage and the Defendants or through its related entities prior to landing in Defendants' bank accounts.

Defendants are charged in the Indictment, and later Superseding Indictment with a money laundering conspiracy that began in 2004 and continued until April 2018.   SA Fryberger stated in her affidavit that since at least 2008, Backpage proceeds was the main source of income for Lacey, Larkin, and Spear.  Despite that, the warrant narrows the time frame of the search to January 1, 2010 to present.  When circumstances are "permeated-with-fraud," where it may not be possible to provide a more particular description, the use of a broader warrant can be approved.  *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750-751 (9th Cir. 1989), *United States v. Offices Known as 50 State Distributing Company*, 708 F.2d 1371 (9th Cir. 1983).  *50 State* involved the search of a business and the seizure of virtually all of its business records, books, equipment and merchandise. *Id.* at 1372.  Here, the warrants involved the search and seizure of property

- 11 -

owned by Lacey and Larkin who have been engaged in a money laundering conspiracy for over a decade.  The length and duration of the conspiracy necessarily increases the breadth of probable cause but like in *50 State*, the search team was able to approach the warrant without ambiguity, and seize assets acquired by defendants from proceeds of criminal activity.

Regarding documentation of funds received from "other related companies," Backpage was part of a network of companies once under Village Voice Media Holdings.  SA Fryberger's affidavit listed one of them—Website Technologies—as one of the "other related companies" of Backpage.  However, because it does not appear from the returns that agents seized any loose documentation related to any "other related companies," this issue is moot.  (Doc. 775-3, 786-3.)

Finally, Lacey and Larkin wonder how agents would distinguish "*any property or proceeds resulting from money laundering or international money laundering scheme* to include computers, currencies, coins, precious metals, artwork, jewelry, home furnishings and vehicles from the year of 2010 to present" from property acquired from legitimate assets, such as the sale of Village Voice Media.  First, the warrant only authorizes property acquired after 2010, when Lacey's and Larkin's income was almost entirely based on their Backpage salaries and Backpage related proceeds.[2]  Second, SA Fryberger's affidavit described with specificity Lacey's and Larkin's three residences to be searched, including the fact that they were acquired after 2010.  (Doc. 786-2 at 9.)  For each of Lacey's and Larkin's vehicles to be seized, SA Fryberger included the make, model, VIN and license plate number.   (Doc. 786-2 at 9.)  Third, because agents could not know which specific artwork or piece of jewelry they might find prior to agents entering the home, the intent to search for, and seize, agents seized receipts as they could, to ensure the assets were purchased or acquired after 2010.   Under circumstances where the person or place to be searched is "permeated-with-fraud" as were Lacey's and Larkin's properties and

[2] The government has returned jewelry and electronic devices bellowing to Lacey's wife, Jill Anderson, that were seized during the execution of 18-9126 MB.

- 12 -

possessions, a broader scope warrant is permissible and has been upheld by the Ninth Circuit.  *See Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750-751 (9th Cir. 1989); *United States v. Offices Known as 50 State Distributing Company*, 708 F.2d 1371 (9th Cir. 1983).

> **iv.  The two email related warrants, 16-305 MB and 17-275 AC Similarly Detail the Items to be Seized and the Items to be Seized Are Evidence of Crimes.**

Defendants' arguments that 16-305 MB and 17-275 MB are deficient because the warrant affidavit summarized "largely publicized" prosecutions, including the PSI, CAL DOJ's undercover investigation of Backpage, and the pre-trial allegations of civil litigants in cases involving Backpages, are utterly without merit.  The affiants for both warrants, SA Fryberger, relied on facts learned throughout the scope of the investigation, including other law enforcement investigations related to Backpage, the PSI and civil cases where Backpage was a litigant.  (Doc. 778-2 at 3.)  Defendants fail to cite to any case law stating how this is impermissible.

> **c.  Defendants Have Failed to Make the Substantial Preliminary Showing Necessary to Obtain a *Franks* Hearing.**

To challenge the validity of a warrant affidavit, a defendant must make a substantial preliminary showing that (1) the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant, and (2) the false or misleading statements or omissions were material, *i.e.*, necessary to finding probable cause. *United States v. Norris*, --F.3d--, 2019WL5688802 (9th Cir. November 4, 2019), (citing *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017)).  If a defendant satisfies both prongs, he or she is entitled to an evidentiary hearing.  *Franks*, 438 U.S. at 172.  But to mandate an evidentiary hearing, the challenger's attack [on the affidavit] must be more than conclusory and must be supported by more than a mere desire to cross-examine.  *Id.* at 171.  On the other hand, a defendant's substantial preliminary showing of recklessness or deliberate falsity is of no consequence and requires no hearing "when material that is the subject of the alleged falsity or reckless disregard is set to one side [and] there remains

sufficient content in the warrant affidavit to support a finding of probable cause." *Id.* Additionally, evidence obtained from a warrant should not be suppressed so long as the officer was objectively reasonable and acted with good-faith reliance on the judge's finding of probable cause. *United States v. Leon*, 468 U.S. 897, 899 (1984).

Here, Lacey and Larkin complain the affidavits in 16-305 MB, 17-275 AC, 18-9126 MB and 18-8365 MB contain misleading statements or omissions because they: (1) failed to discuss cases where Backpage has defeated civil claims or successfully challenged state legislative or law enforcement actions; (2) failed to inform the magistrate judges that violations of the Travel Act require a heightened proof of scienter; and (3) referenced the Indictment, which is riddled with material misstatements.  (Doc. 775 at 16, Doc. 786 at 14.)

To meet *Franks'* first prong, Defendants must make specific allegations of deliberate falsehoods or demonstrate the affiant's reckless disregard for the truth, accompanied by an offer of proof—negligence is not enough.  *Franks*, 438 U.S. at 171. Alternatively, Defendants must show the affiant(s) deliberately or recklessly omitted material information.  *United States v. Tham*, 960 F.2d 1391, 1395 (9th Cir. 1991). Defendants have failed to meet this prong.

### i.    No Need to Cite to Inapposite Case Law

Defendants argue a *Franks* hearing is appropriate because the government failed to include in its affidavit that the First Amendment protects online classified advertising sites like Backpage.  (Doc. 775 at 14, 778 at 13, 786 at 12.)  This is an argument that has been soundly rejected by this Court.  (Doc. 793 at 13.)  In its Order denying Defendants' motion to dismiss, the Court held: "this case, however, does not concern civil liability, and the CDA has 'no effect' on any other Federal criminal statute." (Doc. 793 at 13.)  Defendants' motions list several cases where they were successful in civil or state court—none of these involved federal criminal charges.  As Defendants are well aware, Section 230 of the Communication Decency Act (CDA) simply does not apply to federal criminal prosecutions.  47 U.S.C. § 230(e)(1); (*see also* Doc. 809.)

### ii.   A *Franks* Hearing is Not Necessary Because Heightened Scienter is Not Required

Next, Defendants again persist in their mistaken argument that facilitating crimes of prostitution requires a heightened scienter.  (Doc. 775 at 16, 786 at 14.)  As this Court has previously found "Defendants' arguments that the First Amendment demands a scienter requirement beyond specific intent to promote prostitution are unavailing." (Doc. 793 at 18, 23.)

### iii.   Indictment Riddled with Material Misstatements

Lastly, Defendants argue the Indictment is "riddled with material misstatements" as set forth in their concurrently filed Motion to Dismiss Indictment for Grand Jury Abuse, or, in the Alternative, for Disclosure of Grand Jury Transcripts.  (Doc. 775 at 16, 786 at 14.)  The appropriate way to challenge an Indictment is through trial.

Defendants fail to cite any *Franks* violations based on (1) an affiant's failure to present a legal analysis of reported case law or (2) an affiant's failure to discuss a particular *mens rea* not applicable to the offense.  They have failed to submit an affidavit or present any offer of proof in support of their allegations.  *Franks*, 438 U.S. at 171.  But even if Defendants' positions were included or if the Indictment omitted, the challenged warrant applications have affidavits containing substantial independent evidence supporting probable cause.  Defendants have failed to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit and that the allegedly false statement was necessary for a finding of probable cause.  Defendants' assertions here are merely conclusory and not supported by any offer of proof.  This Court should deny Defendants' request for a *Franks* hearing.

## III.   CONCLUSION

For the foregoing reasons, Defendants' Motions to Suppress (Doc. 775, 778, and 786), request for a *Franks* hearing, and request to file future challenges to the Datto warrant (Doc. 778) should be denied.

Respectfully submitted this 27th day of November, 2019.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Margaret Perlmeter*

KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
ANDREW C. STONE
Assistant U.S. Attorneys

JOHN J. KUCERA
Special Assistant U.S. Attorney

BRIAN BENCZKOWSKI
Assistant Attorney General
U.S. Department of Justice
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

## CERTIFICATE OF SERVICE

I hereby certify that on November 27, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Angela Schuetta*
Angela Schuetta
U.S. Attorney's Office