1   **WO**

2

3

4

5

6               **IN THE UNITED STATES DISTRICT COURT**

7                      **FOR THE DISTRICT OF ARIZONA**

8

9   United States of America,                No. CR-18-00422-PHX-SMB

10                   Plaintiff,               **ORDER**

11  v.

12  Michael Lacey, et al.,

13                   Defendants.

14

15          Pending before the Court is Defendants Motion to Dismiss Indictment Based on

16  Section 230 of the Communications Decency Act or, Alternatively, as Void for Vagueness.

17  (Doc. 783, "Motion".) The Government responded, (Doc. 809, "Resp."), and Defendants

18  replied (Doc. 830, "Reply"). The Court has considered the pleadings and enters the

19  following Order.

    **I.     BACKGROUND**

20          Defendants are former officers, executives, and employees of Backpage.com, a

21  classified advertisement website specializing in "adult" services largely used as forums for

22  soliciting prostitution.[1] (*See generally* Doc. 230, "SI".) On July 25, 2018, a federal grand

23  jury returned a 100-count Superseding Indictment against Defendants. (*Id.*) The

24  Superseding Indictment alleges Defendants engaged in numerous criminal acts—

25  conspiracy, violations of the Travel Act, and money laundering—while operating the

26

27  _____

28  [1] As this Court previously established, the Superseding Indictment's factual allegations are
    taken as true at this stage. (*See* Doc. 793, "Order" (citing *United States v. Boren*, 278 F.3d
    911, 914 (9th Cir. 2002))).

website Backpage.com ("Backpage").[2] Count 1 alleges Defendants "knowingly and intentionally" entered into a conspiracy, 18 U.S.C. § 371, to commit violations of the Travel Act, 18 U.S.C § 1952 (a)(3)(A), against all defendants. (SI ¶¶ 195-99.) Counts 2-51 allege Defendants:

> "used the mail and any facility in interstate and foreign commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States, including but not limited to [A.R.S.] Section 13-3214, and thereafter performed and attempted to perform, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity."

(SI ¶ 201.) The fifty advertisements supporting Counts 2-51 market the sale of women or minors using coded-terms common to prostitution. (*Id.*) The ads specifically depict a range of prostitution-related business activities and transactions. Some of the ads depict specific victims, (Counts 2, 4-5, 12-17, 19-24), whose services were offered in multiple ads. (SI ¶¶ 160-76.) The Superseding Indictment alleges Defendants employed three distinct strategies to attract ads they knew were for prostitution. (SI ¶ 34.) Particularly relevant here, Backpage also *created* prostitution ads by copying content from other prostitution websites and then soliciting pimps and prostitutes by offering free trials. (SI ¶¶ 35-44.) Defendants created a business relationship with TheExoticReview.com ("TER"), a "prostitution website" where clients, known as "johns", could rate escorts. (SI ¶¶ 45-67.) Further, the Superseding Indictment outlines detailed moderation practices Backpage used to evade detection by law enforcement and create a "veneer of deniability." (SI ¶ 13.) Among other techniques, Defendants stripped known prostitution terms from advertisements but allowed ads to be posted with the underlying message unchanged. Defendants, at various points, assisted known pimps and prostitutes in changing ads to avoid deletion by Backpage moderators. (SI ¶¶ 45-67.)

Defendants previously argued this alleged conduct was consistent with traditional editorial functions protected by the First Amendment. (*See generally* Doc. 583.) Applying

---

[2] This Courts prior order outlines the charges in greater detail. (*See generally* Doc. 793.)

Section 230 of the Communications Decency Act ("CDA" or "§ 230"), 47 U.S.C. § 230, to the Superseding Indictment, Defendants now make a similar argument. That is, because § 230 immunizes publishers like Backpage from prosecution under all state criminal law, the Superseding Indictment fails to state an offense and should be dismissed pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v). (Mot. at 4-11.) Alternatively, Defendants claim the Travel Act, as applied by the Superseding Indictment, fails to give adequate notice of criminality, meriting dismissal of all counts as void for vagueness. (*Id.* at 11-13.)

## II.     LEGAL STANDARD

"An indictment is sufficient if it, first, contains the essential elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Since federal crimes are "solely creatures of statute," *Dowling v. United States*, 473 U.S. 207, 213, 105 S. Ct. 3127, 87 L.Ed.2d 152 (1985) (internal quotation marks omitted), a federal indictment can be challenged on the ground that it fails to allege a crime within the terms of the applicable statute. *United States v. Pirro*, 212 F.3d 86, 91-92 (2d Cir. 2000). Accordingly, Federal Rule of Criminal Procedure 12 allows a defendant to file a pretrial motion to dismiss for failure to state a defense if the motion "can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3)(B)(v). Such a motion "is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017) (quoting *United States v. Nukida*, 8 F.3d 665, 669 (9th Cir. 1993). An indictment must "set forth all the elements necessary to constitute the offense intended to be punished." *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). Therefore, when a count charged by an indictment fails to recite an essential element of the offense, that count is facially defective and must be dismissed. *United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001). In determining whether an indictment charges a cognizable offense, courts are bound by the four corners of the indictment, must accept the truth of the allegations in the

indictment, and cannot consider evidence that does not appear on the face of the indictment. *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

Defendants Motion implicates two federal statutes—the CDA and Travel Act. Statutory construction "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *United States v. Albertini*, 472 U.S. 675, 680, 105 S. Ct. 2897, 86 L.Ed.2d 536 (1985) (quoting *Park 'N Fly, Inc., v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). "Due respect for the prerogatives of Congress in defining federal crimes prompts restraint in this area, where we typically find a narrow interpretation appropriate." *Dowling*, 473 U.S. at 213, 105 S.Ct. 3127 (internal quotation marks omitted).

## III.    DISCUSSION

Defendants claim immunity from prosecution in the manner charged by the Superseding Indictment. That is, § 230 of the CDA grants publishers of third-party content, like Defendants here, immunity from violations of state criminal laws. (Mot. at 4) Specifically, § 230 grants immunity to interactive computer services for liability based on publishing third-party content or for failing to remove any such content, regardless of whether the website knew or should have known that third parties were posting illegal content. (*Id.*) Defendants argument is straightforward: Section 230 preempts all state criminal laws; the instant Travel Act charge is based on violation of underlying state criminal laws prohibiting prostitution; Thus, § 230 precludes prosecution in the manner charged. (*Id.*) Even if not precluded by § 230, Defendants contend the Travel Act charges are impermissibly vague and merit dismissal on that basis alone. (Mot. at 11.) Both arguments fail.

### a.   Does the CDA preclude Travel Act charges?

#### i.   Section 230 of the Communications Decency Act

Congress enacted the CDA as Title V of the Telecommunications Act of 1996, Pub. L. No. 104—104, primarily to protect minors from exposure to indecent and obscene

material on the internet. *See Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003) (reviewing legislative history of the CDA); *see also* S. Rep. No. 104-23, at 187-193 (1996) (noting that Congress "has been troubled by an increasing published reports of inappropriate uses of telecommunications technologies to transmit pornography, engage children in inappropriate adult contact, terrorize computer network uses through 'electronic stalking' and seize personal information.") To avoid unduly burdening the continued development of the internet, Congress enacted § 230." 47 U.S.C. § 230. "Whether wisely or not," Congress "made the legislative judgment to effectively immunize providers of computer services from civil liability in tort with respect to materials disseminated by them but created by others." *Blumenthal v. Drudge*, 992 F. Supp. 44, 49 (D.D.C. 1998).

In relevant part, § 230(c)(1) specifies that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Thus, § 230 gives interactive service providers[3] "a reasonable way to . . . help them self-regulate themselves without the penalty of law." *See* 141 Cong. Rec. H8460-01, B8470 (1995) (statement of Rep. Barton). Accordingly, § 230(e)(2) provides that "no provider of an interactive computer service shall be liable on account of – (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable." 47 U.S.C. § 230 (c). But this grant of immunity is not absolute. Section 230(e), entitled, "Effect on other laws," provides:

> (1) No effect on criminal law. Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this Act, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of title 18, United States Code, *or any other federal criminal statute.*

---

[3] Defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet . . . ." 47 U.S.C. § 230(f)(2).

(2) No effect on intellectual property law. Nothing in this section shall be construed to limit or expand any law pertaining to intellectual property.

(3) State law. Nothing in this section shall be construed to prevent any State from enforcing any State law that is consistent with this section. No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section.

(4) No effect on communications privacy law. Nothing in this section shall be construed to limit the application of the Electronic Communications Privacy Act of 1986 or any of the amendments made by such Act, or any similar State law.

47 U.S.C. § 230(e)(1)-(4) (emphasis added). The above state law and federal criminal law carve-outs bear directly on Defendants arguments. 47 U.S.C. § 230(e)(1),(3).

### ii.  The Travel Act, 18 U.S.C § 1952

The Superseding Indictment alleges violations of the Travel Act, Title 18, United States Code, Section 1952. Section 1952(a)(3) criminalizes the "use of mail or any facility in interstate or foreign commerce, with intent to . . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity." The definition of "unlawful activity" includes a range of activities that violate a state or federal law. Specifically, § 1952 (b) defines "unlawful activity" as follows:

> (b) As used in this section "unlawful activity means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or controlled substances . . . or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States, or (3) any act which is indictable under subchapter II of chapter 53 of title 31, United States Code, or under section 1956 or 1957 of this title."

18 U.S.C. § 1952(b). A violation of § 1952 is thus premised upon another distinct violation of state or federal law. *United States v. Polizzi*, 500 F.2d 856, 870 (9th Cir. 1974). "Although state law becomes the focus of this inquiry, 'the gravamen of a charge under § 1952 is a violation of federal law.'" *Id.* (quoting *United States v. Karigiannis*, 430 F.2d 148, 150 (7th Cir. 1970), *cert. denied*, 400 U.S. 904, 91 S. Ct. 143, 27 L.Ed.2d 141 (1970)).

- 6 -

"Reference to state law is only necessary to identify the type of unlawful activity in which defendants intended to engage." *Id.* (internal quotation marks and citation omitted).

### iii.  The Superseding Indictment's Viability

This is not the first time the Court has considered the application of the CDA to the Superseding Indictment. (Doc. 793 at 13.) In denying Defendants prior motion to dismiss, (Doc. 561), this Court found Defendants conduct fell outside "traditional, editorial functions" protected by the First Amendment and CDA. (Doc. 793 at 13 (finding the Superseding Indictment alleged conduct "qualitatively different" from the protected activities in the cases Defendants cited both then and reargue now)). The order distinguished cases cited by Defendants precisely because they were premised on the CDA's grant of immunity from *civil liability*.[4] (*Id.*) "[T]he CDA," on the other hand, "has no effect on any other Federal criminal statute." (*Id.* (citing 47 U.S.C. § 230(e)(1))). Defendants would be well served to consult and, at a minimum, address this Court's prior analysis before petitioning the Court to dismiss on similar grounds. Regardless, after consideration of Defendants Motion and Reply, this Court's earlier analysis holds.

Defendants arguments fail for three reasons. First, Defendants fail to demonstrate the CDA precludes charges under a federal criminal statute like the Travel Act. This, alone, merits denial of Defendants Motion. Second, even assuming the § 230 applies to the instant Travel Act charges, they do not establish § 230's immunity covers the conduct the Superseding Indictment alleges. Third, Defendants misread the Travel Act to require an underlying violation of state criminal law by Defendants themselves.

First, Defendants narrow reading of the CDA to preclude prosecution under a federal criminal statute is unconvincing, particularly given the statutes plain language. At the outset, § 230(e)(1) immediately declares the CDA has "[n]o effect on criminal law." 47 U.S.C. § 230(e)(1). Directly following this disclaimer, Congress clarifies § 230 may not be

---

[4] Citing nearly identical case-law, Defendants arguments here, largely repeat and expand on those previously made and considered by this Court in a similar, albeit not identical context. *Compare* Doc. 561 at 21-24 (arguing Defendants activities fell under First Amendment protection) *with* Doc. 783 at 5-7 (repeating those arguments to seek immunity under § 230.).

interpreted to impair enforcement of some specific criminal statutes likely implicated by the CDA or "any other federal criminal statute." *Id.* Defendants argue that by listing some specific federal criminal statutes § 230 expressly leaves unaffected, the statute's carve-outs only touch substantive federal statutes. They Travel Act, they contend, is not such a statute. That is, because the Travel Act, they believe, depends on violation of underlying substantive state criminal statutes, it falls outside § 230(e)'s scope. They call this a "common sense notion." (Reply at 4.) The Court finds otherwise. Defendants "common-sense" distinction directly contravenes § 230's plain language. Given the straightforward nature of § 230(e)'s disclaimer—"nothing in this section shall be construed to impair enforcement of . . . any other Federal criminal statute"—Defendants battle is uphill.[5] Why the Court should not, "[a]s in all such cases, . . . begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose,'" Defendants do not explain. *Hardt v. Reliance Stand. Life. Ins. Co.*, 560 U.S. 242, 251 (2010) (quoting *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175 (2009)). Nor do Defendants explain why, if Congress desired to limit § 230 so, they did not explicitly do so. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452, 122 S. Ct. 941, 151 L.Ed.2d 908 (2002) ("It is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion.").

Instead, § 230's plain language supports the Government's position. The modifier 'any' in § 230(e)(1), employed without any limiting language, "amounts to 'expansive language [that] offers no indication whatever that Congress intended [a] limiting construction." *See Atlantic Recording Co. v. Project Playlist, Inc.*, 603 F.Supp.2d 690, 704

---

[5] Defendants reading ignores a ready explanation for § 230's explicit carveouts for federal criminal statutes concerning obscene and harassing phone calls, 47 U.S.C. § 223, providing access of harmful materials to minors, 47 U.S.C. § 231, particular acts relating to obscenity, 18 U.S.C. §§ 1460-1465, and sexual exploitation of children, 18 U.S.C. §§ 1460-1470. The specific federal statutes emphasized by the § 230(e)(1) carve-outs directly correspond to a central concern of the CDA—"to control the exposure of minors to indecent material." *See Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003).

(S.D.N.Y. 2009) (citing *Harrison v. PPG Indus.*, 446 U.S. 578, 589, 100 S. Ct. 1889, 64 L.Ed.2d. 525 (1980). This conclusion is bolstered by the fact that the 'surrounding statutory language' supports the conclusion that Congress intended the word 'any' to mean all federal criminal laws. *See ACLU v. Dep't of Def.*, 543 F.3d 59, 69 (2d. Cir. 2008) (holding that the word "any" in statute "deserves an expansive application where the surrounding statutory language and other relevant legislative context support it."). Defendants reading eschews both "common-sense" and established principles of statutory interpretation. As this Court previously held, the CDA does not preclude the charges under a federal criminal statute like the Travel Act here. (Doc. 793 at 13.)

Second, even if the CDA applied to generally preclude charges under the Travel Act, Defendants do not establish the CDA applies to their conduct as alleged by the Superseding Indictment. Fundamentally, Defendants contend this prosecution seeks to hold them liable for the "exercise of a publisher's traditional editorial functions"—whether to block or allow content—"perforce immune" under § 230.[6] (Mot. at 5; *Fair Housing Council of San Fernando Valley v. Roomates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008). But, as the Government's response correctly identifies, this Court previously considered this argument, holding "the SI does not attack protected editorial functions." (Doc. 793 at 12). As this Court previously explained, "[t]he SI does not allege Defendants are criminally liable because they unknowingly or unintentionally operated a website used by third parties to post prostitution ads. Rather, it alleges Defendants purposely sought out opportunities to increase prostitution advertising on Backpage . . . , intentionally identified prostitutes, created free Backpage ads for them, and used those ads to try and secure future

---

[6] Defendants overstate § 230's grant of immunity. Recognizing the scope of § 230's immunity is far from absolute, courts regularly find conduct, like that alleged by the Superseding Indictment, beyond the reach of § 230(c)(1), particularly at the pleading stage. *See e.g., Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 670 (7th Cir. 2008) ("To appreciate the limited role of § 230(a)(1), remember that 'internet content providers' may be liable for contributory infringement if their system is designed to help people steal music or other material in copyright."); *Anthony v. Yahoo, Inc.*, 421 F.Supp.2d 1257, 1262-63 (N.D. Cal. 2006) (section 230(a)(1) did not apply where defendant allegedly created fake user profiles to induce users to renew subscriptions to defendant's online dating service); *Hy Cite Corp. v. badbusinessbureau.com*, 418 F.Supp.2d 1142, 1148-49 (D. Ariz. 2005) (immunity not granted at the pleading stage where defendant allegedly created defamatory content).

business." (Doc. 793 at 15.) The Superseding Indictment alleges conduct far beyond the simple maintenance of neutral policies prohibiting certain content. *Cf. Dart v. Craigslist, Inc.*, 665 F.2d 961, 968-69 (N.D. Ill. 2009). Again, at this stage, these allegations are accepted as true. *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982), *cert denied*, 460 U.S. 1086, 103 S. Ct. 1778, 76 L.Ed.2d 349 (1983). Challenging the adequacy of the evidence supporting the allegations is improper at the pleading stage. "A motion to dismiss . . . is not a device for summary trial of the evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996); *see also United States v. Boren*, 278 F.3d 911, 914 (2002) ("The indictment either states the offense or it doesn't. There is no reason to conduct an evidentiary hearing"); *United States v. Nukida*, 8 F.3d 665, 670 (9th Cir. 1993) ("[t]he proper procedure for raising [a] challenge to the sufficiency of the government's evidence [is] . . . not a pretrial motion to dismiss.") (internal quotation marks omitted).

Third, and lastly, the Travel Act does not require the government allege Defendants committed the underlying violation of state law. Defendants argue their conviction for the underlying state prostitution offenses is a legal impossibility. That is, because § 230(e)(3) immunizes Defendants from prosecution under state law for publishing advertisements, regardless of whether those ads were used to commit actual acts of prostitution or illegal sex trafficking.[7] (Mot. at 8.) Not only does § 230 not immunize Defendants from the instant prosecution, but Defendants misconstrue the Travel Act's requirements.

In the Ninth Circuit, "[a]n indictment under the Travel act requires allegations of each of the three elements of the crime: (1) interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981). The Superseding Indictment clears each hurdle. It alleges Defendants, with

---

[7] Defendants support their argument with an email from the former President of the National Center for Missing & Exploited Children ("NCMEC"). The Court does not reach the merits of this extrinsic evidence. *United States v. Kelly*, 874 F.3d 1037, 1047 (2017) ("In determining whether an indictment charges a cognizable offense, we are bound by the four corners of the indictment, must accept the truth of the allegations in the indictment, and cannot consider evidence that does not appear on the face of the indictment.") (citations omitted).

- 10 -

intent to promote or facilitate state law prostitution offenses, performed overt acts in furtherance of that unlawful activity. (*See generally* SI ¶¶ 1-201.) Given Defendants are charged with facilitating or promoting, rather than directly committing, prostitution offenses in violation of state law, it is unsurprising they could not be convicted for the "underlying state law offense on which the Travel Act charge is based." (Mot. at 8.) Although the Ninth Circuit has yet to directly address this topic, the case law of other circuits supports the denying the Motion on this ground as well. *United States v. Welch*, 237 F.3d 1081, 1092 (10th Cir. 2003) ("The Travel Act proscribes not the unlawful activity per se, but the use of interstate facilities with the requisite intent to promote such unlawful activity. An actual violation of [the Utah Commercial Bribery Statute] is not an element of the alleged Travel Act violations in this case and need not have occurred to support the Government's § 1952 prosecution."); *United States v. Montague*, 29 F.3d 317, 322 (7th Cir. 1994) ("[T]he federal crime to be proved in Section 1952 is the use of interstate facilities in furtherance of the unlawful activity . . . Section 1952 does not require that the state crime ever be completed."); *United States v. Palfrey*, 499 F. Supp. 2d 34, 43 (D.D.C. 2007) ("The statute requires only that a defendant 'inten[ded] to . . . promote . . any unlawful activity,' not that the defendant have completed such unlawful activity.'") (internal citation omitted).

Defendants cases are inapt. *See e.g., United States v. Fernandez*, 722 F.3d 1 (1st Cir. 2013); *United States v. Tonroy*, 837 F.2d 1281 (5th Cir. 1988). Unlike the state prostitution offenses here, the underlying violations in *Fernandez* were lawful when they occurred; the Travel Act charges in *Tonroy* were based on direct violations of a state bribery statute, not the promotion or facilitation of unlawful activity Defendants here face. *See United States v. Bertman*, 686 F.2d 772, 774 (9th Cir. 1982) ("When the unlawful activity charged in the indictment is the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense.") Defendants remaining cases all involve allegations of direct violations of state criminal statutes, not federal criminal laws like the Travel Act here. *See Backpage.com v. McKenna*, 881 F. Supp. 2d 1262, 1273 (W.D. Wash. 2012); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d

805, 823 (M.D. Tenn. 2013); *Backpage.com, LLC v. Hoffman*, No. 13-cv-03952, 2013 WL 4502097, at *7 (D.N.J. Aug. 20, 2013).

Defendants misinterpret both the CDA and Travel Act. The CDA's grant of immunity "protects certain internet-based actors from certain kinds of lawsuits," *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1099 (9th Cir. 2009), but has "no effect" on "any other federal criminal statute." 47 U.S.C. § 230(e)(1). The Travel Act, in turn, condemns interstate travel or use of interstate facilities in furtherance of any unlawful activity, defined broadly as acts in violation of certain underlying state and federal laws. The Superseding Indictment alleges Defendants promoted and facilitated such violations, not their direct commission. (*See generally* SI.) While the focus of the inquiry may fall on underlying violations of state laws criminalizing prostitution, the gravamen of a charge under the Travel Act remains a violation of federal law. *See Polizzi*, 500 F.2d at 870. As this Court held previously, the CDA does not preclude prosecution under federal criminal law.

### a.  Void for Vagueness

Defendants argument that the SI is unconstitutionally vague similarly fails. Recycling a previous argument, Defendants argue they lacked fair and reasonable warning that their conduct to assist publication of known prostitution ads could violate the Travel Act. (Mot. at 12 (citing *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009)). The Court rejected this argument once before and sees little reason to alter its conclusion: "The SI alleges Defendants used a website with the intent to facilitate prostitution (a criminal activity) and executed strategies to further and increase that activity. The Court cannot conclude that such a standard or the allegations of the SI do not give fair warning that facilitating a criminal act is itself a crime." (Doc. 793 at 22.)

Applying the CDA does not change this outcome. The CDA, by its plain language, does not apply to federal criminal prosecutions. 47 U.S.C. § 230(e)(1). As mentioned previously, the CDA's grant of immunity is far from absolute. *Barnes*, 570 F.3d at 1099 ("Looking at this text, it appears clear that neither [§ 230(c)] nor any other declares general immunity from liability deriving from third-party content, as [defendant] argues it does. 'Subsection (c)(1) does not mention immunity or any synonym.'") (quoting *Chi. Lawyers'*

*Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F.3d 666, 669 (7th Cir. 2008)). Other courts uneven treatment of Defendants claims of CDA immunity from civil liability also weighs against their argument. *Compare M.A. v. Village Voice Media Holdings, LLC*, 809 F. Supp. 3d 1041, 1051 (E.D. Mo. 2011) (dismissing civil claims) *with J.S. v. Village Voice Media Holdings*, *Inc.*, 359 P.3d 714, 715-16 (Wash. 2015) (denying motion to dismiss). Additionally, as this Court previously recognized, the Superseding Indictment sufficiently alleges Defendants had notice of the illegal nature of the activities they promoted or facilitated. (*See* Doc. 793 at 6.)

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** Defendants Motion to Dismiss Indictment Based on Section 230 of the Communications Decency Act or, Alternatively, as Void for Vagueness (Doc. 783) **DENIED.**

Dated this 7th day of January, 2020.

Honorable Susan M. Brnovich
United States District Judge