Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949)369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | **DEFENDANTS' OPPOSITION TO UNITED STATES' MOTION IN LIMINE RE DAVIS WRIGHT (DKT. 906)** |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | (Oral argument requested) |

**Table of Contents**

I. INTRODUCTION ..................................................................................................1
II. BACKGROUND ..................................................................................................2
   A. DWT's Representation of VVMH, Backpage, and Defendants. ............................2
   B. The Government's Motion to Disqualify and the Hearing Before Judge Logan. ...3
   C. Judge Logan's Order Denying the Government's Motion to Disqualify. ...............5
III. ARGUMENT ........................................................................................................6
   A. The Government Provides No Basis to Disqualify DWT. ......................................6
   B. The Government Cannot Seek Disqualification By Asserting Its Previously Rejected Argument About DWT Attorneys as Trial Witnesses. ..............................9
   C. The History of Cases Holding that Backpage and Defendants Could Not Be Liable for Third-Party Content Are Relevant. ........................................................ 10
IV. CONCLUSION................................................................................................... 11

**Table of Authorities**

<u>Cases</u> <u>Page(s)</u>

*Amparano v. ASARCO, Inc.,*
  208 Ariz. 370, 93 P.3d 1086 (2004) ............................................................................... 7
*Backpage.com, LLC v. Cooper,*
  939 F. Supp. 2d 805 (M.D. Tenn. 2013) ........................................................................ 2
*Backpage.com, LLC v. Dart,*
  807 F.3d 229 (7th Cir. 2015) .......................................................................................... 2
*Backpage.com, LLC v. Dart,*
  No. 1:15-cv-06340 ((N.D. Ill) ........................................................................................ 9
*Backpage.com, LLC v. Hoffman,*
  2013 WL 4502097 (D.N.J. Aug. 20, 2013) .................................................................... 2
*Backpage.com, LLC v. McKenna,*
  881 F. Supp. 2d 1262 (W.D. Wash. 2012) ..................................................................... 2
*Doe ex. Rel. Roe v. Backpage.com, LLC,*
  104 F. Supp. 3d 149 (D. Mass. 2015) ....................................................................... 2, 10
*Gomez v. Superior Court,*
  149 Ariz. 223, 717 P.2d 902 (1986) ............................................................................... 7
*Knapp v. Hardy,*
  111 Ariz. 107, 523 P.2d 1308 (1974) ......................................................................... 1, 7
*Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.,*
  760 F.2d 1045 (9th Cir.1985) ......................................................................................... 7
*People v. Ferrer,*
  2016 WL 7237305 (Cal. Super. Ct. Dec. 9, 2016) .................................................... 3, 10
*People v. Ferrer,*
  No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017) .......................................................... 3
*Rice v. Baron,*
  456 F. Supp. 1361 (S.D.N.Y. 1978) ............................................................................... 7
*Rodriguez v. State,*
  129 Ariz. 67, 628 P.2d 950 (1981) ................................................................................. 7
*State v. Madrid,*
  105 Ariz. 534, 468 P.2d 561 (1970) ............................................................................... 7
*United States v. Gonzales-Lopez,*
  548 U.S. 140 (2006) .................................................................................................... 1, 8
*United States v. Iorizzo,*
  786 F.2d 52 (2d Cir. 1986) ............................................................................................. 8
*Villalpando v. Reagan,*
  211 Ariz. 305, 121 P.3d 172 (2005) ............................................................................... 7
*Wheat v. United States,*
  486 U.S. 153 (1988) ....................................................................................................... 7

Statutes

18 U.S.C. § 1595 .................................................................................................................. 2, 10
47 U.S.C. § 230 ......................................................................................................................... 2

Rules

Fed. R. Crim. P. 12 ................................................................................................................... 2

## I.   INTRODUCTION

From the outset of this case, the government has gone to considerable lengths to try to preclude Defendants Michael Lacey and James Larkin[1] from being represented by Davis Wright Tremaine LLP ("DWT"), in addition to each Defendant's individual trial counsel in the case. After extensive briefing and argument, Judge Logan ruled over a year and a half ago that the government had no grounds to disqualify DWT, that joint representation and defense agreements entered into by Carl Ferrer (the government's lead cooperating witness) were "fatal to the Government's argument for disqualification," that Ferrer had expressly consented to DWT's representation and waived any conflicts, and that DWT's continued representation of Messrs. Lacey and Larkin would not "threaten[] the integrity of the trial process." Dkt. 338, Order Denying Government's Motion to Disqualify ("Logan Order I"), at 7-9.

Now, in the guise of a motion in limine, the government tries to resurrect its efforts to eliminate DWT. Dkt. 906, Government's Motion in Limine re Davis Wright Tremaine ("Motion"). Pointing to Defendants' prior statements about DWT's expertise on First Amendment issues, the government contends that, because the Court rejected Defendants' motion to dismiss the indictment on First Amendment grounds, "[t]he [DWT] attorneys' services are no longer necessary and these attorneys should be removed as counsel of record." *Id.* at 2.

It is not the government's place to decide which attorneys can represent Defendants or whether the services of any given attorneys are "necessary." A defendants' right to "be defended by the counsel he believes to be best" is the heart of the Sixth Amendment's guarantee, and wrongful denial of the right requires automatic reversal. *United States v. Gonzales-Lopez*, 548 U.S. 140, 146, 148 (2006). As explained to Judge Logan before, the government has "no standing to object to who will or will not represent the defendant or be associated as counsel." *Knapp v. Hardy*, 111 Ariz. 107, 112, 523 P.2d 1308 (1974) (internal quotations omitted). As also explained before, Defendants have their own, respective trial counsel for this case (the undersigned). DWT attorneys will not be arguing or questioning witnesses at trial, much less will they be cross-examining Ferrer. DWT's role and involvement at trial will be consulting with trial counsel as

---

[1] As used here, "Defendants" refers to Messrs. Lacey and Larkin unless otherwise noted.

needed because of their expertise; their eight years of experience representing Defendants and Backpage; and their institutional knowledge about the website and its practices. And despite the government's apparent view, the First Amendment and Internet free speech issues have not disappeared from this case because the Court ruled on a dismissal motion pursuant to the deferential standards of Fed. R. Crim. P. 12. *See* Dkt. 793 at 8 (noting the Court's role was to determine if the indictment gave sufficient notice of the charges, while accepting all allegations as true).

The Court should deny the government's effort to try again to deprive Defendants of their chosen counsel.

## II.   BACKGROUND

### A.   DWT's Representation of VVMH, Backpage, and Defendants.

DWT has represented Backpage, Defendants Lacey and Larkin, and their companies for over eight years, winning injunctions against government officials, dismissals of civil suits, and rejection of criminal subpoenas and charges on the same theories the government advances in the current prosecution, *see* Dkt. 180 at 3-6,[2] and the government was well aware of DWT's prior representation. In 2013 DWT served as counsel for Village Voice Media Holdings ("VVMH")[3] and Backpage in quashing a series of subpoenas issued by the DOJ in the Western District of

---

[2] Page limits for this response preclude discussion of all the cases, but they include: *Backpage.com, LLC v. McKenna*, 881 F. Supp. 2d 1262 (W.D. Wash. 2012) (enjoining state criminal statute targeting Backpage.com as violating the First Amendment and 47 U.S.C. § 230); *Backpage.com, LLC v. Cooper*, 939 F. Supp. 2d 805 (M.D. Tenn. 2013) (enjoining similar Tennessee law); *Backpage.com, LLC v. Hoffman*, 2013 WL 4502097 (D.N.J. Aug. 20, 2013) (same for similar New Jersey law); *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (obtaining preliminary injunction against Cook County sheriff whose threats to Visa and MasterCard to cease allowing use of their credit cards for Backpage.com constituted an unconstitutional prior restraint in violation of the First Amendment), *cert. denied*, 137 S. Ct. 46 (2016); *Doe ex. Rel. Roe v. Backpage.com, LLC*, 104 F. Supp. 3d 149, 157 (D. Mass. 2015) (dismissing civil claims against Backpage based on alleged violation of federal criminal law, 18 U.S.C. § 1595, as preempted by Section 230 and because the plaintiffs' allegations about the website could not establish "affirmative participation in an illegal venture"), *aff'd*, 817 F.3d 12 (1st Cir. 2016), *cert. denied*, 137 S. Ct. 622 (2017).

[3] As also explained before to Judge Logan, Village Voice Media Holdings, Inc., the parent company of Backpage.com, LLC, retained DWT and other counsel through April 2015, when it Ferrer bought the website, and thereafter managed counsel pursuant to the parties' joint representation agreements. *See* Dkt. 180 at 6-7.

Washington on the same theory and allegations of vicarious liability for third-party ads that the DOJ now pursues. *In re Grand Jury Subpoenas to Backpage.com, LLC and Village Voice Media Holdings, LLC*, No. GJ12-172RAJ (W.D. Wash.). DWT also represented Defendants (and Carl Ferrer) in obtaining dismissals of criminal complaints brought by the California Attorney General's Office—which has worked with the DOJ to pursue Backpage for years—with two judges holding that the AG's criminal charges were preempted by Section 230 and Defendants could not be prosecuted for promoting prostitution or money laundering based on website users having posted and paid for ads. *People v. Ferrer*, 2016 WL 7237305, at *10 (Cal. Super. Ct. Dec. 9, 2016) ("[p]roviding a forum for online publishing is a recognized legal purpose," and "charg[ing] money for the placement of advertisements … qualif[ies] as services rendered for legal purposes"); *see also People v. Ferrer*, No. 16FE024013 (Cal. Super. Ct. Aug. 23, 2017).

**B.     The Government's Motion to Disqualify and the Hearing Before Judge Logan.**

As the government notes, it moved to disqualify DWT at the beginning of this case, on April 25, 2018. Motion at 2; *see* Dkt. 118. The parties provided multiple rounds of briefing and supporting materials, Dkts. 118, 177, 180, 192, 193, 202, 216, *see* Dkt. 192-6, 207 (government's submission of supplemental declarations raising new fact issues on reply and afterward); *see also* Dkt. 331 (Defendants' response to supplemental submissions). Judge Logan heard extensive arguments on the motion on October 5, 2018, *see* 10/15/18 Trans. at 5-59, Dkt. 247, and issued an order denying the motion on October 12, 2018, Dkt. 346.

In its Motion now, the government mischaracterizes the prior disqualification motion, the facts, and the statements at the hearing on that motion in many ways. The government asserts it moved to disqualify DWT "based on its previous representation of Carl Ferrer," Motion at 2, but in fact DWT historically represented the Backpage corporate entities (VVMH and Backpage.com, LLC), worked with Ferrer as an employee, and represented the companies and Lacey, Larkin, and Ferrer pursuant to express joint representation agreements. Dkt. 180 at 6-8. In his personal capacity, Ferrer was represented by separate counsel, not DWT. *Id.* at 7. The government also grossly misstates Defendants' arguments in opposition to the disqualification motion, asserting

1 that the "main points" were that DWT's role "would be limited" to "First Amendment issues". *See* Motion at 3-4.  Actually, Defendants raised five arguments why disqualifying DWT would have been improper and in violation of Defendants' Sixth Amendment rights, *i.e.*, that:  (1) in the joint representation and defense agreements, Ferrer gave his informed consent to DWT's joint representation, waived any conflicts, and promised not to seek disqualification of DWT for its continued representation of other parties; (2) Ferrer had no basis to seek DWT's disqualification after pleading guilty and agreeing to cooperate with the government, because he could no longer claim confidences as to communications with former joint counsel; (3) Ferrer could not claim his prior communications with DWT revealed his personal confidences, as DWT did not represent him personally and the joint representation agreements allowed that all confidential and privileged communications could be shared among all parties to the agreements (including Lacey, Larkin, VVMH, and related corporate entities); (4) Ferrer could not claim DWT's continued representation would contradict duties of confidentiality, given that he had expressly waived all privilege claims (to full extent he could do so) as part of his plea deal; and (5) the balance of the parties' interests weighed heavily in favor of Defendants' rights to have their chosen counsel, as the government could not show "substantial and irreparable harm" from DWT's continued involvement, while Lacey and Larkin would suffer substantial prejudice if they could not continue with DWT, given the firm's institutional knowledge, its successful representation in Backpage-related cases, and the parties' prior agreement to allow the representation.  *See* Dkt. 180 at 2.

In the hearing before Judge Logan, Defendants explained that the joint representation and defense agreements Ferrer executed with Defendants waived any conflicts or right to seek to disqualify DWT.  *See* 10/5/18 Trans. at 29-43.[4]  Defendants stressed their Sixth Amendment rights "to have counsel of [their] choice."  *Id.* at 27:6-27:8; *see also id.* at 27:20-27:22; 42:3-42:10.  Defendants expressed their ardent desire for DWT to continue its representation (as permitted by

---

[4] Although DWT represents Messrs. Lacey and Larkin, the government confusingly devotes much of the discussion in its Motion to statements of counsel for Mr. Padilla and statements about the role of another firm, Henze Cook Murphy (HCM), which the government also sought to disqualify previously, *see* Motion at 4-5 & n.2, although it now says it has no objections to HCM's involvement, *id.* at 2 n.1,

4
DEFENDANTS' OPPOSITION TO MOTION IN LIMINE RE DWT

the joint representation agreements), because the DWT attorneys not only have expertise on First Amendment issues, but "ha[ve] a history of several years on the very issues in this case," "ha[ve] successfully represented Backpage on at least nine different matters … against allegations just like these," and it would be "a definite detriment … to lose that institutionalized … expertise about the company's issues." 10/5/18 Trans. at 26:13-26:16, 27:12-27:13. Defendants emphasized that, given the agreements Ferrer accepted, waiving any conflicts and committing not to seek to disqualify DWT, nothing in the law or the circumstances would require that DWT have a limited role in its representation going forward. *Id.* at 33:18-34:6. Yet, Defendants also explained that "each one of the defendants has always had his own personal counsel" regarding the criminal charges, and those attorneys (Bienert Katzman PC for Mr. Larkin and Lipsitz Green Scime Cambria LLP for Mr. Lacey) would act as "lead trial counsel," while DWT would "participate in connection with those counsel" and would not cross-examine Ferrer. *Id.* at 34:21-35:8; *see also id.* at 35:17-35:23.[5]

### C. Judge Logan's Order Denying the Government's Motion to Disqualify.

Judge Logan denied the government's disqualification motion in a ten-page order issued October 12, 2018. Logan Order I. In doing so, he focused on the joint representation and defense agreements Ferrer executed, which he reviewed *in camera*. *See* Dkt. 180-1 (*in camera* declaration

---

[5] The government tries to create a misimpression of what Defendants' counsel said at the hearing by deceivingly juxtaposing partial quotes. The following are quotations the government offers in its Motion with the remainder of the quotes the government omits (shown in italics):

> Specifically, Mr. Grant stated, "what we have said throughout is that we have been counsel on First Amendment issues, we've been counsel on Internet issues, and related issues that have to do with Internet publishers. *That's part of our expertise, Your Honor. But – and we have said that we're not going to be lead counsel for this case. Each one of the defendants, at all times, since there has been any threat or actual charges brought against them individually, each one of the defendants has always had his own personal counsel. … And those are the lead trial counsel for purposes of defendants throughout this case. So the role that we would anticipate having – certainly is to participate in connection with those counsel, but again, not to cross-examine Mr. Ferrer. There are other very capable counsel who can and will do that, and not to act as the lead trial counsel, because each defendant should have his own lead trial counsel for purposes of this case. So* that's the limited role that I think is appropriate under these circumstances."

Motion at 4, with additions from 10/5/18 Trans. at 34:15-35:10.

5
DEFENDANTS' OPPOSITION TO MOTION IN LIMINE RE DWT

providing agreements). The Court concluded that "the express terms of the JRA and the JDA are fatal to the Government's argument for disqualification …. [I]t is clear to the Court that the plain language of the agreement prevents Ferrer from seeking disqualification of counsel based on any conflict arising out of the JRA." *Id.* at 7. The Court's opinion continued:

> The Court finds that Ferrer waived his right to seek disqualification of HCM and DWT or to assert any conflict of interest in this case. Pursuant to the terms of the JRA and the JDA, the Court finds that Ferrer has provided DWT and HCM with the written informed consent necessary for each firm to continue its participation as counsel. The Court is confident that allowing HCM and DWT to continue their participation in this case will not run afoul of the interests of justice, and Ferrer's executed JRA and JDA provide the written informed consent to satisfy ER 1.9(a) and ER 1.7(b).

Logan Order I at 8. Judge Logan noted and accepted the representations Defendants made about the roles DWT and HCM respectively would play, that "neither … will participate as trial counsel in this matter, and … neither firm will participate in cross-examining Ferrer." *Id.* at 9-10.[6] The Court determined that it did not need to address other arguments Defendants had raised, *see, e.g.*, *id.* at 10, as it found the joint representation and defense agreements to be "valid and enforceable" and controlling, *id.* at 8.

## III. ARGUMENT

### A. The Government Provides No Basis to Disqualify DWT.

The government ignores effectively all of the record to try, yet again, to preclude Defendants from having their chosen counsel. And, what the government doesn't ignore, it badly mischaracterizes.

---

[6] In the concluding paragraph of the Order, Judge Logan summarized the "representations of HCM, DWT, and their respective counsel" but combined them together, although the roles described for the firms were different. Unlike DWT, HCM had represented Ferrer in his personal capacity in the past but sought to continue representing Mr. Lacey only regarding his conditions of release and financial issues relating to his assets that the government seized. *See* 10/5/18 Trans. at 44:18-46:19. HCM thus assured that it would preserve the confidences of Ferrer as a former client and would refrain from engaging in trial preparation, as reflected in the Court's order. *See* Logan Order I at 10. On the other hand, DWT had never represented Ferrer individually (and in the JRA he agreed that all confidential information could be shared with other parties to the agreement, specifically including Defendants), and counsel emphasized the importance of DWT's institutional knowledge and history with Backpage as important for trial preparation. *See* 10/5/18 Trans. at 26:13-27:13.

1    Judge Logan ruled that the parties' joint representation and defense agreements were clear. In those agreements, Ferrer agreed not to seek to disqualify DWT if he withdrew from representation and DWT continued to represent Defendants or their companies afterward. Ferrer expressly waived any potential conflicts. He gave informed consent in agreements that the Court found are valid and enforceable. The government therefore has no grounds to claim any conflict arising out of DWT's past representation. DWT's participation as counsel for Defendants in this case is proper – it has been proper from the outset – and does "not run afoul of the interests of justice." Logan Order I at 7-8.

The government's motion says nothing about the applicable law that strongly disfavors motions to disqualify an opposing party's counsel. Disqualification motions are subject to "'particularly strict judicial scrutiny'" because of potential abuse. *Optyl Eyewear Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir.1985) (quoting *Rice v. Baron*, 456 F. Supp. 1361, 1379 (S.D.N.Y. 1978)); *see also Wheat v. United States*, 486 U.S. 153, 163 (1988) ("the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side"). Arizona law, which governs here, "view[s] with suspicion motions by opposing counsel to disqualify a party's attorney based upon conflict of interest" and emphasizes the "public suspicion regarding an attempt by the state to disqualify a defendant's attorney." *Gomez v. Superior Court*, 149 Ariz. 223, 226, 717 P.2d 902 (1986); *Villalpando v. Reagan*, 211 Ariz. 305, 308, 121 P.3d 172 (2005) (same); *Amparano v. ASARCO, Inc.,* 208 Ariz. 370, 376, 93 P.3d 1086 (2004) (the RPCs "are not designed to be used as a means to disqualify counsel"). In fact, the Arizona Supreme Court has held that a prosecutor "has no standing to object as to who will or will not represent the defendant or be associated as counsel." *Knapp*, 111 Ariz. at 112. "Not only does this strike at the very heart of the adversary system, but 'for the prosecution to participate in the selection or rejection of its opposing counsel is unseemly if for no other reason than the distasteful impression which could be conveyed.'" *Id.* (quoting *State v. Madrid*, 105 Ariz. 534, 535, 468 P.2d 561 (1970)); *accord Rodriguez v. State*, 129 Ariz. 67, 70, 628 P.2d 950 (1981).

The government also makes no mention that its Motion strikes again at fundamental constitutional rights. "The right to select counsel of one's choice … has been regarded as the root

meaning of the constitutional guarantee" of the Sixth Amendment right to assistance of counsel. *Gonzalez-Lopez*, 548 U.S. at 147-48. "Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id.* at 148. Such a denial of the right to counsel of choice requires automatic reversal.

The government cites only one case in its renewed effort to get rid of DWT, *United States v. Iorizzo*, 786 F.2d 52 (2d Cir. 1986). *See* Motion at 7. That case did not involve any joint representation agreement. Judge Logan recognized this flaw of the government's arguments before, noting that the "cases relied on by the Government are silent on the issue of waivers appearing in joint representation or joint defense agreements acting as blanket waivers of future conflicts." Logan Order I at 9. To the extent the government cites *Iorizzo* now for the proposition that there should be "a pretrial disposition" concerning conflict issues, *see* Motion at 7 (quoting *Iorizzo*, 786 F.2d at 59), that has been done – Judge Logan decided the issues over eighteen months ago.

Otherwise, the government's Motion blatantly mischaracterizes the record to claim that Defendants said before that DWT's role would be only to "present and argue a motion on the First Amendment," Motion at 7, but that is not what Defendants or Judge Logan's order said. To be sure, Defendants did explain the importance of having the representation of DWT attorneys regarding First Amendment and Internet speech issues, but, as discussed above, they also emphasized the attorneys' institutional knowledge and many years of history regarding Backpage, its operations, and the issues at the core of this case. *See* 10/5/18 Trans. at 26:13-27:13. Defendants further explained that, under the agreements Ferrer accepted, there is no basis to proscribe DWT's role in the case, but, in any event, other attorneys would act as trial counsel for Mr. Lacey and Mr. Larkin, and DWT would work with them and would not cross-examine Ferrer. *Id.* at 33:18-34:6, 34:21-35:8.

Nor is it accurate for the government to claim that issues concerning the First Amendment and Internet speech are "no longer before this Court." Motion at 7. The Court denied the motion to dismiss the indictment based on the standards of Fed. R. Crim. P. 12, requiring the Court to accept all allegations of the indictment as true and to determine whether the indictment gave

sufficient notice of the charges. Dkt. 793 at 8. The case remains to be tried, and the issues at trial will include online publishers' editorial and moderation practices, requisite specific intent to hold a publisher liable for third-party content, Backpage's history of establishing that a website publisher cannot be held vicariously liable for third-party content, and many other issues relating to Internet practices and speech rights. Notably, the government also argued unsuccessfully in its first motion to disqualify DWT that "the First Amendment and Internet law issues have already been resolved," 10/5/18 Trans. at 23:11-23:24. Protections for free speech do not evaporate because the government says so.

The government offers no basis to preclude Defendants Lacey and Larkin from continuing to have DWT represent them, consulting and working with trial counsel as requested in this case.

### B. The Government Cannot Seek Disqualification By Asserting Its Previously Rejected Argument About DWT Attorneys as Trial Witnesses.

The government asserts that "an independent reason" to "terminate" DWT as Defendants' counsel in this case is the "possibility that the law firm's attorneys could be called as fact witnesses at trial" because many of Ferrer's recent statements to the government are contradicted by many prior under-oath declarations. Motion at 8. This is a retread of the same argument the government made in its prior disqualification motion, *see* Dkt. 193 at 5, which Judge Logan did not credit. The time has long past for the government to seek reconsideration of Judge Logan's ruling, although that is effectively what its Motion tries to do.

As discussed before, *see* Dkt. 331 at 5-6, the government is alluding to six declarations of Carl Ferrer in cases dating back to 2012 in which he averred that Backpage enforced rules and screened ads to *prevent* improper content and regularly worked with law enforcement to identify and pursue persons who misused the website. *See* Dkt. 331-1 at ¶ 5 & Ex. D (example of Ferrer's declaration from *Backpage.com, LLC v. Dart*, No. l:15-cv-06340 (N.D. Ill.)). The pleadings from the cases the government cites simply state the obvious point that "Ferrer's statements in … his negotiated plea agreements are inconsistent with his prior sworn testimony … and he will have to answer for the contradictions …." Dkt. 193, Ex. D at 13. That Ferrer will face challenges and cross-examination about his under-oath contradictions should come as no surprise to the

government, and in no way impacts DWT's ability to consult and work with trial counsel on the many aspects of this complex case where DWT's expertise and knowledge are important. Not surprisingly, the government cites no caselaw in support of this transparent intent to deprive Defendants of counsel who are significant to trial counsel's preparation of the case.

### C. The History of Cases Holding that Backpage and Defendants Could Not Be Liable for Third-Party Content Are Relevant.

Finally, and disconnected from the rest of the Motion, the government urges that "Defendants should be precluded from discussing or relying on any previous case in which Backpage was involved." Motion at 9.

Again the government relies on the Court's denial of a motion to dismiss under Rule 12, *id.* (citing Dkt. 840), as though finding the indictment sufficient is tantamount to a holding that Defendants could not rely on rulings of nine different courts over a span of nearly seven years that Backpage could not be liable for third-party content, that the First Amendment precluded government authorities from presuming ads on the website were unlawful, and that efforts to impose criminal penalties or restraints to cripple the website would be enjoined. The government is simply wrong when it asserts that Backpage's litigation history did not involve cases rejecting criminal allegations. For example, the court in *Doe v. Backpage.com* held not only that the plaintiffs' claims under 18 U.S.C. § 1595 were preempted by Section 230 of the CDA, but also that plaintiffs' numerous allegations that Backpage encouraged misuse of the website by its structure, moderation, and other practices could not amount "to affirmative participation in an illegal venture" as required for federal criminal liability. 104 F. Supp. 3d at 157. Similarly, the court in *People v. Ferrer*, held that Backpage's acceptance of payments for escort ads constituted "services rendered for legal purposes," notwithstanding the State AG's accusations about the website. 2016 WL 7237305, at *10. And the federal court in the Western District of Washington effectively shut down the prior grand jury investigation of Backpage in 2013 when the government asserted essentially the same allegations and evidence that it does now.

This litigation history and Backpage's and Defendants' successful assertions and defense of free speech rights unquestionably is relevant in this case on many issues, including in particular as

to each Defendant's knowledge and intent. The government's effort to cut off evidence of many years' worth of judicial rulings rejecting the government's theory and accusations is absurd.

## IV.   CONCLUSION

For the foregoing reasons, and based on the Judge Logan's prior consideration and orders, Defendants Lacey and Larkin ask that the Court deny the government's Motion in its entirety.

RESPECTFULLY SUBMITTED this 8th day of May 2020,

BIENERT | KATZMAN PC
*s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
Whitney Z. Bernstein
Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II(C)(3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
Attorneys for Michael Lacey

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas