1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

United States of America,

               Plaintiff,

v.

Michael Lacey, et al.,

               Defendants.

No. CR-18-00422-001-PHX-SMB

**ORDER**

      Pending before the Court are four motions to suppress: Defendant Michael Lacey's Motion to Suppress, (Doc. 775, "Lacey Mot."), Defendants' two Motions to Suppress,[1] (Doc. 778, "Joint Mot."; Doc. 827, "Datto Mot."[2]), and Defendant James Larkin's Motion to Suppress, (Doc. 786, "Larkin Mot."). The United States responded to the first three filed motions in a combined response, (Doc. 811, "Resp."), and the last motion separately, (Doc. 851, "Datto Resp."). Defendants Lacey and Larkin jointly replied in support of their individual motions, (Doc. 824, "Reply"), and Defendants separately replied in support of theirs, (Doc. 828, "Joint Reply"; Doc. 861, "Datto Reply"). The Court has considered the pleadings, exhibits, warrant applications, and applicable law and issues the following Order.[3]

---

[1] Defendant Lacey filed a notice of errata because the joint motion "inadvertently did not include appropriate attachments for Exhibit E and Exhibit F," (Doc. 801 at 1).
[2] The Court will consider this motion over the Government's objection that Defendants failed to diligently challenge the underlying warrant. (*See* Doc. 851 at 2, 5-6.)
[3] Oral argument was requested for each motion, but the Court finds that the issues are adequately presented in the pleadings to permit their resolution without hearing.

1

## I.      BACKGROUND[4]

On March 28, 2018, a federal grand jury indicted Defendants for their conduct while operating the former classified ads website, Backpage.com. (Doc. 3.) A superseding indictment was filed a few months later on July 25, 2018. (Doc. 230, "SI"). Their present motions challenge magistrate-approved federal search and seizure warrants concerning real property, electronic devices, and email accounts that the Government obtained over the course of its investigations into their alleged unlawful conduct.

### A.  Real Property and Electronic Devices Search and Seizure Warrants

The Lacey and Larkin motions challenge warrants covering three homes, the electronic devices seized from inside them, and a safety deposit box. In particular, the Government obtained warrants on April 5, 2018 for two of Lacey's homes, a house owned by Larkin, and a safety deposit box belonging to Spears.[5] (Doc. 775-1 at 1-3, "Real Property Warrants"). It also obtained a warrant on August 31, 2018 for the electronic devices seized from within the three homes.[6] (Doc. 775-4 at 1, "Devices Warrant").

Federal Bureau of Investigation ("FBI") Special Agent Amy Fryberger wrote an eleven-page affidavit to accompany the sixty-one-page indictment in the real property warrant applications, (Doc. 775-2), and Internal Revenue Service ("IRS") Special Agent Richard Robinson submitted a twelve-page affidavit and the ninety-two page superseding indictment for the devices one, (Doc. 775-5).

### B.  Email Account Search and Seizure Warrants

The Joint and Datto motions challenge warrants covering information contained in various email accounts of former Backpage.com employees obtained from Google, Inc.

---

[4] This case's background is well known to the Court and parties and will not be restated here. *See United States v. Lacey*, 378 F. Supp. 3d 814, 816-819 (D. Ariz. 2019) (thoroughly discussing background); *see also United States v. Lacey*, 423 F. Supp. 3d 748, 752-756 (D. Ariz. 2019) (same). Only facts pertaining to the pending motions will be discussed here.

[5] Only one warrant is attached to the motions, but the others are docketed. *United States v. Search Warrant*, 2:18-mb-09126-ESW-1, Docs. 2-5 (D. Ariz. Apr. 13, 2018). As the Government highlights and no Defendant disputes, Spear does not challenge the search of his safety deposit box. (Resp. at 3 n.1.) Accordingly, the Court will not address that warrant because Lacey and Larkin lack standing.

[6] The docket associated with this warrant is *United States v. Search Warrant*, 2:18-mb-08365-JZB-1, Doc. 1 (D. Ariz. Sept. 6, 2018).

("Google"), Datto, Inc. ("Datto"), and the California Attorney General's Office. More specifically, the Government obtained a warrant on July 15, 2016 for information associated with Carl Ferrer's Google email account,[7] (Doc. 778-1 at 2-3, "Google Warrant"), and another one on August 31, 2018 for the contents of twenty-six email accounts associated with Backpage.com and its related entities from Datto.[8] (Doc. 827-1, "Datto Warrant"). It also obtained a warrant on April 18, 2017 for information associated with various email accounts, including those of Lacey, Larkin, Vaught, and Padilla, from the California AG's Office. (Doc. 778-3, "AG Warrant").

Special Agent Fryberger submitted a forty-five-page affidavit for the Google warrant, (Doc. 778-2), and a thirty-six-page affidavit with nine pages of exhibits for the AG one, (Doc. 778-4). No indictment or superseding indictment was included in the Google or AG warrant applications. Special Agent Robinson wrote a twelve-page affidavit and included the superseding indictment for the Datto Warrant. (Doc. 827-2.)

Each warrant is claimed to violate the Fourth Amendment. U.S. Const. amend. IV.

## II.    LEGAL STANDARD

The Fourth Amendment protects individuals against unreasonable searches and seizures. *See Hudson v. Michigan*, 547 U.S. 586, 593 (2006) ("Until a valid warrant has issued, citizens are entitled to shield 'their persons, houses, papers, and effects' from the government's scrutiny." (quoting U.S. Const. amend. IV)). It provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

*Id.*

---

[7] The docket for with this warrant is *United States v. Search Warrant*, 2:16-mb-00305-MHB-1, Doc. 2 (D. Ariz. July 18, 2016).
[8] Docket is *United States v. Search Warrant*, 2:18-mb-08364-JZB-1, Doc. 1 (D. Ariz. Sept. 6, 2018).

"As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Riley v. California*, 573 U.S. 373, 381 (2014) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)). "Where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 653 (1995). Requiring a warrant "ensures that the inferences to support a search are 'drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Riley*, 573 U.S. at 382 (quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948)).

## III.   DISCUSSION

Notwithstanding the fact that magistrates issued the above warrants, Defendants claim none of them is valid under the Fourth Amendment.[9] (Lacey Mot. at 16; Joint Mot. at 15; Larkin Mot. at 14; Datto Mot. at 17.) As a result, they argue, the Court should "suppress the evidence obtained from execution of the[m] . . . and any evidence derived from them." (*Id.*) They also request a *Franks* hearing on each to demonstrate the material misstatements and omissions in the respective affidavits. (Lacey Mot. at 17; Joint Mot. at 15-16; Larkin Mot. at 14; Datto Mot. at 17.) Since "[w]hether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct,'" *United States v. Leon*, 468 U.S. 897, 906 (1984) (quoting *Illinois v. Gates*, 462 U.S. 213, 223 (1983)), the Court begins with whether the search warrants violate the Fourth Amendment.[10]

### A.  <u>Whether the Search Warrants Violate the Fourth Amendment.</u>

Each warrant is argued to lack probable cause and the real property and Datto warrants are argued to lack particularity. The real property warrants are also argued to be

---

[9] The Court has consolidated Defendants' motions in this Order because they are almost identical, both in substantive arguments and language used.

[10] Only if a warrant violates the Fourth Amendment will the Court then address what remedy, if any, should be imposed. *See Hudson*, 547 U.S. at 592.

overbroad.[11] These arguments, as they concern the respective warrants, are each addressed in turn below. However, in brief, the Court finds that the only constitutional violation is that the real property warrants are insufficiently particular in how they describe three categories of items.

> i. Each Magistrate Had A Substantial Basis for Concluding Probable Cause Supported Issuing Each Warrant.

A warrant is supported by probable cause when the magistrate finds that "given all the circumstances set forth in the affidavit[,] . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. Probable cause is not a threshold akin to proof beyond a reasonable doubt; rather, it is a "fluid concept–turning on the assessment of probabilities in particular factual contexts–not readily, or even usefully, reduced to a neat set of legal rules." *Id.* at 232; *see also Brinegar v. United States*, 338 U.S. 160, 176 (1949) (noting that "probable cause is a practical, nontechnical conception"). In other words, and for some time now, "it [has been] clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" *Gates*, 462 U.S. at 235 (citation omitted).

Once a warrant is approved, a reviewing court must give "great deference" to the magistrate's probable cause determination. *Id.* at 236. In fact, "the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1961)); *see also United States v. Ventresca*, 380 U.S. 102, 109 (1965) ("[W]here these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hyper[-]technical, rather than a commonsense, manner."); *United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013); *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011); *United States v. Reeves*, 210 F.3d 1041,

---

[11] The Ninth Circuit insists that "particularity and overbreadth remain two distinct parts of the evaluation of a warrant for Fourth Amendment purposes." *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (2009).

1046 (9th Cir. 2000). "The facts upon which the magistrate bases his probable cause determination must appear within the four corners of the warrant affidavit; the warrant cannot be supported by outside information." *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir. 1983) (citations omitted). But there is nothing wrong with a magistrate reviewing an indictment's factual allegations. *Id.* On the other hand, a magistrate cannot rely solely on the fact that an individual was indicted to find the necessary probable cause to issue a search warrant. *See United States v. Seybold*, 726 F.2d 502, 505 (9th Cir. 1984).

### 1.   Real Property and Electronic Devices Search Warrants

Defendants Lacey and Larkin argue no substantial basis for finding probable cause exists for these warrants for three reasons. First, because the "affidavits underlying [them] provide[] no facts supporting the crimes allegedly committed," but they instead only "summarize and incorporate the indictment." (Lacey Mot. at 7; Larkin Mot. at 6.) Second, the affidavits "do not include any facts establishing that [they] had the heightened scienter required to establish probable cause that [they] engaged in any Travel Act (or money laundering) violations." (Lacey Mot. at 7; Larkin Mot. at 7.) Third, "the affidavits are void of any facts that establish probable cause to believe that [they] knowingly and intentionally promoted/facilitated a 'business enterprise' involving prostitution." (Lacey Mot. at 9; Larkin Mot. at 7.) None of these arguments is persuasive.[12]

Defendants' first argument that each magistrate lacked a substantial basis for concluding probable cause existed because the underlying affidavits[13] simply summarize and incorporate the indictment or superseding indictment primarily relies on two cases, one of which is binding.[14] In that case, *United States v. Rubio*, 727 F.2d 786, 795 (9th Cir.

---

[12] Defendant Lacey also argues that the underlying affidavit, as it relates to probable cause to believe he engaged in international money laundering by forming an offshore trust, recites lawful conduct. (Lacey Mot. at 8-9.) That is, he claims that the affiants' descriptions of his various financial transactions and international travel does not establish probable cause. (*Id.*) The Court agrees that international travel alone inadequately supports probable cause, but Defendant's argument ignores the scores of other facts in the warrant applications.

[13] As noted above, Fryberger's affidavit and the indictment endorsed the real property warrants while Robinson's affidavit and the superseding indictment supported the electronic devices one.

[14] The other case, *United States v. Bailey*, 327 F. Supp. 802, 806 (N.D. Ill. 1979), distinguishes "the finding of probable cause for arrest of an individual that accrues from

1983), the Ninth Circuit held that the magistrate had no substantial basis for concluding probable cause existed because the determination was "based on the indictment alone." The *Rubio* court reasoned that the "[indictment] is not, of itself, an adequate substitute for articulable facts in the warrant affidavit." *Id.* The Circuit court reiterated this finding the next year in reasoning that "an indictment *alone* does not constitute probable cause to issue a search warrant." *Seybold*, 726 F.2d at 505 (citation omitted). But it also reasoned that "a magistrate may apply his independent judgment to the factual allegations in an indictment to determine whether probable cause for a search warrant exists." *Id.* In other words, a magistrate cannot simply rely on the fact that someone was indicted in finding probable cause to issue a search warrant. *See id.*

Nothing shows that the magistrates did such a thing here. In fact, they had much more to rely on than the simple fact that Defendants were indicted in making their probable cause determinations. *Cf. id.* at 504-505. Having been provided the sixty-one-page indictment along with Fryberger's detailed affidavit for the real property warrants and the ninety-two-page superseding indictment with Robinson's affidavit for the electronic devices warrant, the magistrates certainly had a substantial basis for concluding probable cause supported issuing them. *Cf. Gates*, 462 U.S. at 236. Defendants' other arguments concerning whether the applications had probable cause to support certain Travel Act elements have already been addressed. *See Lacey*, 423 F. Supp. 3d at 761-764 (addressing scienter); (*see also* Doc. 946 (addressing "unlawful activity")). Notwithstanding those decisions, the Court finds that each magistrate's probable cause determination was correct. *Cf. Gates*, 462 U.S. at 236.

In sum, the Court has carefully reviewed the warrant applications and found that the totality of the facts in them provide enough for the magistrates to conclude there was a fair probability that evidence of the listed violations would be found inside Lacey's and Larkin's listed homes and on the electronic devices found within. *Cf. id.*

---

his being indicted" from "a finding of probable cause for a warrant to search that person's home, his car, or his business office." This case is helpful, but it does not show that the magistrates here simply relied on the fact that Defendants were indicted in finding probable cause existed. *Cf. id.*

2.  Datto Search Warrant

Defendants' arguments as to why this warrant violates the Fourth Amendment for lack of probable cause are virtually identical to those concerning why the real property and electronic devices warrants lack probable cause.[15] These arguments are no more persuasive here than they were above. Having reviewed the superseding indictment and Robinson's affidavit, the Court finds that the magistrate had a substantial basis for finding that probable cause supported issuing this warrant. *Cf. id.*

3.  Google and AG Search Warrants

Defendants also argue that the warrant applications for these warrants provide no substantial basis for the magistrates' probable cause findings.[16] (*See* Joint Mot. at 10-12.) More specifically, they argue that the affidavits provide no basis for a probable cause determination because they improperly summarized findings from other investigations. (*Id.* at 10.) They also argue, as they do in their other motions, that probable cause is lacking because the affidavits omit "facts establishing that [they] had the heightened scienter required to establish probable cause that they engaged in any Travel Act (or money laundering) violations" and "facts that establish probable cause to believe that [they] knowingly and intentionally promoted/facilitated a 'business enterprise' involving prostitution." (*Id.* at 11-12.) None of these reasons is persuasive.

As a practical matter, Defendants' claim that Fryberger's affidavits do not provide a substantial basis for the probable cause determinations because they merely summarized findings of other investigations mischaracterizes and narrowly reads the affidavits. *See Gates*, 462 U.S. at 230-236 (describing warrant application review as a "totality-of-the-circumstances approach"). When considered in their entirety, the affidavits not only

---

[15] That is, they again argue the magistrate lacked a substantial basis for a probable cause determination because the warrant application "provide[s] no facts supporting the crimes allegedly committed," but instead only "summarizes and incorporates the indictment." (Datto Mot. at 9.) They next argue it "does not include any facts establishing that Defendants had the heightened scienter required to establish probable cause that they engaged in any Travel Act (or money laundering) violations," (*id.* at 10), and that it recites lawful conduct, (*id.* at 11). They last argue it is "void of any facts that establish probable cause to believe that Defendants knowingly and intentionally promoted/facilitated a 'business enterprise' involving prostitution." (*Id.*)

[16] As noted above, each warrant relies on an affidavit by Fryberger.

demonstrate Fryberger's extensive knowledge concerning other investigations, but they also include information based on her own investigations and relevant, supported conclusions based on her past training and experiences as a law enforcement officer. (*See* Docs. 778-2, 778-4.) There is nothing wrong with an affidavit incorporating work from other law enforcement officers or agencies, especially considering that large international investigations often involve more than one officer. Instead, what matters is that the affiant is aware of the information and asserts the accuracy of the statements under penalty of perjury. There is nothing to suggest this is a problem here.

After reviewing the affidavit for each warrant application in its entirety, Defendants' other arguments also fail to show that there was no substantial basis for the magistrates' probable cause findings. *Cf. Gates*, 462 U.S. at 236.

### ii.   The Real Property Warrants are Not Unconstitutionally Overbroad.

"Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *See SDI Future Health*, 568 F.3d at 702. This means "there [must] be probable cause to seize [each] particular thing named in the warrant." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 857 (9th Cir. 1991). "The search and seizure of large quantities of material is justified if it is within the scope of the probable cause underlying the warrant." *United States v. Hayes*, 794 F.2d 1348, 1355 (9th Cir. 1986).

Defendants Lacey and Larkin argue that the real property warrants are overbroad because they "allowed the search of evidence that fell outside of the time period in which the affidavit provided probable cause to believe a crime occurred." (Lacey Mot. at 12; Larkin Mot. at 10.) Their primary concern is that no probable cause supports searching for evidence from "2010 through the time of execution." (*Id.*) The Court disagrees. Since Fryberger's affidavit and the attached indictment indicate ongoing criminal activity, the probable cause supplied by the warrant applications for each house permitted searching for evidence from 2010 through the time of execution, which was the next day. *Cf. Hayes*, 794 F.2d at 1355; *see also SDI Future Health*, 568 F.3d at 705.

iii. The Datto Warrant Satisfies the Particularity Requirement, but Three Categories of Items in the Real Property Warrants are Impermissibly Vague.

The Fourth Amendment prohibits "general warrants." *Andresen v. Maryland*, 427 U.S. 463, 480 (1976) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). It "requires that a warrant particularly describe both the place to be searched and the person or things to be seized. The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986); *see also SDI Future Health*, 568 F.3d at 702 ("the warrant must clearly state what is sought"); *In re Grand Jury Subpoenas*, 926 F.2d at 857 ("the warrant must make clear to the executing officer exactly what it is that he or she is authorized to search for and seize"); *United States v. Bridges*, 344 F.3d 1010, 1017 (9th Cir. 2003) ("[it must] state with reasonable particularity what items are being targeted for search or, alternatively, what criminal activity is suspected of having been perpetrated." (citing *Marron v. United States*, 275 U.S. 192, 196 (1927)). "Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." *Spilotro*, 800 F.2d at 963. "While a search warrant must describe the items to be seize with particularity sufficient to prevent a general, exploratory rummaging in a person's belongings, it need only be reasonably specific, rather than elaborately detailed." *United States v. Rude*, 88 F.3d 1538, 1551 (9th Cir. 1996) (internal quotation marks and citations omitted).

In determining whether a warrant identifies the items to be seized with enough particularity, the Court considers one or more of the following factors:

(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*United States v. Mann*, 389 F.3d 869, 878 (9th Cir. 2004) (quoting *Spilotro*, 800 F.2d at

963); *see also United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (same). "One of the crucial factors to be considered is the information available to the government." *United States v. Cardwell*, 680 F.2d 75, 78 (9th Cir. 1982). This is crucial because "generic classifications in a warrant are acceptable only when a more precise description is not possible." *United States v. Bright*, 630 F.2d 804, 812 (5th Cir. 1980). "If items that are illegal, fraudulent, or evidence of illegality are sought, the warrant must contain some guidelines to aid the determination of what may or may not be seized." *Cardwell*, 680 F.2d at 78. Of course, the specificity required in a warrant varies based on each case's circumstances and the type of items involved. *Spilotro*, 800 F.2d at 963.

      a.   The Datto Warrant is Sufficiently Particular.

Defendants argue the Datto warrant is not particular enough. (Datto Mot. at 12-13.) The Government disagrees. (Datto Resp. at 13-14.) In particular, the Government claims it provides enough particularity as to what was being searched for because it clearly identified that the search concerned twenty-six email accounts and the content associated with them from 2004 through 2018. (Datto Resp. at 14.) After reviewing the issued warrant application, including its attachments, the Court finds that this warrant satisfies the particularity requirement. Defendants' arguments claiming otherwise are not persuasive. (*See* Datto Mot. at 12-13.)

      b.   Three Categories of Items in the Real Property Warrants are Impermissibly Vague.

Defendants Lacey and Larkin argue that the real property warrants are not particular enough. (Lacey Mot. at 10-11; Larkin Mot. at 8-10.) They claim the attachment included in the warrant applications that lists categories of items insufficiently identifies what fits within them. (*See* Doc. 775-1 at 3.) Those categories read:

> *Evidence of wealth, assets, and real estate obtained from the illicit activity* to include; notes, correspondence, and news articles related to prostitution, sex trafficking and/or Backpage and related entities.
>
> Documentation of any funds received from Backpage or *other related companies* and disposition of those funds.

> Any *property or proceeds resulting from money laundering* or international
> money laundering scheme to include computers, currencies, coins, precious
> metals, artwork, jewelry, home furnishings and vehicles.

(*Id.* (emphasis added)). In citing *United States v. Washington*, 797 F.2d 1461, 1472-73 (9th Cir. 1986), they first argue that "it is unclear what items constitute '[e]vidence of wealth.'" (Lacey Mot. at 10; Larkin Mot. at 10.) The Government argues this phrase is particular enough because it specifically "relates to property acquired or purchased with the proceeds of criminal activity." (Resp. at 11.) It also argues the category is particular because the conspiracy spanned over a decade. (*Id.* at 11 (citing *Center Art Galleries-Hawaii, Inc. v. United States*, 875 F.2d 747, 750-51 (9th Cir. 1989); *United States v. Offices Known as 50 State Distrib. Co.*, 708 F.2d 1371 (9th Cir. 1983)) In other words, it appears to argue that most of Lacey's and Larkin's wealth was obtained from illicit activities, and therefore, the more generalized description is appropriate.

The Court agrees with Defendants that this first category is not particular enough for Fourth Amendment purposes. *See Spilotro*, 800 F.2d at 964-66 ("[W]arrants reciting generic classifications and criminal statutes without more usually do not give the officers who execute them guidance to determine what items to seize." (citing *Cardwell*, 680 F.2d at 78); *Bright*, 630 F.2d at 812 ("[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible."). Defendants persuasively argue that this category "does not describe how searching agents can distinguish between goods purchased with funds derived from the publishing of alleged illicit Backpage ads from items bought with money derived from [their] lawful publishing activities." (Lacey Mot. at 11; Larkin Mot. at 9-10.) Nothing suggests that Lacey's and Larkin's homes were filled solely with items obtained solely from illegal proceeds or to suggest that Backpage.com was being run out of their homes. Both individuals were successful and wealthy before 2010. Because the Government could have more specifically described how searching officers could distinguish which property fell into this vague category, the Court finds that it is insufficiently particular under the Fourth Amendment. *Cf. Spilotro*, 800 F.2d at 964

("We conclude that the warrants here do not describe the items to be seized with sufficient particularity[.]").

Defendants next argue that the second category is not particular enough because it does not describe, or even list, which companies are "related" to Backpage.com. (Lacey Mot. at 11; Larkin Mot. at 9.) The Government argues this issue is moot "because it does not appear from the returns that agents seized any loose documentation related to any 'other related companies.'" (Resp. at 12.) In reply, Defendants argue that whether or not anything was seized pursuant to the category is irrelevant at this stage. (Joint Reply at 6-7.) Notwithstanding what was seized as a result of the search, the Court finds this category impermissibly vague under the Fourth Amendment. The Government could have easily defined which companies were "related" to Backpage.com before applying for the warrants.

Defendants last argue that the third category is insufficiently particular because it "does not distinguish what is meant by 'property or proceeds' of money laundering." (Lacey Mot. at 11; Larkin Mot. at 9.) The Government claims this category is satisfactorily defined because it "only authorizes [seizing] property acquired after 2010, when Lacey's and Larkin's income was almost entirely based on their Backpage salaries and Backpage related proceeds," "Fryberger's affidavit described with specificity Lacey's and Larkin's three residences to be searched, including the fact that they were acquired after 2010," and the "place to be searched is 'permeated-with-fraud.'" (Resp. at 12.) In reply, Defendants argue that the category nevertheless permitted wholesale seizure of items, regardless of whether it was tied to Backpage.com. (Joint Reply at 7.) Defendants' arguments are persuasive, and the Court finds that this category also fails under Fourth Amendment's particularity requirement. *Cf. Cardwell*, 680 F.2d at 78.

In sum, the Court finds that the above three categories insufficiently identify which items should be searched for and seized. Nonetheless, this does not automatically mean "all evidence obtained from the execution of the warrant and derived from the search" should be suppressed. *See Hudson*, 547 U.S. at 591 ("Suppression of evidence . . . has

always been our last resort, not our first impulse."); *Sanchez-Llamas*, 548 U.S. at 347 ("[T]he exclusionary rule is not a remedy we apply lightly."); *Hudson*, 547 U.S. at 592 ("[E]xclusion may not be premised on the *mere fact* that a constitutional violation was a 'but-for' cause of obtaining evidence." (emphasis added)).

## B. Whether Suppression is Appropriate

The Ninth Circuit uses "three factors that determine whether the exclusionary rule should be applied in a particular case." *United States v. Sears*, 411 F.3d 1124, 1128 (9th Cir. 2005). Those factors are:

> (1) whether suppression would affect the group conduct that the exclusionary rule was designed to punish, i.e., police misconduct; (2) the source of the error in the particular case and whether any evidence suggested that the source, e.g., issuing magistrates, was inclined to ignore or subvert the Fourth Amendment; and (3) the basis for believing the exclusion of evidence will have a significant effect upon the source of the error.

*Id.* (quoting *United States v. Luk*, 859 F.2d 667, 676 (9th Cir. 1988)). Just because three categories of a warrant are impermissibly vague does not mean all evidence obtained from the warrant should be suppressed. *See Sears*, 411 F.3d at 1129; *see also United States v. Kow*, 58 F.3d 423, 428 (9th Cir. 1995) (same).

Here, there are ten other particularized categories as well as an electronic data category. (*See* Doc. 775-1 at 3.) These categories are easily severable and do not require suppressing everything obtained from the real property warrants. *See United States v. Gomez-Soto*, 723 F.2d 649, 654 (9th Cir. 1984) ("Only those articles seized pursuant to the invalid portions need be suppressed."). Defendants do not address the notion of severability in their motions, but instead only request to have all evidence suppressed. That request will be denied. However, evidence seized pursuant to the three impermissibly vague categories will be suppressed. *Cf. id.*

## C. Whether a *Franks* Hearing is Appropriate.

"Under *Franks*, a criminal defendant has the right to challenge the veracity of statements made in support of an application for a search warrant." *United States v. Perkins*, 850 F.3d 1109, 1116 (2017) (citing *Franks v. Delaware*, 438 U.S. 154, 155 (1978)). "To prevail on a *Franks* challenge, the defendant must establish two things by a preponderance of the evidence: first, that 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant[,]' and second, that the false or misleading statement or omission was material, *i.e.*, 'necessary to finding probable cause.'" *Perkins*, 850 F.3d at 1116 (quoting *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214-15 (9th Cir. 2005)).

Each motion presents identical reasons for why the Court should hold a *Franks* hearing on each warrant. (Lacey Mot. at 13-16; Larkin Mot. at 11-14; Joint Mot. at 13-16; Datto Mot. at 13-16.) They first contend *Franks* hearings are appropriate because the underlying affidavits omit a legal treatise on First Amendment law. Particularly, they argue that hearings are required because the affidavits do not acknowledge that two California courts rejected the theory that publishing classified ads for adult services violates state law prohibiting prostitution. As discussed in previous rulings, those cases are inapplicable to this case. They also argue that the affidavits "disingenuously claim that Defendants' mere handling of the ads establish probable cause." That is also a strained interpretation of the affidavits. The affidavits clearly establish that the Government is prosecuting Defendants for facilitating business enterprises involved in prostitution, not the "mere handling of the ads." (*See generally* Doc. 946.) Their next argument is that the respective affidavits "intentionally fail to disclose that numerous courts have rejected claims that adult advertisements are synonymous with prostitution or trafficking." This argument also selectively interprets the essence of the affidavits. Defendants' other arguments relating to heightened scienter requirements have already been rejected by this Court and will not be reanalyzed. *See United States v. Lacey*, 423 F. Supp. 3d 748, 761-764 (D. Ariz. 2019); (*see also* Doc. 946). In sum, none of the reasons offered requires a *Franks* hearing.

**IV.    CONCLUSION**

The magistrates correctly found that probable cause supported issuing the warrants discussed above. The breadth of each is also not impermissibly overbroad. While the real property warrants are unconstitutionally vague as they concern three categories of items, they are not otherwise deficient, and no other warrant has been shown to be insufficiently particular either. As a result, the Court will only suppress the evidence seized from Defendants Lacey's and Larkin's homes pursuant to these three unconstitutional categories. Defendants also have not established that a *Franks* hearing is appropriate for any of the above warrants.

Accordingly,

**IT IS ORDERED DENYING** Defendants' Motions to Suppress, (Docs. 778, 827);

**IT IS FURTHER ORDERED GRANTING IN PART** Defendant Michael Lacey's Motion to Suppress, (Doc. 775), and Defendant James Larkin's Motion to Suppress, (Doc. 786). The motions are granted only as they relate to the three insufficiently particular categories identified above. All evidence obtained from these unconstitutionally specific categories is suppressed. These motions are otherwise **DENIED**.

Dated this 11th day of May, 2020.

Honorable Susan M. Brnovich
United States District Judge