Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT | KATZMAN PC
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bienertkatzman.com
wbernstein@bienartkatzman.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice*)
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:18-cr-00422-PHX-SMB |
| Plaintiff, | |
| vs. | **DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE TO ADMIT EVIDENCE (DKT. 931)** |
| Michael Lacey, *et al.*, | |
| Defendants. | |
| | (Oral argument requested) |

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

---

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

# Table of Contents

I.     INTRODUCTION. ..................................................................................................1

II.    BACKGROUND. ...................................................................................................2

III.   THE GOVERNMENT FAILED TO MEET ITS BURDEN TO ESTABLISH THE
       ADMISSIBILITY OF ITS PROPOSED EXHIBITS, WHETHER AS NON-
       HEARSAY OR UNDER HEARSAY EXCEPTIONS. ......................................4

       A.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as
            Co-Conspirator Statements. ......................................................................4

       B.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as
            Statements of a Party's Agent. ..................................................................6

       C.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as
            Adoptive Admissions. ...............................................................................8

       D.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as
            Statements Not Offered for their Truth. ...................................................11

       E.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as
            Business Records. ....................................................................................12

       F.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as
            Admissions of Party-Opponents. ............................................................14

       G.   The Government Has Not Established That Its Proposed Exhibits Comply with
            Other Rules of Evidence. ........................................................................15

IV.    THE GOVERNMENT'S MOTION FAILS TO ADDRESS THE MYRIAD
       CONFRONTATION CLAUSE ISSUES RAISED BY ITS PROPOSED
       WHOLESALE ADMISSION OF EXHIBITS. ...............................................15

V.     DOCUMENTS PRODUCED TO THE GOVERNMENT BY FERRER OR
       BACKPAGE ARE NOT SELF-AUTHENTICATING AS TO DEFENDANTS. ....16

VI.    SPECIFIC OBJECTIONS AS TO PARTICULAR CATEGORIES OF
       DOCUMENTS. ...................................................................................................18

       A.   "Letter Correspondence." ........................................................................18

       B.   "Intra-Backpage" PowerPoint Slide Decks. ............................................20

       C.   "Performance Appraisals." .......................................................................21

       D.   "Consulting Firm Documents." ................................................................22

       E.   Bank Records. ..........................................................................................22

       F.   Purported "Meeting Agendas." .................................................................23

       G.   Purported "Google Analytics" Reports." ..................................................24

H.      Spreadsheet of Purported New Articles Discussing Backpage. ............................ 24

I.      Ads from Wayback Machine, Unchartered Inc., and Exhibit F (Dkt. 916-6)...... 25

J.      Irrelevant 2015 Video Recorded by SA Fichtner. ................................................. 28

VII.    DOCUMENTS PRODUCED BY COUNSEL FOR MICHAEL LACEY SHOULD
        NOT BE ADMITTED. ................................................................................................... 29

VII.    "SUMMARY" EXHIBITS CANNOT BE ADMITTED PRETRIAL ON THE BASIS
        OF THE GOVERNMENT'S DEFICIENT MOTION. ................................................... 29

VIII.   CONCLUSION. .............................................................................................................. 32

# Table of Authorities

**Cases**
**Page(s)**

*Amarel v. Connell*,
   102 F.3d 1494 (9th Cir. 1996)...............................................................28, 29

*Ashcroft v. Free Speech Coalition*,
   535 U.S. 234 (2002)......................................................................................19

*AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*,
   637 Fed. App'x 645 (2d Cir. 2016)................................................................16

*Automated Merch. Sys., Inc. v. Crane Co.*,
   No. 3:03-CV-88(L), 2012 WL 12892417 (N.D.W.V. Feb. 28, 2012) .............4

*Bd. of Trs. v. State Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989).................................................................................19, 21

*Bemis v. Edwards*,
   45 F.3d 1369 (9th Cir. 1995) ..........................................................................4

*Bogutz v. Arizona*,
   No. CV 03-454-TUC-RCC, 2008 WL 11440636 (D. Ariz. Oct. 27, 2008) .....7

*Crawford v. Washington*,
   541 U.S. 36 (2004).........................................................................6, 15, 17

*Doe v. Torrington Board of Education*,
   No. 3:15-cv-452 (MPS), 2019 WL 625696 (D. Conn. Feb. 14, 2019)......11, 12

*Haddad v. Lockheed Calif. Corp*,
   720 F.2d 1454 (9th Cir. 1983) ......................................................................11

*In re Oil Spill By The Oil Rig "Deepwater Horizon" in the Gulf Of Mexico, on April 20, 2010*
   87 Fed. R. Evid. Serv. 492, 2012 WL 85447 (E.D. La. Jan. 11, 2012) .........13

*John Paul Mitchell Systems v. Quality King Distributors*,
   106 F. Supp. 2d 462 (S.D.N.Y. 2000)............................................................16

*Khoja v. Orexigen Therapeutics*,
   899 F.3d 988 (9th Cir. 2018) .........................................................................26

*Lion Oil Trading & Transp., Inc. v. Statoil Marketing & Trading (US) Inc.*,
   Nos. 08 Civ. 11315(WHP)/09 Civ.2081(WHP), 2011 WL 855876 (S.D.N.Y. Feb. 28, 2011)..12

*Litton Systems, Inc. v. American Telephone & Telegraph Co.*,
   700 F.2d 785 (2d Cir. 1983) ..........................................................................14

*M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc'y*,
   681 F.2d 930 (4th Cir.1982) ..........................................................................25

*Martins v. 3PD, Inc.*,
   2013 WL 1320454 (D. Mass. Mar. 28, 2013)................................................26

*Matter of Extradition of Santos*,
   228 F. Supp. 3d 1034 (C.D. Cal. 2017)............................................................4

*Merrick v. Farmers Ins. Group*,
   892 F.2d 1434 (9th Cir.1990) ..........................................................................7

*Nassar v. Nasser*,
   2017 WL 26859 (M.D. Fla. Jan. 3, 2017) ......................................................26

*Packingham v. North Carolina*,

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

137 S. Ct. 1730 (2017)......................................................................................... 19

*Park W. Radiology v. CareCore Nat. LLC*,
675 F. Supp. 2d 314 (S.D.N.Y. 2009)................................................................ 13

*People v. Ferrer*,
2016 WL 7237305 (Sup. Ct. Sacramento Cty. Dec. 9, 2016).......................... 29

*People v. Ferrer*,
No. 16FE024013 (Sup. Ct. Sacramento Cty. Aug. 23, 2017) .......................... 29

*Sabel v. Mead Johnson & Co.*,
737 F. Supp. 135 (D. Mass. 1990) ..................................................................... 7

*Sea-Land Serv., Inc. v. Lozen Int'l, LLC*,
285 F.3d 808 (9th Cir. 2002) .............................................................................. 6

*Thomas v. Stone Container Corp.*,
922 F. Supp. 950 (S.D.N.Y. 1996) ................................................................... 14

*Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*,
2009 WL 3260014 (N.D. Ill. Oct. 9, 2009) ...................................................... 25

*United States. v. Marguet-Pillado*,
560 F.3d 1078 (9th Cir. 2009) .......................................................................... 13

*United States v. Aiyaswamy*,
2017 WL 1365228 (N.D. Cal. Apr. 14, 2017) .................................................. 23

*United States v. Bonds*,
No. CR 07-00732 SI, 2009 WL 416445 (N.D. Cal. Feb. 19, 2009) ................... 7

*United States v. Bustamante*,
687 F.3d 1190 (9th Cir. 2012) .......................................................................... 15

*United States v. Castaneda*,
16 F.3d 1504 (9th Cir. 1994) .............................................................................. 5

*United States v. Chang*,
207 F.3d 1169 (9th Cir. 2000) ......................................................................... 4, 6

*United States v. Cone*,
714 F.3d 197 (4th Cir. 2013) ............................................................................ 13

*United States v. Curtin*,
489 F.3d 935 (9th Cir. 2007) .......................................................................12, 14

*United States v. Daneshvar*,
925 F.3d 766 (6th Cir. 2019) ............................................................................ 13

*United States v. Eubanks*,
591 F.2d 513 (9th Cir. 1979) .............................................................................. 5

*United States v. Liera*,
585 F.3d 1237 (9th Cir. 2009) ............................................................................ 5

*United States v. Miller*,
771 F.2d 1219 (9th Cir. 1985) .......................................................................... 29

*United States v. Moore*,
522 F.2d 1068 (9th Cir. 1975) ........................................................................ 8, 9

*United States v. Playboy Entm't Grp., Inc.*,
529 U.S. 803 (2000) .......................................................................................... 19

*United States v. Rosen*,
94 F. App'x 567 (9th Cir. 2004)......................................................................... 6

*United States v. Silverman,*
 861 F.2d 571 (9th Cir. 1988) ........................................................................ 5
*United States v. Soulard,*
 730 F.2d 1292 (9th Cir. 1984) .............................................................. 22, 29
*United States v. Tellier,*
 83 F.3d 578 (2d Cir. 1996) ........................................................................... 5
*United States v. Villa,*
 19 Fed. Appx. 696 (9th Cir. 2001) ............................................................... 8
*United States v. Waters,*
 627 F.3d 345 (9th Cir. 2010) ...................................................................... 22
*United States v. Wood,*
 943 F.2d 1048 (9th Cir. 1991) .................................................................... 28
*United States ex rel. Poong Lim/Pert v. Dick Pac./Ghemm,*
 2006 WL 568321 (D. Alaska Mar. 7, 2006) .............................................. 30

**Rules**

Fed. R. Evid. 106 ............................................................................. 15, 25, 27
Fed. R. Evid. 401 ..................................................................... 15, 19, 22, 29
Fed. R. Evid. 403 ................................................................................ passim
Fed. R. Evid. 601 & 602 ................................................................................ 15
Fed. R. Evid. 801(d)(2) ............................................................................ 7, 8
Fed. R. Evid. 801(d)(2)(A) ........................................................................ 14
Fed. R. Evid. 801(d)(2)(B) .......................................................................... 8
Fed. R. Evid. 801(d)(2)(D) ...................................................................... 6, 7
Fed. R. Evid. 801(d)(2)(E) ...................................................................... 4, 5
Fed. R. Evid. 802 ........................................................................................ 15
Fed. R. Evid. 803(1) and (2) ........................................................................ 4
Fed. R. Evid. 803(3) ................................................................................... 11
Fed. R. Evid. Rule 803(6) ...................................................................... passim
Fed. R. Evid. 803(6)(C) .............................................................................. 13
Fed. R. Evid. 803(6)(D) .................................................................. 23, 24, 25
Fed. R. Evid. 901 ........................................................................... 15, 17, 18
Fed. R. Evid. 901(b) ................................................................................... 17

**Other Authorities**

Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 602.02 (2d ed. 2004) ........14

Instruction 4.9, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit Dec. 2019 ................................................................................................................6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TABLE OF CONTENTS AND TABLE OF AUTHORITIES

## I.   INTRODUCTION.

Through its Motion *In Limine* to Admit Evidence ("Motion"), the government seeks a pretrial order that would permit it to have nearly 452 exhibits (with 423 separate attachments) (roughly 85% of all its 532 proposed exhibits)[1] admitted "through a government agent or other summary witness," Dkt. 931 at 17, without foundational testimony from any witnesses with actual knowledge about the exhibits.  The government essentially asks to be excused from having to call witnesses in its own case-in-chief.  Allowing the government to short-cut basic rules of evidence, based upon strained readings of the rules of evidence, without witnesses subject to cross-examination, would violate the Defendants' due process rights under the Fifth and Sixth Amendment.

Moreover, the government's Motion discussed just 22[2] of the 875 exhibits and attachments for which it seeks a ruling of admissibility (and, even as to the 22, did not provide the foundational information and evidence required for the exhibits to be admitted under exceptions to the hearsay rule or as non-hearsay).[3]  With the exception of certifications of purported records custodians addressing records of financial institution and certain Backpage ads and an affidavit addressing a video, the government's Motion is unsupported by *evidence*.  Instead, the government relies on unsupported allegations (and, for an unspecified handful of proposed exhibits, proposes to present foundational testimony at trial).

The Court should reject the government's Motion, first, because of its the failure to set out, with specificity, why each proposed exhibit (or similarly situated group of exhibits) meets all the requirements of each rule under which the government seeks to admit the exhibit(s).  Second, even

---

[1]     The government has identified a total of 452 potential exhibits,  Exhibit A, but a large number of those exhibits are comprised of 423 additional documents (such as email chains with attachments) and many of those documents will have to be assessed separately.  Thus, the total number of documents at issue (875) are far greater than the government's motion makes it appear.

[2]     Exhibits 176, 177, 58, 7, 798, 52, 140, 116, 119, 8, 9, 14, 21, 23, 30, 101, 311, 312, 313, 314, 260, 1.  *See* Dkt. 931 at 11, 12, 16, 17, 18, 20, 24.

[3]     The government also appears to have asked this Court to make a blanket pretrial ruling that five "categories" of other documents (as of yet unidentified) will be admissible:  (1) emails, (2) "intra-Backpage documents," (3) business records, (4) documents produced by counsel for Michael Lacey, and (5) summary exhibits.  Dkt. 931 at 1-2.

---

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

if the government had explained why it contends each proposed exhibit meets all the requirements for admission, the government failed to meet its burden to demonstrate, by a preponderance of the evidence, that the factual predicates exist for each document under each rule. The government's allegations and opinions are not evidence. Third, the government had an opportunity to rectify the deficiencies in its motion during the meet and confer process, but refused to provide the defense with the specifics of its theories for admitting its proposed exhibits or to provide the facts purportedly supporting them. Finally, a ruling allowing the government to present the entirety of the core of its case through case agents and documents, without competent foundational witnesses, is fundamentally at odds with the Confrontation Clause of the Constitution.

Defendants have not attempted to lodge objections to each and every exhibit the government seeks to move into evidence, as such an exercise, together with the more general opposition to the government's Motion, could run into several hundred pages. The government's motion is without precedent, seeking to move in such a large number of exhibits prior to trial and without analysis of each individual exhibit. Accordingly, Defendants have focused their response on the most salient points, and submit that the Court should address the government's proposed exhibits in the normal course – when presented at trial. If the Court prefers to proceed with an exhibit-by-exhibit analysis before trial, Defendants will lodge an exhibit-by-exhibit response at the Court's direction, but suggest, in that case, that the Court first require the government a) to set out, exhibit-by-exhibit, all the information needed for Defendants and the Court to assess its claim that each exhibit is admissible and b) to establish, with admissible evidence, the factual predicates required for each exhibit under each rule supporting its admission. Defendants could then respond, exhibit-by-exhibit, addressing the actual bases the government asserts to support admission of the documents, rather than shooting in the dark at arguments that have not been made based on facts that have not been established.

## II.   BACKGROUND.

Because of the deficiencies in the government's Motion, and in an effort to obtain the information necessary to analyze the government's Motion and try to narrow the issues before the Court, Defendants asked the government to meet and confer. The government initially refused.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

After the court ordered the parties to meet and confer (Dkt. 937), Defendants and the government exchanged emails and spoke by phone, *see* Dkt. 977, but, for the most part, the government refused to provide additional information in support of its motion.  For example, Defendants asked the government to identify the witnesses through whom it intended to admit each exhibit.  *See* Thomas Declaration ("Thomas Decl.") at ¶ 8.  The government refused.  *Id.*

For each exhibit the government proposed to admit as non-hearsay premised on the action or inaction of a Defendant, such as an exhibit proposed to be admitted as the admission of an agent or as an adoptive admission, Defendants asked the government to identify each Defendant who was a principal for each purported agent and which Defendant adopted each purported admission.  *Id.* at ¶ 8.  The government again refused.  *Id.*  Defendants also asked the government to identify the Defendants against whom it believes each exhibit can be admitted and the purpose for which the exhibit can be admitted.  *See, e.g., id.*; *see also* Dkt. 977-1 at 3.  The government responded that it sought to introduce every exhibit against each Defendant and that all the exhibits were "relevant."  Thomas Decl. at ¶ 8.

Defendants also asked the government to identify all members of the purported conspiracy, so Defendants could assess the government's contention that 150 exhibits should be admissible as co-conspirator statements.  *Id.* at ¶ 9.  The government answered, but said the members of the conspiracy included all Defendants, cooperators Ferrer and Hyer, David Elms, William Mersey, *and "every prostitute or pimp who ever emailed Backpage"* between 2004 and 2018.[4]  *Id.*  Finally, Defendants asked the government to provide the documents that its proposed summary exhibits purport to summarize.  Thomas Decl. at ¶ 10.  The government refused to provide information from tax returns, and told Defendants to take it up with the Court.  *Id.*

---

[4]     The government effectively admitted that it *is* asserting a "boundless conspiracy," just as Defendants alleged in their motion to dismiss the indictment for failure to allege the necessary elements of the Travel Act (Dkt. 746) and as this Court rejected in its order (Dkt. 946).  *See* Dkt. 946 at 13 ("Defendants' suggestion that the SI improperly indicts a 'boundless conspiracy to facilitate prostitution in general,' however, mischaracterizes the charges against them.  Such a claim is simply untrue.  They were not indicted for facilitating the amorphous notion of 'prostitution.'  They were indicted for facilitating (via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of prostitution." (internal citation omitted)).

### III. THE GOVERNMENT FAILED TO MEET ITS BURDEN TO ESTABLISH THE ADMISSIBILITY OF ITS PROPOSED EXHIBITS, WHETHER AS NON-HEARSAY OR UNDER HEARSAY EXCEPTIONS.

The government, as the proponent of the admission of its exhibits, bears the burden of establishing the admissibility of those exhibits, both by explaining why they are admissible and also by providing the factual foundation required under the Rules. *Automated Merch. Sys., Inc. v. Crane Co.*, 2012 WL 12892417, at *2 (N.D.W.V. Feb. 28, 2012) (denying motion *in limine* to admit secondary evidence because the "proponent of the secondary evidence has the burden of proving loss or destruction, which are preliminary facts for the court to determine under Rule 104(a)" and the proponent failed to "show by a preponderance of the evidence that all originals have been lost or destroyed"). *Accord United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir. 2000) ("Rule 801(d)(2)(D) requires the proffering party to lay a foundation to show that an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment."); *Bemis v. Edwards*, 45 F.3d 1369, 1373 (9th Cir. 1995) ("As the proponent of the evidence [under Fed. R. Evid. 803(1) and (2)], Bemis had the burden of establishing personal perception by a preponderance of the evidence."); *Matter of Extradition of Santos*, 228 F. Supp. 3d 1034, 1037 (C.D. Cal. 2017) ("The proponent of evidence generally bears the burden of establishing its admissibility.").

The government's Motion discussed only 22 specific exhibits and did not provide the information required to establish admissibility even as to the 22 exhibits. Moreover, with the exception of certifications of purported records custodians addressing records of financial institutions and certain Backpage ads and an affidavit addressing a video, the government failed to present *any* evidence to establish that each proposed exhibit meets the requirements of the rule under which the government seeks to have it admitted.

#### A. The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as Co-Conspirator Statements.

The government seeks to admit 150 exhibits and attachments as non-hearsay co-conspirator statements under Fed. R. Evid. 801(d)(2)(E), but presented no evidence to establish the factual predicates for doing so. "[A]n accused's knowledge of and participation in an alleged conspiracy with the putative co-conspirator are *preliminary* facts that must be established, by a preponderance

---

of the evidence, *before* the co-conspirator's out-of-court statements can be introduced into evidence."[5]  *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994) (emphasis added).  To establish that the declarant knowingly participated in a conspiracy, "the government cannot rely solely on the alleged co-conspirator statements themselves." *Id.* (*citing United States v. Silverman*, 861 F.2d 571, 578 (9th Cir. 1988)); *see also United States v. Tellier*, 83 F.3d 578 (2d Cir. 1996) (finding hearsay statements are "presumptively unreliable" and that "for such statements to be admissible, there must be some independent corroborating evidence of defendant's participation in the conspiracy").  To prove the connection between the accused and the alleged conspiracy, the government must produce "some independent evidence which, viewed in light of the coconspirator statements, establishes the requisite connection between the accused and the conspiracy." *United States v. Castaenda*, 16 F.3d 1504, 1507 (9th Cir. 1994).  The government must prove not only that each Defendant was a member of the conspiracy, but also that each declarant was.  *United States v. Liera*, 585 F.3d 1237, 1245 (9th Cir. 2009) (vacating conviction due to trial court's error in admitting hearsay statements without the government first proving that declarant was a member of the conspiracy).  The government also must prove that any hearsay statements it seeks to introduce were made "in furtherance" of that conspiracy.  Fed. R. Evid. 801(d)(2)(E); *United States v. Eubanks*, 591 F.2d 513, 520 (9th Cir. 1979) ("Not all statements made by co-conspirators can be considered to have been made in furtherance of the conspiracy.").

The government claims *every* email sent by *every* Defendant and by *every* purported co-conspirator (which the government believes includes "every prostitute and pimp" who emailed Backpage between 2004 and 2018, *see* Thomas Decl. at ¶ 9) is admissible as non-hearsay because a) the government identified them as co-conspirators and b) the government claims every email was made during the course of and in furtherance of the conspiracy—but the government offers no evidence in support of these sweeping claims.  The government points only to Backpage's plea to a charge of money laundering conspiracy (and its allegations in the indictment).  Whatever Backpage's plea may establish with respect to Backpage, it is not evidence that each Defendant

---

[5]    Defendants addressed the law relating to Rule 801(d)(2)(E) at length in their response to the government's motion to admit evidence as non-hearsay statements. *See, e.g.*, Dkt. 964 at 11-16.  Defendants have not repeated the entirety of that argument, but incorporate it by reference.

knowingly conspired with Backpage, whether with respect to money laundering or any other crime. Moreover, Backpage's plea does nothing to establish whether any statements in the government's proposed exhibits were made in furtherance of a conspiracy.  If and when the government seeks to present a factual basis to support its conspiracy allegations, it presumably will seek to do so through the testimony of Carl Ferrer and/or Dan Hyer.  Their statements will deserve careful scrutiny, with Defendants being entitled to cross-examine them to test the reliability of their testimony.  *Crawford v. Washington,* 541 U.S. 36, 68 (2004) (reliability of witness testimony should be assessed "in the crucible of cross-examination"); *United States v. Rosen*, 94 F. App'x 567, 571 (9th Cir. 2004) (Where "a cooperating witness has been rewarded by the government for his testimony, " the "cooperating witness is . . . [b]y definition . . . cut from untrustworthy cloth[,] and must be managed and carefully watched by the government and the courts to prevent them from falsely accusing the innocent, from manufacturing evidence against those under suspicion of crime, and from lying under oath in the courtroom . . .") *vacated,* 543 U.S. 1106, *reinstated*, 137 Fed. Appx. 67; Instruction 4.9, Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit, Dec. 2019 (testimony of witness who receives "favored treatment" from the government should be examined "with greater caution than that of other witnesses").

## B.  The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as Statements of a Party's Agent.

The government seeks to admit 646 exhibits and attachments as non-hearsay statements of a party's agent under Fed. R. Evid. 801(d)(2)(D), but presented no evidence to establish the factual predicates for doing so.  Before the Court may admit statements under Rule 801(d)(2)(D), the government first must establish that: (1) the out-of-court declarant was an agent of a Defendant; (2) the out-of-court statements were made by that Defendant's agent during the existence of the agency; and (3) the out-of-court statements were within the scope of the agency.  *See Sea-Land Serv., Inc. v. Lozen Int'l, LLC*, 285 F.3d 808, 821 (9th Cir. 2002) (holding that a party seeking to admit a statement under Rule 801(d)(2)(D) must lay an adequate foundation to show that the statement "relates to a matter within the scope of the agent's employment").[6]  The contents of the out-of-

---

[6]     Defendants addressed the law relating to Rule 801(d)(2)(C) and (D) at length in their response to the government's motion to admit evidence as non-hearsay statements.  Dkt. 964 at

court statement alone cannot establish the existence or scope of the relationship necessary to apply Rule 801(d)(2)(D).  Fed. R. Evid. 801(d)(2).  As the proffering party, the government bears the burden to demonstrate the foundational requirement that "an otherwise excludable statement relates to a matter within the scope of the agent's [agency or] employment."  *United States v. Chang*, 207 F.3d 1169, 1176 (9th Cir. 2000) (bracketed text in original).  Moreover, even if the government established that a statement was admissible under an agency theory against one Defendant, the statement would remain inadmissible hearsay as to all other Defendants.  *See Bogutz v. Arizona*, 2008 WL 11440636, at *1 (D. Ariz. Oct. 27, 2008) ("It is well established that under Rule 801(d)(2), 'a party's statement is admissible as non-hearsay only if it is offered against that party.'").

The government presented no evidence in support of its motion to meet the foundational requirements of Rule 801(d)(2)(D).  The government claimed that various persons or entities were agents of Backpage, but, even as to Backpage, the government presented no *evidence* that those parties were agents of Backpage within the meaning of Rule 801(d)(2)(D) nor that any statements it seeks to admit were within the scope of any agency.  The mere fact a party engages an independent contractor does not make the contractor an agent for purposes of Rule 801(d)(2)(D).  *United States v. Bonds*, No. CR 07-00732 SI, 2009 WL 416445, at *5 (N.D. Cal. Feb. 19, 2009) ("In the Ninth Circuit, independent contractors do not qualify as agents for the purposes of Rule 801(d)(2)(D)." (citing *Merrick v. Farmers Ins. Group*, 892 F.2d 1434, 1440 (9th Cir.1990)).  Fed. R. Evid. 801(d)(2)(D) is premised on the theory that an agent authorized to act on a principal's behalf is impliedly authorized to speak on the same matters.  *Sabel v. Mead Johnson & Co.*, 737 F. Supp. 135, 139 (D. Mass. 1990).  Thus, unless a consultant has "the power to legally bind defendant through their statements and actions" and has "enter[ed] into a fiduciary relationship with defendant, the factors which support attribution of an agent's statements to her principal are completely missing."  *Id.*

The government presented no evidence that *Backpage* had an agency relationship with Monita Mohan, DesertNet, representatives of any public relations firms, or any of its employees that would support attribution of any of their statements to Backpage.  More importantly, *Defendants are not Backpage*.  And the government did not even *argue*, much less present *evidence*, that

---

4-11.  Defendants have not repeated the entirety of that argument, but incorporate it by reference.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

any *Defendants* had an agency relationship of the type contemplated by Rule 801(d)(2) with the authors of any exhibits it seeks to admit as admissions of agents, or that any pertinent statements were made during the existence of such an agency and within the scope of the agency.  The government has completely failed to meet its burden of demonstrating that any statements of third parties can be attributed to Defendants as non-hearsay under Rule 801(d)(2).

### C.   The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as Adoptive Admissions.

The government seeks to admit 644 exhibits and attachments as non-hearsay adoptive admissions under Fed. R. Evid. 801(d)(2)(B), but presented no evidence to establish the factual predicates for doing so.  Before the Court can admit a statement as an adoptive admission, the government first must present sufficient foundational facts for the Court to determine that:  a) an accusatory statement was made in the defendant's presence and hearing, b) the defendant understood the accusatory statement and had an opportunity to respond to it, c) the circumstances were such that "an innocent defendant would normally be induced to respond" to the accusatory statement, and d) the defendant did not respond, but acceded to the statement.  *United States v. Moore*, 522 F.2d 1068, 1076 (9th Cir. 1975) ("The general rule concerning admissions by silence or acquiescence is well established. When an accusatory statement is made in the defendant's presence and hearing, and he understands and has an opportunity to deny it, the statement and his failure to deny are admissible against him.").  *Accord U.S. v. Villa*, 19 Fed. Appx. 696, 697 (9th Cir. 2001) (reversing conviction because, even though evidence was sufficient to support a finding that defendant was aware of his father's accusatory statement, it did not establish "whether under the circumstances an innocent defendant would normally be induced to respond").  In *Moore*, the government presented evidence that accusatory statements were made to a group, that Moore "was in the group that was 'around'" when the accusatory statements were made, and that Moore did not deny the accusatory statements.  522 F.2d at 1076.  The Ninth Circuit found that foundational testimony "wholly insufficient" to admit the statements as adoptive admissions, as there was "no testimony whatsoever concerning such matters as how close Floyd Moore was to Rezabek, whether there was noise at the time, and whether Moore appeared to be listening."  *Id.*

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

Here, the government claims that 644 exhibits and attachments can be admitted as adoptive admissions, but presented no foundational evidence whatsoever to support the admission of any statements in the documents as adoptive admissions. The government identified no accusatory statements. The government presented no evidence that any Defendants heard (or read) and understood any accusatory statements. The government presented no evidence that any Defendant failed to respond to any accusatory statements (much less that, even if they did fail to respond to some statement, the circumstances were such that a response was compelled and the lack of a response was an accession). In its Motion, the government discussed three exhibits it claimed were adoptive admissions, but it abjectly failed to make a plausible claim that any of those documents could qualify as an adoptive admission (much less support a plausible claim with evidence).

The government offered Exhibit 176, which it presented as a blank email from Ferrer to Defendants Larkin, Brunst, and Spear transmitting a PowerPoint slide deck with 22 slides. Dkt. 931 at 11. The government did not establish that any Defendant saw the email or reviewed the PowerPoint slide deck. The government quoted some phrases from slides in the PowerPoint slide deck, but none of those phrases was accusatory. Moreover, even crediting the government's inaccurate characterization of the slides, it did not explain why those phrases would have compelled an email in response. The government said that Larkin, Brunst, and Spear never emailed back to disagree with Ferrer's ideas, but presented no evidence that a) the PowerPoint slide deck represented Ferrer's ideas or b) Larkin, Brunst, or Spear never sent an email in response. Moreover, the government did not allege, or present any evidence, that Larkin, Brunst, or Spear never rejected the statements in some other manner at some other time. In short, the government failed at establishing *any* elements of an adoptive admission.

The government claimed that Exhibit 177 was a "textbook example" of an adoptive admission, *id.*, but that hardly is the case. Exhibit 177 appears to be an initial email among unknown recipients and a seeming forward of that initial email string to five email addresses, prompting a response from one of the five. The government did not establish that the other four recipients received or read the email. The emails contained no accusatory statements. The government did not explain why the emails would have compelled a response. Nonetheless, the

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

proposed exhibit shows that one recipient, Brunst, did respond, questioned what was proposed in the underlying email, and said "we will discuss when I get back next week"—hardly an accession to the statements in the underlying email.  Moreover, in light of that response, no plausible case can be made that any other recipient was compelled to respond.  The government suggests that Spear was somehow obligated to respond, and never emailed back, but the government presented no evidence to support that allegation, nor did it establish that the discussions called for by Brunst never took place.

Finally, the government pointed to its proposed Exhibit 58, *id.* at 12, which it claimed was an email from Defendant Padilla to a large group of Backpage employees, including Defendant Vaught (but no other Defendants).  The government characterized the email as providing instructions on how to moderate ads.  More specifically, the text of the email appears to have informed Backpage moderators that an attached a 38-page pdf file provided information on the sort of images that should result in the deletion of an ad versus the deletion of an image.  The email said the slide deck was "a guideline" and that moderators would "not get into trouble for being too clean right now."  The email also attached a list of terms that violated guidelines and instructed the moderators to look for "the misspellings that the filters and bans are missing" (*i.e.* to look for intentional misspelling of words that violated guidelines, so as to identify all ads that violated the site's terms and conditions).  The government did not establish that Defendant Vaught (or any of the other Defendants) received or saw the email or reviewed the PowerPoint slide deck or list of terms.  Nothing in the email or its attachments was accusatory nor does the government explain why Vaught would have been compelled to respond to the email.  Moreover, the government did not allege, or present any evidence, that Vaught did not question the email in some other manner at some other time.  Once again, the government failed at establishing *any* elements of an adoptive admission.

The government appears to contend that every time someone receives an email and does not respond in disagreement, the email becomes an adoptive admission of the recipient—but that simply is not the law.  Because the government failed to establish *any* of the foundational requirements for the admission of any out-of-court statements as adoptive admissions, the Court

should reject as inadmissible hearsay all the exhibits the government proposes to admit as adoptive admissions.

### D.    The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as Statements Not Offered for their Truth.

The government argues that 70 exhibits and attachments are not hearsay as it will not offer them for the truth of the matters asserted.  The government's Motion did not discuss any specific exhibits, but generally identified the exhibits as documents in which third parties expressed their opinions about the volume of prostitution and sex trafficking related to ads on Backpage, emails relating to customers having credit card charges declined due to the opinions of third parties that ads on Backpage related to criminal activities, and emails relating to customers complaining about Backpage blocking their ads (in whole or in part).  The government claims these documents can be admitted to show notice, knowledge, state of mind, intent, etc. under Fed. R. Evid. 803(3), but makes no attempt to explain how the documents could be relevant if the statements in the documents are not true.  This is not a case where notice of complaints is relevant regardless of whether the complaints are true.  *Contra Haddad v. Lockheed Calif. Corp*, 720 F.2d 1454, 1456 (9th Cir. 1983) ("[T]his testimony was not . . . offered to prove the truth of the complaints.  Instead, this testimony was offered to show that Lockheed management had received complaints regarding Haddad.  Such testimony was relevant in demonstrating Lockheed's non-discriminatory intent in its employment practices.").  To the contrary, unless the claims in the proposed exhibits *are* true, the exhibits are irrelevant (indeed, even if the claims are true, they also are irrelevant—but that is an issue for another day).

Moreover, even if the government had presented a basis on which the Court could conclude that some of the proposed exhibits could be admitted as non-hearsay, the Court nonetheless should exclude the proposed exhibits because their probative value is low and the risk of unfair prejudice is extreme.  *Doe v. Torrington Board of Education*, 2019 WL 625696 (D. Conn. Feb. 14, 2019).  In *Doe*, the plaintiff brought claims against a school district alleging he was bullied and sexually assaulted while a student.  He sought to introduce investigative reports of the Connecticut Department of Children and Families (which investigated allegations of abuse at the school) arguing, among other

things, that the reports were not hearsay because he would not offer them for their truth, but to show the defendants were on notice of bullying, hazing, and assaults.  The court granted a defense motion to exclude the exhibits under Fed. R. Evid. 403, finding they created an unfair risk of prejudice, noting that the reports:  a) contained multiple levels of hearsay and were unreliable; b) suggested that conduct described in the reports was criminal; c) contained conclusions of law reserved for the court; and d) contained inadmissible opinion testimony by a lay witness.  *Id.* at *2. The proposed exhibits the government seeks to admit as non-hearsay here suffer from *all* of these flaws and should be excluded even if they are not hearsay and are relevant.  The analysis under Fed. R. Evid. 403 must be conducted on a document by document basis.  *See, e.g.*, *United States v. Curtin*, 489 F.3d 935, 958 (9th Cir. 2007) ("[W]e hold as a matter of law that a court does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate *all* that it must weigh.") (emphasis in original).

### E.    The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as Business Records.

The government seeks to admit 21 exhibits and attachments under Fed. R. Evid. Rule 803(6) as records of a regularly conducted activity (or business records).  To establish that a proposed exhibit would be admissible under the business records exception to the hearsay rule, the government was required to demonstrate, through the testimony or certification of a qualified witness, that each "record of an act, event, condition, opinion, or diagnosis" 1) "was made at or near the time by—or from information transmitted by—someone with knowledge;" 2) "was kept in the course of a regularly conducted activity of a business," and 3) "making the record was a regular practice of that activity." Fed. R. Evid. 803(6).  Not every record kept by a business qualifies as a business record for purposes of the hearsay exception; rather only those records that "are considered trustworthy because they are the product of 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation.'" *Lion Oil Trading & Transp., Inc. v. Statoil Marketing & Trading (US) Inc.*, 2011 WL 855876, *6 (S.D.N.Y. Feb. 28, 2011) (holding that the PowerPoint slides, letters, and memoranda at issue were "unique

1   responses to unusual or isolated events" and the proponent had failed to show they were business

2   records within the scope of Fed. R. Evid. 803(6)).

3       Because the business record exception only applies to those records that are considered

4   trustworthy because of systematic checking or the like, the Sixth Circuit recently rejected the

5   argument that all email qualified as business records under Fed. R. Evid. 803(6):

> An email is not a business record for purposes of the relevant hearsay exception
> simply because it was sent between two employees in a company or because
> employees regularly conduct business through emails; such evidence alone is
> insufficient to show that the email is a record, made as 'a regular practice' of the
> company, Fed. R. Evid. 803(6)(C), and that 'the record was kept in the course of a
> regularly conducted activity of a business,' *id.* at 803(6)(B). '[I]t would be insufficient
> to survive a hearsay challenge simply to say that since a business keeps and receives
> e-mails, then *ergo* all those e-mails are business records falling with the ambit of Rule
> 803(6)(B).' *United States v. Cone*, 714 F.3d 197, 220 (4th Cir. 2013). If that were the
> case, then every single email sent within any company would fall within the
> exception. This result would obviate the entire purpose of the business records
> exception, which is designed for a limited category of records—namely those that
> are regularly produced as a part of a company's business activities.

14  *United States v. Daneshvar*, 925 F.3d 766, 777 (6th Cir. 2019). *Accord In re Oil Spill by the Oil Rig*

15  *"Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 87 Fed. R. Evid. Serv. 492, 2012 WL

16  85447, *3 (E.D. La. Jan. 11, 2012) ("[c]learly, there is no across-the-board rule that all emails are

17  admissible as business records;" rather "a custodian or qualified witness must attest that these

18  conditions [under Rule 803(6)] have been fulfilled—which certainly requires an email-by-email

19  inquiry").[7]   *See also Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314, 331 (S.D.N.Y.

20  2009) ("The Court holds that the ERMI Business Plan Document is hearsay and not admissible

21  under the business records exception to the hearsay rule because it is a unique document not kept

22  in the regular course of business.").

---

[7]   Moreover, even if a document such as an email is admissible under a hearsay exception as
a business record, the admission of the document under the business record exception does not
allow the admission of any "double hearsay" or "hearsay within hearsay" in the document, unless
the included hearsay satisfies another exception. *In re Oil Spill*, 2012 WL 85447 at *3. The same is
true for hearsay admitted under other exceptions as well. *United States. v. Marguet-Pillado*, 560 F.3d
1078, 1086 (9th Cir. 2009) (reversing conviction where the government had evidence admitted
under a hearsay exception, but failed to demonstrate an exception for each level of hearsay within
the document). The government's proposed exhibits are replete with multiple levels of hearsay—
an issue the government's motion ignores.

Except for certifications from records custodians for certain financial institutions, three certifications from purported records custodians relating to purported Backpage ads, and an affidavit in support of a video, the government made no effort to establish that any exhibits it seeks to admit under the business records exception satisfy the requirements of the exception and it presented no evidence of the sort.   As discussed later in this opposition, even as to the three certifications relating to ads, they are deficient, the proposed exhibits relating to them are objectionable, and the Court should not admit them notwithstanding the certifications.

### F.  The Government Has Not Met Its Burden to Admit Its Proposed Exhibits as Admissions of Party-Opponents.

The government seeks to admit 73 exhibits and attachments as non-hearsay admissions of party opponents under Fed. R. Evid. 801(d)(2)(A), which provides that statements "offered against an opposing party and" "made by the party in an individual or representative capacity" are not hearsay.   Although the government identified dozens of exhibits that it seeks to admit as admissions, it failed to identify any statements in those documents that are admissions and which Defendant or Defendants made each purported admission.   The government also has failed to state how any of the purported admissions relate to any charged offense.   Moreover, the government presented no evidence to establish that the out-of-court declarants whose purported admissions the government seeks to admit were competent to make the purported admissions. *Thomas v. Stone Container Corp.*, 922 F. Supp. 950, 957 (S.D.N.Y. 1996) ("[T]he proponent of an admission by a party opponent must establish the declarant's competence; office or plant gossip does not become admissible simply because it is put into the mouth of someone whose statements are not subject to hearsay objection.") (*citing Litton Systems, Inc. v. American Telephone & Telegraph Co.*, 700 F.2d 785, 816-17 (2d Cir. 1983)), cert. denied, 464 U.S. 1073 (1984).  *See also* Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, § 602.02 (2d ed. 2004) ("A witness may testify only about matters on which he or she has first-hand knowledge.   The witness's testimony must be based on events perceived by the witness through one of the five senses.").

### G.     The Government Has Not Established That Its Proposed Exhibits Comply with Other Rules of Evidence.

The Court should reject the government's invitation to made sweeping determinations of admissibility using the government's broad categorizations of evidence, without specifically evaluating each individual exhibit under the Rules of Evidence.   *Curtin*, 489 F.3d at 958.  Even if the government had established that certain of its proposed exhibits could be admitted under Rules 801 or 803, admissible exhibits must also comport with the other Rules of Evidence.  For example, an admissible exhibit must be relevant (Fed. R. Evid. 401) and substantially more probative than prejudicial, confusing, misleading, wasteful, or cumulative (Fed. R. Evid. 403).  An admissible exhibit must be authentic (Fed. R. Evid. 901), complete (Fed. R. Evid. 106), and cannot contain hearsay (Fed. R. Evid. 802) (unless subject to an exception).  The witness through whom an exhibit is admitted must lay the proper foundation and be competent to testify to the exhibit (Fed. R. Evid. 601 & 602).

The government made no effort to demonstrate that its proposed exhibits satisfy these other rules—and a great deal of certainly them do not.  Indeed, even if the government could lay an appropriate foundation for its proposed exhibits under Rules 801 or 803, the Court nonetheless will be required to exclude many of them due to problems such as hearsay on hearsay, undue prejudice with little or no probative value, improper lay opinions, and improper invasions on the Court's right to instruct the jury on the law.

### IV.     THE GOVERNMENT'S MOTION FAILS TO ADDRESS THE MYRIAD CONFRONTATION CLAUSE ISSUES RAISED BY ITS PROPOSED WHOLESALE ADMISSION OF EXHIBITS.

Even if one or more out-of-court statements survives a hearsay challenge, a defendant still has a Sixth Amendment right to confront his accusers.  The Confrontation Clause of the Sixth Amendment provides an absolute bar to the admission of testimonial out-of-court statements unless certain conditions are met. *Crawford,* 541 U.S. at 68.   *Crawford* holds that a declarant's "testimonial" out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, *id.* at 53-54, (2) the defendant had a prior opportunity for cross-examination and the declarant is unavailable, *id.* at 54, or (3) the evidence is admitted for purposes other than

establishing the truth of the matter asserted, *id.* at 59 n. 9.  The Confrontation Clause cannot be satisfied by a reliance on assurances of reliability.  Rather, the Confrontation Clause "commands not that the evidence be reliable, but that the reliability be assessed in a particular manner: by testing in the crucible of cross-examination."  *Id.* at 61.  The Ninth Circuit reviews *de novo* a trial court's findings about whether proffered evidence violates the Confrontation Clause.  *United States v. Bustamante*, 687 F.3d 1190, 1193 (9th Cir. 2012).

Here, the government appears to be seeking to admit hundreds of exhibits and attachments, without foundational testimony from knowledgeable witnesses, for the express purpose of precluding the defense from confronting its witnesses.  Not only do the Defendants have the right to confront the witnesses about the authenticity of the documents, but they also have the right to confront the witnesses about the content of any testimonial statements in the proposed exhibits. The government's attempt to present much of its case through testimonial documents, without providing the defense any opportunity to confront those who participated in the communications, violates the Sixth Amendment and would not survive *de novo* review.

## V.     DOCUMENTS PRODUCED TO THE GOVERNMENT BY FERRER OR BACKPAGE ARE NOT SELF-AUTHENTICATING AS TO DEFENDANTS.

In its Motion, the government argues that many of its proposed exhibits are self-authenticating because they were produced either by its lead cooperator, Carl Ferrer, or by Backpage.com, LLC.  Dkt. 931 at 6-7.  Once again, the government conflates Backpage and Ferrer with Defendants.  Backpage and Ferrer are not parties to this proceeding, so *AT Engine Controls Ltd. v. Goodrich Pump & Engine Control Sys., Inc.*, 637 Fed. App'x 645, 649 n.7 (2d Cir. 2016), which dealt with the authentication of documents produced by parties to a lawsuit, is inapposite.  While the *John Paul Mitchell Systems v. Quality King Distributors*, 106 F. Supp. 2d 462, 473 (S.D.N.Y. 2000), did deal with documents produced by third parties (in civil litigation), the government failed to cite the more pertinent part of the decision, which held that documents produced by one party's paid informant would not be assumed to be authentic:

> The second set of CDM documents—produced by JPMS's paid informant—are excluded due to lack of authentication.  At least for the purposes of this preliminary injunction hearing, JPMS has offered inadequate evidence of how these documents were obtained. Several of the documents appear to bear the letterhead of CDM and

Robert Seibel's law firm. Several also bear the signatures of certain of the defendants invoking the Fifth Amendment privilege. Still, the Court has been given no letterhead to compare with these documents. Most importantly, the paid informant never testified to their authenticity. Adequate proof of the authenticity of this set of documents [] has not been offered as of this date and those documents are therefore not admitted into evidence.

*Id.* Moreover, the government cites no authority holding that documents produced by non-parties in other litigation can be treated as self-authenticating in a separate criminal prosecution against different parties.

The Court should hold the government to the standards imposed by Fed. R. Evid. 901 and require it to meet its burden of authenticating each and every individual exhibit and attachment it seeks to admit. Fed. R. Evid. 901(b) allows authentication through "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," but does not allow that to happen absent a witness. At a minimum, someone must testify about the indicia of authenticity in the documents. At trial, the government could attempt to use its main cooperator, Carl Ferrer, to authenticate some of its proposed exhibits, but he is rather unlikely to be able to authenticate emails purportedly received by the Defendants from those outside of Backpage.

Finally, there is good cause to be dubious about the authenticity of the government's exhibits, regardless of whether they "appear" authentic. Counsel have examined the metadata on a small number of the government's proposed exhibits and the metadata shows that one of the documents was modified by the government ***after*** the documents originally were produced by Ferrer/Backpage in 2017 and two of the documents were modified by Carl Ferrer's counsel five months ***after*** the commencement of this case.[8] The metadata for the government's proposed Exhibit 5 shows that the document was last modified on January 9, 2018, and was last saved by a member of the prosecution team. The metadata for the government's proposed Exhibits 23 and 101 shows that both documents were last modified on September 20, 2018, and were last saved by

---

[8]     The Court can examine the metadata by opening the documents in Word and PowerPoint and using the File | Info command in Windows or the File | Properties command in Word to display the metadata.

Jonathan Baum (Carl Ferrer's criminal counsel).  Given this evidence of modifications to the exhibits (whether inadvertent or intentional), the Court should not excuse the government from providing evidence of authenticity and holding it to its burden under Fed. R. Evid. 901.  Defendants cannot be denied the opportunity to cross-examine the government's witnesses about issues of the sort raised by the metadata in the government's proposed exhibits.  *See Crawford*, 541 U.S. at 61.

## VI. SPECIFIC OBJECTIONS AS TO PARTICULAR CATEGORIES OF DOCUMENTS.

### A. "Letter Correspondence."

The government seeks to admit numerous letters to Backpage or Defendants Larkin and Lacey asserting that numerous adult ads on Backpage related to prostitution or sex trafficking and urging them to discontinue accepting all adult-oriented advertising.  Those letters plainly are improper and inadmissible.

First, the government claims it seeks to admit these letters not for the truth of their statements, but to show "notice, knowledge, state of mind, intent, and pattern of communication." Dkt. 931 at 16.  The government may claim that it does not seek to admit these letters for the truth of the statements in them, but that is *exactly* why the government seeks to admit them.  Unless the statements in the letters are true, the letters are utterly irrelevant.  If the claims in the letters about prostitution were untrue, what would the government be seeking to establish that Defendants knew or had notice of?  The fact that Backpage or certain Defendants received numerous letters making false claims about ads on Backpage?  If the claims in the letters about prostitution were untrue, just how could the letters be relevant to Defendants' state of mind or intent?  Because they received letters making unfounded claims about Backpage advertisers they knew those advertisers were engaged in unlawful activities?

Second, not only would admitting the letters be improper, but testimony from the authors of the letters would be equally improper.  None of the letters relate to the 50 ads at issue in this case.  *See* Dkt. 946 at 13; *supra* Section II, n. 5.  None of the authors of the letters is likely to have any personal knowledge about any of the 50 ads or the persons who posted them.  More importantly, none of the authors of the letters will have any personal knowledge about the

*Defendants'* knowledge of the 50 charged ads, of the persons who posted or were advertised in those ads, or of the activities in which those persons may been engaged or about *Defendants'* intent with respect to those ads or the persons who posted them (assuming the government can establish that any Defendant knew anything about any of the charged ads or the persons who posted or were advertised in those ads).

Third, those letters are replete with hearsay, hearsay on hearsay, statements made with no foundation, improper lay opinions, and statements that would be improper invasions on the Court's right to instruct the jury on the law. The letters plainly would be immensely prejudicial and of little or no probative value and should be excluded under Fed. R. Evid. 401 and 403. *See Curtin*, 489 F.3d at 958.

In seeking to admit the letters, the government also ignores the Constitutional principle that speech must be presumed to be protected unless and until the government *proves* otherwise. "The government may not suppress lawful speech as the means to suppress unlawful speech. Protected speech does not become unprotected merely because it resembles the latter." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 255 (2002); *accord Packingham v. North Carolina*, 137 S. Ct. 1730, 1738 (2017). The burden of proving that speech is unlawful always falls to the government. *See United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."); *id.* at 818 ("When First Amendment compliance is the point to be proved, the risk of nonpersuasion … must rest with the Government, not with the citizen."); *Bd. of Trs. v. State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989) ("the State bears the burden of justifying its restrictions"). The government cannot meet its burden to prove that certain ads on Backpage related to unlawful activity, or that Defendants knew those ads related to unlawful activity and chose to run them anyhow, by offering opinions from third parties (whether in-court or out-of-court) saying they believed most of the millions of adult-oriented ads that ran over the years on Backpage looked like they related to unlawful activity—regardless of how fervently they may have held such beliefs and even if they had actual knowledge that some ads did. The Court cannot permit the government to try to shift its Constitutional burdens to Defendants by presenting "evidence," under whatever guise, that

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

"anyone could tell," just by looking, that lawful dating ads, massage ads, or escort ads that contained no offer of sex for money actually were ads for illegal prostitution—even if the ads expressly disclaimed being ads for prostitution (as a number of the charged ads did).

**B.   "Intra-Backpage" PowerPoint Slide Decks.**

The government seeks to admit at least five PowerPoint slide decks, either as co-conspirator statements made by Backpage or by offering them, not for their truth, but to show "Backpage's state of mind." Dkt. 931 at 14. The government's motion says nothing about these slide decks, except to claim that they "bear Backpage's name and/or logo." *Id.* The government presented no evidence that the documents were prepared by Backpage or contain statements made by Backpage. The government presented no evidence of the existence of a conspiracy (beyond stating that Backpage plead guilty to conspiracy to commit money laundering), nor any evidence that Defendants were participants in the purported money laundering conspiracy, that the PowerPoint slide decks contain statements made during the course of the purported conspiracy, or that the PowerPoint slide decks contain statements in furtherance of the purported money laundering conspiracy.

The government not only failed at a general level to provide any foundation for the PowerPoint slide decks, but the documents themselves disclose further flaws with the government's theory. For example, two of the slide decks expressly state both that they were *not* prepared by Backpage and that Backpage made no representations regarding the accuracy of any statements in them. *See* Exhibits 3 and 120, each at slide 2 ("This confidential management presentation … has been prepared by Duff & Phelps Securities, LLC with input from the management of Backpage.com, LLC …" and "neither Backpage nor any of its officers, directors, employees, controlling persons, agents, or advisers … makes any express or implied representation or warranty as to the accuracy or completeness of the information contained herein …"). Likewise, the metadata for two other PowerPoint slide decks also say they were prepared by Duff & Phelps. *See* Exhibits 2 and 4 ("Author: David Prekop"; "Company: Duff & Phelps").[9] One of the PowerPoint

---

[9]   If the government shifts its position and claims these documents are admissible as statement of Backpage's "agent," that position nonetheless would fail for the reasons discussed in Section III(B).

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

slide decks not only does not bear Backpage's name or logo, but appears to have been a document prepared for New Times, Inc. in connection with seeking financing for its then-proposed merger with the Village Voice newspaper chain. *See* Ex. 5.[10]  The document cannot conceivably be construed to be a statement of Backpage, much less a statement relating to or in furtherance of Backpage's purported money laundering conspiracy, and cannot be admitted against the Defendants in this case.

Further, the government claims it also may seek to admit these PowerPoint slide decks not for the truth of the statements in them, but the government does not explain how the slide decks would be relevant if not offered for the truth.

### C.    "Performance Appraisals."

The government seeks to admit nine Word files that it claims are "performance appraisals" of employees "supervised by [Defendants] Padilla and Vaught."  Dkt. 931 at p. 15 (referring to Exhibits 141 (two files), 458-470).  The documents do not appear to have been prepared by Defendants Padilla or Vaught, nor do they either purport to be or appear to be "performance appraisals" in the usual sense of that term.  Rather, they appear to be quick notes of an unidentified person's or persons' perceptions of the moderation skills of several Backpage employees, as observed on a given day.  The government obviously has no idea who prepared these documents, as it says "Padilla and Vaught were employees at the time they completed the performance evaluations," but two sentences later says "to the extent the performance appraisals were prepared by other Backpage employees," they would be admissions of Backpage's agent. *Id.*

The government claims the documents can be admitted as admissions by a party opponent or as co-conspirator statements (apparently under the theory that Padilla and Vaught prepared the documents), as admissions of Backpage's agent (whomever that might have been, if not prepared by Padilla or Vaught), or as business records.  Despite advancing four theories for the admission of the documents, the government has not established that they are admissible under any of the four, for all the reasons discussed above in the sections pertaining to each theory.

---

[10]    As discussed above, the metadata for this proposed exhibit shows that the document, which is dated 2006, was last modified in January 2018 by a former member of the prosecution team.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1

### D.     "Consulting Firm Documents."

2        The government claims documents prepared for "Backpage and related entities" by

3  consulting firms (*e.g.*, BDO Consulting and Duff and Phelps) constitute statements of Backpage's

4  "agent" "because the firms were hired by Backpage to perform work related to its business

5  operations." Dkt. 931 at 15.  The government's argument misses the mark by a wide margin

6  because, as discussed above, independent contractors do not qualify as agents for the purposes of

7  Rule 801(d)(2)(D), the government has not alleged or shown that these consulting firms had the

8  power to legally bind Backpage, and the government identifies no statements made by the

9  consultants on subjects where the consultants could bind Backpage—much less bind Defendants.

10

### E.     Bank Records.

11       In the Motion, the government seeks to pre-admit what it describes as "(a) records from

12  Backpage-related bank accounts; and (b) records from Defendants' personal bank accounts,"

13  under Rule 803(6).  Dkt. 931 at 17-18.  The government does not offer these records as an exhibit

14  to its motion.  The records apparently referenced are those listed at Dkt. 889-1, which consists of

15  9 pages of a table, with somewhere between 20 and 25 exhibit entries per page, with each entry

16  apparently between one and one hundred pages (or more).  During the parties' meet and confer,

17  the government would not explain the relevance of these exhibits, to which defendants they relate,

18  or how they will be used at trial.  *See* Thomas Decl. at ¶ 8.

19       At this point, the relevance of the avalanche of bank records is entirely unclear, and this

20  category of exhibits cannot be admitted pretrial as the Court cannot analyze whether such exhibits

21  comport with Fed. R. Evid. 401 and 403.  *See United States v. Waters*, 627 F.3d 345, 357 (9th Cir.

22  2010) ("The district court had the responsibility to read every page of the articles in order properly

23  to understand their contents before ruling on their admissibility.  Its failure to do so means that it

24  could not have properly weighed the impact of the articles under Rule 403.").  The charged money

25  laundering counts identify specific transactions among exactly twenty financial institutions.  *See*

26  Counts 53-100.[11]  The listed bank documents in Dkt. 889-1 go well beyond those twenty, and it is

27

28

[11]    The entities identifies in these counts are:  Ad Tech, B.V., Ally Bank, Arizona Bank and Trust, Bank of America, BMO Harris, Branch Banking and Trust, Charles Schwab, Fidelity Title, Industrial Property Trust, Johnson Bank, Lincoln National Life, National Bank of Arizona, Primus

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1    not at all clear that even the records from those twenty institutions are limited to the specific money

2    laundering transactions.  Accordingly, the relevance of the offered documents is not clear.[12]  Bank

3    records cannot be admitted until "foundational showings of authenticity *and relevancy* have been

4    made[.]"  *United States v. Soulard*, 730 F.2d 1292, 1298 (9th Cir. 1984) (emphasis added).  The

5    government has failed to meet that burden in its motion or during the meet and confer.

6    Accordingly, the bank records should not be admitted at this time.

7    **F.     Purported "Meeting Agendas."**

8          The government writes that "it is anticipated that Ferrer will" testify and lay a business

9    record foundation for what the government calls "Backpage-related Meeting Agendas" and, based

10    on that "foundational testimony," the government "will seek to admit" the meeting agendas

11    pursuant to Fed. R. Evid. 803(6).  Dkt. 931 at 18 (referring to Exhibits 14, 21, 23, 30, and 101).

12    The government thus is not asking for a pre-trial ruling on these documents, and none should be

13    entered by the Court as to these exhibits.  *See* Fed. R. Evid. 803(6)(D) (conditions for business

14    record exception to hearsay rule must be "shown by the testimony of the custodian or another

15    qualified witness, or by a certification" prior to admission); *United States v. Aiyaswamy*, 2017 WL

16    1365228, at *2 (N.D. Cal. Apr. 14, 2017).  Defendants will evaluate the exhibits and the potential

17    evidentiary objections once the foundational testimony is heard and the documents are offered for

18    admission.

19          In addition, despite the government's self-serving description of the documents as "meeting

20    agendas," it is clear that not all the documents are meeting agendas.  For instance, although the

21    government's exhibit list (Dkt. 931-1) described Exhibit 23 as "Agenda, 12/20/2007," the

22    referenced Bates pages (DOJ-BP0004602308-DOJ-BP-0004602331) actually contain a 24-page

23    document entitled "2008 Budget and Business Plan for Backpage.com," which, upon examination,

24

25

26    Trust/K&H Bank, SB, Stewart Title, Strategic Storage Trust, TD Ameritrade, UBS Financial, US
Bank, and Wells Fargo.  *See id.*

27    [12]     Moreover, the records in Dkt. 889-1 are not limited to "Backpage-related" accounts or the

28    Defendants' personal accounts, as the government claims.  Dkt. 931 at 17.  They also include, for
instance, statements from what appear to be personal money market accounts owned by Margaret
Larkin, who is not a defendant.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

is clearly *not* a "meeting agenda."[13]  This proposed exhibit demonstrates yet another problem posed by the government seeking a pretrial ruling on more than 500 exhibits: some of its exhibit descriptors simply are wrong, adding to the burdens its motion poses for Defendants and the Court.

Likewise, while Exhibits 14 and 21 were labeled as "Meeting Agenda" and include dates and participants, it is not at all clear that Exhibits 30 and 101[14] were in fact "meeting agendas:" both were undated,[15] neither included a list of participants (if in fact there were any), and neither is labeled as a "meeting agenda."  From their face, they could very well just be someone's notes to themselves, thoughts, etc.  These documents likewise demonstrate the problems posed by the government's seeking the pre-admission of a huge number of exhibits without providing the appropriate foundational information and evidence on an exhibit-by-exhibit basis.

### G.    Purported "Google Analytics" Reports."

The government writes that "it is anticipated that Carl Ferrer and/or Dan Hyer" will provide certain testimony about documents the government calls "Google Analytics" reports and, "based on this foundational testimony, the [government] will seek to introduce" some of the reports.  Dkt. 931 at 18-19 (referring to Exhibits 311, 312, 313 and 314).  Again, the government has not asked for a pre-trial ruling on these documents, and none should be entered by the Court as to Exhibits 311, 312, 313, or 314.  Fed. R. Evid. 803(6)(D).  Defendants will evaluate the exhibits and the potential evidentiary objections once the foundational testimony is heard and the documents are offered for admission.  Defendants note, however, that one of the proposed exhibits, Exhibit 314, relates not to www.backpage.com, but to an unrelated website (www.adultsearch.com).  Defendants question how that document could be relevant to this case.

### H.    Spreadsheet of Purported New Articles Discussing Backpage.

The government writes that "it is anticipated that Carl Ferrer and/or Dan Hyer" will

---

[13]    As discussed above, the metadata for this document shows the document was modified by the prosecution team in January 2018.

[14]    As discussed above, the metadata for Exhibit 101 shows the document was modified by Ferrer's counsel on September 20, 2018.

[15]    The government's Exhibit List acknowledges no date for Exhibit 30 but somehow assigns a date to Exhibit 101.

provide certain testimony about documents that government calls "Backpage Stories" and, "[b]ased on this foundational testimony, the [government] will seek to introduce" Exhibit 260 as a business record under Fed. R. Evid. 803(6).  Dkt. 931 at 20 (referring to Exhibit 260).  Again, the government has not asked for a pre-trial ruling on this exhibit, and none should be entered by the Court as to Exhibit 260.  Defendants will evaluate the exhibit and the potential evidentiary objections once the foundational testimony is heard and the spreadsheet is offered for admission.  Defendants note, however, that much of the information in Exhibit 260 is embedded hearsay and, even if the government provides a foundation for this spreadsheet as a business record, none of the  embedded hearsay in the document could be admitted on that ground.  The headlines, links to publication/sites with embedded headlines, URLs with embedded headlines, capsule summaries, among others, all are hearsay (often including embedded hearsay) for which there is no exception.  Moreover, the document is highly prejudicial, and of little or no probative value, so also should be excluded under Fed. R. Evid. 403.

**I.      Ads from Wayback Machine, Unchartered Inc., and Exhibit F (Dkt. 916-6).**

The government asks the Court to admit pretrial purported historical ads from the "Wayback Machine."  Dkt. 931 at 20-22.  The Court should exclude this exhibit as incomplete, unreliable, potentially misleading, and offered out of context.  *See, e.g.*, Fed. R. Evid. 106, 401, and 403.

Exhibit D (Dkt. 916-4, under seal) purports to be 47 pages worth of captures from the Internet Archive's Wayback Machine.  As a threshold matter, these documents plainly are not accurate or fair representations of the actual ads as they existed on the date the Internet Archive says it captured them.  The stated capture dates for all the ads are in 2016 and 2017, but every ad is emblazoned with an image of an April 6, 2018, seizure notice stating that the FBI, USPS, IRS, DOJ, and California and Texas Attorney Generals seized the Backpage website.  Moreover, the affidavit of the Internet Archive's Office Manager clearly states that the images displayed on the ads in Exhibit D may or may not have been displayed with the ads on the date the ads were captured:  "The date assigned by the Internet Archive applies to the HTML file but not to image files linked therein.  Thus images that appear on a page may not have been archived on the same date as the HTML file."  *Id.* at p. 1.  As such, even ignoring the seizure notices, not only is there

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1  no way to know whether the captured ads actually existed in the form depicted in Exhibit D on

2  the date the HTML file (*i.e.* the text) was captured, there is no way to know whether the captured

3  ads *ever* displayed as depicted in Exhibit D.  The Internet Archive Office Manager's affidavit only

4  certifies that the HTML file (*i.e.* the text) for each ad is correct:  "Attached hereto as Exhibit A are

5  true and accurate copies of printouts of the Internet Archive's records of the HTML files . . ."  *Id.*

6  The Internet Archive does not certify the accuracy of the images.

7         The Court should not permit the government to use exhibits that do not accurately depict

8  ads as they ran on the Backpage website.  Alternatively, if the Court permits the use of this exhibit

9  at all, it should: a) require the government to redact all images from all ads, so the exhibit as

10  presented to the jury includes only what the Internet Archive has certified as accurate; and b)

11  instruct the jury that the exhibit does not accurately depict the ads as they ran on the website.

12         More generally, the Wayback Machine is not reliable.  The Wayback Machine is an Internet

13  "library" that browses the web and attempts to capture certain webpages (or pieces of webpages)

14  at certain times and stores them for reference purposes.  However, as the Internet Archive itself

15  acknowledges, pages can be removed or excluded from its archive, "[n]ot every date for every site

16  archived is 100% complete," and those pages that are captured often include "broken pages [and]

17  missing graphics."  *See* Using The Wayback Machine, Internet Archive, available at

18  https://help.archive.org/hc/en-us/articles/360004651732-Using-The-Wayback-Machine    (last

19  accessed June 5, 2020).  In short, *"[t]he Wayback Machine tool was not designed for legal use." Id.*

20  (emphasis added).  *See Transcap Assocs., Inc. v. Euler Hermes Am. Credit Indem. Co.*, 2009 WL 3260014,

21  at *7 (N.D. Ill. Oct. 9, 2009) (court "troubled" by party's "reliance on the way back machine"

22  because "the Internet Archive warns of missing links and images in webpages that may be accessed

23  through the way back machine.").

24         At best, the Internet Archive's historical captures only accurately depict the text of a web

25  page captured at a moment in time.  A frozen moment in time can be misleading, particularly here

26  when the content of an ad on the Backpage website could have changed over time and when the

27  evolution of an ad could be important to an assessment of an ad.  A careful reading of the

28  government's authorities raises this very caveat.  For example, in *Martins v. 3PD, Inc.*, 2013 WL

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

1320454, *16 (D. Mass. Mar. 28, 2013), the court satisfied itself that that the materials to be admitted through the Wayback Machine were historically accurate and identical to what actually appeared on the website. *Martins*, 2013 WL 1320454 at *16 ("More fundamentally, the 3PD website appears to have remained substantially identical since it was created sometime in 2006–2007. Certainly, all of the substantive content quoted above from the page itself has remained identical, save for slight changes in the number of deliveries and delivery teams.").

The government tries to circumvent the Rules of Evidence by asking the Court to take judicial notice of its proposed exhibit, Dkt. 931 at 2, but judicial notice would only serve to anoint these unreliable, incomplete, and potentially misleading historical captures as accurate portrayals of the material contained therein. *See Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018) ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."); *see also Nassar v. Nassar*, 2017 WL 26859, *5 (M.D. Fla. Jan. 3, 2017) (court cautioned that the Wayback Machine website contains a disclaimer that the Internet Archive "makes no warranty or representation regarding the accuracy, currency, completeness, reliability, or usefulness of the content"). At most, the Court could take judicial notice that the government's proposed exhibit is an incomplete, unreliable, and potentially misleading version of ads, as captured by the Wayback Machine.

Likewise, in its three sentences on the issue, the government offered no authority or analysis that ads from Uncharted Software, Inc. are admissible or have ever been accepted by a court. Dkt. 931 at 22. The government offered no argument that the ads in Exhibit E (Dkt. 916-5, under seal) are relevant, more probative than prejudicial, authentic, reliable, or complete. *See, e.g.*, Fed. R. Evid. 106, 401, 403, 901. Moreover, the purported business record certification for the Uncharted Software records, Exhibit E, does not provide the required foundation for business records under Fed. R. Evid. 803(6). The certification says that Uncharted had *possession* of the records, but the certification's passive voice sentences provide no information about how these records came to be created, how Uncharted came to possess them, or why they should be deemed trustworthy. The certification uses as circular and unintelligible language like "these records were created by the regularly conducted activity as a regular practice." The certification does not identify the person

1  or entity who created the records; it does not say that the person who created the records had

2  knowledge of the facts reflected in the records; it does not say that the records were kept in the

3  course of a regularly conducted activity of a business, organization, occupation, or calling; and it

4  does not say that the business, organization, occupation, or calling made the records as a part of a

5  regular practice.  Without such information, the Court has no basis to assess whether these records

6  are admissible under Fed. R. Evid. 803(6).

7      Finally, with respect to Exhibit F (Dkt. 916-6, under seal), Carl Ferrer may be qualified to

8  certify many business records for Backapge.com, LLC, but Defendants dispute Ferrer's ability to

9  certify the particular records he has purported to certify here.  Ferrer executed his certification on

10 January 15, 2020.  The records he purported to certify appear to be printouts of documents the

11 government produced to Defendants in November 2018, which themselves appear to be printouts

12 from the Backpage website from January and February 2018.  Unless Ferrer provided these

13 documents to the government in early 2018, it appears that the government obtained documents

14 from a source unknown to Defendants, produced them to Defendants, and then later printed them

15 out and asked Ferrer to certify them as business records—but, if that is so, the documents are not

16 business records of Backpage, but litigation materials of the government.  The Court should not

17 admit Exhibit F unless the government establishes, with admissible evidence, that Ferrer is

18 competent to certify these particular records—and not just certifying records given to him by the

19 government that he has no basis to certify.

20 **J.      Irrelevant 2015 Video Recorded by SA Fichtner.**

21     The government seeks to admit a video that "demonstrate[es] how the Sacramento adult-

22 escort and buy-sell-trade sections of Backpage looked and operated at the time of the recording,"

23 March 6, 2015.  Dkt. 931 at 23; Exhibit G at Dkt. 916-7, under seal.  In his declaration, Exhibit G

24 (Dkt. 916-7, under seal), SA Fichtner acknowledged that his video has no relation to this criminal

25 prosecution, but was created in the course of the California Attorney General's 2013 investigation

26 into Backpage.  Dkt. 916-7.  The video depicts a "sting" that SA Fitchner conducted, which

27 ultimately showed little more than a) an adult ad Fitchner posted attracted more customer interest

28 than an ad he posted for the sale of a sofa and b) that Backpage promptly deleted both the adult

ad and the sofa ad when he called Backpage and informed it that the adult ad related to prostitution (making no mention of the second ad).  The video has no relation to the allegations contained in the indictment, to the charged ads, or to any of the purported victims.  Rather, the video is wholly irrelevant to the charges in this case, is extremely prejudicial as it relates to a different criminal investigation, and should be excluded under Fed. R. Evid. 401 and 403.  If the Court allows the video as an exhibit, it should require the government to inform the jury of the ultimate outcome of that investigation—two different judges of the California Superior Court ruled in two different cases that Backpage lawfully published all the content displayed in the video.  *See People v. Ferrer*, 2016 WL 7237305 (Sup. Ct. Sacramento Cty. Dec. 9, 2016); *People v. Ferrer*, No. 16FE024013 (Sup. Ct. Sacramento Cty. Aug. 23, 2017).

## VII.   DOCUMENTS PRODUCED BY COUNSEL FOR MICHAEL LACEY SHOULD NOT BE ADMITTED.

Mr. Lacey maintains that these exhibits are privileged documents and that they were wrongly found to be not privileged.  Consequently, they should not have been released by Court order to the government and should not be admitted at trial.

## VII.   "SUMMARY" EXHIBITS CANNOT BE ADMITTED PRETRIAL ON THE BASIS OF THE GOVERNMENT'S DEFICIENT MOTION.

The government seeks to pre-admit three so-called "summary" exhibits, specifically (1) a set of 34 flowcharts that purport to depict the transactions at issue in the indictment's money laundering counts; (2) charts reflecting annual revenues for certain Backpage-related entities and the annual earnings of certain of the Defendants; and (3) a chart reflecting Backpage's gross revenues broken down by ad category over a two-year time period.  *See* Dkt. 931 at 24-25, Dkt. 977-1 at 2.  None of these exhibits are attached to the government's Motion *in limine* and none appear on the government's Exhibit List.  *See* Ex. A.

As a preliminary matter, given the government's stated intention of offering the underlying records into evidence at trial, Dkt. 931 at 25, none of the purported "summaries" are admissible as evidence, and the government's Motion should be denied on this basis alone.

"[C]harts or summaries of testimony or documents already admitted into evidence are merely pedagogical devices, and *are not evidence themselves.*"  *United States v. Wood*, 943 F.2d 1048,

1053–54 (9th Cir. 1991) (emphasis added). In fact, the Ninth Circuit has "long held that such pedagogical devices should be used only as a testimonial aid, and should not be admitted into evidence or otherwise be used by the jury during deliberations." *Id.* at 1053. Simply put, the government's proposed summaries are nothing more than demonstratives, and there is no "evidence" for the Court to pre-admit here.[16]

Nor should the Court authorize the use – in any fashion – of the summary exhibits at this time. In the Ninth Circuit, "[a] proponent of a summary exhibit must establish a foundation that (1) the underlying materials on which the summary exhibit is based are admissible in evidence, and (2) those underlying materials were made available to the opposing party for inspection." *Amarel v. Connell*, 102 F.3d 1494, 1516 (9th Cir. 1996), *as amended* (Jan. 15, 1997). The government has not met this standard.

First, the government refuses to produce to Defendants the underlying materials that purportedly are summarized in the proposed revenue and income charts. Thomas Decl. at ¶ 10; Dkt. 977-1 at 2. When Defendants requested the disclosure of this information during the parties' telephonic meet and confer, the government refused, saying only that it was tax return information and refusing to further clarify. Thomas Decl. at ¶ 10. Neither Defendants nor the Court can meaningfully evaluate the admissibility of the government's proposed charts without the underlying records. Nonetheless, without explanation, the government demanded that Defendants *file a motion* to get access to the records underlying the government's purported summary chart. *Id.* The Court should reject the government's misguided attempt to shift its burden under Rule 1006 to Defendants. *See Amarel*, 102 F.3d at 1516 ("The purpose of the availability requirement is to give the opposing party an opportunity to verify the reliability and accuracy of the summary prior to trial.") (internal citations and quotation marks omitted); *United States v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985) (holding that the government's summaries were not admissible under Rule 1006 because it "failed to provide appellants with a copy of the underlying documents prior to the introduction of the summary.").

---

[16]     The government also notes that it "will produce any remaining summary exhibits to Defendants within a reasonable time prior to trial." Dkt. 931 at 24-25. Obviously, there is nothing to be done with regard to those exhibits at this time.

Second, and as to all of the purported summary exhibits, the government has failed to satisfy its burden of establishing that the underlying materials are admissible.  Instead, the government merely asserts in conclusory fashion that "the documents on which the [three] exhibits are based—intra-Backpage records, the records from Backpage's many bank accounts, and the records from Defendants' bank accounts—are themselves admissible," without any further explanation or argument. Dkt. 931 at 25.[17]  The government does not even mention the tax return information it cited during the meeting and confer.  *Id.*  Such conclusory statements do not support admission or use of the summary charts.  *See United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984) ("The trial court, out of the presence of the jury, should carefully examine the summary charts to determine that everything contained in them is supported by the proof.").  In any event, the government indicates that it "intends to offer [the underlying documents] into evidence at trial."  Dkt. 931 at 25.  Thus, the Court will have an opportunity to determine admissibility, and there is nothing for the Court to do now.[18]

Third, and specifically as to the 34 proposed flowcharts, the "summary" charts do not comply with Rule 1006.  The government's Motion describes these charts as purported summaries of "how Backpage-generated proceeds flowed through various entities" named in the indictment.  Mot. at 24.  In fact, each chart is labeled as "Flowchart COUNT XX," with a reference to a specific money laundering count or counts.  The inclusion of the words "Count X" on the charts make these akin to closing argument slides, not Rule 1006 summary exhibits.  They should be precluded as improper argument and under Rule 403.  Indeed, these charts are *not* summaries of voluminous records; they are demonstratives that will apparently summarize some analysis performed by government witness Quoc Thai.[19]  While they may perhaps be appropriately used as

---

[17] None of these records is on the government's exhibit list.  *See* Ex. A.  To the extent these records are of the same nature as the exhibits that the government seeks to pre-admit, the government has not established their admissibility for the same reasons discussed elsewhere in this opposition.

[18] The government's stated intent to offer the documents into evidence at trial only makes more bizarre its refusal to provide the unidentified "tax information" to Defendants.  Of course, the government should not be permitted to introduce into evidence documents it refuses to give to Defendants in discovery.

[19] Indeed, the charts do not even purport to summarize "voluminous" records.  Some relate to a single monetary transactions (such as for Counts 63-68).  Others are visual representations of

1   demonstratives depending on the testimony (once the reference to specific counts are removed),

2   there is no basis to pre-admit them or pre-authorize their use absent foundational testimony from

3   a witness.  *See U.S. ex rel. Poong Lim/Pert v. Dick Pac./Ghemm*, 2006 WL 568321, at *5 (D. Alaska

4   Mar. 7, 2006) ("As a flow chart that goes far beyond merely summarizing the contents of

5   documents . . . [the chart] is inadmissible under Rule 1006.").

6   **VIII.   CONCLUSION.**

7          For the foregoing reasons, the Court should deny the government's Motion in its entirety.

8

9          RESPECTFULLY SUBMITTED this 8th day of June 2020,

10

11                                              BIENERT | KATZMAN PC
                                                *s/ Whitney Z. Bernstein*
12                                              Thomas H. Bienert, Jr.
                                                Whitney Z. Bernstein
13                                              Attorneys for James Larkin

14   *Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) §*
15   *II(C)(3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is*
     *submitted, concur in the filing's content and have authorized its filing.*

16

17                                              LIPSITZ GREEN SCIME CAMBRIA LLP
                                                *s/ Paul J. Cambria, Jr.*
18                                              Paul J. Cambria, Jr.
                                                Erin McCampbell Paris
19                                              Attorneys for Michael Lacey

20
                                                BIRD MARELLA BOXER WOLPERT
21                                              NESSIM DROOKS LINCENBERG AND
                                                RHOW PC
22                                              *s/ Ariel A. Neuman*
23                                              Gary S. Lincenberg
                                                Ariel A. Neuman
24                                              Gopi K. Panchapakesan
                                                Attorneys for John Brunst
25

26

27   _____
     only a few wire transactions, money transfers, or checks (e.g., for Counts 78, 82, and 86 to 93,
28   where each contain a visual depiction of seven transactions).  Even the more complex charts
     contain relatively few transactions, not "thousands of thousands of pages" worth, as the
     government claims.

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

FEDER LAW OFFICE PA
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

DEFENDANTS' OPPOSITION TO MOTION IN LIMINE TO ADMIT EVIDENCE

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas
