# Exhibit B



**U.S. Department of Justice**

MICHAEL BAILEY
United States Attorney
District of Arizona

---

Two Renaissance Square          Main:  (602) 514-7500
40 N. Central Ave., Suite 1800   Main Fax:  (602) 514-7693
Phoenix, AZ  85004-4408          Direct Fax:  (602) 514-7450

May 13, 2020

Bruce Feder, Esq.
Biltmore Lakes Corporate Center,
suite 160
2930 E. Camelback Road
Phoenix, AZ 85016

**VIA EMAIL ONLY**

      Re:    *Your Letter of April 24, 2020*

Dear Bruce:

      This responds to your letter dated April 24, 2020.

      Your letter appears to rehash the letter you sent on March 18.  In short, you raise discovery requests that we have previously responded to in extensive detail over the last two years.  In addition, we respectfully disagree with your requests because you have not provided any facts (only speculation) in support of the materiality of the discovery you seek.  *United States v. Mincoff*, 574,  F.3d 1186-1200 (9th Cir. 2009) ("Mere speculation about materials in the governments' files [does] not require the district court to make those materials available, or mandate an in camera inspection.").

      *First*, your request appears to be based on a flawed premise that we removed witnesses from our witness list because they were expected to provide unfavorable testimony for the government. That is not the case.  Indeed, we are doing everything we can to expedite trial and remove cumulative, redundant and extraneous witnesses. This includes the witnesses where you have requested the investigating agents' notes of their interviews.

      *Second*, you request "the statements of Brian Alstedt, Brian Paterge, Michael Gage, Justin Dew and La Tamara Barlow and any notes law enforcement took during these witness interviews." In response I would ask that you review our correspondence from March 27, 2020, where we address your requests specific to these witnesses.

      *Third*, you cite a number of cases that you believe support your request for disclosure of interview notes, despite the requirements of the Jencks Act, and Ninth Circuit law regarding

May 13, 2020
Page 2 of 5

the government's obligation regarding (rough) interview notes of non-testifying witnesses. *See e.g.*, *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (where the agent's notes or report are not read to or otherwise approved by the witness, they cannot be statements of the witness under § 3500(e)(1) of the Jencks Act), *abrogated on other grounds by Ross v. Oklahoma*, 487 U.S. 81 (1988) ).  For a variety of reasons these cases do not support your position.

For example*,* you cite *United States v. Doe*, 705 F.3d 1134, 1149–50 (9th Cir. 2013), in support of the  disclosure of notes of witness interviews because you claim they would be helpful to your client's defense. In *Doe*, however, the defense wasn't requesting the agent's notes of interviews but instead they requested "[a]ny and all records or reports which document any and all telephone numbers, license plate numbers, or individuals, provided or identified by [Doe] to FBI [agents], as being associated, involved or related to criminal activity." *Id.* According to Doe, this information was important and necessary "evidence that [Doe] provided the FBI information regarding criminal activity and is not predisposed to commit the acts alleged, but rather, he was predisposed to assist law enforcement." *Id.*  This type of evidence does not exist from the witnesses you are requesting notes from.

Likewise, your reliance on *United States v. Muniz–Jaquez,* 718 F.3d 1180 (9th Cir. 2013), is similarly misplaced. There, the Court found that the defense was entitled to U.S. Border Patrol dispatch tapes in order to determine the location of the defendant at the time of arrest. *Id.* Obviously this case is distinguishable from your instant request as recordings are much different than rough notes. You also cite **United States v. Hernandez-Meza,** 720 F.3d 760, 768 (9th Cir. 2013), for the proposition that the government's discovery obligations are based on "a low threshold."  But, that case involved the failure of the government to disclose an immigration naturalization document that was in the government's possession and arguably related to the Defendant's defense. *Id*.

In sum, none of the cases you cite require the government to produce rough notes of witness interviews—particularly from *non-testifying* witnesses. Certainly we would not be required to disclose notes of witnesses that the government doesn't intend to call at trial. That said, if you have a case in the District of Arizona where the Court required the prosecution to disclose rough notes (that were not adopted by the witness) we would be happy to consider it. Despite routine requests from defense counsel I have never had a Court in this District order the rough notes of either a testifying or non-testifying witness in my career at the U.S. Attorney's Office.

*Fourth* and more importantly, your requests ignores the requirement to receive discovery under Rule 16. A defendant "'must make a threshold showing of materiality, which requires a presentation of facts which would tend to show that the Government is in possession of information helpful to the defense.'" *United States v. Steever*, 603 F.3d 747, 752 (9th Cir. 2010) (quoting *United States v. Santiago,* 46 F.3d 885, 894 (9th Cir. 1995)); *United States v. Little,* 753 F.2d 1420, 1445 (9th Cir. 1985). "Rule 16 permits discovery that is 'relevant to the development  of a possible defense.'" *United States v. Mandel,* 914 F.2d 1215, 1219 (9th Cir. 1990). "[G]eneral description [s] of the information sought [or] conclusory allegations of materiality" are insufficient a defendant must present facts which would tend to show that the

Government is in possession of information helpful to the defense." a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense.". *Id.* Here, you only speculate that you "think" these witness will be helpful to the defense without providing any factual support.

Regarding your specific request for notes attached to FBI 302s, we have previously disclosed those documents:

a. Staca Shehan's notes are within the production from NCMEC on 05/22/2017 [Collectively, NCMEC 00001 – NCMEC 000076]
   i. The NCMEC numbers here are added to provide some additional clarity as this 76-page document was given at least three sets of disclosure production numbers in Relativity, but the NCMEC stamps are consistent on the documents.
   ii. Two other sets of numbers begin with DOJ-BP-0004742221 as another copy of NCMEC 000001 and DOJ-BP-0004742298 as another copy of NCMEC 000001.
b. Ernie Allen's typed notes from early meetings run from DOJ-BP-0004735623 through DOJ-BP-0004735629 [Also stamped NCMEC 000001 – NCMEC 000007]
   1. Meeting dates covered are 11/30/2010 (call), 03/01/2011 (meeting), 03/31/2011 (Moon meeting),
c. Staca Shehan's hand-written notes from DOJ-BP-000473630 through DOJ-BP-0004735659. [Also stamped NCMEC 000008 – NCMEC 000037]
   i. John Shehan is noted as being in some of those meetings, but Staca was the notetaker.
   ii. Dates noted are 06/03/2011, 7/11/2011, 09/08/2011, 10/12/2011, 02/21/2012, 04/19/2012, 07/30/2012, 08/27/2013
d. John and Staca Shehan both summarized several meetings starting with June 11, 2011 in a lengthy e-mail chain of messages addressed primarily to Ernie Allen that run from DOJ-BP-0004735660 through DOJ-BP-0004735675. [Also stamped NCMEC 000038 – NCMEC 000053]
   i. John sends the messages for June 11, 2011 and July 11, 2011.
   ii. Staca sends the messages for September 9, 2011 (re 09/08/2011), October 13, 2011 (re 10/12/2011), December 14, 2011 (re 12/12/2011), February 22, 2012 (re 02/21/2012) and April 19,2012
e. Michelle Collins sends a separate e-mail to Allen (copying John) on April 20, 2011 on the April 19, 2011 meeting with Moon that runs from DOJ-BP-0004765676 through DOJ-BP-0004765677. [Also stamped NCMEC 000054 – NCMEC 000055]
f. Staca Shehan ends an e-mail to John Ryan and others summarizing a meeting with Moon and McDougall on 08/27/2013, which runs from DOJ-BP-

May 13, 2020
Page 4 of 5

       0004735678 to DOJ-BP-0004735680. [Also stamped NCMEC 000056 – NCMEC 000058

2. Ernie Allen correspondence and notes (in addition to those noted above in item 2b) can be found at:

    a. DOJ-BP-0004740863 through DOJ-BP-0004741563 [Also stamped NCMEC 000077 – NCMEC 000777 and currently numbered as Gov Exhibit 77]

    b. DOJ-BP-0004741606 through DOJ-BP-0004742211 [Also stamped NCMEC 000778 - NCMEC 001383 and currently numbered as Gov Exhibit 78]

3. NYC Counsel meeting with Brad Lander-- DOJ-BP-0004740419 through DOJ-BP-0004740619. McDougall's written testimony or statement for the same meeting is attached and runs from DOJ-BP-0000004553862 to DOJ-BP-0004553871.

As for your request regarding Brian Alstedt, there is nothing to suggest he adopted the subject notes. Thus, we are not obligated to disclose any notes related to this interview. As we have repeatedly articulated to Defendants in this case, the government is well-aware of its obligations under Rule 16, *Brady*, and 18 U.S.C. § 3500 and will continue to fully comply with them. *See CR* 810-1.

Next, you again request any statements of Ferrer and Hyer *prior* to the March 28, 2018 indictment. Neither Hyer nor Ferrer made any statements to state or federal law enforcement and/or prosecutors prior to that date. The dates of when they met and provided interviews is set forth in their reports of interviews that have been provided. Any agreements regarding the forfeiture of assets are contained within the plea agreements. As for your request for communications with Ferrer's and Hyer's attorneys prior to when they commenced cooperation, we direct you to the response we provided the defense in our correspondence dated November 16, 2018. Mr. Piccarreta never responded to our request to provide authority for the discovery request and nor do you in your April 24th letter.

Lastly, I appreciate you attaching the order related to the discovery request in the Lori Laughlin case, but it just confirms that the facts there do not exist here. Neither Ferrer nor Hyer were directed to engage in proactive cooperation either before or after indictment. In sum, they never recorded phone calls, or met with targets at the direction of either state or federal prosecutors or investigators either before or after indictment.

If you have any additional questions regarding discovery please do not hesitate to contact us. If you are unsatisfied with our response we would ask that you provide counter authority before filing a motion. If you choose to involve the Court in this issue, despite our efforts to be responsive to your requests, please include our correspondence from March 27th, April 10th and this letter as attachments.

May 13, 2020
Page 5 of 5

                                      Sincerely,

                                        MICHAEL BAILEY
                                        United States Attorney
                                        District of Arizona

                                        */s Kevin Rapp*
                                        KEVIN M. RAPP
                                        Assistant U.S. Attorney

KMR/zs