**feder law office p.a.**
2930 East Camelback Road, Suite 160
Phoenix, Arizona 85016
602-257-0135 phone
602-954-8737 fax
bf@federlawpa.com
Bruce Feder – State Bar No. 004832
Attorney for Defendant Scott Spear

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| United States of America, | CASE NO. CR2018-00422-003-PHX-SMB |
|---|---|
| Plaintiff, | **DEFENDANT SPEARS' REPLY IN SUPPORT OF MOTION FOR ISSUANCE OF RULE 17(c) SUBPOENAS** |
| v. | |
| Scott Spear, | (Assigned to the Hon. Susan M. Brnovich) |
| Defendant. | |

Defendant's Motion for issuance of Rule 17(c) subpoenas should be granted. As an initial matter, the government does not have standing to challenge Defendant's motion, as the motion does not seek records from the government.  In any event, the government's objections to the subpoenas largely rely on the misguided extrapolation of non-binding *dicta* from cases involving subpoenas that were very different in both scope and content than those at issue here. Further, as the motion sufficiently demonstrates, defendant has met his burden of establishing the *Nixon* factors,

- 1 -

3659943.1

specifically: (1) relevancy; (2) admissibility; and (3) specificity.  The Court's analysis need go no further.

## A.    The Government Has No Standing to Challenge Defendant's Third-Party Subpoenas.

The government lacks standing to challenge the issuance of third-party subpoenas – its "response" in opposition to the issuance of the subpoenas should therefore be stricken and/or disregarded.  "As the Supreme Court has explained, it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under rule 17(c) is for a proper purpose." *U.S. v. Tomison*, 969 F.Supp. 587, 594 (E.D. Cal. 1997), *citing Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951) ("[T]here is no reason to suppose that the government's participation is required to ensure that the court performs its duty in determining that the requisites for issuing the subpoena have been demonstrated. . ."); *see also, e.g., U.S. v. Jenkins*, 895 F.Supp. 1389, 1397 (D. HI 1995) ("Just because the decision to  allow pretrial production is left to the court does not mean that it should be heard in an adversary proceeding.").

Further, Rule 17(c) expressly provides that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive. Fed R. Crim. Pro. 17(c)(2).  This language indicates that "the party to whom the subpoena is directed is the *only party* with 'standing' to oppose it.  This is because no matter what interest a

party to whom the subpoena is not directed may have, it does not arise out of the difficulty of compliance." *Tomison*, 969 F.Supp. at 591-92 (emphasis added). "Accordingly, ***the government lacks standing*** to raise the exclusive grounds for quashing the subpoena, since it lacks the *sine qua non* of standing, an injury in fact relative to those grounds." *Id.* at 596 (emphasis added).

There are exceptions to this rule that are not applicable here – a party may have standing to move to quash a subpoena issued to another when the subpoena infringes upon the movant's legitimate interests. *U.S. v. Ramos*, 2014 WL 8817652, *3 (C.D. Cal. Sept. 17, 2014), *citing Tomison*, 969 F.Supp. at 596.   In other words, the government may have standing to oppose a third-party subpoena when it infringes on the government's interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on the witness's credibility." *U.S. v. Lester*, 2016 WL 5109611, *2 (E.D. Cal. Sept. 19, 2016).  *Accord U.S. v. Somnang Chea*, 2019 WL 2465492, *2-3 (E.D. Cal. June 13, 2019) (same).  In the instant case, however, the only "interest" set forth by the government is ensuring Defendant's compliance with the prerequisites of Rule 17, which is the duty of the Court, not the government.  Courts in the Ninth Circuit do not consider this to be a legitimate government interest.  *See Ramos*, 2014 WL 8817652 at *3; *U.S. v. Ortiz*, 2013 WL 6842559 (N.D. Cal. Dec. 27, 2013) ("The government argues that it has an

- 3 -

interest in ensuring that defendants properly comply with Federal Rule of Criminal Procedure 17(c). This is not a legitimate interest that would confer standing upon the government."); *U.S. v. Johnson*, 2014 WL 6068089, *3 (N.D. Cal. Nov. 13, 2014) ("The Government . . . seeks to police Defendant's use of the Federal Rules of Criminal Procedure, calling Defendant's subpoenas an "improper fishing expedition" . . . The Government's [] argument for standing is invalid . . ."). The government plainly lacks standing to challenge the subpoenas at issue. *Tomison*, 969 F.Supp. at 596.

**B.    The Court Should Disregard the Government's Response As It Has No Standing and Find That Defendant's Subpoenas Meet the *Nixon* Standard.**

A Rule 17(c) subpoena must meet the tests of "(1) relevancy; (2) admissibility; and (3) specificity." *Nixon*, 418 U.S. at 700.

**1.    Defendant Has Sufficiently Demonstrated That He Seeks "Relevant" Information.**

The Ferrer subpoenas at issue seek that which the government claims it does not possess, but noticeably absent from the government's protestations are any declarations from California or Texas state authorities that they do not possess evidence relating to the complex federal and state plea agreements entered into by Mr.

- 4 -

Ferrer or the related (and complicated) forfeiture and privilege waiver agreements.[1]  It is virtually impossible that these agreements were negotiated without *some* prosecutorial agency's participation, before April 5, 2018, as the government suggests. To assert that such negotiations and agreements are not relevant, admissible, and specific borders on the absurd. Similarly, evidence related to NCMEC's assertion at a DOJ function that it facilitated and substantially influenced the present prosecution is also obviously relevant.

In other words, the documents sought have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Zhiqiang Zhang*, 2012 WL 195509, *2, *quoting* Fed. R. Evid. 401.  Especially when this standard, as it must be, is applied "leniently."  *Johnson*, 2014 WL 6068089, *7; *see also, e.g., U.S. v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) ("Because the government has not yet seen the documents, it would be unreasonable to expect a more detailed connection be provided between the contents of the documents and the ultimate facts at issue in the case.").

---

[1] If neither California nor Texas possess any such documents, however, it would be neither unreasonable or oppressive for them to respond to the subpoenas saying that is the case.

- 5 -

The government erroneously argues that the subpoenas result in an inappropriate "fishing expedition" or the "mere hope" that they might turn up evidence. Resp. at 5-6.   The government's boilerplate response, however, does nothing to refute the Defendant's threshold showing of relevancy.   For example, the government misguidedly cites *U.S. v. Hang*, 75 F.3d 1275 (8th Cir. 1996), for the proposition that the subpoenas in the instant case do not meet the threshold showing of "relevancy." Resp. at 5.   Unlike the subpoenas in the instant case, however, in *Hang,* the subpoenas were "based on nothing but sheer speculation" regarding the "mental health of certain prosecution witnesses," and the defense was "hard-pressed" to justify its request.   *Id*. at 1283.   Similarly, the government's discussion of "immunity" and "corroborating" evidence (Resp. at 6) has no bearing on whether the documents sought in the instant case have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."   *Zhiqiang Zhang*, 2012 WL 195509, *2, *quoting* Fed. R. Evid. 401.   Defendant has provided sufficient information to easily clear the "relevancy" threshold.

## 2.   Defendant Has Sufficiently Demonstrated That He Seeks "Admissible" Information.

Once the Court has determined that material sought is relevant, it must ask whether the material would be admissible.   "This inquiry is largely governed by the

Federal Rules of Evidence." . . . . Because it is often difficult at the pretrial stage 'to determine with precision the admissibility of certain documents. . . if a document is arguably relevant and admissible under the Rules of Evidence. The *Nixon* 'evidentiary' requirement is likely satisfied.'" *Zhiqiang Zhang*, 2012 WL 195509, *2 (N.D. Cal. 2012).  The government ***does not argue*** that the subpoenas at issue do not meet the "admissibility" requirement.  In any event, the documents sought involve admissible plea and other negotiations and benefits, as well as promises and evidence of influence by a private entity over the prosecution decision of the government. Because the documents sought are "arguably relevant and admissible under the Rules of Evidence," they easily meet the requisite standard. *Id.; see also, e.g., U.S. v. Libby*, 432 F.Supp.2d 26, 31 (D.D.C. 2006) ("[I]t will often be difficult at the pretrial stage to determine with precision the admissibility of certain documents; therefore, if a document is arguably relevant and admissible under the Rules of Evidence, the *Nixon* 'evidentiary' requirement is likely satisfied.").

### 3.    Defendant's Subpoenas Meet the "Specificity" Requirement.

The *Nixon* Court "recognized that in some instances it may be impossible to 'describe fully' the documents; therefore, the Court concluded that the specificity requirement could be satisfied if there is a 'sufficient likelihood,' demonstrated

through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F.Supp.2d at 31, *citing Nixon*, 418 U.S. at 700.

Courts have consistently recognized that "one of the major purposes of the specificity requirement is to provide the subpoenaed party or other party having standing with enough knowledge about what documents are being requested so as to lodge any objections on relevancy or admissibility." *Id*. at 32. (citations omitted). The instant subpoenas provide the subpoenaed party with more than enough information to make any such objections.

The government again relies on inapposite cases that involve subpoenas that bear no connection to the ones Defendant seeks here. Resp. at 7, *citing U.S. v. Arditti*, 955 F.2d 331 (5th Cir. 1992) (seeking broad categories of privileged documents from the government) and *U.S. v. Johnson*, 2008 WL 62281 (N.D. Cal. Jan. 4, 2008) (with no basis to presume that any such records exist, "broadly seeking any complaints filed against the arresting officers and records that may possibly call into question the veracity of the aged battery victim"); *but c.f., e.g., U.S. v. Avenatti*, 2020 WL 508682, *5 (S.D.N.Y. Jan. 31, 2020):

> Avenatti contends that email and text message communications between Franklin and Auerbach . . . are certain to contain relevant information about this case because the only logical reason they would be mentioning Mr. Avenatti is in relation to the charges in this case. . . Moreover, this request is sufficiently specific in that it is limited to communications between two government witnesses about a specific subject matter – Mr.

- 8 -

Avenatti. *See U.S. v. Skelos*, No. 15 Cr 317, 2018 WL 22545438, *6-7 (S.D.N.Y. 2018) ("This request meets the specificity requirement of *Nixon* in that it specifies communications with a particular person on a particular subject matter.").

Defendant seeks plea and other agreement evidence that must exist or there could not have been disposition agreements for Ferrer and Hyer.  NCMEC alleges publicly that it lobbied DOJ to prosecute, where it was refused such prosecution previously.

Here, there is a "'sufficient likelihood,' based on rational inferences, that the information sought is both relevant and admissible."  *Zhiqiang Zhang*, 2012 WL 195509, *2, *citing Nixon*, 418 U.S. at 700; *Libby*, 432 F.Supp.2d at 31.  The instant subpoenas "specify communications with a particular person on a particular subject," *Avenatti*, 2020 WL 508682, *5, namely Messrs. Ferrer and Hyer, and communications regarding NCMEC's influence on the government's decision to prosecute. Significantly, in discovery disclosed by the government, Ernie Allen, who formerly headed NCMEC, alleged that he was told by former Attorney General Eric Holder, prior to 2016, that the DOJ could not appropriately prosecute Backpage.[2]  Evidence of the reasons for the changed decision in 2018 is relevant, admissible and specific.

---

[2] Since these documents would arguably constitute Jencks material, such documents will be filed under seal, if the Court deems it necessary to review such documents.

- 9 -

Further, evidence of plea, forfeiture and immunity discussions and promises as to Ferrer and Hyer are relevant, admissible, and specific. *See, id*.  As discussed above, the subpoenas sought here meet the threshold showing of "specificity."

**C.     Assuming, *Arguendo,* That the Government Had Standing to Challenge the Subpoenas, Its Remaining Arguments are Unavailing.**

Having met the threshold showing of the three-prong test set forth in *Nixon* and its progeny, the Court's analysis need go no further. Notwithstanding, the government crafts various arguments regarding the general prohibitions on subpoenaing attorney client communications, witness statements, and impeachment evidence.  Resp. at 8-10.  These arguments are purely speculative and ill-founded.  The subpoenas do not seek privileged communication between third-party lawyers and their clients, but rather seek non-privileged discussions between, on the one hand, attorneys and their clients, and on the other, law enforcement.

Also, contrary to the government's suggestion, the subpoenas also do not seek witness statements, especially since the government has been ordered to, and purportedly has complied with such order.  Rule 26.2 defines a witness statement as "(1) a written statement that the witness makes and signs, or otherwise adopts or approves; (2) a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a record; or (3) the witness's statement to a grand jury . . ."  Fed. R. Crim. Pro. 26.2; *see*

- 10 -

*Johnson,* 2014 WL 6068089,*5, citing U.S. v. Miller*, 771 F.2d 1219, 1231 (9th Cir. 1985) ("The Jencks Act is, by its terms, applicable only to writings which are signed or adopted by a witness and to accounts which are substantially verbatim recitals of a witness' oral statements."); *U.S. v. Spencer*, , 618 F.2d 605, 606 (9th Cir. 1980) (notes which are a "not complete, are truncated in nature, or have become an unsiftable mix of witness testimony, investigator's selections, interpretations, and interpolations" are not producible 'statements' under the Act).

Finally, the government, without substantiation, argues that the subpoenas seek "impeachment" evidence. It is well settled that, "the need for evidence to impeach witnesses is [generally] insufficient to require its production in advance of trial. However, such materials might otherwise be subject to a rule 17(c) subpoena where they have some other valid potential evidentiary uses." *Johnson*, 2014 WL 6068089, *2, *quoting Nixon*, 418 U.S. at 702; *Ramos*, 2014 WL 8817652, *4. The general bar on impeachment subpoenas does not apply when there are "other valid evidentiary uses for the same material." *Johnson*, 2014 WL 6068089, *6, *citing Nixon*, 418 U.S. at 702. In the instant case, the subpoenas seek much more than impeachment evidence. The evidence sought is necessary to prepare for trial, to facilitate further investigation, and to gather exhibits. o the extent such material may be disclosed, it would have "some other valid potential evidentiary uses." *Id.*

- 11 -

**D.     Conclusion.**

The Court should grant the Motion and issue the Rule 17(c) subpoenas.  If the Court decides that the subpoenas need to be more specific, it can grant leave to submit amended subpoenas.

RESPECTFULLY SUBMITTED this 13th day of July, 2020.

**FEDER LAW OFFICE, P.A.**


By:   _s/Bruce Feder_                    r
Bruce Feder
Attorney for Defendant Scott Spear

- 12 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of June, 2020, I electronically transmitted Defendant Scott Spear's Motion for Issuance of Subpoenas to the Clerk of the Court via the CM/ECF system for filing.

**COPY** of the foregoing emailed
this 13th day of June, 2020 to:

**The Honorable Susan M. Brnovich**
Brnovich_Chambers@azd.uscourts.gov

**Erin E. McCampbell,** emccampbell@lglaw.com
**Ariel A. Neuman,** aan@birdmarella.com
**Paul J. Cambria,** pcambria@lglaw.com
**Thomas H. Bienert,** Jr. tbienert@bienertkatzman.com
**Whitney Z. Bernstein,** wbernstein@bienertkatzman.com
**Gary S. Lincenberg,** glincenberg@birdmarella.com
**Gopi K. Panchapakesan,** gpanchapakesan@birdmarella.com
**Michael D. Kimerer,** mdk@kimerer.com
**Rhonda Elaine Neff,** rneff@kimerer.com
**David S. Eisenberg,** david@deisenbergplc.com
**Joy Malby Bertrand,** Joy.Bertrand@gmail.com
*Attorneys for Defendants*

**Kevin Rapp** Kevin.Rapp@usdoj.gov
**Andrew Stone** Andrew.Stone@usdoj.gov
**Margaret Perlmeter** Margaret.Perlmeter@usdoj.gov
**John Kucera** John.Kucera@usdoj.gov
**Reginald T. Jones** reginald.jones4@usdoj.gov
**Peter Kozinets** Peter.Kozinets@usdoj.gov
*Attorneys for United States of America*

*By: /s/ Mali Evans*

- 13 -

3659943.1