**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-001-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Motion in Limine to Preclude Expert Testimony (Doc. 928.) to which the Government has responded. (Doc. 958.)   The Government has also filed the United States' Motion to Preclude Defendants' Noticed Experts. (Doc. 905.)   Defendants' filed a response (Doc.  956.) and requested oral argument.  The motions are related and so the Court enters a ruling on both motions in limine here. The Court has determined that oral argument is unnecessary to decide these motions. L.R. Civ. 7.2(f).

## I.    BACKGROUND

Defendants are former officers, executives, and employees of Backpage.com, a classified advertisement website.  On July 25, 2018, a federal grand jury returned a 100-count Superseding Indictment against Defendants alleging their commission of numerous criminal acts—conspiracy, violations of the Travel Act, and money laundering—in the

operation of Backpage.com ("Backpage"). "The SI contains a lengthy summary of the alleged facts." *Lacey*, 423 F.Supp.3d at 753. Within its 92 pages, it alleges Defendants "were aware that the overwhelming majority of the website's 'adult' and 'escort' ads were actually ads for prostitution and took a variety of steps to intentionally facilitate that illegal activity." (SI ¶ 34; *see also id.* ¶¶ 9-11.) It also alleges Defendants strategized to increase the number of prostitution ads on Backpage.com and evade detection by moderating the website and sanitizing the postings. (*Id.* ¶¶ 10-11, 13, 35-70, 72-73, 75, 77-96, 98-104, 108, 110, 112, 116-26, 128-30, 132-34, 136, 139, 143, 145, 148.) It further alleges these strategies were created to "conceal the true nature of the ads on the website," (*Id.* ¶ 11.), identify prostitutes currently advertising on rival websites and offer them free ads on Backpage.com in an attempt to secure future business (*Id.* ¶¶ 35-44.), engage with The Erotic Review to create reciprocal links, and enter into formal business arrangements with known prostitutes for repeat business. (*Id.* ¶¶ 45-67.)

The Government has disclosed ten experts to testify about sex trafficking and child sex trafficking. The proposed testimony was described as follows in the Government's disclosure (Doc. 422.):

    1.  Christina Decouflé (Human Trafficking)

      Detective Decouflé will provide testimony at trial about how human trafficking, with a focus on sex trafficking occurs, and how it occurs through online media, such as social networking websites, applications, and the internet in general. Detective Decouflé has been a law enforcement officer with the Phoenix Police Department since 2000. In 2005, she became a detective in the Vice Enforcement Unit. In 2013, Detective Decouflé became a member of the Federal Bureau of Investigation, Human Trafficking Task Force, Phoenix Division. The Ninth Circuit has affirmed the expert testimony of Detective Decouflé in the area of human trafficking and this court should permit Detective Decouflé to testify as to her expert opinions here. *See United States v. Brooks*, 610 F.3d 1186, 1195-96 (9th Cir. 2010).

      Detective Decouflé will describe how sex trafficking and prosecution industries

have changed with the advent of the internet, including websites such as www.craigslist.com, www.backpage.com, and others. Detective Decouflé will describe how law enforcement conducts human trafficking investigations; with a focus on how investigations shifted from craigslist.com to backpage.com. She will testify about her knowledge of The Erotic Review (TER), it's owner David Elms, and TER's connection to websites such as craigslist.com and backpage.com. Detective Decouflé will describe how she posted advertisements on online websites like craigslist.com and backpage.com advertising herself (undercover) as seller of commercial sex. She will compare and contrast how different prostitution websites (including craigslist and backpage) operated and how they responded to law enforcement. She will also testify about descriptors and definitions of terms often used in sex trafficking and the prostitution industry, such as "trick," "John," "pimp," "the game," "dates," "choosing up," as examples. Lastly, Detective Decouflé will discuss the relationship between sex traffickers and pimps and their victims. She will describe the methods and process traffickers and pimps utilize to entice, coerce, or control their victims.

The bases and reasons for the opinions summarized above centers around Detective Decouflé's extensive experience conducting sex trafficking investigation. Detective Decouflé has an extensive experience interviewing prostitutes, pimps, and individuals who solicit commercial sex and has herself has engaged in numerous investigations requiring knowledge of the methods that sex traffickers and pimps utilize, whether through online media or through face-to-face contact, to recruit women into prostitution. Detective Decouflé has interviewed hundreds of victims and survivors, which enables her to understand the particular language and methods utilized in the prostitution industry.

2.   Dominique E. Roe-Sepowitz, M.S.W., Ph.D. (Sex Trafficking)

Dr. Roe-Sepowitz is expected to testify as a fact witness in this matter, regarding her interactions with Backpage, the National Center of Missing and Exploited Children (NCMEC), human sex trafficking prevention and outreach groups in relation to Backpage related prostitution advertising, as well as Backpage related interactions with state and

federal law enforcement. In an abundance of caution, however, the government provides notice identifying Dr. Roe-Sepowitz as a potential "expert" in the area of human trafficking, specifically, sex trafficking.

Dr. Roe-Sepowitz is an Associate Professor in the School of Social Work at Arizona State University. She is the director of the Office of Sex Trafficking Intervention Research at Arizona State University. Dr. Roe-Sepowitz's area of specialty and expertise is in human sex trafficking with juveniles and adults, with an aim on prevention and awareness, intervention and treatment.

Dr. Roe-Sepowitz can testify about her research in the area of human sex trafficking. Specifically and recently, Dr. Roe-Sepowitz participated in (1) a six year analysis of sex trafficking of minors: exploring characteristics and sex trafficking patterns; (2) a Las Vegas based study on how violence is often tied to teen sex trafficking; and (3) a Hawaii based study exploring online sex buyers in Hawaii. Dr. Roe-Sepowitz has also researched the impact the Super Bowl had on sex trafficking. Dr. Roe-Sepowitz's research can be found at https://socialwork.asu.edu/stir/research. While the government intends for Dr. Roe-Sepowitz to testify as a fact witness at trial, her education, training, and experience, could lead one to believe that she is an expert in the area of human sex trafficking.

3. Sharon W. Cooper, M.D. (Sex Trafficking)

Dr. Cooper will testify about (1) how a victim can fall into the world of sex trafficking, through the grooming process, force, or abduction, etc. and why certain victims may be targeted; (2) the harmful, lasting impact sex trafficking can have on its victims, primarily child victims; (3) the relationship and loyalty a child sex trafficking victim may have and show towards her trafficker; (4) common ways a sex trafficker can use force, fraud, and coercion to maintain control over his victims; (5) reasons why child sex trafficking is cited as the most underreported form of child abuse; and (6) the role Backpage played in the victimization of her patients and clients.

Dr. Cooper is a developmental and forensic pediatrician who evaluates and treats children who have been victims of all forms of abuse, with a primary area of expertise in

sexual exploitation. She is a member of the Board of Directors for the National Center for Missing and Exploited Children and a retired Colonel with the United States Armed Forces. Dr. Cooper has testified before the United States Congress, the Russian Parliament, the Italian Senate and the European Commission on child sexual exploitation. She has also testified as an expert medical witness in over two dozen federal trials. Dr. Cooper is familiar with how victims were trafficked on Backpage and her opinions will be based on her education, training, and her clinical and forensic experiences treating victims of sex trafficking.

4. James Hardie

Supervisory Special Agent James E. Hardie will testify about (1) terminology commonly used the sex trafficking, such as pimp, "bottom bitch," MOB (money over bitches), "date," "roses" (money), "the game", etc.: (2) common dynamics between sex traffickers and their victims and how a trafficker may use drugs, force, fraud, and coercion to maintain control over their victims; (3) how human trafficking takes place in our communities from a law enforcement prospective; and (4) the role of the internet and Backpage played in his knowledge and understanding of human trafficking and how Backpage became part of the law enforcement investigations for human trafficking over the years.

Supervisory Special Agent Hardie began investigating sex trafficking cases involving both minor and adult victims in 2008, which has resulted in his experience in interviewing hundreds of victims and witnesses and two dozen pimps or traffickers. From 2008 – 2013, Agent Hardie served as the coordinator of the FBI's Violent Crimes Against Children Task Force in Ohio. From 2013 – 2015, he served as the FBI's representative to the National Center for Missing and Exploited Children (NCMEC), where he coordinated sex trafficking reporting between NCMEC and the FBI child exploitation task forces. Since 2011, Supervisory Special Agent Hardie has presented or provided instruction at conferences and seminars, internationally and domestically, in the area of sex trafficking.

Supervisory Special Agent Hardie's opinions are based on his training and

1   experience in the area of human trafficking.

2      5. Derek Stigerts

3      Investigator Stigerts will testify about (1) how sex trafficking occurs; (2) common

4   terminology used by individuals involved in sex trafficking; (3) the role of the internet and

5   technology in human trafficking; (4) methods of recruitment, manipulation, and control by

6   a trafficker with his victims; and (5) the role the internet and Backpage has played in human

7   trafficking.

8      Investigator Stigerts has been involved in the investigation of human trafficking

9   offenses for over a decade. Investigator Stigerts has interviewed over 300 females involved

10  in prostitution, including 80 juvenile victims, as well as over 30 suspected pimps or

11  traffickers. He has presented at instructional courses presented by NCMEC and the FBI.

12  Investigator Stigerts' opinions are based on his training and experience in the area of

13  human sex trafficking.

14     6. Shannon Wolf, Ph.D., LPC-S

15     Dr. Wolf will testify about the connection between trauma bonds and personal

16  identity in victims of sex trafficking and how to understand them, including ways to interact

17  with child sex trafficking victims to avoid secondary trauma, and the role Backpage has

18  played in causing trauma victims trafficked through its website. Dr. Wolf is a licensed

19  professional counselor with supervisory status and a Professor of Psychology and

20  Counseling at B.H. Carroll Theological Institute. Dr. Wolf's provides counseling and

21  therapy to victims of sex trafficking and her current research focus is on child sex

22  trafficking.

23     7.  Staca Shehan, Executive Director Case Analysis Division, NCMEC

24     Ms. Shehan is a fact witness as she met on several occasions with Backpage

25  Defendants. Ms. Shehan is the Executive Director of the Case Analysis Division at the

26  National Center for Missing and Exploited Children (NCMEC). As a result of her

27  employment, Ms. Shehan's testimony will cover topics that could be perceived as expert

28  testimony. In an abundance of caution, the government provides notice identifying Ms.

Shehan as a potential "expert" in the area of human trafficking, sex trafficking, and child exploitation.

Specifically, Ms. Shehan will testify to the creation of a dedicated Child Sex Trafficking Team at NCMEC to respond to the increased need for technical assistance and analysis in cases involving child sex trafficking. These unique resources include analysis of potential suspect names or aliases, unique tattoos, link analysis about child sex trafficking victims/potential victims, telephone numbers, addresses and/or link analysis about child sex trafficking victims/potential victims, telephone numbers, addresses and/or online postings.

The government reserves the right to question the expert regarding other matters that may be raised during cross-examination by Defendants, based upon testimony provided by defense experts (if any), or other witnesses and evidence introduced by Defendants. This disclosure of the government's notice of expert witnesses also serves as the government's request for notice of rebuttal or expert testimony by Defendants, pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

8. Donna Gavin

From July 2009 to October 2016, Lieutenant Detective Donna Gavin served as a Sergeant Detective/Commander of the Boston Police Department's Human Trafficking Unit. She later served, from May 2016 to April 2019, as the Lieutenant Detective for the Boston Police Department's Crimes Against Children and Human Trafficking Units. She has extensive experience investigating prostitution, human trafficking and child sex trafficking crimes involving victims who were advertised on Backpage. On August 13, 2015, Lieutenant Detective Gavin provided a declaration in the Northern District of Illinois that described Backpage's role in the Boston-area sex trade. Lieutenant Detective Gavin is expected to testify consistent with her August 13, 2015 declaration, and will provide additional relevant details about Backpage's operations in the Boston area. She is also expected to testify that, in her professional experience as a law enforcement officer for over 30 years, the "adult" section of Backpage not only contained ads for illegal activity,

including prostitution, solicitation and trafficking, but it was also the primary source for such ads and was well known for that purpose in the sex trafficking industry in Boston, Massachusetts, until the site was shut down in 2018. Further, Lieutenant Detective Gavin is expected to testify that Backpage "adult" section provided a vehicle and anonymity for its users who exploited and trafficked young women and girls, that it provided no legitimate service and that nearly all the cases the Boston Police Department's Human Trafficking Unit found associated with Backpage involved pimp-controlled prostitution.

While the government does not believe that Lieutenant Detective Gavin's testimony will involve any opinion testimony, it provides this information out of an abundance of caution and in the event that any of any her testimony is deemed to constitute expert opinion testimony. Lieutenant Detective Gavin's opinions are based on her training and experience in the areas of human trafficking, crimes against children and sexual assault.

7. Thomas Adam Umporowicz, Jr.

Detective-Sergeant Thomas Adam Umporowicz Jr. is the Detective-Sergeant in charge of the Seattle Police Department's Vice/High Risk Victims Unit, a position that he has held since 2014. He has also served as the Human Trafficking Task Force Sergeant for the Seattle Police Department. He has more than 30 years of law enforcement experience, and has trained other law enforcement agencies in the United States in the areas of human trafficking and internet crimes against children.

On August 14, 2015, Detective-Sergeant Umporowicz provided a declaration that was filed in the Northern District of Illinois. The declaration described Backpage as the primary website in the Seattle, Washington area for those looking to solicit a prostitute, post prostitution ads or traffic prostitutes and minors. In the declaration, Detective-Sergeant Umporowicz opined that in his professional experience:

> [T]he adult section of Backpage.com not only contains ads for illegal activity, including prostitution, solicitation and trafficking, but it is a primary source for such ads and is well known for that purpose in the sex trafficking industry in the city of Seattle and State of Washington. But the way Backpage.com operates and the anonymity it provides its users makes it more

difficult for us to identify and arrest and prosecute these offenders. It is the Seattle Police Department Vice/High Risk Victims Unit position that removing the adult section of Backpage.com would greatly assist to disrupt these sex traffickers' easy means of communication and connection for these illegal activities and therefore would reduce demand for, and access to, the sex trafficking industry within the city of Seattle and the State of Washington. This would be useful in protecting the women and children who are victimized by those numerous individuals who use Backpage.com for these unlawful purposes. In our experience, the adult section of Backpage.com seems to serve no legal purpose.

Detective-Sergeant Umprowicz is expected to testify consistent with his declaration, and is expected to provide other pertinent details and observations about Backpage's operations in the Seattle area through Backpage's closure in 2018. He is also expected to testify about the evolution of prostitution and human trafficking in the Seattle area from the pre-internet era through the rise of Backpage to the post-Backpage era. He will explain how the ease-of-use, convenience and relative anonymity of using Backpage (both as a "john" and as a prostitute or pimp) increased the demand for prostitution services and the supply of persons who were advertised as prostitutes. He is expected to testify that Backpage established a near-monopoly on online prostitution advertising in the Seattle area. He will also explain how, following Backpage's shutdown, the sex trade has partly reverted to street-level prostitution (in hotel lobbies, casinos and on the streets), which has reduced demand and supply and seriously disrupted the sex trade in the Seattle area. He will also explain that Backpage was continually put on notice by law enforcement of its facilitation of prostitution through the issuance of search warrants and subpoenas across the country.

Detective-Sergeant Umprowicz's opinions are based on his training and experience in the areas of law enforcement, prostitution, and human and child sex trafficking.

10. Robert Spectre

In April 2019, Spectre authored the report "Beyond Backpage, Buying and Selling Sex in The United States One Year Later." The report summarizes the immediate online disruption following April 2018 when Backpage was seized and the Stop Enabling Sex

Traffickers Act (SESTA) and Fight Online Sex Trafficking Act (FOSTA) were signed into law. Spectre's analysis concluded that since the events in April 2018 (including Backpage's shut down), the demand for purchasing sex online has been reduced drastically.

Spectre's background includes tracking online sex trafficking beginning in 2014, when he was contacted by Polaris (https://polarisproject.org/human-trafficking/facts) through his company twilio.org, a start-up company that developed text (short code) technology. That technology is utilized by many different businesses, but was also used to reach victims of sex trafficking. Since Twilio, Spectre has worked with the Cook County Sherriff's Office and the New York Police Department to develop deterrence platforms focused on combating sex trafficking.

In 2017, Spectre, while working with the NYPD's Human Trafficking Unit, developed a demand deterrence platform that focused on the demand side of human trafficking. The platform would capture phone numbers of "johns" who responded to decoy ads posted by NYPD on Backpage. When a decoy ad was posted, approximately 150 responses would be captured in a two hour-time frame. Since Backpage was seized, responses have dropped to 20-30 per day, spread among approximately 12 different websites. Spectre's additional qualifications will be provided separately to Defendants.

Defendants noticed 6 experts and 4 general categories where they anticipate expert testimony but have not yet retained anyone.

Defendants' expert witness are as follows (Docs. 500, 538.):

1. Bates Butler:    The Defendants anticipate presenting expert testimony on informant/cooperating witness testimony and sentencing. Mr. Butler is anticipated to testify about the prosecution's use of such witnesses, defense proffers, cooperation agreements and the interpretation and application of such agreements, preparation of informant cooperating witness testimony by the prosecution, plea agreements and sentencing recommendations and expectations. Mr. Butler's opinions will be based on his experience as a former acting United States attorney in the District of Arizona, assistant

United States Attorney, defense lawyer, seminars he has presented and attended, and his over four decades of practicing criminal law.

2.  Roman Weil:   The Defendants anticipate presenting expert testimony on the following topics: (1)  the functions that a Chief Financial Officer ("CFO") performs in a corporate setting, including what is and is not required of a CFO in assessing allegations that a company or one of its subsidiaries has engaged in unlawful conduct; and (2) the loan covenants that are typically included in a seller-financed sale.  Professor Weil's opinions will be based on his education, extensive experience teaching and writing about corporate governance and accounting matters, and service on professional boards.

3.  Alexandra Levy:  The Defendants anticipate presenting expert testimony on the effect of imposing liability on Backpage for advertisements placed by third parties; the utility of online commercial advertisements to law enforcement in identifying and rescuing victims of sex trafficking; sex trafficking and/or prostitution; causation or lack thereof; the practices of Backpage, Craigslist, Facebook, Google, and other Internet providers as such practices pertain to these issues, and rebuttal testimony of various plaintiff's experts including but not limited to Professor Roe-Sepowitz.

Dr. Levy's anticipated testimony will be based on her quantitative and qualitative research, training, academic and outside teaching, practical experience, prior testimony, authorship of books, articles, and other academic or literary papers published in her field of expertise, discussions with other experts and persons responsible for editing and moderation at some of the subject internet providers, review of the books, articles, studies, and seminars on these topics, and other related experience.

4.  Dr. Alexandra Lutnick:  The Defendants anticipate presenting expert testimony on the effect of Imposing liability on Backpage for advertisements placed by third parties; the utility of online commercial advertisements to law enforcement in identifying and rescuing victims of sex trafficking; sex trafficking and/or prostitution; causation or lack thereof; the practices of Backpage, Craigslist, Facebook, Google, and other Internet providers as such

practices pertain to these issues, and rebuttal testimony of various plaintiff's experts including but not limited to Professor Roe-Sepowitz.

The bases of Dr. Lutnick's anticipated testimony is her quantitative and qualitative research, training, academic and outside  teaching, practical experience, prior testimony, authorship of books, articles, and other academic or literary papers published in her field of expertise, discussions with other experts and persons responsible for editing and moderation at some of the subject internet providers, review of the books, articles, studies, and seminars on these topics, and other related experience.

5. Dr. Kimberly Mehlman-Orozco:   The Defendants anticipate presenting expert testimony on the effect of imposing liability on Backpage for advertisements placed by third parties; the utility of online commercial advertisements to law enforcement in identifying and rescuing victims of sex trafficking; sex trafficking and/or prostitution; causation or lack thereof; the practices of Backpage, Craigslist, Facebook, Google, and other Internet providers as such practices pertain to these issues, and rebuttal testimony of various plaintiff's experts including but not limited to Professor Roe-Sepowitz.

Dr. Mehlman-Orozco's anticipated testimony will be based on her quantitative and qualitative research, training, academic and outside teaching, practical experience, prior testimony, authorship of books, articles, and other academic or literary papers published in their field of expertise, discussions with other experts and persons responsible for editing and moderation at some of the subject internet providers, review of the books, articles, studies, and seminars on these topics, and other related experience.

6. William Norman:   The Defendants anticipate presenting expert testimony on the lawful formation of and lawful uses of offshore trusts.

Professor Norman's opinions will be based on his education, training, academic teaching, practical experience, scholarship, presentations, and other related experience.

7. The Defendants anticipate presenting expert testimony on law enforcement officers' investigation and prosecution of sex crimes, including but not limited to prostitution, child

prostitution, and other related crimes; how the assistance of Internet site owners and employees render and impede assistance in these investigations, the terminology used in the sex industry by legal escorts, strippers, fetishists, and illegal prostitution. The expert(s) in this field have not yet been retained, but may include former and/or current FBI agents and state law enforcement officers who worked with Backpage and publicly and privately commended Backpage on its cooperation. The correspondence, with the names, agencies and contact information, relating to this cooperation is in the possession of the government, and has not yet been fully disclosed, notwithstanding the government's Rule 16 and *Brady* obligations.

8.  The Defendants anticipate presenting expert testimony on editing and moderating Internet sites by the owners and employees of the sites, the challenges and expense involved in editing and moderating, the evolving standards of editing and moderating in the Internet provider community from 2004 to the present, the editing and moderating practices of Backpage, Craigslist, Facebook, Google, and other Internet providers and the reasonableness of Backpage practices, the state and federal regulating standards relating to editing and moderating practices, impeachment of the government's experts and other related topics. The expert(s) in this field have not yet been retained, but his/her/their anticipated testimony will be based on said experts' training, academic teaching, practical experience, authorship of books, articles, and other academic or literary papers published, discussions with other experts and persons responsible for editing and moderation at many of the internet providers in the United States, review of the books, articles, studies, and seminars on these topics, impeachment of the government's experts, and other related experience.

9.  The Defendants anticipate presenting expert testimony on the marketing aggregation strategies and techniques used by newspapers both for print and online publications to boost readership and to generate advertising revenue. The expert(s) in this field have not yet been retained, but his/her/their anticipated testimony will be based on said experts' training, academic teaching, practical experience, authorship of books,

articles, and other academic or literary papers published, discussions with other experts and persons responsible for marketing and aggregation strategies and techniques at some of the subject Internet providers, review of the books, articles, studies, and seminars on these topics,  impeachment of the government's experts, and other related experience.

10. The Defendants anticipate presenting expert testimony on the lawful formation of and lawful uses of offshore trusts as a mater of United States and European Union law. The expert(s) in this field have not yet been retained, but his/her/their anticipated testimony will be based on said experts' training, academic teaching, practical experience, authorship of books, articles, and other academic or literary papers published, review of books, articles, studies, and seminars on these topics, and other related experience.

In addition to the information copied above, the Defendants and Government attached the Curriculum Vitae of each expert listed.

Defendant Spear filed a supplemental expert witness disclosure (Doc. 538.) to notice Eric Goldman, Professor of Internet Law at Santa Clara University as a witness.   Professor Goldman intends to offer six opinions: (1) Virtually Every Internet Company Engages in Content Moderation; (2) Content Moderation Practices Are Diverse; (3) Internet Services Rarely Disclose Details About Their Content Moderation Operations; (4) Content Moderation is Socially Beneficial; (5) Congress Wants Internet Services to Moderate Content; (6) Content Moderation Cannot Be Done Perfectly.

## II. LEGAL STANDARD

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of

1   the case.

2       Basically, the rule requires (1) that an expert witness be qualified, (2) that the

3   testimony is reliable, and (3) that the testimony assist the fact-finder.  *See Kumho Tire Co.

4   *v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S.

5   579, 589 (1993); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019).

6   "The Ninth Circuit has articulated a two-prong analysis for admissibility of a qualified

7   expert's testimony."  *United States v. King*, 703 F.Supp.2d 1063, 1068 (D. Haw. 2010).

8   The testimony must be reliable and meet the "fit" requirements of relevancy.  *Id.* at 1068.

9   The relevancy requirement in this situation requires the standard relevancy evaluation

10  under Rule 402 plus an evaluation under Rule 403.  *Id.*

11      Federal Rule of Criminal Procedure 16(b)(1)(c) provides that a defendant's expert

12  disclosures must "describe the witness's opinions, the bases and reasons for those opinions,

13  and the witness's qualifications."

14  **III. DISCUSSION**

15  **A.  Defendant's Motion in Limine**

16      Defendants do not challenge the qualifications of the experts in this motion nor do

17  they challenge reliability.   Rather, they argue the relevance of the proposed expert

18  testimony.   Evidence is relevant if it has "any tendency to make the existence of any fact

19  that is of consequence to the determination of the action more probable or less probable

20  than it would be without the evidence."  *United States v. Vallejo*, 237 F.3d 1008, 1015 (9th

21  Cir. 2001), opinion amended on denial of reh'g, 246 F.3d 1150 (9th Cir. 2001) (quoting

22  Fed.R.Evid. 401).

23      It's Defendants' position that the testimony is not relevant because Defendants are

24  not charged with human trafficking, sex trafficking or child sex trafficking.   They argue

25  that none of the proposed testimony will shed light on whether Defendants "allowed ads to

26  run on Backpage, knowing they were for unlawful prostitution, and with the specific intent

27  to facilitate one or more business enterprises they knew were engaged in unlawful

28  prostitution." (Doc. 928, p. 14.) Defendants mainly rely on the decision in *United States v.*

*D'Ambrosio.* No. 1:15-CR-003, 2016 WL 1385281, at *1 (M.D. Pa. Apr. 7, 2016), aff'd and remanded sub nom; *United States v. Delgado*, 677 F. App'x 84 (3d Cir. 2017). The defendants in *D'Ambrosio* were charged with sex trafficking, and the district court precluded Dr. Cooper's testimony about the culture of pimping, the nature of enterprises associated with sex trafficking, victim vulnerabilities, barriers to exiting, and the multiple aspects of offender dynamics. *Id.* at *2. While Defendants discuss the first reason for precluding the expert testimony (i.e. – that the testimony did not relate to the elements of the offenses with which Defendants are charged), they do not discuss the second part of the court's analysis with which this Court disagrees.

"A fact is also of consequence if it bears upon the evaluation of the probative value to be given to other evidence in the case, such as demonstrative aids and witness credibility." *Id.* at *2 (citing 2 Handbook of Fed. Evid. § 401.1 (7th ed.)). The court in *D'Ambrosio* held that the Government would not be allowed to introduce Dr. Cooper's testimony during its case in chief to aid the jury in evaluating the victim's testimony. In this case, the Court finds that some testimony about the how victims are recruited and controlled and how the internet has changed the dynamics between the pimp and prostitute will help the jury understand and evaluate testimony of any victims in this case. "By and large, the relationship between prostitutes and pimps is not the subject of common knowledge." *United States v. Taylor*, 239 F.3d 994, 998 (9th Cir. 2001) (citing Note, *Men Who Own Women: A Thirteenth Amendment Critique of Forced Prostitution*, 103 YALE L. J. 791, 793-96 (1993)).

Dr. Cooper could also explain certain terms unique to the vernacular of the prostitution and sex trafficking subculture. Such terms include "new in town," "roses," "amber alert," "lollipop special," "GFE," "PSE," "DATY," "in-call, "out-call," "Lolita," and others. (Doc. 958, p. 5.) Such information is not common knowledge for most jurors and would be useful.

Defendants also argue that the testimony should be precluded because it is being used by the Government to present otherwise inadmissible hearsay evidence. Defendants

do not explain this argument at all but rather simply make this allegation.  This issue is better dealt with through objections at trial if the Government attempts to go beyond the proper scope of the experts' testimony.

Finally, Defendants argue that the testimony should be precluded under Rule 403, Fed. R. Evid.  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.  Defendants argue that the testimony should be precluded because of the risk the evidence will be unfairly prejudicial, confuse the issues, and will be cumulative.  The Court agrees that allowing ten experts to testify about this same general area of expertise would be unnecessarily cumulative and unfairly prejudicial.  The Government responded that it intends to designate only one witness as their expert, Dr. Cooper.  However, the Government then continues to explain how the other 9 witnesses at issue will also testify as hybrid witnesses.  The Court has reviewed the descriptions given for the proposed testimony of the witnesses and finds that they overlap in many ways.  Allowing all of them to testify would be unnecessarily cumulative and unfairly prejudicial.  The Government will be limited to one expert witness as to each topic. The Court finds the following areas of expertise to be relevant during the Government's case in chief:

1.    How human/sex trafficking occurs through online media;

2.    How law enforcement conducts trafficking investigations, with a focus on how investigations shifted from craigslist.com to backpage.com;

3.    Explanation of terminology often used in trafficking and prostitution industry;

4.    The relationship between traffickers and pimps and their victims, including common methods a sex trafficker uses to maintain control over a victim.

The Court finds the following areas of expert testimony would not be relevant in this case:

1.  Dr. Roe-Sepowitz proposed testimony about general sex trafficking patterns or the impact of the Super Bowl on sex trafficking  (excluding any testimony she may provide as a fact witness);

2.  Dr. Wolf's proposed testimony about how to interact with victims of sex trafficking to avoid secondary trauma and the role Backpage played in causing trauma to victims trafficked through its website;

3.  Proposed testimony about the benefits of shutting Backpage down or opinion testimony that the adult section of Backpage.com serves no legal purpose;

4.  Testimony about the impact that the shutdown of Backpage.com had on online sex trafficking.

**B. United States' Motion in Limine**

The Government's first argument is that the disclosures are insufficient under Rule 16.  However, as pointed out by Defendants, the disclosures are made in the same format as the Government used to disclose its experts.  This argument fails.

The Government's next argument is related to relevance.  As to Mr. Butler, the Government says that his proposed testimony will not assist the jury.  In *United States v. Davis*, 457 F.3d 817 (8th Cir. 2006), the defendant was precluded from introducing expert testimony about substantial assistance and the mechanics of the federal sentencing process in order to impeach the credibility of the Government's cooperating witness.  The 8th Circuit agreed that the jury did not need this expert testimony to understand that a cooperating witness may have an incentive to incriminate the defendant.  *Id.* at 824.  The Defendants argue that *Davis* is not on point because Mr. Butler is not going to testify about the fact that a cooperator may be biased, but rather about how the cooperation process works in practice.  Defendants have not explained, however, how that testimony would be relevant or necessary.  The Court finds that cross-examination of the cooperating witnesses will be sufficient to emphasize to the jury why the witnesses may be biased.  Additionally, the Court finds that such testimony is properly excluded after an analysis under Rule 403 as such testimony would be confusing the issues.

- 18 -

As to Mr. Weil, the Government argues that testimony about the general functions of a Chief Financial Officer are irrelevant to whether Defendant Brunst, CFO for Backpage, engaged in the alleged conspiracies.  Defendants point to many cases that have allowed this kind of testimony, including *United States v. Heine*, 2017 WL 449632, at *10 (D. Or. Feb. 2, 2017), *United States v. Brooks*, 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010), and *In re Safety-Kleen Corp. Rollins Shareholders Litig.*, 2004 WL 5504972, at *1-2 (D.S.C. Aug. 30, 2004).  The Court agrees that this testimony is relevant and useful specifically as to Defendant Brunst for the jury to understand his role in the overall corporate structure.  The testimony of Mr. Weil will be limited to describing what a CFO does, his role and obligations, but Mr. Weil will be precluded from providing testimony about what Mr. Brunst may have done in the context of this case or anything about his state of mind.

The Government next argues that the testimony of Alexandra Levy, Dr. Alexandra Lutnick, and Dr. Kimberly Mehlman-Orozco should be precluded as cumulative and because their testimony is irrelevant.  The description of their testimony as quoted above is largely the same.  All three are listed to testify about the effect of imposing liability on Backpage for advertisements placed by third parties; the utility of online commercial advertisements to law enforcement in identifying and rescuing victims of sex trafficking; sex trafficking and/or prostitution; causation or lack thereof; the practices of Backpage, Craigslist, Facebook, Google, and other Internet providers as such practices pertain to these issues, and rebuttal testimony of various plaintiff's experts.  The Court finds that some of this testimony is irrelevant to this case.  First, the propriety of holding someone accountable for violating a criminal statute is not the role of the jury.  The jury is to decide if the Government has proven beyond a reasonable doubt that a particular defendant committed a charged offense.  Secondly, it is not relevant to this case whether online commercial advertising has some use in identifying and rescuing victims of sex trafficking.  Testimony about the practices of Backpage may be relevant in rebuttal to the Government's expert testimony, but it is hard to tell because the disclosure is so vague.  At this time, the Court

is prepared to say that Defendants will be limited to one expert per topic as the Government is limited.  No testimony will be allowed as to the effect of imposing liability on Backpage for advertisements placed by third parties or any other policy testimony.  The Government also argues that it does not have enough information to determine whether Dr. Mehlman-Orozco's testimony is reliable.  Therefore, if Dr. Mehlman-Orozco is called to testify, then the Government may request to voir dire the witness.

As to Mr. Norman, the Government argues that the topic of "lawful uses of offshore trusts" is not relevant.  Defendants argue that this expert should be permitted to testify that offshore trusts are a lawful investment vehicle and not useful for concealment of assets.  In short, the Court agrees that his testimony would help the jury to evaluate Mr. Lacey's intent in putting money overseas.  The Court will allow the testimony.

The Government seeks to preclude the testimony of Professor Goldman as it relates to Section 230 of the CDA.  Defendants' notice elaborates on the topics listed for Professor Goldman's testimony to include the following:

> Section 230's immunity does not apply to federal criminal prosecutions. However, the mere fact that an Internet service moderates content cannot support federal criminal liability. A contrary result completely undercuts Section 230. If a service increases its federal criminal exposure by moderating unlawful content, Section 230's civil liability protections would not be enough to encourage Internet services to undertake socially valuable content moderation efforts. Congress did not eliminate the Moderator's Dilemma for civil liability purposes, yet simultaneously recreate it for federal criminal liability. (Doc. 538, p. 5.)

Defendants state that they do not intend to elicit a legal conclusion from Professor Goldman regarding whether Section 230 bars the Government charges.  However, a plain reading of the disclosure shows that they intend to elicit testimony that section 230 should bar prosecution.  Again, that is a policy argument outside the scope of this trial.  Testimony related to the policy behind Section 230 or how it should work will be precluded. Testimony that Section 230 was meant to incentivize internet providers to engage in moderation practices will be allowed.

Finally, the Government seeks to preclude Defendants from presenting expert testimony on the four additional subject matters for which they have failed to identify a witness.  Defendants do not address this failure at all in their response.  Defendants have failed to disclose a witness for these four areas with no explanation and will be precluded from calling a witness on those four areas.

## IV. CONCLUSION

**IT IS ORDERED granting in part** Defendants' Motion In Limine To Preclude Expert Testimony. (Doc. 928.)  The Government will be limited to one expert for any one area of relevance.  Areas of expert testimony not listed above as relevant are precluded.

**IT IS ORDERED granting** in part United States' motion (Doc. 905.) to preclude any expert not yet named (as identified in sections 7, 8, 9, and 10) and the testimony of Mr. Butler and to limit the testimony of Professor Goldman, Alexandra Levy, Alexandra Lutnick, Dr. Kimberly Mehlman-Orozco, and Mr. Weil as described above and **denying** the motion as to William Norman.

Dated this 26th day of October, 2020.

Honorable Susan M. Brnovich
United States District Judge

- 21 -