MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

BRIAN C. RABBITT
Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>   v.<br><br>Michael Lacey, et al.,<br><br>          Defendants. | No. CR-18-422-PHX-SMB<br><br>**UNITED STATES' RESPONSE TO DEFENDANTS' MOTION FOR STAY OF CASE PENDING RESOLUTION OF THE MANDAMUS PETITION (Doc. 1092)**<br><br>Telephonic Oral Argument:<br>Dec. 4, 2020, at 10:00 a.m. |

**Preliminary Statement**

In a meritless attempt to derail the administration of justice, Defendants moved for recusal 17 months after the case was assigned to this Court and after receiving several adverse rulings. The motion was based on widely-available publications dating to 2015, an absurd legal theory that the Court's spouse (who has no involvement in this case) has an undefined "interest" that could be substantially and directly affected by the outcome, and the obsolete notion that a husband's views must be imputed to his spouse. On October 23, 2020, the Court issued a 14-page order that detailed why these claims are factually and legally unavailing, and denied the motion. (Doc. 1075, Order).

Undeterred, Defendants filed a petition for writ of mandamus in the Ninth Circuit raising the same flawed claims, and a motion in this Court seeking a stay pending the petition's resolution. (Doc. 1092.) If granted, the stay would amount to a sixth trial continuance that could run well past the April 2021 trial date. As the Supreme Court has recognized, such a stay "is an intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009). It is "not a matter of right, even if irreparable injury might otherwise result"; rather, it is "an exercise of judicial discretion," and Defendants have the burden of establishing that the circumstances justify grinding this case to a halt for an indefinite period four months before trial. *See id.* at 433-34. Defendants have failed to carry that heavy burden.

First, Defendants have failed to establish a likelihood—or any reasonable possibility—of success on the merits on their petition. A writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes," *Ex parte Fahey,* 332 U.S. 258, 259-60 (1947), and Defendants must demonstrate that their "right to issuance of the writ is clear and indisputable." *Kerr v United States Dist. Ct. for N. Dist. of Calif.*, 426 U.S. 394, 402 (1976) (citations omitted). Defendants cannot establish any likelihood of success on the merits because *none* of the five *Bauman* factors that courts consider in evaluating mandamus petitions supports their request for relief. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654-55 (9th Cir. 1977). Among other things, Defendants cannot meet

the third *Bauman* factor, which requires showing that the Court's Order was clearly erroneous as a matter of law. *Hernandez v. Tanninen,* 604 F.3d 1095, 1099 (9th Cir. 2010) (absence of the third *Bauman* factor is dispositive).

Defendants cannot demonstrate any clear error. The record and the law amply support the Court's conclusion that the recusal motion was untimely given that it was based on published articles, press releases and other materials that have long been known to the internet-viewing public, and that even some of Defendants' counsel were aware of—but admittedly did not "focus on"—until after Defendants suffered a series of adverse rulings. (*See* Doc. 1075, Order at 7.) Further, Defendants cannot show that the outcome of this case could have a substantial and direct affect on any "interest" held by the Court's spouse—who has no involvement in this federal criminal prosecution. Moreover, Defendants come nowhere close to showing that the Court clearly erred in holding that an objectively reasonable, thoughtful person with knowledge of the facts would *not* reasonably doubt her impartiality, particularly where courts have long-rejected the outmoded notion that a judge is unable to preside impartially because of her spouse's views.

Second, Defendants have failed to demonstrate that they will suffer irreparable harm absent a stay. The Ninth Circuit routinely considers disqualification orders on direct appeal, and Defendants have not established that they face any unique prejudice that differentiates them from other litigants who proceed on direct review. And while Defendants point to hypothetical costs and delay associated with having the case proceed before their petition is resolved, the Ninth Circuit has "repeatedly held that financial harm is insufficient to justify collateral review" of recusal and other pretrial decisions. *In re Sussex*, 781 F.3d 1065, 1075 (9th Cir. 2015).

Third, the interests of the United States, the victims and the public weigh heavily against a stay. The policy against piecemeal appellate review embodied in 28 U.S.C. 1291 "reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals," and "is crucial to the efficient administration of justice." *Flanagan v. United States,* 465 U.S. 259, 264 (1984). This

policy "is at its strongest in the field of criminal law," where delay prejudices the prosecution's ability to prove its case beyond a reasonable doubt. *Flanagan*, 465 U.S. at 264-65. Moreover, the victims and the public have a right to "proceedings free from unreasonable delay" under the Crime Victims' Rights Act. (Doc. 893 at 5.) The balance of equities tips sharply *against* Defendants, and the stay motion should be denied.

## Factual Background

A.  Defendants Have Continually Sought to Delay Trial.

Defendants made their first request to continue the trial in the parties' Notice of Filing of Parties' Proposed Scheduling Order. (Doc. 121 at 3.) The government asked for trial to begin in October 2019, while Defendants sought a trial date in January 2020. (*Id.*) Judge Logan, then presiding, adopted a January 2020 trial date. (Doc. 131 at 3.)

On June 3, 2019, Defendant Padilla filed Defendants' first motion to continue trial (Doc. 628), based on a substitution of counsel for him and Defendant Vaught in May 2019. (Docs. 559, 565-566.) The Court granted the motion and continued the trial from January 15, 2020 to May 5, 2020. (Doc. 664.) On January 28, 2020, Defendants filed their second motion to continue trial, arguing the government had not satisfied its discovery deadlines and seeking a continuance until at least October 2020. (Doc. 862 at 3, 7.) While the Court found some of Defendants' discovery claims "directly contradicted" by the record, it continued the trial from May to August 2020. (Doc. 893 at 4, 6.)

On May 29, 2020, Defendants filed their third motion to continue trial. (Doc. 990.) This request focused on the inability for Defendants to prepare for, and for the Court to safely conduct, a trial during the pandemic. Defendants asked for a continuance until "unmasked testimony will be perfectly safe"—that is, until "after the pandemic." (Doc. 990 at 12.) The Court continued the trial until January 2021. (Doc. 1031.)

On September 21, 2020, Defendant Lacey filed a fourth motion to continue trial, this time based on his counsel's pregnancy and upcoming disability leave and continued pandemic concerns. (Doc. 1058.) The Court granted the motion and continued the trial until April 2021. (Doc. 1068.)

In addition, to the five requests to continue trial, Defendants have filed six motions to dismiss premised on various legal theories. (Docs. 456, 561, 746, 782, 783, 940.) To date, none have been successful.

  B. <u>In September 2020, Defendants Unsuccessfully Moved for Recusal—and Now Seek Indefinite Trial Delay Pending Appeal.</u>

On September 23, 2020, two days after filing the latest motion to continue trial, and more than 17 months after the Court inherited this case, Defendants moved for recusal based on the Court's marriage to Arizona Attorney General Mark Brnovich (AG Brnovich). (Doc. 1059; *see also* Doc. 1075, Order at 1-2.) Relying on published news articles dating to 2015 and other widely-available published information (*see* Doc. 1059-1), Defendants asserted that AG Brnovich had made various statements "about human trafficking and Backpage.com" that warranted the Court's recusal under 28 U.S.C. §§ 455(a), (b)(4) and (b)(5)(iii). (Doc. 1059, Mot. at 1, 8.)

On October 23, 2020, after the motion was fully briefed, the Court issued a thorough 14-page order denying Defendants' motion for recusal. First, the Court found the motion untimely because Defendants filed it "nearly a year and a half after the Court inherited the case and after several adverse rulings," indicating that it was "filed for suspect tactical and strategic reasons." (Doc. 1075, Order at 6-7.) The Court rejected as "unbelievable" Defendants' contrary "bare assertion" that they had just discovered the basis for their motion in September 2020, particularly given longstanding press coverage of the Court's marriage to AG Brnovich and Defendants' knowledge that all or nearly all state attorneys general had been scrutinizing Backpage for years. (Doc. 1075, Order at 7.) The Court also noted Defendants' counsel admitted that some of them knew in April 2018 that a coalition of attorneys general had written the letter to Congress about Backpage in August 2017 that formed one of the motion's exhibits, but claimed they did not previously "focus on" the letter or the fact that AG Brnovich had signed it. (Doc. 1075, Order at 7.)

Second, the Court rejected Defendants' assertion that the Court's recusal was required by 28 U.S.C. §§ 455(b)(4) and (5)(iii). (Doc. 1075, Order at 7-10.) These

provisions require a judge to recuse where the judge knows that her spouse "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding," or where the judge's spouse "[i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. §§ 455(b)(4) and (5)(iii). Citing cases from other Circuits and the District of Arizona, the Court found that both §§ 455(b)(4) and (5)(iii) "require an interest that is financial or proprietary in nature" and noted that AG Brnovich has no such interest in this case. (Doc. 1075, Order at 8-9.)[1] But even assuming that AG Brnovich had an "interest" cognizable under 28 U.S.C. §§ 455(b)(4) and (b)(5)(iii), the Court found Defendants' arguments still failed for the fundamental reason that Defendants had failed to show how that interest "could be substantially affected by the outcome" of this case. (Doc. 1075, Order at 9-10.)

Third, the Court rejected Defendants' assertion that recusal is required under 28 U.S.C. § 455(a), which involves determining whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." (Doc. 1075, Order at 10 (citation omitted).) The Court recognized that "a judge's impartiality cannot reasonably be questioned simply because of the opinions and views expressed by an organization headed by a judge's spouse." (Doc. 1075, Order at 11.) The Court then found that Judge Murguia's analysis in *Melendres I* set up an instructive contrast with this case. (Doc. 1075, Order at 12-13.)

On November 18, 2020, almost a full month after the Court issued the Order,

---

[1] The Court further rejected the suggestion that AG Brnovich had some type of financial or pecuniary interest by virtue of his campaigns for attorney general:

> [C]ontrary to Defendants assertions, the outcome of this case is extremely unlikely to "impact his ability to raise campaign funds and to keep his office and salary." (Doc. 1071 at 8, n.9.) In fact, because AG Brnovich has been elected as Arizona Attorney General in two consecutive terms, he is not eligible to run for his office again. Ariz. Const. art. V, § 1(A). Therefore, Defendants' argument on this point is without merit.

(Doc. 1075, Order at 9.)

- 5 -

Defendants filed a petition for writ of mandamus in the Ninth Circuit seeking to overturn it. *Lacey, et al. v. United States Dist. Ct.*, No. 20-73408, DktEntry 1-3. Under Fed. R. App. P. 21(b) and 9th Cir. R. 21-4, no answer to the petition may be filed unless ordered by the Ninth Circuit. To date, the Ninth Circuit has not ordered the United States to answer, and the timeframe for resolving the petition—potentially many months—is unknown.[2]

## **Argument**

To justify a stay pending appeal, Defendants must: (1) make "a strong showing" that they are "likely to succeed on the merits"; (2) demonstrate that they "will be irreparably injured absent a stay"; (3) show that issuance of the stay will not "substantially injure the other parties interested in the proceeding"; and (4) demonstrate "where the public interest lies." *Nken*, 556 U.S. at 434. Where, as here, they cannot make a "strong showing" on the first factor (likelihood of success), Defendants may make a lesser showing that the appeal "raises serious legal questions or has a reasonable probability of success." *Leiva-Perez v. Holder*, 640 F.3d 962, 970-71 (9th Cir. 2011). However, "[a] party meeting this lesser threshold . . . must then demonstrate that the balance of hardships under the second and third [*Nken*] factors tilts *sharply* in its favor." *Morse v. Servicemaster Glob. Holdings, Inc.*, 2013 WL 123610, at *2 (N.D. Cal. Jan. 8, 2013) (emphasis in original) (citing *Leiva-Perez*, 640 F.3d at 970). Defendants cannot meet their burden of establishing any of these factors.

**I.   Defendants Have Not Demonstrated Any Likelihood of Success.**

   A.   <u>Defendants Have Failed to Show that the Court's Order Is Clearly Erroneous.</u>

A writ of mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes." *Ex parte Fahey,* 332 U.S. at 259-60; *In re Van Dusen*, 654 F.3d 838, 840 (9th Cir. 2011). "[O]nly exceptional circumstances amounting to a judicial usurpation of power, or a clear abuse of discretion, will justify the invocation of this extraordinary

---

[2] In the mandamus appeal from the denial of recusal in *Nat'l Abortion Fed'n. v. Ctr. for Med. Progress*, the Ninth Circuit docketed the petition on December 13, 2017, ordered an answer two-and-a-half months later, and denied the petition on April 30, 2018. *See* 9th Cir. No. 17-73313 Docket. In another recusal-related mandamus matter, *In re Sussex*, the court ordered an answer about two-and-a-half months after docketing the petition, and fully resolved the matter about a year later. *See* 9th Cir. No. 14-70158 Docket.

remedy." *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (internal quotations and citations omitted). Defendants must therefore demonstrate that their "right to issuance of the writ is clear and indisputable." *Kerr*, 426 U.S. at 402.

In evaluating a mandamus petition, the Ninth Circuit considers five factors:

> (1) whether the petitioner has other adequate means, such as a direct appeal, to attain the relief he or she desires; (2) whether the petitioner will be damaged or prejudiced in a way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order makes an "oft-repeated error," or "manifests a persistent disregard of the federal rules"; and (5) whether the district court's order raises new and important problems, or legal issues of first impression.

*Bauman*, 557 F.2d at 654-55.

Defendants cannot establish any likelihood of success on the merits because *none* of the *Bauman* factors supports relief. Only the third *Bauman* factor is relevant here: whether the Court's Order was clearly erroneous as a matter of law. Clear error is a necessary condition for mandamus relief; its absence "is dispositive." *Hernandez,* 604 F.3d at 1099. Yet clear error is a highly deferential standard—mandamus "will not issue merely because Defendants have identified legal error." *In re Van Dusen*, 654 F.3d at 841. Rather, the Ninth Circuit must have "a definite and firm conviction" that the Order was incorrect. *DeGeorge v. U.S. Dist. Court for Cent. Dist. of Cal.*, 219 F.3d 930, 936 (9th Cir. 2000).[3]

Defendants bore a heavy burden in moving to disqualify this Court nearly two years after it was assigned to this case. A federal judge has a "strong . . . duty to sit when there is no legitimate reason to recuse." *Clemens v. U.S. Dist. Court for Cent. Dist. of California*, 428 F.3d 1175, 1179 (9th Cir. 2005). Accordingly, "a judge is *presumed* to be impartial and the party seeking disqualification bears the *substantial burden* of proving otherwise." *In re Steward*, 828 F.3d 672, 682 (8th Cir. 2016) (emphases added); *see also In re*

---

[3] The Petition does not raise any issue of first impression that could change the third *Bauman* showing from one of "clear error" to "ordinary error." (*See* Pet. at 14.) Defendants identify only one issue of arguable first impression—whether the Court's spouse has a non-economic interest cognizable under 28 U.S.C. §§ 455(b)(4) and 455(b)(5)(iii). (Mot. at 3; Pet. at 30.) As explained below, that issue is not dispositive because Defendants would still be required to establish that any such interest could be significantly affected by the outcome of this case—a burden they cannot meet. (*See* Part I.A.2, *infra*.)

*McCarthey*, 368 F.3d 1266, 1269 (10th Cir. 2004) (Disqualification "places a substantial burden on the moving party to demonstrate that the judge is not impartial, not a burden on the judge to prove that he is impartial."). For several reasons, Defendants did not meet their "substantial burden" in seeking this Court's disqualification, and therefore they do not come close to showing entitlement to the "drastic and extraordinary" remedy of mandamus relief. *Van Dusen*, 654 F.3d at 840-41.

> 1. *Defendants' Motion for Recusal Was Filed for Purely Tactical Reasons and Could Have Been Denied on that Basis Alone.*

"[A] party having information that raises a possible ground for disqualification cannot wait until after an unfavorable judgment before bringing the information to the court's attention." *United States v. Rogers,* 119 F.3d 1377, 1380 (9th Cir. 1997); *see also Preston v. United States,* 923 F.2d 731, 733 (9th Cir. 1991) (motions to recuse must be brought with "reasonable promptness after the ground for such a motion is ascertained" because otherwise, "the absence of such a requirement would result in increased instances of wasted judicial time and resources and a heightened risk that litigants would use recusal motions for strategic purposes"). While they might not have an obligation to scour the public record or "pore through the judge's private affairs and financial matters" for any potentially disqualifying information, *Listecki v. Off. Comm. of Unsecured Creditors*, 780 F.3d 731, 750 (7th Cir. 2015) (Pet. at 28), Defendants cannot simply put their head in the sand when the information that ostensibly supports a recusal argument is a matter of widespread and longstanding public knowledge and includes information that they have known for years. Rather, federal courts reject recusal motions as untimely where parties or their counsel turn a "blind eye" to well known facts of which they had actual or constructive knowledge, and that would have alerted them to the alleged basis for recusal. *See, e.g.*, *United States. v. Kohring*, 334 F. App'x 836, 838 (9th Cir. 2009) (defendant's recusal motion properly denied as untimely where, "*with the exercise of slightest amount of diligence*, he could have ascertained the significance [of the facts forming the basis of the motion] long before trial") (emphasis added); *In re Medtronic, Inc., Sprint Fidelis Leads*

- 8 -

*Prod. Liab. Litig.*, 623 F.3d 1200, 1209 (8th Cir. 2010) (recusal motion untimely where "Plaintiffs knew, or with due diligence could have known," the facts supporting their motion when the case was transferred to the district court judge); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 525 F.3d 554, 558 (7th Cir. 2008) (motion untimely when filed after adverse decision and based on publicly-available information; "a litigant who lets this opportunity [to investigate possible bases for recusal] pass, then looks up the commissioners in Martindale-Hubbell after the proceedings have concluded, has no one to blame but himself"); *Gibo v. U.S. Bank National Association*, 2013 WL 12142570, at *3 n.2 (D. Haw. June 21, 2013) (information that formed the basis of recusal motion "should have been evident to Plaintiff's counsel when this lawsuit was filed and not first investigated seven months later," when district court "strongly hinted that she was going to rule in favor of [defendants]"); *Lyman v. City of Albany*, 597 F. Supp. 2d 301, 307-09 (N.D.N.Y. 2009) (motion untimely where basis for recusal was, in part, judge's prior employment by defendant, and judge's biography was publicly available); *Drake v. Birmingham Bd. of Educ.*, 476 F. Supp. 2d 1341, 1347 (N.D. Ala. 2007) (motion untimely where counsel could have easily discovered through his own client that the judge was a deacon in same church as plaintiff and her husband).

As the Court correctly held, Defendants' motion was untimely because Defendants filed it "nearly a year and a half after the Court inherited the case and after several adverse rulings," indicating that it was "filed for suspect tactical and strategic reasons." (Doc. 1075, Order at 6-7); *see Melendres v. Arpaio*, 2015 WL 13173306, at *13 (D. Ariz. July 10, 2015) (*Melendres II*) ("There is a presumption that a recusal petition submitted after the moving party suffers adverse rulings has been filed for suspect tactical and strategic reasons.") (citing *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992)); *cf. Krakauer v. IndyMac Mortg. Services*, 2013 WL 1751463, at *2 (D. Haw. Apr. 23, 2013) ("[T]he timing of the Motion to Recuse—brought over three years after Plaintiffs filed this action and just after the Order Confirming Sale—suggests that Plaintiffs are simply raising *any* argument, regardless of merit, in an attempt to stall this action.").

Particularly given longstanding press coverage of the Court's marriage to AG Brnovich and Defendants' knowledge that all or nearly all state attorneys general had been scrutinizing Backpage for years, as laid out with supporting references in the United States' Response, the Court did not clearly err in finding Defendants' "bare assertion" that they had just discovered the basis for their motion in September 2020 was "unbelievable." (Doc. 1075, Order at 7; *see also* Doc. 1067, Resp. at 3-6.) Nor did the Court clearly err in analyzing the reply declaration filed by six of Defendants' attorneys, in which some of them admitted that they knew in April 2018 that a coalition of state attorneys general had written the letter about Backpage in August 2017 that formed one of the exhibits to the recusal motion, but asserted they did not previously "focus on" the letter or the fact that AG Brnovich had signed it. (Doc. 1075, Order at 7.) The record and the law amply supported the Court's finding that the motion was untimely. (Doc. 1075, Order at 7; *see also* Doc. 1067, Resp. at 5 and Doc. 1072, Mot. to Strike at 5-7.)

2. *The Court Did Not Clearly Err in Rejecting Defendants' Claims Under 28 U.S.C. §§ 455(b)(4) and (b)(5)(iii).*

Second, the Court properly rejected Defendants' assertion that recusal was required under 28 U.S.C. §§ 455(b)(4) and (5)(iii). (Doc. 1075, Order at 7-10.) These provisions require a judge to recuse where the judge knows that her spouse "has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding," or where the judge's spouse "[i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. §§ 455(b)(4) and (5)(iii). Citing cases from other Circuits and *Melendres v. Arpaio*, 2009 WL 2132693, at *9 (D. Ariz. July 15, 2009) (*Melendres I*)—a case on which Defendants also rely (*see* Pet. at 24)—the Court found that both §§ 455(b)(4) and (5)(iii) "require an interest that is financial or proprietary in nature." (Doc. 1075, Order at 8.) While Defendants cited other decisions that recognized a law firm partner's "reputation and goodwill interests" in attracting future business, the Court reasonably distinguished those cases as being moored in interests that are "commercial in

nature." (Doc. 1075, Order at 9.) Because AG Brnovich has no financial or proprietary interest in this case, the Court did not clearly err in finding that recusal is not required under these statutory provisions. (Doc. 1075, Order at 9; *see also* Doc. 1067, Resp. at 9-11.)

But even assuming AG Brnovich had a cognizable "interest" under 28 U.S.C. §§ 455(b)(4) and (b)(5)(iii), Defendants' arguments still failed for the fundamental reason Defendants cannot show how that interest "could be substantially affected by the outcome" of this case. (Doc. 1075, Order at 9-10.) Defendants claimed in their motion that AG Brnovich "has staked his own 'reputation and goodwill' on this prosecution, the veracity of the government's claims, and the truthfulness of the government's trial witnesses." (Doc. 1059, Mot. at 12.) Yet, the Court found, the impact of the outcome of this case on any reputational or goodwill interest that AG Brnovich might have "is highly speculative"; "[a]s AG Brnovich is not associated with any party in this case, did not aid in the investigation and is not prosecuting the case[,] the outcome of the case is exceptionally unlikely to affect his reputation." (Doc. 1075, Order at 10.) Under settled Ninth Circuit law cited by the Court, "where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality." *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011). The Court's rejection of Defendant's argument is well-situated within existing case law—and there was no clear error of law. (*See also* Doc. 1067, Resp. at 12-13.)

        3.    *Nor Did the Court Clearly Err in Rejecting Defendants' 28 U.S.C. § § 455(a) Assertions*.

As the Court correctly recognized, Defendants' 28 U.S.C. § 455(a) claim requires determining whether "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." (Doc. 1075, Order at 10, quoting *Blixseth v. Yellowstone Mountain Club, LLC*, 742 F.3d 1215, 1219 (9th Cir. 2014).) The Court correctly acknowledged that the "reasonable person is not someone who is hypersensitive or unduly suspicious, but rather is a well-informed, thoughtful observer." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008); Doc. 1075, Order at 11. The

- 11 -

Court similarly recognized that judges are obligated to hear all cases coming before them, and must not recuse themselves lightly. (Doc. 1075, Order at 11.) Accordingly, the "reasonable person" test "must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *Holland*, 519 F.3d at 913.

The Court then found that § 455(a) recusal was not warranted in light of critical difference between this case and *Melendres I*. For example, unlike the judge's sister in *Melendres I*, "AG Brnovich has not made any derogatory or insulting comments regarding the Defendants"; nor has he "addressed the viability of charges in this matter or the guilt or innocence of the Defendants." (Doc. 1075, Order at 12.) To the extent Defendants suggest otherwise, they are simply mistaken: Defendants' recusal motion identifies no statements by AG Brnovich or his office that identify any of the Defendants in this federal criminal prosecution, let alone that opine on their individual guilt or innocence.

Moreover, although AG Brnovich "publicly stands against human trafficking" and "has referred to Facebook, Backpage, and Craigslist as places where human trafficking occurs," the Court properly found that his views on these issues would not lead a reasonable person to conclude the Court's impartiality might reasonably be questioned. (Doc. 1075, Order at 12.) Indeed, "[n]o thoughtful, or well-informed person would simply assume that one spouse's views should always be ascribed or attributed to the other in the absence of an express disclaimer." (Doc. 1075, Order at 12, quoting *National Abortion Fed. v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1089 (N.D. Cal. 2017).) The Court's recognition of this principle was not clearly erroneous as a matter of law. *See Perry v. Schwarzenegger*, 630 F.3d 909, 912 (9th Cir. 2011) (Reinhardt, J.) (a judge's spouse's views "cannot be imputed to [the judge], no matter how prominently she expresses them"); *National Abortion Fed.*, 257 F. Supp. 3d at 1089-90 (denying recusal motion based on the judge's spouse's Facebook communications; "the premise of defendants' argument is the faulty and anachronistic assumption that a wife's communicative activity necessarily represents the views of, or should be attributed to, her husband"); *Akins v. Knight*, 2016 WL 127594,

*7 (W.D. Mo. Jan. 11, 2016) (denying recusal motion; judge's spouse "is an independent person" and "his views are his own").[4]

Further, AG Brnovich's statements, and the AG Office's publication of a handbook in June 2018 that identified Backpage as "an online classified advertising site used frequently to purchase sex," were not novel or even particularly prejudicial. (Doc. 1059-2, Mot., Ex. 1 at 22.) Long before the handbook's publication, Backpage representatives had testified at numerous criminal trials involving pimps who used its website. (*See, e.g.,* Doc. 230 ¶¶ 71, 76, 92.) Published judicial opinions referenced similar facts. *E.g., United States v. Young*, 955 F.3d 608, 614 (7th Cir. 2020); *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 17, 29 (1st Cir. 2016); *J.S. v. Village Voice Media Holdings, Inc.*, 359 P.3d 714, 715-16 (Wash. 2015). In January 2017, after the U.S. Senate enforced a subpoena compelling production of thousands of Backpage documents, the Senate Permanent Subcommittee on Investigations concluded that virtually all Backpage "adult" ads were for prostitution.[5] And in April 2018, Backpage.com, LLC and its CEO Carl Ferrer pleaded guilty and admitted the "great majority" of Backpage's revenue-generating ads were "for prostitution services." (18-CR-464, Doc. 7-2 at 12-13; 18-CR-465, Doc. 8-2 at 11.) The record before the Court set forth all of these facts. (Doc. 1067, Resp. at 3-6 and n.1.)

Finally, although AG Brnovich and the Arizona Attorney General's Office have "partnered" with third-party organizations that have made statements about Defendants and

---

[4] On page 24 of their Petition, Defendants assert that Judge Reinhardt's recusal decision in *Perry v. Schwarzenegger*, 630 F.3d 909 (9th Cir. 2011), "appears to be of no force or effect." However, a Westlaw cite check shows that the decision has no reported "negative treatment"; rather, it has been cited favorably in 30 subsequent cases, including *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1241 (10th Cir. 2020) (citing *Perry* for proposition that "[i]n present-day society we do not treat a married couple as single-minded on public issues"). *See* https://1.next.westlaw.com/RelatedInformation/Ib1d9615f190111e0852cd4369a8093f1/kcCitingReferences.html?docSource=03adc3e071db474c8ef65f49555f8558&pageNumber=1&facetGuid=h562dbc1f9a5f4b0c9e54031a19076b9c&transitionType=ListViewType&contextData=(sc.History*oc.UserEnteredCitation).

[5] *See* BACKPAGE.COM'S KNOWING FACILITATION OF ONLINE SEX TRAFFICKING, https://www.hsgac.senate.gov/imo/media/doc/Backpage%20Report%202017.01.10%20FINAL.pdf (Jan. 2017).

- 13 -

who employ or formerly employed other persons who may testify at trial, the Court correctly recognized that these connections "are far too attenuated for a reasonable person to question the Court's impartiality." (Doc. 1075, Order at 13.) Defendants have failed to meet their substantial burden of demonstrating this analysis was clearly erroneous.[6]

### B. Defendants Cannot Establish the Remaining *Bauman* Factors.

Nor can Defendants meet their burden of establishing any of the other *Bauman* factors. Regarding the first two factors—the availability of a direct appeal and prejudice not correctable on a direct appeal—the Ninth Circuit routinely considers recusal orders on direct appeal. *See*, *e.g.*, *Konarski v. City of Tucson*, 716 F. App'x 609, 611 (9th Cir. 2017); *O'Connor v. State of Nev.*, 27 F.3d 357, 363-64 (9th Cir. 1994); *United States v. Monaco*, 852 F.2d 1143, 1147 (9th Cir. 1988); *People of Territory of Guam v. Garrido*, 752 F.2d 1378, 1380 (9th Cir. 1985); *United States v. Conforte*, 624 F.2d 869, 878 (9th Cir. 1980). Except in cases that involve truly extraordinary circumstances, the Ninth Circuit has "held that a judge's decision not to disqualify his or her self 'cannot be appealed until a direct appeal is taken from a final decision adverse to the moving party.'" *Thompson v. Commr. of Internal Revenue*, 742 F. App'x 316, 317 (9th Cir. 2018) (quoting *In re Horton*, 621 F.2d 968, 970 (9th Cir. 1980).[7]

Regarding the fourth factor—"oft-repeated error"—Defendants identify no such

---

[6] The Court also correctly struck Exhibit A to Defendants' reply, which essentially consisted of a second reply brief signed by a retired judge retained by the Defendants. (Doc. 1075, Order at 13.) The exhibit contained inadmissible expert opinion on pure matters of law and was improper. (Doc. 1075, Order at 13.) *Melendres II*, 2015 WL 13173306, at *9 n.13; *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 64-66 (S.D.N.Y. 2001).

[7] Defendants cite a single out-of-Circuit case for the proposition that mandamus is "liberal[ly]" allowed to review disqualification motions (Pet. at 15); yet even that decision—which upheld the *denial* of a recusal motion—recognized that "in frivolous and even routine cases in which a party challenges the judge's refusal to recuse himself, mandamus will be denied." *Union Carbide Corp. v. U.S. Cutting Serv., Inc.*, 782 F.2d 710, 712, 717 (7th Cir. 1986).

Defendants also assert that they are prejudiced by "the government's concerted efforts to deprive them of resources to defend the case through pre-trial seizures" (Pet. at 15). Despite suggesting that seizures have hindered their defense, Defendants have never filed a *Monsanto* motion or otherwise demonstrated a genuine need to use any seized funds to pay for counsel. *United States v. Unimex*, 991 F.2d 546, 551 (9th Cir.1993).

1    error in the Court's Order. (Pet. at 30.) Nor do Defendants identify any "new or important
2    problems, or issues of law of first impression" sufficient to satisfy the fifth *Bauman* factor.
3    Defendants note only one issue that arguably raises a claim of first impression in this
4    Circuit—whether the "non-economic interest" that Defendants assert the Court's spouse
5    has in this case is cognizable under 28 U.S.C. §§ 455(b)(4) and (b)(5)(iii). (Pet. at 30.) Yet
6    the Ninth Circuit need not resolve that discrete issue to affirm the Order, because
7    Defendants must still show that any such interest "could be significantly affected by the
8    outcome" of this prosecution—which they cannot do. (*See* Part I.A.2, *supra*.)

9          Defendants have failed to demonstrate any reasonable likelihood that they can
10   establish a "right to issuance of the writ [that] is clear and indisputable," *Kerr*, 426 U.S. at
11   402, and their stay motion should be denied for this threshold reason.

12   **II.  Defendants Have Failed to Establish Irreparable Harm.**

13         The second *Nken* factor requires Defendants to show that they "will be irreparably
14   injured absent a stay." *Nken*, 556 U.S. at 434. The Supreme Court has cautioned that
15   "simply showing some possibility of irreparable injury fails to satisfy" this requirement.
16   *Id.* at 434-35. And even if Defendants could show irreparable harm, that showing, standing
17   alone, would be insufficient to justify a stay. *Id.* at 427.

18         For the same reasons that Defendants cannot meet the first and second *Bauman*
19   factors (*see* Part I.B, *supra*), Defendants cannot establish that they will be irreparably
20   harmed. The Ninth Circuit routinely considers disqualification orders on direct appeal. *See*,
21   *e.g.*, *Konarski*, 716 F. App'x at 611; *O'Connor*, 27 F.3d at 363-64; *Monaco*, 852 F.2d at
22   1147; *Garrido*, 752 F.2d at 1380; *Conforte*, 624 F.2d at 878. Defendants have not
23   established that they face any unique prejudice that differentiates them from other litigants
24   who raise claims of judicial partiality on direct review.

25         Defendants point to hypothetical costs and delay associated with having the case
26   proceed before their petition is resolved. (*See* Doc. 1092, Mot. at 4-5.) Yet "[w]e have
27   repeatedly held that financial harm is insufficient to justify collateral review" of recusal
28   and other pretrial decisions. *In re Sussex*, 781 F.3d at 1075. A mandamus petitioner "must

demonstrate some burden ... other than the mere cost and delay that are the regrettable, yet normal, features of our imperfect legal system." *DeGeorge*, 219 F.3d at 935. "[U]nnecessary cost and delay resulting from an erroneous ruling of the district court are not prejudice correctable through use of the writ of mandamus." *Id*. at 936.

### III.    The Balance of Equities Tips Sharply Against a Stay.

The third and fourth *Nken* factors—assessing how a stay would affect the opposing party and the public—merge where, as here, the government is the opposing party. *Leiva-Perez*, 640 F.3d at 970 (citing *Nken,* 129 S.Ct. at 1762). As explained above, the harm articulated by Defendants can be remedied or substantially mitigated by direct appeal. Yet the prejudice to the United States and the public from indefinite trial delay—and from forestalling the Court's work on numerous pending motions—is considerable.

First, criminal cases generally are not subject to appellate review until after conviction and sentence. *Flanagan,* 465 U.S. at 263. While courts have carved out a small exception under the "collateral order doctrine," that doctrine is interpreted with "utmost strictness" in criminal cases. *Id*. at 265. As the Supreme Court has explained,

> The final judgment rule serves several important interests. It helps preserve the respect due trial judges by minimizing appellate-court interference with the numerous decisions they must make in the pre-judgment stages of litigation. It reduces the ability of litigants to harass opponents and to clog the courts through a succession of costly and time-consuming appeals. It is crucial to the efficient administration of justice. For these reasons, "[t]his Court has long held that the policy of Congress embodied in [section 1291] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation."

*Id*. at 263-64 (citations omitted). *See also United States v. MacDonald,* 435 U.S. 850, 854 (1978) (delay "is fatal to the vindication of the criminal law").

Second, delay will prejudice the prosecution's ability to prove its case. *See MacDonald,* 435 U.S. at 862. "As time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote." *Flanagan*, 465 U.S. at 264. This prosecution involves events occurring throughout the last decade. (*See generally* Doc. 230.) As trial recedes into the future, delay undoubtedly

redounds to the benefit of the defense—which does not have the burden of proof beyond a reasonable doubt. These harms will only grow with the magnitude of delay occasioned by Defendants' legal maneuvering.

Third, both the victims and the public have a right to "proceedings free from unreasonable delay" under the Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(7). (Doc. 893 at 5.) The victims have waited two and a half years for their day in court, and their desire for certainty and closure deserves strong consideration in weighing the equities of a potentially lengthy stay. (*See* Doc. 1062 at 2.) Fourth, society has an "'interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused.'" *MacDonald*, 435 U.S. at 862 (citation omitted). Indeed,

> [T]he community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. Prompt acquittal of a person wrongly accused, which forces prosecutorial investigation to continue, is as important as prompt conviction and sentence of a person rightly accused. Crime inflicts a wound on the community, and that wound may not begin to heal until criminal proceedings have come to an end.

*Flanagan*, 465 U.S. at 265.

The interests of the United States, the victims and the public all weigh heavily against a stay at this late stage. The balance of equities tips sharply against Defendants.

## **Conclusion**

For the foregoing reasons, Defendants' Motion for Stay of Case Pending Resolution of the Mandamus Petition (Doc. 1092) should be denied.

Respectfully submitted this 2nd day of December, 2020.

        MICHAEL BAILEY
        United States Attorney
        District of Arizona

        *s/ Peter S. Kozinets*

        KEVIN M. RAPP
        MARGARET PERLMETER
        PETER S. KOZINETS
        ANDREW C. STONE
        Assistant U.S. Attorneys

DAN G. BOYLE
Special Assistant U.S. Attorney

BRIAN C. RABBITT
Assistant Attorney General
U.S. Department of Justice, Criminal Division

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 2, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Joy Faraj*
Joy Faraj
U.S. Attorney's Office