GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

NICHOLAS L. MCQUAID
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

REGINALD E. JONES (Miss. Bar No. 102806, reginald.jones4@usdoj.gov)
Senior Trial Attorney, U.S. Department of Justice
Child Exploitation and Obscenity Section
950 Pennsylvania Ave N.W., Room 2116
Washington, D.C. 20530
Telephone (202) 616-2807
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Michael Lacey, et al.,<br><br>Defendants. | No. CR-18-422-PHX-SMB<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISCLOSE GRAND JURY INSTRUCTIONS ON PROSTITUTION (Doc. 1171)** |

## Preliminary Statement

In June 2020, the United States sent proposed jury instructions to Defendants so the parties could confer before presenting them to the Court. After sitting on the instructions for 12 months, and without first providing comments to the government, Defendants filed

the instant "Motion to Disclose Grand Jury Instructions on Prostitution" in which they assert the United States' draft instructions "do not include the elements of a prostitution offense or offenses under state law," speculate "the government did not properly advise the grand jury on the law," and seek disclosure of grand jury's legal instructions regarding the Travel Act, 18 U.S.C. § 1952.  (Doc. 1171, Mot. at 1.)[1]

This is déjà vu all over again.  In their Motion, Defendants seek to relitigate their repeated and unsuccessful efforts to obtain the grand jury's legal instructions.  In October 2019, Defendants sought disclosure of the grand jury transcripts, including legal instructions, in their "Joint Motion to Dismiss Indictment for Grand Jury Abuse or, in the Alternative, for Disclosure of Grand Jury Transcripts" (Doc. 782).  After detailed briefing, the Court denied the motion in an 11-page Order.  (Doc. 844; *see also* Docs. 812, 826.) Later, in connection with Defendants' "Motion to Dismiss Indictment Based on Failure to Allege Necessary Elements of the Travel Act" (Doc. 746), the Court ordered the United States to disclose the Travel Act grand jury legal instructions *in camera* in February 2020, and the United States complied.  (Docs. 879, 892.)  For a second time, Defendants unsuccessfully sought the same instructions (*see* Docs. 881, 887), and the Court denied the Travel Act motion to dismiss (Doc. 946).

Defendants now look to litigate this issue for a third time.  To the extent the instant Motion seeks to relitigate issues previously decided by this Court in this case, including the sufficiency of the Travel Act-related counts in the Superseding Indictment (Doc. 230, SI), the Motion is barred by the law of the case doctrine.  *See Cross v. Commr. of Soc. Sec. Administration*, CV-19-01801-PHX-SMB, 2021 WL 1711832, at *4 (D. Ariz. Apr. 30, 2021) ("The law of the case doctrine precludes courts from reexamining issues previously decided by the same court in the same litigation.").  Defendants' Motion fails to offer any genuinely new or meritorious grounds for relief, and it should be denied.

---

[1] The proposed jury instructions have not been finalized; Defendants sought multiple extensions from the government to provide comments to the United States' draft, and the parties anticipate submitting a joint set of proposed instructions before trial.

First, grand jury proceedings are secret, and Fed. R. Crim. P. 6(e)(3)(E) permits *in camera* review in certain limited circumstances "at a time, in a manner, and subject to any other conditions that [the Court] directs."  Here, the Court previously ordered a discrete, limited, and narrow *in camera* production of the grand jury Travel Act instructions.  (Doc. 879 at 2.)  The limited nature of that review was appropriate because—especially in the context of a defense demand to review legal instructions to the grand jury—there is no requirement to even instruct the grand jury on the law.  Moreover, that limited review was appropriate because Defendants failed to meet their heavy burden of demonstrating the particularized, specific need for grand jury materials that the law requires.  *Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979); (Doc. 844, Order at 10).

Second, in their instant Motion, Defendants once again fail to clear this high hurdle. "Mere 'unsubstantiated, speculative assertions of improprieties in the proceedings' do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *United States v. Ferrebouef*, 632 F.2d 832, 835 (9th Cir. 1980) (quoted in Doc. 844, Order at 5). Defendants' assertion that the grand jury instructions were required to include "the elements of the State statutes alleged to have been violated by the purported business enterprise(s) facilitated by Defendants" (Mot. at 4) is incorrect and contrary to this Court's Orders regarding the sufficiency of the SI.  Moreover, as before, Defendants suggest that if the grand jury instructions were inadequate then any affected counts and/or the entire indictment should be dismissed.  (Mot. at 6; *see also* Doc. 798 at 4, 7 and Doc. 780 at 14-15.)  Established law does not support that claim, and any mistakes in the instructions (or failure to instruct for that matter) can be readily cured by the petit jury at trial.  To that end, Defendants have only now begun to comment on the proposed jury instructions that the United States sent them *a year ago*.  Defendants' Motion should be denied.

## Argument

## I.    The Grand Jury Operates with a Presumption of Regularity, and Defendants Bear a Heavy Burden in Overcoming the Presumption.

The scope of judicial review of grand jury matters has been narrowly circumscribed

by the Supreme Court. Grand jury proceedings are invested with a presumption of regularity. *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991). (*See also* Doc. 844 at 2-3.) Applying this deferential standard to grand jury matters, the Supreme Court has long been reluctant to permit challenges to indictments based on alleged errors in grand jury proceedings. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988); *Costello v. United States*, 350 U.S. 359, 363 (1956) ("[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face is enough to call for trial of the charge on the merits").

In *United States v. Williams*, 504 U.S. 36 (1992), the Supreme Court further restricted the ability of federal courts to invoke the supervisory power for creating prosecutorial standards before the grand jury. The Court stated that precedent regarding the supervisory authority of the judiciary applied "strictly with the court's power to control their *own* procedures." 504 U.S. at 45. The Court then stated:

> We did not hold in *Bank of Nova Scotia*, however, that the courts' supervisory power could be used, not merely as a means of enforcing or vindicating legally compelled standards of prosecutorial conduct before the grand jury, but as a means of *prescribing* those standards of prosecutorial conduct in the first instance just as it may be used as a means of establishing standards of prosecutorial conduct before the courts themselves…. Because the grand jury is an institution separate from the courts, over whose functioning the courts do not preside, we think it clear that, as a general matter at least, no such "supervisory" judicial authority exists.

*Id*. at 46-47.

The combined effect of these Supreme Court cases is to limit a defendant's ability to attack the validity of an indictment to those instances where the alleged misconduct *seriously* undermined the grand jury's independence and unfairly prejudiced the defendant. In exercising these supervisory powers, however, cases caution that the courts must not encroach on the legitimate prerogatives and independence of the grand jury and the prosecutor. *United States v. Chanen*, 549 F.2d 1306, 1313 (9th Cir. 1977).

To that end, transcripts of witness testimony, statements made by government attorneys, and any other statements made by or before the grand jury, while in session, clearly constitute "matters occurring before the grand jury" or "grand-jury matters" and

may not be disclosed, except in conformity with one of the exceptions to Rule 6(e).  *See Douglas Oil*, 441 U.S. at  218 (proper functioning of grand jury system depends upon secrecy of grand jury proceedings); *United States v. Proctor & Gamble*, 356 U.S. 677, 682 (1958); *United States v. Diaz*, 236 F.R.D. 470 (N.D. Ca. 2006) (exchanges between grand jurors and prosecutors are "matters occurring before the grand jury").  As this Court has recognized, Rule 6(e)'s considerations and the reasoning of *Douglas Oil* remain informative and relevant here.  (Doc. 844 at 9.)  *In camera* review is an appropriate means of implementing Rule 6(e)'s provision for discrete and limited review.

## II.     An Even Higher Standard Applies to Motions to Dismiss Based on Alleged Failure to Properly Instruct the Grand Jury.

Defendants' request is based on the flawed premise that the government is under a strict obligation to instruct the grand jury on the law as it relates to an indictment.  In fact, the Ninth Circuit has long held that the government has no obligation to provide legal instructions to a grand jury.  *United States v. Larrazolo,* 869 F.2d 1354, 1359 (9th Cir. 1989) (the prosecutor has no duty to outline the elements of the crime as long as the elements are at least implied and the instructions are not flagrantly misleading), *overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989); *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981) (rejecting argument that grand jury should receive jury instructions similar to those given at the end of trial; "[w]e are not persuaded that the Constitution imposes the additional requirement that grand jurors receive legal instructions").

As noted in previous pleadings, Defendants' argument that an indictment may be dismissed due to speculative claims that the grand jury was not correctly instructed does not comport with long established law.  Under the *Bank of Nova Scotia* standard, "dismissal of the indictment is appropriate only if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  487 U.S. at 256.  As the Northern District of California recently noted in denying a motion to dismiss for erroneous

legal instructions, "[t]he Ninth Circuit has held in no uncertain terms that the *Bank of Nova Scotia* standard sets a high bar for dismissal":

> Only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury. To hold otherwise would allow a minitrial as to each presented indictment contrary to the teaching [of the Supreme Court].

*United States v. Pacific Gas and Electric Co.*, 2015 WL 9460313, at *2 (N.D. Cal. Dec. 23, 2015) (*PG&E*) (quoting *United States v. Kennedy*, 564 F.2d 1329, 1338 (9th Cir. 1977)). Even "extensive prosecutorial misconduct" before the grand jury may not justify dismissal of an indictment. *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010) (citing *Bank of Nova Scotia*, 487 U.S. at 263).

Given this high standard, the Ninth Circuit has held that "[e]rroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). Rather, dismissal for improper instructions is warranted only where "the conduct of the prosecutor was so 'flagrant' it deceived the grand jury in a significant way infringing on their ability to exercise independent judgment." *Larrazolo*, 869 F.2d at 1359. The movant "must show that the grand jury's independence was so undermined that it could not make an informed and unbiased determination of probable cause." *Id.* And again, the Ninth Circuit has held that the government need not even instruct the grand jury on the law, recognizing that "the giving of such instructions portends protracted review of their adequacy and correctness by the trial court during motions to dismiss, not to mention later appellate review." *Kenny*, 645 F.2d at 1347.

In *Larrazolo*, for example, defendants contended that the definition of conspiracy offered to the grand jury "neglected to include the requirements of criminal intent and knowledge" and therefore "misled the grand jury in [the] explanations of conspiracy law." *Larrazolo*, 869 F.2d at 1359. Specifically, the prosecutor "characterized the acts of [defendants] in loading bales of marijuana as [both] the overt act and evidence of the mens rea requirement of conspiracy [,] without finding specific knowledge of the agreement."

*Id.* Defendants argued that "if complete and proper jury instruction had been given, the grand jurors would have found evidence of the mens rea element missing." *Id.* But the Ninth Circuit held that the erroneous instructions did not require dismissal because defendants had not "shown the erroneous instructions influenced the decision to indict or created a 'grave doubt' that the decision to indict was free from the substantial influence of such a violation." *Id.*

Similarly, in *PG&E*, the court found that the prosecutor's alleged failure to instruct the grand jury on causation, gain or loss and other issues relating to the Alternative Fines Act did not meet the high standard for dismissal set forth in *Bank of Nova Scotia*. 2015 WL 9460313, at *5-6. Even assuming the defendant was correct, the alleged errors were not "'so flagrant [that they] deceived the grand jury in a significant way infringing their ability to exercise independent judgment.'" *Id.* at *6 (quoting *Larrazolo*, 869 F.2d at 1359). The court reiterated that "the prosecutor need not provide legal instructions to the grand jury at all," and the proceedings did not give the court "grave doubt" that the grand jury's probable cause determination was made with anything other than "independent judgment." *Id. See also, e.g.*, *United States v. Dufau*, 2017 WL 5349541, at *2 (D. Idaho Nov. 13, 2017) (following *Larrazolo*, *Wright* and *Kenny*; denying motion to dismiss based on failure to instruct grand jury on two essential elements of harboring charge); *United States v. Chavez*, 2002 WL 35649603, at *3 (D.N.M. Nov. 14, 2002) ("a prosecutor is not required to provide elements instructions to a grand jury, particularly instructions like those given to a petit jury").

*Larrazolo*, *PG&E* and similar cases demonstrate that erroneous or incomplete legal instructions will rarely, if ever, rise to the level of flagrant misconduct sufficient to meet the *Bank of Nova Scotia*'s demanding standard. This has long been the law in other Circuits as well. In *United States v. Buchanan*, 787 F.2d 477, 487 (10th Cir. 1986), for example, the court wrote:

> Attempt[s] to prevent trial by attacking alleged legal errors in the grand jury proceedings [are] generally rejected. An indictment returned by a legally constituted and unbiased grand jury, if valid on its face, is enough to call for

trial of the charge on the merits. . . . An indictment may be dismissed for prosecutorial misconduct so flagrant that there is some significant infringement on the grand jury's ability to exercise independent judgment. [¶] Challenges going only to the instructions given to the grand jury as to the elements of the offenses are not grounds for dismissal of an indictment that is valid on its face.[2]

Furthermore, courts have repeatedly held that a conviction at trial, which reflects a petit jury's determination of guilt beyond a reasonable doubt, renders harmless any alleged errors that occurred before the grand jury. *See, e.g., United States v. Mechanik*, 475 U.S. 66, 67-73 (1986); *Navarro*, 608 F.3d at 538 ("The petit jury's verdict establishes that probable cause existed."); *United States v. Morgan*, 384 F.3d 439, 443 (7th Cir. 2004); *United States v. Reyes-Echevarria,* 345 F.3d 1, 4 (1st Cir. 2003).

Moreover, as previously argued, the instructions to the grand jury are secret. (Doc. 812). *In United States v. Chambers*, 2019 WL 1014850, at *3 (D. Conn. Mar. 4, 2019), the court responded to another district court decision allowing for the disclosure of instructions to the grand jury, finding:

> The Court is not persuaded that such a relaxed approach adequately protects the long-recognized goals of grand jury secrecy. . . .[[3]] Indeed, "[legal] instructions [given to the Grand Jury] ..., or the existence of such instructions goes to the substance of the charge being laid before the Grand Jury as well as how the Grand Jury is to proceed regarding the type and manner of produced evidence before the panel." *United States v. Larson*, 2012 WL 4112026, at *5 (W.D.N.Y. Sept. 18, 2012). Accordingly, affording these instructions the same level of secrecy as other grand jury materials is, in this Court's view, appropriate.

Other courts—including those within the Ninth Circuit—have taken a similar view. *See, e.g.*, *United States v. Stepanyan*, 2016 WL 4398281, at *2 (N.D. Cal. Aug. 18, 2016) ("courts have uniformly rejected the argument that the government's instructions or remarks to the grand jury are not entitled to secrecy"); *United States v. Morales*, 2007 WL 628678, at *4 (E.D. Cal. Feb. 28, 2007) (denying request for release of the grand jury instructions).

---

[2] *United States v. Peralta*, 763 F. Supp. 14, 19-21 (S.D.N.Y. 1991), cited by Defendants (Mot. at 6), involved the government's presentation of concededly inaccurate hearsay testimony to the grand jury, which was compounded by instructions and responses to grand jurors' questions that "seriously misstated the applicable law" of constructive possession.

[3] Citing *In re Grand Jury Subpoena,* 103 F.3d 234, 237 (2d Cir. 1996).

While Defendants cite three pre-*Stepanyan* district court cases from California that, with little analysis, take a contrary view (*see* Mot. at 6), numerous courts around the country have concluded that grand jury instructions *are* subject to traditional presumptions of grand jury secrecy. *See, e.g.*, *United States v. Barry,* 71 F.3d 1269, 1274 (7th Cir. 1995) (the "defendant must show particularized need" to obtain grand jury instructions); *Chambers*, 2019 WL 1014850, at *2 ("Although the Second Circuit Court of Appeals has not squarely addressed the issue, courts within the Second Circuit Court of Appeals have consistently held that obtaining grand jury instructions requires a showing of particularized need.") (citation and quotation marks omitted); *United States v. Welch,* 201 F.R.D. 521, 523 (D. Utah 2001) ("The instructions to the grand jury are intimately associated with the deliberation and judgement [sic] aspects of the grand jury function. Therefore, the instructions are matters occurring before the grand jury and require meeting standards for release of grand jury information."). As this Court previously found, the particularized need standard applies to such requests (Doc. 844 at 10)—and Defendants offer nothing genuinely new or meritorious in the instant Motion capable of meeting that standard here.

## III. Defendants' Motion Fails to Overcome the Strong Presumption of Grand Jury Regularity.

Defendants have repeatedly, without success, challenged the SI's conspiracy and Travel Act counts concerning Defendants' facilitation of prostitution. In October 2019, after extensive briefing and oral argument, the Court issued a 23-page Order denying Defendants' Motion to Dismiss the Indictment. (Doc. 793). The Court identified the required Travel Act elements and ruled that the SI adequately pleaded those elements:

> The [Travel Act] requires [1] use of an interstate facility, [2] with the intent to facilitate an unlawful activity, and [3] a subsequent act in furtherance of that unlawful activity. Here, the SI alleges Defendants used a website with the intent to facilitate prostitution (a criminal activity) and executed strategies to further and increase that activity….[¶] …. [The SI] contains the elements of the offense charged and fairly informs Defendants of the charges against which they must defend.

(Doc. 793 at 22.) More specifically, the Court found:

To obtain a conviction under the Travel Act, the Government must show defendants had "specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities." *United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974); *accord United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981) ("An indictment under the Travel Act requires allegations of each of the three elements of the crime: (1) interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity."); *United States v. Polizzi*, 500 F.2d 856, 876–77 (9th Cir. 1974) (Required intent under the Travel Act is "specific intent to facilitate an activity which the accused knew to be unlawful under state law.").

(Doc. 793 at 15.) After canvassing the SI's detailed allegations, which span 92 pages, the Court concluded that "[t]he alleged facts in the SI, taken as true, establish defendants had the specific intent to promote prostitution in violation of the Travel Act.  They conspired together to do so.  The conspiracy was successful and resulted in the fifty ads for prostitution that now make up fifty counts of violating the Travel Act." (Doc. 793 at 20; *see id.* at 21 (according to the SI, Defendants "intended to facilitate prostitution, which is a crime. *See* A.R.S. § 13-3214.").)

In May 2020, the Court denied Defendants' follow-on Motion to Dismiss Indictment Based on Failure to Allege Necessary Elements of the Travel Act.  (Doc. 946.) In an 18-page Order, the Court found that "the SI alleges 'unlawful activity' for each Travel Act Count with adequate specificity to inform Defendants of their charges." (Doc. 946 at 11.) The Court wrote that "the SI alleges fifty instances where Defendants posted ads on Backpage.com to facilitate specific individual prostitutes or pimps involved in the business of prostitution. (SI ¶¶ 200-201.)" (Doc. 946 at 11.)  The Court observed that the allegations in the SI "almost identically mirror[ ] the Travel Act's text," and quoted Paragraph 201 of the SI as follows:

On or about the dates set forth below, each instance constituting a separate count of this Superseding Indictment, in the District of Arizona and elsewhere, [Defendants], and others known and unknown to the grand jury, use the mail and any facility in interstate and foreign commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States, including but not limited to Title 13, Arizona Revised Statutes, Section 13-3214, and thereafter performed and attempted to perform an act that did promote, manage, establish, carry on, and facilitate the promotion, management, establishment,

1

and carrying on of the unlawful activity, as follows: [describing instances that Defendants published prostitution ads in support of specific individuals, businesses, and other groups involved in prostitution]. In violation of 18 U.S.C. § 1952(a)(3)(A).

2

3

(Doc. 946 at 11.)[4]

4

The Court then found that the SI contained "the requisite Travel Act elements

5

adequately alleged to provide Defendants with notice of the charges against them." (Doc.

6

946 at 12.)  The Court readily found that "[t]he 92 detailed pages of allegations directly

7

bearing on Defendants' Travel Act violations surely place them on notice of their

8

association with individuals and groups engaged in the business of prostitution." (Doc.

9

946 at 13.)  Moreover, the Court again found the SI adequately alleged Defendants had the

10

requisite intent to promote or facilitate unlawful activity.  (Doc. 946 at 14-16.)

11

The Court's analysis fit comfortably within settled Ninth Circuit caselaw.  As the

12

Court noted, SI ¶ 201 "almost identically mirrors the Travel Act's text."  (Doc. 946 at 11.)

13

Numerous decisions in the Ninth Circuit and elsewhere have approved of substantially

14

similar Travel Act counts.  *Tavelman* found sufficient a Travel Act indictment that alleged:

15

"[O]n July 20, 1979: (1) the defendants traveled interstate…(2) with the intent to promote

16

a violation of 21 U.S.C. § 841(a)…and (3) thereafter knowingly performed acts facilitating

17

that unlawful activity."  650 F.2d at 1138.  The court held these allegations "are sufficient

18

to state violations of 18 U.S.C. § 1952(a)(3)."  *Id*.  *See also Turf Center, Inc. v. United

19

*States*, 325 F.2d 793, 794 n.2 (9th Cir. 1963) (affirming conviction in case where Travel

20

Act count contained language nearly identical to SI ¶ 201).

21

At least five other Circuits share this view.  *See, e.g., United States v. Welch*, 327

22

F.3d 1081, 1090 (10th Cir. 2003) ("As set forth by the Act's plain language, the elements

23

necessary to sustain a Travel Act conviction are (1) travel in interstate or foreign commerce

24

or use of the mail or any facility in interstate or foreign commerce, (2) with the intent to

25

promote, manage, establish, carry on, or facilitate the promotion, management,

26

27

28

---

[4] The cited Arizona statute provides "[i]t is unlawful for a person to knowingly engage in prostitution."   A.R.S. § 13-3214(A).   A.R.S. § 13-3211(5) defines "prostitution" as "engaging in or agreeing or offering to engage in sexual conduct under a fee arrangement with any person for money or any other valuable consideration."  The SI made clear that "[p]rostitution is illegal in 49 states and in most of Nevada."  (Doc. 230, SI ¶ 33.)

establishment, or carrying on of the enumerated unlawful activity, and (3) performance of or an attempt to perform an act of promotion, management, establishment, or carrying on of the enumerated unlawful activity."); *United States v. Childress*, 58 F.3d 693, 719 (D.C. Cir. 1995) (essential elements of a Travel Act charge are: "(1) interstate travel or use of a facility in commerce (2) with the intent to promote an unlawful activity and (3) that the defendant thereafter performed or facilitated the performance of an overt act in furtherance of the unlawful activity"); *United States v. Muskovsky*, 863 F.2d 1319, 1326 (7th Cir. 1988) ("A Travel Act violation occurs when a person uses any facility in interstate commerce with intent to promote or facilitate an unlawful activity and thereafter promotes or facilitates the illegal activity"); *United States v. Palfrey*, 499 F. Supp. 2d 34, 43 (D.D.C. 2007) (the Fifth, Seventh, Eighth, Ninth and D.C. Circuits have upheld Travel Act convictions "based on virtually identical indictments").

In the instant Motion, Defendants attempt to take another run at this issue. They now assert that the indictment must also allege that Defendants committed or intended to commit the state law prostitution offenses referenced in the SI. (Mot. at 3-6.) This assertion is based on a misreading of the SI and the cases Defendants cite in support.

First, the SI alleges that Defendants, with an intent to *promote* or *facilitate* state law prostitution offenses, performed one or more overt acts in furtherance of that unlawful activity. (*See* SI ¶ 201.) That is all that the indictment need allege. *Tavelman*, 650 F.2d at 1138; *see also Welch*, 327 F.3d at 1092 ("The Travel Act proscribes not the unlawful activity per se, but the use of interstate facilities with the requisite intent to promote such unlawful activity. An actual violation of [the Utah Commercial Bribery Statute] is not an element of the alleged Travel Act violations in this case and need not have occurred to support the Government's § 1952 prosecution."); *United States v. Montague*, 29 F.3d 317, 322 (7th Cir. 1994) ("[T]he federal crime to be proved in Section 1952 is use of the interstate facilites in furtherance of the unlawful activity . . . Section 1952 does not require that the state crime ever be completed."); *United States v. Campione*, 942 F.2d 429, 433-34 (7th Cir. 1991) (The Travel Act "does not incorporate state law as part of the federal

- 12 -

offense" and thus "violation of the Act does not require proof of a violation of state law.");
*Palfrey*, 499 F. Supp. 2d at 43 ("To the extent Defendant is arguing that the Government must prove each element of the predicate state offenses, it is well-settled that the Government bears no such burden in Travel Act cases. . . .  The statute requires only that a defendant 'inten[ded] to . . . promote . . .any unlawful activity,' not that the defendant have completed such unlawful activity."); *id*. ("The Indictment must allege the essential elements of the offense with which Defendant is charged, namely, violations of the Travel Act. . . . The elements of the predicate state offenses are not essential elements of the Travel Act violations.").

Defendants' cases are not to the contrary. First, Defendants recycle—from yet another motion to dismiss—their reliance on *United States v. Bertman*, 686 F.2d 772 (9th Cir. 1982).  (*See* Doc. 783 (Defendants' "Motion to Dismiss Based on Section 230 of the Communications Decency Act") at 3-4, 7-8; Doc. 840, Order at 11-12.)  *Bertman* involved a claim under 18 U.S.C. § 1952(b)(2) that the defendant violated the Travel Act by bribing a public official in Hawaii in direct violation of the Hawaii Penal Code.  686 F.2d at 773-74.  The Ninth Circuit held that "[w]hen the unlawful activity charged in the indictment *is* the violation of state law, the commission of or the intent to commit such a violation is an element of the federal offense," the government "must prove . . . that the defendant has or could have violated the underlying state law, and the defendant may assert any relevant substantive state law defense." *Id*. at 774 (emphasis added).  Here, the unlawful activity at issue is not Defendants' direct *violation* of a state "extortion, bribery, or arson" statute under 18 U.S.C. § 1952(b)(2) (as in *Bertman*), but rather Defendants' *promotion* or *facilitation* of unlawful activity under 18 U.S.C. § 1952(a)(3) and (b)(1).  (*See, e.g*., SI¶¶9-11, 34.)   In these circumstances, it would make no sense to require that the government prove Defendants did or could have directly committed the underlying state law offenses.  "Promotion" or "facilitation," not commission, is all that is required.  *See* 18 U.S.C. § 1952(a)(3).

Defendants' contrary reading would render superfluous the terms "promote" and "facilitate" in 18 U.S.C. § 1952(a)(3)—"a result we typically try to avoid." *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 941 (2017). *See also Williams v. Taylor,* 529 U.S. 362, 404 (2000) ("[W]e must give effect, if possible, to every clause and word of a statute."). For that very reason, the Ninth Circuit has recognized that the Travel Act does not require proof that defendants intended to violate state law themselves; proof that defendants intended to *promote* or *facilitate* violation of state law suffices. *Polizzi*, 500 F.2d at 876-77 ("[T]o the extent that [a Sixth Circuit case] requires proof that an accused under § 1952 intended to violate state law himself, we find that it conflicts with the clear meaning of the language used in § 1952."). These include cases decided post-*Bertman*. *United States v. Winslow*, 962 F.2d 845, 852 (9th Cir. 1992) ("Section 1952(a)(3) requires the government to prove only that a defendant committed 'a subsequent overt act in furtherance of the unlawful activity.'"); *United States v. Stafford*, 831 F.2d 1479, 1482 (9th Cir. 1987) ("The Travel Act does not require the commission of the predicate offense; rather, only an 'attempt to promote' the unlawful activity . . . with a 'subsequent overt act in furtherance of that unlawful activity.'"); *see also United States v. Jones*, 642 F.2d 909, 913 (5th Cir. 1981) (subsequent facilitating act required by Travel Act need only make the unlawful activity easier and need not itself be unlawful). This Court's prior Orders discussing the adequacy of the SI are to the same effect. (*See* Doc. 793, Order at 15 (quoting *Polizzi* and describing *mens rea* required by Travel Act); *see also* Doc. 840, Order at 10-12 (discussing elements of Travel Act); Doc. 946, Order at 7-8, 11, 14-16 (same).)

Defendants' second case, *United States v. Jones*, 527 F.2d 1048 (D.C. Cir. 1990), does not focus on what "essential" Travel Act elements must be set forth in a grand jury's indictment. More recent D.C. Circuit caselaw (discussed above) addresses that issue. *Childress*, 58 F.3d at 719. Rather, *Jones* concerned that Circuit's views involving the government's burden at trial. *Palfrey*, 499 F. Supp. 2d at 44 ("In contrast to what must be proved at trial, which was the issue in *Jones*, . . . an indictment is required to allege only the essential elements of the Travel Act offense."). Simply put, *Jones* says nothing at all

about the sufficiency of grand jury indictments or the adequacy of grand jury instructions.[5]

Defendants also assert that the government's comments about two proposed questions on the jury questionnaire at the June 7, 2021 status conference somehow suggests that the grand jury was misinformed about the unlawful activity Defendants are charged with facilitating or promoting.  (Mot. at 3-4.)  This is nonsense.  The first question Defendants highlight asked whether potential jurors think prostitution should be legalized.  (Mot. at 3 and Ex. A at 16.)  If that's not a fair question in case like this—which involves Defendants' operation of the internet's leading source of prostitution solicitations for most of the last decade (*see* Doc. 230, SI¶ ¶ 1-211)—it's difficult to imagine what would be.  And that question, standing alone, hardly suggests that the grand jury considering the SI three years ago was somehow misled or misinformed about the nature of Backpage and the charges in this case.

The second item Defendants mention involved the government's objection to a proposed question that lumped "escort services" together with legitimate adult entertainment.  As explained in the SI, while Backpage for many years maintained an "adult-escorts" advertising category, Defendants were aware that the overwhelming majority of ads in that section were for prostitution—and Defendants deliberately pursued a number of business strategies specifically designed to attract more prostitution

---

[5] Defendants assert, without elaboration, that *Jones* has been "cited favorably by the Ninth Circuit."  (Doc. 1171, Mot. at 4.)  In *Myers v. Sessions*, 904 F.3d 1101, 1110 (9th Cir. 2018), an immigration appeal, the court cited *Jones* in considering a question far removed from this case—namely, whether a legal permanent resident's Travel Act conviction in the Fifth Circuit involving a controlled substance offense supported a subsequent order of removal.  *Myers* did not involve a claim of promotion or facilitation of a business enterprise involving prostitution.  *Myers* was not concerned with the sufficiency of an indictment or grand jury proceedings.  *Myers* did not cite or discuss, let alone purport to overrule, *Tavelman*, 650 F.2d at 1138, *Polizzi*, 500 F.2d at 876-77, *Gibson Specialty Co.*, 507 F.2d at 449, *Turf Center, Inc.*, 325 F.2d at 794, 797 nn. 2 and 5, or similar Ninth Circuit cases.  Furthermore, *Myers*'s discussion of *Jones* occurred in a part of the court's opinion that can be fairly described as *dicta*—as the court recognized, *Jones* involved "a somewhat different question" than that presented in *Myers*.  904 F.3d. at 1110.  At bottom, *Myers* determined that a Travel Act conviction requires identifying an underlying unlawful activity, and held that the petitioner's Fifth Circuit conviction sufficiently met that standard.  *See id.* ("Neither party identified a Fifth Circuit case that involves a Travel Act conviction in which the underlying unlawful activity is not specified [either generically or with reference to a specific state statute], and we did not find one either.").

advertising customers and increase its prostitution-related revenues.  (SI ¶34 (Defendants "took a variety of steps to intentionally facilitate that illegal activity").)   These steps "included, but were not limited to, creating free ads for prostitutes in an attempt to secure future advertising revenues from them (*i.e.*, 'content aggregation'), entering into formal business arrangements with known prostitution services and websites in an attempt to increase the volume of prostitution advertisements being posted on Backpage (*i.e.*, reciprocal link and affiliate programs), and sanitizing ads by editing them—specifically, removing terms and pictures that were particularly indicative of prostitution and them publishing a revised version of that ad (*i.e.*, moderation)."  (SI ¶34.)

The government's objection to the unadorned—and potentially confusing and misleading—use of the term "escort services" in the jury questionnaire as suggesting entirely lawful activity wasn't just grounded in the SI's allegations.  On April 5, 2018, Backpage.com, LLC and several related operating entities pleaded guilty to an information charging one count of money laundering.  Backpage admitted it "derived the great majority of its revenue from fees charged in return for publishing advertisements for 'adult' and 'escort' services," and "[t]he great majority of these advertisements are, in fact, advertisements for prostitution services." (*United States v. Backpage.com, LLC*, CR-18-465-PHX-SMB, Doc. 8-2 at 11.) That same day, Backpage's then-CEO and 100% owner, Carl Ferrer, pleaded guilty to an information charging one count of conspiracy. (*United States v. Ferrer*, CR-18-464-PHX-SMB, Doc. 7-2.)  Ferrer likewise admitted that the great majority of Backpage's "adult" and "escort" ads were for prostitution, and he further admitted that to "create a veneer of deniability for Backpage," he worked with co-conspirators "to create 'moderation' processes through which Backpage would remove terms and pictures that were particularly indicative of prostitution and then publish a revised version of the ad." (*Id.*, Doc. 7-2 at 13.)   Subsequently, Backpage's Sales and Marketing Director Dan Hyer pleaded guilty to Count 1 of the SI (conspiracy to violate the Travel Act/facilitate prostitution), and he admitted that the majority of the "escort" ads that he and others at Backpage had created as part of the "aggregation" process were actually

1    offering illegal prostitution services.[6]  (Doc. 271 at 9.)

2        At trial, the government anticipates introducing testimony from numerous witnesses

3    regarding the actual contents of Backpage's "adult" and "escort" sections, including former

4    Backpage employees and contractors, adults and children who were advertised for sexual

5    services on Backpage, and law enforcement agents who investigated ads on Backpage.  In

6    addition, the government anticipates introducing evidence showing what Backpage's

7    "adult" and "escort" webpages actually looked like—evidence demonstrating that, rather

8    than marketing legitimate "escort services," these sections included page after page after

9    page of prostitution solicitations.

10       Simply put, the term "escort" as used on Backpage was nothing more than a

11   euphemism for prostitution.  The United States' objection to the use of that term as

12   potentially misleading—in the context of reviewing a proposed question on the draft jury

13   questionnaire—cannot satisfy Defendants' heavy burden of demonstrating the kind of

14   particularized, specific need for grand jury materials that the law requires.  *Douglas Oil*,

15   441 U.S. at 222; (Doc. 844, Order at 10).  The grand jury had the 92-page SI, which

16   explained in detail how Defendants intended to facilitate prostitution by, *inter alia*,

17   publishing the prostitution ads discussed in the SI, including the 50 specific ads in Counts

18   2-51.  Defendants point to nothing to suggest that the grand jury was misinformed about

19   the substance of the charges, and the instant Motion should be denied.

20                              **<u>Conclusion</u>**

21       For the foregoing reasons, Defendants' Motion (Doc. 1171) should be denied.

22       Respectfully submitted this 23rd day of June, 2021.

23                              GLENN B. McCORMICK
                               Acting United States Attorney
24                             District of Arizona

25                             *s/ Peter S. Kozinets*
                               KEVIN M. RAPP
26                             MARGARET PERLMETER
                               PETER S. KOZINETS
27

28   _____
     [6] The government anticipates that the evidence at trial will conform to these statements,
     and, in addition, demonstrate that legitimate escort services are rare.

ANDREW C. STONE
Assistant U.S. Attorneys

DAN G. BOYLE
Special Assistant U.S. Attorney

NICHOLAS L. MCQUAID
Acting Assistant Attorney General
U.S. Department of Justice
Criminal Division, U.S. Department of Justice

REGINALD E. JONES
Senior Trial Attorney
U.S. Department of Justice, Criminal Division
Child Exploitation and Obscenity Section

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Marjorie Dieckman*
U.S. Attorney's Office

- 18 -