Thomas H. Bienert, Jr. (CA Bar No.135311, *admitted pro hac vice*)
Whitney Z. Bernstein (CA Bar No. 304917, *admitted pro hac vice*)
BIENERT KATZMAN LITTRELL WILLIAMS LLP
903 Calle Amanecer, Suite 350
San Clemente, California 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701
tbienert@bklwlaw.com
wbernstein@bklwlaw.com
*Attorneys for James Larkin*

Paul J. Cambria, Jr. (NY Bar No. 1430909, *admitted pro hac vice)*
Erin McCampbell (NY Bar. No 4480166, *admitted pro hac vice)*
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile: (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Additional counsel listed on next page

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

vs.

Michael Lacey, *et al.*,

Defendants.

Case No. 2:18-cr-00422-PHX-SMB

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL GOVERNMENT TO COMPLY WITH ITS *BRADY* AND *GIGLIO* OBLIGATIONS**

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice)*
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice)*
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice)*
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

Apparently believing this Court will not revisit decisions made by Judge Logan, the government incorrectly and disingenuously frames Defendants' Motion to Compel the Government To Comply With Its *Brady* and *Giglio* Obligations as a "relitigate[ion] of Judge Logan's Order." Dkt. 1328 at 9. But Judge Logan ***never*** ruled that the government could withhold the ***underlying factual investigation materials*** (interviews, memos, notes, emails, subpoenaed documents, deposition transcripts, grand jury testimony, etc.) supporting the 2012/2013 Western District of Washington ("WDWA") Department of Justice ("DOJ") memos (the "Memos") finding no evidence of criminality by Backpage.com.

Not only was this issue never presented to Judge Logan, but such a ruling would have made no sense. First, the facts the facts underlying work product obtain no protections just because they are incorporated into work product. *E.g.*, *Owens v. Wesco Aircraft Hardware Corp.*, 2020 WL 6114916, at *4 (C.D. Cal. Apr. 6, 2020) ("the work product doctrine does not protect the underlying facts from discovery"); *S.E.C. v. Berry*, 2011 WL 825742, at *3 (N.D. Cal. Mar. 7, 2011) ("it is hornbook law that underlying non-protectable facts cannot be clothed with the protections of the attorney work product doctrine"). Second, many of the underlying facts summarized or memorialized in the Memos are ***directly at odds*** with or otherwise undermine the government's arguments at trial, and, therefore, are not only clearly material under Rule 16 but also classic *Brady* and *Giglio* materials.

Judge Logan held that the Memos were inadvertently produced work product and, as such, Defendants were obligated to return the Memos. Judge Logan's ruling said nothing about the government's obligation to produce the underlying material, exculpatory, and impeaching factual information summarized or memorialized in the Memos, as the Court can readily ascertain by reading his rulings. Dkt. 449-1.[1] *Id.*

Defendants asked the Court to review the Memos *in camera*[2] because they know the

[1] When Judge Logan made his ruling, he did not know the government would be taking positions at trial that both undermined and also contradicted by the factual statements in its Memos. Although Defendants may have grounds to seek reconsideration of Judge Logan's order requiring Defendants to destroy the Memos, they are not seeking that remedy at this time.

[2] The Memos are already lodged in the record. *See* Dkt. 537. Defendants cannot see sealed or *in camera* filings on the docket to be able to advise this Court where the Memos are located in

Memos summarize and memorialize exculpatory and impeaching evidence from DOJ's investigation, but Judge Logan's Order requiring Defendants to destroy the Memos prevents Defendants from providing specifics. Defendants have not asked the Court to review the Memos to decide whether to *produce* the Memos to Defendants, but rather to identify the *underlying factual information* summarized and memorialized in the Memos that the government is obligated to produce to Defendants under Rule 16, *Brady* and *Giglio*.[3]

The law does not permit the government to brand Defendants as criminals and refuse to produce material, exculpatory, and impeaching information in its possession that shows otherwise ***when it knows that DOJ previously found the opposite***. Nor does the law permit the government to use the work product doctrine to shield from scrutiny its failure to produce the underlying factual information summarized and memorialized in the Memos. *See*, *e.g.*, *Moody v I.R.S.*, 654 F.2d 795, 800 (D.C. Cir. 1981) (in a case involving a government attorney's attempts to shield production of work product documenting misconduct, the court held an "attorney should not be able to exploit the [work product] privilege for ends outside of and antithetical to the adversary system any more than a client who attempts to use the privilege to advance criminal or fraudulent ends"). Defendants have been asking for this information since ***2018***, but the government has repeatedly refused to provide it, making the specious arguments that the information is not relevant because it is dated. In light of the government's position at trial, the underlying factual investigation materials (interviews, memos, notes, emails, subpoenaed documents, deposition transcripts, grand jury testimony, etc.) summarized or memorialized in the Memos are clearly material, exculpatory, or impeaching.

The government's response does not explain how interviews, memos, notes, emails, subpoenaed documents, deposition transcripts, grand jury testimony, and the like undermining its theories of the case can be legally or constitutionally withheld, when the prosecutors have been telling the jury that the facts are the opposite of what they were found to be in the WDWA

compliance with Judge Logan's order at Dkt. 537.

[3] The Memos also may implicate *Jencks*, as undersigned counsel understands that statements from government witness FBI Supervisory Special Agent Steven Vienneau are included in the Memos. *See also* Dkt. 1281 at 1, fn. 1.

DOJ investigation. Instead, the government's response just sets up and knocks down various straw men, regurgitates its Superseding Indictment, and mischaracterizes Judge Logan's Order in hopes that this Court won't look further.

The Court should compel the government to produce all the underlying evidence from the WDWA DOJ investigation that is potentially favorable[4] to the defense, whether exculpatory, impeaching, or that could contradict any of the government's theories of *mens rea* or liability—including the evidence that ***directly contradicts*** the positions the government advanced at trial. Given the government's failure to produce obvious Rule 16, *Brady*, and *Giglio* materials to the defense, Defendants also ask the Court to review the Memos *in camera* to identify and catalog all potentially favorable facts summarized or memorialized in the Memos and to then order the government to produce all evidence of those potentially favorable facts.

## I. THE GOVERNMENT'S CASE IS ANCHORED IN THE 2004-2012 PERIOD, AND THE FACTS FROM WDWA DOJ'S INVESTIGATION ARE UNQUESTIONABLY RELEVANT.

The Court need not look past the government's opening statement to reject the government's claim that the factual findings from the 2012/2013 WDWA investigation are not relevant, material, exculpatory, and impeaching. The transcript of the government's opening was 53 pages long. Dkt. 1272-1 at 4-57. The first 42 pages and the last 1.5 pages are devoted to alleged proof of guilt from 2004-2012. Stated differently, the government spent only 9.5 pages—less than 20%—of its opening arguing that Defendants are guilty because of conduct after 2012/2013. Equity, reason, logic, and the law prevent the government from spending over 80% of its opening statement telling the jury that Defendants are guilty based on actions occurring from 2004 through 2012, while simultaneously refusing to disclose material, exculpatory, and impeaching evidence DOJ gathered from this exact same timeframe evidencing the opposite.

The government started its statement with a horror story of alleged child sex trafficking in 2009. Dkt. 1272-1 at 4-5. DOJ Attorney Reginald Jones continued to catalogue purported proof of guilt citing to evidence and practices pre-2012/2013 and arguing that one can tell an ad is for prostitution on the face of the ad, ***in direct contradiction to findings in WDWA DOJ's***

---

[4] *See infra* at Section II(A).

***investigation***. *Id.* at 5-46. He rhetorically asked the jury, "How could these defendants create and run this website for nearly 14 years [inclusive of 2010-2012] knowing that they were facilitating this illegal conduct?" Dkt. 1272-1 at 6. He showed various ads and read out the titles, described the pictures on the screen, and told the jury they were part of the "vast array of prostitution ads on Backpage." *Id.* at 8-9. As one example, the government displayed ads and declared the women in them to be a prostitutes based on the face of the ads, without promising that the jury would hear any other evidence to demonstrate that any advertiser was in fact a prostitute. *See, e.g.*, Dkt. 1272-1 at 10 ("This image you're looking at now, no GFE, just means this prostitute, this provider is only offering sex for money with no girlfriend experience."). As another example, Mr. Jones told the jury that throughout the course of Backpage.com's operation from 2004-2018 its adult services section contained "nothing less than prostitution ads." *Id.* at 11.

From its premise that one could tell just by looking at adult ads that they related to prostitution, the government called on the jury to hold Defendants accountable for 14 years (2004-2008) of purported criminality in publishing adult ads. *See, e.g.*, *id.* at 12 ("during this 14 years of existence") ("Backpage generated hundreds of millions of dollars during its years of operation") ("let's talk about how Backpage was started and grew to be the internet's leading forum for prostitution"); *id.* at 44 ("The lives of countless women and children have been forever changed by their running Backpage.com for 14 years."); *id.* at 57 ("hold these defendants accountable for their criminal conduct in running this website for nearly 14 years"). The government did so despite DOJ's investigation finding the opposite.

The government's opening primarily focused on the years before 2012/2013. Dkt. 1272-1 at 13 ("In between 2004 and 2010 when Craigslist shut down its adult services section, Craigslist was Backpage's biggest competition when it came to prostitution ads.") ("you'll hear from Dan Hyer that in the early years these defendants didn't even contact customers and get their permission before taking the prostitution ads off Craigslist and recreating those same prostitution ads on Backpage"); *id.* at 15 (discussing an email from November 2008 about "creating prostitution ads on Backpage through the content aggregation process"). Mr. Jones also previewed the government's evidence in chronological order, detailing Backpage.com's purportedly illegal

business activities "[b]eginning in around 2007, and continuing until at least 2010," *id.* at 16-20, specifically discussing evidence from "January 2009," *id.* at 19-20, and from 2009 and 2011, Dkt. 1272-2 at 27-28. Citing to evidence and practices from 2007, 2008, 2010, and 2011, Mr. Jones catalogued purported proof that Backpage.com hosted prostitution ads. Dkt. 1272-1 at 20-27. He emphasized the government's position in this case that one can tell an ad is for prostitution just by looking at it, even though DOJ's investigation found the opposite, and read out titles of ads that appeared on Backpage.com arguing that they were "prostitution ads." Dkt. 1272-1 at 27-28.

The government's opening concluded with another horrific tale of child sex trafficking from 2010 in the WDWA, a case known to DOJ when it investigated Backpage.com and Defendants and found no evidence of criminality as of 2012/2013. *Id.* at 56-57. At trial, two of the government's first three witnesses testified about that 2010 crime, which resulted in a high-profile criminal prosecution in Seattle in 2011—further underscoring how the government's case is solidly anchored in the time frame it now claims to be irrelevant. Moreover, by arguing that one can tell an ad is for prostitution on its face and contradicting DOJ's prior findings to the contrary, the government's case puts directly at issue the facts underlying DOJ's prior finding.

## II. THE DOCUMENTS UNDERLYING DOJ'S INVESTIGATION INTO BACKPAGE.COM PRE-2012/2013 ARE MATERIAL, EXCLUPATORY, AND IMPEACHING INFORMATION TO COMBAT THE PROSECUTOR'S ARGUMENT THAT BACKPAGE.COM ACTED CRIMINALLY PRE-2012/2013.

If the government based its current case on evidence after 2012/2013, Defendants may not have such a strong argument that DOJ's investigative materials from before then were relevant. The government's repeated claim that it uncovered evidence after 2012/2013 to support an argument for Defendants' guilt just highlights the government's failure to grasp the scope of its obligations under *Brady* and *Giglio*. Evidence does not have to prove innocence to qualify as *Brady* and *Giglio* materials; indeed, evidence does not even have to establish a defense to qualify as *Brady* and *Giglio* materials:

> Whether a jury would ultimately find the evidence convincing and lead to an acquittal is not the measuring rod here.... "trial prosecutors must disclose favorable information without attempting to predict whether its disclosure might affect the outcome of the trial." *Id.* n.3; *see United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005) ("[T]he government must

> always produce any potentially exculpatory or otherwise favorable evidence without regard to how the withholding of such evidence might be viewed ... as affecting the outcome of the trial. The question before trial is not whether the government thinks that disclosure of the information or evidence ... might change the outcome of the trial going forward, but whether the evidence is favorable and therefore must be disclosed.").

*United States v. Bundy*, 968 F.3d 1019, 1033 (2020) ("The defendants were entitled to any evidence that could contradict this [scienter] theory, irrespective of whether they could or would muster an affirmative defense. Espousing the belief that evidence undercutting the government's central theory of *mens rea* was somehow irrelevant and not *Brady* material was preposterous and reckless.").

To justify withholding *Brady* and *Giglio* materials, the government argues much has changed since the conclusion of DOJ's investigation in 2012/2013. This argument completely misses the point because, as discussed above, the government is obligated to produce the information regardless of whether it actually provides a defense, ***because it is favorable***, whether it provides a defense or not. *See, e.g.*, *Bundy*, 968 F.3d at 1042 ("doubt about the helpfulness of evidence should be resolved in favor of disclosure"). For purposes of Defendants' motion, it does not matter that the government believes criminal acts happened after 2012/2013, as this does not change the government's obligations to provide material, exculpatory, and impeaching information in its possession that contradicts its argument that Backpage.com and the Defendants engaged in criminality prior to 2012/2013. Even if the government did subsequently come into possession of inculpatory evidence that undermines the older favorable evidence, the favorable evidence nonetheless must be produced. *Id.* at 1033 (the government is free to argue "the significance of the evidence to the jury, but it is hard to see how the government could argue that the evidence was irrelevant, much less a 'fantastical fishing expedition'"). Moreover, Defendants believe the factual materials underlying the Memos also will demonstrate that the government already knew much of the purportedly new information it now claims undermines the exculpatory value of the facts documented in the WDWA investigation.

The government is free to argue to the jury why it thinks the exculpatory and impeaching

information is unreliable or invalid. And, in fact, the government seems to have essentially prepared its redirect and closing argument as to these points, as laid out throughout its response. But redirect and closing are where the government can appropriately make these subjective arguments. The government does not get to assume a conclusion that it must prove and then withhold documents that would refute the conclusion based on the government's untested assumption. Regardless of how strongly the government here believes that Defendants are guilty of the charges in the Superseding Indictment, the Constitution nonetheless requires a trial to test the government's theories—and Defendants are entitled to any evidence favorable to the defense to prepare for that trial. Similarly, the government cannot decide relevant interviews, documents, etc. are mistaken and therefore refuse to provide such documents. The Constitution, Rules, *Brady*, and *Giglio* require the government produce the exculpatory and impeaching information in its possession and permit the government to then test its theory as to why it thinks these documents are now irrelevant at trial.

For example, the prosecutors here argue that though the WDWA DOJ investigation found that as of 2012/2013 Backpage.com worked with NCMEC to combat prostitution on its website, NCMEC changed its position in 2014. Dkt. 1328 at 11. The government never explains how NCMEC's subsequent about-face absolves the government of disclosing exculpatory and impeaching information in its possession under Rule 16, *Brady*, and *Giglio* as to NCMEC's position as of 2012/2013.[5] Similarly, the prosecutors quote various snippets from the Senate's 2017 investigation into Backpage.com (a hearsay and non-adversarial process where Backpage.com received no due process or ability to present its case) to demonstrate that Defendants knowingly facilitated a business enterprise's prostitution offenses. *Id.* at 11-12. It is incredible that the government thinks it can prove its point by selectively quoting from documents it has decided to disclose while withholding documents that Defendants know to contain quotes and information in direct contradiction. Again, the government's view that

[5] Moreover, the government characterized Backpage as being deceitful with NCMEC over the years, Dkt. 1272-1 at 29-30, yet refuses to disclose material, exculpatory, and impeaching evidence it possesses from DOJ's investigation demonstrating that Backpage went above and beyond assisting NCMEC and trying to prevent users' illegal use of the website.

evidence obtained after 2012/2013 renders favorable evidence contained in DOJ's 2012/2013 investigative materials irrelevant is something the government is free to present to the jury, but does not permit the government to withhold material, exculpatory, and impeaching information at this stage.

**A. The requested information is material, exculpatory, and impeaching.**

The government's response confusingly asserts that Defendants have not "shown materiality under Rule 16 nor demonstrated that the United States has withheld favorable or impeaching evidence." Dkt. 1328 at 13. The government fails to appreciate the low threshold required in the Ninth Circuit to demonstrate materiality under Rule 16. Information is material if it is relevant to a possible defense, *United States v. Stever*, 603 F.3d 747, 752 (9th Cir. 2010), and includes both inculpatory and exculpatory information, *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Information that is not exculpatory or impeaching may still be relevant to developing a possible defense."). Even information that merely "causes a defendant to completely abandon a planned defense and take an entirely different path" must be disclosed under Rule 16's broad discovery right. *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (internal quotation marks omitted). As the Ninth Circuit explained, "[t]he test is not whether the discovery is admissible at trial, but whether the discovery may assist [the defendant] in formulating a defense." *United States v. Soto-Zuniga*, 837 F.3d 992, 1003 (9th Cir. 2016). In *Soto-Zuniga*, the Ninth Circuit also reiterated that "it behooves the government to interpret the disclosure require broadly and turn over whatever evidence it has pertaining to the case." *Id.* (quoting *Hernandez-Meza*, 720 F.3d at 768) (internal quotations omitted). Defendants have amply demonstrated the materiality of the requested interviews, memos, notes, emails, subpoenaed documents, deposition transcripts, grand jury testimony, and the like.

Further, Defendants presented the controlling case law regarding *Brady*/*Giglio* violations in their motion and incorporate it by reference here. Dkt. 1281 at 2-3. The prosecutors here work for the same entity whose 2012/2013 investigation found no evidence of criminality and that one cannot tell whether an adult ad is for illegal prostitution on the face of the ad. Defendants have repeatedly asked for these underlying investigative materials evidencing these

findings. *See* Exhibits A through J to Dkt. 1281, many filed under seal. The government has cherry picked and produced *some* material from the investigation, but has repeatedly refused to provide the materials that include the key evidence that substantially undermines its case. Accordingly, Defendants have also demonstrated that "the government possesse[s] and kn[ows] about material favorable to the defense and has failed and refused to disclose it," and the government has utterly failed "to demonstrate that the prosecutor satisfied his duty to disclose all favorable evidence known to him or that he could have learned from others acting on the government's behalf." *United States v. Price*. 566 F.3d 900, 910 (9th Cir. 2009).

### B. The government's obligations under *Brady* and *Giglio* are separate and distinct from its obligations under Rule 16 and *Jencks*.

The government's response also argues that it has complied with *Jencks*. Dkt. 1328 at 13. This also misses the mark. The government's obligations to produce exculpatory and impeaching information in its possession exists separate and apart from its obligations to produce prior statements of its witnesses related to the same subject matter as the witness' current testimony under *Jencks*. Throughout the past nearly four years of litigation when Defendants would demand the underlying materials from WDWA DOJ's investigation related to various witnesses on the government's then current witness lists, the government responded by removing the witness from its witness list. The government is absolutely correct that this gamesmanship absolved it of producing the exculpatory and impeaching materials under *Jencks*, but the government's manipulation of its witness lists does not absolve it from complying with Rule 16, *Brady*, or *Giglio*.

The government argues that it produced some document responsive to Defendants' demands, Dkt. 1328 at 3, n. 2, and that is true. But it is also irrelevant. The government does not satisfy its obligations under Rule 16, *Brady*, or *Giglio* by producing *some* favorable evidence, but by producing *all* favorable evidence—and the government cannot plausibly claim it has produced *all* favorable evidence from the WDWA DOJ investigation. For instance, the government produced some grand jury testimony, but refused to produce the exhibits to that testimony. One of the exhibits to that testimony appears to be a legal opinion, from a major law firm, advising a third-party who was considering purchasing Backpage.com that he would face

no civil or criminal from adult ads on Backpage.com relating to prostitution. Defendants made a specific demand for that opinion letter (Exhibit H to Dkt. 1281 at 1, filed under seal), but the government has refused to produce it, arguing that the WDWA DOJ investigation did not "reveal exculpatory or impeaching information in this criminal case" (Exhibit I to Dkt. 1281 at 4, filed under seal)—a refusal and a contention that are both "preposterous and reckless." *Bundy*, 968 F.3d at 1033. The government also points to a handful of pages produced just three weeks before trial (and three years after Defendants' first demand), but, tellingly, the government does not represent that those few pages are the entire universe of documents containing exculpatory and impeaching information from DOJ's investigation. Its silence on that point is deafening.

## III. CONCLUSION

The Court should compel the government to produce all the underlying evidence from the WDWA DOJ investigation that is potentially favorable to the defense, whether material, exculpatory, impeaching, or that could contradict any of the government's theories of *mens rea* or liability. Given the government's failure to produce obvious Rule 16, *Brady*, and *Giglio* materials to the defense, Defendants also ask the Court to review the Memos *in camera* to identify and catalog all potentially favorable facts summarized or memorialized in the Memos and to directly order the government to produce to the defense all evidence of those potentially favorable facts identified by the Court.

RESPECTFULLY SUBMITTED this 30th day of September 2021,

BIENERT KATZMAN LITTRELL WILLIAMS LLP
*s/ Whitney Z. Bernstein*
Thomas H. Bienert, Jr.
Whitney Z. Bernstein
Attorneys for James Larkin

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Oct. 2020) § II(C)(3), Whitney Z. Bernstein hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.*

LIPSITZ GREEN SCIME CAMBRIA LLP
*s/ Paul J. Cambria, Jr.*
Paul J. Cambria, Jr.
Erin McCampbell Paris
Attorneys for Michael Lacey

BIRD MARELLA BOXER WOLPERT NESSIM DROOKS LINCENBERG AND RHOW PC
*s/ Gary S. Lincenberg*
Gary S. Lincenberg
Ariel A. Neuman
Gopi K. Panchapakesan
Attorneys for John Brunst

FEDER LAW OFFICE PA
*s/ Bruce Feder*
Bruce Feder
Attorneys for Scott Spear

DAVID EISENBERG PLC
*s/ David Eisenberg*
David Eisenberg
Attorneys for Andrew Padilla

JOY BERTRAND ESQ LLC
*s/ Joy Bertrand*
Joy Bertrand
Attorneys for Joye Vaught

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*/s/ Toni Thomas*
Toni Thomas