**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | No. CR-18-00422-001-PHX-DJH |
|---|---|
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et, al., | |
| Defendant. | |

Before the Court is the Defendants' Joint Motion Requesting Status Conference (Doc. 1378) which the Court construed, in part, as Defendants' Joint Motion to Recuse. The Government has filed a Response (Doc. 1382) and the Defendants have filed their Reply (Doc. 1388). The Court now issues its ruling.

As an initial matter, the Defendants object to the Court construing their Request as a Motion to Recuse. (*Id.* at 6). Ironically, on November 6, 2021, before filing their objection or Reply with the Court, they publicly aired and added to their initial claims (Doc. 1378 at 4-5), reasons why this Court may be biased.[1] The content of this public commentary by named Defendants' publication belies the sincerity of their objection. Therefore, the objection is overruled.[2]

. . . .

---

[1] *See* https://frontpageconfidential.com/lacey-larkin-judge-humetewa-ties-to-john-mccain-new-motion/

[2] Given the already wide attention that this case has received, and in view of Defendants' contributions to that, counsel and *all* named Defendants are Ordered to review LRCiv 83.8 and LRCrim 57.2(f).

I. **Background**[3]

The named Defendants are former owners and publishers of weekly newspapers and on-line newspapers, and Backpage.com. Backpage.com was an online classified advertising service where users could post classified ads. Backpage.com included a category for "adult" services. As a result of some of the content alleged to be in these ads, the Defendants were indicted on March 28, 2018, on charges of facilitating business enterprises involved in prostitution under the Travel Act (18 U.S.C. § 1952), money laundering (18 U.S.C. §§ 1956 and 1957), and conspiracy to commit these offenses (18 U.S.C. §§ 371 and 1956).

The Defendants proceeded to a jury trial which resulted in the previously-assigned judge declaring a mistrial. (Doc. 1308). Shortly thereafter, the former presiding judge recused herself from the case and the undersigned was assigned to the matter. Given the statements made in Defendants' Joint Motion Requesting Status Conference, the Court now undertakes a review of whether recusal is necessary.

II. **Law and Analysis of Whether Recusal of this Court is Warranted Under 28 U.S.C § 455(a) and/or 455(b)(1)**

A United States judge is under an affirmative duty to recuse "in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). A litigant may raise the issue of recusal under section 455. The judge, however, "has 'as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require.'" *Clemons v. U.S. Dist. Court for the Dist. of Calif.*, 428 F.3d 1175, 1179 (9th Cir. 2005) (*quoting Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995)). The standard is whether a "reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* at 1178. This "reasonable person" means "a 'well-informed, thoughtful observer,' as opposed to a 'hypersensitive or unduly suspicious person.'" *Id.*

A judge must also recuse when the judge knows that "[she], individually, or as a

---
[3] The "Background" is largely taken from the Defendants' Reply.

fiduciary, or [her] spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding or any other interest that could be substantially affected by the outcome of the proceedings." 28 U.S.C. § 455(b)(4). A litigant seeking to disqualify a judge must establish that the judge's bias or prejudice reflects an obvious inability to fairly preside over a proceeding. *See*, *e.g., Liteky v. United States*, 510 U.S. 540, 551–52 (1994). This generally requires that the alleged bias or prejudice arise from an extrajudicial source. *Clemons*, 428 F.3d at 1178.

Recusal motions brought pursuant to 28 U.S.C. § 455 should be decided by the judge whose recusal is sought. *Clemens*, 428 F.3d at 1178; *In re Bernard*, 31 F.3d 842, 843 (9th Cir. 1994). In deciding whether recusal is required, the judge need not accept as true the allegations advanced by the moving party. *Clemen*, 428 F.3d at 1178. Because a motion for judicial recusal under section 455 "is directed to the judge, rather than the parties, and is self-enforcing on the part of the judge" the Court will undertake a *sua sponte* examination of the facts presented to determine whether its recusal is warranted under sections 455(a) and (b)(4). *United States v. Sibla*, 624 F.2d 867-68 (9th Cir. 1980).

### a. The Court's comments on human trafficking

The Defendants state that the Court "held at least one press conference with various organizations to raise awareness of human trafficking, some of which organization may be affiliated with witnesses on the government's witness list." (Doc. 1378 at 3). The Defendants do not indicate when or where the statement(s) were made. Nor do they indicate which "organizations" were at such press conferences or which witnesses may be affiliated with these organizations. A review of the Court's own records show that it has made no statement related to human trafficking while serving on the district court. The Court likely did so while serving as the United States Attorney for the District of Arizona (2007 – 2009). As the chief federal law enforcement officer for Arizona, the United States Attorney is/was responsible for enforcing federal law, including human trafficking laws, participating in press conferences related to human trafficking cases, and promoting public awareness of a variety of issues. A review of the Government's previous witness list,

1  which includes various in-state and out-of-state law enforcement agencies, (presumably
2  what Defendants refer to as "organizations") does not aid the Court in determining whether
3  any such agency was involved in the same press conference(s).[4]  In any event, (1) given
4  the remoteness in time between any such statement and the allegations in this case, and (2)
5  the unlikelihood that any statement referred to any of the named Defendants or their prior
6  publications, the Court finds that a reasonable person with knowledge of these facts would
7  not question the Court's impartiality.  Accordingly, the Court need not recuse on this
8  ground.

### b. The Court's relationship with John and Cindy McCain

The Defendants next assert that the Court should examine whether its relationship with former Senator John McCain and Ambassador Cindy McCain warrants recusal under section 455(a).  The Defendants generally assert that "the Court has had long-standing relationships with certain parties who are inextricably intertwined with this complex case." (Doc. 1388 at 7).  However, the Court notes that this case does not involve Ambassador Cindy McCain or the McCain Institute as a witness or a party.

Defendants correctly note that the Court previously worked for Senator John McCain (in the early 1990s). Following that period of employment, the Court had sporadic interaction with him while serving as the United States Attorney and up through the time of his passing in 2018.  Yet, it was not unusual for years to pass without any such contact. Despite the Defendants' characterization and assumption, the Court has not had the same connection or interactions with Ambassador Cindy McCain.  The Court's prior employment, and professional and personal relationship with Senator John McCain, in and of itself, do not disqualify the Court from presiding over this case.  None of the Court's interactions with Senator McCain, professionally or personally, involved matters related to this case, its subject matters or any of the named parties.

In its Motion, Defendants state "[t]he McCains' and the McCain Institute have been outspoken critics of Backpage.com and a driving force behind political efforts to shut down

---

[4] The Court's review of the Government's Witness List (Doc. 1314) does not list any person(s) with whom the Court has a personal or financial relationship.

- 4 -

the site." (Doc. 1378 at 3-4). They then cite to examples of statements made by the McCain Institute and by Cindy and John McCain. (*Id*. at 4). This is the first time that this Court was made aware of these statements, critiques, or "shut-down" efforts.[5] In their Reply, the Defendants then state that "[t]here has been substantial resentment and animosity, if not hatred, among Senator McCain, Ambassador McCain, and the McCain Institute and Defendants Lacey and Larkin." (Doc. 1388 at 7). They state that such animus has been ongoing "[f]or more than 40 years, [because] Defendants Lacey and Larkin owned the Phoenix New Times, which published hundreds of articles, commentaries, and blog posts critical of Senator McCain." (*Id.*) This, too, is the first time that the Court has been made aware of this forty-year "substantial resentment and animosity" between the McCains and Defendants Lacey and Larkin. The Court has no recollection of reading any of the New Times Articles referenced. Although now having been made fully aware, the Court does not find that its impartiality can be reasonably questioned because there is/was animosity between two named Defendants and Senator John McCain or Ambassador Cindy McCain.

None of these facts resemble those in *United States v. Jordan*, as the Defendants urge. 49 F.3d 152 (5th Cir. 1995). There, the judge's impartiality was called into question after she imposed lengthy sentences upon a defendant convicted of wire fraud and money laundering. On appeal, the court found the judge had erred in not recusing herself. It found that where the defendant was an individual that had initiated multiple legal proceedings against a close friend of the judge and her husband, and possibly even caused his wrongful incarceration, a reasonable person would have questioned her ability to impartially sentence the defendant. *Id*. at 155. Adding to the appearance of impartiality was the fact that the judge's husband provided legal representation to their friend in a criminal case brought by defendant Jordan's daughter. Those facts are poles apart from the present case.

Notably, as a political figure, Senator McCain was and continues to be criticized by individuals (political and non-political), news outlets and the general media. It is illogical

---

[5] The Defendants specifically reference statements by the McCains' on human trafficking of American Indian and Alaska Natives. (Doc. 1378 at 5). The Court will not presume Defendants' to infer that these statements heighten the Court's potential biases given her own heritage because that would border on the absurd.

- 5 -

that this Court should recuse itself from a case involving a person, entity or organization because they were critical or hostile to the Senator or Ambassador McCain. Indeed, the Court has a responsibility to preside over a matter where there is no legitimate reason to recuse, as in this instance. *See Clemens*, 428 F.3d at 1179. A reasonable person with knowledge of the facts set forth by Defendants and that this Court was not heretofore aware, would be hard-pressed to assume partiality. Accordingly, the Court does not find these facts are a basis upon which it should be recused.

### c. The Court's statements/appearance at Arizona State University's McCain Institute

The Defendants next bring to the Court's attention that its financial and other contributions to and involvement with the McCain Institute may create an appearance of impartiality. (Doc 1378 at 3). As noted by the Defendants, the Court has previously made financial contributions to the McCain Institute, as it has to many Arizona State University[6] programs. One of the McCain Institute's seven programs focuses on combatting human trafficking. The Court's involvement with the McCain Institute has not been with its Human Trafficking program but rather with its Next Generation Leaders Program. The Court has been periodically invited to speak to a small group of global participants about developing leadership skills. The Court was also an invited speaker at the Institute's Sedona Forum in 2016. There, global leaders gather to discuss worldwide issues and the Court's comments were related to challenges faced by Indian tribes and peoples, and access to the federal courts. None of the Court's activities with the McCain Institute touch on the subject matters involved in the case or any of the named Defendants. And it is worth noting that the Court is permitted to engage in such extrajudicial activities, including civic, educational, and financial activities. *See* Code of Conduct for United States Judges Cannon 4.

As noted, the Court has made financial contributions to the McCain Institute.[7] The

---

[6] The Court is an alumna of Arizona State University and a routine financial contributor to its various colleges and programs.
[7] Although listed on the $1,000 – 25,000 donors page, such donation was toward the minimum.

- 6 -

Defendants state that "[t]he McCain Institute is also associated with at least one of the government's trial witnesses." In their Reply, the Defendants state that the Government intends to call Dominque Roe Sepowitz as an expert witness. (Doc. 1388 at 11). They state that Ms. Sepowitz' research "targeting Backpage.com and seeking to show it facilitates sex trafficking" was funded by the McCain Institute. As previously stated, the Court's examination of the Government's Witness List did not alert the Court to a potential personal, professional or financial relationship, including with Ms. Sepowitz. The Court was not aware of her or that her research is/was funded by the McCain Institute.

On consideration of these facts, the Court is hard-pressed to see how its nominal financial contribution to the McCain Institute or Arizona State University creates a financial interest in a party to the proceeding. Section 28 U.S.C. § 455(b)(4) provides that recusal is required if the judge knows of a financial interest in the subject matter in controversy or in a party to the proceeding. The minimal interests, whether economic or non-economic, that this judge has in the McCain Institute by participating in educational and leadership programs and providing small financial contributions simply cannot be substantially affected, either directly or indirectly, no matter how this action is finally resolved. Nor will the undersigned judge or any family member realize any significant benefit from this action regardless of the outcome. *See United States ex rel Hamilton v. Yavapai Cmty. Coll. Dist.,* 2014 WL 12656540, at *3 (D. Ariz. Dec. 9, 2014) *citing Nachshin v. AOL, LLC*, 663 F.3d 1034, 1042 (9th Cir. 2011) (noting that where an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality."). Based on the totality of these facts, the Court does not find that a reasonable person, having been made aware of the same, would conclude that the undersigned judge would perform her judicial function in a biased or partial manner. *See also United States ex rel. Hochman v. Nackman*, 145 F.3d 1069, 1076 (9th Cir. 1998) (concluding recusal was not warranted where the judge's main contact with USC was his small yearly contribution to the law school's alumni association, because it was an "insignificant contact which would not reasonably lead one to question his

impartiality").

### d. Whether the Court had any communications relating to investigations or arrests of any Defendants

Lastly, the Defendants seek to know whether this Court had any prior involvement or communication with Sheriff Joe Arpaio relating to his arrest of Defendants Lacey and Larkin. (Doc. 1378 at 5). The Government provided additional facts relating to the Maricopa County Sheriffs arrest in October 2007 and subsequent civil law suit. (Doc. 1382 at 6). The Court has no recollection of ever communicating with Sheriff Arpaio about the investigation or arrest. Nor would any such communication occur because the undersigned judge was not yet in the position of United States Attorney.

Accordingly,

**IT IS ORDERED** the Defendants' Motion to Recuse (Doc. 1378) is **denied**.

Dated this 19th day of November, 2021.

*[signature]*
Honorable Diane J. Humetewa
United States District Judge