**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. CR-18-0422-PHX-SMB |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | October 5, 2021 |
| Michael Lacey, | ) | 11:02 a.m. |
| James Larkin, | ) | |
| Scott Spear, | ) | |
| John Brunst, | ) | |
| Andrew Padilla, | ) | |
| Joye Vaught, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:   THE HONORABLE SUSAN M. BRNOVICH, JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**STATUS HEARING**</u>

Official Court Reporter:
Christine M. Coaly, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 37
Phoenix, Arizona 85003-2151
(602) 322-7248

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                         A P P E A R A N C E S

 2    For the Government:

 3
          U.S. ATTORNEY'S OFFICE
 4        By:  Mr. Peter S. Kozinets
               Mr. Kevin M. Rapp
 5             Ms. Margaret Wu Perlmeter
               Mr. Andrew C. Stone
 6        40 North Central Avenue, Suite 1200
          Phoenix, Arizona 85004
 7

 8        U.S. DEPARTMENT OF JUSTICE
          By:  Mr. Reginald E. Jones
 9        1400 New York Avenue, NW, Suite 600
          Washington, DC 20530
10

11    For the Defendant Lacey:

12        LIPSITZ GREEN SCIME CAMBRIA
          By:  Mr. Paul J. Cambria, Jr.
13        42 Delaware Avenue, Suite 120
          Buffalo, NY 14202
14

15    For the Defendant Larkin:

16        BIENERT KATZMAN
          By:  Mr. Thomas H. Bienert, Jr.
17             Ms. Whitney Z. Bernstein
          903 Calle Amanecer, Suite 350
18        San Clemente, CA 92673

19
      For the Defendant Spear:
20
          FEDER LAW OFFICE
21        By:  Mr. Bruce S. Feder
          2930 East Camelback Road, Suite 160
22        Phoenix, AZ 85016

23

24

25


                          UNITED STATES DISTRICT COURT
```

```
For the Defendant Brunst:

    BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
    LINCENBERG & RHOW
    By:  Mr. Gary S. Lincenberg
    1875 Century Park E, Suite 2300
    Los Angeles, CA 90067


For the Defendant Padilla:

    DAVID EISENBERG, PLC
    By:  Mr. David S. Eisenberg
    3550 North Central Avenue, Suite 1155
    Phoenix, AZ 85012


For the Defendant Vaught:

    JOY BERTRAND, LLC
    By:  Ms. Joy M. Bertrand
    P.O. Box 2734
    Scottsdale, AZ 85252
```

**P R O C E E D I N G S**

1
2     COURTROOM DEPUTY:  On the record in CR 18-422, United
3  States of America versus Michael Lacey and others, before the
4  Court for a status hearing.
5     MR. RAPP:  Good morning.  Kevin Rapp, Reginald Jones,
6  Andrew Stone, Peter Kozinets, and Margaret Perlmeter on behalf
7  of the United States.
8     MR. CAMBRIA:  Good morning, Your Honor.  Paul Cambria
9  on behalf of Mr. Lacey, who is present.
10    MR. BIENERT:  Good morning, Your Honor.  Thomas
11 Bienert and Whitney Bernstein on behalf of Mr. Larkin, who is
12 present.
13    MR. FEDER:  Bruce Feder for Scott Spear, who is also
14 present.
15    MR. LINCENBERG:  Good morning, Your Honor.  Gary
16 Lincenberg for Mr. Brunst, who is present in court.
17    MR. EISENBERG:  Good morning, Your Honor.  David
18 Eisenberg on behalf of Andrew Padilla.  He is also present.
19    THE COURT:  And on the phone.
20    MS. BERTRAND:  Good morning.
21    Good morning, Your Honor.  Joy Bertrand appears for
22 Ms. Vaught.  We waive her appearance.  And thank you for
23 allowing me to appear by phone this morning.
24    THE COURT:  So, for the record, Ms. Bertrand e-mailed
25 my staff yesterday that she had an emergency that was going to

1  prevent her from making it here, so I authorized her to appear
2  by phone.
3             Yesterday I asked my staff to e-mail counsel a
4  proposed calendar for trial.
5             Did the government receive that?
6             MR. RAPP:  We did, Your Honor, and we have no
7  objection to it.
8             THE COURT:  And did any of the defense not receive it?
9             (No response.)
10            THE COURT:  Okay.  Let's start with you, Mr. Cambria.
11 What's your position on the proposed trial?
12            MR. CAMBRIA:  Mr. Bienert, Your Honor, is going to
13 indicate what the position is on the part of the defense.
14            THE COURT:  Okay.
15            MR. CAMBRIA:  If that's acceptable.
16            MR. BIENERT:  Am I allowed to take the mask off to
17 talk?  Should I do it here or there?
18            THE COURT:  Why don't you come up to the podium so
19 you're away from --
20            MR. BIENERT:  Your Honor, we're good with the dates,
21 but with a couple of caveats.
22            Number one, Mr. Lincenberg and I both are in the same
23 trial in front of Judge Hatter in Los Angeles Federal Court,
24 scheduled for February 15th.  It's supposed to take about, I
25 would think, a month.

1  The government has said in that case for a year that
2  it is going to supersede and they still haven't.  And they're
3  kind of ignoring us, but everything about it suggests they're
4  going to supersede.  We believe that it is highly likely that
5  trial will move, but it hasn't happened.  We will reach out to
6  them.  But I think it is, in my view, 75 to 80 percent likely
7  that that trial moves because of a superseding indictment, we
8  just haven't had it happen.  So we just need to watch that and
9  address it accordingly, according to Your Honor.
10            Number two, and I am kind of forgetting a little, my
11 recollection is the dates we had scheduled in Your Honor's
12 proposed schedule were from, say, mid February to sometime
13 early in May, if I'm remembering correctly.
14            THE COURT:  It was starting February 23rd.
15            MR. BIENERT:  So subject to the trial in L.A., we're
16 fine with that.  The only issue is on the back end.  We had a
17 trial scheduled this November that the judge made very clear it
18 was reluctantly, because he was a little upset with us, moved
19 to May 24th because of our trial here.  And I say that just
20 because he's not moving that trial again.  He's made that very
21 clear.
22            We, obviously, are scheduled to be done by May 24th,
23 but it's, you know, it's a pretty -- it's an elaborate,
24 extensive case.  I think we would need some time to prepare.
25 My only request is, we can do it within the framework, but what

strikes me about our scheduling, and in light of kind of where we were and where we are, I would like to think that the government's presentation could be a little shorter if we tried the case in February, than maybe originally thought, given some of the evidentiary issues.

And my only hope would be that at some point we could address scheduling with an eye towards, do we really need a trial that's going to last 12 weeks, or 10 to 12 weeks, or can this trial be maybe even as little as 8 to 10 weeks.  So I just flag for Your Honor that I think we need at least three weeks to prepare for the May 24th trial, so I just, on the back end, I think we need to be done by, you know, kind of May 1st-ish, end of April.  Seems very doable to me, but at least the way Your Honor set it up, that could be a problem.

And then just, finally, I would -- I think we want to have a briefing schedule or something.  Four of us, those of us who are retained, want to address with you money.  The government has seized, I think, over a hundred million dollars. There are many arguments they seized trust account money, they seized money that our clients had before Backpage even existed. I think we've been back and forth with the government about addressing, can we get money back, they're not agreeing, but I think they agree that we can and should address that with you.

I can tell you that the four of us did this past trial in the hole.  And if we've got to do the trial again, we want

1  to address with Your Honor whether or not -- because we don't
2  see how we can do a trial again for free.  I know in my office
3  that's very difficult.  There is a lot of money that I think
4  there are very good arguments -- I don't think we need to get
5  into now, unless you wanted me to -- for why we should be
6  allowed to access some of that money for defense fees and costs
7  for all four of the retained counsel.  But we need to address
8  money, and we would at least like a briefing schedule to do
9  that with Your Honor.
10              I think the government has agreed -- because the money
11 issues go between here and the Central District of California
12 -- and I think the government and us agree that we should be
13 able to address whether we get release of some money for trial
14 through Your Honor, but they can confirm or not.
15              But, anyway, with those caveats, we think the
16 scheduling is as good as it gets, but those are our issues.
17              MR. LINCENBERG:  I would like to add a little bit on
18 that.
19              THE COURT:  Okay.
20              MR. LINCENBERG:  First, if the trial is going to go in
21 February, I think -- following up on what Mr. Bienert was
22 saying -- it really needs to be with an understanding that the
23 trial will end mid April or so, so that -- I get it, it depends
24 on whether the government cuts things back, and we have to
25 leave probably three weeks for a defense case, two, three weeks

1  for a defense case.  So, if it's going to go in February, my
2  preference would be that it begin in earlier February.
3          Second, just to follow up on what Mr. Bienert was
4  saying about the case in San Diego.  The Court may recall we've
5  mentioned this.  This is Judge Curiel in San Diego.  And,
6  actually, it wasn't until a hearing yesterday that Judge Curiel
7  officially continued the trial from late November to May 24th,
8  just so the record is clear.  It was always clear that he
9  would, but with everything going on, it wasn't official.  And
10 the government there, for the longest time, was opposing any
11 continuance, despite the conflicting schedules.
12         And with regard to the trial before Judge Hatter, I
13 don't know whether the government's going to supersede, whether
14 they have secretly superseded or not.  I do believe that the
15 prosecutors in that case are pretty reasonable guys, and I
16 think that they'll go along with it, but, obviously, we can't
17 speak to it.
18         And I raise these because I can't commit to agreeing
19 to a February date when I have a February trial there right
20 now, and with all of the other scheduling conflicts.  And I
21 also can't commit to it really until we have a sense as to
22 whether or not we're going to have any funds.
23         We, not only are in the hole, in terms of fees, but
24 we're putting out cost money renting -- you know, we all rented
25 a house for three, four months, that we're now eating that

1   money.  And we have to find something, and it's going to be
2   even more expensive, you know, given Phoenix in February, to
3   find things.  So there is just a lot of moving parts why that
4   aspect of it is really important to see whether or not there
5   can be funds released.
6          And, you know, part of this -- there is a lot of
7   reasons for it.  We don't need to get into it.  And part of it
8   was due to COVID and the extension and all the additional time
9   and monies that got eaten up with that.  So I just -- I just
10  wanted to make clear for the record.
11         And then, with regard to the Court's scheduling, I
12  just want to put on the record, I have a short prepaid trip
13  March 25th to March 30th, it's -- that goes over a weekend.  It
14  includes some other dates.  You know, if we have the trial
15  scheduled, I will work with the Court.  And, if the Court may
16  recall, we had a date when I had to be out, and I talked to the
17  prosecutors about who the witnesses were going to be.
18  Mr. Panchapakesan was able to cover that.  We'll try to work
19  it.  But I just want to have that on the record that I do have
20  that prepaid.
21         Thank you, Your Honor.
22         THE COURT:  Your trial in L.A. with Judge Hatter, is
23  that a criminal or civil?
24         MR. LINCENBERG:  Criminal case.  It's set for --
25         THE COURT:  And how many defendants?

1     MR. LINCENBERG: Three defendants.
2     THE COURT: How old is it?
3     MR. LINCENBERG: That one is not as old as this one.
4  That one is, I think March 2020.
5     MR. BIENERT: Early 2020, February or March 2020.
6     MR. LINCENBERG: February/March 2020 was the
7  indictment.
8     And the Judge Curiel case -- I think this case was
9  indicted in maybe April or so of 2018. The Judge Curiel case,
10 I think, was the fall of 2018, maybe November or so.
11    MS. BERNSTEIN: It was October, indicted in October,
12 Your Honor.
13    THE COURT: And how many defendants are in that case?
14    MS. BERNSTEIN: Four.
15    MR. LINCENBERG: That case is four.
16    THE COURT: Okay. With respect to the start of the
17 trial, we could pick a jury on the 9th, 10th, and 11th of
18 February, and then start the actual trial on the 22nd, which
19 would, you know, advance us.
20    That following week I'm actually supposed to be
21 sitting with the Ninth Circuit in San Francisco, but we could
22 pick the jury and that would advance things a little bit.
23    MR. LINCENBERG: Right.
24    THE COURT: Mr. Eisenberg.
25    MR. EISENBERG: Thank you, Your Honor. I'll speak

1  from here.
2              I have a case scheduled in front of Judge Tuchi on
3  February the 1st.  It is an older case -- I mean, a more recent
4  case than this.  It's CR 20-165.  It's a complex case indicted
5  in, well, in 2020.  Two defendants.  However, Judge Tuchi
6  issued a minute order directing the parties to appear on Friday
7  coming to determine the likelihood of whether that case would
8  go forward as scheduled on February the 1st.  There is one
9  defendant who is detained and my client is not.  Two-defendant
10 case.
11             THE COURT:  And how long is that supposed to last?
12             MR. EISENBERG:  I saw that it was projected for three
13 weeks.
14             MR. STONE:  Your Honor, if I may on that?  That's my
15 case that Mr. Eisenberg is talking about.
16             MR. EISENBERG:  It's your case?  It's my case.
17             MR. STONE:  From this side, it's my case.  And there
18 was just a motion to continue the trial filed by the other --
19 the co-defendant last week, so I suspect that that trial is
20 going to get moved.
21             THE COURT:  Okay.  Anybody else?
22             MS. BERNSTEIN:  Your Honor, I just want to note that
23 in the San Diego trial, we have a motion in limine hearing on
24 April 7th.  And I feel that's important to put on the record,
25 because we got into a bit of a bind in San Diego because the

1  government alleged we hadn't put those dates on the record
2  here.  So I do want to put on the record that Thursday,
3  April 7, we have a motion in limine hearing in San Diego.
4          THE COURT:  That's on the Curiel?
5          MS. BERNSTEIN:  Correct.  It's 18-CR-4683.
6          MR. LINCENBERG:  And, Your Honor, we haven't gotten to
7  the issue of hearing dates for some motions.  I don't know,
8  when the Court said, is there anything else, if the Court
9  wanted to get into that or hold off?
10         THE COURT:  Not right now.
11         MR. LINCENBERG:  Okay.
12         THE COURT:  But I don't want what happened last time
13 with last-minute motions telling me that there is some other
14 conflict.  So if you look over the calendar -- because I know I
15 just sent it to you yesterday -- but, in the next week, if you
16 look over your calendar and you see any other dates that have
17 conflicts, I want to know.  After that, I'm not moving the
18 trial, I mean, other than your issue with Judge Hatter.  But
19 I've jotted down the dates you're going to be out of town in
20 March and the April 7th, I have a note with your trial date
21 starting May 24th, the note about Judge Hatter.
22         Does the government have any issue with starting on
23 February 9th for jury selection, and then we'd have that
24 following week off and we'd start on the 22nd?
25         MR. RAPP:  We don't have an issue with that.

1     THE COURT:  Okay.  After a mistrial, of course,
2  defendants have a speedy trial right.
3     So, Mr. Bienert, does your client waive time?
4     MR. BIENERT:  Yes, Your Honor --
5     THE COURT:  Mr. Cambria?
6     MR. BIENERT:  -- due to the complexity of the case and
7  the issues.
8     THE COURT:  Okay.
9     MR. CAMBRIA:  On behalf of Mr. Lacey, yes, Your Honor.
10    THE COURT:  Okay.  Mr. Feder?
11    MR. FEDER:  On behalf of Mr. Spear, yes, Your Honor.
12    One other thing, in the area of trying to shorten the
13 trial, will the Court entertain further motions in limine?  I
14 mean, we will talk to the government initially, but in regard
15 to trying to shorten some things and keep some things out that
16 we believe precipitated the mistrial to begin with.
17    THE COURT:  No.  I mean, you guys file them anyway.  I
18 mean, that's part of the delay in the trial is we constantly
19 had to stop for new filings, so I don't think that the
20 government is causing all of the delay, and, quite frankly, all
21 of the issues have been brought up many times.  I can't imagine
22 that there is something new.
23    Mr. Lincenberg, does your client waive time?
24    MR. LINCENBERG:  Yes, Your Honor.
25    THE COURT:  Mr. Eisenberg?

1    MR. EISENBERG:  As does Mr. Padilla, Your Honor.
2    Thank you.
3        THE COURT:  Okay.  And, Ms. Bertrand?
4        MS. BERTRAND:  Yes, she waives time.  Thank you.
5        THE COURT:  All right.  So it is ordered resetting
6    trial for February 9th, and excluding time between now and
7    then.  So our plan will be for jury selection the 9th, 10th,
8    and 11th, and then trial will start on February 22nd.
9        I'll fix a new calendar and e-mail it out with notes
10   about the motion in limine hearing and other things.  And then
11   once you look at that, if I don't -- I think it can be done by
12   e-mail to my staff, cc-ing everybody else if you have other
13   conflicts -- but if I don't receive any further notices of
14   conflict regarding those dates, I mean, I know things come up,
15   but I want to firm up the calendar as much as possible.  So let
16   me know within a week after you've reviewed it some more.
17       Mr. Feder.
18       MR. FEDER:  Judge, when do you anticipate sending out
19   the jury questionnaires?
20       THE COURT:  Okay.  Well, before we get to that, I
21   wanted to ask if anybody after jury selection and review of the
22   questionnaires thought there were any questions that were
23   problematic and should be reworded, or if you're all happy with
24   sending the same questionnaire?
25       Mr. Rapp.

Case 2:18-cr-00422-DJH Document 1458 Filed 02/08/22 Page 16 of 19
16

1  MR. FEDER: Can we have a couple of days to get back
2  to the Court?
3  THE COURT: Yes. So if the parties propose any
4  changes to the jury questionnaire, let's see, those should be
5  submitted by October 12th, so that's a week from today.
6  And then, I'm sorry, Mr. Feder, what were you asking
7  me, the timing?
8  MR. FEDER: Yes. I mean, last time, as the Court
9  knows, we had a time where we got the questionnaires and had
10  some meetings.
11  THE COURT: So I'd like to plan to get them back by
12  January 28th, and then we can have a --
13  Elaine.
14  (Off-the-record discussion between the Court and the
15  courtroom deputy.)
16  THE COURT: All right. So I have trials around this
17  time, so maybe I'll ask the jury office to get them back by the
18  27th. And then on the 31st we can have a conference to discuss
19  excusing jurors for cause or hardship -- I'm sorry, hardship.
20  And then you'll have the questionnaires for a sufficient time
21  before we start on the 9th.
22  So on the 31st -- does everybody have their
23  calendar -- on the -- that took a long time, so let's start at
24  9:00 a.m.
25  MR. LINCENBERG: By Zoom?

1        THE COURT:  Yeah, we can do it by Zoom.
2        Does anybody have a conflict with 9:00 a.m. on the
3    31st?
4        MR. RAPP:  The government does not.
5        MR. BIENERT:  No, Your Honor.
6        MR. CAMBRIA:  No.
7        THE COURT:  All right.  My courtroom is not a Zoom
8    courtroom, so I'll have to just confirm that I can reserve a
9    different courtroom for that, but we'll tentatively set it for
10   the 31st at 9:00, otherwise we may have to do it
11   telephonically, which is difficult because there is so many
12   people.  So I'll try to do a Zoom or we might have to move the
13   date, but, for right now, does the 31st work for everybody?
14       MR. CAMBRIA:  Yes.
15       MR. RAPP:  Yes.
16       THE COURT:  Okay.  Any other questions from the
17   government regarding trial schedule?
18       MR. RAPP:  No.
19       THE COURT:  Anything else, Mr. Bienert?
20       MR. BIENERT:  No, Your Honor.
21       THE COURT:  Anybody else?
22       MR. LINCENBERG:  No, Your Honor.
23       THE COURT:  And I'll let you know as we get closer
24   whether we're going to -- you know, the COVID rules change all
25   the time, so we'll either be downstairs or we'll be back up

```
 1   here.  Downstairs is much more comfortable, I'm assuming, but
 2   I'll have to see if we can do that.
 3           All right.  We're at recess.  Thank you.
 4           (Proceedings concluded at 11:24 a.m.)
 5                   *         *         *
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

C E R T I F I C A T E

I, CHRISTINE M. COALY, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 8th day of February, 2022.


/s/ Christine M. Coaly_____
Christine M. Coaly, RMR, CRR