**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | March 20, 2023 |
| Michael Lacey, et al. | ) | 3:00 p.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**MOTION TO CONTINUE TRIAL**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

1                        **A P P E A R A N C E S**

2

3    For the Government:

4         U.S. ATTORNEY'S OFFICE
          By:  **Kevin M. Rapp, Esq.**
5         **Mr. Peter S. Kozinets, Esq.**
          **Mr. Andrew C. Stone, Esq.**
6         **Ms. Margaret Wu Perlmeter, Esq.**
          40 North Central Avenue, Suite 1200
7         Phoenix, Arizona 85004
          kevin.rapp@usdoj.gov
8         peter.kozinets@usdoj.gov
          andrew.stone@usdoj.gov
9         margaret.perlmeter@usdoj.gov

10

     For the Defendant Michael Lacey:
11
          LIPSITZ GREEN SCIME CAMBRIA
12        By:  **Mr. Paul J. Cambria, Jr., Esq.**
          42 Delaware Avenue, Suite 120
13        Buffalo, NY 14202
          pcambria@lglaw.com

14

15   For the Defendant James Larkin:

16        OSBORN MALEDON, PA - Phoenix, AZ
          By:  **Mr. Timothy J. Eckstein, Esq.**
17        **Mr. Joseph Nathaniel Roth, Esq.**
          **Ms. Sarah Pook Lawson, Esq.**
18        P.O. Box 36379
          Phoenix, AZ 85067-6379
19        teckstein@omlaw.com
          jroth@omlaw.com
20        slawson@omlaw.com

21

22

23

24

25

                        UNITED STATES DISTRICT COURT

```
1   For the Defendant Scott Spear:

2       FEDER LAW OFFICE
        By:  Mr. Bruce S. Feder, Esq.
3       2930 East Camelback Road, Suite 160
        Phoenix, AZ 85016
4       bf@federlawpa.com

5
        KESSLER LAW OFFICE
6       By:  Eric Walter Kessler, Esq.
        6720 N. Scottsdale Road, Suite 210
7       Scottsdale, AZ 85253
        eric.kesslerlaw@gmail.com
8

9   For the Defendant John Brunst:

10      BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
        LINCENBERG & RHOW
11      By:  Mr. Gopi K. Panchapakesan, Esq.
        Mr. Gary S. Lincenberg, Esq.
12      1875 Century Park E, Suite 2300
        Los Angeles, CA 90067
13      gpanchapakesan@birdmarella.com
        glicenberg@birdmarella.com
14

15  For the Defendant Andrew Padilla:

16      DAVID EISENBERG, PLC
        By:  Mr. David S. Eisenberg, Esq.
17      3550 North Central Avenue, Suite 1155
        Phoenix, AZ 85012
18      david@deisenbergplc.com

19
    For the Defendant Joye Vaught:
20
        JOY BERTRAND, LLC
21      By:  Ms. Joy M. Bertrand, Esq.
        P.O. Box 2734
22      Scottsdale, AZ 85252

23

24

25
```

UNITED STATES DISTRICT COURT

1

2                        **P R O C E E D I N G S**

3

4       (Proceedings commence at 3:00 p.m.)

5              THE COURT:  All right.  Please be seated.

6              COURTROOM DEPUTY:  This is Case No. CR 18-422, United

7    States of America vs. Lacey and others, on for oral argument.

8              Counsel, please announce for the record.

9              MR. RAPP:  Good afternoon.  Kevin Rapp, Andy Stone,

10   Peter Kozinets and Margaret Perlmeter on behalf of the United

11   States.

12             THE COURT:  Good afternoon.

13             MR. ECKSTEIN:  Good afternoon.  Tim Eckstein, Joe Roth

14   and Sarah Lawson on behalf of James Larkin.

15             THE COURT:  Good afternoon.

16             MR. KESSLER:  Good afternoon, Your Honor --

17             MR. CAMBRIA:  Good afternoon, Your Honor, Paul Cambria

18   on behalf of Michael Lacey.

19             THE COURT:  All right.  We're going to go with the

20   folks who are in the courtroom first, and then we'll move to

21   those who are appearing by video and anyone who is on the

22   telephone.

23             Go ahead, Mr. Kessler.

24             MR. KESSLER:  Good afternoon, Your Honor, Eric Kessler

25   and Bruce Feder for Scott Spear who is present in the back of

1    the courtroom.

2           THE COURT:  All right.  Good afternoon.

3           MR. EISENBERG:  Good afternoon, Your Honor,

4    David Eisenberg on behalf of Andrew Padilla.  He resides in

5    Texas, Your Honor.  I've talked to him about this hearing.  He

6    wishes that I would waive his appearance for the hearing, Your

7    Honor.

8           THE COURT:  All right.  Very good.  Good afternoon to

9    you.

10          MS. BERTRAND:  Good afternoon, Your Honor, this is

11   Joy Bertrand appearing for Joye Vaught and Mr. Padilla.

12   Ms. Vaught lives in Texas and we would ask that her appearance

13   be waived today.  Thank you.

14          THE COURT:  All right.  Good afternoon.  Now let's go

15   to the video again.

16          MR. CAMBRIA:  Paul Cambria, Your Honor, on behalf of

17   Michael Lacey who I believe is in the courtroom.

18          THE COURT:  All right.  I do see him.

19          MR. LICENBERG:  Gary Licenberg and Gopi Panchapakesan

20   on behalf of Mr. Brunst who is present on Zoom.

21          THE COURT:  All right.  And anyone else?  All right.

22   Pending before the Court is Mr. Larkin, through Mr. Eckstein,

23   and Mr. Spear through Mr. Kessler's Motion to Continue the

24   trial that is currently set for June the 20th, and that was at

25   Document 1526, I believe.

1          I've receive the government's response, and I asked

2     the government to provide the Court with its position

3     regarding, in view of the Motion to Continue, whether or not

4     severance of Mr. Larkin and Mr. Lacey as lead defendants would

5     be something that they would consider.  I've received that

6     response at Document 1530.

7          I've received Defendant Brunst's response at 1534;

8     Defendant Lacey's response, responses, I should say, with

9     regard to the Motion to Continue and with regard to severance.

10    Those are at Documents 1535 and 1538.

11         I've received a response from Defendant Spear at 1536

12    essentially reiterating the motion and concurring in the Larkin

13    motion.

14         I've received Defendant Vaught's response at 1539

15    indicating there is no opposition to severance and renewing

16    her, as I take it, renewing her prior filed motion which was

17    previously denied, and Mr. Padilla's response opposing the

18    severance, and that is at Document 1537.

19         Have I missed any other filings?

20         MR. ECKSTEIN:  Your Honor, on behalf of James Larkin,

21    we filed a response, as the Court ordered, to the government's

22    petition regarding severance.

23         THE COURT:  I think I do recall seeing that.  I just

24    didn't write it down.  All right.  Mr. Eckstein, it's your

25    motion so I'll hear you.

1          MR. ECKSTEIN:  Judge, current counsel, Mr. Roth,

2   Ms. Lawson and I appeared in this case on December 13th of

3   2022.  Two days later, the Court order the removal of prior

4   counsel.

5          We then had a status conference on December 19th, and

6   the Court explained at that time that it did not intend to

7   entertain any Motion to Continue absent extraordinary

8   circumstances which may be related to a client's health issue,

9   or something to that effect.  The Court said that it wanted

10  counsel to make sure that we were completely aware of our

11  obligations to this Court.

12         The Court further ordered that new counsel file by

13  January 17th a report noting our receipt of the case file from

14  prior counsel and confirmation that we've spoken to the

15  government and received all the discovery produced in this

16  case.  Notably, the Court did not ask at that time, that it

17  being on December 19th, for counsel to avow that it would be

18  prepared for a June 20th trial date.  Had I been asked, I was

19  prepared to say that we certainly hoped to be ready for trial

20  and will endeavor to do so, but we would absolutely need some

21  time to review the file, look at the discovery, see the work

22  done by predecessor counsel, study the docket, research and

23  analyze the relevant case law, and begin the actual work of

24  preparing for trial before I could make such an avowal.

25         Had the Court insisted at that time that we either

1    make such an avowal or we cannot proceed, we would have asked

2    to withdraw because, again, in all candor, I could not have

3    made that avowal at that time.  It would not have been

4    possible.  Even if there had been an avowal, as is evident from

5    the cases cited by the government, that avowal alone would not

6    justify the denial of the continuance.

7          The *Walter-Eze* case, counsel ultimately avowed that he

8    would be ready for trial; and the U.S. v. *Steinger* case, also

9    cited by the government, there is no attorney statement, no

10   avowal in that case.  Rather, it's the Court warning the

11   defendant of the potential consequences in terms of a

12   continuance should that defendant choose to go without counsel.

13         So instead in this case, we moved forward as the Court

14   directed, filed our status report on January 17th, and we have

15   been working diligently to prepare for Mr. Larkin's defense

16   before and after the filing of that report.  Now we are seeing

17   additional time to prepare for trial because we believe

18   extraordinary circumstances warrant it.  Primarily it is to

19   allow us to meet our ethical and professional obligations to

20   ensure that Mr. Larkin's Sixth Amendment right to competent,

21   prepared counsel is protected.  Relatedly, we are asking for

22   this time to meet our obligations to Court, including the

23   obligations of candor and professionalism.

24         Turning to the factors as set forth in *United States*

25   *vs. Flynt*, which is outlined in our motion, we have been

1    diligent in preparing for trial.  Starting with our appearance,

2    we have handed off and delayed as much of the other work in our

3    practices as we can making this case our priority.  As

4    explained in our motion, this case focuses on more than

5    14 years of a business's operations.  The government has

6    produced more than 178,000 documents totaling 4.9 million

7    pages.

8         As the government points out, we don't need to review

9    them all, but we certainly have an obligation to review and

10   identify those documents that the government may use at trial

11   or that may be used for impeachment or that may be used as part

12   of the defense case.

13        The government does not dispute its intent to use the

14   nearly 2000 trial exhibits containing more than 19,000 pages

15   that the government had proposed using in the first trial

16   September of 2021.  So the government argues in its response

17   that it has provided defense with discovery indices and

18   collections of hot documents.

19        I would note, first of all, that's not responsive at

20   all to the shear volume of the potential trial exhibits,

21   documents, witnesses, and novel legal theories at issue in this

22   case.  It doesn't save any time, even if you assume what was

23   provided there was meaningfully useful.  It's not.  The hot

24   docs are about a thousand pages of documents that don't involve

25   James Larkin or any other individual defendant.  It mostly

1    showed generalized knowledge that some ads on the site related

2    to unlawful conduct after the fact, or that others claim they

3    are related to unlawful conduct.  Those 150 so documents gives

4    no insight into the 19,000 documents comprising the trial

5    exhibits that the government disclosed or identified

6    previously.

7            In terms of the indices, this is described in a little

8    more detail at Docket No. 527 at page 9 in Exhibit A, and

9    that's a joint status report that was filed in April of 2019.

10   As explained there, the indices don't do anything to reduce

11   time.  What the indices are are simply the government's

12   indexing about 4 million pages of production with one of eight

13   labels that identify a particular subpoena that it came out

14   through the United States Attorney's Office, that it came

15   through a PSI report from the California Department of Justice

16   or some other additional measure, one of eight broad categories

17   for 4 million pages of documents.

18           Of course, for trial preparation it requires more than

19   three lawyers separately reviewing the government's proposed

20   trial exhibits.  There's lots of other things that need to be

21   done.  The defense, prior to the last trial, disclosed 1157

22   trial exhibits.  There are legal issues.  One of the factors

23   set forth in 18 U.S.C. 3161 are novel questions of law as

24   appropriate for the continuance of a trial.

25           We are not suggesting here that we need time to

1    re-litigate the issues previously litigated before this or

2    prior courts, but it's impossible to adequately defend

3    Mr. Larkin without a deep understanding of the government's

4    novel legal theories.  That requires us to understand the

5    parties' arguments, the case law cited in those arguments, and

6    the Court's rulings on those various arguments.

7        If we don't have a complete grasp of all the material,

8    we couldn't adequately do our job with respect to Motions in

9    Limine, arguing at that time or in trial over the admissibility

10   of evidence, dealing with jury instructions, or setting up and

11   protecting the record regarding issues for appeal.  And there

12   is a docket.  We're now, I think at, what, 15, almost 1540 in

13   terms of docket entries.  It would just be malpractice not to

14   be as familiar as we can with every single prior filing of the

15   Court and the parties.

16       Trial witnesses.  We explained in our motion the trial

17   could involve hundreds of witnesses.  That refers to the 76

18   witnesses that the government identified, as well as potential

19   defense witnesses.  The point is, whether it's 76 or a number

20   over a hundred, that examining a witness is time sensitive and

21   a matter that needs great time investment.  It's simply not a

22   matter of reviewing some number of pages that the government

23   has disclosed and going to trial and examining or

24   cross-examining witnesses.  As the Court understands, it is a

25   far different endeavor.

1          Turning briefly to Mr. Larkin, our client, he is not

2     alleged to be a minor defendant here; rather, he is the

3     co-owner of Backpage from 2004 to '15.  The government alleges

4     that he oversaw the website's policies and strategic direction,

5     and that he retained a significant control over the website

6     after he sold it in 2015.  He is named in 71 of the counts in

7     the indictment.  Every single conspiracy count, every Travel

8     Act count, every concealment, money laundering count, some of

9     the international promotional money laundering counts, and two

10    of the transactional money laundering counts.  We simply have

11    to understand in-depth the entirety of the government's case to

12    adequately defend Mr. Larkin.

13         I want to turn briefly to a couple other things the

14    government alleged in its response.  The government doesn't

15    directly allege that we have not been diligent, which really

16    should end the inquiry.  If counsel, and we have certainly

17    avowed this, that we have and we have and will continue to do

18    all we can to be prepared as quickly as possible for this

19    trial.  In an absence of some good faith belief or argument

20    that we have not been diligent, I think the Court simply has to

21    grant a continuance of some kind, and the government hasn't

22    alleged that.

23         The government has said that we are stepping into the

24    shoes of a legal team that extensively worked this case up.

25    The implication being we could simply pick up the file and take

1    the case into trial.  I will say first that the government has

2    no idea the work that was done to prepare this case for trial

3    by predecessor counsel and how transferable that work product

4    was to us.  I am not prepared to discuss further in open court

5    the status of that file as we received it.  I will be happy to

6    do so in camera if the Court has specific questions or concerns

7    in that regard.

8         The government cites to *U.S. vs. Mikhel*, a Ninth

9    Circuit case from 2018, for the proposition that counsel

10   doesn't need additional time to prepare where they benefit from

11   the work of prior counsel.  Only in that case, new counsel had

12   ten months between the time of their appointment and trial,

13   they had co-counsel trial in place who had billed 4000 hours to

14   that point, and we have had little more, or will if the

15   June 20th date is not moved, little more than five months of

16   time between our total receipt of the file and when this case

17   would begin.  I'm sorry, a little more than six months.

18        The government also states that we've long had access

19   to the public court filings in the case.  That simply ignores

20   the fact that we were retained and appeared in mid-December

21   several days before we were before this Court.  And certainly

22   had not only no obligation, it wouldn't have made sense to

23   review 1500 docket entries for a matter that we had not been

24   retained and not appeared.

25        We'll also note that the government has seven

1    attorneys on this matter, some of whom been working on this

2    matter for as long as seven years.  As I said, the only cases

3    where courts have denied continuances that have been affirmed

4    on appeal that we found are ones where there's been some kind

5    of evidence of bad faith from counsel in requesting that;

6    evidence that a defendant had changed lawyers in an effort to

7    delay the trial to obtain a continuance.  That is certainly not

8    the case here.

9           Second, a continuance will serve useful purpose.  That

10   purpose is to ensure that James Larkin has constitutionally

11   adequate counsel.

12          The next point, any inconvenience caused by a

13   continuance would be minimal compared to the challenges to

14   Mr. Larkin should his request be denied.  There will be some

15   inconvenience to everyone by moving this June 20th trial date.

16          Jim Larkin, who is present in the courtroom, would

17   have preferred this case been revolved at the first trial,

18   which began in September 2021.  It was the government's

19   misconduct that created a mistrial then, creating far more

20   delay than we are asking for here.  We don't believe the

21   government is further prejudiced by a six-month continuance.

22   It started its investigation in 2016, if not earlier, indicted

23   this case two years later, first brought the case to trial in

24   2021, more than five years after that investigation began, and

25   the government's case involves facts going back to 2004, nearly

1    20 years ago.  There is an impact on some witnesses and some

2    evidence, but that's born equally by both sides.

3          There is undoubtedly some inconvenience to the Court,

4    and we appreciate very much the time the Court has set aside

5    for this trial.  This was a motion we had hoped we would never

6    have to file, and we did so now begrudgingly more than three

7    months ahead of the scheduled trial date in hopes that we could

8    minimize whatever inconvenience would be caused by it.

9          Finally, the last factor, Mr. Larkin will suffer harm

10   and prejudice should this request be denied.  As the Ninth

11   Circuit has identified in the *Flynt* case, this is the most

12   important factor.  There is no question here that having to go

13   to trial on June 20th with inadequately prepared counsel would

14   impact Mr. Larkin's rights under the Sixth Amendment.  There is

15   no substitute for the time that we are requesting here today.

16         THE COURT:  Well, I want to point your comments now to

17   what Mr. Cambria filed.  Explain to me a little bit more, as

18   best you can, what your, I guess divided up roles are with

19   regard to Mr. Lacey.

20         MR. ECKSTEIN:  So the -- in advance of the first trial

21   among defense counsel, there was a division of the 76 or so

22   government witnesses as to which defense counsel would have the

23   primary role, the lead role in cross-examining that witness.

24         THE COURT:  Well, let me back up because as I read,

25   Mr. Cambria, and Mr. Cambria certainly can chime in here, I

1    read his response to say that it was only an agreement between

2    Mr. Larkin and Mr. Lacey's counsel.  So now it sounds like it

3    was a division of labor amongst all counsel.  Which is it?

4            MR. ECKSTEIN:  Mr. Cambria can speak for himself as to

5    what he wrote.  My understanding is it was a division of all

6    counsel.

7            MR. CAMBRIA:  All counsel, Your Honor.

8            THE COURT:  All right.  Thank you.

9            All right.  Anything further, Mr. Eckstein?

10           MR. ECKSTEIN:  No.  I think, unless the Court wants to

11   ask questions about severance, our position is simply, we are

12   not asking for severance.  Again, if the Court believes

13   severance is necessary in order to grant the request for a

14   continuance, then we have no opposition on that basis.

15           THE COURT:  Let me hear next from Mr. Kessler having

16   joined in the motion, do you have anything further to add?

17           MR. KESSLER:  Briefly, Judge.  Thank you, Your Honor.

18   I'm not going to repeat anything that Mr. Eckstein indicated.

19   As the Court knows, we joined in that motion.  My situation was

20   a little bit different in terms of how I became involved in the

21   case.  I was contacted by the Federal Public Defender in, I

22   believe late January of this year as to whether I would be

23   willing to take on a case that is, quote, labor intensive and

24   set for trial June 20th.  That's the information I had.

25           I agreed to take it.  I immediately contacted Mr. Rapp

1   who was gracious enough to assist in re-disclosing the

2   government's disclosure.  Unfortunately, because of the size of

3   the disclosure, we -- my office did not receive back the hard

4   disks that had the government's disclosure until, it may have

5   been late February, but when we did receive it the files were

6   corrupted and so it took another week or so to finally receive

7   everything.

8          To be honest, Judge, there are approximately 5 million

9   documents out there, and I know we don't have to read every one

10  of them, but I can't have the government telling me which ones

11  I should read, which seems to be their position, and it is

12  physically impossible for somebody in my position with just a

13  couple months to be prepared for this trial.  I think that

14  would be malpractice on my part, and Mr. Spear would not be

15  afforded adequate and effective counsel under those

16  circumstances.

17         THE COURT:  Let me ask Mr. Kessler, what, if anything,

18  did Mr. Feder provide you?

19         MR. KESSLER:  Well, Mr. Feder has provided me with

20  quite a bit of the disclosure.  Between my office, Mr. Feder's

21  office, and the U.S. Attorney's office, it was agreed upon that

22  the U.S. Attorney's office would provide about two-thirds of

23  the discovery that had been disclosed; that Mr. Feder's office

24  will provide the other third, and that's what's happened.  But

25  again, I only had this material for about two weeks.

1          THE COURT:  Well, when you say "this material," the

2     material that Mr. Feder provided you or the material that the

3     government provided you?

4          MR. KESSLER:  All of it.  It all came in about the

5     same time.

6          THE COURT:  What is this trial that you reference in

7     May?

8          MR. KESSLER:  It is a state homicide, double homicide

9     case.  We believe it's going to be resolved, but that won't

10    happen until it is resolved.  It's been pending for about five

11    years.

12         THE COURT:  And if it is resolved, it will likely be

13    resolved in May because that was the firm trial date?

14         MR. KESSLER:  Yes, or sooner.  It's set for a

15    settlement conference, I believe, in April.

16         THE COURT:  All right.  Anything more, Mr. Kessler?

17         MR. KESSLER:  Nothing further.

18         THE COURT:  All right.  Let me -- before I take any

19    responses to the question of severance, let me hear from the

20    government.  Who is speaking for the government?

21         MR. RAPP:  Judge, it seems the focus here is on the

22    discovery and witnesses and exhibits and so --

23         THE COURT:  Let me cut to the chase, Mr. Rapp --

24         MR. RAPP:  Sure.

25         THE COURT:  -- somewhere in your response you indicate

1    that the government is attempting to whittle down its witness

2    list, can you give me a better description?

3              MR. RAPP:  Yes.  Happy to.  There are not hundreds of

4    witnesses.  We believe that we have 58 witnesses currently on

5    our witness list.  After just in the last several weeks

6    reviewing that 58 named witnesses, we believe we will probably

7    get these down to about 45 witnesses.  And the witnesses are

8    very -- so maybe that answers the Court's questions.  You let

9    me know.

10             THE COURT:  It does in one respect.  Have you had an

11   ability then to assess as the prior court had set a 12-week

12   trial, do you have a better assessment of how many weeks then

13   that would result in trial if you got to, for example, 58 or

14   45?

15             MR. RAPP:  I certainly think it will reduce it some.

16   It's so hard to tell how long a case will go because we don't

17   have a sense of the length of cross-examination and we're

18   always at a disadvantage because we think a witness will take,

19   for example, four hours on the witness stand, but we can't

20   really evaluate the length of the cross-examination.  It's

21   particularly difficult when there is six defense attorneys, who

22   have every right to cross-examine them.

23             But I do think that if we estimated a 12-week length

24   of trial, I do think it's going to be less.  And the witnesses

25   are -- it's very formulaic.  We have witnesses who are

1   trafficking victims who are going to be testifying to their

2   postings, but a large part of the case is going to be the

3   former employees of Backpage.

4           Then in terms of -- well, that's the witnesses.  I'll

5   be happy to talk about the exhibits if that would be helpful to

6   the Court's decision.

7           THE COURT:  No, not at this point.  You can go ahead

8   with your argument.

9           MR. RAPP:  Well, our argument is this:  This case has

10  been pending for some time.  I understand the defense

11  arguments, but this is -- the posture is a little bit different

12  here.  This case already went to trial, and so the defense has

13  an incredible insight into what the prosecution's theory is.

14  They have the transcripts of the opening statement, they

15  received -- they've had disclosed the PowerPoint opening, so

16  they know what our theory is.

17          They know who our witnesses are.  They have gotten a

18  flavor for what some of the witnesses will testify to,

19  particularly a trafficking victim.  It's very formulaic, as I

20  said.  They will be testifying to their postings.  They will be

21  talking about how they were involved in a business enterprise.

22           So I think the defense -- this isn't a case where, as

23  I am sure this Court has seen, where, you know, a defense

24  counsel gets off the case and a new defense counsel substitutes

25  in for whatever reason and they are trying to figure out the

1    case.  This is a case that they know what the theory is and

2    they have the advantage of all the pleadings that have been

3    filed in this case, so they know that many of the issues have

4    been litigated.  There's been six Motions to Dismiss that have

5    been litigated in this case, so they understand that.

6         With respect to the exhibits, I understand that this

7    can be daunting to the defense when there is millions of

8    documents, but the reality here is we count 1800 exhibits on

9    our exhibit list.  It's important to understand what type of

10   exhibits those are.  Those are the internal e-mails of

11   Backpage.  The vast majority of those exhibits will come

12   through a single witness, Carl Ferrer, the CEO.

13        And so these aren't -- it isn't as if this is

14   discovery that comes from some third party that the defense is

15   completely unfamiliar with it.  These are -- the vast majority

16   of these e-mails are authored by the defendant, and so they are

17   very familiar with it, and these are sophisticated defendants.

18   Not unlike some of the cases we have in this court, these are

19   defendants that can assist their defense attorneys in reviewing

20   e-mails.

21        So the thrust of the defense argument is there are

22   enumerable witnesses.  It's not really accurate.  There's a

23   considerable amount of discovery.  Well, it has been whittled

24   down after four years or three years post indictment to

25   discrete exhibits.  Those exhibits are -- many of those

1    exhibits are well-known to the defendants because they were the

2    authors of them, and so there are no real extraordinary

3    circumstances in this case.  And you know, the issue here is if

4    we have -- this case has been continued enumerable times, and

5    in many cases for good reason because of a worldwide pandemic,

6    because counsel have gotten on the case.  Some of the counsel

7    have represented these defendants pre-indictment and have been

8    very familiar with the litigation that has occurred in the

9    civil context, which is in some ways related to this case.

10          So we believe that if this case gets continued once

11   again, we will be back in front of this court and there will be

12   some other issue.  The Court has correctly carved out a

13   discrete amount of time.  If you recall, we were going to even

14   try this case earlier and then it got continued to June and all

15   counsel were aware that this case would proceed in June.

16          In terms of, we can't speak, of course, to the

17   division of labor among the defense attorneys.  I can only tell

18   you what we observed during trial was some defense attorneys

19   would handle a certain witness and other defense attorneys

20   would handle others, and so they are in a joint defense and so

21   they have that ability to, you know, carve out certain

22   witnesses that are more relevant for particular defendants, I

23   guess, but that's what we observed during the trial.

24          So for those reasons, we do believe that this case

25   should proceed in June as scheduled.

1          THE COURT:  So give me a little bit more about your

2     position with regard to severance.  I mean, when I look at the

3     indictment, to be sure, the majority of the indicted charges

4     are as to Mr. Lacey and Mr. Larkin, and so why the opposition

5     to carving them out from the other defendants especially given

6     the posture of the case right now?

7          MR. RAPP:  We would go back to the Court's order

8     regarding Defendant Vaught.  This is a conspiracy case, and

9     they were all clearly involved in a conspiracy.  But with

10    respect to the specific question as to Mr. Lacey and

11    Mr. Larkin, Mr. Spear is just as involved with both of those

12    gentlemen.  In fact, in some cases more so because he was in

13    the unique position of straddling.  He was a minority owner but

14    had one foot in the upper management with Mr. Lacey and

15    Mr. Larkin, but one foot in with middle management with

16    Mr. Ferrer.

17         So what you will find certainly on those 1800

18    primarily e-mails is Mr. Spear is very much involved on the

19    day-to-day decisionmaking involving the internal prostitution

20    marketing strategies, and in moderation --

21         THE COURT:  Well, then let me add him into the

22    severance mix, then why the opposition to severing out

23    Mr. Lacey, Mr. Larkin and Mr. Spear for a separate trial given

24    the current posture?

25         MR. RAPP:  Because Mr. Brunst is also very much

1    involved in this -- in the running of this 14-year website.  As

2    the CFO, he knows very well what the product is.  It isn't -- I

3    note that Mr. Brunst's attorney filed a motion sort of

4    attempting to distinguish his role, but I know of no company

5    where the CFO isn't intimately involved in what product they

6    are selling.  I don't think it's any different here, but what

7    is particularly important is the money laundering, which if the

8    Court recalls from litigation and from the Superseding

9    Indictment, is the circumventing of credit card processing

10   which Mr. -- starting in 2015 when the credit cards shut down

11   the ability for individuals to use those credit cards to

12   purchase postings on the website.  It was Mr. Brunst who worked

13   almost on a day-to-day basis, and the e-mails bear that out, on

14   trying to circumvent that conventional credit card processing,

15   which is the money laundering.

16        So Mr. Brunst is intimately involved with Mr. Spear,

17   Mr. Lacey and Mr. Larkin, and it is a conspiracy and it makes

18   no sense to sever him out.

19        THE COURT:  You may continue.

20        MS. KENNEDY:  So on severance, this is a conspiracy

21   case.  And as the Court aptly noted in the order regarding

22   Ms. Vaught's Motion to Sever, who the Court has already ruled

23   that she is not appropriate that she be severed out, and she is

24   arguably as a salaried, salaried employee as opposed to an

25   owner, she's not appropriate to be severed out.  I can't

1    imagine a world where these other individuals should be

2    severed.  This was clearly a conspiracy where they were all

3    working toward a common end and should be tried together, and

4    it makes -- and I will also add for the Court's consideration

5    that in any severed trial the evidence would likely be

6    identical; in other words, we cannot represent to the Court

7    that if there were separate trials that they would be -- the

8    length of the trial would be anything less, and that we would

9    call less witnesses because obviously all of the witnesses we

10   would have in a trial, for example, with Lacey and Larkin,

11   Lacey Larkin and Spear, I guess, would apply certainly to a

12   trial on the balance of the defendants.

13              THE COURT:  Anything more?

14              MR. RAPP:  No, Your Honor.  Thank you.

15              THE COURT:  Now, does anybody else want to be heard on

16   the issue of severance?  I guess I will go down the line.

17              Mr. Eckstein.

18              MR. ECKSTEIN:  Nothing other than what I already said.

19              THE COURT:  All right.  Mr. Kessler, did you have

20   anything?

21              MR. KESSLER:  Nothing further.

22              THE COURT:  Mr. Eisenberg.

23              MR. EISENBERG:  I do, Your Honor.  Your Honor, may it

24   please the Court, I might be one of the only defendants who is

25   in agreement that there should not be severance, and I will be

1    very candid with the Court about how I have had to approach

2    this case.  As a CJA appointed attorney, the budget which was

3    approved and for which I am very grateful, nonetheless had to

4    be taken into consideration in terms of what I as a codefendant

5    could supply to the proof of the case and the defense of the

6    case.

7            Now, what that means is that there has been

8    arrangements among counsel as to where the emphasis would be.

9    For example, do we have one person who would handle all of the

10   computerized equipment in court at the time of trial?  What can

11   I contribute to that as a CJA attorney?  With respect to

12   marshalling exhibits, with respect to preparing exhibits, all

13   of that, Your Honor, in this case is extremely complicated,

14   it's very time consuming, it's labor intensive, and it's

15   difficult for a CJA attorney to accomplish all that.  And I am

16   not complaining about it for one minute, excuse me, because I

17   like these cases and I like to do them, but the reality is that

18   it's just a limited amount of circumstances for me.

19   Nonetheless, I'll be prepared to go to trial whenever the Court

20   orders it.

21           I will say this as well, the budgeting process now

22   involves three of us, Mr. -- I'm sorry -- Ms. Vaught,

23   Mr. Padilla, and now Mr. Kessler's client, Mr. Spear.  And with

24   that grouping, if you will, we are better able to present a

25   budget to the Ninth Circuit budgeting authority, and that also

UNITED STATES DISTRICT COURT

1    will help us in terms of dividing, if possible, we all have our

2    own obligations to our clients, dividing the effort among us.

3            I would love to be able to be the second of the two

4    cases going to trial, Your Honor, because it's very clear

5    everybody on the second case would be able to take information

6    about how the first case evolved.  I would have to agree with

7    Mr. Rapp, I think these cases are going to be the same even

8    though my client isn't in the money laundering charges, the

9    other charges, the Travel Act charges, they are the same for

10   everyone, I believe, and so the case will be proven twice.

11   There will be two trials of the same length and the same

12   magnitude.

13           So Your Honor, I am opposed to severance for a very

14   practical reason.  Thank you.

15           THE COURT:  All right.  Thank you.  Let me move to

16   Mr. Cambria.  Did you have anything more to add?

17           MR. CAMBRIA:  I do, Your Honor.  The problem with

18   severance generally is that we did split up the witnesses, and

19   in a conspiracy case I can envision that we would be

20   responsible -- that all witnesses need to be covered, and so

21   there would be extra preparation for myself as well as

22   Mr. Eckstein.  I already have between 18 and 21 witnesses

23   assigned to me from the first trial with the group that we had

24   at that time.

25           To sever Larkin and Lacey from the others, again, we

1    couldn't go first because Mr. Eckstein would not be prepared by

2    the 20th.  And taking on the other witnesses that the balance

3    of the defendants were responsible for would put me in a

4    situation where I couldn't be ready by that time either given

5    the long -- given the very heavy load, if you will, of

6    witnesses that I have now that are quite substantial.

7          So I see a problem either way with preparation, and

8    either because we have to take on extra witnesses or because

9    Mr. Eckstein would not be prepared with the two of us in a

10   trial together if we had to go first.

11         THE COURT:  All right.  Thank you.

12         And Mr. Lincenberg, I do have your position regarding

13   severance, do you wish to be further heard?

14         MR. LINCENBERG:  I have little to add, Your Honor.  We

15   did not seek a severance.  We are not moving for a severance

16   primarily because I think as a matter of right we are not

17   entitled to it, but I think the Court has raised this question

18   of severance in connection with the continuance motions because

19   the Court does have discretion.  And this is a massive

20   undertaking.  It's a three-month trial, and it has gotten

21   strung out much longer because of COVID and appeal and

22   government misconduct and various reasons, and resource-wise,

23   and financially particularly with all the freezes, it's a very

24   difficult case to work from the defense side.  There's a

25   massive amount of work that's being done.

1          As Mr. Cambria said, it's alleviated someone because

2    witness assignments have been split up.  But from my client's

3    perspective, we're basically sitting in the courtroom for 80,

4    90 percent of the trial with no witnesses who have anything to

5    say about my client.  You have, as Mr. Rapp noted, the former

6    CEO of Backpage who will say that when it came to financial

7    issues, payment issues or money issues, the CFO is involved in

8    dealing with banking relationships and alike.  That's correct.

9    And so they will put an IRS agent on the witness stand who then

10   says this is the way the money went between accounts, which is

11   the way it would go whether it's a legitimate business or not a

12   legitimate business.

13         We'll play a role with some of the witnesses when it

14   gets to the tail of this case, but there is an unfairness

15   element of it for us to be sitting through a lengthy trial.

16         So if there's a severance, my point was simply to say

17   that we should be in the second half of it because, first of

18   all, I believe that the counts will be dismissed because there

19   is no offense here.  And if there is no underlying offense,

20   there is no money laundering offense.  And if they are not

21   dismissed, a second trial would be much more abbreviated than

22   the first one.

23         So that's all I'd add for the Court's thinking.  It's

24   not taking a position in favor of severance, but only if there

25   is one, that we should be in the latter part of the case.

1          And one very small point, just in terms of the

2    scheduling of all these dates, I did file a Document 1497 back

3    in November just noting one week when I was unavailable in

4    September.  As the Court recalled when the Court was setting

5    the dates, we were all talking about dates in the spring that

6    fell apart due to various lawyers' conflicts, and the Court

7    just set a date beginning in June.  The trial may be over

8    before then, but I do want to note that we had that one week

9    conflict.

10          THE COURT:  All right.  Ms. Bertrand.

11          MS. BERTRAND:  Thank you, Your Honor, I would like to

12   speak briefly just to address the government's comments.  I

13   think it's inaccurate, with what I will call the lower-level of

14   defendants versus Lacey and Larkin, to say that the trial would

15   be of comparable length because, first of all, for example,

16   Mr. Padilla and Ms. Vaught, both are not charged in 50 of the

17   counts of the indictment.  They are not charged with money

18   laundering.  So like Mr. Brunst's situation, we are going to be

19   sitting through a 12-week trial where several do not pertain to

20   my -- do not pertain to my client at all.

21          And I think likewise, the idea that all of these

22   e-mails coming in, for whatever, Lacey and Larkin and whoever

23   else is talking with each other, they weren't including

24   Ms. Vaught because she was at a low level.  She wasn't a

25   policymaker.  She was not -- she would not have been looped in

1    on those discussions.  So the idea that the trial would be of

2    comparable length I think is an overstatement at best.

3            I agree with the comments of defense counsel that if

4    it were to be severed, it would be appropriate for us to go

5    second, and I note this in our response to the Court's order

6    that what makes sense is to figure out whether or not any crime

7    happened in the first place because if it didn't happen for

8    Lacey and Larkin, it certainly didn't happen for the rest of

9    the defendants, and certainly for Ms. Vaught.  So that would be

10   the reason to be actually more efficient in the long run.

11           But I also wanted to note on Mr. Eisenberg's comments.

12   Mr. Eisenberg, I am a CJA lawyer that takes most complex cases,

13   and I really appreciate both the opportunity to work with cases

14   like this in terms of the interest, but also I really

15   appreciate the camaraderie that the defense counsel have had in

16   this case and I value it, so I don't make these thoughts --  I

17   don't set forth his thoughts, comments and position lightly,

18   but I have to also advocate for what is in the best interest of

19   my client individually, and I think at this point that should

20   be severed from the higher-level defendants.  Thank you.

21           THE COURT:  All right.  Is there anyone else who

22   wishes to be heard?  All right.  I think the Court has

23   sufficient information.  I will take the matter under

24   advisement and you'll have my ruling shortly.

25           Is there any other matter to be raised at this

1    juncture from the government?

2            MR. RAPP:  No, Your Honor.  Thank you.

3            THE COURT:  Anything from defense counsel?

4            MR. ECKSTEIN:  No, Your Honor.

5            MR. KESSLER:  No.

6            MR. EISENBERG:  No, Your Honor.

7            THE COURT:  All right.  Then we are adjourned.

8        (Proceedings concluded at 3:47 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4              **C E R T I F I C A T E**

5

6          I, HILDA E. LOPEZ, do hereby certify that I am duly

7     appointed and qualified to act as Official Court Reporter for

8     the United States District Court for the District of Arizona.

9          I FURTHER CERTIFY that the foregoing pages constitute

10    a full, true, and accurate transcript of all of that portion of

11    the proceedings contained herein, had in the above-entitled

12    cause on the date specified therein, and that said transcript

13    was prepared under my direction and control.

14          DATED at Phoenix, Arizona, this 22nd day of April,

15    2023.

16

17

18                              s/Hilda E. Lopez_____
19                              HILDA E. LOPEZ, RMR, FCRR

20

21

22

23

24

25