**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00422-001-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Michael Lacey, et al., | |
| Defendants. | |

Defendants Michael Lacey, James Larkin, Scott Spear, John Brunst, Andrew Padilla, and Joye Vaught ("Defendants") have filed a Motion to Dismiss the Superseding Indictment (Doc. 1557). The United States ("the Government") has filed a Response (Doc. 1577) and the Defendants have filed their Reply (Doc. 1585). Upon consideration of the same, and for the reasons stated herein, the Court denies Defendants' Motion.[1]

**I.   Background**

On July 25, 2018, a federal grand jury returned a 100-count Superseding Indictment ("SI") against Defendants, alleging they engaged in various criminal acts while operating the website Backpage.com ("Backpage"). (Doc. 230). Count 1 of the SI charges Defendants with conspiracy to facilitate prostitution under the Travel Act, 18 U.S.C. § 1952(a)(3)(A) and Counts 2–51 charges them with fifty violations of facilitating prostitution under the Travel Act, 18 U.S.C. § 1952(a)(3)(A). Each of the fifty violations are based on fifty separate ads that were posted on Backpage (SI ¶¶ 195–201). Tracking

---

[1] The Court finds this matter can be resolved adequately on the parties' briefing and denies Defendants' request for oral argument. *See* LRCrim 12.1(a); LRCiv. 7.2(f); *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000).

the language of the Travel Act, the SI alleges in part that Defendants:

> used the mail and any facility in interstate and foreign commerce with intent to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: prostitution offenses in violation of the laws of the State in which they are committed and of the United States, including but not limited to Title 13, Arizona Revised Statutes, Section 13-3214[2], and thereafter performed and attempted to perform an act that did promote, manage, establish, carry on, and facilitate the promotion management, establishment and carrying on of the unlawful activity. . .

(SI ¶ 201). The SI then identifies the fifty specific ads by date and description. (*Id.*) Fifteen of the ads depict specific victims that are alleged to have been women who were sold for sex on Backpage (SI ¶ 201, Counts 2, 4–5, 12–17, 19–24); ten of the ads were posted by P.R, a prostitute who had extensive communications with one of the creators of Backpage, C.F (SI ¶ 201, Counts 3, 6–11, 18, 25–26); and twenty-five ads contain the phrase "GFE," which the SI alleges is code for prostitution or underage prostitution. (SI ¶ 201, Counts 27–51). The SI further alleges that Defendants "were aware that the overwhelming majority of the website's 'adult' and 'escort' ads were actually ads for prostitution" and makes various allegations that Defendants knew their marketing efforts to prostitution advertisers were successful. (*See e.g.*, SI ¶¶ 34, 70, 71, 73, 76, 81, 107, 132, 135). It describes three specific strategies Backpage and Defendants used to attract more prostitution ads: content aggregation (SI ¶¶ 35–44), reciprocal link and affiliate programs (SI ¶¶ 45–67), and moderating ads to "sanitiz[e]" them. (SI ¶¶ 68–70, 72–73, 75, 77–96, 98–104, 108, 110, 112, 116–26, 128–30, 132–34, 136, 139, 143, 145, and 148). The SI also includes "victim summaries" of women who were sold for sex on Backpage and describes how Backpage handled ads submitted by these victims and/or their pimps. (SI ¶¶ 160–176).

The remaining offenses in the SI allege counts for money laundering and forfeiture. (SI ¶¶ 202–11).[3] The Court has gone into even more detail about the allegations of the SI

---

[2] A.R.S. § 13-3214 makes it "unlawful for a person to knowingly engage in prostitution."
[3] Defendant Hyer has pled guilty to Count 1, conspiracy to violate the Travel Act, and awaits sentencing.

in several previous Orders and will adopt the remaining description provided in its October 24, 2019, Order denying Defendants' Motion to Dismiss. (*See* Doc. 793 at 1–7; *see also* Doc. 561 at 3–11).

Since their indictment, Defendants have sought dismissal of the SI on sufficiency grounds no less than three times. (*See* Docs. 561, 746, 783). Following a mistrial in September 2021 (Doc. 1308), Defendants moved to dismiss the SI on double jeopardy grounds (Doc. 1355). This Court denied the motion in December 2021 (Doc. 1444), and Defendants appealed (Doc. 1445). The Ninth Circuit affirmed the Court's denial and remanded the case for trial, which is currently set for August 8, 2023. (Docs. 1469; 1546). Given this case's protracted procedural history and many past rulings on the sufficiency of the SI, in the Court's February 17, 2023, Order Setting a Final Pretrial Conference ("FPTO"), the parties were informed that the law of the case doctrine would preclude the Court from accepting new motions that were not based on new law or facts. (Doc. 1524 at 4).

## II.   Legal Standards

An indictment must contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "An indictment is sufficient if it, first, contains the essential elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). *Accord United States v. Cecil*, 608 F.2d 1294, 1297 (9th Cir. 1979). A defendant may move to dismiss an indictment for failure to state an offense under Federal Rule of Criminal Procedure 12. Fed. R. Crim. P. 12(b)(3)(B)(v). When a count charged by an indictment fails to recite an essential element of the offense, that count is facially defective and must be dismissed. *United States v. Pernillo-Fuentes*, 252 F.3d 1030, 1032 (9th Cir. 2001). In assessing such a motion, a court must accept the allegations in the indictment as true and "analyz[e] whether a cognizable offense has been

charged." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The court "is bound by the four corners of the indictment" and may not consider evidence that does not appear on its face. *Id.*

The law of the case doctrine "generally provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (cleaned up). Under the doctrine, "'a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case,' absent a material change in circumstances." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). "For the doctrine to apply, the issue in question must have been decided either expressly or *by necessary implication* in the previous disposition." *Id.* (internal quotations and alterations omitted). If the issue in question has already been decided, then reconsideration of the order is generally only permitted if "the prior decision is 'clearly erroneous' and enforcing it would create 'manifest injustice'; intervening, controlling authority encourages reconsideration; or substantially different evidence is produced at a later merits trial." *East Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1262 (9th Cir. 2020). "The doctrine encourages the conservation of limited judicial resources and promotes consistency by allowing court decisions to govern the same issues in subsequent stages of the same case." *Id.* at 1261.

### III.  Defendants' Motion to Dismiss

On March 30, 2023, Defendants filed a Motion to Dismiss that again challenged the sufficiency of the SI. (Doc. 1557). In their Motion, Defendants primarily argue that the Travel Act charges in the SI are aiding and abetting offenses and as a result, the SI is fatally defective because it does not allege "with respect to each charged ad, both that *someone* committed a prostitution offense and that Defendants intended to facilitate the commission of *that* specific prostitution offense." (*Id.* at 9–10). Defendants say the Court should adopt this interpretation of the Travel Act because (1) the Court should hold the Government to

its position in *Woodhull*[4] that the terms "promote" and "facilitate" in the Allow States and Victims to Fight Online Sex Trafficking Act ("FOSTA") are equivalent to "aid and abet"; (2) the text of the Travel Act "maps neatly on the universal aiding-and-abetting elements reflected in the Ninth Circuit Model Criminal Jury Instructions;" (3) Ninth Circuit law requires that the Government prove, as elements of a Travel Act offense, all the elements of the underlying law that constitutes the unlawful activity Defendants allegedly violated; and (4) if the Travel Act did not require the Government to establish that Defendants were guilty of aiding and abetting an underlying criminal offense, the Act would be unconstitutional as applied. (Doc. 1557 at 13–14). Defendants also argue dismissal of the money laundering counts, and seek dismissal of the entire SI on double jeopardy grounds and on the assumption that the grand jury was not properly instructed on aiding and abetting. (Doc. 1557 at 18–21).

The Government argues that Defendants are simply restyling old arguments they have already presented to this Court. It asserts that "Defendants have made these arguments before, and the Court has found them insufficient to require dismissal. Defendants cite no intervening change in the law, and no new facts about this case to warrant reconsideration." (Doc. 1577 at 7). The Government also disagrees that to sufficiently allege Travel Act charges the Government must plead traditional elements of aiding and abetting offenses, but that even if such were required, the SI sufficiently alleges as much, either explicitly—or, as allowed under Ninth Circuit law—implicitly. (*Id.* at 14).

In its Reply, Defendants argue that "[n]o prior order has decided the narrow issues presented here. The arguments raised are new and are prompted by the government's recent assertions in the *Woodhull* appeal. Deferring these issues until trial only invites error." (Doc. 1585 at 4).

## IV. Analysis

The Travel Act makes it a federal offense for a person to "travel[] in interstate or foreign commerce or use[] the mail or any facility in interstate or foreign commerce, with

---

[4] *Woodhull Freedom Found'n v. United States*, No. 22-5105 (D.C. Cir. argued Jan. 11, 2023).

intent to. . . promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." 18 U.S.C. § 1952(a)(3). Broken into its textual pieces, the Ninth Circuit requires that "[a]n indictment under the Travel Act [allege] each of the three elements of the crime: (1) interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *United States v. Tavelman*, 650 F.2d 1133, 1138 (9th Cir. 1981). *See also United States v. Gordon*, 641 F.2d 1281, 1284 (9th Cir. 1981) (stating "it is clear that the statutory language embodies all of the essential elements [of a Travel Act indictment] and that reference to state law is necessary only to identify the type of unlawful activity involved") (cleaned up).

The Ninth Circuit has clarified that "[t]he Travel Act does not require the commission of the predicate offense; rather, only an 'attempt[ ] to promote' the unlawful activity, 18 U.S.C. § 1952(a), with 'a subsequent overt act in furtherance of that unlawful activity.'" *United States v. Stafford*, 831 F.2d 1479, 1482 (9th Cir. 1987) (*citing Tavelman*, 650 F.2d at 1138). The intent required under the Travel Act is the "specific intent to facilitate an activity which the accused knew to be unlawful under state law." *United States v. Polizzi*, 500 F.2d 856, 876–77 (9th Cir. 1974). *See also United States v. Gibson Specialty Co.*, 507 F.2d 446, 449 (9th Cir. 1974) (to obtain a conviction under the Travel Act, the Government must show Defendants had "specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities"). The Travel Act does not contain the words "aid or abet."

The SI does not charge Defendants with the federal offense of aiding and abetting, but for purposes of comparison, the Court finds it helpful to look at what is required of that offense. The federal aiding and abetting statute, 18 U.S.C. § 2 derives from common-law standards for accomplice liability and states that a person who "aids, abets, counsels, commands, induces or procures" in the commission of a federal offense "is punishable as a principal." 18 U.S.C. § 2; *Rosemond v. U.S.*, 572 U.S. 65, 70 (2014). "As at common law, a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the

offense's commission." *Rosemond*, 572 U.S. at 71.  "In proscribing aiding and abetting, Congress used language that 'comprehends all assistance rendered by words, acts, encouragement, support, or presence' . . . —even if that aid relates to only one (or some) of a crime's phases or elements." *Id.* at 73.  At trial, the Government must prove that the offense has been committed but need not establish that the principal offender be convicted or even identified.  *Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir. 1979).  The intent required to aid and abet "must go to the specific and entire crime charged." *Id*. at 76.  "An intent to advance some different or lesser offense is not, or at least not usually, sufficient."  *Id*.  The Court has clarified, however, that "a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." *Id.* at 77 (*citing with approval United States v. Easter*, 66 F.3d 1018, 1024 (9th Cir. 1995) (correctly finding that unarmed driver of a getaway car had the requisite intent to aid and abet an armed bank robbery if he "knew" his cohorts would use weapons in carrying out the crime)).  *See also United States v. Goldtooth*, 754 F.3d 763, 769 (9th Cir. 2014) (reversing defendants' convictions for aiding and abetting robbery on Indian reservation because there was no evidence that defendants had foreknowledge that robbery was to occur).

The Court finds that its prior rulings have addressed and rejected the reasons Defendants offer as support for why the Court should find the SI deficient for failure to allege the elements of aiding and abetting.  Defendants have not shown these rulings are "clearly erroneous," that enforcing them would create manifest injustice, or that intervening, controlling authority encourages reconsideration.  *East Bay Sanctuary Covenant*, 950 F.3d at 1262.  The Court also finds, however, that the SI is also not deficient for insufficiently alleging elements of aiding and abetting.  Finally, the Court declines to reconsider its prior rulings and dismiss the SI due to double jeopardy concerns, the independent-standing money laundering counts, or on assumptions that the grand jury was erroneously instructed.

      **A.**    **There is No Cause to Reconsider the Court's Prior Rulings Regarding the Alleged Deficiencies of the Travel Act Counts**

This Court has previously held, after extensive reviews of the allegations in the SI, that the SI sufficiently alleges the necessary elements of Travel Act offenses and constitutionally puts Defendants on notice of how to defend against the Travel Act crimes alleged against them. The Court rejects Defendants' premise that the Travel Act offenses require the Government to allege the elements of aiding and abetting to satisfy Federal Rule of Criminal Procedure 7. Finding no cause in Defendants' Motion to change its prior findings, these rulings will continue to govern.

### 1. The SI sufficiently alleges specific "unlawful activity"

The Court has already found "that the SI alleges 'unlawful activity' for each Travel Act Count with adequate specificity to inform Defendants of their charges." (Doc. 946 at 9) (specifically finding that "the SI alleges fifty instances where Defendants posted ads on Backpage.com to facilitate specific individual prostitutes or pimps involved in the business of prostitution. (SI ¶¶ 200-201.)"). In their Motion, Defendants now argue that the Travel Act charges are deficient in part because they do not allege that someone committed the underlying offense (or in the context of the Travel Act language, the "unlawful activity"). (Doc. 1557 at 10). Defendants say that "'settled legal concepts' of 'aiding and abetting' and the 'traditional principles of accomplice liability' definitively require, as elements of the charge, proof of (1) commission of an offense by someone . . ." (*Id.* at 11 *citing Rosemond*, 572 U.S. at 76).

The Court disagrees, again. (*See* Doc. 840 at 10–11 (rejecting argument that SI must allege that Defendants or anyone commit the predicate offense). The Ninth Circuit does not require that an indictment allege someone committed the predicate offense to put Defendants on notice that they have been charged with facilitating or promoting state law prostitution offense under Section 1952(a)(3). *See Stafford*, 831 F.2d at 1482 ("[t]he Travel Act does not require the commission of the predicate offense; rather, only an 'attempt[ ] to promote' the unlawful activity, 18 U.S.C. § 1952(a), with 'a subsequent overt act in furtherance of that unlawful activity.'") (*citing Tavelman*, 650 F.2d at 1138). *Accord McIntosh v. United States*, 385 F.2d 274, 277 (8th Cir. 1967) ("accomplishment of the State substantive offense is not a prerequisite to Travel Act conviction.") (citations omitted);

*United States v. Palfrey*, 499 F.Supp.2d 34 (D.C. Cir. 2007) (rejecting insufficiency of indictment for failure to alleged the elements of the predicate state offense: "The Indictment must allege the *essential* elements of the offense with which Defendant is charged, namely, violations of the Travel Act . . . The elements of the predicate state offenses are not essential elements of the Travel Act violations.") (internal citation omitted); *United States v. Welch*, 327 F.3d 1081, 1092 (10th Cir. 2003) ("An actual violation of [the Utah Commercial Bribery Statute] is not an element of the alleged Travel Act violations in this case and need not have occurred to support the Government's § 1952 prosecution"); *United States v. Montague*, 29 F.3d 317, 322 (7th Cir. 1994) ("Section 1952 does not require that the state crime ever be completed."). As *Stafford* and *Tavelman* make clear, the Travel Act requires only that the indictment allege the essential element of "a subsequent overt act in furtherance of that unlawful activity," not that someone committed the underlying offense. *Tavelman*, 650 F.2d at 1138. And as this Court has informed the parties before, the SI here clears that hurdle. (Doc. 840 at 10–11).

Moreover, the Ninth Circuit cases cited by Defendants do not require that a Travel Act indictment allege the underlying offense has been committed. (*See* Doc. 1557 at 13 citing *Myers v. Sessions*, 904 F.3d 1101 (9th Cir. 2018), *United States v. Hiatt*, 527 F.2d 1048 (9th Cir. 1975), and *United States v. Bertman*, 686 F.2d 772 (9th Cir. 1982)). *Myers* stated that "a specific 'unlawful activity' is an element of a Travel Act offense" in finding a defendant was removable for a controlled substance offense. 904 F.3d at 1107–08. The focus of the inquiry in *Myers* was whether, under the *Taylor-Descamps* framework for determining whether a specific conviction is a predicate offense mandating removal under the Immigration and Nationality Act ("INA"), the Travel Act was "divisible," which in turn depended on "whether a statute's 'listed items are elements or means.'" *Id.* at 1107.[5] The court phrased the specific issue as: "whether it is necessary to identify a specific unlawful act to obtain a conviction under the Travel Act, or whether it would be sufficient to conclude that the defendant committed one or more of the crimes listed in § 1952(b)

---

[5] *Taylor v. United States*, 495 U.S. 575 (1990) and *Descamps v. United States*, 570 U.S. 254 (2013).

- 9 -

without specifying or reaching agreement on which crime." *Id.* It concluded that "a specific 'unlawful activity' [was] an element of a Travel Act offense" under that framework. *Id.* at 1108. *Myers*, quite simply, did not discuss the essential elements required for a Travel Act indictment, or purport to overrule or modify the elements required *Stafford* or *Tavelman*, neither of which the *Myers* decision mentioned. Instead, in using the language of the divisibility test under *Taylor-Descamps*, the court characterized the specific unlawful activity that defendant was charged with as an "element" and not a "means" for purposes of finding him removable. *Id.*

*United States v. Hiatt*, which predates *Tavelman*, also does not redefine the required essential elements for a Travel Act indictment. 527 F.2d at 1050. The defendant there argued that his conviction was a constitutional impossibility because the Alaska prostitution statute on which his Travel Act conviction was based had been found to be unconstitutional by some lower courts. *Id.* In assessing the defense, the court stated that "[i]t is correct that the existence of a state law violation is an element of the violation of the Travel Act and that the court must make a determination of whether the underlying state law has been *or could have been* violated." *Id.* at 1051 (emphasis added). The court therefore determined that if the alleged "unlawful activity" underlying a Travel Act violation was not unlawful, because, for example, the statute criminalizing the conduct was unconstitutional, a defendant could be not convicted for promoting or facilitating in the promotion of such activity. *Id. Accord Bertman*, 686 F.2d at 774 (finding that when the unlawful activity is the violation of state law, "[t]he government [] must prove as part of the Travel Act charge that the defendant has or could violated the underlying state law, and the defendant may assert any relevant substantive state law defense"). Neither *Hiatt* or *Bertman* stand for the proposition that an indictment's failure to allege that the underlying offense has been committed by someone renders an indictment defective.[6] Both cases instead stand for the proposition that defendants indicted for unlawful activity under state law are entitled to present defenses to those state law offenses at trial.

---

[6] Notably, here, the SI alleges the existence of a specific state law violation. (*See* SI ¶ 201).

- 10 -

Indeed, even if the Court were to assume that the evidentiary burdens of an aiding and abetting offense govern the SI's Travel Act charges, whether the Government has offered sufficient proof of the commission of an offense by another is an issue that goes to the Government's burden at trial, not whether the SI sufficiently alleges a Travel Act charge under Section 1952(a)(3). The Court has already told Defendants that determining whether specific conduct alleged in the SI in fact qualifies as "unlawful activity" on a motion to dismiss is improper:

> Defendants' concern that each ad is not in fact connected to a business enterprise involving prostitution is premature at this stage.[] When considering the totality of the allegations, the Court finds that publishing an online ad in support of individuals seeking to repeatedly market themselves or others for sex could constitute a violation under the Act for facilitating a "business enterprise involving prostitution." **But whether these allegations in fact constitute a violation is not the question before the Court**. Rather, the question right now is whether the Travel Act elements are sufficiently alleged to fairly inform Defendants of their charges, not whether the Government has proven its case. *Buckley*, 689 F.2d at 897. The other question of whether facts support a finding of a "business enterprise involving prostitution" is reserved for the fact-finder, and jumping to pre-trial evidentiary conclusions concerning whether specific conduct in fact qualifies as "unlawful activity" is improper. *Jensen*, 93 F.3d at 669. Here, the Court merely concludes that the SI adequately alleges the necessary Travel Act elements and cannot be dismissed.

(Doc. 946 at 12–13) (emphasis added). Defendants encourage the Court not to defer on this question until trial. But it is improper for Defendants to "challenge an indictment, sufficient on its face, on the ground that the allegations are not supported by adequate evidence." *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (*quoting United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975)). The proper forum for challenging whether there is adequate evidence is at trial. *See id.* ("By basing its decision on evidence that should only have been presented at trial, the district court in effect granted summary judgment for the defendants. This it may not do."); *see also United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("Nor do the [criminal] rules provide for a pre-trial determination of sufficiency of the evidence."). And to the extent Defendants are asking the Court to rule on the properness of a proposed jury instruction, it also finds the request

- 11 -

premature. The Court has ordered the parties to submit their proposed jury instructions and it will consider those arguments in due course. For purposes of this Motion, the Court reaffirms the sufficiency of the Travel Act charges in the SI.

### 2. The SI alleges sufficient *mens rea* for the Travel Act charges

In arguing that the Travel Act charges should be pled as aiding and abetting charges, Defendants also seek to impose the requirement that the Government "prove, with respect to each charged ad . . . that Defendants intended to facilitate the commission of *that* specific [prostitution] offense." (Doc. 1557 at 10). The Court has already confirmed the appropriate *mens rea* standard under the Travel Act:

> [t]he Government's proposed *mens rea* standard, specific intent to promote or facilitate prostitution, is consistent with *Gibson*, *Tavelman*, and *Polizzi*—the Ninth Circuit cases discussing intent requirements of the Travel Act. The SI alleges the Defendants intentionally identified prostitutes, created free Backpage ads for them, and used those ads to try to secure future business. (SI ¶¶ 9, 36). They also helped known prostitution advertisers (Dollar Bill and P.R.) avoid their decency filters and attempted to "conceal the true nature of the ads being posted on" Backpage. (SI ¶¶ 11, 59–67, 132). Unlike the defendants in *Gibson*, where there was "no evidence . . . from which one could infer that the defendants associated with, participated in or sought to make succeed" the criminal venture, the SI meets *Gibson*'s test of requiring Defendants to in "some significant manner associate[]" themselves with the "criminal venture for the purpose of its advancement."

(Doc. 793 at 18). Relatedly, in their Reply, Defendants argue that Defendants' knowledge and intent of the prostitution offenses is "untethered" to the ads that form the basis of the charges, and that this "possibility" or "wish" of unlawful activity is simply not a crime. (Doc. 1585 at 4). The Court has also previously rejected this assertion and identified the many specific facts tethering Defendants' actions to their knowledge that posting the fifty ads would facilitate the business of prostitution. In its October 24, 2019, Order, the Court explained:

> Larkin regularly met with C.F. after the purported sale to discuss and direct the operation of Backpage. (SI ¶ 32). Larkin, Spear, Hyer, and C.F. attended meetings where the Dallas aggregation plan or the business relationship with TER was on the agenda. (SI ¶¶ 38–42, 47–48). Lacey sent Larkin a draft

- 12 -

> editorial arguing Backpage brought "the oldest profession in the world . . . transparency." (SI ¶ 137). Larkin reviewed the editorial, forwarded it to C.F., and instructed him to remove any references to editing posts. (SI ¶¶ 107–08). Padilla helped supervise Backpage's moderators. (SI ¶ 12). Larkin, Spear, and C.F. met to discuss trade with TER. (SI ¶ 47). C.F. sent Larkin, Spear, and Brunst a "Backpage strategic plan" that included "expand relationship with TER." (SI ¶ 49). Padilla emailed (with Vaught cc'd or as a recipient) Backpage's India-based moderators to tell them to be "more lenient." (SI. ¶¶ 93, 99). Padilla and Vaught were sent an email informing them that their credit card processing company expressed concern about prostitution ads. Vaught directed a moderator to not remove "sex for money" links from ads. (SI ¶ 139). Vaught received an email from a moderator indicating that Padilla said to allow "GFE" in ads. (SI ¶ 148). Larkin, Spear, Brunst, Hyer, and C.F. received an email in August 2013 notifying them that Chase Bank would no longer accept transactions from Backpage because of it "involvement in Human Trafficking." (SI ¶ 135). Larkin, Spear, C.F., and Brunst discussed strategies for fooling credit card companies into processing payments using shell companies. (SI ¶¶ 178–80).
>
> The alleged facts in the SI, taken as true, establish defendants had the specific intent to promote prostitution in violation of the Travel Act. They conspired together to do so. The conspiracy was successful and resulted in the fifty ads for prostitution that now make up fifty counts of violating the Travel Act.

(Doc. 793 at 19–20). Because the basis for Defendants' disagreement seems to be grounded in their selective reading of the SI, and not because the prior decisions on this issue were clearly erroneous, the Court reaffirms these rulings. *Easy Bay Sanctuary Covenant*, 950 F.3d at 1262. Under current Ninth Circuit law, the Court remains unpersuaded that a different *mens rea* is required for Section 1952(a)(3) Travel Act charges, and specifically, as Defendants propose, that the intent element "go to the specific and entire crime charged," as it must in an aiding and abetting charge. (Doc. 1557 at 10).

> **3.    The Travel Act counts are not unconstitutional as applied to the Defendants.**

Defendants' aiding and abetting argument is anchored to a position taken by the Government in *Woodhull Freedom Found'n v. United States*, Case No. 22-5105, a case pending before the D.C. Circuit Court of Appeals. *Woodhull* is a First Amendment pre-enforcement challenge to FOSTA. FOSTA proscribes managing certain computer services "with the intent to promote or facilitate the prostitution of another person." 18 U.S.C. §

- 13 -

2421A(a). In defending the constitutionality of FOSTA against claims that that statute is too vague and broad as to what conduct falls in its ambit, the Government has taken the position in *Woodhull* that the terms "promote" and "facilitate" in FOSTA mean the same thing as "aid and abet," and thus necessarily limit its scope. Defendants assert that unless the Court applies the same proposed narrowing construction to the Travel Act, "a law making it a crime to 'promote or facilitate' prostitution would be overbroad and vague in violation of the First and Fifth Amendments." (Doc. 1557 at 5).[7] Defendants say the Government's position in *Woodhull* "casts grave doubt on the indictment in this case." (*Id.*)

As an initial matter, this is not the first time that Defendants have invoked the Government's position in *Woodhull* to argue that the Travel Act charges here are deficiently pled or unconstitutional as applied to them. The Court previously declined to be bound by the Government's position in *Woodhull*, stating that "the previous statements made by the Government in other cases are not binding on the Court, not relevant to this prosecution, and, in any case, not inconsistent with the Government's current theory regarding the Travel Act." (Doc. 793 at 17–18). It expressly noted that the Government's representations related to "different statutes, the Fight Online Sex Trafficking Act and the SAVE Act 18 U.S.C. § 1591." (*Id.*) The Court continues to agree with its past statements, and the fact that the Government has reiterated the same position in a recent oral argument does not present cause to reconsider its decision. As Defendants acknowledge, there has been no opinion from the D.C. Circuit Court to suggest that court agrees with the Government's proposed interpretation of FOSTA and of course, this Court would not be bound by such a holding even if it had.

Moreover, and addressing the heart of why Defendants are invoking *Woodhull*, the Court also finds no reason to depart from its previous rulings that the Travel Act counts in

---

[7] Unlike FOSTA, which proscribes managing certain computer services in interstate commerce "with the intent to promote or facilitate the prostitution of another person," the Travel Act proscribes use of "the mail or any facility in interstate or foreign commerce, with intent to. . . otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." *Compare* 18 U.S.C. § 2421A(a) *with* 18 U.S.C. § 1952(a)(3).

- 14 -

the SI are not unconstitutionally vague or overbroad as applied to Defendants. The Court has already explained that the Travel Act is not overbroad as applied to Defendants because it "requires Defendants to have intended to facilitate prostitution, which is a crime. *See* A.R.S. § 13-3214. This limits its purview to criminal activity and distinguishes it from cases relied on by Defendants." (Doc. 793 at 20–22). The Court also explained

> the SI alleges Defendants used a website with the intent to facilitate prostitution (a criminal activity) and executed strategies to further and increase that activity. The Court cannot conclude that such a standard or the allegations in the SI do not give fair warning that facilitating a criminal act is itself a crime. As applied in the SI, the Travel Act is not unconstitutionally vague.

(*Id.*) Defendants' proposed narrowing construction is therefore neither necessary to rectify any constitutional deficiency here nor supported by applicable authority, and the Court declines to reconsider these positions.

Apart from the arguments the Government has advanced to support the constitutionality of other federal statutes not at issue here, Defendants have pointed to no authority supporting their contention that an SI alleging Travel Act charges is deficient because it does not allege the elements of aiding and abetting a crime. Neither the text of the Travel Act nor Ninth Circuit case law require as much. In this case, as the Court has found several times, for each of the fifty ads, the SI sufficiently alleges all the required elements of a Travel Act charge.

Finally, as the Government points out, and Defendants concede (Doc. 1585 at 7), even if a Travel Act charge could be considered an aiding and abetting offense, an aiding and abetting charge is implied in every federal indictment for a substantive offense and would also resolve any pleading deficiency in that regard. *United States v. Armstrong*, 909 F.2d 1238, 1241 (9th Cir. 1990). *See also United States v. Vaandering*, 50 F.3d 696, 702 (9th Cir. 1995) (noting that an aiding and abetting instruction is proper even when the indictment does not specifically charge that theory of liability). In their Reply, Defendants briefly argue that this rule should only apply when a defendant is indicted as a principal of a substantive federal offense. (Doc. 1585 at 7). They say that when defendants are

"promotor[s] of someone else's offense," it must allege all the elements of an aiding and abetting offense or is deficient. (*Id.*) But Defendants neither cite to relevant case law[8] supporting this proposition nor otherwise explain why this rule would not apply to persons charged as "facilitators" of another's offense, as here. *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005) (explaining that aiding and abetting is not a separate and distinct offense from the underlying substantive crime but is a different theory of liability for the same offense).

**B.   There is No Cause to Reconsider the Court's Prior Rulings Regarding Double Jeopardy or the Independence of the Money Laundry Counts.**

**Double Jeopardy.** Defendants again argue that Government's failure to allege the essential elements of the Travel Act warrant dismissal on the grounds that double jeopardy would not prevent the Government from "simply slotting in fifty more of the millions of Backpage.com ads, also without any allegation of aiding and abetting as to those specific ads and any underlying prostitution offenses." (Doc. 1557 at 18). But the Court has previously found that these counts are plead in a manner that provides notice to Defendants of the charges being brought against them and allows them to defend against those particular charges. (*See* Doc. 946 at 12–13). This includes specifically alleging which ads form the basis of each of the fifty counts. (*Id.* at 13 (rejecting claim that SI improperly indicts Defendants for facilitating the amorphous notion of prostitution: "They were indicted for facilitating via publishing ads) on fifty distinct occasions where prostitutes, prostitution-related businesses, or other groups were involved in the business of

---

[8] In passing, Defendants cite to *United States v. Superior Growers*, 982 F.2d 173 (6th Cir. 1992), but *Superior Growers* does not stand for the proposition that an aiding and abetting charge is only implied in a indictment for a principal offender. *Superior Growers* found that an indictment for "conspiracy to aid and abet the manufacture of marijuana" in violation of 21 U.S.C. §§ 846 and 841(a)(1) and 18 U.S.C. § 2 was deficient when it failed to allege facts showing that defendants knew their customers were manufacturing or planning to manufacture marijuana. *Id.* at 178 ("It seems to us then that in order to conspire or agree to assist "X" in the manufacture of marijuana, "Y and Z" have to know that "X" is manufacturing marijuana or planning to. Otherwise, all "Y and Z" are agreeing to do is to aid and abet a "possibility," or a "criminal wish"; which simply isn't a crime"). The case is distinguishable both on the grounds that (1) the defendants there were charged under the federal aiding and abetting statute with conspiracy to aid and abet the manufacture of marijuana; and (2) unlike the allegations in that case, the SI here is replete with allegations showing that Defendants knew they were facilitating the promotion of prostitution. (*See* Doc. 793 at 19–20).

prostitution"). Defendants would therefore be able to raise a double jeopardy defense if the Government tried to "slot[] in fifty more" ads. This is not sufficient reason to dismiss the SI.

**Money Laundering Counts.** Defendants contend that the Court's prior Order ruling that the money laundering counts could stand even if the Travel Act counts were dismissed is clearly erroneous. (Doc. 1557 at 18). Defendants argue that because "the government has not alleged an underlying crime, [] Defendants cannot be liable for laundering money that was not 'criminally derived.' 18 U.S.C. § 1957(a). The money laundering charges premised entirely on those underlying crimes cannot stand once the Travel Act foundation crumbles." (*Id.*) The Court disagrees. Defendants can be convicted for money laundering without being found guilty for the activity that generated the laundered money – there are other elements aside from the unlawful business activity that the Government may fail to prove at trial that would render acquittals of Defendants on these counts. Moreover, per this Order, the Travel Act "foundation" has not crumbled; even if the law was otherwise, the Travel Acts alleged in the SI are not deficient.

**C.     The Court Does Not Find Cause to Review Instructions to the Grand Jury.**

Finally, Defendants argue that the SI should be dismissed if the instructions provided to the grand jury were erroneous regarding the elements of the Travel Act. (Doc. 1557 at 19). Defendants say that given the Government's position that it need not prove an underlying unlawful activity was committed by someone else, they assume the grand jury was improperly instructed. The Court disagrees with Defendants that a grand jury need be provided with the elements of an aiding and abetting charge to have properly indicted Defendants. As stated herein, the elements of a Travel Act offense are threefold: "interstate commerce or use of an interstate facility (2) with intent to promote an unlawful activity and (3) a subsequent overt act in furtherance of that unlawful activity." *Tavelman*, 650 F.2d at 1138. As such, the Court does not find cause to perform an *in camera* review of the grand jury instructions to see if they were instructed on the elements of aiding and abetting.

V. Conclusion

For the foregoing reasons, the Court again finds the SI is not constitutionally deficient. Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 1557) is **denied.**

Dated this 31st day of May, 2023.

_____
Honorable Diane J. Humetewa
United States District Judge