**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | No. 2:18-cr-00422-DJH |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | July 27, 2023 |
| Michael Lacey, et al. | ) | 1:04 p.m. |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**BEFORE:  THE HONORABLE DIANE J. HUMETEWA, JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**FINAL PRETRIAL CONFERENCE**

Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                        A P P E A R A N C E S

 2

 3   For the Government:

 4        U.S. ATTORNEY'S OFFICE
          By:  Mr. Kevin M. Rapp, Esq.
 5        Mr. Peter S. Kozinets, Esq.
          Mr. Andrew C. Stone, Esq.
 6        Ms. Margaret Wu Perlmeter, Esq.
          40 North Central Avenue, Suite 1200
 7        Phoenix, Arizona 85004
          kevin.rapp@usdoj.gov
 8        peter.kozinets@usdoj.gov
          andrew.stone@usdoj.gov
 9        margaret.perlmeter@usdoj.gov

10

11   For the Defendant Michael Lacey:

12        LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
          By:  Mr. Paul J. Cambria, Jr., Esq.
13        42 Delaware Avenue, Suite 120
          Buffalo, NY 14202
14        pcambria@lglaw.com

15   For the Defendant James Larkin:

16        OSBORN MALEDON, PA - Phoenix, AZ
          By:  Mr. Timothy J. Eckstein, Esq.
17        Mr. Joseph Nathaniel Roth, Esq.
          Ms. Sarah Pook Lawson, Esq.
18        P.O. Box 36379
          Phoenix, AZ 85067-6379
19        teckstein@omlaw.com
          jroth@omlaw.com
20        slawson@omlaw.com

21

22

23

24

25
```

```
1    For the Defendant Scott Spear:

2        FEDER LAW OFFICE, P.A.
         By:  Mr. Bruce S. Feder, Esq.
3        2930 East Camelback Road, Suite 160
         Phoenix, AZ 85016
4        bf@federlawpa.com

5
         KESSLER LAW OFFICE
6        By:  Mr. Eric Walter Kessler, Esq.
         6720 N. Scottsdale Road, Suite 210
7        Scottsdale, AZ 85253
         eric.kesslerlaw@gmail.com
8

9
    For the Defendant John Brunst:
10
         BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
11       LINCENBERG & RHOW, P.C.
         By:  Mr. Gopi K. Panchapakesan, Esq.
12       Mr. Gary S. Lincenberg, Esq.
         1875 Century Park E, Suite 2300
13       Los Angeles, CA 90067
         gpanchapakesan@birdmarella.com
14       glincenberg@birdmarella.com

15

16   For the Defendant Andrew Padilla:

17       DAVID EISENBERG, P.L.C.
         By:  Mr. David S. Eisenberg, Esq.
18       3550 North Central Avenue, Suite 1155
         Phoenix, AZ 85012
19       david@deisenbergplc.com
         Defendant Andrew Padilla - Appears by telephone
20

21   For the Defendant Joye Vaught:

22       JOY BERTRAND, ESQ., L.L.C.
         By:  Ms. Joy M. Bertrand, Esq.
23       P.O. Box 2734
         Scottsdale, AZ 85252
24       joy@joybertrandlaw.com
         Defendant Joye Vaught - Appears by telephone
25
```

UNITED STATES DISTRICT COURT

1                    **P R O C E E D I N G S**

2

3        (Proceedings commence at 1:04 p.m.)

4              THE COURT:  Please be seated.

5              COURTROOM DEPUTY:  This is case number CR 18-422,

6    United States of America vs. Lacey and others, on for Final

7    Pretrial Conference.

8              Counsel, please announce for the record.

9              MS. PERLMETER:  Good afternoon, Your Honor, Peggy

10   Perlmeter, Austin Berry, Kevin Rapp, Andrew Stone and

11   Peter Kozinets on behalf of the United States.

12             THE COURT:  I'm going to remind counsel, because we're

13   in this large courtroom, do your very best to speak into the

14   microphone.  Bring that microphone as close to you as possible.

15   That is for the purposes of our court reporter as well as

16   counsel who are on the other side of the room, so thank you.

17             Ms. Perlmeter.

18             MR. BERRY:  Your Honor, in doing that, it may be

19   easier for us to sometimes sit down, does the Court want us

20   standing every time we speak?

21             THE COURT:  Well, hopefully for this, for today's

22   purposes I think that's fine, but going forward in the trial

23   you will all be speaking from the podium, and so let's proceed.

24             MR. CAMBRIA:  Good afternoon, Your Honor, Paul Cambria

25   on behalf of Michael Lacey who is present.

```
1              MR. ECKSTEIN:  Good afternoon.  Tim Eckstein, Joe Roth
2    and Sara Lawson on behalf of James Larkin, who is present.
3              MR. FEDER:  Bruce Feder for Mr. Spear, who is present.
4              THE COURT:  Good afternoon.
5              MR. LINCENBERG:  Your Honor, Gary Lincenberg and
6    Gopi Panchapakesan for Mr. Brunst, who is present.
7              MR. EISENBERG:  Good afternoon, Your Honor,
8    David Eisenberg on behalf of Andrew Padilla.  He is present by
9    telephone.  Thank you.
10             THE COURT:  And good afternoon.
11             MS. BERTRAND:  Good afternoon, Your Honor,
12   Joye Bertrand appears for Joye Vaught.  She appears by phone.
13   Thank you for allowing her to appear by phone.
14             THE COURT:  Thank you.  And good afternoon to
15   everyone.
16             Let me determine, Mr. Padilla, can you hear the
17   proceedings?  Mr. Padilla, we are going to try to see if we can
18   pipe you in just for this purpose.  I want to make sure that
19   you are able to hear the proceedings.
20             MR. PADILLA:  Yes, I can.
21             THE COURT:  Thank you.  Ms. Vaught, can you hear the
22   proceedings?
23             MS. VAUGHT:  Yes, I can.
24             THE COURT:  Thank you.  We are going to silence you at
25   the present time.
```

UNITED STATES DISTRICT COURT

1          All right.  We are here on the parties' Final Pretrial

2    Conference.  Let me begin by first confirming the trial

3    schedule, and obviously we are here in the Special Proceedings

4    Courtroom because our Clerk of Court, our security and all of

5    the powers that be determined that this was the better course

6    for the number of parties, counsel, and so we have determined

7    to hold court here.  And so our trial schedule remains

8    unchanged.

9          There is one minor change.  We will be in trial

10   August 8th through November the 3rd.  We do have the one week

11   recess the first week of October.  We are in half day sessions

12   on the Fridays of the weeks that we are in trial.  There will

13   be no trial on Friday September the 29th, and that is due to

14   the necessity to use this Special Proceedings Courtroom for an

15   investiture ceremony for our most recent magistrate judge, so

16   they will need all day to set up the room for those purposes.

17   We will let you know in advance where you can store your boxes

18   and so on in advance of that and when you can bring them in

19   after that ceremony.

20         There is a GSA conference room in the corner behind

21   the Special Proceedings Courtroom on this floor.

22         Liliana, do you recall the number of that conference

23   room?

24         We will get you the precise conference room number.

25   It is in the corner.  It is a GSA conference room, and Liliana

will have the ability to unlock that room.  That will be for

defense counsel.  I'm told, however, that the room will remain

unlocked and so you are not to store any sort of private or

valuable items in that room.

Of course, for the purposes of your witnesses, we have

the witness rooms on either side behind the double doors there.

The trial schedule, Tuesdays through Fridays, begin

promptly at 9:00, and counsel are to be here and ready to

proceed before then.  Counsel who wish to meet with the court

or raise issues should advise Liliana either the night prior or

the morning of and we will take up any matters at 8:30 or 8:15

depending on what the matter is, or at 4:30.

I generally, depending on how the trial is proceeding

and how witnesses are being presented, if it looks like it's

going to be a natural stop off point at 4:45, I will go through

4:45 on the trial days, but otherwise I plan to let the jury go

about 4:30.  Are there any issues with regard to the trial

schedule?

MR. LINCENBERG:  Yes, Your Honor, may I briefly be

heard?

THE COURT:  Yes.  Please come forward.

MR. LINCENBERG:  Your Honor, Gary Lincenberg, counsel

for Mr. Brunst.  Your Honor, several months ago the Court had

asked counsel to meet and confer about potentially starting the

trial, back then we were talking about the winter or early

1    spring --

2              THE COURT:  Can you speak into the microphone?  It

3    seems to be a little bit more distant, I guess, or just bring

4    it up to you.

5              MR. LINCENBERG:  Can I bring this over?

6              THE COURT:  Yes, you can try to bring that over.

7              MR. LINCENBERG:  Is that better?

8              THE COURT:  Yes.

9              MR. LINCENBERG:  When the Court initially set trial

10   schedules, the Court asked counsel what their conflicts were

11   and so forth, a lot of different lawyers, a lot of different

12   conflicts, and there were no dates that seemed to fit for trial

13   that was going to then take place in March or April.  We were

14   prepared to go then.  The Court then said:  Well, I am going to

15   set the trial for June.  It was later changed to August.  At

16   that time I then filed with the Court a notice of conflict, and

17   the conflict was it affects the trial days of September 6, 7, 8

18   and 12 with a prepaid vacation that I take every year that we

19   set well in advance when our schedules of 24 different people

20   on this vacation are cleared, and I submitted that to the

21   Court, and the Court never ruled on it or responded to it.  I

22   took that as the Court indicating that the Court was not going

23   to grant deference to that request that we not be in trial

24   those days.

25              In the meantime, I also spoke to government's counsel

1    and I said to government counsel, I said:  Look, we can make

2    these dates work.  I have a partner who is co-trying the case

3    with me.  He can be here on those days so the Court doesn't

4    lose those days so long as the government's main witness

5    Carl Ferrer is not called during that time period.

6              THE COURT:  Mr. Lincenberg, I seem to recall this

7    conversation with the Court.  It sounds familiar to me.

8              MR. LINCENBERG:  I don't recall raising that at a

9    previous hearing.

10             THE COURT:  I think you did.

11             MR. LINCENBERG:  Well, just to complete the one

12   sentence, government counsel said they anticipated calling

13   Mr. Ferrer in August.  It shouldn't be a problem, but they

14   wouldn't give us any guarantees on that.  And so I wanted to

15   re-register our objection.  This also --

16             THE COURT:  What is the objection specifically to,

17   them calling Mr. Ferrer or the Court's trial schedule?

18             MR. LINCENBERG:  The objection is to the Court's trial

19   schedule so long as -- having Mr. Ferrer testify during those

20   dates.  We can -- we can certainly live with the Court's

21   schedule if --

22             THE COURT:  I'm not going to change the schedule at

23   this juncture for all of the reasons that I stated previously.

24   I'm very much aware of your annual trip.  I've been made aware

25   of that a couple of times.

1          Mr. Rapp, I am sure, will work very diligently to work

2     around your schedule for that purpose, but to the extent for

3     whatever reason there's a compelling reason that his witness

4     has to appear on those three days that you're gone, you have

5     co-counsel who has been here at every proceeding, certainly is

6     able, and so on that basis I'm going to deny any sort of motion

7     that you have now made, or objection is overruled.  I

8     appreciate it.

9          MR. LINCENBERG:  Thank you, Your Honor.

10         MR. ECKSTEIN:  And I understand the Court is not going

11    to move the schedule, but I'd like to make a record on reurging

12    our Motion to Continue the trial, which is filed at 1526.  We

13    filed it on March 9th; it was argued on March 20th, at which

14    time we asked the Court to extend the June 20th trial date for

15    six months to December 20th.  As we explained in writing and in

16    argument, extraordinary circumstances warranted that request to

17    solve the problem of not having sufficient time to prepare.

18         As the Court will recall, the government disclosed

19    178,000 documents totaling nearly 5 million pages.  We have

20    been unable, because of time constraints, to review the vast

21    majority of those to assess impeachment or exculpatory

22    information.  The only reason we haven't done it is a lack of

23    time.  We can't possibly know what we've missed that may be

24    critical to the representation of James Larkin.

25         We further haven't been able to conduct any

1    meaningfully independent follow-up investigation from review of

2    those documents, including identification and disclosure of

3    relevant witnesses and other documents.

4          Finally, the government seized Backpage's servers,

5    reviewed hundreds of terabits of data and purported to

6    reproduce some of that data to prove what was on the website at

7    a particular time and particular date.  The government then

8    destroyed those servers.  With additional time, we would have

9    retained an expert to review the government's analysis.  As it

10    is, we're stuck with what the government did.

11          So we are now reurging that motion to include the

12    seven-week continuance the Court ended up granting at Docket

13    No. 1546 to again continue the trial to December 20th.  I'm not

14    going to repeat the entirety of the argument we made in March.

15    I will just note following points:

16          We have been preparing diligently for trial.  We've

17    reviewed, analyzed and organized the government's now over 2000

18    trial exhibits containing more than 19,000 documents.  It's

19    taken months of work just to do this.  We haven't been able, as

20    I said before, to engage in any sort of detailed review beyond

21    those documents.  The Courts reviewed and analyzed the 1645,

22    probably now in excess of that, docket entries, we briefed a

23    substantive Motion to Dismiss and Motion for Reconsideration on

24    that, and engaged in trial preparation, substantial work

25    involving pretrial filings, including 194 pages of proposed

1   jury instructions, motions in limine, responses, other

2   case-related documents, prepared openings, cross-examinations,

3   and the response to the government's trial brief.

4          So one issue that came up in the briefing and in

5   argument with the Court is the Court's observation that we

6   weren't starting from a blank slate.  So I explained in

7   argument that although we have the benefit of some work done by

8   predecessor counsel for Mr. Larkin, and some help with having

9   five codefendants, we were effectively starting off from

10  scratch in terms of our understanding of the relevant case law,

11  some of which has evolved over the last six months, and more

12  relevant the time consuming review, analysis and organization

13  of the relevant facts and evidence, which was truly starting at

14  zero for us.

15         I offered in March to explain in camera the particular

16  flaws in that assumption that rendered unreasonable or that

17  rendered reasonable our request for a six-month extension.  The

18  Court declined that offer.  I will make it once again.  I don't

19  want the Court to go into this with -- I don't -- I want to go

20  into privileged matters and I don't want the Court to

21  misunderstand what I'm saying or --

22         THE REPORTER:  I'm sorry, can you slow down?

23         MR. ECKSTEIN:  I'm sorry.

24         I want to make clear, we are not asking for a

25  continuance because we have not been diligently preparing.

1    We're asking for it so James Larkin will have constitutionally-

2    prepared counsel.

3             So the case law requires a continuance will serve a

4    useful purpose to ensure that James Larkin has constitutionally

5    adequate trial counsel.  That any inconvenience caused by a

6    continuance would be minimal relative to the challenges to

7    Mr. Larkin should this request be denied.  We appreciate the

8    Court and parties have done substantial work to get to this

9    point.  This work having been done need not be done again

10   except for the specific work related to jury selection.  And we

11   know it's not ideal, but it would be, relative to the

12   substantial inconvenience, for us to come back and pick up four

13   months from now to the harm done to Mr. Larkin.

14            And that's the most important factor, and he will

15   suffer harm and prejudice should this request be denied.  For

16   counsel to have to go into a trial of this length and this

17   substance with a total inability to review and prepare

18   documents beyond the trial exhibits identified and listed by

19   the government.

20            MR. KESSLER:  Your Honor, Eric Kessler for -- Eric

21   Kessler for Mr. Spear.

22            THE COURT:  Yes.

23            MR. KESSLER:  I join in that motion.  I was assigned

24   this matter at about the same time Mr. Eckstein's firm was, and

25   I make the same request for the same reasons.

1           THE COURT:  Does anyone else wish to make a statement?

2           All right.  Who wishes to respond from the government,

3    or is there a response that the government wishes to make?

4           MR. RAPP:  Judge, we will submit on our response when

5    the previous motion was made.

6           THE COURT:  Well, Mr. Eckstein, I appreciate the

7    advocacy and the argument, but the Court's prior order

8    thoroughly covered a number of the issues that you've raised.

9    The only issue that you raised that might be a little bit

10   different is the change in volume and nature of the exhibits,

11   which I don't anticipate are substantially different, at least

12   not to my knowledge.

13          The -- as parties well know, these individuals who are

14   on trial have been charged since 2018.  Many of the counsel who

15   began representing them are the same counsel that continue to

16   represent them today.  There have been, of course, changes.

17   Mr. Kessler has joined Mr. Feder.  Mr. Feder remains on the

18   case.  He was the original attorney.  I covered that in my

19   order denying the Motion to Continue in part.  I granted some

20   weeks of a continuance with the understanding that all defense

21   counsel, as proffered and commented to the Court at the prior

22   hearing, indicated that they had all shared in various duties

23   and responsibilities to the extent that they could, and so I

24   don't find the necessity at this juncture to grant a

25   continuance, especially given all of the work that not only the

1    parties have put into this, but the Court, and because these

2    individuals have been pending this upcoming day since 2018.

3            So I will again base my ruling on the prior order, and

4    but you have made a record, Mr. Eckstein.  Okay.  Thank you.

5            Now, let me move forward on to jury selection.  And

6    it's very important that counsel, all counsel and the

7    defendants who are here, and family members or interested

8    parties understand this, this space is only to be used for the

9    jury panel during voir dire; in other words, we don't have

10   extra space for anyone other than trial counsel, the named

11   defendants, and this includes any paralegals, family members

12   and so on, are to view, if they wish to view the voir dire

13   process, they should do it from on top of the -- I don't know

14   what you call that -- the ledge, the viewing area, and that is

15   because we will likely have to seat at least 95 to 100

16   individuals in the jury box and in the public seating area.

17           So family members, media, paralegals may all view from

18   the viewing area during voir dire.

19           Now, I think I reiterated or iterated this before at

20   some point, but let me go through the process.  I will voir

21   dire the entire panel.  As in the prior trial, reviewing the

22   prior Court's order, we will seat 16 jurors, that's pursuant to

23   her minute entry on August the 9th of 2021.  And once I've

24   completed my voir dire process, then counsel will be permitted

25   to probe further any advances to the Court's questions.  This

1   is not an opportunity to argue your case, it's not an

2   opportunity to probe deeper or further into nonrelated areas,

3   and jurors will be, I think I mentioned, they will be seated in

4   the public area as well.  We have about 18 chairs that are in

5   the jury box.  We might be able to fit an additional chair in

6   the jury box.

7           I do not excuse jurors during the voir dire process.

8   They all sit and listen to one another.  I will excuse the

9   jurors if individual jurors have indicated the necessity to

10  talk to the Court and counsel in private as to responses to

11  questions.  Once all of that is completed, I will then excuse

12  the entire panel.  And because of the size of the panel and the

13  number of jurors that we are seated, seating, that will

14  probably take about an hour to two hours long, so that will

15  permit you to review those responses for additional cause and

16  potential hardship strikes.

17          I understand, and I will adhere to the strikes, there

18  are nine for the government, 15 for defense.  I conduct these

19  proceedings simultaneously and secretly.  Once you have made

20  your strike determinations, you will give those determinations

21  to Liliana, she will put together a list, have it reviewed by

22  counsel and the Court.  Once that occurs we will have built in

23  time to hear any other challenges through that process, Batson

24  challenges or any other challenges that counsel may make.  That

25  then should give us a determination of who those jurors are to

1    be seated.  It's going to be a bit tricky, but we'll have all

2    of the jurors back in and we'll have to figure out a seating

3    process because we'll have the jury area vacant and then we

4    will seat the jurors who will hear this case.

5            As I mentioned, we will go through your stipulated

6    strikes for hardship and whittle down what we can, and I can

7    entertain some of the cause identifications in the jury

8    questionnaires.

9            The Court will pick the alternate jurors at the end of

10   the trial before they are sent back to deliberate, and it will

11   be by random draw.

12           In terms of jury instructions, I do instruct the jury

13   before counsel's closing argument and I will adhere to that

14   process.  Jurors will have notebooks, but I do not permit

15   jurors to ask questions.

16           I will take up the stipulated hardship agreements

17   toward the end of this proceeding, and then we'll have you make

18   a record on the cause issues as well, so I will move back to

19   that.  And just so you know, I tend to, I'll go about another

20   45 minutes and give everyone a break because it is a long time

21   to be sitting.

22           I -- there are only a couple additional voir dire

23   questions that the Court will ask.  And frankly, in looking at

24   my standard questions, they've all been covered in the

25   questionnaire, so I think the focus of the inquiry will be on

1    those questions that we've had substantive responses to because

2    they have all indicated, you know, their prior employment,

3    where they previously worked and so on and so forth, and some

4    of the standard questions that go into the Court's probing and

5    in criminal trials, and so I don't anticipate anything new or

6    unusual.

7         I do know that I will need to have your exhibit list,

8    and I think the final pretrial.  The order setting this

9    conference indicates that you should have to Liliana and the

10   Court the precise witness list that you are going to use.  I'm

11   going to use that during the voir dire process to screen for

12   any familiarity of those individuals and so I will need that

13   sooner rather than later.

14        In the statement of the case, you both submitted in

15   essence three statements.  I'd say the first statement was part

16   of the jury screening questionnaire, and then you both sent in

17   modified statements of the case.  Well, I took the liberty to

18   modify those submissions and you should have before you what I

19   intend to read to the jury.  And so if you have an objection --

20   and just so you have it logged on your calendar, if there are

21   substantive objections or arguments to be heard that are going

22   to be more detailed that you wish to have some time to reflect

23   on, I've built some time into my calendar on Friday August 4th

24   in the afternoon to have you come in and do that, but otherwise

25   you have the statement of the case that I intend to use at the

1    outset of the jury selection process, and you can take a look

2    at that, and I ask you to compare it to the statement on the

3    jury questionnaire and the submissions that you both made to

4    the Court, and so I tried to marry the two and not to make it

5    too complex or confusing.

6            MR. LINCENBERG:  Your Honor, Gary Lincenberg.  Is the

7    Court inviting comment on the statement of the case now or

8    later?

9            THE COURT:  Well, I think you can do it later.  And

10   like I said, I ask you to read that and compare it to what we

11   provided to the potential jury, compare it to what the

12   government submitted to the Court, compare it to what the

13   defense submitted to the Court.  I think I created a happy

14   medium there, and so if you disagree for some substantive

15   reason, then I can hear those arguments.  Like I said, I set

16   aside some time to do that on Friday August 4th.

17           MR. LINCENBERG:  What time?

18           THE COURT:  Well, I have all afternoon, but 1:00 to

19   3:00 o'clock.  And here's what we'll do:  At the conclusion of

20   this hearing, you'll know whether or not you want to raise

21   something, but by Wednesday of that -- of that week you're to

22   submit to my Court the issues that you wish to raise, and then

23   I can block out sufficient time for you, and I will let you

24   know what the window of time would be, but generally 1:00 to

25   3:00 o'clock.

1            Now, let me go to the motions in limine.  You have my

2      order on the motions in limine.  After I -- let me tell you how

3      I intend to proceed.  I am going to review those that were

4      unresolved, and then I'm going to move to the jury

5      instructions, and you have copies of the Court's approved jury

6      instructions at your table.

7            So let me move to the unresolved motions in limine.

8      By my count they are government's motion 1592, 1598 and 1600.

9      The government filed their Motion to Preclude the Defense From

10     Arguing the Legality of the Ads, and the defense has responded

11     at Document 1612.  And upon further review, unless there is

12     something more that you wish to add, Mr. Rapp, I'm prepared to

13     rule.

14            MR. BERRY:  This is Austin Berry.  Sorry.  Pleasure to

15     be in front of you for the first time.  I will be arguing

16     anything to do with these three motions in limine.  Happy to

17     answer any questions the Court has about these, but we don't

18     have anything additional to add to what we filed.

19            THE COURT:  Did everyone hear him?

20            MR. CAMBRIA:  No, I did not.

21            THE COURT:  Okay.  Anything more that defense wishes

22     to add, anyone from the defense side?

23            All right.  Now here, I will just say at the outset on

24     reviewing the motion, I think the crux of the argument is that

25     defense can't proclaim the ads are legal, but the defendants

Case 2:18-cr-00422-DJH   Document 1691   Filed 08/03/23   Page 21 of 164

21

1    say the ads are legal, and it's the government's burden to show

2    that they are related or veiled ads to promote prostitution,

3    and I think that's at the heart of the case.

4         And so at the outset, it's the government's burden to

5    show that they are purported to be what you say they are.  And

6    so in that, in that way, I think the defendants can state that

7    it's the government's burden to show that these are illegal

8    ads.

9         Now, the manner in which you say that can become

10   problematic if it starts to look like you are stating legal

11   conclusions to the jury, and so I would just caution you that

12   you be very careful in how you present the statement.  And as I

13   pointed out in the order on the motions in limine, that at

14   least in my view, and I read the transcript of both opening

15   arguments, or all opening arguments, I should say, and they

16   really did go beyond the bounds of what opening arguments are.

17        Opening arguments are simple roadmaps of what the

18   government intends to prove, the type of witnesses and the

19   exhibits they intend to show to prove those points, and the

20   defense is entitled to present their theory of the case and why

21   it is that the government will not meet its burden.  But going

22   beyond that, I do think you will run into some problems.  And

23   of course, the Court will admonish the jury that your opening

24   statements are not essentially evidence, and so I think the

25   risk you run here is if you promise too much or if you build up

1    some expectation, that to me is where you get into a little bit

2    of a concerning spot with these jurors.

3            My experience is these jurors are very -- once they

4    have been selected, they are very attentive, and they will pay

5    close attention to what you say and how you conduct the trial,

6    so I do ask you to be very mindful of that.

7            That said, that leads me to the defendant's motion at

8    1598, and this is the Motion in Limine to Preclude the Defense

9    from Commenting on the Legitimacy of the Prosecution.  The

10   defense has responded at Document 1614.  And does the

11   government wish to be further heard?

12           MR. BERRY:  Your Honor, only thing I would say on this

13   one -- I'll speak into the microphone a little bit better.

14   This was a very specific statement that was made in the opening

15   statement where the defense attorney says, "When you have the

16   law and the facts on your side, you go to civil court.  When

17   you don't, you take people's money so that they can't defend

18   themselves and you bring a criminal charge."

19           We believe that just as Your Honor has ruled a moment

20   ago about sort of going outside the bounds of what's an

21   appropriate opening statement, we think that that gets too much

22   into, goes far beyond those bounds, goes far beyond the bounds

23   in the sense that it talks about the seizure of assets, which I

24   don't believe should be in front of the jury prior to the

25   forfeiture issue in this case.  And so arguing or making a

1    statement to the jury in opening statements that the government

2    seized all our assets, and that that somehow is a factor that

3    they should consider in the case, we don't believe that that is

4    correct.

5           The second part of that is commenting on the

6    difference between a civil and a criminal charge and the

7    legitimacy of whether you bring a case in civil under a civil

8    complaint or a criminal prosecution is also outside the bounds

9    that Your Honor was just outlining.

10          THE COURT:  Does anyone wish to respond from defense?

11          MS. BERTRAND:  Your Honor, I am the person -- I am the

12   person who wrote the response, so I'll start.  It was -- it's

13   still not clear as I stand here today if the government meant

14   to limit its motion to just those two statements and topics or

15   if this is a prior motion to preclude us from commenting on the

16   legitimacy of this prosecution, which to me under -- that's

17   what Sixth Amendment does for a defendant.  We get to get up

18   and say:  It's not -- they can't prove it.  It's -- it's

19   improper, whatever it is.

20          With regards to the forfeiture, that's an inherent

21   part of this criminal matter, and it does go -- intent goes

22   both ways.  Intent is relevant, motive is relevant, and that

23   includes the government's motive here.  They seized, what,

24   $500 million in assets.  That's relevant as to what's really

25   behind this prosecution.  And I don't think we have to belabor

1    it, but you know, this is also intertwined with all the money

2    laundering charges that the government seeks.  So I don't think

3    it is irrelevant.  I think it is part and parcel to this

4    prosecution.

5           Regarding the civil versus criminal, first of all, we

6    are going to have jurors who have sat on civil trials and

7    criminal trials.  It's imperative that a juror that previously

8    sat on a civil trial understands this is a higher burden of

9    proof from a preponderance of the evidence.  And again, this is

10   about choice points that the government has had in this case

11   and made.  So I think if the Court wants to say to the defense:

12   Hey, you can mention it, but don't make it your primary

13   defense, I think all of us would be comfortable with that, but

14   to just preclude us from even mentioning it when it's a huge

15   part of this case is improper.  And like I said, really it gets

16   into First Amendment, Fifth Amendment and Sixth Amendment

17   concerns

18           THE COURT:  Anyone else?

19           MR. FEDER:  Judge, it's black-letter law that the

20   defense can challenge the good faith of a prosecution, and

21   that's in the *Kyles vs. Whitley* Supreme Court case and other

22   cases.

23           Similarly, part of this case Mr. Ferrer was allowed to

24   keep the money that the government is claiming is criminal

25   proceeds, and he's been able to pay his lawyers with that

1    money, and that's a -- that's an essential part of this case.

2    To preclude cross-examination and therefore opening statements

3    on that issue is to cut the heart out of the defense and

4    prevent us from presenting a defense, which is improper.

5              This is not a civil case where everybody gets kind of

6    the same rules.  I mean, the constitution and the law, the

7    cases that interpret that is very clear that because we're the

8    ones that may go to prison, we have a lot of leeway, and that

9    the Court, any kind of intervention in blocking the defense

10   from presenting their -- their defense is improper.

11             So this would interfere with cross-examination and it

12   would be in some fashion be kind of fraudulent way of trying to

13   present a case.

14             MR. BERRY:  If I could respond to that, Your Honor.

15             THE COURT:  Let me see, I think Mr. Cambria was --

16             MR. CAMBRIA:  Thank you.  Your Honor, we were given

17   the proposed jury instructions today and, of course, they are

18   voluminous and a number of cases have been cited and so on.  So

19   I am not in a position, I don't think anyone else is either, to

20   intelligently comment on those, but one thing that seems to be

21   going through this whole case on the government's side is that

22   they do not want to confront the fact that it's a First

23   Amendment case.

24             And I am wondering at some point today, are you going

25   to entertain our arguments, if you will, as to why there should

1    be instructions with regard to the First Amendment?  To say

2    that a case involving the publication --

3             THE COURT:  Let me stop you there, Mr. Cambria.  I

4    have included a First Amendment instruction in that pile that's

5    before you.

6             MR. CAMBRIA:  As I say, I haven't been able to read

7    all those and pay attention at the same time, so I will look at

8    those and we'll see, but I think that at some point, if

9    possible, I'd like to make connection with that.  I will read

10   that for sure.  Thank you.

11            THE COURT:  Anyone else?  All right.  Mr. Berry.

12            MR. BERRY:  My response, I think we can simplify this

13   a little bit.  We are not trying to preclude them from

14   cross-examining Mr. Ferrer about any kind of bias or reason

15   that he might have to testify.  So going into any of that sort

16   of thing in terms of what was seized and what was allowed to

17   stay with you, what wasn't, all fair ground.  That's a

18   completely legitimate basis for cross-examination in the

19   general sense of it.  That's not what this is asking.

20            What this is asking is for them not to be allowed to

21   say in front of the jury, "They seized all our assets, and they

22   did it so that we couldn't defend ourselves."  That suggests

23   that they are not having adequate representation, which would

24   be an argument to the jury that would be one based upon

25   nullification and widely improper 'cause we don't believe that

1    they should be able to make that kind of argument.

2          At the same time, this statement here, "When you have

3    the law and the facts on your side, you go to civil court"

4    suggests that there is some more legitimate forum than a

5    criminal prosecution, and that the fact that we are in a

6    criminal prosecution suggests that we don't have the law and

7    the facts on our side.  They can criticize our interpretation

8    of the facts, they can certainly cross-examine our witnesses,

9    talk about our inferences and make those types of arguments

10   about factual inaccuracies, which they mentioned, but this

11   notion of government overreach, that is language of

12   nullification, quite frankly.

13         And talking about what is a better forum, defense

14   counsel is correct that they need to be instructed that there's

15   a higher standard of proof here, and that's, of course, what

16   would be our response if Your Honor were to allow them to say

17   such a thing like that, then we have to explain this idea that,

18   well, when you have the law and the facts on your side you go

19   to civil court versus criminal, why are we sitting here talking

20   about whether we should have brought this case in a civil forum

21   or not?  That has nothing to do with what this jury is tasked

22   with, and the defense should not be allowed to sort of invoke

23   this notion that there is some better forum that would have

24   more legitimacy than a court or a trial in front of Your Honor.

25   That's all.

1           THE COURT:  Well, you have raised, both sides have

2    raised issues that are beyond what the motion really directs

3    the Court to, and the motion directs the Court to this

4    statement, "When you have the law and the facts on your side,

5    you go to civil court.  When you don't, you take people's money

6    so that they can't defend themselves and you bring a criminal

7    charge."  And so I'm going to direct my comments to that.

8           As to that precise statement, it does not tell the

9    jurors what the defense theory of the case is.  It's more akin

10   to a statement of personal belief of defense counsel's comment

11   on the legitimacy of a government charge, and it is going to

12   result in confusion to the seated jury.  There's an assumption

13   that these jurors would have sat on a civil or criminal case,

14   and that's an inappropriate assumption at this juncture.  And

15   even so, it might have been years ago, and so it's during the

16   course of the trial that they will be instructed as to what the

17   burdens of proof are and to interject statements that may

18   confuse them in this fashion.  I am not going to permit.

19          And further, that particular statement I think is one

20   of these statements that is akin to a conscience of the

21   community statement made to inflame the jurors at the outset.

22   These jurors that we will have carefully, carefully screened so

23   that they are sitting there without their mind made up, and so

24   it does border on inappropriate conscience of the community

25   statement.

1          So to the extent that anyone wishes to make a

2     statement like that, I ask you, there is a Ninth Circuit court

3     case called *United States vs. Blixt*, B-L-I-X-T, 548 F3d 882,

4     548 F3d 882.  I ask you to take a look at that so that you

5     understand the boundaries of what you can say.

6          So I will grant the government's motion to the extent

7     that anyone is considering making a statement similar or akin

8     to this that is here in the motion.

9          Now, finally, the last motion that needs to be ruled

10    upon is Government's 1600.  And this one I'm a little bit --

11    I'm a little bit confused because, and perhaps I am misreading

12    this, in the -- in the opening statement defense counsel

13    introduces a meeting between State's Attorneys General and

14    Craigslist, and it is true Craigslist is not a party here and

15    the State Attorneys General are not a party here.  So my first

16    question is, why is this relevant?

17         But then in defense response they include the exhibit

18    that is an e-mail chain from Mr. Ferrer in which he does refer

19    to understanding that Craigslist has reached some sort of

20    settlement, and then indicates that this represents validation

21    of our adult business model.

22         And so I'm kind of curious from the government's side,

23    how do you intend to use this exhibit?  The defense has

24    proffered it as an exhibit that you produced to them and that

25    you intend to use.

1          MR. BERRY:  So with regard to that specific exhibit,

2    Your Honor, this is an e-mail chain, and I know they excerpted

3    parts of it, but it's kind of a long chain and that portion of

4    it is towards the end or the bottom, which basically is the

5    beginning of the chain effectively.  This is obviously going to

6    go to, I can't speak to every line in this e-mail, but it's

7    going to go to the defendant's knowledge.  Mr. Larkin is copied

8    on this email, Mr. Ferrer is on there, Mr. Hyer is on there,

9    and this type of exhibit will go to their knowledge about what

10   has been provided to them regarding information from the

11   outside of the prostitution ads.

12          That specific section right there is certainly

13   admissible, I think, for that knowledge purpose, but what our

14   in limine goes to is the statement, this idea that they are

15   going to put in front of the jury that we know somehow what was

16   said in these private communications between Craigslist and the

17   attorneys general.  And unless they intend to call a witness

18   from one of those meetings to testify about what was -- what

19   happened in that, those meetings, that would be so many levels

20   of hearsay we could never quite get to it, right.

21          What they have proposed, Your Honor, as I said, they

22   have their own exhibit, which is, I think it's 54, let me

23   double-check that, yes, defense Exhibit 5054, which is a press

24   release regarding the actions that Craigslist plans to take.

25   And so they want to put that out there.  We have no idea how

1    they are going to authenticate it.  Separate problem.  We can

2    deal with that at another time.  But they want to put this

3    press release out there as some sort of evidence of their,

4    what, lack of intent, lack of knowledge.  It's unclear.

5           And when they quote to Your Honor that this is -- they

6    say in that e-mail in Government's Exhibit 17, "This represents

7    validation of our adult business model."  And then they also

8    cite the idea about financial data for law enforcement

9    subpoenas.  They leave out some important parts like screening

10   out underage coasters, and they also screen out the fact that

11   they were selling ads when Craigslist was still free.

12          So they are positioning this statement as though it's

13   some sort of evidence that, well, we learned that Craigslist

14   was paying, charging for it, therefore, it was okay that we

15   were posting prostitution ads for a fee, and that, of course,

16   you can't really infer that from the exhibit that they are

17   proposing, and you certainly can't take that from the statement

18   that they made in opening statement.  Because as Your Honor

19   points out, what they said in their opening statement was, they

20   talk about charging for the ads.  Okay.  Guess where charging

21   for the ads came from?  The attorneys general met with

22   Craigslist and said to Craigslist.  And so just stop right

23   there for a second and say, and sort of quote, and they say,

24   said to Craigslist:  We want you to charge for these adult ads.

25          So our argument is, how -- as Your Honor has pointed

1    out, opening statement should say:  Here's what we anticipate

2    the evidence will be.  And we don't think there is any way that

3    they can legitimately stand there and argue we anticipate

4    showing the jury what the Attorneys General said to Craigslist,

5    and that's our argument here as to what they should not be

6    allowed to say.

7            To the extent that these exhibits are admissible in

8    some other basis that's not being discussed right here, that's

9    sort of a separate matter, but our argument on this in limine

10   is really merely about them saying:  We are going to be able to

11   prove to you what 49 attorneys general said to Craigslist in a

12   meeting where none of these people were party to it were

13   present, and we have no witnesses coming to say what was said

14   inside those meetings.

15           And then they further go on to say:  The Attorney

16   General asked that the ads be charged for, so that's what

17   Craigslist did.  They are not previewing admissible evidence,

18   and that's our argument.

19           THE COURT:  All right.  Who wishes to respond or if

20   there is a response to this?

21           MR. ECKSTEIN:  Very briefly, Your Honor.

22   Tim Eckstein.  The evidence will come in through Mr. Ferrer,

23   simply his subjective understanding of what happened between

24   Craigslist and the Attorney Generals, and the influence that

25   had on him in terms of the justification for the billing

1    practices that Backpage had for adult ads.

2          THE COURT:  The concern I have here is, number one, as

3    I mentioned before, Craigslist is not a party to this.  It

4    doesn't sound like anyone from the six defendants were a part

5    of the conversation.  There's some e-mail communication that

6    loosely refers to this agreement, and I don't know what precise

7    agreement that is.  It could have been multiple agreements.  I

8    don't know.

9          And so at this juncture, until the government produces

10   some sort of witness or exhibit related to this knowledge, it

11   is hearsay, and so to say or to preview for a jury what you

12   don't know would be in there, specifically with regard to this

13   meeting and who was there and what the decisions were, is I

14   think a big stretch and especially in this fashion.

15         Mr. Eckstein.

16         MR. ECKSTEIN:  Yeah, I understand.  I think as I was

17   describing it, that maybe in the framing of the fact that it

18   would be some independent demonstration of what substantively

19   happened between Craigslist and the Attorney Generals as

20   opposed to Mr. Ferrer, his subjective understanding of what

21   that was, and that understanding may or may not be true.  It's

22   not hearsay and certainly has influence over every act he

23   undertakes at Backpage from that point forward.

24         THE COURT:  Well, I guess the -- why can't you just

25   say that his understanding was X, Y and Z based on his

1    experience in this field?  But you don't have to refer to

2    Craigslist meeting with these Attorney Generals in which they

3    decided X when nobody was present.  Mr. Ferrer wasn't present,

4    none of the other defendants were present, and so it's hearsay.

5              MR. ECKSTEIN:  Well, it may not be accurate, but I

6    don't think it's hearsay.  I mean, it's the difference between

7    his understanding of what generally happens in the field and

8    his understanding of what happens between names that will

9    resonate with the jury, the largest online advertising business

10   in the world, Craigslist, and the State Attorney Generals has a

11   legitimacy that attaches to it that is very different than

12   something that otherwise happens in the business.

13             Either he will acknowledge that was his understanding

14   or not.  And if he doesn't, and we don't have other evidentiary

15   basis to get it in, then we won't get it in.  And if we've

16   raised it in opening statement, I am sure the government will

17   point that out.

18             THE COURT:  Well, I think at this point I will permit

19   you to at least refer to the -- to the fact, if it is indeed a

20   fact, Mr. Ferrer was aware of some ability of his organization

21   or those like his organization such as Craigslist to do

22   whatever it is that he's purported to have done, but I think

23   bringing in this whole agreement with the Attorney Generals

24   when none of that evidence is going to come in, I don't know

25   how it comes in, what those agreements were, who were party to

```
1    those agreements, who heard about them, whether or not the
2    third-party information that Mr. Ferrer gathered was actually
3    accurate, and that's the problem that I have.  Until we hear
4    from him as to what his understanding was, it's a big mystery
5    to me.
6            And so I would caution you not to go down that road at
7    this juncture.  You're going to hear an objection from the
8    government, I suspect, if it comes out and I will have to make
9    my ruling at that point, but and so I'll leave it at that.  So
10   counsel are so advised.
11           All right.  I think those are the only motions in
12   limine that were outstanding.  Why don't we take about a
13   15-minute break and then we will come back.  When we come back
14   I will move to the jury instructions and then I'll go through
15   what I expect in terms of trial conduct, and then we can review
16   the juror questionnaires.
17           MR. LINCENBERG:  Your Honor, Gary Lincenberg.
18   Before -- is the Court going to allow discussion of the orders
19   that the Court issued on motions in limine?  There's a number
20   of points relating to them that leave a lot of lack of clarity
21   as to what can and cannot be said.
22           For example, in opening statements on certain points,
23   I'd like to raise that in particular with regard to the Motion
24   in Limine involving the advice of counsel issue if the Court
25   would permit.
```

1          THE COURT:  I will permit you to make a record, but I

2    think my order is precisely clear with regard to advice of

3    counsel.  And I do believe the advice of counsel issue has been

4    addressed previously, though there's never been really any

5    fleshed out motion by any defendant that he intends to use, he

6    or she intends to use the advice of counsel defense.  And so to

7    the extent you wish to make a record on the Court's order, you

8    can do so.

9          MR. LINCENBERG:  Thank you, Your Honor.  After the

10   break?

11         THE COURT:  Yes.  All right.  Let's stand in about a

12   15-minute recess.

13         (Recess was taken at 2:07 p.m.)

14         (Proceedings reconvened at 2:26 p.m.)

15         THE COURT:  All right.  Please be seated.  We are back

16   on the record.  All counsel are present, and let's continue

17   forward.

18         Now, as I mentioned before, I placed on your tables

19   what I have resolved to be the jury instructions.  I reviewed

20   the submission by the government of their proposed

21   instructions, which also included the defendants' proposed

22   instructions.  I looked thoroughly at the objections that were

23   lodged to the respective instructions.  For your understanding

24   of how I came upon this, what you have, this is what I intend

25   to be, at least at this juncture, the instructions that I will

1    use, and I think it's useful to determine -- make this

2    determination at this point because obviously you're going to

3    be saying things in your opening, I think, and you need to have

4    that roadmap available to you.

5         So my determination was based on this:  I begin with

6    the premise that the Ninth Circuit Model Instruction is the

7    governing rule.  And to the extent that either party added

8    unnecessary verbiage which included in some cases unnecessary

9    elements, confusing statements and so on, I eliminated those

10   and made my decision again based on what the governing standard

11   is in the Ninth Circuit removing any of those elements that

12   were confusing, and in some cases modified the instructions.

13        The -- I will read the preliminary instructions that

14   were stipulated to.  And then, as you will see in the packets

15   that you were provided, there are still unresolved jury

16   instructions.  For example, at page 13, the deliberate

17   ignorance instruction still contains defendants' objection, as

18   does page 20, the advice of counsel.  But -- and I will tell

19   you this, that based on the Court's order on the motions in

20   limine, I am inclined not to give this instruction, but in any

21   event, it hasn't been perfected or removed yet.

22        The defendants' proposed instruction on mere presence,

23   and I will just make this comment for your review, I think it's

24   already covered in part of the government's, or the Court's

25   actually, the Court's perfected conspiracy.  There's a sentence

1    in there that relates to something akin to mere presence, so

2    that will likely come out, but I haven't made that

3    determination yet.

4         So in any event, that is -- that is how the Court came

5    to its determination.  There's also a pending defendants' good

6    faith instruction at page 59, and generally those instructions

7    that I haven't ruled upon yet, I haven't done so in part

8    because I need to hear the evidence.  And what I will do is at

9    this juncture, as I said, I know you need to have time to

10   review those jury instructions, and so I have set aside

11   August 4th, Friday, for that purpose if you wish to come in and

12   make a record.  In advance of that, do let me know specifically

13   what instructions you take issue with.

14        I don't want to use the Court's time or your time if

15   you're going to come forward and just simply parrot what you

16   put in your written objection because I've considered those

17   arguments already, so just be mindful of that.

18        MR. CAMBRIA:  Your Honor.

19        THE COURT:  Yes, Mr. Cambria.

20        MR. CAMBRIA:  Thank you.  I wondered if we could

21   supplement our written material with regard to the

22   instructions?  I noted a couple -- I noted a couple of

23   instructions here that clearly, I think, conflict with Ninth

24   Circuit law, and we could supply those to the Court.

25        The other thing, though, is, and I haven't had a

1    chance obviously to read these in detail, but as I get to one

2    that refers to New York and violation of state law, it talks

3    about sexual contact as opposed to prostitution, and there's no

4    way for us at this point to know what the Grand Jury was

5    charged and what the so-called theory was of the count, and

6    there's a vast difference in New York between charges regarding

7    sexual contact and charges that are prostitution, and so it

8    seems to me that there's no way for us to know whether this is

9    a proper instruction unless we know how the Grand Jury was

10   charged with regard to any state law because state law has to

11   underpin all of these.  And we've never been told, and we made

12   requests, but we've never been told what exact state law was

13   charged, if any was charged, or if a generic charge was made to

14   the Grand Jury concerning sexual activity.  So I don't, you

15   know, I would -- so twofold, one is can we briefly --

16           THE COURT:  Which -- Mr. Cambria, let me stop you

17   there.  Which is the instruction you're referring to?

18           MS. BERTRAND:  Your Honor, this is Joye Bertrand.

19   It's the one for the New York State violations.  Page 40, about

20   the last three-quarters down the page, addressing Counts 45

21   through 47 and 51 concern prostitution offenses in violation of

22   laws of the state of New York:  A prostitution offense in New

23   York occurs when a person engaged, agreed or offered to engage

24   in sexual conduct with another person for a fee.  But we don't

25   have a definition for sexual conduct, which is different from

1    the other instruction that included the instructions.  As the

2    Court may notice, those are substantially different.  I was

3    looking at the one for Arkansas and am kind of surprised at how

4    limited people's private lives are there.

5            So I think there is a couple details like that where

6    we got to fill in the definition for the jurors because sexual

7    conduct in terms of prostitution state by state is not a

8    consistent definition.

9            MR. CAMBRIA:  I want to add to that.  We can't just

10   throw in any definition.  We are governed by what the Grand

11   Jury did or failed to do, and we're entitled under the Fifth

12   Amendment to an indictment by Grand Jury.  And so they can't,

13   you know, say, well, this one looks good, let's throw that in.

14   We have to see what, if anything, the Grand Jury was told.

15   These require state violations.  We've never been told what

16   they are.  So how would the jurors be able to analyze that

17   element without knowing what the definition is that was given

18   to the Grand Jury that they voted the charge on, if they did?

19           THE COURT:  In the 16,000 some odd documents in this

20   case, it seems to me that several requests for Grand Jury

21   transcripts were made, and was this one of the grounds on which

22   those requests were made and I think subsequently ruled on?

23           MR. CAMBRIA:  The one that I recall is that our

24   position was that a state statute had to be violated in order

25   to violate the Travel Act.  We asked whether the Grand Jury was

1    instructed on state law.

2         THE COURT:  And so this is akin to that argument?

3         MR. CAMBRIA:  Well, and what happens is now we see an

4    instruction referring to New York and it includes sexual

5    conduct.  That's a vastly different charge than prostitution in

6    New York.

7         THE COURT:  Well, here's what I'm inclined to do.

8         Mr. Stone, did you wish to --

9         MR. STONE:  Yes, Your Honor, I think we can

10   short-circuit this because Mr. Cambria mentioned that a state

11   law needs to be violated.  But as Your Honor has indicated

12   correctly on page 57, it's another jury instruction, state law

13   need not be violated for defendants to be found guilty under

14   the Travel Act, just that they had the intent to promote,

15   manage, establish, carry on or facilitate the promotion,

16   management, establishment or carrying on of any business

17   enterprise involved in prostitution offenses.

18        So yes, the state crime is part of this, and that's

19   why it's correctly listed in the jury instruction, but because

20   there is not a need for the United States to prove that the

21   state law was actually violated, I think that we can

22   short-circuit Mr. Cambria's concern here.

23        MR. CAMBRIA:  Your Honor, if I might, there is no

24   short-circuiting the issue that a state statute is involved.

25   And what did the government charge the Grand Jury with?  Did

1    they give them a generic definition of prostitution or did they

2    give specific and specific instructions?  And the reason I say

3    that is because in your proposed instruction you now are having

4    a specific reference to sexual conduct, which is a different

5    offense under the New York penal law than prostitution.

6          THE COURT:  Well, let me short-circuit this

7    conversation, Mr. Cambria.  These instructions at this point,

8    as you know, can be changed depending on how the evidence comes

9    in, and so there might be a necessity to all together revise

10   this instruction.

11         MR. CAMBRIA:  We can't amend the indictment.

12         THE COURT:  But I'm going to review -- I know that

13   there was a ruling.  Judge Brnovich made a ruling on this

14   precise issue on something related to the Grand Jury

15   transcript, and trying to identify what it was that they were

16   told, and so I'm going to look at that because as you all know

17   I'm not going to second-guess what has already been done in the

18   court.

19         I will tell you that I've found from time to time that

20   you've made arguments that aren't necessarily fairly

21   representative of what the Court has determined.  And I use the

22   example of this, and it can be very exhausting.  In the motions

23   in limine and other motions here, both parties have relied on

24   an order of the prior Court in which she is determining whether

25   or not there are grounds to recuse herself from the case.  And

1    in that order she parrots statements of her husband, then

2    Attorney General.  Those weren't findings of fact with respect

3    to particular issues that were raised by the Court.  The lines

4    that were used in various pleadings and motions before the

5    Court have to be very carefully made because I rely on your, on

6    the good faith of counsel.  So I just I want to make very clear

7    that I look at everything.  And here I -- this is familiar to

8    me, and that's why I'm pausing, Mr. Cambria.  I do believe that

9    I've seen prior pleadings that address this very issue related

10   to the Grand Jury.  No, somebody made it, a request for Grand

11   Jury transcripts.

12            MR. CAMBRIA:  Oh, yes, absolutely we did.

13            THE COURT:  And I think this was part of that, and so

14   I'm going to look -- I am going to look very carefully at the

15   docket and make sure that I understand whether or not this has

16   already been resolved.

17            But with respect to this instruction, like I said,

18   there's still time to make modifications depending on what the

19   government's case looks like, and generally my practice is

20   waiting until close to the end of the government's case to come

21   back again and to perfect the instructions that will be

22   presented to the jury.  What I intended to do here was to give

23   you at least some indication of what I'm inclined to do so that

24   you will be prepared to understand what you can or cannot rely

25   on in your opening statements.

1           MR. CAMBRIA:  If I might, a couple of things.  Yes, we

2    did on several occasions ask that we be told what the Grand

3    Jury was told with regard to state statutes.  Now that I see

4    this proposed instruction, it becomes even more acute to me as

5    far as an important issue because they can't prove up something

6    that's not the charge that the Grand Jury found.  This can't be

7    a matter of, well, okay, let's give them this statute or let's

8    say this conduct happened.  What did the Grand Jury find?  In

9    here state law is relevant, and so what people -- when I'm

10   reading this and I see conduct, conduct is an offense in New

11   York, but prostitution is a different offense.

12          And so I think the review has to be, what did they

13   charge the Grand Jury with regard to states, or did they give

14   them a generic charge?  And if so, we should be told of it so

15   that we can protest it.  They cannot prove something that's not

16   part of an indictment because that would violate the Fifth

17   Amendment.

18          THE COURT:  You can file a motion.  You can file a

19   motion.  I'm going to limit you to seven pages, and you can

20   file it expeditiously.  I will expect an expeditious response

21   from the government, and no reply.  So your deadline, your

22   deadline to file this is going to be Monday, Mr. Cambria.

23          MR. CAMBRIA:  Okay.

24          THE COURT:  And the government will have until

25   Wednesday to respond.

1          MR. CAMBRIA:  I appreciate that.  Thank you.  The

2     other thing, though, on these instructions, since there are a

3     lot of cases and so on here, can we submit something different

4     than what we relied on before, specifically commenting on

5     these?

6          THE COURT:  No.

7          MR. CAMBRIA:  No?  Okay.  The only reason I --

8          THE COURT:  Because you fully put forth your objection

9     to the government's, and government has done that with yours.

10    I relied on your objections.  I relied on your statements in

11    order to make this determination.

12         Now, Mr. Cambria, that said, you asked if you could

13    supplement and tell the Court, well, this is against Ninth

14    Circuit, I'm always for that.  If you can find me some reason

15    that is not repetitive of what you already submitted, I will

16    permit you to do that.  Again, you have until Wednesday to do

17    so.

18         MR. CAMBRIA:  Fair enough.  I appreciate that, Your

19    Honor.  I did notice something in your first amended

20    instruction, proposed instruction, that is in my opinion

21    contrary to the Ninth Circuit case, so we'll be supplying

22    those.

23         THE COURT:  All right.  Any other questions or

24    comments about the Ninth Circuit -- sorry, the Court's jury

25    instructions?  And like I said, if you wish to make a record

1    further, we'll do that on Friday August 4th on these particular

2    instructions, but do tell me which ones you intend to make a

3    record on so that I can be prepared to look at them as well.

4         Mr. Stone.

5         MR. STONE:  Just a second, Your Honor.  Your Honor, we

6    were just wondering for clarification what the preliminary

7    instructions would be, which would be read once the jury is

8    empaneled and before opening statement?  I see in the packet,

9    Your Honor, you have preliminary instructions listed under

10   number one, so it would go from 1.1 to 1.16, would those be the

11   preliminary instructions that Your Honor is considering to read

12   to the jury at the beginning of the case?

13        THE COURT:  Yes.

14        MR. STONE:  Okay.  Thank you.

15        THE COURT:  All right.  Let's -- we're going to take

16   some time to go through the jury questionnaires, so --

17        MR. LINCENBERG:  Your Honor, I don't --

18        THE COURT:  Can you speak into the microphone?

19        MR. LINCENBERG:  Yes.  Before the break we had -- I

20   had mentioned wanting to be heard on the Motion in Limine.  I

21   am not sure -- I just wanted to remind the Court.  I'm not sure

22   if the Court was intending to do that when we get back.

23        THE COURT:  Is it your intention you want to make a

24   record on a statement with regard to the Court's order?

25        MR. LINCENBERG:  Yes.  It's really a discussion of

1    clarification.  I know that the Court indicates it's clear, but

2    that's really what I'd like to address.

3         THE COURT:  You may do so.

4         MR. LINCENBERG:  Thank you.  So Your Honor, this

5    relates to a part of the Court's order which is at page 12 of

6    the MIL rulings, Document 1643.  And the background to my

7    questions with regard to clarification is that the motion

8    addresses reference to advice of counsel in the opening

9    statement.

10        There seems to be some overlapping implications with

11   respect to a good faith defense, and it's in that context that

12   I ask the Court these questions because this case is going to

13   heavily be about the government claiming that all sorts of

14   communications put defendants on notice that they were engaged

15   in unlawful conduct, and there is going to be a back and forth

16   of all of the information that came in to defendants and what

17   notice that provided.  And that's going to be for various

18   individuals some of whom are attorneys.  This is laid out

19   extensively in Mr. Ferrer's multiple interviews.

20        So the question arises to me as I read through the

21   Court's ruling as to how it impacts the defense's ability in

22   opening statements to talk about what we anticipate and expect

23   Mr. Ferrer to testify to.

24        So for example, Judge Brnovich ruled that 15 or 19,

25   depending on how you break them up, various attorney-client

1    communications that took place where we moved to dismiss the

2    case based on invasion of the privilege, Judge Brnovich said

3    that these are not attorney-client communications for a couple

4    reasons.  One of them was waiver; second was the statement that

5    some of these may have been business communications and not

6    necessarily legal advice.

7            And the question is, are we allowed in opening to

8    advise jurors of what we expect Mr. Ferrer to testify to with

9    regard to these statements.

10           Again, these are statements that the law of the case

11   right now is either that those communications were waived, any

12   privilege was waived, or that they are not attorney-client

13   privilege.  And I will give the Court a couple of particular

14   examples, and these go back to a couple of the examples that

15   were in the 19 that we pointed out in our motion.

16           So for example, one was Mr. Ferrer saying that

17   Attorney Don Moon frequently advised that the First Amendment

18   and mens rea requirements provided legal protection against

19   federal criminal prosecution.  Now, it's part of the

20   government's overall theory, as I understand it from reading

21   through their extensive questioning of Mr. Ferrer, as being

22   delving into and even trying to come up that the communications

23   with Mr. Moon and others in fact shows guilt; that the full

24   picture is inculpatory, not exculpatory.  That will be an area

25   of dispute.

1          A second example is, for example, Mr. Ferrer stating

2    that Attorney Samuel Pheiffer prepared a legal memo advising it

3    was legal to remove content from classified ads as opposed to

4    adding content.  There is a lot of witnesses, a lot of

5    discussion that the Court is going to hear during the trial

6    about this removing versus adding of content.  And there is

7    discussion, for example, with an attorney named Nigam,

8    N-I-G-A-M, who was hired, a former sex crimes prosecutor who

9    was hired to go over ad moderation policies and adding and

10   subtracting.  There is going to be a lot of testimony in that

11   regard.

12         And so forget about advice of counsel, just as it

13   relates to what we anticipate the evidence will show with

14   respect to our good faith, as well as getting into impeachment

15   of Mr. Ferrer, who is going to, for example, claim that I knew

16   and I believed it all along that this conduct was illegal, I am

17   paraphrasing, when his statements in his interviews suggest

18   differently, including getting into communications with

19   attorneys.  So again, we're talking about attorney

20   communications here which the Court has ruled --

21         THE COURT:  What is the document number --

22         MR. LINCENBERG:  Of --

23         THE COURT:  -- of the ruling?

24         MR. LINCENBERG:  The ruling is document number, I have

25   it right here, I believe it's 1168.  So for example, in

1    Document 1168, just by way of example, at page 11 and 12 of the

2    Court's order, under the section called "Waiver," Judge

3    Brnovich specifically spoke about a legal memo by Attorney

4    Suskin in 2007.  There's other examples I can go with the Court

5    in that regard.  And so putting aside, and I'm not debating

6    right now the Court's ruling in terms of raising an advice of

7    counsel defense, but all of these communications are part of

8    the overall picture and evidence in this case of what put our

9    clients on notice one way or the other.

10              THE COURT:  Are you finished?

11              MR. LINCENBERG:  On that point.  One or two other

12   points.  So the second point, Your Honor, would be that with

13   regard to advice of counsel, and I am not arguing the ruling,

14   but with regard to advice of counsel, there's a bit of a

15   chicken and an egg issue here that leads to a little bit of

16   lack of clarity on my part.  The Court suggests -- the Court

17   states that defendants must proffer evidence that would come in

18   to prove the four factors.

19              Now, the four factors essentially being that there was

20   disclosure of relevant information to the attorneys, the

21   attorneys had communications and so forth.  Those factors the

22   Court is suggesting have to be proven up.  And the case law,

23   certainly the *Bisno* case, suggests we are not entitled to an

24   advice of counsel jury instruction unless after the evidence

25   comes in there is sufficient basis for the Court to so find.

1   And we're not asking right now for advice of counsel

2   instruction.  It's premature.  That's what the courts have

3   said, it would be premature, both the *Holmes* court and the

4   *Bisno* court provided that.

5          But in terms of opening statement, advising the jury

6   of what evidence will come in relating to those factors as they

7   may pertain seems to me it's something that the defense should

8   be able to do.  I want to make sure that if the Court is

9   precluding the defense from stating that in openings, that we

10  abide by that if that's the ruling.

11         THE COURT:  Are you done now?

12         MR. LINCENBERG:  The third point, Your Honor, would be

13  that as part of the Court's ruling, the Court provided page 12,

14  beginning at line 21, that in this regard the defense would

15  need to provide, quote, complete disclosure with regard to the

16  advice they sought on an ad listed in Count 2 through 21.  And

17  if they don't do so, they are not entitled to an instruction.

18         And then at page 13 the Court goes on to say that to

19  permit defendants to tell the jury that they broadly sought

20  advice on conduct unrelated to the SI allegations would present

21  irrelevant evidence.  And the Court's opinion raises the

22  question of whether the Court is stating that evidence that

23  doesn't pertain to Counts 2 through 51 would be irrelevant.

24         THE COURT:  That's not -- no, I'm only address the

25  Motion in Limine.

1          MR. LINCENBERG:  Right.  So the Court writes in that

2     regard, beginning on page 12 at 21:  For example, the Court

3     will permit defendants to argue an advice of counsel defense if

4     they show they provided complete disclosures about the advice

5     they sought on an ad listed in Counts 2 through 21.

6          And the Court goes on to say:  If not, it's

7     irrelevant.

8          Now, this is the defense's position that evidence

9     unrelated to those 50 charged ads should be kept out of the

10    case.  The government's position is there's a conspiracy count.

11    We can get into all sorts of ads.  The Court, Your Honor and

12    Judge Brnovich, have ruled that the government can get into

13    other ads under the conspiracy count.  And I am a little

14    confused because depending on how this is read, it could be

15    inconsistent with those prior rulings.

16         So those are the three points that I wanted to ask the

17    Court for clarity on.

18         THE COURT:  I will start with the third point.  There

19    is no inconsistency.  I have not changed any prior ruling about

20    the scope of what the government can present in terms of the

21    conspiracy charge, what the conduct of one person was doing

22    relative to the other within the larger scope of the time span

23    that has already been set previously by the Court.  But this

24    order was only specifically to putting forth an advice of

25    counsel statement either in opening or defense at this point,

1   and I think the order speaks for itself and relies upon Ninth

2   Circuit precedent that requires a particularized showing.

3          So for example, if Don Moon says to Mr. Ferrer:  Yeah,

4   the First Amendment covers it.  Well, what's the question?  And

5   the response is irrelevant if we don't know what the question

6   was that he was answering.  Was the question related to the ad

7   in Counts, you know, 2 through 50, or is the question related

8   to some wholly different discussion about what Mr. Ferrer was

9   doing?  We don't know that.  So it's not relevant.

10          MR. LINCENBERG:  I would proffer to the Court, and I

11   don't think there will be a dispute over this, that these

12   questions that the government is probing Mr. Moon on is dealing

13   with the practice of running ads, which don't say money for

14   sex, but in the government's view really are ads for that, and

15   that is -- the conversations they are referencing for the most

16   part are prior to Counts 2 through 51, but what is sauce for

17   the goose is sauce for the gander.  If the government is going

18   to get into prior ads, then all of this relates to that.

19          And my question, I suppose, that first question I

20   asked Your Honor, can defense counsel in opening statements

21   advise the jurors what we anticipate that Carl Ferrer will say

22   in this regard?

23          THE COURT:  Well, I think it's -- go ahead, Mr. Stone.

24          MR. STONE:  Happy to respond, Your Honor.

25          THE COURT:  Yes.

1          MR. STONE:  I will start with the third point from

2     Mr. Lincenberg as well.  I think he left out the parentheses in

3     your order on page 12 which says:  After the Court will permit

4     defendants to argue an advice of counsel defense if they show

5     they provided complete disclosures about the advice they sought

6     on an ad listed in Counts 2 through 51, or similar ads

7     described in the superseding indictment.

8          And that clearly, Your Honor, was an eye towards the

9     conspiracy.  And the fact that Counts 2 through 51, according

10    to the United States and what we intend to prove at trial, were

11    ads for prostitution just like thousands and millions of other

12    ads on the websites as well.  So I think that's easily

13    resolved.

14         The other issues that Mr. Lincenberg raised, and he's

15    raised these I think three or four times now to this court,

16    really apples and oranges.  He cited to, I think the order,

17    which was Doc 1168.  That was the order, and I may have gotten

18    that wrong.  I thought that's what he said, but that was the

19    order on the outrageous government misconduct motion for

20    invading the attorney-client privilege through the interviews

21    of Carl Ferrer, and Judge Brnovich ruled that there wasn't an

22    invasion of the attorney-client privilege for a variety of

23    reasons.

24         And in talking about the advice of counsel, and

25    raising an advice of counsel defense, or in opening statement

1    stating these defendants were told over and over again by

2    attorneys that their conduct was legal, that's advice of

3    counsel.  And the only way that the Court and for the parties

4    to understand if that advice of counsel is appropriate is if

5    there's been a waiver of the attorney-client privilege and a

6    demonstration, as the Court has noted, that all relevant facts

7    were provided to the attorney.  If not, if the relevant facts

8    weren't provided to the attorneys, then the advice of counsel

9    isn't worth the paper it's written on.

10          So comparing the order from 1168 to anything in the

11   advice of counsel defense I think isn't all that helpful, Your

12   Honor.

13          THE COURT:  Well, not only that, but if you will look

14   closely at what the government's opposition is to the good

15   faith instruction at this juncture, it's because this is, and

16   all parties have raised it multiple times in multiple ways,

17   this is a specific intent, the trafficking -- Travel Act is a

18   specific intent crime.  And circuit law, to my knowledge, says

19   you don't get a good faith instruction when there is a specific

20   intent crime alleged.  I'll look more closely at it, but at

21   this point I am inclined not to permit you to give that.

22          So I mean, there certainly could be ways that you

23   could raise this in an opening argument that doesn't misstate

24   the law, and it's certainly, I think you go down a dangerous

25   path when you start to say:  Well, he relied on this counsel or

1    that counsel.  And that will surely, I think the government

2    will raise an objection and the Court will then find itself

3    having to admonish counsel because of my order.  So I would be

4    very careful about that.

5              MR. LINCENBERG:  Your Honor, the government's case is

6    going to be heavily bringing out all of these different ways

7    that our clients were on notice that what they were doing was

8    illegal; NCMEC people saying it to them, Attorney General

9    saying it to them.  The give and take with the Attorney

10   General, with NCMEC, all across the board is a discussion of

11   legal issues and what they can do and not do, and so forth.

12             And what the government is trying to do here is

13   suggest that these jurors should be told that the defendants

14   received notice A, B, C, D, E, F and G ways that things were

15   illegal and concealed from the jury the defendants heard A, B,

16   C, D, E, F and G that it wasn't illegal, whether through

17   reading court opinions or having communications with attorneys

18   and the like.

19             What the law and the Ninth Circuit on good faith is

20   that the Court doesn't need to specifically state good faith

21   because it's inherent in specific intent.  In my experience --

22   the Court is certainly permitted to do so, particularly where

23   it's part of the theory of the defense, but in my experience

24   judges regularly and generally do so where it's part of the

25   defense.

1          And so if a juror is going to be considering what was

2   Defendant John Doe's state of mind in this regard, that juror

3   should be able to hear whatever came in to John Doe.  Frankly,

4   whether or not John Doe --

5          THE COURT:  Well, that's evidence, though.  We are

6   talking about opening statement, and I don't know why you want

7   to get into the specifics of evidence that hasn't already been

8   introduced.  I guess that's the problem that I have.

9          MR. LINCENBERG:  That's what the government is going

10  to do.  That's what all counsel do in opening statements.

11         THE COURT:  I will admonish them.  This is what they

12  are going to intend to prove.

13         MR. LINCENBERG:  Right.

14         THE COURT:  And to the extent that they get into

15  specific evidence, if anyone gets into specific evidence that

16  has not yet been introduced, that's a very dangerous slippery

17  slope.

18         MR. LINCENBERG:  Well, the government's entire opening

19  statement last time --

20         THE COURT:  Well, again, I read those opening

21  statements, and I hope they are not repeated.  I really do

22  think there could be a better way to do that.  And one thing

23  that I will say is that in my experience, and all of you are

24  very experienced counsel, but when you watch these jurors, an

25  average juror's attention span is about 20 minutes.  And so to

1    the extent you're going to go on ad nauseam an hour, two hours

2    in these opening statements, you will have lost them.

3          And that's part of the concern when I reviewed these

4    opening statements.  They are confusing, they offer promises

5    that will likely not be able to be kept, and it goes to your

6    standing with these jurors.  So I just ask you to be cautious.

7    And so I'm not going to revisit my ruling on the advice of

8    counsel Motion in Limine.  I'm going to reserve because we are

9    here talking now about your proposed good faith instruction.  I

10   have not fully ruled on that.  I have to wait for the evidence

11   to unfold, and maybe I will end up giving it at the end.  I

12   don't know.  But be very cautious in your opening statements.

13   I'm not going to advise counsel on how to make them.  You all

14   know how to make them.  Just be very careful about making

15   promises or statements that you can't keep.

16         So let's move on.  Thank you.

17         MR. LINCENBERG:  Thank you, Your Honor.

18         THE COURT:  Let's move on now to the jury

19   questionnaires, and --

20         MR. ECKSTEIN:  Your Honor, before we leave that

21   subject, and I will be as brief as I can be, I just want to

22   make sure I understand, 'cause this bears both on opening

23   statements and what anticipated evidence would be.  This would

24   be with respect to references to section 230, reference to

25   lawyer advice, not necessarily the advice of counsel, and

1    reference to prior litigation in which Backpage was involved.

2    Is the Court's view that none of those issues are potentially

3    relevant to the jury's consideration of the allegation in the

4    superseding indictment?

5            THE COURT:  That's a very broad question.  I'm

6    sticking to what my order says.  I don't want counsel to come

7    up here and compare this case to some other case that was a

8    civil proceeding or a forfeiture proceeding.  I don't want

9    counsel to come in and compare it to a section 230 prosecution.

10   If the precise types of allegations under Title 18 were not in

11   those previous decisions, don't mention it because it's

12   irrelevant.

13           MR. ECKSTEIN:  Let me ask it a little differently.  If

14   our argument ultimately would be that those are relevant to the

15   question of intent to individual defendant's subjective

16   understanding of what the law was that had First Amendment

17   implications or mens rea implications that are related to but

18   not necessarily subsumed within section 230, so it ultimately,

19   I think, goes to the intent that obviously the government needs

20   to prove beyond a reasonable doubt.  And I understand there are

21   limits to that.  There are parts of those cases or parts of

22   those discussions that don't bear on the First Amendment or

23   mental state that would be relevant here, but that there

24   certainly are parts of them that bear directly on intent.

25           THE COURT:  Well, my ruling is what my ruling is and

```
 1    you can make that decision.
 2            MR. ECKSTEIN:  Okay.
 3            THE COURT:  All right.  Let's move to the jury
 4    questions.  So I have reviewed the parties' stipulated strikes
 5    for hardship.  I'm going to take those up first.  I'll move to
 6    the -- primarily I think there were mostly defendants' requests
 7    to review for cause.  And let me just ask your preference of
 8    how I do this because normally in a trial that is not this
 9    large I will give the counsel, or the Court will have an
10    opportunity to make a record as to the specific juror and why
11    they are being struck for hardship.  I'm only focusing on
12    hardship at this point.  I don't know if it's a more
13    resourceful way to do this in terms of what I identified as the
14    broad categories of hardship.  So I can numerically go down the
15    line or if you wish to make, have me make a particular record
16    with regard to each individual juror questionnaire.  Does the
17    government have a preference?
18            MS. PERLMETER:  Your Honor, we don't have a
19    preference, so proceed as you prefer.
20            THE COURT:  Defense counsel, anyone wish to be heard?
21            MR. LINCENBERG:  May I have a moment?
22            THE COURT:  Yes.
23            MR. LINCENBERG:  Your Honor, I just quickly consulted
24    with folks.  I haven't spoken to everybody, so speak up if I
25    didn't.  We would like a record with regard to each individual
```

61

1    juror with regard to hardship or cause.  Obviously at the

2    Court's discretion, it can happen today or with the juror in

3    the room.  We would make our argument as to why some of them

4    should be struck today, but that would be our preference.

5          THE COURT:  Well, I guess let me clarify this, and

6    maybe you'll have a different answer for me.  You have

7    submitted stipulated hardship removals.  So as to those

8    stipulated hardship removals, I intended just to rattle off the

9    number of the juror.

10          MR. LINCENBERG:  Excuse me, that's fine.  We agree to

11   that.

12          THE COURT:  And so that's what I'm going to do.  To

13   the extent there are disagreements, and I identified some that

14   I think should be removed, I will let you comment on them, but

15   I think that's the more expeditious way to proceed.

16          Is there an objection?  All right.  There is no

17   objection.

18          So let me start with Juror No. 8, because neither

19   party stipulated, I noticed that this juror is out of country

20   in September with a ticketed flight.  So I'm going to exercise

21   my discretion to remove for hardship.

22          The parties have stipulated to Jurors 9, 13, 14, 15,

23   18, 21, 39, 40, 41, 42.

24          I am exercising my discretion to remove 43.  This is a

25   financial hardship.

1          Number 52 is a stipulation.

2          Number 62.

3          Defense requests and the Court will permit hardship

4  removal for 66.  This is a person with child age children, and

5  they reside in Mesa and she has to take them to and from

6  school.

7          Number 67, 86, 94.

8          The Court will remove 96 as a hardship.  He's a sole

9  financial provider.  Also a teacher.

10         Number 98, 100.

11         The Court will remove 101 for hardship.  This is a

12 person who has a vacation planned for the duration of the trial

13 or during the trial.  Financial hardship.

14         106 was not selected by either party, but I noted at

15 least in my notes that this individual has a doctor's note for

16 a chronic medical condition.

17         108 I am also going to strike.  This is a person that

18 sort of has a unique position in the job, is an engineer and

19 has some sort of responsibility and skill that is not able to

20 be duplicated.

21         112, I am going to exercise my discretion to remove

22 for hardship.  This juror indicate being pregnant and having

23 issues related to pregnancy.

24         116.  Although -- let me have counsel look at 114

25 because I have a note here that -- there is a doctor's note

1    associated with Juror 114, and that may be an error, but I did

2    make a notation of that.

3            116.

4            I also am going to exercise my discretion to remove

5    for hardship 131.  This individual is a sole earner and also

6    has a newborn baby at home and is working so the wife can

7    attend to the new baby.

8            138, this individual I'm also exercising my discretion

9    to remove because this person is the sole financial provider

10   and also the work requires traveling two times every month.

11           MR. CAMBRIA:  Which one was that, Your Honor?

12           THE COURT:  138.

13           MR. CAMBRIA:  What was 131?

14           THE COURT:  This is the individual who is a sole

15   provider and has a newborn baby at home.

16           MR. CAMBRIA:  You're excusing her?

17           THE COURT:  Yes.

18           MS. PERLMETER:  Your Honor, real quick, going back to

19   116, I have that marked as a stipulated for hardship, did the

20   Court have that as well?

21           THE COURT:  Yes.

22           MR. CAMBRIA:  She excused her.

23           THE COURT:  Did I say 138?

24           MS. PERLMETER:  Yes.

25           THE COURT:  144, please look at 144.  I have a

1    notation that this individual has a financial issue as well as

2    medical issues.

3            MR. LINCENBERG:  I believe there was a stipulation for

4    cause dismissal on 144.

5            THE COURT:  Is that correct?

6            MS. PERLMETER:  Yes, it was.

7            THE COURT:  144 is removed for hardship.

8            145 I am exercising my discretion.  This is a person

9    who is fearful of losing a job as a pharmacist at Walgreen's.

10           Okay.  150.

11           151, I am going to remove for hardship.  This

12   individual has his son's baseball tournament in Florida during

13   the time of the trial, and works off of commission and so it's

14   a financial hardship.

15           Stipulated 161.

16           169 I also think should be removed at the Court's

17   discretion.  This individual has ongoing physical therapy.

18   Actually, he's working towards a physical therapist license and

19   has classes scheduled during that time period, and is also

20   unemployed and actively seeking work.

21           I identified 173 as having ticketed.  November is real

22   travel.  So I will remove 173 for hardship.

23           178 as well, this individual has October plans to go

24   to Lima, and then plans to go to Mexico during the trial

25   period, so this person is removed for hardship.

1           185, primarily for the medical issues, inability to

2    sit through long periods of time.  Also financial,

3    self-employed.

4           189, I'm also going to remove because I note that this

5    person has financial and health issues.

6           200.

7           204 has prepaid tripe to Kauai September through early

8    October.  On second thought, let me look at the trial schedule.

9    Yes, hardship removal for 204.

10          219, suffers from PTSD, difficulty concentrating.

11          234, financial hardship, has to take kids or care for

12   kids before and after school.

13          236, that I've identified as indicating having issues

14   of anxiety which causes lack of focus.

15          242, 243, 254.

16          261, this individual has one car in the family, can't

17   drive, has financial hardship issues as well.

18          263, 279.

19          Let's go back to 270.  I had a notation here that this

20   individual indicates financial hardship, attends night classes

21   from 4:30 to, I believe it was 9:00 o'clock, in an M.S.

22   program, and I think that would be too much to ask to sit

23   through a trial and go to class.

24          Stipulations as to 285, 291, 299, 310.

25          MS. PERLMETER:  Did Your Honor say 279 as a

1    stipulation?

2          THE COURT:  279.

3          313, the Court notes this individual has, is

4    self-employed, sole income earner, has a work conference in

5    September that they must attend.

6          328, feared for getting a possible demotion by being

7    absent from employment so long.

8          345.  And as to 345, this individual is also a sole

9    income earner and submitted a leave request from jury service

10   based on financial hardship.

11         347, the Court will also remove for hardship primarily

12   due to the migraines and vision issues suffered by this person.

13         351.

14         353 the Court will remove.  I note, and I think

15   defense has this as a hardship as well.  It's not a

16   stipulation, but I understood this person to be undergoing some

17   sort of medical care for prostate cancer.

18         354.

19         361, the Court will remove because this individual

20   indicated just starting a new job and having had surgery in

21   July with some recuperation period necessary.

22         388, it's a stipulation.

23         390, the Court will remove for hardship.  There's a

24   financial and then a medical reason.  Person has a bad back and

25   can't sit for more than 15, 20 minutes at a time.

1          391 is a stipulation.

2          393.

3          396 are all, oh, and 398 all stipulated removals.

4          404, the Court will remove.  This is a person who

5    lives in Yuma, has prolonged sitting pain.

6          405, 411, 418, 420, 421.

7          The Court will exercise its discretion as to 435 and

8    436.  435 had a recent medical diagnosis and needs to attend to

9    that, and 436 starts a new job in August.

10         437 is a stipulated removal, as is 455.

11         465, 478, 479, 481, 501, 508, 516, 521, 529, 531, 536,

12   537, 548, 555, 564, 573, 578, 585, 592, 599, 605, 608, 619.

13         The government requests and the Court also exercises

14   its discretion to remove 627.  This juror has a planned trip to

15   Chicago in late October.

16         642, 646, 650, 653, 665.

17         The Court exercises its discretion and the government

18   points out that 672 is recuperating from surgery and has to

19   take frequent restroom breaks.

20         681, 684.

21         685, while the Court could bring this person in for

22   voir dire, indicates that English is the second language, a

23   financial hardship, and answered with respect to question 64,

24   which I believe are the terms that may be used in the trial as

25   being very uncomfortable hearing those terms.  So I think

1    that's sufficient cause to remove for hardship at least with

2    regard to the financial and potential inability to understand

3    some of the proceeding.

4              695, 703, 704, 718, 746, 750, 752, 754, 757.

5              MS. PERLMETER:  Your Honor, is the Court using

6    discretion as to 754?

7              THE COURT:  Yes, and thank you for calling my

8    attention to that.  This individual is actually employed with

9    the U.S. border patrol and is currently stationed in the Yuma

10   sector, and so I think that's sufficient hardship, so 754 is

11   removed.

12             757, 762.

13             767 indicates -- well, actually has a note from their

14   employer regarding prolonged absence, so the Court will

15   exercise discretion and I think defense noted hardship as well,

16   so --

17             MR. FEDER:  What number, Judge?

18             THE COURT:  767.  Who is speaking?

19             MR. FEDER:  Bruce Feder.

20             THE COURT:  Restate the question or statement.

21             MR. FEDER:  On 763, given what the Court's rulings

22   have been, he says he is unemployed, looking for work.

23             THE COURT:  I did note that, and I wasn't -- so there

24   were a couple of individuals who were unemployed and they

25   were -- they indicated seeking employment.  Some indicated

1   unemployed but also working part-time at something, or being

2   unemployed but attending classes.  So I didn't know where this

3   actually fell in.  I just figured we can bring the individual

4   in and kind of probe a little further because if the person

5   doesn't have prospects of being employed, I don't know, unless

6   somebody has a hard feeling one way or the other.

7            Mr. Feder, you raised it, do you want to --

8            MR. FEDER:  I'm just trying to go by what I perceive

9   is the Court's methodology here and it seemed he fit into that

10  category.

11           THE COURT:  Any objection to removing 763 for

12  hardship?

13           MS. PERLMETER:  Yes, Your Honor.  We think she should

14  come in and be questioned.

15           THE COURT:  All right.  So we will leave 763 in.

16           767 is the note from the employer regarding absence.

17           770, defense indicates hardship.  The Court finds this

18  individual apparently is in a use or lose leave category and

19  intended to use or lose the leave in the fall, and so I'm

20  inclined to remove 770.

21           771.

22           772 indicates having issues, periodic vertigo and it

23  interfering with walking.

24           787, 793.

25           806, the Court exercises its discretion to remove for

1   hardship.  The person has -- I think defense has also indicated

2   hardship.  The person has indicated autoimmune issues and

3   fatigue.

4           809.

5           821, this individual indicates in the process of

6   planning a honeymoon in September and indicates service would

7   interfere with that, and impact employment.

8           MS. PERLMETER:  No objection for 821.

9           THE COURT:  Is there an objection from defense?

10          MR. KESSLER:  This is Eric Kessler, no.

11          THE COURT:  838, 845, 846, 847.

12          857, I note that this individual indicates having

13  hearing issues and has a trip to Los Angeles planned in

14  September, so I will remove for hardship.

15          MR. FEDER:  Which one?

16          THE COURT:  857.

17          MS. PERLMETER:  Your Honor, we would object and we ask

18  the Court to consider bringing him in for questioning.  We note

19  that one of his travel days is on a Friday, and perhaps if he's

20  going to L.A. maybe he is not flying.  Perhaps he can leave in

21  the afternoon.  We thought it might be worthwhile to probe that

22  a little bit.

23          As to the hearing issue, perhaps the Court can

24  accommodate with headphones similar to when an individual needs

25  an interpreter or is also hard of hearing.

1          THE COURT:  Any comment from defense?

2          MR. FEDER:  857?

3          THE COURT:  857.

4          MR. FEDER:  My notes say:  Paid trip, hearing

5    problems.

6          THE COURT:  I think I'm going to remove for hardship.

7    I think it's unfair to have them try to fit their travel

8    schedule around the court's.

9          MR. KESSLER:  Your Honor, Eric Kessler.  Can we move

10   back one to 849?  We show that person as being a sole provider.

11         THE COURT:  I do have that notation, but I think it

12   might -- 849?

13         MR. KESSLER:  Yes.

14         THE COURT:  Is there an objection?

15         MR. BERRY:  One second, Your Honor.

16         MS. PERLMETER:  Your Honor, we would object.  We ask

17   she be brought in for further questioning.  The medical issue

18   is perhaps something that can be controlled with medication and

19   she could provide more information about her other concerns.

20         THE COURT:  We will keep 849.

21         859.

22         I note 862 has child care issues with five and

23   six-year-old.  Remove 862 for hardship.

24         872, 875, 877, 887, 893, 916, 927, 931, 936, 940, 950,

25   954, 955, 956, 960, 1010.

1          MR. PANCHAPAKESAN:  Your Honor, this is Gopi

2   Panchapakesan on behalf of Mr. Brunst.  In my notes I have 981

3   and 990 as sole providers.  So 981 is an essential worker in a

4   nonprofit, sole provider.  And 990 says they are a new manager

5   at a bank and they are required to be there for daily

6   oversight.

7          THE COURT:  Is there an objection first to 981?  981,

8   government?

9          MS. PERLMETER:  No, Your Honor.

10         THE COURT:  981 is removed for hardship.

11         990.

12         MS. PERLMETER:  No objection to 990.

13         THE COURT:  1010.

14         MR. PANCHAPAKESAN:  Your Honor, I'm sorry, 999, this

15  individual says they work with a specific special needs student

16  and that they are integrating that student into school during

17  the time of the trial.  That's 999.

18         THE COURT:  We can probe that further.  I've had

19  jurors have that same sort of comment previously and then you

20  probe a little further and it turns out that there is

21  additional support, and so we'll probe that further with 999.

22         1010, 1014.

23         I noted 1023 has child care and transportation issues,

24  and so I will remove 1023 for hardship.

25         1036, 1038, 1057, 1058.

1        1066, the defense has noted and the Court also

2   indicates that here this individual is going to Lincoln,

3   Nebraska in September.  So we'll remove 1066 for hardship.

4        1067, 1072, 1076, 1078.

5        1084, the Court will remove.  The person is

6   self-employed, indicates a financial concern, feels that the

7   amount of loss will impact his or her career.

8        1088, 1089.

9        11 -- excuse me, yes, 1101.

10       MR. LINCENBERG:  Your Honor, this is Gary Lincenberg.

11  On 1097, the juror indicates that she is breastfeeding a

12  seven-month-old that would cause her hardship, caretaker of

13  seven-month-old.

14       THE COURT:  Is there an objection or a reason the

15  government didn't stipulate?

16       MS. PERLMETER:  She -- there seems to be some

17  inconsistency.  She claims to be the sole provider of income.

18  Later on she also indicates that her husband is a firefighter.

19  Perhaps she has someone that can assist with child care.  And

20  as for nursing a baby, if she needs to pump, then perhaps the

21  Court can give her breaks so that she can accomplish that.

22       MR. LINCENBERG:  What she writes is sole caretaker of

23  infant.  My husband works for the City of Phoenix and is gone

24  24, 48, 72 hours at a time.  He's a firefighter and leaving me

25  as sole caretaker of the infant that she's breastfeeding.

1        THE COURT:  1097?

2        MR. LINCENBERG:  Yes.

3        THE COURT:  The Court will remove for hardship.

4        1101, the Court will remove, travel to San Diego in

5   October, ticketed trip.

6        1105, the Court will remove, financial issues, and

7   this person provides home health care for others.

8        1111.

9        MR. LINCENBERG:  Your Honor, if I may, on 1106, this

10  person says:  I drop off and pick up each of my three children

11  in school everyday.  My wife is a school teacher, so there is

12  no way she can substitute for me.  And then that was it.

13  That's with regard to 1106.

14        THE COURT:  Any objection?

15        MS. PERLMETER:  We would object, Your Honor.  These --

16  we saw that, and we see that the children are also older.  They

17  are nine, 11 and 14.  Perhaps there are alternatives.  Perhaps

18  a bus is available or aftercare, so that perhaps there are

19  alternatives that they could consider.

20        THE COURT:  I'm going to remove for hardship.  That's

21  1106.

22        1111.

23        MR. LINCENBERG:  Your Honor, on Exhibit 1110, the

24  prospective juror notes three trips, notes that the tickets are

25  not purchased because the person is driving, but that the

1   person is in Colorado August 18th through 21 and Missouri

2   September 16th through 24; Utah, October 20th to 23.

3           THE COURT:  I don't know how I missed that.

4   Government, any objection?

5           MS. PERLMETER:  I think the information is because

6   they don't have tickets purchased.

7           THE COURT:  Well, I am going to remove for hardship.

8           1111.

9           1121, the Court will remove.  This individual

10  indicates going to Nashville in September, is concerned about

11  having to travel from Yuma.

12          1128, 1141, 1152, 1170.

13          MR. LINCENBERG:  Your Honor, if I may, sorry for not

14  keeping up with the Court.  On 1148 I raised this realizing

15  that it may be a close call, but it seemed it was a hardship.

16  This person notes:  I am over 70 years old.  I do not have the

17  stamina or physical strength to travel downtown and spend all

18  day for three or four days in a row for 12 weeks.

19          THE COURT:  I missed that somehow.  Government, any

20  objection?

21          MS. PERLMETER:  No, Your Honor.

22          THE COURT:  1148 is removed.

23          1152, 1170, 1189 --

24          MR. LINCENBERG:  I am sorry, go ahead, Your Honor.

25          THE COURT:  1189, 1196.

1            1199, I will exercise my discretion to remove for

2      hardship.  This juror also had interesting responses to

3      questions 53 and 54.

4            1205, 1209.

5            The Court will remove 1230 for hardship.  This is a

6      student, research assistant and working in laboratory during

7      the time of trial.

8            MR. EISENBERG:  Your Honor, excuse me,

9      David Eisenberg.

10           THE COURT:  Yes.

11           MR. EISENBERG:  Your Honor, 1210 is a juror that we

12     noted that has a hardship, not paid during jury service, is

13     listed as a sole provider.

14           THE COURT:  You know, it is one of these issues that

15     courts struggle with this financial burden.  We want a good

16     cross-section of jurors from all economic levels, education

17     levels, and so at some point it might be useful to bring some

18     of these individuals to bring in to probe it a little further.

19     So at this point I'm inclined to leave 1210 in.

20           I mentioned 1230, as the Court noted that this

21     individual is a student.  Will remove for hardship.

22           MR. EISENBERG:  Your Honor, again, David Eisenberg.  I

23     noticed in, let's see, 1221, this is listed as a sole provider

24     of income, the only special ed teacher in her school.  She

25     emphasizes that in paragraph 71.  And then she says she has

1    student obligations, and I think what she's referring to is

2    teaching obligations.

3             THE COURT:  Government.

4             MS. PERLMETER:  We object to the release of this

5    juror.  We ask that she come in, be subject to questioning to

6    see if there are any alternatives at the school.  It's, you

7    know, a hardship on the school.

8             THE COURT:  We will bring her in.

9             1240, the Court will remove for financial hardship.

10            1249.

11            1258 -- excuse me, 1259.

12            1261, 1270, 1273.

13            The Court notes 1278 is going to Dallas from

14    September 11th through the 18th, paying for one of these

15    individuals.  They are taking them to college for the first

16    time.

17            MR. EISENBERG:  May we go back, Your Honor?  Sorry to

18    interrupt.

19            THE COURT:  1278.

20            MR. EISENBERG:  Thank you.  But 1264, I don't think

21    the Court mentioned that.  This is, again, a sole provider for

22    a household of three.  Hard of hearing and hearing loss.  It

23    says:  I don't hear well.  The length of the service would

24    cause a financial burden.  That's question 71.

25            THE COURT:  Objection.

1          MS. PERLMETER:  We object.  Our notes indicate this

2     juror is married, so perhaps there is an alternative form of

3     income.

4          THE COURT:  I think they indicate a sole provider,

5     though.

6          MS. PERLMETER:  Is there a reason why the partner or

7     spouse cannot contribute to the household, or if this person

8     were to serve on the jury?

9          MR. EISENBERG:  Your Honor, that presumes that the

10    juror potential juror is not being forthcoming in the

11    questionnaires.

12         THE COURT:  Well, I tend to agree, but beyond that I'm

13    not -- I guess I'm concerned about having the Court sort of

14    infer that the person's spouse should be working if they are

15    not, you know, and so I'm going to remove for hardship 1264.

16         I have lost my place.

17         MR. EISENBERG:  1283, Your Honor.

18         THE COURT:  1283 notes deafness.

19         MS. PERLMETER:  No objection.

20         THE COURT:  1287, 1292.

21         1298, the Court will remove.  This person is a sole

22    provider, but also going through chemotherapy treatments.

23         MS. PERLMETER:  1296?

24         MR. EISENBERG:  1296.

25         THE COURT:  1296.  I'm sorry, 1296.

1        1292 is stipulated.

2        MS. PERLMETER:  Yes.

3        THE COURT:  1300, 1306, 1308, 1311, 1320, 1321, 1322,

4    1339, 1346, 1354, 1358, 1368, 1379, 1394, 1396.

5        1400, this juror indicates that they have an

6    eight-year-old grandson that they care for.

7        MR. EISENBERG:  May we go back, Your Honor, to 1397?

8    This is David Eisenberg.

9        THE COURT:  Why don't we do this, let's go through all

10   the stipulated ones and then I can let you go backwards, but

11   we'll know that we're going to start with, which one?

12       MR. EISENBERG:  1397.

13       THE COURT:  1397.  So 1400 is removed.

14       MS. PERLMETER:  What?

15       THE COURT:  1401.

16       MS. PERLMETER:  Did the Court say something about 1397

17   or just come back to it?

18       THE COURT:  No, we're going to come back to that.  Let

19   me finish with all of the stipulated strikes.

20       1410, 1434, 1435, 1436, 1447, 1448, 1458, 1487, 1506,

21   1522, 1524, 1533, 1536, 1543, 1561, 1579, 1583, 1586, 1595,

22   1598, 1600, 1612, 1624, 1637, 1650, 1652, 1658, 1659, 1673,

23   1697, 1740.

24       MR. PANCHAPAKESAN:  I'm sorry, Your Honor, I believe

25   1688 was a stipulated cause; is that right?  This is Gopi

1    Panchapakesan.

2            THE COURT:  We are on hardships.  Okay.  Let me --

3    what was the last one?

4            MS. PERLMETER:  The last one was 1740.

5            THE COURT:  1740, 1741, 1750, 1756.

6            MS. PERLMETER:  Is that a Court discretion strike,

7    Your Honor?  I don't see either party marked it.

8            THE COURT:  Sorry, did I say 1758?

9            MS. PERLMETER:  We heard you say 1756.

10           THE COURT:  Oh, I misspoke.  So we have 1750, 1758,

11   1778, 1791, 1796, 1805, 1806, 1811, 1829, 1839, 1865.

12           These are late submissions and so I have them out of

13   order.  Juror No. 414 and 1833.  Going -- sorry, I can't hear

14   you.

15           MR. FEDER:  I have Juror No. 530.

16           MS. PERLMETER:  Yes, we stipulated to that one.

17           THE COURT:  This must have been a late submission

18   because I don't have -- I have 531.  I don't have 530.

19           MS. PERLMETER:  It was a late submission.

20           THE COURT:  Okay.  So that was a stipulated hardship?

21   Okay.  We'll note that 503.

22           MS. PERLMETER:  530.

23           THE COURT:  I am sorry, let me re-note that again.

24   All right.  So it is about four after 4:00 o'clock.  Why don't

25   you take about a ten-minute break.  You can raise -- if there

1    are particular issues that you wish to raise with regard to the

2    hardship removals, you may raise that and see if you can get an

3    agreement from either side or if you want to discuss it during

4    that break period, and then we will move to the cause.

5            And just so you know, removing some of the hardships

6    actually removed some of your cause issues as well.  So we'll

7    stand in about a ten-minute recess and then we can reconvene.

8    I intend to go as far as I can, until about a quarter to 5:00

9    o'clock.  As I mentioned, if we need to build in additional

10   time to -- well, we have to complete this today, I should say.

11   Yeah.  I see Liliana looking at me at the side of her eye.

12   Yes, we can do that.

13           All right.  All rise.

14           (Recess was taken at 4:06 p.m.)

15           (Proceedings reconvened at 4:24 p.m.)

16           THE COURT:  All right.  Please be seated.  Okay.  So

17   it is imperative that we get through this portion so that jury

18   admin office can release those individuals who don't have to

19   appear, so let's plow ahead.  We might actually go just beyond

20   5:00 o'clock, not too much farther beyond 5:00 o'clock.

21           So we left off with Mr. Eisenberg wanted to raise an

22   issue with regard to -- I think we started off with Juror 1397

23   with regard to hardship, and I asked the government to be

24   attentive because I'm going to have you place on the record

25   what -- whether or not you object.  Did you say one -- sorry,

1    1397, Mr. Eisenberg?

2              MR. EISENBERG:  That's correct.  And during the

3    break --

4              THE COURT:  Speak in the microphone.

5              MR. EISENBERG:  During the break I discussed the

6    potential strikes with Ms. Perlmeter and other members of the

7    government.  The government is going to object to 1397.  My

8    position on it is that potential juror says, in paragraph one:

9    I work at a job that requires me to work 40 to 50 hours a week,

10   and so if I get selected I will be out of work with little or

11   no pay.  That's similar to some of the other jurors who had

12   problems with working and not getting paid if they did jury

13   service.

14             So that's the reason why I think he, he or she ought

15   to be excused.

16             THE COURT:  1397, and you have an objection?

17             MS. PERLMETER:  We do.  It seems like he works for a

18   big company like a large chain store, and we would like to find

19   out if the company would reimburse for jury duty.

20             THE COURT:  We will bring in 1397.  Any others from

21   any other counsel?

22             MS. LAWSON:  If we can go backwards.

23             THE COURT:  Who is speaking?

24             MS. LAWSON:  This is Sarah Lawson.  Mr. Larkin.  So on

25   Juror 512, 5-1-2, the juror indicated that she is in the

1   process of a domestic adoption, and it sounds like if she were

2   to serve she would not be able to adopt the baby during the

3   time of the trial.

4           THE COURT:  Did you say 512?

5           MS. LAWSON:  5-1-2.

6           THE COURT:  Yes.  I did indicate that this individual

7   also suffers from low back pain.  Is that the right one?  No,

8   sorry, I have two.  I had my notes in the wrong place.  I also

9   have that the person is going to Indiana October the 1st

10  through October the 8th.

11          MS. PERLMETER:  I think that's our dark week.

12          THE COURT:  Sorry.

13          MS. PERLMETER:  I believe that week is our dark week.

14  We are off from trial October 2nd through the 9th.

15          THE COURT:  That's correct.  I'm going to remove for

16  hardship with regard to the adoption process.

17          MS. PERLMETER:  Can we be heard?

18          THE COURT:  You may.

19          MS. PERLMETER:  We would ask the Court allow her to

20  come in to be questioned.  We don't want to stand in the way of

21  an adoption obviously, but we would like more information.

22  When is the birth mother scheduled to give birth?  If it's far

23  out along the way and the trial will be finished before then,

24  there is a possibility she could sit.  Obviously if the birth

25  is, you know, next week, perhaps the situation would be

1    different.

2              THE COURT:  What is the precise statement of Juror

3    512?

4              MS. PERLMETER:  "My husband and I are in the process

5    of domestic adoption.  We could be called at any moment for a

6    child being born, and would have to be available to get them

7    immediately in any state.  This has been a long and expensive

8    process for us.  We would hate to miss out on an opportunity to

9    receive a child."

10             So it sounds like there is no identified birth mom and

11   that there is a possibility of one.

12             MS. LAWSON:  Also on questioning -- sorry.

13             THE COURT:  I don't know who is speaking and someone

14   needs to come to the microphone.

15             MS. LAWSON:  On question 71 -- this is Sarah Lawson.

16   On question 71, the juror also indicated that she has financial

17   hardship.

18             THE COURT:  All right.  512 is removed for hardship.

19   Any others?

20             MS. LAWSON:  514.

21             THE COURT:  Yes.  This is the individual who suffers

22   low back pain --

23             MS. LAWSON:  That's correct.

24             THE COURT:  -- and uses a walker.

25             MS. LAWSON:  That's right.

1              THE COURT:  514 is removed for hardship.

2              Any other?

3              MS. LAWSON:  577.  This juror is unemployed and

4    actively looking for work.  And she indicated that driving to

5    court will require funds that she does not have.

6              THE COURT:  Is there an objection?

7              MS. PERLMETER:  Yes, Your Honor, there is an

8    objection.  We would ask her to come in and talk about the

9    situation, see if the daily jury fee could assist during this

10   time.

11             THE COURT:  I'm going to overrule and remove for

12   hardship.

13             MS. LAWSON:  1289, which is one of the late jurors, we

14   have a hardship strike on that one as well.  So Juror 1289 is

15   self-employed and only paid if working, and is also the sole

16   provider of income for his household.  And it looks like we

17   struck Juror 313 for the exact same reason.

18             THE COURT:  I can't hear you.

19             MS. PERLMETER:  This is Peggy Perlmeter.  1289 was not

20   one proposed to me during the break, so if I could have two

21   seconds to look this juror up.

22             No objection to 1289.

23             THE COURT:  1289 is removed.

24             MS. LAWSON:  Finally, I want to note that the

25   government agreed to strike 403 for financial hardship.

1          MS. PERLMETER:  That's correct.

2          THE COURT:  403?

3          MS. LAWSON:  That's correct.

4          THE COURT:  Any others?

5          MR. EISENBERG:  Sorry I didn't bring this up before.

6   This is David Eisenberg.  1509, this is a man who has paid

7   vacation planned during the trial dates.  He says:  I am

8   epileptic and at times experience grand mal.

9          THE COURT:  I have that as well.

10         MS. PERLMETER:  We stipulated to 1509.

11         THE COURT:  1509.

12         MS. PERLMETER:  Yes.  During the break I told

13  Mr. Eisenberg no problem.

14         THE COURT:  All right.  1509 is removed for hardship.

15  Any others for hardship?

16         MS. PERLMETER:  I have not one for hardship, but I

17  have a question about Juror No. 8.  The Court started -- this

18  is the very first juror.  The Court struck this juror on the

19  Court's discretion based on Juror No. 8 having a flight,

20  however, I didn't have that in my notes.  So when I pulled up

21  Juror No. 8's questionnaire on the break I didn't see

22  information about this juror having a preplanned trip, so I was

23  wondering if the Court might be willing to reconsider.  This

24  juror doesn't indicate a hardship otherwise.

25         MR. CAMBRIA:  Your Honor, you asked for any others on

1   hardship --

2           THE COURT:  Wait one moment.

3           MR. CAMBRIA:  Okay.  Sure.

4           THE COURT:  Well, apparently I am mistaken.  Juror No.

5   8 indicates no, no hardship.  We will put Juror No. 8 back in

6   the queue.

7           MS. PERLMETER:  Thank you.

8           MR. FEDER:  Did you bring up 114 when we first

9   started?

10          THE COURT:  I noted that in my notes.  114 had a

11  doctor's note.

12          MR. FEDER:  Right.

13          THE COURT:  What was the question?

14          MR. FEDER:  You mentioned it, but we never talked

15  about it.  He has a doctor's note saying he or she is having

16  mental --

17          THE COURT:  Is there an objection by the government?

18          MS. PERLMETER:  No.

19          THE COURT:  114 is removed.  Any others for hardship?

20          MS. BERTRAND:  This is Joye Bertrand.  Starting at

21  1580, like a couple of the other jurors, she is currently

22  breastfeeding a one-year-old.  I believe she's also caretaker

23  for another child.  Her husband works.

24          THE COURT:  I do have that note, seven-year-old child

25  in school and also breastfeeding.

1          MS. BERTRAND:  Yes, ma'am.

2          MR. BERRY:  A lot of people have to drop off their

3     kids to school, of course.  And as Ms. Perlmeter argued

4     earlier, a woman breastfeeding, certainly they can still work

5     during the day.  They can take breaks.  We can accommodate that

6     issue.  Just like if somebody needs to stand up periodically to

7     take back breaks or they have other issues like that, we can

8     certainly accommodate that.

9          THE COURT:  I am going to remove 1580 for hardship.

10         MS. BERTRAND:  Next one, Your Honor, is 1596, 1-5-9-6.

11     This -- the person sounds like they are in some type of kidney

12     disease and her husband has cancer.  I think this is quite

13     burdensome for her.

14         THE COURT:  I did note that this person has various

15     medical appointments that are necessary to attend, 1596.

16         MS. PERLMETER:  Your Honor, we'd ask for her to come

17     in, or him, him or her to come in.  It's only at the very end

18     that this juror mentions that they have diabetes and one

19     kidney, and then that the spouse has appointments along with

20     the juror, but they don't list dates.  We don't know the

21     frequency of the appointments.  Perhaps we should gather some

22     more information about her, him or her.

23         THE COURT:  Well, I'm assuming they are answering the

24     questions relative to the Court's calendar, the trial schedule.

25     So those are listed reasons, and so I'm going to remove for

```
 1    hardship.

 2              MS. BERTRAND:  Thank you, Your Honor.  The next one I

 3    have is 1633, 1-6-3-3, and this person notes a good deal of

 4    anxiety about this matter, and says at one point she just left

 5    a job that almost killed her.  Sounded like this would be quite

 6    overwhelming for her.  She is unemployed, actively looking for

 7    work, and she mentions travel September 19th through 26;

 8    medical surgery appointments, August 16th, and is the mother to

 9    a nine-year-old daughter.

10              THE COURT:  1633?

11              MS. BERTRAND:  Yes, ma'am.

12              THE COURT:  Is there an objection?

13              MS. PERLMETER:  I'm sorry, these were not proposed to

14    us during the break, so give us two seconds to pull up our

15    info.  No objection.

16              THE COURT:  1633 is removed for hardship.

17              MS. BERTRAND:  1642.  1642 represents that they are a

18    student with classes on Tuesday.  At the end of the

19    questionnaire it says:  Quite anxiety producing for him to miss

20    class and then to have to get caught up.

21              THE COURT:  I have that down as well.

22              MS. PERLMETER:  No objection.

23              MS. BERTRAND:  Next one --

24              THE COURT:  1642 is removed for hardship.

25              MS. BERTRAND:  Sorry about that.  1645, husband is
```

1   a --

2           THE COURT:  Which is that?

3           MS. BERTRAND:  Pardon?

4           THE COURT:  16 what?

5           MS. BERTRAND:  1645.

6           THE COURT:  Okay.

7           MS. BERTRAND:  They live out in Pinal County.  Her

8   husband is a farmer and she is the caretaker for the children,

9   in addition to what it sounds like working to supplement the

10  family's income.  She writes:  My husband is a self-employed

11  farmer and does not have a steady income.  We are dependent on

12  my income for basic needs, housing, food, utilities, et cetera,

13  throughout the year.

14          THE COURT:  Is there an objection?

15          MS. PERLMETER:  We object to the release of her.  We

16  understand it's a hard line that we have to consider with child

17  care and working.  This person is married.  The partner does

18  work, and perhaps there is an alternative for child care if

19  they are brought in and questioned and told about how important

20  jury service is to our country.

21          THE COURT:  I think they were told that in the

22  questionnaire, and so I'm going to remove for hardship.

23          MS. BERTRAND:  Thank you.

24          Your Honor, next one I have is 1681.  They are sole

25  provider and also a student with a class schedule.

1          THE COURT:  I think I have this one as well indicating

2    some form of anxiety.

3          MS. BERTRAND:  Yes, I saw that too.

4          Ms. Perlmeter.

5          MS. PERLMETER:  No objection.

6          THE COURT:  1681 is removed.

7          MS. BERTRAND:  Thank you.  Next one is 1683, reports

8    self-employed.  Does not have an income.

9          THE COURT:  Any objection, Ms. Perlmeter?

10          MS. PERLMETER:  No objection.

11          THE COURT:  1683 is removed.

12          MS. BERTRAND:  Thank you.  Next is 1710, 1-7-1-0,

13    graduate student with a class schedule.

14          MS. PERLMETER:  What number?

15          THE COURT:  1710.  I think the there really wasn't an

16    indication of what the class schedule was.

17          MS. BERTRAND:  Uh-huh.  Okay.

18          THE COURT:  We will bring that person in and probe

19    further.

20          MS. BERTRAND:  Next one, 1738, purports to be a sole

21    provider.

22          THE COURT:  This individual apparently provides some

23    sort of a clinical treatment to others and is afraid that the

24    unavailability will disrupt the clients.  I'm inclined to

25    remove for hardship.  Any objection?

```
 1              MS. PERLMETER:  No.

 2              THE COURT:  1738 is removed.

 3              MS. BERTRAND:  Thank you.  Next one is 1766, sole

 4      provider.

 5              THE COURT:  This is a 74-year-old I have down.

 6              MS. BERTRAND:  And also is pending review at the

 7      Veterans Administration for Agent Orange and awaiting medical

 8      appointments with military doctors; takes a lot of medication.

 9              THE COURT:  Any objection?

10              MS. PERLMETER:  No.

11              THE COURT:  There is an indication of digestive health

12      issues.

13              MS. PERLMETER:  We had no objection to 1766.

14              THE COURT:  1766 is removed.

15              MS. BERTRAND:  Thank you.  Next one, 1771, sole

16      provider of income for household.

17              THE COURT:  Is this a person that would have to take a

18      taxi?

19              MS. BERTRAND:  Yes.  Yes.

20              THE COURT:  Any objection?

21              MS. PERLMETER:  No, Your Honor.

22              MS. BERTRAND:  1772.

23              MS. PERLMETER:  No, that was 1771.

24              MS. BERTRAND:  Right.  Moving to 1772.

25              THE COURT:  1771 is removed.
```

```
1              1772.

2              MS. BERTRAND:  Yes, ma'am.  Sole provider of income

3    for household, 1772.

4              THE COURT:  Not much added there, so we'll keep that

5    individual.

6              MS. BERTRAND:  1807, sole provider.  Does some have

7    some plan travel, but --

8              THE REPORTER:  I didn't hear.

9              MS. BERTRAND:  That's 'cause I didn't say it well.

10   Sole provider of income, and no planned travel, but two weekend

11   travel that kind of bumpers on our trial dates, but sole

12   provider is the primary concern.

13             THE COURT:  We will bring that juror in and probe

14   further.

15             MS. BERTRAND:  1813, 1813.

16             THE COURT:  And --

17             MS. BERTRAND:  Job does pay for jury duty, but not for

18   that long of trial, and basically reporting financial hardship.

19             MS. PERLMETER:  Actually says she is not sure.  It's

20   actually they are not likely to pay for this long of a trial,

21   so we ask that she find out and perhaps bring that information

22   in.

23             THE COURT:  We'll bring that juror in.

24             MS. BERTRAND:  1838.

25             THE COURT:  I did note that this individual is
```

1    expecting a grandchild in August, and I think in Louisiana, and

2    indicated a financial hardship.

3         MS. BERTRAND:  Correct.  That was my understanding as

4    well.

5         THE COURT:  Any objection?

6         MS. PERLMETER:  We object.  Obviously perhaps she

7    could see the grandson after the grandson is born on the week

8    we are dark, or on the long weekend, Labor Day weekend.  We

9    could find out when, find out more information, but we object

10   to her release.

11        MS. BERTRAND:  Sounds to me like --

12        THE COURT:  I don't know, Ms. Perlmeter, if you're

13   being realistic to tell a grandmother to don't go to the

14   grandchild's birth or see them right away.  I think that's

15   asking a heck of a lot, so I am going to remove for hardship.

16        MS. PERLMETER:  Also sounds like she is not exactly

17   sure when the mother and father would like her help.  Perhaps

18   there are in-laws or other adults that would be stepping in and

19   she is going to be asked to cover a certain number of months or

20   weeks afterwards, so I think she should come in and provide

21   information about when the expectant parents would like her to

22   be there, and perhaps it's not going to be a conflict with the

23   trial date.

24        THE COURT:  Well, I disagree, so I am going to remove

25   for hardship.

```
 1              MS. BERTRAND:  Thank you, Your Honor.  Next one I have
 2    is 1858.  I'm doing my best with a really bad cold.  I
 3    apologize.  I'm not being lackadaisical about the system here.
 4    1858 --
 5              MR. CAMBRIA:  Cold?
 6              MS. BERTRAND:  -- sole provider of income for
 7    household.  Looks like she's also caring for her four-year-old
 8    grandson, and works with children with special needs.
 9              THE COURT:  We will bring 15, excuse me, 1858 in for
10    questioning.
11              MS. BERTRAND:  1863, please.
12              THE COURT:  This person I note is unemployed,
13    financial hardship, seeking employment, has a four-year-old
14    child.
15              Ms. Perlmeter.
16              MS. PERLMETER:  Your Honor, we object.
17              THE COURT:  It's overruled.  We will remove 1863 for
18    hardship.
19              MS. BERTRAND:  Thank you, Your Honor.  That's all I
20    have.
21              THE COURT:  Government, any removals for hardship that
22    we overlooked?
23              MS. PERLMETER:  No, Your Honor.
24              THE COURT:  Let's --
25              MR. CAMBRIA:  I have some, Your Honor, for hardship.
```

1          THE COURT:  All right.  Well, let me inquire of

2     counsel because we're coming upon the 5:00 o'clock hour and we

3     haven't even started with your cause.  We need to get this list

4     to the jury admin by Thursday next week, and I am not here.  So

5     are counsel able to stay until 6:00 when they turn off the air?

6     That's the -- that's the critical question.

7          MR. CAMBRIA:  We will make you a deal.  Can we take

8     our coats off when they take off the air and you can take your

9     robe off?

10         THE COURT:  No disrobing here.

11         MS. BERTRAND:  I need to check with my husband.

12         MS. PERLMETER:  We can stay.

13         THE COURT:  I think we can get -- I think we can get

14    this accomplished in that way.

15         Mr. Eckstein.

16         MR. ECKSTEIN:  I was going to ask if Mr. Larkin can be

17    excused for the rest of this setting?

18         THE COURT:  It's up to him.

19         MR. ECKSTEIN:  He is willing to do it.

20         THE COURT:  Yes, it's -- I understand.

21         MR. LARKIN:  Thank you, Your Honor.

22         THE COURT:  You're welcome.  Everyone else okay?

23    Okay.  Ms. Bertrand, are you?

24         MS. BERTRAND:  It should be fine.  Let me -- I need to

25    give my husband a heads-up.  We have a transportation thing

1    this evening.  Should be fine.

2            THE COURT:  All right.  So sorry, I was with the

3    government now.  You had other -- did you have any hardship?

4            MS. PERLMETER:  No.

5            THE COURT:  Mr. Cambria.

6            MR. CAMBRIA:  Thank you, Your Honor.  Number 65

7    indicates apparently some sort of new position, indicating

8    missing three months would impact on him, and that was all the

9    information I had on him, but apparently it would impact on his

10   job.

11           THE COURT:  Do you have 65, is that --

12           MR. CAMBRIA:  65.  65.

13           THE COURT:  Government.

14           MS. PERLMETER:  Mr. Cambria, there is very little

15   information.  We'd ask that he come in.

16           THE COURT:  I think we will bring the person in.

17           MR. CAMBRIA:  Okay.  Next one is, let's see here, next

18   one I have is 109.  This is a person who indicates they work as

19   a temp and would not earn any money during the trial.

20           THE COURT:  Ms. Perlmeter.

21           MS. PERLMETER:  No objection to 109.

22           THE COURT:  109 is removed for hardship.

23           MR. CAMBRIA:  114, Your Honor, indicates that they do

24   not have any transportation and they are the sole earner.

25           THE COURT:  I thought 114 was removed.

1          MR. CAMBRIA:  Sorry.

2          MS. PERLMETER:  I don't have 114 removed.  I have 114

3     on.

4          THE COURT:  Isn't 114 the one with the doctor's note?

5          MS. PERLMETER:  Yes, and I recall the Court saying,

6     let's go back to this one or make a note of this one.

7          THE COURT:  I wanted to determine whether you observed

8     the doctor's note.  Sometimes the doctor's note comes in late

9     or it's an attachment.

10         MS. PERLMETER:  We did observe the doctor's note.

11         THE COURT:  114, is there an objection to removal?

12    Sorry, I thought I removed 114.  Do we have an agreement as

13    to -- according to Liliana, who is taking copious notes, we

14    removed 114.

15         MR. CAMBRIA:  Next one I have is 146, says they can't

16    sit or stand for long periods of time due to an injury, and

17    also have a financial hardship.

18         THE COURT:  Ms. Perlmeter.

19         MS. PERLMETER:  We don't see any indicated hardships

20    or financial hardships for 146.  We acknowledge the sitting and

21    standing for long periods of time, which the Court can

22    accommodate with stretch breaks.

23         THE COURT:  We'll bring 146 in.

24         MR. CAMBRIA:  The next one is 153.  It says:

25    Self-employed, no income if not working.

1          THE COURT:  Any objection?

2          MS. PERLMETER:  No.

3          THE COURT:  153 is removed.

4          MR. CAMBRIA:  Okay.  Let's see here.  180, sole

5    provider, has a travel issue.

6          THE COURT:  Ms. Perlmeter.

7          MS. PERLMETER:  No objection.

8          THE COURT:  180 is removed.

9          MR. CAMBRIA:  Next one I have is 195, sole

10   practitioner, no undercover clients, no income if not working,

11   sole breadwinner, child care issues and transportation issues.

12   That's sort of a full plate here.

13         MS. PERLMETER:  No objection.

14         THE COURT:  195 is removed.  I saw that.  I was

15   inclined -- I have had lawyers come in before in jury panels

16   and it pains me when they say they can't serve because they

17   have hearings, and I often wonder what are you going to do when

18   you ask juries to serve in your trials?

19         MS. BERTRAND:  Most of them don't do trials anymore.

20   That's the key.

21         THE COURT:  Next one, Mr. Cambria.

22         MR. CAMBRIA:  240, said he and his wife have one car,

23   one cell phone, and share that for getting to work.  Looks like

24   they have a transportation issue.

25         THE COURT:  I have also noted one car for the family.

1    This person is a consultant and apparently may lose clients.

2    Any objection?

3              MS. PERLMETER:  No objection.

4              THE COURT:  240 is removed.

5              MR. CAMBRIA:  Next one I have is 260, who says they

6    are shift supervisor, covers for missing employees and no one

7    can cover their job.

8              THE COURT:  Yeah.  This is the Albertsons grocery

9    employee, and apparently covers for his staff because he is

10   a -- he or she is a supervisor.

11             MS. PERLMETER:  Your Honor, we object.  This is a

12   hardship for the company, but we ask the juror to come in.

13             THE COURT:  We will bring 260 in.

14             MR. CAMBRIA:  Next one I have is 262.  He says they

15   have a paid vacation that clashes with our trial.

16             MS. PERLMETER:  This person indicates they have a

17   ticket purchased on September 9th, but they don't indicate how

18   long the trip is going to be and how long they will be gone.

19   Sorry, September 6th.  Okay.  I will be corrected.  We don't

20   have an objection.

21             MR. CAMBRIA:  What is happening on that?

22             MS. BERTRAND:  No objection.  You're good.

23             THE COURT:  262 is removed for hardship.

24             MR. CAMBRIA:  Thank you.  That's all I have, Your

25   Honor.

1          THE COURT:  Anyone else?  Ms. Perlmeter?

2          MS. PERLMETER:  No, Your Honor.

3          THE COURT:  All right.  So those are hardship

4    removals.  Let's move to cause.

5          While I was going to have my staff play to you a very

6    nasty phone message by a juror, but he's removed for hardship,

7    who took umbrage at the great length of the questionnaire.  And

8    though completed the questionnaire, left a profanity-laced

9    message that unfortunately went to our jury administrator, so

10   you are spared the necessity of listening to that horrible

11   message.  But in any event, that person has been excused.

12         Now, let's move to cause.  By my review, the

13   stipulated cause strikes are 144, 1026.

14         MR. FEDER:  I have 465.  Maybe I am misreading this.

15         THE COURT:  Well, I'm only going through the

16   stipulated cause strikes that have not -- those jurors have not

17   already been removed through our hardship removal process.

18         MR. FEDER:  I don't have 465 as having been removed.

19   Is it?  Never mind.

20         MS. PERLMETER:  We stipulated to 465 for hardship and

21   cause.

22         THE COURT:  Yes.  That's what I have as well.  So I

23   lost my place now.

24         1026, 1688, 1779, and I believe those were the only

25   cause stipulations.

1          So let me turn to Juror 23.  Who's making the

2   argument?

3          MR. CAMBRIA:  I am, Your Honor.  Yeah, this is the

4   juror that said the defense has the burden of proof, and also

5   the defense has to testify.

6          THE COURT:  I think the individual can come in and

7   listen to the jury's instructions and we can probe that a

8   little further, so --

9          MR. CAMBRIA:  The problem with situations like that is

10  that we can't have a situation where the Court basically says:

11  You have to follow my instruction.  And then the juror says to

12  themselves:  Oh, gee, I'm forced.  That wouldn't bode well for

13  the defense.

14         THE COURT:  No.  I think the way that the Court probes

15  the juror is the potential question about -- there is a

16  question, I don't remember the exact phrasing, but you'll be

17  instructed by the Court as to what the law is.  Do you have any

18  difficulty in following that directive?  If they have a

19  response, and then we'll probe it further.  And I will make a

20  notation that this individual answered in this way.  And

21  certainly if the person does not answer, I can follow what --

22  does not raise their card to that question, I can follow up and

23  say:  You indicate that there is this understanding on your

24  part that it's the defense burden.  Now you've been told that

25  it's the government's burden, or something of that nature, and

1    see what they say.

2              MR. CAMBRIA:  Your Honor --

3              MR. LINCENBERG:  Your Honor, may I add in?  This is

4    Mr. Lincenberg.

5              THE COURT:  Yes.

6              MR. LINCENBERG:  The questionnaire was designed this

7    way so that that was already told to the prospective jurors.

8    32 says:  In a criminal case the defendant has the presumption

9    of innocence, presumed innocent.  Government has the burden of

10   proof.  The defendant has the right to remain silent and not

11   testify.

12             So after making that statement to the prospective

13   jurors, when a juror comes in and says:  Well, I agree that a

14   defendant should be required to prove his innocence, I believe

15   that a defendant should be expected to testify.  That, I would

16   submit, is as strong of a cause challenge for the person as

17   there could be.  It's not in a vacuum that they are giving

18   these answers.  They are giving these answers after they are

19   instructed.

20             THE COURT:  Ms. Perlmeter.

21             MS. PERLMETER:  Your Honor, none of the jurors have

22   been instructed that it is the Court that instructs on the law,

23   and that the jurors' duty as serving as jurors is to follow it.

24   They haven't been given that instruction.

25             Question 32 dealing with the presumption of innocence

1    is something that is -- these responses are not uncommon for

2    jury trials.  It is a common response for folks who have not

3    served or who are not embedded in the criminal justice system

4    to have a natural curiosity and want to hear what a criminal

5    defendant may have to say.

6          Many of them from past trials, after they are

7    explained what the law is and that they are required to follow

8    it as the Court instructs, once they receive that information

9    they understand and they either agree to follow the law or they

10   don't.

11         MR. CAMBRIA:  I would like to add to that.  Here they

12   have been specifically advised as to what the situation is,

13   what the law is, and they nevertheless have indicated they

14   couldn't.  Now, what happens if the Court says the same thing?

15   You have to do all that.  Their answer isn't going to be "no"

16   to the Court.  The answer is going to be "yes" to the Court.

17         THE COURT:  You'll be very surprised.  You'll be very

18   surprised.  These jurors are very candid during this process.

19         MR. LINCENBERG:  Some of them are, but this is really

20   where, without the pressure of the Court saying:  Will you

21   follow my instruction?  They are giving their truthful answer,

22   and it shows a bias, which is the most important element of

23   cause from the defense point of view.

24         MR. CAMBRIA:  I think it's an honest answer also.  Why

25   should we browbeat somebody, and I am not indicating you would,

1    but the idea is when a judge in this court says:  Well, you

2    have to X, Y and Z, I think at that point they've been honest

3    and we're not respecting their honesty.  That's going to be

4    their belief.  That is their belief.  They were informed of the

5    law and they expressed their honest belief.

6            THE COURT:  Well, I am going to overrule the request

7    and I will bring the juror in.

8            All right.  The next one I have is 25.

9            MR. CAMBRIA:  It's the same situation.  And in

10   addition, they say they will have an issue with looking at

11   evidence.  But again, a situation where they've been, been

12   advised as to what the rules are, they honestly give an answer,

13   and you know, now they are put in the position of capitulating

14   basically.

15           THE COURT:  What is the specific question that is

16   objectionable, Mr. Cambria?

17           MR. CAMBRIA:  I'm sorry?

18           THE COURT:  What is the specific question?

19           MR. CAMBRIA:  The specific one is, again, that they

20   said the defendant should testify.  And second thing is,

21   although as far as I know, the other thing is they may not look

22   at evidence if they deem it to be something that involves a

23   child.

24           THE COURT:  Well, I think it's different.  The

25   statement here is:  Could not look at child pornography

1    evidence.

2           And as you know, this is not a child pornography case,

3    and there will not be, as I understand it, photos or exhibits

4    of child pornography.

5           MR. CAMBRIA:  But it depends what they think that is.

6           THE COURT:  And I think that's worth probing.  What is

7    the government's position?

8           MS. PERLMETER:  We object to this juror being stricken

9    for cause.

10          THE COURT:  And I am going to keep Juror 25 in the

11   pile for consideration.

12          MR. LINCENBERG:  Your Honor, the government didn't

13   respond to the Court's specific question, but as I recall from

14   the exhibits at the last trial, this case is -- the government

15   intends to have this case replete with pictures of either naked

16   or semi-naked women.

17          THE COURT:  That's not child pornography.

18          MR. LINCENBERG:  The government also intends to bring

19   in with some of these witnesses their age, and some of these

20   people who are advertising lied about their age, but they were

21   minors.

22          THE COURT:  Is there evidence of child pornography in

23   the case?

24          MS. PERLMETER:  No.

25          THE COURT:  And I think that's the distinction.  There

1    is a distinction about what is child pornography.

2              MR. LINCENBERG:  That's helpful to know that there

3    will be no exhibits shown which would need a definition of

4    child pornography.

5              THE COURT:  Juror 25 stays in.  The next is 65.

6              MR. CAMBRIA:  Again, this is someone who indicates

7    some kind of employment hardship.

8              THE COURT:  Some sort of what?  Sorry.  My

9    transcription machine is not working, so I don't know what you

10   just said.

11             MR. CAMBRIA:  I am sorry.  I thought that we raised

12   this on hardship, Your Honor.  This was someone that was saying

13   that they -- that it would impact on their employment.

14   Apparently they have a new employment assignment and it would

15   impact on them.

16             THE COURT:  No, this person is not removed for

17   hardship, and there is no indication of financial hardship.  In

18   fact, it says no.

19             MR. CAMBRIA:  The other statement here, he's

20   indicating that because the nature of this case may have an

21   impact on him.  Also indicating perhaps some claim of knowledge

22   outside the record.

23             THE COURT:  I have a lot of, I think, some answers

24   that basically say I haven't thought about this much.  And

25   although there is an indication that they have had, they say

1    they have strong feelings about pornography on the Internet and

2    they have seen negative impacts to friends through the years,

3    the next question probes whether those feelings would impact

4    their ability to be a fair juror, and they say no.  So I think

5    this person is worth bringing in for probing further.  65

6    remains in.

7              I have 68.

8              MR. CAMBRIA:  68 flat out says they can't be fair.

9              THE COURT:  Yes, I have that in there.

10             Ms. Perlmeter.

11             MR. CAMBRIA:  I'd like to think that's enough.

12             MS. PERLMETER:  Your Honor, there are a number of

13   individuals who have indicated they can't be fair in like the

14   child sexual abuse case and the nature of a sexual assault

15   case.

16             MR. CAMBRIA:  I didn't say that.

17             MS. PERLMETER:  The government does not believe that

18   the juror indicating as such is a strike for cause because this

19   is not a child sexual abuse case or a sexual assault case.

20   We'd like the ability -- for the groups of people who think

21   that they may hear evidence about sexual assault, the details

22   of it, given the, you know, the rulings and the posture of this

23   case, it's going to be limited in such a way that people who

24   may not be able to sit on an underlying charge of sexual

25   assault, for example, or child sexual abuse or child

1    pornography may be able to sit in a case like this.

2          THE COURT:  Let me stop you there, and I understand

3    your desire to make the record, but I think this is an example

4    of a cause strike.

5          The question 51:  Do you have strong feelings about

6    pornography on the Internet?

7          Yes.

8          The follow-up -- the follow-up answer:  I think it's

9    disgusting and it should be banned all together.  I've seen it

10   ruin adult lives.

11         Would these feelings affect your ability to be fair

12   and impartial?

13         Yes.  It's toxic to the brain and can ruin a person.

14         The next question, once again:  It's toxic.  I don't

15   believe anything good comes from that industry.

16         Affect your ability to feel, with regard to being fair

17   and impartial?

18         Yes.  I have strong feelings that it's a disgusting

19   industry.

20         The questions after that are the same.  Including

21   this:  I feel I may have too strong of feelings to be fair and

22   impartial.

23         And so I'm going to -- and then also at 65:  I have

24   strong feelings against anything related to prostitution or sex

25   trafficking.

1        I think this individual with these types of repeat

2   answers to multiple layers of questions is an appropriate

3   removal for cause, so 68 is removed for cause over the

4   objection of the government.

5        MR. CAMBRIA:  Next one I have is 139.  This is another

6   one where not only did they say that the defendant has to prove

7   their innocence, even a step beyond just testifying --

8        THE COURT:  Let me stop you there, Mr. Cambria.  Let

9   me tell you what I have on my list.

10        MR. CAMBRIA:  Okay.  I am sorry, Your Honor.

11        THE COURT:  So the next one I have is 131.

12        MR. CAMBRIA:  Oh, I have that out.

13        THE COURT:  And I may be mistaken.

14        MR. CAMBRIA:  I think we knocked that off for

15   hardship.  Sole provider, monthly doctor visits, newborn, GI

16   issues.

17        MS. PERLMETER:  We had 131 stricken for hardship

18   earlier.

19        THE COURT:  I didn't update the list.

20        139.

21        MR. CAMBRIA:  Yes.  139, again, prove innocence, not

22   even testify, et cetera, but prove they are innocent.  "Not

23   comfortable with the subject matter" is obviously another

24   situation, and then antiprostitution.  So now we're going to

25   start right off with someone who thinks the defendant needs to

1    prove they are innocent, not comfortable being there, and is

2    antiprostitution, which obviously is the part of the

3    government's case.  It just seems that this is the kind of

4    person that can't be fair.

5         THE COURT:  Well, I also think they are pretty firm

6    statements with regard to the prosecution, the answer to

7    question 54 and 56.  I'm inclined to grant the removal for

8    cause.

9         Do you wish to make a record?

10        MS. PERLMETER:  Just for the general category of

11   jurors who have responded that they dislike prostitution or

12   they disagree that prostitution should be legalized, or that

13   they think prostitution is bad, just because they have those

14   beliefs does not mean that they can't necessarily be fair.  And

15   so for this group of people, I think there is like a sliding

16   scale of how disturbed a juror may be and how strong their

17   feelings may be depending on their responses.  So I don't -- we

18   would object to everyone being stricken for cause simply

19   because they say we think prostitution should be a crime, or if

20   it's a law it should stay a law.  Just general statements like

21   that.

22        THE COURT:  That's not a general statement that 139

23   has made.  Focus on the juror questionnaire and the answer.

24   You have specific questions asked of each of these jurors.

25   They have made specific responses.  If their answers are over

1    and over again permeated with a strong feeling, then that's

2    what I look at for cause.

3            You may have some that have an answer that might

4    indicate that they do.  Later on they don't say anything.

5    Those are people that I want to probe further.  But don't paint

6    the questionnaire, the person who answers the question with

7    that broad of a brush.  You have to be very specific here.

8            So with regard to 139, as I mentioned, I do point out

9    that there's an interesting answer to prostitution on the

10   Internet.  "I think it's not good to have pornography on the

11   Internet."

12           Would the feelings affect your ability to be fair and

13   impartial?  Yes.

14           And then they go into some answer related to bitcoin

15   and the market.  And then over and over again:  I don't like

16   it.  Ability to -- it will affect their ability to be fair and

17   impartial because I don't like it.  Feelings of sadness because

18   people have to engage in sex for money.  If they have to do

19   this, I feel sad for them because it puts food on their table.

20   Then indicating they feel that the person should be prosecuted.

21   It should not be legalized.  Such businesses should be barred

22   from doing business.

23           I mean, I think this is the type of juror just

24   permeated this questionnaire with those very clear thoughts.

25           MS. PERLMETER:  We understand the Court's position.

1   Could you please note the government's objection just for the

2   record?

3              THE COURT:  The record will reflect.  139 is removed.

4              I have 146.

5              MR. CAMBRIA:  So do I.  Didn't we discuss financial

6   hardship there?

7              THE COURT:  Yes, we did.  Is it removed?

8              MR. CAMBRIA:  Can't sit or stand.

9              THE COURT:  Yes.  This was the individual who, and I

10  stated that we could probe a little further as to the physical

11  ailment.

12             MR. CAMBRIA:  Beyond that, apparently has a religious

13  problem, if you will, with anything adult, does not want to

14  hear about the topics, I guess let alone see.  I would think

15  with the religious issue and anti-adult and doesn't want to

16  hear about the topics, that this isn't someone who could give

17  the attention and be fair in a case like this.

18             THE COURT:  Ms. Perlmeter, with respect to 146?

19             MR. CAMBRIA:  146.  Then on top of it, it's a

20  hardship.  So we have a situation where they may be

21  uncomfortable physically, financial hardship, which they say

22  they have, and then these other religious issues such that they

23  don't even want to hear about the subject.

24             THE COURT:  Is there an objection?

25             MS. PERLMETER:  No, Your Honor.

1          THE COURT:  146 is removed for cause.

2          153.

3          MR. CAMBRIA:  63?

4          THE COURT:  53 -- 153.

5          MR. CAMBRIA:  I thought we excused that person for

6   hardship.  153, no income if not working.

7          MS. PERLMETER:  I have that in my notes as well.

8          MR. CAMBRIA:  Self-employed.

9          THE COURT:  153 is out.

10          177.

11          MR. CAMBRIA:  I don't have that one.

12          THE COURT:  In looking at 177, this individual, and I

13   didn't catch this, and maybe Ms. Perlmeter raised it, but has a

14   planned trip August 15th through the 22nd to North Carolina,

15   although no tickets have been purchased.  Also has elderly

16   parents in Cleveland who require care visits at any given

17   moment.  What was the other cause reason?

18          MR. CAMBRIA:  I don't have --

19          MS. BERTRAND:  We broke this up into teams.  I think

20   that might be Mr. -- what was the number?

21          MR. CAMBRIA:  I don't have that one.  I go to --

22          MS. PERLMETER:  For 177.

23          THE COURT:  Yes.

24          MS. PERLMETER:  For 177, the juror indicated strong

25   feelings, but then in the next question said they could be fair

1  and impartial as to prostitution and the adult industry,

2  question 52 and 53.

3            MS. BERTRAND:  177 as well.

4            THE COURT:  Well, I don't -- are you reading the same

5  thing that I'm reading, Ms. Perlmeter, because as to question

6  52:  Do you have strong feelings about the adult entertainment

7  industry?

8            Yes.

9            Please explain.

10           It's degrading to women.  And more importantly, it

11 goes against God's word.

12           You're right.  She did say it would not affect her

13 ability to be fair and impartial.

14           MS. BERTRAND:  She does say --

15           MS. PERLMETER:  Same response implicated for 53.  She

16 also says she could be fair and impartial.

17           THE COURT:  Well --

18           MS. BERTRAND:  She also says in response to 66, you

19 know, this question is kind of weighted, like you think people

20 would know her answer honestly, and she says that drugs and

21 alcohol would diminish a witness' credibility.  That's going to

22 be the reality of some of these witnesses that they are going

23 to be former addicts.

24           THE COURT:  Well, again, with regard to that answer

25 the Court can instruct the jury.  I think this person is worth

1    bringing in just because there is some inconsistencies in the

2    way that the answers are laid out.  Clearly strong feelings,

3    but then there's indication that she is willing to set aside

4    those feelings and participate, so we'll bring 177 in.

5            The next one I have is 180.

6            MS. BERTRAND:  I have that marked as also a hardship

7    strike.

8            MS. PERLMETER:  I do have 180 removed.

9            THE COURT:  180 has been removed.  201.

10           MR. CAMBRIA:  This is another person who puts the

11   burden on the defense even though the questionnaire makes it

12   clear that the burden is not on the defense.  That's what they

13   expect.

14           THE COURT:  Ms. Perlmeter.

15           MS. PERLMETER:  As to question 32, we ask the juror be

16   brought in, be told, be instructed that the Court instructs on

17   the law; that they need to follow it.  Similar to our arguments

18   previously for our other objections to question 32.

19           THE COURT:  I agree.  We will keep 201 in.

20           237.

21           MR. CAMBRIA:  237 is another one who believes that the

22   defense should testify.  That's basically all I have on her

23   even though there is a, you know, a question indicating that

24   the defense, more than one, doesn't have the burden and doesn't

25   have to testify, so another person who expects that.

```
1          THE COURT:  I think this individual also indicates a

2   disagreement with the statement:  A defendant in a criminal

3   trial should be required to prove his or her innocence, and

4   they disagree, and so I think there's opportunity to probe this

5   individual further.  So 237 will remain.

6          I have 325.

7          MS. LAWSON:  Your Honor, this is Sarah Lawson for

8   James Larkin.  325 indicated on five separate occasions that

9   they cannot be fair and impartial.  This is another one of

10  those questionnaires where it was just permeated on questions

11  25 to 26, 28 and 31.  The juror indicated that when a person is

12  arrested, indicted or tried --

13         THE COURT:  Can you bring the microphone closer to

14  you?  Thank you.

15         MS. LAWSON:  When a person is arrested, indicted and

16  tried, it's more likely than not that the person is guilty.

17  And if it's not, it's because of a technicality.

18         MS. PERLMETER:  Answer to 26:  Would it impact your

19  ability to be fair and impartial?  This juror said no.

20         MS. LAWSON:  On question 28, she said it would impact

21  her from being fair and impartial.  On question 25 it was the

22  same answer, question 53, question 52, question 51.

23         THE COURT:  It's a somewhat an inconsistent answer, I

24  think.  Well, actually, no, there is an indication by this

25  individual that it will affect her ability to be fair and
```

1   impartial, and that is the answer, this answer:  In my opinion

2   when someone is arrested, charged, filed and case goes to

3   trial, more likely than not the person is guilty.  And if the

4   person is found not guilty, it is usually based on a

5   technicality.

6        That's the answer given for question 51, 52, 53.  And

7   and then goes on to say, believes that prostitution is illegal.

8   It's wrong.  It should not be legalized.  Makes a comment on

9   56.  And so yes, I think this individual should be removed for

10  cause.  325 is removed.

11       I have 410.

12       MS. LAWSON:  Your Honor, I think you skipped over 350,

13  but based on the Court's previous rulings about question 32 --

14       THE COURT:  What was that, 350?

15       MS. LAWSON:  350, uh-huh.  We are willing to withdraw

16  this objection to 350.

17       THE COURT:  All right.  I have 410.

18       MS. LAWSON:  Juror 410, the juror expressed that they

19  think the defendant should be required to prove his or her

20  innocence on question 32.  And then on question 64 they

21  indicated they are not thrilled about the topic of sex, but

22  would be able to discuss it.

23       MS. PERLMETER:  We object.  We ask that this juror be

24  brought in to be questioned.

25       THE COURT:  I think so as well.  The answers indicate

1    a dislike for the area of pornography and adult entertainment,

2    but the answers are not passionately strong.  We can probe

3    further.  410 remains.

4           I have 429.

5           MS. LAWSON:  Very similar reasons.  This juror thinks

6    the defendant should be required to prove his or her innocence

7    and expects the defendant to testify, and also indicated she

8    will not be able to discuss sexually explicit topics.  She is

9    not sure she will be able to do that.

10          MS. PERLMETER:  Correct.  She says she is not sure, so

11   we would like an opportunity to ask her some questions to see

12   if she can be rehabilitated.

13          This juror otherwise indicates they can be fair.  And

14   as like question 32, the presumption of innocence will be

15   explained to this juror.

16          THE COURT:  I think we should bring this juror in.

17   There's also some indication it's kind of an inconsistent

18   answer about her husband having asthma.  She's not

19   uncomfortable with coming in with regard to COVID, but we'll

20   bring 429 in.

21          I have 451.

22          MS. LAWSON:  This juror is extremely familiar with the

23   case, and he made it clear that he could not be fair and

24   impartial.  He recalled listening to a 2018 podcast episode

25   about this matter.  He also has a strong family history and a

1   lot of emotions surrounding Backpage.  He indicated he could

2   not be fair and impartial because his father-in-law was using

3   Backpage and Craigslist to solicit prostitutes on business

4   trips which resulted on criminal charges.  You could tell that

5   there is a lot of emotion there.

6           THE COURT:  Government.  Ms. Perlmeter.

7           MS. PERLMETER:  No objection.

8           THE COURT:  451 is removed for cause.  I have 465.

9           MS. PERLMETER:  Your Honor, I have 465 as a stipulated

10  hardship and cause strike.

11          THE COURT:  You may be right.  Let me double-check.

12          MS. PERLMETER:  465.

13          MS. LAWSON:  We do as well.

14          THE COURT:  465.

15          MS. LAWSON:  465.

16          THE COURT:  All right.  So 465 has been removed

17  apparently.  I didn't have him down, or her.

18          591.

19          MS. LAWSON:  What about 512?

20          THE COURT:  512, did you say?  That individual I

21  thought was removed.

22          MS. LAWSON:  Sorry.  You're correct.

23          THE COURT:  565 was removed.  591.

24          MS. LAWSON:  Your Honor, I don't have 565 as being

25  removed in my notes.

```
 1              THE COURT:  We just did.  565.

 2              MS. LAWSON:  565 is removed.

 3              THE COURT:  I was told, I may have misheard, I thought

 4    you said that was a stipulated --

 5              MS. LAWSON:  465 was stipulated.

 6              THE COURT:  465, that's what I said.  Didn't I say

 7    that, 465, 465?

 8              MS. LAWSON:  I am getting confused with 465 and 565.

 9              THE COURT:  565.  Let's start over.  565 is or is not

10    removed?

11              MS. LAWSON:  Not removed.

12              THE COURT:  What is the issue with 565?

13              MS. LAWSON:  565, this juror is not sure whether she

14    could be fair and impartial.  She indicated on several

15    questions there was a possibility that she could not be fair

16    and impartial, and she may not be able to hear evidence and

17    deliberate on sexually explicit evidence.

18              MS. PERLMETER:  She is not very firm on her responses.

19    She is not sure, she may not, may be.  But as to the questions

20    51, 52, 53, she indicates she can be fair and impartial.

21              THE COURT:  I think we need to bring the individual

22    in, and please note that there's also indication of a concern

23    about employment.  She is checking with an employer as to what

24    the impact, so we will bring 565 in.

25              591, this was government's cause.
```

```
 1          MS. PERLMETER:  Yes.  We are moving to strike this
 2   juror for cause.  This juror is biased against law enforcement
 3   based on an experience regarding the juror's son in a domestic
 4   violence incident bought by a, quote, crazy ex, unquote,
 5   involving false accusations.  The prosecution and the
 6   authorities were very unfair, and they just wanted a -- they
 7   just wanted a prosecution.  It would affect the juror's ability
 8   to be fair and impartial.
 9          Additionally, this juror read about the, quote, hung
10   jury, because the government mislead jury with false
11   allegations about sex trafficking, and then made comments about
12   how the case is about escorts placing ads in their papers.
13          THE COURT:  We did not indicate as well that this is a
14   sole income earner for the household, has no backup to perform
15   duties, would require a taxi or a rideshare to report, so we
16   will remove 561 for hardship.
17          MS. PERLMETER:  591.
18          THE COURT:  Sorry, I -- it's late in the day.  591.
19          623.
20          MR. KESSLER:  Eric Kessler.  This individual did not
21   complete question 32, but indicated that if the case involves
22   something of a sexual nature, that he cannot be fair.  Question
23   64.
24          THE COURT:  And I think that is a single answer.
25   There are multiple other areas where the individual answers no
```

1    with regard to question 51 through 55, that the feelings

2    wouldn't affect their ability to be fair and impartial, so we

3    will keep 623 in and probe further.

4            I have 624.

5            MR. KESSLER:  Again, Eric Kessler.  The individual

6    indicated in question 53 that he or she could not be fair if

7    the subject matter was prostitution, and there may also be a

8    hardship issue with this person.

9            THE COURT:  Yes.  They're a sole provider, financial

10   hardship indicated.

11           Ms. Perlmeter, the answer to 71 -- ah, this individual

12   is also starting a new job, has no vacation time.  Also

13   indicates at 73:  Making the following feelings known to the

14   Court and parties.  I strongly oppose coercion, manipulation,

15   brainwashing for perpetrator's financial gains.

16           Any objection to removal for hardship and cause, 624?

17           MS. PERLMETER:  No.

18           THE COURT:  624 is removed.

19           629.

20           MR. KESSLER:  Your Honor, we withdraw that.  That's a

21   Fifth Amendment issue, except we do have hardship issues with

22   that person, sole provider, paid vacation for August 31st.

23   That would be a financial hardship.

24           THE COURT:  Yes.  It says:  Only breadwinner right

25   now, and has plans, paid vacation plans August 31st.  Any

1    objection to removal for hardship, 629?

2              MS. PERLMETER:  No.

3              THE COURT:  645.

4              MR. KESSLER:  This person also indicated that they

5    disagree with portions of the Fifth Amendment, but there is

6    again a hardship issue.  This is the sole supporter for the

7    family.

8              MS. PERLMETER:  Your Honor, this juror says he's a

9    sole provider, but doesn't seem to give a lot of info.

10   Indicates single word answers to a lot of questions, and says

11   they can be fair and impartial as to the questions in 51

12   through - the questions in the 50s.

13             THE COURT:  I'm going to remove this individual.  I

14   didn't focus on this set of questions really, but there's a

15   COVID concern.  Indicates wife has a kidney transplant, is

16   immunocompromised, and so I am going to remove 645 for

17   hardship.

18             669.

19             MR. KESSLER:  I think we have 660 as well.  660,

20   unless he was removed for hardship, we were moving to strike

21   him for cause.

22             THE COURT:  Ms. Perlmeter, I think I have him as

23   questionable.  I did recognize that this individual is about

24   one-third of his staff is a -- I think it's a troubleman.  Back

25   in my day they used to be called the lineman, APS worker, and

1    is basically on call, one of three power troubleman for APS.

2    So it's very difficult to leave.  I would be inclined to remove

3    for hardship 660.  Any objection?

4             MS. BERTRAND:  That was 663 we were on?

5             THE COURT:  I think Mr. Kessler raised 660.

6             MR. KESSLER:  I did.

7             MS. BERTRAND:  I didn't hear the number.

8             THE COURT:  660 is removed for hardship.

9             MS. PERLMETER:  Your Honor, can we be heard?

10            THE COURT:  Yes.

11            MS. PERLMETER:  We object.  This is a hardship on APS,

12   not so much the juror him or herself.  And then the questions

13   related to cause and bias and fairness he answered -- never

14   mind.  Scratch that.  We withdraw.

15            THE COURT:  All right.  660 is removed.

16            669.

17            MR. KESSLER:  This person simply indicated that he or

18   she could not discuss or listen to the topic of sex, which is

19   what this case is about for three months, and also indicated a

20   hardship with respect to being a sole supporter.

21            THE COURT:  And I note on question 71, there is a

22   mandatory religious holiday that falls on a couple of the trial

23   dates, and I would therefore not be able to attend.  And so I

24   think this individual should be removed for hardship, and I am

25   inclined to do so.  Is there an objection?

1          MS. PERLMETER:  No, Your Honor.

2          THE COURT:  678.

3          MR. KESSLER:  This individual did not answer question

4     32, indicated religious moral objections to prostitution and

5     matters involving sex, and stated that he or she could not sit

6     through this trial.

7          THE COURT:  Ms. Perlmeter.

8          MS. PERLMETER:  We are verifying that.  We see

9     question 51 through 53 juror indicated they have no strong

10    feelings and can be fair and impartial.  They indicate that

11    prostitution is legal, but they also indicate that they can be

12    fair and impartial.

13         MR. KESSLER:  Your Honor, that may be in a general

14    sense, but if the juror is telling us that he or she cannot sit

15    through this trial because of the subject matter and it's part

16    of that person's religion, it would be offensive to that

17    person.  I don't see how that person can listen to the evidence

18    for three months.

19         MS. PERLMETER:  Can you tell us --

20         THE COURT:  Which question did that statement about

21    not sitting through the trial, what --

22         MR. KESSLER:  I don't have the whole questionnaire in

23    front of me.

24         THE COURT:  I don't have that.

25         MR. BERRY:  That's not anywhere for 678.

1          THE COURT:  Yes.  This is Juror 678, and I think I am

2     inclined to leave this person in.  I don't see that statement,

3     and there really is non-answers to most of those probing

4     questions, so 678 remains in.

5          686.

6          MR. KESSLER:  This was more of a hardship.  This

7     person has Fifth Amendment problems, but this person indicated

8     that he or she is the sole support for the family.

9          THE COURT:  I see that.  Employed full-time.  I don't

10    understand the question the way that it's answered because it

11    says:  Financial hardship and not paid during jury duty, no.

12    And then the next answer is:  Sole provider of income for

13    household.

14         We will bring the person in for further questioning.

15         692.

16         MR. KESSLER:  Again, this person had Fifth Amendment

17    problems on question 32, but also from a hardship standpoint is

18    unemployed.

19         THE COURT:  Yes, I'm inclined to agree with regard to

20    the unemployed hardship.  692.  Is there an objection?

21         MS. PERLMETER:  No, Your Honor.

22         THE COURT:  692 is removed for hardship.

23         I then have -- bless you.  I have 710.

24         MR. KESSLER:  Your Honor, the only reason for cause

25    was question 32, so we withdraw that.

UNITED STATES DISTRICT COURT

1              THE COURT:  710 remains in.

2              738.

3              MR. KESSLER:  This person also has Fifth Amendment

4     issues as to question 32.

5              THE COURT:  All right.  We will probe 738 further.

6              I have 765.

7              MR. KESSLER:  765 or 763?

8              THE COURT:  I have 765.  763 is removed for hardship.

9     I have 765.

10             MR. KESSLER:  765 indicated she could not be fair.

11    Question 28.

12             THE COURT:  765 basically says to one of the

13    questions, her husband was a former Phoenix police officer who

14    acted in some undercover capacity regarding Backpage.  I think

15    that's sufficient removal for cause.

16             MS. PERLMETER:  No objection, but I do see that 763 is

17    in according to my notes.

18             THE COURT:  763 is in?

19             MS. PERLMETER:  That's what I see.

20             THE COURT:  Oh, this individual I noted, this is a

21    stipulated hardship strike.  I'm sorry.  I am looking at the

22    wrong one, 763.  This is an individual who's unemployed looking

23    for work, you know, I think with these individuals that

24    indicate that it would be a hardship, for those reasons they

25    should be removed for hardship reasons.  So 763 is out for

1  hardship.

2          808.  This is, again, this is the same sort of

3  unemployed, actively looking for work.

4          MR. KESSLER:  Also a student, and had problems with

5  the Fifth Amendment.

6          THE COURT:  Any objection for hardship removal?

7          MS. PERLMETER:  No, Your Honor.

8          THE COURT:  I have 826.

9          MS. PERLMETER:  Was the last 808?

10          THE COURT:  Yes.

11          MR. KESSLER:  826, again, Fifth Amendment issues.

12  That was the only basis.

13          THE COURT:  We will keep 826 in.  914.

14          MR. PANCHAPAKESAN:  914.

15          MS. BERTRAND:  849 was struck for hardship?

16          THE COURT:  I did not strike 849.

17          MS. BERTRAND:  I believe defense also noticed that one

18  for cause.

19          MR. KESSLER:  849 had Fifth Amendment issues, but also

20  a sole provider.

21          THE COURT:  Objection to removing for hardship?

22          MS. PERLMETER:  We argued this one already.

23          THE COURT:  I think so.

24          MS. PERLMETER:  We discussed this one for hardship

25  already, 849.

1          THE COURT:  849 is removed for hardship.

2          MS. PERLMETER:  Your Honor, we argued 849 already.

3     The government asked for 849 to remain.  The Court granted

4     that.  This is the one with the thyroid, or without the

5     thyroid.

6          THE COURT:  I have sole provider, financial hardship,

7     but I do have a notation to keep them in the queue.

8          MS. PERLMETER:  She indicated that she was a sole

9     provider.  Didn't provide a lot of information.

10         THE COURT:  Yes, I think there was more probing

11    needed, so we keep 849 in.

12         Okay.  914.

13         MR. PANCHAPAKESAN:  Your Honor, Gopi Panchapakesan.

14    On 914, this is one where the bias kind of infects the entire

15    questionnaire, so I'll direct the Court to questions 51 through

16    53 and 65.  In response to 51, the juror says:  I believe

17    pornography is just like a drug and changes the makeup of our

18    brains.  It can lead to a deeper and darker messed up things

19    and should be banned.

20         On 53 the juror says:  I think there is a lot of

21    control and manipulation in prostitution that we do not see or

22    understand.  They are trapped.  And then in response to 65:  Is

23    there anything about the subject that would make it difficult

24    for you to be fair and impartial?  Yes.  Prostitution.

25         MS. PERLMETER:  Your Honor, with regard to question 52

1    and 53, while they do indicate strong opinions, they ultimately

2    did as to both questions say that they could be fair and

3    impartial.

4          THE COURT:  Well, I'm also looking at answer to 56.

5    It says:  Prostitution is a pathway to a world that is dark and

6    creepy.  It's never enough with people, and leads to creepier

7    things.  And then on the back it indicates, 71, that they are

8    currently looking for another job.  So I am going to remove for

9    hardship and cause 914.

10         945.

11         MR. PANCHAPAKESAN:  945, we are willing to withdraw

12   our objection at this time.

13         THE COURT:  945 will remain in the pile.

14         958.

15         MR. PANCHAPAKESAN:  958, Your Honor, direct the Court

16   to responses to question 64 and 71.  On 64 the individual says

17   they are very uncomfortable hearing about and commenting on

18   sexual activity.  In response to 71:  Is there any reason why

19   you prefer not to serve?

20         The juror says:  Yes, as a practicing Catholic I am

21   not comfortable hearing about or discussing sexual activity of

22   others.

23         THE COURT:  Any objection?

24         MS. PERLMETER:  We do object.  It's not everyone's

25   topic of choice for discussion.  That can be understandable,

1    however, as to the prostitution-related questions, adult

2    industry oriented questions, she indicated no strong feelings

3    and said she could be fair.  Given that this is one of the --

4    this is more towards, you know, the topic is not one that I

5    would choose to discuss, but this is, again, not a child sexual

6    abuse case and not a child pornography case.

7              MR. PANCHAPAKESAN:  There is nothing in this answer

8    about child pornography.  It's about sexual activity broadly.

9              THE COURT:  And I also think that there's -- I think

10   it's worth keeping this juror in for probing because in an

11   answer to one question he or she basically said it's not my

12   place to judge other people's lifestyle choices, so we will

13   keep 958 in.

14             981.  We are at the 6:00 o'clock hour.  The air, I am

15   told, will stay on until 7:00, and hopefully we will need that

16   air by 7:00, so let's plow through.

17             One second.  If you wish to leave, my student summer

18   externs have been diligently sitting there observing all of

19   your professionalism, but I am going to release them because

20   they are free labor.

21             MR. LINCENBERG:  Your Honor, we object to the students

22   being released.

23             THE COURT:  If you would like to, please.  All right.

24             MS. PERLMETER:  Your Honor, is it okay if I step away

25   for five minutes?  I am going to let my family know I am

1    staying later.  Mr. Berry will cover in my absence.

2            THE COURT:  Yes.  We are at 981.

3            MR. PANCHAPAKESAN:  I believe 982.  I believe the

4    Court struck 981 for hardship.

5            THE COURT:  Yes, 981 is out.  990.

6            MR. PANCHAPAKESAN:  In my notes I have the same for

7    that.

8            THE COURT:  I have a notation, yes.

9            997.

10            MR. PANCHAPAKESAN:  On 997 I direct the Court to the

11    responses to questions 30, and then 71 and 73.  I believe this

12    individual's deceased husband was a police officer, and

13    throughout the questionnaire she says, I quote, "always side

14    with law enforcement," and she repeats that --

15            THE COURT:  I see that.

16            MR. PANCHAPAKESAN:  -- a couple times.

17            THE COURT:  Yes, I do.

18            MR. BERRY:  No objection.

19            THE COURT:  997 is removed for cause.

20            999.

21            MR. PANCHAPAKESAN:  On 999, Your Honor, I will direct

22    the Court to questions 39, 51 and 71.  This juror indicates in

23    response to 39, quote, "This is not a topic I would at all be

24    fair or impartial about having a daughter being a victim of

25    rape" --

1    THE COURT:  And I do note with 999 there is a hardship

2    indication here.  Sole provider.  And then also in answer to

3    question 13, they only have one car and a husband who has a

4    medical condition, so they don't -- she would not have access

5    to a vehicle.  Any objection to remove for hardship?

6    MS. PERLMETER:  No objection.

7    THE COURT:  Sorry, what did you say?

8    MS. PERLMETER:  No objection.

9    THE COURT:  999 is removed for hardship.

10    1026.

11    MR. LINCENBERG:  1026 was stipulated for cause.

12    THE COURT:  Yes, you are right.  1026 is stipulated,

13    removed for cause.

14    10 -- I have.

15    MR. LINCENBERG:  1032.

16    THE COURT:  1032 is removed for hardship.

17    MS. PERLMETER:  We have that person still in.

18    THE COURT:  1032.

19    MS. PERLMETER:  Yes.

20    THE COURT:  You're right.  I have, though, I will

21    remove this person for hardship because my notations, though

22    you did not stipulate, this person has a rented cabin in Payson

23    August 18th through 20th.

24    MS. PERLMETER:  Yeah, we saw that, Your Honor, and the

25    18th is a first day and that is a Friday, so we thought maybe

UNITED STATES DISTRICT COURT

1    they were meeting in the afternoon and perhaps they could

2    serve.

3            MR. LINCENBERG:  We agree.  It's a weekend.  The

4    person also suggests issues, I think work related, but we're

5    not pushing on hardship.

6            THE COURT:  1032 will remain in.

7            MR. LINCENBERG:  And we had a cause objection, which

8    is question 32, which the Court has repeatedly ruled on, so we

9    submit with that objection.

10           MS. BERTRAND:  Before we go forward with anymore, just

11   real quickly, Ms. Vaught has been on this call --

12           THE COURT:  I can't hear you.

13           MS. BERTRAND:  Ms. Vaught has been on this call the

14   entirety.  She needs to be up at 3:00 o'clock in the morning

15   Dallas time for work.  May she be excused for the remainder of

16   these jury questionnaires?

17           THE COURT:  She may.

18           MS. BERTRAND:  I will let her know.

19           THE COURT:  1082.

20           MR. LINCENBERG:  1082 relates to question 51 and 53,

21   and it's very similar to 146, which the Court removed for

22   cause.  This is a person who basically says:  I will not

23   compromise my religious beliefs that they will -- that they

24   will affect my ability to be a fair and impartial juror.

25           THE COURT:  And I think the individual also politely,

1    I think, asks to be excused because they are 70 years of age.

2              MR. LINCENBERG:  1082 is 53 years old, I thought.

3              THE COURT:  In answer to 71 says:  Hi.  I am 70 years

4    old and wish to be exempt from service.

5              MR. LINCENBERG:  1082?

6              THE COURT:  1082.

7              MS. PERLMETER:  Yes, we agree Juror 70, or indicated

8    they were 70.

9              THE COURT:  1082 will therefore be removed for

10   hardship.

11             I have 1093.  Who is speaking as to 1093?

12             MR. LINCENBERG:  It's me, Your Honor, and I lost track

13   of my notes.  Here we are.  1093 is a question 32 objection.

14             MS. BERTRAND:  They also graduated from Maricopa

15   County Police Academy and didn't fill out much of the thing.

16             THE COURT:  Well, we will bring him in for further

17   probing, so 1093 is in.

18             1095.

19             MR. LINCENBERG:  1095 is a question 32 objection.

20   There was also a medical.

21             THE COURT:  Yes, I do note that.  1095 indicates has a

22   defibrillator, doctor appointments regularly, has an, either a

23   medical or a surgical appointment on September 8th.  Any

24   objection to removal for hardship, 1095?

25             MS. PERLMETER:  We object.  This juror didn't indicate

```
1    they couldn't be fair.  They didn't indicate -- I mean, the
2    heart condition does not immediately or automatically preclude
3    one from being able to sit.  We acknowledge the medical
4    appointment for September 8th, but perhaps they could be
5    changed to a Monday or a Friday afternoon.
6            THE COURT:  I'm going to overrule and remove for
7    hardship 1095.
8            1097.
9            MR. LINCENBERG:  Your Honor, 1097 was already struck
10   for hardship.
11           THE COURT:  You are correct.
12           1106.
13           MR. LINCENBERG:  Was struck for hardship.
14           THE COURT:  You are correct.
15           MR. LINCENBERG:  As was 1110.
16           THE COURT:  1148.
17           MR. LINCENBERG:  1148 was struck as well, Your Honor.
18           MS. PERLMETER:  We agree.
19           THE COURT:  Yes, 1148 has been removed.
20           1164.
21           MR. LINCENBERG:  1164 was, first of all, a question 32
22   objection, and then indicated -- 1164 indicated he was not sure
23   he could be fair and impartial, wanted to discuss it in
24   private.
25           THE COURT:  And I think the juror can come in for a
```

1   further probing.  1164 will remain in.

2        MR. LINCENBERG:  1168, in addition to a question 32

3   objection, I would direct the Court to questions 51 and 52,

4   where the juror, in connection with discussion about strong

5   feelings about prostitution and adult-oriented entertainment,

6   said that the feelings or experience would affect their ability

7   to be fair and impartial, would make sure anyone promoting

8   child pornography be sentenced to life in prison.

9        And then continues on:  Would your feelings or

10  experiences affect your ability to be fair and impartial?

11  Again says yes.  And then says:  Would press to put people in

12  charge to rot in prison.

13       THE COURT:  And I think that is -- and there are some

14  other strong feelings about feeding the sex industry, being

15  part of the problem, and then there are -- I am not entirely

16  sure what to make of the answers to question 66 with regard to

17  people of different nationalities or low socioeconomic income,

18  all of the answers are yes.  And then the answer is:  If they

19  were taken advantage of because of those issues, it would weigh

20  heavily on my decision.

21       So I think the answers to 53, 51 and 52 are sufficient

22  for cause removal.  1168 is removed.

23       I have then 1210.

24       MR. EISENBERG:  Your Honor, I will cover some of

25  these.  1210.

1          MS. PERLMETER:  I'm sorry to interrupt, could

2     Mr. Eisenberg speak up a little bit, please?

3          MR. EISENBERG:  My arms are too short to grab this any

4     further.  1210, Your Honor, paragraph 51, strong Christian

5     beliefs.  I'm going to turn to that now:  I believe pornography

6     is too easily available.  There should be limitations, et

7     cetera.

8          But then the question says:  Would your feelings or

9     experiences affect your ability to be fair and impartial?  Yes

10    is the answer.  It goes on to explain:  My Christian beliefs

11    and my own experiences in life can affect my impartiality, and

12    I can't honestly say it won't be affected and that I can be a

13    hundred percent impartial.

14         I think that's sort of -- I don't know if that's a

15    double negative, but the impression I'm getting is this

16    person --

17         MS. PERLMETER:  No objection.

18         THE COURT:  1210 is removed for cause.

19         1221.

20         MR. EISENBERG:  1221, Your Honor.  This person, I

21    think we may have talked with about her in terms of her being

22    special education.  She was a sole provider.  She also says

23    with respect to question 51 and 52, 51:  Do you have strong

24    feelings about pornography on the Internet, et cetera?

25         Yes.

1          If yes, please explain.

2          I find it distasteful and immoral.

3          Would your feelings or experience affect your ability

4    to be fair and impartial?

5          Yes.  It's hard to say without being in the moment,

6    but I think all humans are impacted by their personal views.  I

7    would try to be fair and impartial, but I do not -- but I do

8    believe I would still at least have a subconscious reaction

9    that might influence me despite my best ethics.  This would be

10   even more true if it involved children.

11         This is a pretty honest answer.

12         THE COURT:  I didn't think there are strong feelings

13   indicated at 55 and 56.  And it includes, with regard to 56:  I

14   think they are still guilty of the crime even if they are only

15   operating back stage.

16         So there is just a permeated feeling of bias in 1221.

17   I'm going to remove for cause.

18         1242.

19         MR. EISENBERG:  1242, Your Honor, this is another one

20   of the question 32, disagreed crossed the line, but I

21   understand the Court's ruling with respect to that question.

22   That person should be brought in.  Her answers vary with

23   respect to the series I call between 51 and 56 or 57.

24         THE COURT:  And given that observation, as I so

25   observed, we'll keep 1242 in for further probing.

1          1305.

2          MR. EISENBERG:  1305, Your Honor, excuse me, give me a

3    moment, please.

4          THE COURT:  This individual -- let me just say that

5    this individual indicated, and I don't know if this is related

6    to health issues, this is in regards to question 51, I'm sorry,

7    52.  They basically say:  It's wrong to do this against

8    society.

9          Would the feeling affect your ability to be fair and

10   impartial?

11         Yes.

12         And the answer is very odd to me:  I do not think

13   right when I get tired.

14         It's sort of nonresponsive, but sort of indicates a

15   lack of focus, I think.  And then there is an e-mail.  Did

16   we remove --

17         MS. PERLMETER:  Your Honor, perhaps the juror is being

18   cheeky because their response to question number 53 was:  How

19   many times are you going to answer the same question?

20         THE COURT:  And I also have a supplemental note:  I am

21   over 75 years old.

22         So we will remove 1305 for hardship.

23         1316.

24         MR. EISENBERG:  Your Honor, I'll withdraw that one.

25         THE COURT:  1331.

1          MR. EISENBERG:  1331, this is a person who says that

2     he or she is a sole provider.  It might have been addressed

3     before.  Also, I think that was my indication, Your Honor.  I

4     am not sure.  My notes don't reflect whether this was one that

5     was brought up before with respect to hardship.  I might have

6     missed it.

7          THE COURT:  No, it was not.  I think that's the only

8     indication.  We'll keep 1331 in for further probing.

9          1338.

10          MR. EISENBERG:  On this one, Your Honor --

11          THE COURT:  I know what you're going to say.  This

12     person did some research.

13          MR. EISENBERG:  Yes.  The answers are peculiar with

14     respect to this 52 series.  There is an indication after many

15     answers, something to the effect that, private.  But what

16     really got me about this juror, potential juror, is question

17     really 64 and 65:  If selected as a juror, this is 64, will you

18     be able to listen to and deliberate on the evidence, et cetera?

19          Not sure.

20          Please explain.

21          And then she says, or he:  If topics include violent

22     or nonconsensual acts, I would not be comfortable with having

23     to view explicit images, probably not testimony as well from

24     persons denominated as victims.

25          65:  Some of the charges that have been brought in

1    this case involve claims of facilitation and so forth, would

2    it -- is there anything about these subjects that would make it

3    difficult for you to be fair and impartial in this case?

4             The answer is yes.

5             Please explain.

6             I would be coming in with a bias of assuming that

7    those facilitating a business are taking advantage of the

8    people who are participating in the prostitution.  See it as

9    sex trafficking of marginalized communities.  Private.

10            So I think --

11            THE COURT:  Well, let me just stop you there,

12   Mr. Eisenberg.  I think that, and there's also an indication on

13   question 71, that the individuals, one of two people that has

14   the skills to do work at the company, and that they have

15   quarterly and monthly reporting to do, and he would not be able

16   to complete that, and I think those answers in addition to

17   doing this background or having background familiarity at

18   answer eight are sufficient to remove for cause.

19            Ms. Perlmeter, do you want to put anything on the

20   record with respect to 1338?

21            MS. PERLMETER:  We would object to 1338, Your Honor.

22   This juror is one of a few people who can do their job, but we

23   believe that it's worth bringing the juror in to question

24   because like most of society, they will eventually take a

25   vacation or fall ill and somebody will need to cover for them

144

```
1    for work, and there must be a plan in place, and we feel like

2    this is an important -- jury service is an important civic

3    duty, and she should be brought in to answer questions like

4    many of the others that are part of this panel.

5              THE COURT:  Well, I'm going to overrule in particular

6    because of some of the inconsistent answers, and the fact that

7    the person has familiarity with at least one of the defendants

8    and the issues.

9              1408.

10             MR. EISENBERG:  1408.

11             THE COURT:  1408 indicates at answer 64 and 73 that

12   they would be very biased with this trial.  And basically

13   states in response to question 51 that:  I hate it.  My friends

14   are affected by pornography.  I hate it.  Yes, they would be

15   affected.  I don't like it.  It's wrong.  I think it's wrong.

16             Repetitive statements like that.  Is there an

17   objection to removing 1408 for cause?

18             MS. PERLMETER:  No, Your Honor.

19             THE COURT:  1408 is removed.

20             I have 1440.

21             MR. EISENBERG:  Your Honor, may I have a moment?  I'll

22   withdraw that one.  1382, Your Honor.

23             THE COURT:  What is that, what number?

24             MR. EISENBERG:  1382, Your Honor.

25             THE COURT:  What is the objection?
```

UNITED STATES DISTRICT COURT

1          MR. EISENBERG:  This is actually -- this is one more

2     for inconvenience.  He says:  The week of 9-11 I have an

3     out-of-the-office meeting in Tucson.  I already booked that.  I

4     already booked that.  It's critical to projects I'm working on.

5     I'm the sole person in charge of building competitive pricing

6     reports.  This is in block one.

7          I think he also has a medical problem.  Block 70 says:

8     I have a lower back problem.

9          THE COURT:  I have a, yeah, I couldn't read my own

10    writing.  I thought I wrote "teleworking."  It says:  Tucson,

11    working on September 11th.

12         MR. EISENBERG:  71, he says:  Three-month trial is a

13    major, major burden on myself, my job and my wife.  And he goes

14    on to talk about having just the one car.

15         THE COURT:  Any reason why 1382 should not be removed

16    for hardship, Ms. Perlmeter?

17         MS. PERLMETER:  We do.  This juror indicates, or the

18    juror could be fair and impartial as to the topics of

19    prostitution, adult.  It is an inconvenience to everybody to

20    have to serve on a three-month jury, but that alone should not

21    be a reason to strike someone for cause.

22         THE COURT:  I think he says:  I have a trip scheduled

23    in September that can't be rescheduled because it relates to my

24    husband, it relates to my husband's job, and I need to be

25    there.

```
 1              I am going to remove that juror.  I'm sorry.  I am
 2    looking at the wrong questionnaire.  I'm going to remove 1382
 3    for hardship.
 4              Getting back now to 1440, this person, I don't know
 5    why I -- maybe -- maybe -- so this person actually has paid
 6    vacation to Canada, yes, Canada, September 23rd through the
 7    29th.
 8              MR. EISENBERG:  Also, Your Honor, I am sorry --
 9              THE COURT:  Shall be removed for hardship.
10              MS. PERLMETER:  Juror also said tickets have not been
11    purchased and dates can be changed.  Sorry.  There's a -- there
12    is --
13              MR. EISENBERG:  This is more complex than that, Your
14    Honor.  She wants to accompany her husband.  I think this is
15    the one.
16              THE COURT:  Yes, that is the one.  That's different.
17              MR. EISENBERG:  I think we are on 1440.
18              THE COURT:  Yes.
19              MR. EISENBERG:  And the last, next to the last
20    question:  Although it seems like it would be very interesting
21    and a privilege to serve, I am very concerned for my job and my
22    employer.  Terrible hardship for him if I was gone for 46 days.
23              I have a trip scheduled in September that cannot be
24    rescheduled because it relates to my husband's job, and I need
25    to be there.
```

UNITED STATES DISTRICT COURT

1          MS. PERLMETER:  Your Honor, we would object.  She is

2     stating that it's a hardship to the employer.  And then

3     furthermore, I understand she may want to accompany her husband

4     on his work job trip, but I think we should bring her in and

5     have her explain if she's needed.  Is she a participant or is

6     she going to accompany him for some other reason?  She

7     indicated the tickets haven't been purchased.

8          THE COURT:  Well, I am going to overrule and remove

9     1440 for hardship.

10          1514, the person does indicate having high blood

11     pressure and he's concerned about that.  It says:  My concern

12     is that I don't want to be seated on the jury and have my blood

13     pressure go out of control.

14          I am going to remove 14, sorry, 1514 for hardship.

15          MR. EISENBERG:  There is one other, Your Honor.  I

16     think that I omitted 1486.  This is -- this goes to hardship:

17     I am the sole income provider for my wife and two children.  My

18     job has a small base -- this is from question 71 -- it is made

19     primarily up from commission from loans that I close each

20     month.

21          He also talks about very bad --

22          THE COURT:  Is this the person who can only sit for

23     30 minutes?

24          MR. EISENBERG:  Yes, Your Honor.

25          MS. PERLMETER:  Which juror is Mr. Eisenberg referring

1    to?

2              THE COURT:  1486.

3              MS. PERLMETER:  Yes.  We already argued 1486.  This is

4    the individual who has back issues, and the government's

5    position is that the Court can accommodate stretch breaks

6    standing up, you know.

7              THE COURT:  Yes.  I think we already said we'd keep

8    him in, and just probe a little on that.

9              MR. EISENBERG:  The only other one that I have in this

10   sequence is 1539, and you covered it in other questions.

11             THE COURT:  What number?  Speak up, Mr. Eisenberg.

12             MR. EISENBERG:  1539.  I think this is a question in

13   which the person answered negatively to 32.  And 32, the

14   problem is they disagree with B and C, but I heard the Court

15   give the opinion as to whether that person wanted to be brought

16   in.

17             THE COURT:  Yes, we will keep that juror in, 1539.

18             1525, I have a defense cause strike request on 1525.

19             MR. EISENBERG:  I think this may be another question

20   32, Your Honor.

21             THE COURT:  A what?

22             MR. EISENBERG:  Question 32.  In that the answers here

23   are negative, but, yeah, disagree.  This person disagrees

24   across the lot with the questions 32 A, B and C.  I didn't find

25   anything else in there that came to mind that was grounds for

```
1    strike for cause.

2            MS. PERLMETER:  Yes.  This juror's answers to question

3    32 were that he did not expect a person to testify in his own

4    defense.  The criminal justice system does not make it -- he

5    answered appropriately.

6            MR. EISENBERG:  No.

7            MS. PERLMETER:  Is not required to prove his own --

8            THE COURT:  Disagrees with the statement that

9    defendant in a criminal trial should be required to prove his

10   or her innocence.

11           MR. EISENBERG:  Oh, sorry, Your Honor, my eyes are

12   crossed.

13           THE COURT:  All right.  1525 will remain in.

14           I next have 1575.

15           MS. BERTRAND:  I will be addressing that, Your Honor,

16   Joye Bertrand.  The only basis for that was unusual.  They just

17   didn't answer question 32.  I am not sure if it was just a

18   reproduction issue with the copies we received, but consistent

19   with my colleagues' positions.  I would be moving to strike

20   that person for cause.  That's my only basis for cause.

21           THE COURT:  We will keep the individual in and then we

22   will probe further on that question.

23           MS. BERTRAND:  Next one I have is 1582.

24           THE COURT:  Yes, I have.

25           MS. BERTRAND:  Only basis for that motion for cause
```

1    strike is the answers to question 32.  I have no other argument

2    on that juror.

3              THE COURT:  And we keep that person in, probe further,

4    1582.

5              MS. BERTRAND:  1615.  My only basis is responses to

6    question 32.  No further argument on that.

7              THE COURT:  And we will keep 1615 in.

8              MS. BERTRAND:  Likewise, with 1618.

9              THE COURT:  And that juror will remain in for further

10   probing.

11             MS. BERTRAND:  This one I have on my list is 1702.

12             THE COURT:  I have 1633, was that person removed?

13             MS. BERTRAND:  I thought we excused her for hardship.

14   She was the person with child care and her job almost killed

15   her.

16             MS. PERLMETER:  The Court struck 1633.

17             THE COURT:  1633 is out.  Okay.  The other one, did

18   you say 1702?

19             MS. BERTRAND:  Yes, ma'am.  My basis is answers to

20   question 32, no further argument.

21             THE COURT:  And 1702 will remain for further

22   questioning.

23             MS. BERTRAND:  1709, based on the answers to question

24   32.

25             THE COURT:  We will keep that juror in for further

1    questioning.

2            MS. BERTRAND:  1718.  This was a little bit more,

3    little bit more fleshed out.  There were answers to question 32

4    that were troubling.  She also stated she's a little shy about

5    explicit topics, which makes me concerned about her ability to

6    consider the evidence in this matter and deliberate

7    independently.

8            MS. PERLMETER:  Your Honor, she indicated she could be

9    fair and she had no strong feelings regarding the questions in

10   the 50s, and she said that she's a little bit shy.  I'm a

11   little shy.

12           THE COURT:  We will keep 1718 in.

13           MS. BERTRAND:  Next one is 1723, that person.

14           THE COURT:  Wait, one moment.  1723?  I don't have --

15           MS. BERTRAND:  Your Honor, that was a mistake on my

16   end.  Sorry, Your Honor.

17           Next one is 1747.  And again, I believe the only basis

18   is the answers to question 32.

19           THE COURT:  And 1747 will remain in.

20           MS. BERTRAND:  I have next 1757, but I -- yeah, 1757.

21   Question 32 and question 54 were issues.

22           THE COURT:  Well, I think this is interesting because

23   I don't -- I don't think -- and you know, unless there is

24   something different that I don't know or appreciate, this is

25   strong feelings if there's physical violence, people being

1    kidnapped or forced into it, or death.  That is a pretty strong

2    statement.

3            MS. BERTRAND:  And I would like to be heard about

4    that.

5            THE COURT:  There's also an indication about, you

6    know, children not being exploited, but then there's this sort

7    of this other kind of position that it would also depend on

8    what the service or the crime is and how it's regulated.

9            MS. BERTRAND:  I agree with you.  There is some

10   response here that seemed equivocal, but with the answer to 54,

11   one thing that we know based on the government's witness list

12   in this case is they are going to put on evidence of forcible

13   involvement in prostitution.

14           I expect to hear from Ms. Svengard again, and we are

15   going to hear evidence based on their witness list of homicide

16   detectives where the government is going to try to tie their

17   evidence from these homicides to some involvement with Backpage

18   that I would note is not involved.  There's a real risk with a

19   juror like this of that person blowing up our whole jury pool

20   given the evidence and the witness list that the government has

21   submitted.

22           THE COURT:  Well, I think it's worth probing a little

23   further because with regard to the other questions in that

24   series, there is also an indication that it would not impact

25   their ability to be fair and impartial, and so we'll bring 1757

1    in.

2              I have 1787.

3              MS. BERTRAND:  That is based on their responses to

4    question 32.  No further argument.

5              THE COURT:  We will keep 1787 for further questioning.

6              1809.

7              MS. BERTRAND:  Question 32 responses and responses to

8    question 54.  It starts with some pretty clear bias pretty

9    quickly.

10             THE COURT:  We'll keep this individual in for further

11   probing.  There were some interesting responses.

12             MS. BERTRAND:  There is also the answer to 56:  I

13   believe the law enforcement should expend their DHERE

14   investigations and resources against businesses or anything

15   that promotes or facilitates prostitution because prostitution

16   is one thing that can lead to another thing in a crime.

17   Prostitution is very dangerous especially with random strangers

18   you do not know.

19             THE COURT:  Well, and I do think there are some strong

20   statements at 54, 55, 56, and I am inclined to remove for

21   cause.

22             MS. PERLMETER:  Your Honor, we would object to that.

23   We would ask that she be brought in.  She has strong opinions,

24   but she didn't say that she could not be fair.  It says:  Would

25   it affect your ability to be a fair and impartial juror?  She

1    answered:  No.  She does not have strong feelings about

2    everything.  As to question 55, she said she did not have

3    strong feelings about whether or not prostitution should be

4    legalized.  So it's --

5         THE COURT:  Well, that -- I think there is strong

6    indications, yes, to 54.

7         MS. PERLMETER:  It's okay for -- we expect jurors to

8    have feelings and opinions, but the issue is whether or not

9    they can set aside and consider the evidence that is presented

10   in court and evaluate the case fairly and impartially, or

11   whether or not these opinions make them so biased that they

12   cannot sit.  And while this juror has strong opinions, this one

13   doesn't seem to cross the line like some of the others do.

14        THE COURT:  And I think in fairness, this person

15   ultimately states at 64:  I will be able to listen and

16   deliberate to topics that involve sexual nature because I want

17   to hear the evidence that they have.

18        We'll keep 1809 in for further probing.  There is some

19   inconsistencies there.

20        1815.

21        MS. BERTRAND:  That is based on responses to questions

22   32, 51 and 64.  The answers to question 32 are the least of my

23   concerns.  Question 51, they refer to prostitution as a crime

24   against humanity.  They specifically say in question 64 that

25   they would be biased.

1          THE COURT:  Ms. Perlmeter.

2          MS. PERLMETER:  Your Honor, this juror indicated she

3    had strong feelings about pornography and can be fair related

4    to pornography.  However, this is a case not involving

5    pornography.  As to prostitution, this juror indicated they

6    could be fair.

7          THE COURT:  Well, I think there's also the answer to

8    73:  If the case involves sex trafficking and pornography, I

9    feel these are the worse crimes against humanity and this would

10   affect my judgement.

11         I think I am going to remove for cause.

12         And 1873.

13         MS. BERTRAND:  Excuse me, Your Honor, let me just get

14   there.

15         Your Honor, this was based in part on answers to rule

16   32.  Let me just double-check to make sure I am not

17   overlooking.

18         COURTROOM DEPUTY:  Phones needs to be silenced,

19   please.

20         MS. BERTRAND:  Your Honor, I have no further argument

21   regarding that juror.

22         THE COURT:  1873 will be kept in.  That is all I have.

23         MS. LAWSON:  There is one more, 1794.  It was one of

24   the late submissions.

25         THE COURT:  1794.

1          MS. LAWSON:  1794, correct.  This juror indicated

2     several hardship reasons that I don't think we ever addressed.

3          THE COURT:  What are they?

4          MS. LAWSON:  This person is unemployed and looking for

5     work effective October 1st.  Has depression and anxiety and

6     difficulty concentrating, and takes medication that may impact

7     cognitive function.

8          THE COURT:  Any objection for hardship removal?

9          MR. BERRY:  No, Your Honor.

10          THE COURT:  1794 is removed for hardship.  Did I

11     overlook anyone?

12          MS. BERTRAND:  I don't believe so.

13          THE COURT:  Now, those are the individuals that will

14     not report.  We, I believe, have to get to at least 95 or 100,

15     and I think we have enough.  The remainder who remain in the

16     pool will come in.  We usually have some drop out in between

17     time, and so that is how we will proceed.

18          Now, I wanted to go over what I expect at the trial.

19     There were other issues related to -- I know I gave counsel the

20     opportunity to file pleadings with regard to jury instructions

21     and to do that in a very resourceful way.

22          I think the only other items that I want to raise are

23     related to -- and I will go over trial conduct on August 4th.

24     To the extent that counsel don't find a necessity to come in on

25     August 4th, I do want to make sure that you understand, so far

1    we have not seen anyone order daily transcripts.  Our court

2    reporters are going to be sharing this duty and they need to

3    have those orders timely.

4            With regard to the public and media, there is no live

5    audio feed available from this SPC courtroom, and we will have

6    a designated place for media in the back of the courtroom.  I

7    direct counsel and media to look at Local Rule 43.1, Rule 43.1

8    regarding conduct in the courtroom and the Environs.

9            So order those daily transcripts.

10           I will cover the remaining trial conduct issues on

11   August 4th, but I just want to say that everyone is going to

12   question their witnesses from the podium.  You're going to give

13   me at least an advance notice of who is going to question the

14   witness from either side.  Those are the individuals that are

15   permitted to make the objections during the cross-examination.

16   I know it's a little bit unwieldy with a lot of defense

17   counsel, and so if you want to designate a person, or you can

18   make an objection if somebody misses an objection, for example.

19           I think I covered this before, but I do not permit

20   sidebars.  Sidebars waste a lot of time for the jury.  If you

21   have an objection, if I overrule your objection and you want to

22   make a full record, you just tell me you want to make a record

23   and I will make a note of it.  We will take up your oral

24   statement to the Court at a break or the beginning or the end

25   of the day, but I'll have a notation that you'll want to do

1    that.

2          From time to time I have been known to change my

3    ruling.  So -- and of course, no speaking objections.  Hearsay,

4    form of the question, cite the rule.

5          I think there is -- I saw a concern somewhere about

6    how to refer to testimony that was already taken in the trial,

7    the mistrial, and I think it's appropriate to say something

8    like, "In a prior hearing you said," but I don't want anybody

9    here saying, "In the last trial you said."  It's a fine point,

10   but it's an important point.  It may move to prejudice a party

11   one way or the other, so please be very cautious about that.

12          The other matters I will take up on August 4th, unless

13   there is something pressing immediately here that you wish to

14   raise for my consideration --

15          MR. RAPP:  One matter.  This has to do to the exhibits

16   provided to the Court so the Court can have the exhibits as the

17   witness is testifying.  My paralegal tells me that our exhibits

18   would fill ten notebooks -- 100, 100 notebooks.

19          MR. STONE:  100.

20          THE COURT:  Ten notebooks to me would be a delight.

21          MR. RAPP:  I omitted a zero on that 100 notebooks.  So

22   what we are suggesting is that we provide you with a notebook

23   or a CD, if the Court would prefer to have just a CD of the

24   exhibits so they can look at the exhibits on a computer.

25   That's one option.  The other option is that we provide in a

1    notebook the chronological exhibits as the witnesses are

2    testifying so that you're looking at the hard copy.  Whatever

3    you prefer.

4           THE COURT:  Well, I think in order to manage the

5    exhibits you can bring in forward the exhibits that are going

6    to be used for that witness for that day.  I don't want to be

7    inundated with, you know, 50 binders up here.  So to the extent

8    that you can provide the Court with whatever those exhibits

9    are.  They are going to be displayed here.  And presuming that

10   that's going to work, it should be sufficient for you at least

11   with your, those exhibits that may be electronic.  I don't know

12   what your exhibits are.  I guess it's very hard for me to

13   determine.

14          MR. RAPP:  They are all electronic.  Not to interrupt.

15          THE COURT:  I guess I don't know what the necessity is

16   for you to give me a hard binder copy.

17          MR. RAPP:  If the Court is fine with just looking at

18   the exhibit realtime as it's being shown to the witness, that

19   is fine.  Then there is no reason to give the Court a CD of the

20   exhibits, nor a notebook with the exhibits.

21          THE COURT:  I would like a CD of the exhibits in

22   advance.  I will need that for both my court reporter, Liliana

23   and me because I will look at them in advance.  So if you can

24   give them to me in a CD form.

25          MR. RAPP:  I think we already provided those today.

1          MS. PERLMETER:  We gave a copy of the exhibits for the

2    court reporter -- for the court reporters to share during the

3    trial today, just one.

4          COURTROOM DEPUTY:  One more.

5          MR. RAPP:  Done.  Thank you.  That's all we have on

6    that issue.

7          MR. BERRY:  I have one issue.  There was a motion

8    filed by a government witness who is represented by counsel.

9          THE COURT:  Yes.  Yes.  I meant to take that up.  Is

10   there an objection to that?  Is there a necessity to bring that

11   individual in?

12         MR. BERRY:  I wanted to address my understanding --

13   because I haven't seen any motion other than the motion to

14   seal -- I understand that the defense have all agreed for

15   Mr. Allen to testify remotely.  And as long as they are

16   consenting to that so that there is no confrontation clause

17   issue, the government is okay with him testifying remotely.

18   They need to consent, and I haven't seen it.  I am just taking

19   it on representation of witness counsel that they all agreed.

20         THE COURT:  And that was what was provided to the

21   Court that you had no objection to that witness, and I can't

22   remember the gentleman's name.

23         MR. ECKSTEIN:  Ernie Allen.  We have no objection to

24   him testifying remotely.

25         THE COURT:  All right.  So what you will do is

1    48 hours beforehand you'll let my courtroom deputy know when

2    you anticipate calling that witness so that we can make sure

3    that all of the proper technology is running.

4              MR. BERRY:  Yes, Your Honor.

5              THE COURT:  I will take up also what I thought was a

6    trial brief, and the trial brief seems to raise new issues that

7    are more along the lines of motions in limine.  I haven't had a

8    chance to thoroughly digest the trial brief, and I will take

9    that up on August 4th, any issues that are outstanding with

10   regard to that.  Anything further?

11             MR. LINCENBERG:  On August 4th -- this is

12   Mr. Lincenberg.  I am not sure what all yet will be on the

13   agenda, do we have permission to appear remotely?

14             THE COURT:  No, not here.  We don't have that capacity

15   yet on August 4th.

16             MR. LINCENBERG:  And if one of our -- if

17   Mr. Panchapakesan or I are here, is there -- do you have the

18   ability for the other two to listen in by phone?

19             THE COURT:  I'll have to double-check.  Our -- we

20   would have the capacity for you to listen in by telephone, I

21   think, but I would prefer to have at least one counsel here.

22   And if you wish to waive presence, you may do so.  But

23   otherwise I realize one of the nuances of this room is there's

24   no light.  There's no light switch.  We're at natural light.

25   So anything further from defense counsel?

1    MR. CAMBRIA:  Yes, Your Honor, I understood -- sorry,

2  I understood that the last trial I know that one of my

3  associates was able to listen in in realtime and work with me,

4  and I know today the same thing happened, will that be

5  happening for the trial?  Because we frankly are in a situation

6  where we don't have the funds to have another lawyer here with

7  me, and that would help me if they can listen in and we can

8  communicate by computer.

9    THE COURT:  At this point, no, that's -- it's an issue

10  with regard to this room.

11    MR. CAMBRIA:  We did it today.

12    THE COURT:  But to accommodate a number of counsel on

13  a line and the Court loses control about whether or not

14  proceedings are being recorded, and that's prohibited against

15  the local rule.

16    MR. CAMBRIA:  This would be an attorney and obviously

17  the attorney --

18    THE COURT:  I will have to inquire, Mr. Cambria.

19    MR. LINCENBERG:  Your Honor, we did do that at the

20  last trial, which was in this courtroom.

21    THE COURT:  And I will remind everybody that that was

22  during the time of COVID, so there were other restrictions that

23  were lifted.  And we are not in the time of COVID, so things

24  have changed in terms of access to video and so on.

25    MR. LINCENBERG:  It's not a matter of technology.

1    It's a matter of court rules.

2          THE COURT:  Not speaking for my IT department.  I

3    don't know.  We'll find out.  Oh, yes, it was the CARES Act

4    that authorized the way that the matter was handled the last

5    time.

6          So anything further?

7          MR. FEDER:  Do the clients need to be here August 4th?

8          THE COURT:  No.  I just said if you wish to waive

9    presence, you may.

10          All right.  There being nothing further, we are

11    adjourned.

12       (Proceedings concluded at 6:58 p.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                          **C E R T I F I C A T E**

5

6              I, HILDA E. LOPEZ, do hereby certify that I am duly

7    appointed and qualified to act as Official Court Reporter for

8    the United States District Court for the District of Arizona.

9              I FURTHER CERTIFY that the foregoing pages constitute

10   a full, true, and accurate transcript of all of that portion of

11   the proceedings contained herein, had in the above-entitled

12   cause on the date specified therein, and that said transcript

13   was prepared under my direction and control.

14             DATED at Phoenix, Arizona, this 2nd day of August,

15   2023.

16

17

18                                 s/Hilda E. Lopez_____

19                                 HILDA E. LOPEZ, RMR, FCRR

20

21

22

23

24

25