GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
ANDREW C. STONE (Ariz. Bar No. 026543, andrew.stone@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

DAN G. BOYLE (N.Y. Bar No. 5216825, daniel.boyle2@usdoj.gov)
Special Assistant U.S. Attorney
312 N. Spring Street, Suite 1400
Los Angeles, CA 90012
Telephone (213) 894-2426

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, NW, 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>Michael Lacey, et al.,<br><br>　　　　Defendants. | CR-18-422-PHX-DJH<br><br>**UNITED STATES' REPLY TO DEFENDANTS' RESPONSE (Doc. 1803)** |

Per the Court's instructions, the United States submits this Reply regarding cases and arguments cited in Defendants' Response (Doc. 1803 pages 7-9) to the Government's objections to certain exhibits the defense intends to introduce during the cross examination of Carl Ferrer (Doc. 1801). In Section IV of their brief, Defendants argue that "[e]vidence of **non-privileged** attorney opinions or letters and a defendant's awareness of that evidence is admissible to demonstrate defendants' good faith and negate alleged intent." (Doc. 1803 at 7.) Defendants cite several cases, but none provide the support asserted. The United States addresses each case seriatim below.

### *United States v. Thomas*, 32 F.3d 418 (9th Cir. 1994)

*Thomas* is distinguishable because—unlike here—the district court provided no detailed justifications for excluding the evidence at issue. Thomas was convicted of mail fraud for using false prices when brokering sales between produce growers and retail stores. The district court allowed victim-growers named in the indictment to testify at trial, but precluded as irrelevant (simply because they were not named in the indictment) testimony from other growers who may have been less hostile to the defendant. *United States v. Thomas*, 32 F.3d 418, 420 (9th Cir. 1994). The Ninth Circuit recognized that "the jury was faced with a difficult issue of the defendant's subjective intent," yet "[t]here were no substantial countervailing justifications for limiting the relevant evidence that the jury could consider by excluding testimony of other growers. *See* Fed. R. Evid. 403 ('evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence')." *Thomas*, 32 F.3d at 421. Because "[t]he district court found no such justification," the Ninth Circuit reversed. *Id*. Here, the Court has already made detailed, thoughtful rulings—in Doc. 1643 and other orders—concerning various categories of evidence that Defendants now seek to admit during their cross-examination of Mr. Ferrer. (*See, e.g.,* Doc. 1801 at 2-5.) *Thomas* is unavailing.

**_United States v. Smith-Baltiher_, 424 F.3d 913 (9th Cir. 2005)**

This case is irrelevant—it turned on the district court's ruling that collateral estoppel could be used offensively against a criminal defendant in an illegal reentry prosecution. (Doc. 1803 at 7.) On appeal, the government conceded, and the Ninth Circuit held, that offensive collateral estoppel was improperly applied and "does not provide a basis for precluding Smith from contesting his alienage . . . or from asserting that he did not possess the *mens rea* necessary to support a conviction." *United States v. Smith-Baltiher*, 424 F.3d 913, 920 (9th Cir. 2005). The United States has made no similar argument—and the Court has applied no similar doctrine—here.

**_Cheek v. United States_, 498 U.S. 192 (1991)**

Defendants next cite *Cheek v. United States*, 498 U.S. 192, 203 (1991), arguing that the Supreme Court "blessed the admission" of certain evidence presented at trial, including evidence that the defendant attended seminars where attorneys gave their opinions on the tax code. (Doc. 1803 at 8.) That is incorrect. *Cheek* nowhere "blessed the admission" of such evidence at trial, but instead held that it was error for the district court to have given certain *supplementary instructions* to the jury in response to questions from the jury during deliberations. Specifically, the Supreme Court found that it was "error to instruct the jury to disregard evidence of Cheek's understanding that, within the meaning of the tax laws, he was not a person required to file a return or to pay income taxes and that wages are not taxable income, as incredible as such misunderstandings of and beliefs about the law might be." *Cheek*, 498 U.S. at 203.

Thus, *Cheek* cannot be relied upon as authority for the proposition that Defendants are entitled to cross-examine Mr. Ferrer about attorney advice or opinions that he or any Defendants might have received. Instead, *Cheek* was merely a case about a trial court going too far in its supplemental jury instructions; it had nothing to do with the admissibility of the underlying evidence. Conspicuously absent from Defendants' reliance on *Cheek*, however, is the Supreme Court's additional holding: "a defendant's views about the validity of the tax statutes are irrelevant to the issue of willfulness and need not be heard

by the jury, and, if they are, an instruction to disregard them would be proper."[1] *Id*. at 206.

**U.S. v. Munoz, 233 F.3d 1117 (9th Cir. 2000)**

Defendants claim that in *United States v. Munoz*, 233 F.3d 1117 (9th Cir. 2000) "the Ninth Circuit expressly ruled that the evidence at issue—attorney opinion letters drafted by attorneys with whom the defendant never consulted and based on inaccurate facts— were admissible" to support a good faith defense. (Doc. 1803 at 8.) But the Ninth Circuit did not "expressly rule" on the opinion letters' admissibility—*that* issue was not litigated or decided on appeal. The *Munoz* defendants ran a Ponzi scheme; in perpetuating their fraud, they attracted investors with opinion letters, prepared by attorneys, stating that the contracts they marketed were not "securities." *Munoz*, 233 F.3d at 1123. The parties did not dispute the letters' admissibility; indeed, an attorney who prepared one of the letters "was a key witness for the government." *Id*. at 1127-28. The court affirmed the defendants' convictions and remanded for resentencing on a separate issue. *Id*. at 1122. *Munoz* does not support Defendants.[2]

**United States v. Frame, 236 F. App'x 15 (5th Cir. 2007)**

*Frame* similarly lends no support to Defendants. (Doc. 1803 at 8.) In that non-precedential, out-of-Circuit case, the court rejected the defendant's argument that the district court abused its discretion by not granting his requested *jury instructions* on good faith and advice-of-counsel. While it appears that the district court allowed the defendant's attorneys to argue both theories to the jury, the only issue on appeal was the defendant's request for specific jury instructions, which the Fifth Circuit found were properly denied. And, as the Fifth Circuit observed, the defendant's "counsel conceded, at the jury charge

---

[1] "It was therefore not error in this case for the District Judge to instruct the jury not to consider Cheek's claims that the tax laws were unconstitutional. However, it was error for the court to instruct the jury that petitioner's asserted beliefs that wages are not income and that he was not a taxpayer within the meaning of the Internal Revenue Code should not be considered by the jury in determining whether Cheek had acted willfully." *Cheek v. United States*, 498 U.S. 192, 206–07 (1991).

conference, that no evidence had been advanced showing that Frame had discussed this matter with his lawyers; counsel claimed only that 'it appears clear that he did rely' on lawyers who reviewed documents for him." *United States v. Frame*, 236 F. App'x 15, 18 (5th Cir. 2007).

Thus, *Frame* is not instructive here, except to the extent it reinforces the United States' position that Defendants are not entitled to an advice of counsel jury instruction. In any event, it would be improper to rely on *Frame* as even persuasive authority for the argument that Defendants should be allowed to cross-examine Mr. Ferrer about attorney opinions or letters, regardless of whether those opinions or letters are non-privileged. Again, *Frame* merely affirmed the trial court's decision to *not* grant a jury instruction on advice of counsel and good faith; nothing more or less.

**United States v. Way, 2018 WL 3062159 (E.D. Cal. June 19, 2018)**

Defendants' reliance on this case—where the defendant complied with the requirements for asserting an advice-of-counsel defense—is also misplaced. (Doc. 1803 at 8.) Way was charged with violating the Analogue Act for his involvement in a business, ZenBio, that sold products containing the substance XLR11. Way sought to introduce into evidence that he directed an employee to file away letters written by an attorney that had analyzed and concluded that XLR11 was legal under federal law. *United States v. Way*, 2018 WL 3062159, at *8 (E.D. Cal. June 19, 2018). The court in *Way* found that evidence regarding the letter and Way's awareness of its contents were admissible on the question of whether Way acted with a culpable state of mind. *Id.*.

Here, the "non-privileged attorney opinions or letters" are not evidence of Defendants' state of mind as to violating the Travel Act because the attorney opinions and letters do not address federal criminal prosecutions or 18 U.S.C. § 1952. Because the attorney opinions that Defendants seek to admit do not address the Travel Act, they are not relevant, and introducing them would be misleading and confusing to the jury. *Way* does not apply to the facts here, and the attorney opinions and letters should be precluded.

Additionally, in *Way*, the parties litigated the advice of counsel issue pretrial, and

"[t]he court previously directed defendant to provide a pre-trial offer of proof as to the elements of advice of counsel defense. In response, defendant provided the court with several documents *ex parte*, although the court understands that those documents have now been made available to the government." *Way*, 2018 WL 3062159, at *7. In other words, the defendant in *Way* actually complied with the law regarding advice of counsel by waiving privilege and providing relevant documents to the United States.

Here, despite repeated opportunities, Defendants have done no such thing. Instead, Defendants want to have their cake and eat it too. That is, they want to admit into evidence attorney opinions that Backpage.com was not violating the law so that they can argue good faith reliance on that advice of counsel to the jury, but they do not want to reveal what they told their attorneys, which is a prerequisite to the defense. Accordingly, Defendants are not entitled to the same latitude that the defendant in *Way* was given regarding any attorney letters.

### *United States v. Brandner*, 2016 WL 354866 (D. Alaska Jan. 28, 2016)

The Alaska district court's decision also does not support Defendants. (Doc. 1803 at 8-9.) The *Brandner* court—in denying defendant's motion to set aside the guilty verdict—found that defendant wasn't entitled to an advice-of-counsel instruction. *United States v. Brandner*, 2016 WL 354866, at *2 (D. Alaska Jan. 28, 2016). The defendant had asked for the instruction based on his argument that he relied on the advice of a government witness. The court refused because the evidence was "essentially uncontroverted" that the government witness "was not a licensed attorney; that he did not hold himself out to Dr. Brandner to be an attorney; and that he was not serving in the role of Dr. Brandner's legal advisor regarding the wire transactions." *Id.* Further, the defendant argued that the court should have given the advice-of-counsel instruction because he relied in good faith on the advice of an accountant. *Id.* at *3. But the court found that "a prerequisite to that defense is that the defendant disclose all pertinent facts to the accountant" and there was no evidence that "Dr. Brandner disclosed any pertinent facts . . . to his accountant." *Id.* at *3. *Brandner* doesn't advance Defendants' argument because, as in that case, Defendants

have failed to waive the privilege and disclose what if, anything, they told any attorney who provided legal advice.

**United States v. Napoli, 2011 WL 1302317 (N.D. Cal. April 5, 2011)**

Defendants' argument that *United States v. Napoli* "demonstrates that attorney opinions and letters are admissible" is also misplaced. *Napoli* involved a motion for reconsideration of the district court's order disqualifying defendant's attorney [Green]. In affirming its disqualification order, the court found: "there is a significant risk that Mr. Green will (1) act as an unsworn witness at trial, (2) act as both witness and advocate in connection with an advice of counsel defense, and (3) be operating with an actual unwaivable conflict." *United States v. Napoli*, 2011 WL 1302317, at *3 (N.D. Cal. April 5, 2011). . The "unwaivable conflict" was that Green was a government target who could be indicted for the same scheme as Napoli. *Id.* at *6.

These facts are wholly divorced from Defendants' argument.  Napoli had apparently "made a complete disclosure" to Green, which is a fact that Defendants haven't proffered here. Doc. 1643 at 12. Green was also likely to testify. *Id.* at *4. So, any evidence about the purported advice from an attorney would be placed into evidence by the attorney who offered that advice. Here, Defendants want to examine Carl Ferrer about "attorney opinions and letters" without first demonstrating the following necessary factors outlined by the Court: "[that] (1) they made a complete disclosure to counsel; (2) they requested counsel's advice as to the legality of the contemplated action; (3) they received advice that it was legal; and (4) they relied in good faith on the advice." Doc. 1643 at 12. *Napoli* is inapposite.

**United States v. Miell, 2008 WL 5101313 (N.D. Iowa Nov. 25, 2008)**

Defendants' citation to *United States v. Miell* also fails to provide any support for their argument. 2008 WL 5101313, at *4 (N.D. Iowa Nov. 25, 2008); (Doc. 1803 at 9). In *Miell*, the defendant wanted to present evidence wholly unrelated to an attorney's advice. In fact, *Miell* involved insurance fraud charges and the defendant sought to introduce evidence that he had reached an agreement with the insurance company that would negate

his culpability. *Id.* at *4. The district court thought the evidence was "laughable" based on the government's contention that it would present evidence that was directly to the contrary. *Id.* This out-of-Circuit district court case provides no support for Defendants' argument.

\* \* \*

In sum, Defendants' cases are distinguishable and thus unpersuasive. As the United States anticipated through its motion *in limine* and additional arguments before this Court, Defendants clearly intend to make reliance on attorneys a key feature of their defense. The United States is fully willing to meet that defense head-on *if Defendants advance such a defense fairly*, i.e., by complying with this Court's Order on the issue and Ninth Circuit precedent. (*See* Doc. 1643 at 11-12.) But rather than engage in a fair fight on this issue, Defendants are attempting an end-run around this Court's clear rulings.

Indeed, on September 12, 2023, during a hearing outside the presence of the jury, Defendant Lacey's attorney revealed that Defendants plan to introduce evidence, possibly in the form of testimony elicited from Mr. Ferrer, that Mr. Ferrer hired "professionals" who gave advice. The relevant portion of that hearing is excerpted below:

> Court: The law in the circuit is you do not get to raise the advice of counsel unless you show a specific waiver as to a particular issue and what that advice was particularly sought. No one on the defense side has done that. There has been no waiver of the privilege that I know. If you're willing to do that at this late date, that's fine, but at this juncture, that has not been done, and under the circuit precedent I'm not going to permit it.
>
> Mr. Cambria: This isn't a situation of somebody getting specific advice from one of these lawyers that Carl Ferrer hired. This is simply people observing the fact that this is being run professionally, and that is a fact that is relevant. It goes to good faith. That isn't a situation of a specific lawyer Carl hired gave advice to X. That isn't that at all. He is running a professional operation with individuals who supposedly know how to do so, and that's a relevant fact. That's what I'm saying.
>
> Court: There has not been any other information related to advice of counsel that I have seen in which any defendant has sought a specific clarifying

question to a lawyer, and it's -- and if you haven't provided notice at this point, I'm not going to allow it.

Cambria: Two different things. One, I am not talking about advice of counsel. I am talking about establishment of the facts, and that there was a professional, appeared to be, organization created by Mr. Ferrer; that these individuals should be able to rely on just like they say a bad look can be demonstrated by certain things that they want to put in; a good look can also be demonstrated. That's different. That's not advice of counsel. That is presence of a professional organization, and they are the ones who are saying: Do this, do that.

Court: I don't understand the terminology that you're using, "professional organization."

Cambria: All I'm saying is I should be able to say to Mr. Ferrer: "Okay. You hired X, and X gave you advice on the website. What was the advice? And it is: Don't put this in, don't put that in, you can take that out, take that out, whatever it was." That to me is a fact that's relevant to the good faith intent knowledge on the part of our clients. . . First of all, I'm not relying on advice of counsel. What I'm doing is saying that this was a professional organization and there are certain assumptions that people can reasonably make when there is a professional organization.

Court: Before you do that, you're going to have to get an express waiver of the privilege from the particular counsel…And the particular counsel whose name that was, and the particular advice sought, and the particular information given by that counsel, Mr. Cambria. That's how advice of counsel works…You don't get it both ways. My order stands.

Now, in their response brief, Defendants are again trying to get it both ways by insisting that they be allowed to introduce advice of counsel in yet another form, this time by making the distinction without a difference that "non-privileged" advice of counsel is somehow exempt from the same rules as "privileged" advice of counsel. Yet no case cited by Defendants says even remotely such. Whether Defendants call it "professional" advice or "non-privileged" advice, they should not be allowed to insinuate to the jury that they engaged in good faith reliance on advice of counsel by questioning Mr. Ferrer about advice or opinions he received from people who are lawyers by qualification. Instead, Defendants should comply with this Court's clear and unequivocal rulings that are consistent with

Ninth Circuit law on the matter.

Moreover, Defendants should not be allowed to raise the specter of reliance on advice of counsel without testifying themselves to establish the foundation necessary for the invocation of that defense. In other words, Defendants are seeking to establish that they each relied on advice of counsel without affirmatively stating such. In fact, Defendants argue in their brief that "the non-privileged documents drafted by attorneys that were known to the Defendants are admissible." (Doc. 1803 at 9.) (emphasis added) Even if that were true in the abstract, the foundation for their knowledge of such attorney work product must come from Defendants, or possibly the attorneys who provided such advice after receiving a complete disclosure of the facts from Defendants. The required foundation cannot come from the mere existence of such work product as introduced through Mr. Ferrer.

Indeed, *each* Defendant must show that he or she made a full disclosure to his or her attorney, not that Mr. Ferrer made some disclosure to some attorney that was employed or hired by the company of Backpage or Village Voice Media. *See United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010) ("An advice-of-counsel instruction requires the defendant show that he made a full disclosure of all material facts to *his attorney* and that he then relied "in good faith on the specific course of conduct recommended by the attorney.") (emphasis added) (quoting *United States v. Ibarra–Alcarez,* 830 F.2d 968, 973 (9th Cir. 1987); *see also Way*, 2018 WL 3062159, at *8 (quoting same) (cited by Defendants in Doc. 1803 at 8). In other words, just as this Court has required the United States to tether evidence to a specific defendant, so too should this Court require that each defendant establish their own full disclosure to the attorney that defendant seeks to rely upon. Moreover, showing that some attorney work product was merely *known* to Defendants is not the same as demonstrating each Defendants' full disclosure to that attorney, much less each Defendants' good faith reliance—and evidence of their reliance cannot come through Mr. Ferrer.

## Conclusion

For these reasons, and for the reasons set forth in the prior rulings of this Court (including Doc. 1643), the United States' objections in Doc. 1801 should be sustained.

Respectfully submitted this 23rd day of September, 2023.

>                         GARY M. RESTAINO
>                         United States Attorney
>                         District of Arizona
>
>                         NICOLE M. ARGENTIERI
>                         Acting Assistant Attorney General
>                         Criminal Division, U.S. Department of Justice
>
>                          *s/Austin M. Berry*
>                         AUSTIN M. BERRY
>                         Trial Attorney
>
>                         KEVIN M. RAPP
>                         MARGARET PERLMETER
>                         PETER KOZINETS
>                         ANDREW STONE
>                         DANIEL BOYLE
>                         Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Austin M. Berry*
Austin M. Berry
Trial Attorney