Paul J. Cambria, Jr. (NY Bar No.1430909, admitted *pro hac vice*)
Erin McCampbell Paris (NY Bar No. 4480166, admitted *pro hac vice*)
LIPSITZ GREEN SCIME CAMBRIA LLP
42 Delaware Avenue, Suite 120
Buffalo, New York 14202
Telephone: (716) 849-1333
Facsimile:   (716) 855-1580
pcambria@lglaw.com
emccampbell@lglaw.com
*Attorneys for Michael Lacey*

Gary S. Lincenberg (CA Bar No. 123058, *admitted pro hac vice*)
Ariel A. Neuman (CA Bar No. 241594, *admitted pro hac vice*)
Gopi K. Panchapakesan (CA Bar No. 279856, *admitted pro hac vice*)
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW PC
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110
glincenberg@birdmarella.com
aneuman@birdmarella.com
gpanchapakesan@birdmarella.com
*Attorneys for John Brunst*

Additional counsel listed on next page

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | NO. CR-18-00422-PHX-DJH |
| Plaintiff, | **DEFENDANTS' RESPONSE TO CARL FERRER'S MOTION FOR A PROTECTIVE ORDER** |
| vs. | |
| Michael Lacey, *et al.*, | |
| Defendants. | |

Eric Kessler
KESSLER LAW GROUP
6720 N. Scottsdale Rd., Suite 210
Scottsdale, AZ  85253
Telephone: (480) 644-0093
eric@kesslerlawgroup.com
*Attorney for Scott Spear*

Bruce Feder (AZ Bar No. 004832)
FEDER LAW OFFICE PA
2930 E. Camelback Road, Suite 160
Phoenix, Arizona 85016
Telephone: (602) 257-0135
bf@federlawpa.com
*Attorney for Scott Spear*

David Eisenberg (AZ Bar No. 017218)
DAVID EISENBERG PLC
3550 N. Central Ave., Suite 1155
Phoenix, Arizona 85012
Telephone: (602) 237-5076
Facsimile: (602) 314-6273
david@deisenbergplc.com
*Attorney for Andrew Padilla*

Joy Malby Bertrand (AZ Bar No. 024181)
JOY BERTRAND ESQ LLC
P.O. Box 2734
Scottsdale, Arizona 85252
Telephone: (602)374-5321
Facsimile: (480)361-4694
joy.bertrand@gmail.com
*Attorney for Joye Vaught*

The Court should deny the motion of the government's cooperating witness, Carl Ferrer, seeking a protective order. First, Ferrer improperly seeks a blanket protective order, when, instead, he must assert the privilege on a document-by-document or question-by-question basis. Second, as Ferrer has appeared and is asserting his privilege rights, Ferrer cannot authorize the government to defend any privilege he may have. Third, Ferrer has broadly waived privilege, whether through written agreements or by sharing what otherwise might have been privileged communications with some Defendants or their entities.

**1.      Ferrer's Request for a Blanket Protective Order is Improper.**

In his motion, Ferrer seeks a "protective order prohibiting Defendants from violating his attorney-client privilege or other applicable privileges," saying he "objects to any question or exhibit that intrudes upon privileged communications of any kind." Doc. 1825, pp. 2, 3. Ferrer, in essence, seeks a blanket protective order untethered to any specific communication and without having first established the eight elements that must be shown for a communication to be privileged:

> (1) When legal advice of any kind is sought (2) from a professional legal adviser in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are, at the client's instance, permanently protected (7) from disclosure by the client or by the legal adviser (8) unless the protection be waived.

*United States v. Christensen*, 828 F.3d 763, 802 (9th Cir. 2016).

Ferrer's request for a blanket protective order does not comport with Ninth Circuit law, which requires privilege claims to be asserted and evaluated on a question-by-question or document-by-document basis:

> The claim of privilege must be made and sustained on a question-by-question or document-by-document basis; a blanket claim of privilege is unacceptable. The scope of the privilege should be 'strictly confined within the narrowest possible limits.'

*Id.* at 803.

In his motion, Ferrer identified just one document, a memorandum he claimed to

have sent to his "prior lawyer" James Grant,[1] asserting that the memorandum was privileged and speculating that Mr. Grant disclosed the memorandum to Defendants in breach of his obligations of confidentiality to Ferrer.[2]  Even as to this one document, Ferrer failed to establish the required elements to support his claim of privilege, but instead simply asked the Court to accept his naked assertion of privilege.  Ferrer's motion invites error not only by seeking a blanket protective order, and doing so based on a naked assertion of privilege, but also, as discussed below, because Ferrer has waived any privilege that might have attached to the one document identified in his motion.

---

[1] When Mr. Lincenberg sought to question Ferrer about the memorandum, the Court expressed reservations about the authenticity of the document.  Ferrer's motion has removed any doubt about the authenticity of the memorandum, as Ferrer admitted that he sent it and claimed it was privileged (*i.e.* a communication from Ferrer to an attorney).

[2] Ferrer's speculations about Mr. Grant are baseless.  First, Ferrer sent the documents at issue to Mr. Grant *and* to Daniel Quigley, an attorney representing Medalist Holdings, Inc. (f/k/a New Times, Inc.) and its subsidiaries—the companies owned by Larkin and defendants Lacey, Brunst, and Spear.  *See* GL-CF-36, Ferrer's May 17, 2017, email to Grant and Quigley.  Mr. Quigley did *not* represent Ferrer in the California criminal cases.

Second, as addressed at length in Defendants' Opposition to United States' Motion to Disqualify Counsel (Doc. 180), in the Declaration of James C. Grant in Support of Opposition to United States' Motion to Disqualify Counsel (which was submitted for *in camera* review in support of Doc. 180) (the "Grant Declaration"), and in Defendants' Opposition to United States' Motion to Resolve Privilege Issues and Cross-Motion to Obtain Discovery and Address Privilege Issues (Doc. 235), Mr. Grant was *not* Ferrer's personal counsel nor did Mr. Grant have any obligation to keep information provided by Ferrer confidential from Messrs. Larkin and Lacey. *See also Rstmt. (Third) of the Law Governing Lawy*ers § 75, cmt. d (2000) ("Rules governing the co-client privilege are premised on an assumption that co-clients usually understand that all information is to be disclosed to all of them.  Courts sometimes refer to this as a presumed intent that there should be no confidentiality between co-clients.  Fairness and candor between the co-clients and with the lawyer generally precludes the lawyer from keeping information secret from any one of them, unless they have agreed otherwise.").  In any event, even if Mr. Grant had been Ferrer's personal counsel in the California criminal cases and was obliged to keep the memorandum confidential, Mr. Quigley plainly had no such obligation.

**2.     The Government Has No Standing to Assert Ferrer's Privileges.**

In his Motion, Ferrer not only seeks a protective order in his own right but claims that he also "authorizes the Government to assert the attorney-client privilege on his behalf." Ferrer cites *United States v. Martoma*, 962 F. Supp. 2d 602, 605 (S.D.N.Y. 2013), but that decision hardly supports the proposition for which he cites it. The court in *Martoma* held that the "attorney-client privilege 'can be asserted only by the client (*or* one authorized to do so on the client's behalf)"—*not* by the client (*and* one authorized to do so on the client's behalf). *Id.* at 604 (emphasis added). Having asserted his own privilege rights, Ferrer cannot authorize the government to also assert those same rights. As the Court said in *Martoma*, "[g]iven that Dr. Gilman has moved to intervene to assert his rights, and has not authorized the Government to assert those rights on his behalf, the Government does not have standing to assert Dr. Gilman's privilege here." *Id.* at 605. So too here. Ferrer has asserted his privilege rights and, therefore, the government has no standing to do so.

**3.     Ferrer Has Broadly Waived Privilege.**

In his motion, Ferrer claimed to have waived the attorney-client privilege for his companies, but "never waived his personal attorney-client privilege." Doc. 1825, p. 2. That simply is not true. Ferrer waived the attorney-client privilege for his companies and for himself personally.

    **A.     Ferrer Broadly Waived Privilege for His Companies in the Waiver He Gave the Government.**

As Ferrer noted in his motion, on April 5, 2018, Ferrer executed a document entitled "Waiver of Attorney Client Privilege." Doc. 195-3. That privilege waiver said that Ferrer was "authorized to waive" the attorney-client privilege for Backpage.com, LLC, Posting Solutions LLC, and Postfaster, LLC and that he "voluntarily waived all aspects of the attorney-client privilege, on behalf of the Companies." *Id.* That waiver would include advice that Ferrer obtained from lawyers for the Companies in his capacity as an officer, director, manager, or employee of the Companies.

### B. Ferrer Waived Some of His Personal Privileges in his Proffer/Interview Agreement with the Government.

Also on April 5, 2018, Ferrer executed a document entitled "Proffer/Interview Agreement." Doc. 940-2, pp. 23-25. That agreement said that:

> *Mr. Ferrer voluntarily waives all claims of attorney-client privilege, whether* in his *personal* or official capacity as the Chief Executive Officer of Backpage.com, LLC as to communications *with any attorney or law firm that represented Backpage.com*, or any related entity, *where such communications concerned or related to Backpage.com* or any related entity. This waiver does not apply to Mr. Ferrer's current attorneys, Nanci Clarence, Jonathan Baum and anyone working on their behalf.

*Id.*, p. 23 (emphasis added). This waiver plainly addresses both Ferrer's personal attorney-client privileges, as well as any privileges he might have enjoyed as an officer of Backpage.com, LLC. Moreover, as the waiver applies to *any* attorney or law firm that represented Backpage.com or any related entity, it plainly applies to Mr. Grant and Davis Wright Tremaine LLP, which represented Backpage.com. Additionally, the fact that the waiver expressly carves out Nanci Clarence and Jonathan Baum, who then were Ferrer's personal attorneys, and who did not represent Backpage.com, LLC or Ferrer's other companies, demonstrates that the waiver was not limited to a waiver of corporate privilege, as the carve-out otherwise would be utter surplusage.

### C. Ferrer Waived Privilege in his 2017 Joint Defense Agreement with Defendants.

On June 14 and 15, 2017, Ferrer and his personal counsel, Nanci Clarence, executed a Joint Defense/Common Interest and Confidentiality Agreement (the "JDA") with certain Defendants and their counsel. A copy of the JDA is attached as Exhibit C to the Grant Declaration. The JDA generally required that defense materials shared amongst the parties be kept confidential, but the JDA expressly allowed the disclosure of and use of defense materials against a party who subsequently became an adverse witness or took an adverse position in this proceeding:

> *Any client signatory who enters into a cooperation agreement* with the government *or who testifies as a witness in any* civil, administrative, or *criminal proceeding* arising from the Case[3] consents to any other signatory using for defense purposes any information or material contributed by the client or by his or her attorney. *This specifically permits use of contributed information or material in cross-examining the witness* and permits the presentation of their information or material by the defense at any point of the proceedings.

Grant Declaration, Exh. C, ¶ 6 (emphasis added). Even if the privilege waivers discussed in A and B somehow do not apply to the memorandum, this provision of the JDA expressly and unambiguously authorizes the defense to cross-examine Ferrer about the memorandum—defense materials submitted by Ferrer—and to otherwise use the memorandum for defense purposes.

      **D.  Defendants' Position Is Not in Conflict with Their Position in 2018 or With Judge Logan's Ruling.**

Ferrer suggests that Defendants' attempt to cross-examine Ferrer about his prior statements contradicting his trial testimony conflicts with their position on the government's 2018 motions to disqualify Davis Wright Tremaine and to "resolve" attorney-client privilege issues, and Judge Logan's rulings on those motions, but that is incorrect. There, the government sought to invade privileges held by certain *Defendants and their companies* based on *Ferrer's* waivers discussed in A and B above. Defendants argued that Ferrer could not unilaterally waive their jointly held privileges and Judge Logan agreed.

Here, Ferrer claims the privilege at issue is his personal privilege, not that the memorandum is subject to a jointly held privilege. As such, he alone could waive the privilege and did so, whether under the Waiver of Attorney Client Privilege, the Proffer/Interview Agreement, the JDA, or some combination thereof. Defendants do not contend that *they* could waive Ferrer's privilege, but that *Ferrer* waived privilege. As such, there simply is no inconsistency between Defendants' position here and the positions advanced when litigating the government's 2018 disqualification and privilege motions.

In any event, even if there was some inconsistency in position, the circumstances

---

[3] The "Case" was defined as "the Arizona federal grand jury investigation and any related proceedings," which clearly encompasses this trial. Grant Declaration, Exh. C, ¶ 6

7

now are different than in 2018 when the government's disqualification and privilege motions were addressed. Then, Defendants anticipated that Ferrer would testify truthfully. Now, Defendants know he has not. Then, Defendants hoped they would not need to exercise their rights under Paragraph 6 of the JDA. Now, they need to cross-examine Ferrer about how his trial testimony stands in stark contrast to his representations not only to them, but to various lawyers, including his personal criminal counsel, Nanci Clarence. Ferrer, understandably, does not wish to be confronted with his prior inconsistent statements, but he cannot use privilege to hide from the jury the fact that the "story" he has been telling the jury over the last few weeks is not what he told Defendants and their counsel over many years.

RESPECTFULLY SUBMITTED this 6th day of October, 2023,

Paul J. Cambria, Jr.
Erin McCampbell Paris
LIPSITZ GREEN SCIME CAMBRIA LLP

By:   /s/ Paul J. Cambria, Jr.
      Paul J. Cambria, Jr.
      Attorneys for Michael Lacey

*Pursuant to the District's Electronic Case Filing Administrative Policies and Procedures Manual (Jan. 2020) § II (C) (3), Paul J. Cambria hereby attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content, and have authorized its filing.*

Gary S. Lincenberg
Gopi K. Panchapakesan
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.

By:   /s/ Gary Lincenberg
      Gary Lincenberg
      Attorneys for John Brunst

Eric W. Kessler
KESSLER LAW OFFICE

By: /s/ Eric W. Kessler
Eric W. Kessler
Attorneys for Scott Spear

Bruce Feder
FEDER LAW OFFICE, P.A.

By: /s/ Bruce Feder
Bruce Feder
Attorneys for Scott Spear

David Eisenberg
DAVID EISENBERG, P.L.C.

By: /s/ David Eisenberg
David Eisenberg
Attorneys for Andrew Padilla

Joy Bertrand
JOY BERTRAND, ESQ.

By: /s/ Joy Bertrand
Joy Bertrand
Attorneys for Joye Vaught

On October 6, 2023, a PDF version of this document was filed with Clerk of the Court using the CM/ECF System for filing and for Transmittal of a Notice of Electronic Filing to the to the CM/ECF registrants who have entered their appearance as counsel of record

9