**UNITED STATES DISTRICT COURT**


**FOR THE DISTRICT OF ARIZONA**


_____


United States of America,     )
                              )   No. 2:18-cr-00422-DJH
          Plaintiff,          )
                              )
     vs.                      )        Phoenix, Arizona
                              )        November 6, 2023
Michael Lacey, et al.         )        1:02 p.m.
                              )
          Defendants.         )
_____ )




**BEFORE:   THE HONORABLE DIANE J. HUMETEWA, JUDGE**


**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**IN-COURT HEARING**








Official Court Reporter:
Hilda Elizabeth Lopez, RMR, FCRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 30
Phoenix, Arizona 85003-2151
(602) 322-7256

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2

      For the Government:
 3        UNITED STATES ATTORNEY'S OFFICE
          By:  Mr. Kevin M. Rapp, Esq. - Appeared by Zoom
 4             Mr. Peter S. Kozinets, Esq.
               Mr. Andrew C. Stone, Esq.
 5             Mr. Daniel Boyle, Esq. - Appeared by Zoom
          40 North Central Avenue, Suite 1200
 6        Phoenix, Arizona 85004
          kevin.rapp@usdoj.gov
 7        peter.kozinets@usdoj.gov
          andrew.stone@usdoj.gov
 8        margaret.perlmeter@usdoj.gov

 9

      For the Defendant Michael Lacey:
10        LIPSITZ GREEN SCIME CAMBRIA, L.L.P.
          By:  Mr. Paul J. Cambria, Jr., Esq. - Appeared by Zoom
11        42 Delaware Avenue, Suite 120
          Buffalo, NY 14202
12        pcambria@lglaw.com

13

      For the Defendant Scott Spear:
14        FEDER LAW OFFICE, P.A.
          By:  Mr. Bruce S. Feder, Esq. - Appeared by Zoom
15        2930 East Camelback Road, Suite 160
          Phoenix, AZ 85016
16        bf@federlawpa.com
          - and -
17        KESSLER LAW OFFICE
          By:  Mr. Eric Walter Kessler, Esq. - Appeared by Zoom
18        6720 N. Scottsdale Road, Suite 210
          Scottsdale, AZ 85253
19        eric.kesslerlaw@gmail.com

20

      For the Defendant John Brunst:
21        BIRD MARELLA BOXER WOLPERT NESSIM DROOKS
          LINCENBERG & RHOW, P.C.
22        By:  Mr. Gopi K. Panchapakesan, Esq. - Appeared by Zoom
          and Gary S. Lincenberg, Esq. - Appeared by Zoom
23        1875 Century Park E, Suite 2300
          Los Angeles, CA 90067
24        gpanchapakesan@birdmarella.com
          glincenberg@birdmarella.com
25
```

```
 1

 2    For the Defendant Andrew Padilla:
          DAVID EISENBERG, P.L.C.
 3        By:  Mr. David S. Eisenberg, Esq.
          3550 North Central Avenue, Suite 1155
 4        Phoenix, AZ 85012
          david@deisenbergplc.com

 5

 6    For the Defendant Joye Vaught:
          JOY BERTRAND, ESQ., L.L.C.
 7        By:  Ms. Joy M. Bertrand, Esq. - Appeared by Zoom
          P.O. Box 2734
 8        Scottsdale, AZ 85252
          joy@joybertrandlaw.com

 9

      Appeared telephonically:
10
      Michael Lacey
11    John Brunst
      Scott Spear
12    Andrew Padilla
      Joye Vaught
13

14

15

16

17

18

19

20

21

22

23

24

25
```

# P R O C E E D I N G S

   (Proceedings commence at 1:02 p.m.)

          COURTROOM DEPUTY:  This is Case No. 18-422, United

States of America vs. Lacey and others, on for in-court                13:02:34

hearing.

          MR. STONE:  Good afternoon, Your Honor, Andy Stone and

Peter Kozinets here in court.  AUSA Dan Boyle on Zoom.  I think

AUSA Kevin Rapp is also Zoom or attempting to get on Zoom.

          THE COURT:  All right.  Good afternoon.                      13:02:54

          MR. CAMBRIA:  Good afternoon, Your Honor,

Paul Cambria, and Mr. Lacey is on the phone.

          MR. EISENBERG:  Good afternoon, Your Honor,

David Eisenberg on behalf of Andrew Padilla, and he is on the

phone.                                                                 13:03:02

          THE COURT:  Good afternoon.  I see Ms. Bertrand

appears to be in a nice outdoor area.

          MS. BERTRAND:  Hi, Your Honor.  Good afternoon.  I am

still positive for COVID, so yes, I'm doing this from my

backyard.  Ms. Vaught appears by phone.                                13:03:20

          THE COURT:  Thank you, and good afternoon.

          MR. PANCHAPAKESAN:  Gopi Panchapakesan on behalf of

Mr. Brunst, who is present on the phone.

          THE COURT:  And good afternoon to you.

          MR. KESSLER:  Eric Kessler.  Eric Kessler for                13:03:41

1    Mr. Spear.  I don't know if he's yet joined us by phone.

2              THE COURT:  It appears he has.

3              All right.  Anyone else?

4              MR. FEDER:  Bruce Feder also here.

5              THE COURT:  Was that Mr. Feder?                      13:04:00

6              MR. FEDER:  Yes.

7              THE COURT:  All right.  The primary purpose for

8    convening this is I wanted to double-check as to Ms. Bertrand's

9    status, and it does appear that she is still positive for

10   COVID, and I'm certain in isolation, and so what I wanted to do  13:04:16

11   then, Ms. Bertrand, for the benefit of you and your client is

12   to get assurances that you can appear tomorrow by video.  And

13   I'm assuming that your client, Ms. Vaught, is not positive for

14   COVID; is that right?

15             MS. BERTRAND:  That's my understanding.  She's been    13:04:47

16   tested and just consistently not tested positive.  My paralegal

17   has, Yadira, who you saw throughout the trial, but Ms. Vaught

18   is not.

19             THE COURT:  All right.  So what I would do then is

20   have her appear in person.  You can appear remotely.  And the   13:05:07

21   items that I wish to go through with the jury tomorrow will

22   only take a few minutes.  I want to remind them of the jury

23   instruction about how they are to proceed with their

24   deliberations, the instruction related to selecting a

25   foreperson, to not contacting the Court except for in writing,   13:05:35

1    telling them how to do that.

2         And what I also intend to do is also give them

3    alternative lengths of days to deliberate.  Of course, Friday

4    is a federal holiday.  The building will be closed.  And so I'm

5    going to suggest to them if they could at least begin their          13:06:03

6    deliberations at 8:45, and at the latest 9:00 a.m., and if they

7    go to 4:30 or 5:00 o'clock each day.  I'll suggest that to

8    them.

9         The other thing that I think is necessary is I want to

10   inform them that by Court order I will extend their service         13:06:22

11   date up through the 17th.  Now, recall that this is a combined

12   jury.  The original pool that was to have begun on the 8th of

13   August, and then a later pool that was drawn in, and so some of

14   them were only screened until their availability to the 9th.  I

15   will inform them that the reason for this is that week that we       13:06:55

16   lost in the very beginning of trial due to COVID, as well as

17   the most recent days that we had to take off due to COVID.

18        I think at that point any juror who has a conflict, a

19   bona fide conflict, either prepaid travel or some work

20   commitment, then will have an ability to let us know if that        13:07:21

21   indeed is going to interfere.  Of course, I will not at this

22   juncture indicate that they will be, if needed, retained for

23   the forfeiture proceeding, and I suspect at that point we will

24   know whether or not someone has a conflict.  And if that is the

25   case, then those individuals will be selected as the                13:07:49

```
 1   alternates.

 2           That's how I intend to proceed, and are there any

 3   objections or concerns from the government, Mr. Stone?

 4           MR. STONE:  Your Honor, no objection.  The only

 5   thought, again, is --                                         13:08:32

 6           THE COURT:  What I would suggest, if someone has --

 7           COURTROOM DEPUTY:  Are one of you dialed in?

 8           THE COURT:  Can I ask those that are on the phone to

 9   mute themselves?  We're getting feedback.  Let's test it.

10   Test.  Okay.  Can you still hear us?                          13:09:52

11           MR. STONE:  Your Honor, no objection.  The only thing

12   we would note is that we still -- if there's nobody that does

13   have a conflict for that second week in terms of the jurors, we

14   would still urge that Juror No. 7, who watched the final two

15   summations via Zoom, be one of the alternates just in an       13:10:14

16   abundance of caution on that issue, but certainly if there are

17   other jurors who have a bona fide conflict, as Your Honor has

18   laid out, they would take precedent, take precedence to be

19   removed or to serve as alternates.  But other than that, Your

20   Honor, the United States doesn't have any other issues.        13:10:36

21           THE COURT:  Are there any issues or concerns by any

22   defense counsel?  I will go first, Mr. Cambria?

23           MR. CAMBRIA:  No, Your Honor.

24           THE COURT:  Mr. Eisenberg.

25           MR. PANCHAPAKESAN:  Your Honor, I don't think we can    13:10:50
```

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | hear you on the Zoom.  Is it just me or -- |
| 2 | MR. FEDER:  I could not hear. |
| 3 | MS. BERTRAND:  I could not hear. |
| 4 | MR. BOYLE:  Neither could I. |
| 5 | THE COURT:  Could you hear me now? |
| 6 | MR. PANCHAPAKESAN:  Yes. |
| 7 | THE COURT:  The government offers -- I don't know if |
| 8 | you heard, Mr. Stone, they offered no objection to that |
| 9 | process, but they indicated that they would prefer that Juror |
| 10 | No. 7 be selected as an alternate should none of the others |
| 11 | have a conflict with extending through the 17th. |
| 12 | All right.  So Mr. Cambria had no objection to that |
| 13 | process.  Mr. Eisenberg. |
| 14 | MR. EISENBERG:  Your Honor, I don't have an objection |
| 15 | to the process, but I do believe the Court previously indicated |
| 16 | that Juror No. 7 would not be considered an alternate, I think, |
| 17 | depending upon how she felt as the case went on. |
| 18 | And that leads me to a question of Your Honor.  Has |
| 19 | the Court heard whether any of the other jurors are ill? |
| 20 | THE COURT:  We have not received any word. |
| 21 | MR. KOZINETS:  Your Honor, I just saw a note that you |
| 22 | may be muted at this point. |
| 23 | THE COURT:  Am I muted?  Can you hear me, |
| 24 | Mr. Panchapakesan? |
| 25 | MR. PANCHAPAKESAN:  We can hear you, Your Honor. |

Timestamps:
13:11:04 (line 5)
13:11:21 (line 10)
13:11:42 (line 15)
13:12:05 (line 20)
13:12:17 (line 25)

UNITED STATES DISTRICT COURT

1          MR. BOYLE:  We can hear you.

2          MR. EISENBERG:  Those were my two concerns.

3          THE COURT:  With regard to Juror No. 7, the government

4  had asked that she be released rather than view the closing,

5  the two summation arguments by video, and released as an          13:12:37

6  alternate, and so at that juncture I denied that request.

7          But I think this is a little bit of a different kind

8  of request, as I understand it, but I certainly am going to be

9  making the first decision with regard to alternates as to those

10  individuals who may not be able to extend their service through   13:13:05

11  the 17th.  That's going to be the priority.

12          All right.  Mr. Panchapakesan, any objection?

13          MR. PANCHAPAKESAN:  Your Honor, I just had one

14  question.  I think the Court indicated about informing the jury

15  of the possibility of a forfeiture phase.  I just wanted to get   13:13:25

16  a sense as to when you intended to do that?

17          THE COURT:  Upon the return of a verdict, and that

18  may -- I'll cross that bridge when I get there.

19          MR. PANCHAPAKESAN:  And then in terms of the

20  alternate, I don't know if Mr. Lincenberg wants to chime in,      13:13:47

21  but I don't think we have an objection.

22          THE COURT:  All right.  Ms. Bertrand.

23          MS. BERTRAND:  I have nothing to add from what my

24  colleague just said.

25          THE COURT:  And I would just ask, Ms. Bertrand, if you     13:14:04

UNITED STATES DISTRICT COURT

1   could chime in tomorrow a bit early so we can make sure that we

2   have your connection all ready to go.

3            MS. BERTRAND:  Yes.  Thank you.  I will.  Appear by

4   Zoom?

5            THE COURT:  Yes.  Yes.                                      13:14:22

6            MS. BERTRAND:  Thank you.

7            THE COURT:  Mr. Kessler.

8            MR. KESSLER:  No objection, Judge.

9            THE COURT:  All right.

10           Did I miss anyone?                                          13:14:31

11           All right.  So the last thing I wanted to get clear

12   for my purposes, last week Mr. Boyle, I think, or Mr. Stone, I

13   can't remember who, you indicated that your two forfeiture

14   witnesses would be Mr. Ferrer and Mr. Quoc Thai; is that

15   correct?                                                           13:15:01

16           MR. STONE:  Yes, Your Honor.

17           THE COURT:  Who are the anticipated defense witnesses?

18           MR. PANCHAPAKESAN:  Your Honor, we're still conferring

19   amongst the group, but we may have one witness.  We can inform

20   the Court of that by tomorrow, I think, if that's acceptable.      13:15:21

21           THE COURT:  Yes, tomorrow morning you'll have those,

22   whomever it is that you anticipate calling as a witness.  I did

23   receive your filings this morning.  I will go through those.

24           And finally, I wanted to just clarify, with regard to

25   the listed property, is it the government's intention to call      13:15:48

UNITED STATES DISTRICT COURT

1    Mr. Quoc Thai for that purpose?

2         MR. STONE:  Let me defer to AUSA Boyle on that

3    question.

4         MR. BOYLE:  Yes, Your Honor, that is correct.

5         THE COURT:  All right.  And as I mentioned, I will not          13:16:07

6    inform the jury of future service in the event that we don't

7    need to, but I will certainly reserve that obligation upon

8    their return, and so that's how we will proceed.  I think that

9    we -- I am hopeful that we should not get any jurors who have

10   to leave service, but certainly, in any event, not until the          13:16:38

11   end of the week, and we will, like I said, cross that bridge

12   when we get there.

13        All right.  Is there anything more to be taken up from

14   the government's perspective?

15        MR. STONE:  No, Your Honor.  Thank you.          13:16:54

16        THE COURT:  Anything from you, Mr. Cambria?

17        MR. CAMBRIA:  No, Your Honor.

18        THE COURT:  Mr. Eisenberg?

19        MR. EISENBERG:  Yes, Your Honor.  During the hearing

20   on Thursday the Court indicated that you had not heard from          13:17:03

21   myself and Ms. Bertrand concerning a couple of issues, and I

22   did want to note that I concur in my fellow defense counsel's

23   argument with respect to the summation, the concern about

24   shifting the burden to the defense.  I'm not going to continue

25   to argue that.          13:17:28

UNITED STATES DISTRICT COURT

1              The other issue, though, is the 51 ads, and I do want

2    to be heard briefly on that, Your Honor.  This has to do with

3    whether the specific -- the extent to which specific intent

4    applies here.

5              THE COURT:  Well, I guess the problem I have,                    13:17:44

6    Mr. Eisenberg, is I didn't -- I don't think the government

7    anticipated that you were going to argue with regard to the 51

8    ads.  Are you -- is this a supplement to your Motion for

9    Directed Verdict, or what is this -- what is the form of your

10   argument?                                                                  13:18:06

11             MR. EISENBERG:  It's a form of oral argument, Your

12   Honor, and it is in support of the dismissal of those counts.

13   And I know it was argued briefly to the -- I believe it was

14   argued briefly to the Court the other day and Your Honor

15   indicated that you hadn't heard, Your Honor hadn't heard from           13:18:23

16   myself and Ms. Bertrand on either one of those two issues, so I

17   would like to be heard.

18             THE COURT:  I guess I'm confused, Mr. Eisenberg.  I

19   thought the issue that I didn't hear from you on was related to

20   a forfeiture issue.                                                        13:18:45

21             MR. EISENBERG:  Respectfully, Your Honor, no, that's

22   not how I read the minutes, and I indicated to your chambers

23   that we're not part of the forfeiture.  Mr. Padilla, that one

24   property has been taken away.  This has to do with something

25   else, and so that's what I was prepared to argue today.                   13:19:05

1          THE COURT:  All right.  I will give you a few minutes.

2     I have another calendar coming up.

3          MR. EISENBERG:  All right, Your Honor.  Briefly, what

4     it is is that with respect to these ads, the jury instruction

5     on them is helpful because to me it indicates that there has to          13:19:21

6     be knowledge by a defendant with respect to the publication of

7     the ad.  And the jury instruction reads, "In order for the

8     defendants to be found guilty of Counts 2 through 51, the

9     government must prove for each count the following elements:

10          First, the defendant used any facility in interstate          13:19:46

11    commerce with the intent, specific intent to promote or

12    facilitate any business enterprise, et cetera.

13          Second, after doing so, the defendant performed an

14    act."  And I will repeat that, "the defendant performed an act

15    that did promote or facilitate the promotion of any business          13:20:04

16    enterprise specifically by publishing on Backpage the ads

17    listed in Counts 2 through 51."  And to my knowledge, there

18    hasn't been any evidence of that.

19          Finally, Your Honor, the Court gave a *Pinkerton*

20    instruction, that's on page 27 of the jury instructions, and          13:20:24

21    this has to do with finding a defendant guilty of the Travel

22    Act crime as charged in Counts 2 through 51.  If the government

23    has proved each of the following elements, first, a member of

24    the conspiracy committed a Travel Act offense; and second, that

25    person was a member of the conspiracy charged in Count 1 of the          13:20:49

1    indictment; and third, that the person committed the Travel Act

2    offense in furtherance of the conspiracy.

3            These elements, Your Honor, indicated to me that you

4    have to be a member of the conspiracy as charged.  There are

5    five of us are charged, five remaining defendants have been          13:21:09

6    charged.  Now, the government would extend that to other

7    conspirators, I suppose, but who has been named as another

8    conspirator who is involved in publishing of the ads?  I do not

9    know, Your Honor.  Certainly not any other moderator.  And to

10   my knowledge, no one else who might be considered a conspirator     13:21:27

11   was involved in publishing any of the ads, so that's my

12   supplement, Your Honor.  Thank you.

13           THE COURT:  All right.  Thank you, Mr. Eisenberg.  All

14   right.  Anyone else, Ms. Bertrand?

15           MS. BERTRAND:  Your Honor, I join in my colleagues'          13:21:46

16   argument, and I joined in the argument that was made last week

17   that Mr. Eisenberg and I were not present for.

18           THE COURT:  All right.

19           MR. CAMBRIA:  I, if I might, Your Honor, also comment

20   on that.  I join in what they've said.  The thing that bothers      13:22:01

21   me was the way I read prior decision by Judge Brnovich, the

22   prosecution had to prove knowledge of the 50 ads, and in the

23   rebuttal part of summation the position was taken by the

24   government that they did not have to so prove, and I think that

25   that is an error that needs to be corrected.                        13:22:28

UNITED STATES DISTRICT COURT

1          THE COURT:  All right.  All right.  We will reconvene

2    tomorrow promptly at 9:00.  We will have the jury in, I will

3    read them the final instruction, and then leave them to their

4    deliberations.

5          And if we need to, I'll take up any of the forfeiture          13:22:48

6    matters.  In particular, I just had a moment to glance at what

7    Mr. Panchapakesan submitted, and it's my understanding that

8    it's the defense's position that the government is required to

9    prove, or at least the jury is going to be asked in his

10   perspective to come up with some fraction or percentage of          13:23:13

11   alleged forfeiture amounts, and that's what I would like to

12   focus on if we can do that tomorrow.

13         And so if there's nothing further, then we will

14   reconvene tomorrow at 9:00 a.m.  All right.  We are adjourned.

15      (Proceedings concluded at 1:23 p.m.)          13:23:46

16

17

18

19

20

21

22

23

24

25

1

2

3

4                                    **C E R T I F I C A T E**

5

6              I, HILDA E. LOPEZ, do hereby certify that I am duly

7     appointed and qualified to act as Official Court Reporter for

8     the United States District Court for the District of Arizona.

9              I FURTHER CERTIFY that the foregoing pages constitute

10    a full, true, and accurate transcript of all of that portion of

11    the proceedings contained herein, had in the above-entitled

12    cause on the date specified therein, and that said transcript

13    was prepared under my direction and control.

14             DATED at Phoenix, Arizona, this 7th day of November,

15    2023.

16

17

18
                              s/Hilda E. Lopez_____
19                            HILDA E. LOPEZ, RMR, FCRR

20

21

22

23

24

25

                        UNITED STATES DISTRICT COURT