GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
JOSEPH BOZDECH (CA Bar No. 303453, joseph.bozdech@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, N.W., 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-18-00422-005-PHX-DJH |
|---|---|
| Plaintiff, | |
| vs. | **UNITED STATES' MEMORANDUM RE: RESTITUTION AND THE REMISSION PROCESS AND STATUS OF THE JANUARY 3RD HEARING** |
| Scott Spear, | |
| John Jed Brunst, | |
| Defendants. | |

The United States of America respectfully submits this memorandum regarding the restitution hearing and the remission process in this matter. The restitution hearing is currently set for January 3, 2025.

**SUMMARY OF ARGUMENT**

The purpose of this memorandum is threefold. First, the memorandum identifies 12 claimants seeking restitution on behalf of 11 victims. Their claims are supported by

documents and expert evaluations. All of the individuals who have filed restitution claims were expressly referenced in this action, through their trial testimony, in the superseding indictment, or in other pre-trial pleadings.

Second, the United States provides the court an explanation of the remission process that will be used to provide compensation for pecuniary losses caused to the potentially thousands of individuals who were posted on Backpage.com. To be clear, these as-of-yet unidentified persons are not seeking or being put forward for restitution in this case. However, they could be victims within the scope of the conduct pleaded to by Backpage.com, LLC, in *United States v. Backpage*, CR 18-00465-PHX-DJH.

Lastly, the parties have met and conferred by phone and correspondence about the parameters of the January 3rd restitution hearing. Defense counsel have asked that victims and experts be present in court for the January 3rd hearing (or at a later date) and be subjected to cross examination. The United States respectfully asks the Court to reject these requests. The burden of proof at a restitution hearing is a preponderance of the evidence, and the Confrontation Clause does not apply. To the extent this Court requires testimony to supplement a restitution claim, the United States requests that video appearances be allowed at a future date convenient to the Court, counsel, and the expert.

## **RELEVANT FACTS**

The three-month trial, Spear's and Brunst's final Presentence Investigation Reports (Docs. 2119 and 2120), the United States' Sentencing Memorandum (Doc. 2129, Ex. 1), and substantial litigation spanning nearly six years, all provide a detailed account of the facts of the case, which are well known to the Court.

After Defendants' arrests, victim witness advocates from both the USAO District of Arizona and the FBI, as well as investigating agents and prosecutors, reached out to potential victims. The government set in place victim notification procedures that included status reports of the case on the Victim Notice System (VNS). The VNS included notifications about upcoming court proceedings including sentencings. The VNS and victim outreach efforts allowed and encouraged victims to provide victim impact

statements (VIS) and other information that included restitution requests. (*See* Docs. 2119, 2120 and 2129, Ex. 1.) Many VIS and restitution requests were provided in conjunction with the August 27 and 28, 2024, sentencing, and some victims have since updated their restitution requests. (*See* Exs. A and B) Several victims addressed this Court at sentencing. At this point, the government is aware of restitution requests by a total of 12 individuals (on behalf of 11 victims). Attached as Exhibit A is a chart with the 12 claims, including five claims of the next of kin of four deceased victims, with the corresponding restitution claims based on economic loss sought. (*See* claims for each victim Exs. B-G)

**I.   APPLICABLE LAW**

**A. The CVRA**

The Crimes Victims' Rights Act ("CVRA") gives crime victims the right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing (including restitution), or any parole proceeding. *See* 18 U.S.C. § 3771(a)(4); *see also* Fed. R. Crim. P. 60(a)(3). If a victim (or a lawful representative appearing on behalf of the victim) is present at a covered proceeding and wishes to be heard, the government attorney or prosecutor should advise the court of this fact at an appropriate point in the proceeding. If the prosecutor is aware that a victim or victims will seek to be heard at an upcoming proceeding that involves release, plea, sentencing, or parole, the prosecutor should provide the court with advance notice in accordance with any local rules of procedure or practice.

**B. Restitution Orders**

Restitution may be ordered against Brunst and Spear under 18 U.S.C. § 3663, which states that "[t]he court, when sentencing a defendant convicted of an offense under this title … may order … that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A). Additionally, "[t]he court, in determining whether to order restitution under this section, shall consider—(i) the amount of the loss sustained by each victim as a result of the offense; and (ii) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and

such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). "An order of restitution made pursuant to this section shall be issued and enforced in accordance with section 3664." 18 U.S.C. § 3663(d).

Restitution orders pursuant to 18 U.S.C. § 3663 can encompass specified losses incurred by anyone "directly and proximately harmed as a result of the commission of the offense," including "any person directly harmed by the defendant's criminal conduct in the course of a scheme, conspiracy or pattern," for which he is convicted. 18 U.S.C. § 3663(a)(2). In the case of a deceased victim, the victim's estate, legal guardian, family member or other individual appointed by the court may assume the victim's rights. *Id*.

A restitution order can include expenses "related to participation in the investigation or prosecution of the offense or attendance at proceedings," including childcare, transportation and lost income. 18 U.S.C. § 3663(b)(4). Further, in a case involving bodily injury to a victim, the defendant can be ordered to pay for necessary "medical and related professional services and devices relating to physical, psychiatric, and psychological care, including non-medical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;" "physical and occupational therapy and rehabilitation;" and "lost income." 18 U.S.C. § 3663(b)(2)(A-C). Such orders can include future lost wages and future medical/counseling expenses where there is sufficient proof that counseling/medical treatment is needed and the costs of such counseling/medical treatment can be proven by a preponderance of the evidence. *See, e.g.*, *United States v. Follet*, 269 F.3d 996, 1001-2 (9th Cir. 2001) (examining restitution statute with relevant language similar, and somewhat broader in relevant respects, to that in 18 U.S.C. § 3663(b)(2)); *United States v. Cienfuegos*, 462 F.3d 1160, 1164-7 (9th Cir. 2006).

When death results, the court can also order the defendant to pay the cost of "necessary funeral and related services," as well as to reimburse the deceased victim's representative for their own lost wages and travel expenses related to the investigation and prosecution. 18 U.S.C. § 3663(b)(3); *United States v. Pizzichiello*, 272 F.3d 1232, 1241 (9th Cir. 2001). The court can also order restitution for a deceased victim's future lost

wages payable to the victim's estate. *See Cienfuegos*, 462 F.3d at 1164. Bodily injury and death occurred, and was a foreseeable part of, the conspiracy and Travel Act violations for which Spear and Brunst were convicted.

The upcoming post-sentencing restitution hearing is proceeding according to statutory authority. "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3663(d)(5).

Here, the restitution hearing in the instant case was continued beyond the 90 days as the parties were awaiting approval of a settlement in a parallel civil forfeiture case in *United States v. $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona Account '1889, et al.*, CV 18-08420-RGK (C.D. Cal.). On December 11, 2024, the settlement was approved by the Office of the Deputy Attorney General. (*See* Ex. H.) The district court retains jurisdiction to order restitution beyond the 90-day deadline where the court has conveyed that is likely to impose a restitution order, but additional time is needed to determine the amount to be ordered. *Dolan v. United States*, 560 U.S. 605, 617 (2010). Here the Court conveyed such intent and listed "Restitution: TBD" in the Judgments for defendants Brunst and Spear. (Docs. 2180 and 2182.)

**II.    Civil Forfeiture Settlement**

The Government and Defendants have entered into a stipulation regarding the disposition of most of the assets seized in this and related matters. (Ex. H.) That stipulation does not affect the Court's ability to enter a restitution order in this case. The operative language in the settlement agreement that addresses restitution states:

> In the avoidance of doubt, this agreement does not and cannot bind the Court in the Criminal Action, and the Parties have no agreement as to any criminal restitution which may be sought or ordered in the Criminal Action. The government agrees, however, that if restitution is ordered by the Court in the Criminal Action against any defendant, then pursuant to the Asset Forfeiture Policy Manual (2023), Chapter 14, Sec. II.B. and 28 C.F.R. Part 9.8, and

>  upon a determination by the government that it can make the required representations set forth therein, and if requested by such a defendant, the government will submit a restoration request to the Money Laundering and Asset Recovery Section of the Department of Justice, seeking approval for any assets forfeited to be restored to the victims in this case, which may, in turn, satisfy in full or part any such restitution order. The Parties agree and understand that the Attorney General, or his designee, has the sole discretion to approve or deny any such restoration request.

(*Id.* at ¶ 37.)

<u>Restoration</u> referenced in the settlement agreement is not guaranteed, even where restitution is ordered by the Court. The U.S. Department of Justice Money Laundering and Asset Recovery Section (MLARS) will only grant restoration requests to the extent that the restitution order "essentially conform[s] to the victims and amounts that would have been paid through the remission process." *Asset Forfeiture Policy Manual* Chapter 14 Subsection II.B.

<u>Remission</u>, that is the return of judicially forfeited assets to owners or victims, is a process overseen by MLARS and governed by 28 C.F.R. Part 9. As explained in 28 C.F.R. § 9.2, a victim for the purposes of remission is "a person who has incurred a pecuniary loss as a direct result of the commission of the offense underlying a forfeiture." Remission is limited to the victim's pecuniary loss. 28 C.F.R. §9.8(c). Given this independent process, it is possible that a restitution order may differ from the amount MLARS authorizes disbursed through the restoration process. The decision to grant remission or restoration is made at the sole discretion of the Chief of MLARS.

The United States has advised the defendants that the stipulated settlement does not preclude a restitution order, and in fact, contemplates one. As noted above, paragraph 37 states: "In the avoidance of doubt, this agreement does not and cannot bind the Court in the Criminal Action and the Parties have no agreement as to any criminal restitution which may be sought or ordered in the Criminal Action." (*See* Ex. I; correspondence to counsel for Brunst, dated December 17, 2024.) The stipulation then goes on to reference restoration requests, which can only be made if there is a restitution order. The stipulation makes it

clear that such request for restitution/remission may be denied altogether or, if approved, may not satisfy the restitution order in full. In sum, the stipulation does not bind the United States in terms of obtaining or enforcing a restitution order.

### III. Victims Seeking Restitution

There are two methods by which victims may seek compensation arising out the prosecutions for the 14-year operation of Backpage in the instant case and *United States v. Backpage.com*, CR 18-00465-PHX-DJH and *United States v. Ferrer*, CR 18-00464-PHX-DJH. As noted, in the instant case, there are 12 claims for restitution on behalf of eleven victims in this case, *United States v. Lacey, et al.* (*See* Ex. A.) Second, potentially thousands of additional victims who suffered injuries as a result of being posted on Backpage could seek make a restitution claim in *United States v. Backpage* and *United States v. Ferrer*. The US Department of Justice intends to advertise the availability of funds in 2025 to compensate potential victims. As noted in the operative language in the settlement agreement and as detailed below, the government anticipates that the Court will find that those claims should be addressed by MLARS through a process known as remission.

#### A. The Remission Process

Restitution to persons "directly and proximately harmed" by fraud and money laundering is ordinarily mandatory. *See* 18 U.S.C. §§ 3663A(a)(1), (c)(1)(A)(ii). Even where restitution is not mandatory, it may be awarded under 18 U.S.C. § 3663. In such a case, the Court is authorized to determine a restitution amount and a schedule of victims and payments. However, an order of restitution is not required when, as likely will be the case in *United States v. Backpage.com*, "the number of identifiable victims is so large as to make restitution impracticable," or when imposing restitution would require "determining complex issues of fact related to the cause or amount of the victim's losses" which "would complicate or prolong the sentencing process." 18 U.S.C. § 3663A(c)(3); *see also* 18 U.S.C. § 3663(a)(1)(B)(ii). In those situations, courts have found that the burden on the sentencing process outweighs the need to provide restitution and that victims may instead be compensated through the process of remission under the forfeiture

statutes and related regulations. *See e.g. United States v. Sharma*, 1:18-cr-00340, Dkt. No. 407 (S.D.N.Y.) (multi-million-dollar cryptocurrency scheme); *United States v. Bonventre*, 1:10-cr-00228, Dkt. No. 318 (S.D.N.Y.) (Madoff Ponzi scheme).

Here, in *United States v. Lacey, et al.*, the number of claimants seeking restitution is limited to twelve (on behalf of eleven victims) and all were referenced in the superseding indictment or pre-trial pleadings. The class of victims is relatively small, not overly complex, and, above all, fully identified. This Court could therefore conclude that it is able to adequately ascertain victim losses based on their claims supported by documentation and expert reports.

### B. The January 3rd Restitution Hearing

The parties have met and conferred pursuant to LRCrim 12.1 and LRCiv 7.2(l), regarding the parameters of the restitution hearing. Five victims support their claims with expert reports. (Ex. A) Counsel for Spear and Brunst have advised that they would like experts and the victims available for cross examination. (*See* Ex. J, Letter from attorney Michael Landsman, dated 12.16.24 and Ex. I Government's Response dated 12.17.24)

As detailed in the United States' response to Defendants' request, a restitution hearing does not implicate the rights typically afforded in a trial. (*Id.*) A restitution hearing is conducted under a preponderance of the evidence standard, and the typical rules of evidence do not apply. 18 U.S.C. § 3664(e); FRE 1101(d); *United States v. Goldfarb,* 2009 WL 2515778 (D. Ariz. Aug. 12, 2009) ("Restitution claims must be established by a preponderance of the evidence."); *United States v. Waknine,* 543 F.3d 546, 557 (9th Cir. 2008) ("The Court may rely on any evidence that possesses 'sufficient indicia of reliability to support its probable accuracy.'") District courts have "a degree of flexibility in accounting for a victim's complete losses" that does not require in-person testimony. *Waknine,* 543 F.3d at 557; *see also United States v. Tsoie*, 639 F.3d 1213, 1221 (9th Cir. 2011). "Congress intended the restitution process to be expedient and reasonable, with courts resolving uncertainties with a view toward achieving fairness to the victim." *United States v. Gordon,* 393 F.3d 1044, 1056 (9th Cir. 2004).

Regarding victims of sex trafficking, courts have deemed their testimony unnecessary when considering restitution orders for sex trafficking victims. *United States v. Laney*, 189 F.3d 954, 966-67 (9th Cir. 1999) (awarding restitution for psychological treatment and counselling based on psychiatrist's estimate)*United States v. Sanderson*, 515 F. App'x 16, 18-19 (2d Cir. 2013) (affirming award of restitution based a proposed amount submitted by the government supported by an affidavit from a licensed social worker who had worked with the victim); *In re Sealed Case*, 702 F.3d 59, 62 (D.C. Cir. 2012) (restitution awarded to four child victims of sex trafficking for treatment based on mental health assessments prepared by a psychologist and a report from the minors' guardian ad litem);; *United States v. Hamilton*, No. 17-cr-89, 2018 WL 2770638, at *3 (E.D. Va. June 8, 2018) (calculating restitution based on victims' statements to a special agent and corroborated by evidence introduced during trial); *United States v. Jackson*, No. 2:16-cr-54, 2018 WL 3127241, at *3 (D.S.C. June 26, 2018) (restitution calculated based on facts provided in victim impact statements, victims' statements to [a police officer], trial testimony, jail calls, and the testimony of co-defendants); *United States v. Rojas*, 853 Fed. App'x 733, 734-35 (2d Cir. 2021) (affirming restitution order where the government calculated its proposed amount based on information provided by the victims and the court received victims' sworn affidavits). Accordingly, this Court should reject the Defendants' request that the victims be present in court and subject to cross-examination.

In addition, the constitutional requirements of confrontation and cross-examination mandated for criminal trials do not apply (at least at non-capital) sentencing proceedings, including restitution hearings. In *Williams v. New York*, 337 U.S. 241, 246 (1949), the Supreme Court held that admission of hearsay evidence at sentencing did not violate the due process clause. The Supreme Court explained that "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." 337 U.S. at 246. As the Supreme Court reaffirmed a decade

later, where—as here—"the guilt of the accused has been properly established, the sentencing judge . . . is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." *Williams v. Oklahoma,* 358 U.S. 576, 584 (1959).

Congress similarly requires that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. 3661. Adhering to these commands, this Court has long held that "hearsay is admissible at sentencing, so long as it is 'accompanied by some minimal indicia of reliability.'" *United States v. Littlesun*, 444 F.3d 1196, 1200 (9th Cir. 2006) (recognizing that *Williams v. New York* allows the use of hearsay at sentencing; and joining the First, Second, Sixth, Seventh, Eighth, and Eleventh Circuits in holding that *Crawford v. Washington*, 541 U.S. 36 (2004), doesn't require excluding hearsay at sentencing); *see also, e.g.*, *United States v. Bras,* 483 F.3d 103, 109 (D.C. Cir. 2007) ("[W]e join our sister circuits in holding that nothing in *Crawford* or *Booker* alters the pre-*Crawford* law that the admission of hearsay testimony at sentencing does not violate confrontation rights." (alteration and internal quotation marks omitted)). Restitution is part of sentencing, and Defendants therefore have no confrontation rights as to this evidence. *United States v. Sunrhodes,* 831 F.2d 1537, 1543 (10th Cir.1987) (holding that defendant has no right to confrontation and cross-examination in restitution proceedings, although the determination must be made "based on accurate information"). Thus, the Court may entertain the victims' claims without the need for witness testimony.

But if Court nevertheless requires testimony, either from experts or the victims themselves, it should allow for the witnesses' video appearance. In the event the Court determines that additional time is needed to arrange for witness testimony with respect to victim claims that rely upon expert testimony, the government requests that the Court

consider the remaining claims (those that that do not rely on expert opinions) at the January 3rd hearing.

### C. All Claimants Were Expressly Referenced in this Matter

As described above, each of the twelve claims in this matter is based upon a victim who was referenced in the superseding indictment or in pre-trial pleadings regarding evidence presented at trial. "When the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, . . . the restitution order [may] include *acts of related conduct for which the defendant was not convicted*." *United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007) (alterations in original) (citation omitted) (emphasis added); *see also United States v. Grice,* 319 F.3d at 1175-79 (9th Cir. 2003) (affirming award of restitution for the full fraud scheme even though the defendant only pled guilty to part); *United States v. Dickerson,* 370 F.3d 1330, 1339 (11th Cir. 2004) ("restitution may be ordered to a victim not named in the indictment") (collecting cases); *United States v. Hensley,* 91 F.3d 274, 277 (1st Cir. 1996) (finding restitution proper when a scheme is involved "without regard to whether the *particular criminal conduct* of the defendant which directly harmed the victim was alleged in a count to which the defendant pled guilty, *or was even charged in the indictment* ") (emphasis added).

For example, C.W.—the victim discussed in Count 24—was trafficked on Backpage between 2014 and August 2015, and was murdered by a "john." (Doc. 230, ¶ 175, Count 24.)[1] The jury acquitted Defendants of this count. (Doc. 1978) Nevertheless, because C.W. was trafficked during the life of the charged conspiracy, her parents may be entitled to restitution based on their economic loss proximately caused by her postings on Backpage. Similarly, D.R. was trafficked on Backpage at the age of sixteen. She was murdered by her "john" on December 24, 2016. Despite not being referenced in the SI, Defendants were fully aware of the publicity surrounding D.R.'s murder after her posting on Backpage.

---

[1] C.W.'s sister, Arshana Sanders-Willis, testified at trial that she observed C.W. posting on Backpage between 2014 and August 2015. Doc. 1897 at 96.

Importantly, D.R.'s murder was the subject of a pretrial motion to admit evidence of murders to show Defendants' knowledge of sex trafficking on Backpage. (Doc. 920 at 7) D.R.'s mother, Yvonne Ambrose, testified before the Senate subcommittee investigating Backpage[2], and filed suit against both Spear and Brunst.[3] Agents and prosecutors engaged with Ms. Ambrose at the investigative stage and post indictment with the intent of having her testify at trial. The murder of Ms. Ambrose's daughter was detailed in both Defendants' PSRs.[4] She submitted a VIS and addressed this court as a victim, without objection from the defense, at Defendants' sentencing.[5] In sum, D.R. was trafficked during the charged conspiracy, and her mother may be entitled to restitution to compensate her for economic losses.

Given Brunst and Spear's net worth—and the return of property to them pursuant to the forfeiture settlement—they cannot show that they lack the financial resources to make an order of restitution appropriate. (Doc 2119 at ¶ 223-224; Doc. 2120 at ¶ 311.)

## **CONCLUSION**

The United States urges this Court to consider the restitution claims filed in this action and enter a restitution order for any compensable restitution claims against Brunst and Spear. Considering Brunst and Spear's financial resources, the Court should order that all criminal monetary penalties be due and paid in full immediately. *See* 18 U.S.C. § 3572(d)(1)-(2) (only "in the interest of justice" should a court order other than immediate payment of the full restitution judgment; restitution must be paid in "the shortest time in which full payment can be reasonably made").

---

[2] https://www.youtube.com/watch?v=b_hTFKD6JIk

[3] *Ambrose v. BackPage.com, L.L.C.*, 2019 Ill. App. 190619 (Ill. App. Ct. 2019).

[4] Doc. 2119 (Brunst PSR) ¶ 115; Doc. 2120 (Spear PSR) ¶ 114.

[5] (RT 8/27/24, pp. 72-78).

Respectfully submitted this 20th day of December 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
JOSEPH BOZDECH
Assistant U.S. Attorneys

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY
U.S. Department of Justice
Child Exploitation and Obscenity Section

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of December, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants who have entered their appearance as counsel of record.

*s/D. Parke*
U.S. Attorney's Office