GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
PETER S. KOZINETS (Ariz. Bar No. 019856, peter.kozinets@usdoj.gov)
JOSEPH BOZDECH (CA Bar No. 303453, joseph.bozdech@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, N.W., 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-18-00422-PHX-DJH |
| Plaintiff, | |
| vs. | **UNITED STATES' REPLY TO DEFENDANTS' RESPONSE RE: RESTITUTION AND THE REMISSION PROCESS AND STATUS OF THE JANUARY 3ʳᴅ HEARING [CR 2280]** |
| Scott Spear, | |
| John Jed Brunst, | |
| Defendants. | |

The United States replies to the Defendants' Response Re: Restitution and the Remission Process and Status of the January 3rd Hearing [ CR 2280].

**I.    The 12 Claimants Are "Victims" Under the VWPA and are entitled to Restitution as Backpage was the proximate cause of their injuries.**

**A. This Court and a jury have rejected Defendant Brunst's "blissful ignorance" defense.**

Despite numerous convictions, including Count One alleging a 14-year Travel Act conspiracy, Defendant Brunst repeats his tired claim, that was rejected by a jury and this court at sentencing, that he was a non-operational CFO blissfully unaware that Backpage was a prostitution website that facilitated child sex trafficking, made possible numerous violent crimes, and the postings were the proximate cause of hundreds of murders nationwide. Indeed, this Court's remarks at sentencing made it abundantly clear that Brunst was integral to the success of the Travel Act conspiracy stating:

> Contrary to what I heard yesterday from your counsel, I find it very difficult to believe that you were in some bubble as a CFO approving these decisions because you were on notice of the allegations toward Backpage.com. You approved the budget to hire staff to respond to the subpoenas from law enforcement, after all. You were a participant in trying to stop the rebroadcast of the Amber Lyon story. You participated in the conspiracy by helping structure Backpage to maintain its longevity and to maximize profits from the sale of illegal prostitution ads. (RT 8/28/24 pp. 201-202)

> You were aware of the allegations that minors were being advertised for sex on that page. You were aware of Mr. Larkin and Lacey's appearances before the NGOs, NCMEC, the Auburn Theological Seminary, the U.S. Congress, and you knew about the Amber Lyon expose', yet you and the others did nothing to stop it. You did everything to protect it. You found creative ways to enable it to survive and continue its operation because it was what was lining your pockets and those of your codefendants. (*Id.* at 206)

> The jury could not have found that you were shielded from all of this activity, and I don't find that. It's implausible the number of times that you were on those e-mails, the number of times you approved and developed financing, you were deeply involved. (*Id.* at 207)

In the final analysis, Brunst and Spear owned and operated an illegal criminal enterprise where they were placed on notice, as this Court found, literally on a daily basis *via* subpoena requests, media reports, law enforcement inquiries, a U.S. Senate subcommittee investigation, among other things, that the site enabled thousands of cases of child sex trafficking, violent crimes, and murders over its fourteen-year existence.

### B. The Count of Conviction was a 14-year Conspiracy allowing the claimants to be considered victims under the VPWA.

Each of the twelve claimants are victims contemplated by the Victim and Witness Protection Act (VWPA) of 1982. In 1990 Congress promptly expanded the definition of a "victim" in the VWPA to include all those harmed (as is the case here) in the *course of a scheme, conspiracy, or pattern of criminal activity for any offense that has as an element a scheme, conspiracy, or pattern of criminal activity*. Pub. L. No. 101-647, 104 Stat. 4789, 4863, Section 2509 (Nov. 29, 1990), codified at 18 U.S.C. § 3663(a)(2) (emphasis added). *United States v. Brock-Davis*, 504 F.3d 991, 999 (9th Cir. 2007)(" When the crime of conviction includes a scheme, conspiracy, or pattern of criminal activity as an element of the offense, . . . the restitution order [may] include *acts of related conduct for which the defendant was not convicted*." )

Similar to a scheme to defraud, in order "to define the outer bounds of a fraudulent scheme," courts generally focus "on the actions alleged in the indictment and their temporal scope." *United States v. Cothran*, 302 F.3d 279, 289 (5th Cir. 2002) *Id*.; *United States v. Saxton*, *unpublished*, 2002 WL 31479074 (3rdCir.) ("the offense of conviction is "temporally defined by the period specified in the indictment…"); *United States Akande*, 200 F.3d 136, 140 n.3 (3d Cir. 1999) ("restitution was allowable "only for the loss caused by the specific conduct that is the basis of the offense of conviction.") *United States v. Welsand*, 23 F.3d 205, 207 (8th Cir. 1994) ("[W]e look to the scope of the indictment in order to determine whether it details a broad scheme encompassing transactions 'beyond those alleged in the counts of conviction.'") Importantly, courts are not limited to the evidence presented at trial. *United States v. Martin*, 195 F.3d 961, 969 (7th Cir. 1999) "Federal courts may order restitution encompassing losses resulting from a criminal scheme regardless of whether the defendant is convicted for each criminal act within the scheme, so long as the loss is a direct result of the defendant's criminal conduct or is closely related to the scheme." *Id.*; *United States v. DeSalvo,* 41 F.3d 505, 511 (9th Cir.1994) ("The

burden [is] on the Government, which has control over the drafting of the indictment, to include language sufficient to cover all acts for which it will seek restitution.")

For example, courts have upheld restitution for victims not named in a mail fraud indictment, which described the duration and methods used. *United States v. Pepper*, 51 F.3d 469, 473 (5th Cir. 1995). Restitution was upheld for victims of a scheme who were unknown to the United States at the time of the indictment because the indictment described the general scheme from which the victims' suffered losses. *United States. v. Hensley*, 91 F.3d 274, 276-78 (1st Cir. 1996).

In sum, victims referenced in the Backpage superseding indictment or who were otherwise unknown to the Defendants and were not the subject of a substantive Travel Act counts, (whether convicted or not) are still eligible for restitution. *United States v. Zhou,* 838 F.3d 1007 (9th Cir. 2016) (where the defendant pleaded to one count of an indictment, and provided a factual basis at his plea for one of the victims in the count. A court's award of restitution to another victim in the count of conviction was not plain error.)

Here, Spear and Brunst conspired with pimps who were posting on behalf of prostitutes and trafficking victims by force, fraud, or coercion. Acts committed by co-conspirators can cause harms for which restitution would be authorized. For example, in *U.S. v. Teehee*, 893 F.2d 271 (10th Cir. 1990) the defendant was convicted of trafficking in 39 unauthorized long-distance Sprint cards that the defendant sold to 8 or 10 other individuals, resulting in a loss to Sprint of over $600,000.00. Defendant claimed that some of the losses were the result of "the independent actions of other persons who had acquired US Sprint access codes from other sources," but the Tenth Circuit held that the defendant's "criminal activity was not confined to his own phone use; through his sales activity, appellant *caused significant downstream activity*." *Id.* at 275 (emphasis added).

So too here. Both Brunst and Spear expanded Backpage's reach to nearly 400 cities in the United States through the implementation of internal prostitution marketing strategies (*E.g.*, aggregation, the reciprocal link relationship with the Erotic Review, super poster relationships, and moderation designed to increase postings not deter them, etc.) and

promotional and concealment money laundering schemes to expand Backpage's geographic reach and concealment of prostitution generated revenue from unsuspecting banks. This Court underscored their efforts during sentencing when addressing defendant Spear:

> You obtained budget approval from Mr. Brunst, and then you directed Mr. Ferrer to use the content aggregation strategy in every metro market in the United States. That was the testimony. You also were involved with the relationship developed with The Erotic Review. We heard ample testimony that The Erotic Review was a prostitution review site, rating site, if you would. You were the author of a 2008 budget plan that was presented then to Mr. Brunst and Mr. Larkin outlining that TER relationship. And in that plan it noted that Backpage had, quote, "struck a deal with TheEroticReview.com, TER, with reciprocal links. It created huge brand awareness in this industry, and increased pageviews from TER by 120,000 per day." You signed the checks for these payments, you closely tracked the relationship with TER, and Mr. Ferrer testified that you understood that the traffic from TER was very, very important to Backpage's success.

(RT 8/28/24 pp. 179: 14-17 180:1-6)

This Court made similar observations regarding Mr. Brunst at sentencing noting:

> You were the Chief Financial Officer of Village Voice Media. You also supervised Mr. Ferrer, according to his testimony. You also approved staffing and other budget issues to execute the content aggregation strategy in the early years of Backpage. There was evidence of you on an e-mail discussing the plan to, quote, seed the site, the female escorts category, with 200 independent escorts. With regard to the content moderation, you did approve budget increases that were needed to bring on content moderators. You reviewed the comparison and growth presentation toward the end of 2012 that showed huge profit growth in adult sections compared to the other sections on Backpage.com. And this, Mr. Ferrer testified, attributed to the Backpage's moderation strategy.

(*Id.* at 201)

The increase in the volume of postings escalated the prospect of violent crime that was attendant to prostitution activity. Defendant Brunst's false equivalency to gun manufacturers is unavailing. (Mot. at 13) Firearms are legal but frequently have dire consequences when misused. For example, where the offense of conviction

was 18 U.S.C. § 924(c) (not robbery), but the defendant admitted using the gun while robbing a credit union, the court imposed restitution for the money taken in the robbery because it was "an integral part and cause of the injury" to the credit union. *United States. v. Smith*, 182 F.3d 733 (10th Cir. 1999). Unlike a legitimate product used for nefarious purposes, Backpage was a purely illegal criminal enterprise that facilitated illegal prostitution, including child sex trafficking, and was the proximate cause of thousands of violent crimes.

### C. Backpage was the Proximate Cause of injuries sustained by all the Claimants.

Defendants' claims that the government is unable to establish either direct or proximate causation for any of the claimants is easily rejected. The VWPA addition of the definition of victim as someone "directly and proximately harmed" by the offense provides a standard of causation for the inclusion of harms for which restitution is authorized. "Proximately" implies the familiar "proximate cause" test in tort law. It contains an objective test (what harm is within the "but for" sphere of harms caused by the defendant's conduct) and a subjective test (what harm was "reasonably foreseeable" to the defendant).[1]

One way of determining what was "reasonably foreseeable" to the defendant, is to examine the harms resulting from acts that are an "integral part" of the offense, or *"inherent" in the nature of the offense*. Here, Backpage was an integral part of the

---

[1] While "foreseeability" is the majority view for the subjective test, there is a more inclusive minority view of holding the defendant liable for all "natural consequences" that flow from his or her criminal acts. Both views are expressed in *Palsgraf v. Long Island Railway Co.*, 162 N.E. 99 (N.Y. 1928). The "foreseeability" test is most applicable to criminal law's focus on a defendant's mental state, and has been the underlying causation standard used throughout criminal law, from the "Pinkerton" test for conspiracy liability, to the federal sentencing guidelines' definition of economic loss (U.S.S.G. §2B1.1 n.2) and inclusion of co-conspirators' acts in relevant conduct (U.S.S.G. §1B1.3(a)(2)).

violent crime and murders that were attendant to victims being posted on Backpage. Within the 92-page page superseding indictment, that alleged a 14-year conspiracy, supported by 194 overt acts, it referenced the murders of four victims that occurred as a result of being posted on Backpage. (Doc. 230, ¶s 165, 173, 174, 175).

Defendant Brunst attempts to minimize the impact Backpage had on the thousands of trafficking victims by shrugging off his conviction and ten year prison sentence as merely "being convicted of a conspiracy to facilitate state prostitution misdemeanor offenses." (Mot at 18) This diminishes the fourteen years of despair he caused countless victims and their families while profiting, in just three years alone, to the tune of $20 million. (PSR ¶ 138)

Beyond the allegations in the indictment, the United States sought to admit evidence of other highly publicized murders committed during the existence of the conspiracy that put Spear and Brunst on notice that the website was used almost exclusively for prostitution offenses.[2] The motion, among other things, referenced exhibits that clearly demonstrated that Spear and Brunst were aware of numerous murders implicating Backpage including Google alerts that Defendants Spear and Larkin received on a daily basis highlighting stories of murders where the victims posted on Backpage before being brutally killed by a "john", emails where the co-conspirators discuss murders that were the result of victims being posted on the site. [3] Indeed, the highly publicized, December 2011 Detroit quadruple murders, was the subject of a story on CNN's AC 360 hosted by Anderson Cooper that featured Backpage attorneys (Ed McNally and Elizabeth McDougall) .[4] Internal emails between the ownership, upper management, and a public relations firm were exchanged to

---

[2] (See Doc. 920); United States Motion to Admit Evidence of Murders)

[3] (*Id.* at Exs. E, G, H,I, J,O, and V)

[4] Trial Ex. 1053 (**not admitted**)

strategize a response to the murders and other instances of violent crimes including child sex trafficking. (*Id.* at Ex. E)

Importantly, Doc. 920 also referenced an internal Backpage Excel spreadsheet that catalogued approximately 2400 stories, referencing Backpage, published between 2012 and 2014, the vast majority involved criminal prostitution stings, child sex trafficking investigations and prosecutions, and violent crimes, including murders of prostitutes that posted on Backpage. (*Id.* at Ex. B) The motion also cited a Brand Analysis document prepared by a highly regarded Washington, DC based consulting firm (Greenberg Quinlan Rosner) hired by Defendant Larkin and its payment approved by CFO Brunst. (*Id.* at Ex. M) In the 13-page document, dated July 10, 2012, entitled Backpage.com, Media and Digital Brand Analysis, the key findings concluded that "Backpage.com Coverage Breaks Down into Five Major Categories" . The first category is entitled Police Blotter, and includes "stories about someone getting busted for using Backpage.com. This includes police stings, prostitution arrests, murders, etc. Overall, this is the largest category of news about Backpage.com." (*Id.*) Fast forward to Spear's sentencing this Court quoted Yvonne Ambrose, the mother of DR who was murdered after being posted on Backpage by a pimp, stating, "Here, I think Ms. Ambrose's words resonated and serve as a reminder of really what this was about. I will attempt to quote from her, "Backpage and the owners continued teaching pimps how to advertise these women." And I think, Mr. Spear, the evidence bears that out." (RT 8/28/24 p. 187: 14-18)

Next, Defendants' argument that they cannot be held liable because of the mere publicity of a murder misses the point. (Mot. at 15) In sum, the murders of CW and DR, based on relentless notice of violent crime facilitated by prostitution postings were reasonably foreseeable to defendants Spear and Brunst and because Backpage was purely a prostitution website. In sum, it was the proximate cause of various crimes associated with an inherently dangerous and illegal prostitution activity. Spear and Brunst are accountable for costs sustained by the victims associated with the murders.

II. **The Victims are Entitled to Restitution for Their Injuries and Losses**

### A. The Actions of Pimps and other Traffickers do not Disqualify Victims from Restitution.

Defendants argue that the victims may not be compensated for past medical and counseling costs because of the actions of third-parties. Doc, 2282 at 11-12. When an intervening cause, such as the action of a third-party, contributes to a victim's injuries, restitution is authorized for those injuries so long as the causes are related to the conduct underlying the offense or offenses of conviction. *United States v. Meksian*, 170 F.3d 1260, 1263 (9th Cir. 1999). "A restitution order is authorized if the defendant created the circumstance under which the harm or loss occurred." *United States v. Spinney*, 795 F.2d 1410, 1417 (9th Cir. 1986). As Defendants point out, victims were trafficked by pimps. Doc. 2282 at 11-12. The creation and maintenance of Backpage.com for predators to prostitute and traffic vulnerable women is precisely the underlying conduct for which Brunst and Spear were convicted in the Travel Act counts. To the extent that victims were injured by pimps or other traffickers, and as explained *supra*, those injuries are inextricably linked to the Travel Act convictions.

### B. Future Medical and Counseling Costs are Reasonably Ascertainable Based on the Evidence Provided

Defendants argue that victims' future medical and counseling costs are too speculative for an award of restitution. Doc. 2282 at 12. The Ninth Circuit has held, in an award of restitution under 18 U.S.C. § 3664(d)(5), that costs for harms that are not incurred until after sentencing are compensable so long as they were caused by offense conduct and are reasonably "ascertainable" at the time of sentencing. *United States v. Laney*, 189 F.3d 954, 966-67 (9th Cir. 1999) (affirming restitution awarded under 18 U.S.C. § 2259). Defendants cite to *United States v. Follet*, 269 F.3d 996 (9th Cir. 2001), contending that the evidence submitted here does not allow future medical costs to be ascertained. Doc. 2282 at 12-13. In *Follet*, however, the Ninth Circuit noted that the district court erred in

failing to determine the amount of future medical costs and remanded for a determination of those amounts. 269 F.3d at 1002. The Ninth Circuit distinguished the situation in *Follett*, where no evidence of future medical costs was submitted and the pre-sentencing report merely contained a statement that it was possible that future counseling would be provided to the victim, from *Laney*, where there was proof of a need for future counseling and a basis for estimating "with reasonable certainty" the cost of the counseling. *Id*. at 1001-02. As in *Laney*, N.F. and D.O. have both submitted medical expert evidence that they will need future medical care, including counseling, and a basis for estimating with "reasonable certainty" the amounts of those costs.

### C. The United States Agrees that Restitution Cannot be Awarded for Proceeds of Illegal Activity Retained by Others

Defendants argue that victims A.B. and B.H. should not be awarded restitution for amounts earned by pimps trafficking them on Backpage.com. Doc. 2282 at 13. The government agrees. Such sums are explicitly provided for in an order of restitution made under certain offense-specific restitution statutes, for example 18 U.S.C. § 1593(a)(3) (providing restitution including "the gross income or value to the defendant of the victim's services"); *see, e.g. United States v. Wilkins*, 680 F. Supp. 3d 8 (D.D.C. 2023). However, 18 U.S.C. § 3663 does not contain language permitting restitution for the value of a victim's services, and the Ninth Circuit has cautioned against attempts to extend § 3663 restitution along this axis. *United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1165 (9th Cir. 2010). Accordingly, the Court should award restitution to A.B. in the amount of $7,290 (representing lost wages and therapy costs) and $66,300 to B.H. *See* Doc 2274 Exs. B-2, B-2, and E.

### D. Family Members of Victims Who Are Minors or Deceased Are Victims.

Brunst argues family members of deceased victims are not victims themselves under the VWPA, 18 U.S.C. §§ 3663-3664. (Brunst Resp. at 9.) He is incorrect. The VWPA defines a victim as a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. 18 U.S.C. § 3663(a)(2). In the case where a victim is under 18 years of

age or is deceased[5], the legal guardian of the victim or representative of the victim's estate, another family member, or any person appointed as suitable by the court, may assume victim's rights under this section. *Id*. Under the Crime Victims' Rights Act (CVRA), victims have certain rights, including the right to full and timely restitution as provided by law. 18 U.S.C. § 3771(a)(6). Thus, in instances where the victim is a minor or is deceased, a person as described under § 3663(a)(2) may assume victim's rights, including the right to receive restitution when permitted by law. Brunst concedes a victim's family is entitled to expenses incurred from participating in the investigation and the prosecution of the underlying murder, because, had the victim been alive, she would have been able to recover these expenses under §3663(b)(4). *United States v. Pizzichiello,* 272 F.3d 1232, 1241 (9th Cir. 2001). (Brunst Resp. at 9-10.) Thus, here, a victim representative is entitled to restitution for expenses incurred from participating in the investigation and the prosecution of this case, because, had the victim been alive, she would have participated in the investigation and prosecution herself. and been eligible to recover the expenses as restitution. The United States acknowledges that *Dayea* limits lost income compensation under the VWPA to victims that personally suffer bodily injury. *United States v. Dayea*, 73 F. 3d 229, 231 (9th Cir. 1995) (This Act is not the equivalent of a wrongful death satute under which very broad recovery is permitted).

### E.  Victims Trafficked on Backpage Are Eligible to Receive Restitution.

Brunst argues victims who engaged in misdemeanor prostitution offenses are precluded from receiving restitution. (Brunst Resp. at 10.) Brunst argues Victim 5[6] testified that she engaged in misdemeanor prostitution by writing her own ads and to having her own clients. *Id*. Brunst fails

---

[5] Similarly, in instances where the victim is under 18 years of age or is deceased, and has suffered direct physical, emotional, or pecuniary harm as a result of the commission of a crime, the Victims' Rights and Restitution Act (VRRA) defines victim as a spouse, legal guardian, parent, child, sibling, another family member, or another person designated by the court. 34 U.S.C. § 20141(e)(2)(B).

[6] As identified in Doc. 2274, the United States' Restitution Memorandum. In Doc. 230, the Superseding Indictment, Victim 5 is discussed in Paragraph 162 of the Superseding Indictment, where she is identified as Victim 3.

to mention that Victim 5 testified that "[she] was taught by [her] first pimp how to post the ads." (Doc. 1902; 10/19/23 PM Trial Tr. at 116:11.) Similarly, Victim 1[7] testified that Michael Knight was her pimp, and that he created her advertisements and posted them on Backpage. (Doc. 1897; 10/17/23 AM Trial Tr. at 56:6-25.) Defendants were on notice through trial testimony, as well as through the superseding indictment and discovery that the victims were trafficked on Backpage. Brunst's argument that the use of the word trafficking is vague and insufficient is without merit considering the great lengths the defense argued against the use of phrases such as sex trafficking and child sex trafficking at trial. The United States addressed defendants' concerns in its Trial Brief, outlining how it intended to avoid "day in the life" type testimony. (Doc. 1642.) Brunst's reliance on *United States v. Lazarenko,* is inapposite because *Lazarenko* involved an order of restitution to a co-conspirator. Here, Victims 1 and 5 were trafficked as a result of being posted on Backpage and are not co-conspirators. They were posted on Backpage on behalf of their pimps or traffickers and are eligible to receive restitution where permitted by law based on their status as victims.

### F. Victims Can Recover Restitution for Funeral Costs under the VWPA.

Brunst argues that funeral costs tied to murders are not compensable. (Brunst Resp. at 14.) He fails to provide any support for his argument. The VWPA allows the Court to order a defendant to pay an amount equal to the cost of necessary funeral and related services in the case of an offense resulting in bodily injury also results in the death of a victim. 18 U.S.C. § 3663(b)(3). Here, the victims' deaths, as noted in detail above, were due to being posted on Backpage by or on behalf of their traffickers. The victims' traffickers, i.e., unindicted co-conspirators, were part of the prostitution business enterprise established the Travel Act Conspiracy for which Brunst was convicted. Thus, the victim representative or legal representative can recover restitution for necessary funeral and related expenses related to the victims' death.

---

[7] As identified in Doc. 2274, the United States' Restitution Memorandum. In Doc. 230, the Superseding Indictment, Victim 1 is discussed in Paragraph 166 of the Superseding Indictment, where she is identified as Victim 7.

Respectfully submitted this 2nd day of January 2025.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
PETER S. KOZINETS
JOSEPH BOZDECH
Assistant U.S. Attorneys

NICOLE M. ARGENTIERI
Acting Assistant Attorney General
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY
U.S. Department of Justice
Child Exploitation and Obscenity Section

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of January, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants who have entered their appearance as counsel of record.

*s/D. Parke*
U.S. Attorney's Office