GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP (Ariz. Bar No. 014249, kevin.rapp@usdoj.gov)
MARGARET PERLMETER (Ariz. Bar No. 024805, margaret.perlmeter@usdoj.gov)
JOSEPH BOZDECH (CA Bar No. 303453, joseph.bozdech@usdoj.gov)
JENNIFER LEVINSON (Ariz. Bar No. 020551, jennifer.levinson@usdoj.gov)
Assistant U.S. Attorneys
40 N. Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500

ANTOINETTE T. BACON
Supervisory Official for the Criminal Division
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY (Texas Bar No. 24062615, austin.berry2@usdoj.gov)
U.S. Department of Justice
Child Exploitation and Obscenity Section
1301 New York Avenue, N.W., 11th Floor
Washington, D.C. 20005
Telephone (202) 412-4136
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br> vs.<br><br>3. Scott Spear,<br><br>    Defendant. | CR-18-00422-3-PHX-DJH<br><br>**GOVERNMENT'S MOTION FOR HEARING REGARDING DEFENDANT SPEAR'S REIMBURSEMENT FOR CRIMINAL JUSTICE ACT EXPENSES** |

## INTRODUCTION

The Court appointed CJA counsel to represent defendant Scott Spear ("defendant") in January 2023 after defendant submitted an *ex parte* application in which he presumably provided information about his current income and assets.[1] Prior to sentencing, the Presentence Report ("PSR") for defendant indicated that defendant has a total net worth of approximately $2 million and receives a monthly income of $4,500. (PSR ¶ 312) His net worth of $2.8 million is reduced by two liabilities: first, a lien by *Knapp* counsel Bruce

---

[1] The *ex parte* application was never produced to the government and the government therefore does not know its contents.

Feder in the amount of $750,000 and second, approximately $2,000 in credit card balances. (*Id.*) Moreover, in December 2024, the parties reached a civil settlement in *United States v. $1,546,076.35 In Bank Funds Seized from Republic Bank of Arizona Account '1889, et al.*, CV 18-08420-RGK (C.D. Cal) ("the civil settlement") from which defendant is expected to receive approximately $460,000. In light of this information, the government requests that the Court consider whether defendant (i) provided accurate information to the Court at the time he submitted his application for appointed counsel; and (ii) should reimburse the CJA panel administrator for a portion or all of the expenses paid to appointed counsel.

## RELEVANT FACTS

On January 13, 2023, the Court appointed CJA panel attorney Eric Kessler to represent defendant. (Doc. 1520.) On January 24, 2023, Mr. Kessler, entered his appearance for defendant (Doc. 1522) and the Court further ordered that attorney Bruce Feder withdraw as attorney of record and appear as associated counsel for defendant pursuant to *Knapp v. Hardy*, 523 P.2d 1308 (Ariz.1974). (Doc. 1520.) Mr. Kessler and Mr. Feder thereafter continued to jointly represent defendant through the present time. The case proceeded to trial in August 2023, and, as the Court is aware, Mr. Feder handled the cross-examination of the majority of the government witnesses, and gave the opening statement and closing arguments on behalf of defendant. On November 15, 2024, defendant was convicted of various counts.

On April 11, 2024, a draft presentence report ("PSR") was issued. The PSR detailed defendant's net worth of $2,073,000. (PSR ¶ 312) The PSR noted a monthly income of $4,500 but did not specify a source. (*Id.*) At sentencing, the Court inquired about the reasons this information was omitted, noting:

> With regard to deterrence, I'm troubled in one respect. It appears that you refused to inform your probation officer of your source of income today. I do note that you were last employed as an executive vice president of Cereus Properties up through 2018, and in 2013 you were earning something in the neighborhood of $30,000 per month, and at the end of that 2018 period your W-2 showed that you earned income somewhere in the neighborhood of $80,000 to $2 million annually.

(Doc. 2187 at 58:19-25.)

In response, defense counsel explained defendant's failure to provide the source of the monthly payment as follows:

> The idea that we didn't give her financial information, I just want to make sure it's understood. We didn't give it -- I mean, it was the lawyers' decision, not Mr. Spear's, because of the information that we had filed under seal with this Court in order for me to become *Knapp* Counsel and Mr. Kessler to become appointed. That was the stuff that we didn't want to give or given it was under seal.

(*Id.* at 111:7-17.)

On December 13, 2024, a civil settlement was approved that is expected to provide defendant with approximately $460,000. It will likely take several months for the money to be deposited with the U.S. Marshals Service to be remitted to defendant by wire.

## **RELEVANT LAW AUTHORITY**

The CJA "requires district courts to provide legal counsel for criminal defendants charged with a felony when they are unable to pay for an attorney." *United States v. Konrad*, 730 F.3d 343, 346 (3d Cir. 2013) (citing 18 U.S.C. § 3006A(a)(1)(A)). If, however, at any time after counsel is appointed, "the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment as provided in subsection (f), as the interests of justice may dictate." *Id.* Under subsection (f) of the Act,

> [w]henever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid . . . to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section. § 3006A(f).

The district court retains jurisdiction to order reimbursement of defense costs even after judgment has been entered. The CJA's reimbursement provision is extremely broad, authorizing a court to require repayment of CJA-funded defense costs "*[w]henever* . . . the court finds that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f) (emphasis added). This includes funds to which the defendant has a "fixed right." *United States v. Meyer*, No. CR-13-777-PHX-ROS, 2013

WL 3353771, at *2-3 (D. Ariz. July 3, 2013). The statute does not specify a "time limit by which the government must request reimbursement under § 3006A(f)," *United States v. Bell*, Nos. 07-26 & 04-382, 2007 WL 2303587, at *2 (N.D. Ill. Aug. 9, 2007), and federal courts have entered reimbursement orders—or approved or authorized the entry of such orders—after entry of judgment in numerous cases. *See, e.g.*, *United States v. Waldron*, 270 F. App'x 531, 533 (9th Cir. 2008) (holding that pendency of appeal does not prohibit District Court from ordering reimbursement of attorney's fees)*; United States v. Jefferson*, 117 F.3d 1416 (5th Cir.1997) (unpublished table disposition) (rejecting the defendant's argument that the district court lacked authority to order reimbursement of defense costs under § 3006A(f) after his conviction and sentence were affirmed on appeal); *United States v. Durka*, 490 F.2d 478, 479 (7th Cir. 1973) ("It is not an abuse of authority if within a reasonable time after judgment the district court directs a defendant found financially able to obtain counselor to make partial payment to pay for services rendered or expenses incurred by appointed counsel."); *United States v. Lemaster*, No. 07-64, 2012 WL 407245, at *1 (S.D. W. Va. Feb. 8, 2012) (ordering the defendant to pay the unpaid balance of his attorney's fees pursuant to § 3006A(f) four years after sentencing, where the defendant failed to comply with the court's original reimbursement order and where the defendant remained financially able to pay the fees out of a forthcoming annuity payment); *cf. United States v. Medford*, 608 F. Supp. 2d 709, 713-14 (W.D.N.C. 2009) (holding the pendency of a defendant's appeal of his conviction and sentence did not deprive the district court of jurisdiction to consider whether to modify the defendant's CJA reimbursement payment); *Bell*, 2007 WL 2303587, at *2 (finding that a motion to apply funds seized from the defendant upon his arrest toward his defense costs, filed more than a year after sentencing, was not untimely).

Although the CJA Guidelines recommend that a court revisit the defendant's eligibility for appointed counsel at sentencing so as to make a "final determination" regarding the defendant's ability to pay, the suggested inquiry is whether the defendant "then"—i.e., at the time of sentencing— "has funds available to pay for some or all of the

costs of representation." CJA Guidelines § 210.40.30(d). At sentencing, defendant declined to provide the Court information about the source of his monthly income. In addition, the civil settlement from which defendant will likely receive approximately $460,000 was reached after sentencing. Particularly in light of the information not available to the Court at time of defendant's sentencing, the Court may properly consider at this time whether reimbursement by defendant is warranted. *See Durka*, 490 F.2d at 479.

A court may order reimbursement of defense costs if it finds "funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f). "The focus is on the defendant's *present* ability to pay for his representation," which requires the court "to inquire into the defendant's current financial status, taking into account the defendant's personal and family needs and the liquidity of his finances." *Evans*, 155 F.3d at 252 n.8 (internal citation omitted); *see also United States v. Moore*, 666 F.3d 313, 322 (4th Cir. 2012) (holding the statute "requires a *finding* of a defendant's ability to make payments as a condition precedent to an order of reimbursement," which entails identifying the source of payment). Ultimately, "[t]he test for determining a defendant's ability to pay 'is whether repayment would cause such financial hardship as to make it impractical or unjust.'" *Konrad*, 730 F.3d at 347 (quoting *Museitef v. United States*, 131 F.3d 714, 716 (8th Cir. 1997)). "The burden is on the defendant to prove by a preponderance of the evidence that he is financially unable to reimburse the cost of representation." *Evans*, 155 F.3d at 252 n.8.

## **CONCLUSION**

The record available to the government suggests that defendant presently has the ability to pay all or part of the expenses for his appointed counsel in this matter. The government respectfully suggests that the Court hold a hearing at which the Court (i) determines whether defendant accurately reported his income and assets at the time he

obtained appointed counsel; and (ii) determines whether defendant is financially able to reimburse the CJA administrator for expenses paid to his appointed counsel.[2]

Respectfully submitted this 5th day of February 2025.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
MARGARET PERLMETER
JOSEPH BOZDECH
JENNIFER LEVINSON
Assistant U.S. Attorneys

ANTOINETTE T. BACON
Supervisory Official for the Criminal Division
Criminal Division, U.S. Department of Justice

AUSTIN M. BERRY
U.S. Department of Justice
Child Exploitation and Obscenity Section

### CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of February, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants who have entered their appearance as counsel of record.

*s/D. Parke*
U.S. Attorney's Office

---

[2] The government recognizes that, should the Court hold such a hearing, the Court may need to address certain issues with defendant and defense counsel *ex parte*.